**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Super Safety Patent Litigations | MDL No. 3176 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO TRANSFER FOR
<u>COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407</u>**

**TABLE OF CONTENTS**

        **Page**

I. INTRODUCTION ....................................................................................................2

II. FACTUAL BACKGROUND.................................................................................4

    A. Forced Reset Triggers.................................................................................4

    B. The Plaintiffs' Asserted Patents.................................................................4

    C. The Plaintiffs' Settlement With the DOJ...................................................7

    D. The Rapidly Changing Litigation Landscape ............................................7

    E. The Plaintiffs' Pertinent Cases..................................................................10

III. LEGAL STANDARDS ......................................................................................12

IV. ARGUMENT.......................................................................................................13

    A. The Panel Should Centralize All of Plaintiffs' Overlapping Actions....................14

        1. The Panel Should Centralize the Six Actions That the Movant
        Defendants Identify...................................................................................14

        2. The Panel Should Also Centralize Twelve Additional Overlapping
        Tag-Along Actions the Movant Defendants Do Not Identify ..................14

        3. The Panel Should Centralize Given the High Likelihood of
        Additional Future Overlapping Actions...................................................16

    B. The Panel Should Centralize Before Judge Gilstrap in the Eastern District
    of Texas, or Alternatively Judge Albright in the Western District of Texas ........17

        1. Judges Gilstrap and Albright Have Proven Track Records of
        Efficiently Advancing Complicated Patent Cases Towards Trial .............17

        2. Texas Is a Convenient and Central Geographic Location .........................19

V. CONCLUSION.....................................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re "Agent Orange" Prods. Liab. Litig.*,
    560 F. Supp. 2d 1352 (J.P.M.L. 2008)................................................................17

*ABC IP, LLC et al. v. 80Mills LLC et al.*,
    No. 1:25-cv-01262 ...............................................................................................10

*ABC IP, LLC et al. v. AR-TT LLC et al.*,
    No. 2:26-cv-00014 ...............................................................................................12

*ABC IP, LLC et al. v. Cloak Industries, Inc. et al.*,
    No. 1:26-cv-00001 ...............................................................................................12

*ABC IP, LLC et al. v. Cope*,
    No. 2:26-cv-00033 ..........................................................................................12, 18

*ABC IP, LLC et al. v. Hanes Tactical LLC et al.*,
    No. 3:25-cv-00201 ...............................................................................................10

*ABC IP, LLC et al. v. Harrison Gunworks LLC et al.*,
    No. 4:25-cv-00299 .................................................................................8, 10, 15, 16

*ABC IP, LLC et al. v. Hoffman et al.*,
    No. 1:25-cv-00389 ...............................................................................................12

*ABC IP, LLC et al. v. Kline*,
    No. 3:25-cv-00454 ..........................................................................................11, 15

*ABC IP, LLC et al. v. MaRs Trigger, LLC et al.*,
    No. 2:26-cv-00030 ..........................................................................................12, 18

*ABC IP, LLC et al. v. Nguyen*,
    No. 4:25-cv-02961 ...............................................................................................10

*ABC IP LLC et al. v. SGC LLC et al.*,
    No. 2:26-cv-00085 ...............................................................................................12

*ABC IP, LLC et al. v. WebCorp, Inc. et al.*,
    No. 4:26-cv-00018 ...............................................................................................12

*ABC IP, LLC et al. v. Z3 Productions LLC*,
    No. 5:25-cv-00695 ...............................................................................................10

*In re African-American Slave Descendants Litig.*,
231 F. Supp. 2d 1357 (J.P.M.L. 2002)........................................................................19

*In re Bluetooth Headset Prods. Liab. Litig.*,
475 F. Supp. 2d 1403 (J.P.M.L. 2007).......................................................................14

*In re BP p.l.c. Sec. Litig.*,
734 F. Supp. 2d 1376 (J.P.M.L. 2010)..................................................................18, 19

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
536 F. Supp. 2d 1364 (J.P.M.L. 2008).......................................................................16

*In re Janus Mut. Funds Inv. Litig.*,
310 F. Supp. 2d 1359 (J.P.M.L. 2004).......................................................................17

*In re Mirena IUD Prods. Liab. Litig.*,
938 F. Supp. 2d 1355 (J.P.M.L. 2013).......................................................................17

*In re: Packaged Ice Antitrust Litig.*,
560 F. Supp. 2d 1359 (J.P.M.L. 2008).......................................................................16

*In re Passenger Vehicle Replacement Tires Antitr. Litig.*,
737 F. Supp. 3d 1364 (J.P.M.L. 2024).......................................................................19

*In re Procter & Gamble Aerosol Prods. Mktg. & Sales Pracs. Litig.*,
600 F. Supp. 3d 1343 (J.P.M.L. 2022).......................................................................20

*Rare Breed Triggers, Inc. et al. v. AS Designs, LLC et al.*,
No. 1:25-cv-01192 .......................................................................................................12

*Rare Breed Triggers, Inc. et al. v. Dairyland Defense Solutions, LLC et al.*,
No. 2:25-cv-00852 ...........................................................................................11, 15, 16

*Rare Breed Triggers, Inc. et al. v. DNT LLC et al.*,
No. 4:25-cv-00298 .......................................................................................................10

*Rare Breed Triggers Inc. et al. v. Firearm Systems LLC et al.*,
No. 2:25-cv-04938 ...........................................................................................8, 9, 12, 16

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.*,
621 F. Supp. 3d 1349 (J.P.M.L. 2022).......................................................................20

*In re Taasera Licensing, LLC, Pat. Litig.*,
619 F. Supp. 3d 1352 (J.P.M.L. 2022).......................................................................18

**Statutes**

28 U.S.C. § 1407.................................................................................1, 12, 13, 14, 16

**Other Authorities**

Judicial Panel Rule 1.1(h) ...................................................................................................14

Plaintiffs ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. ("RBT") (collectively, "Plaintiffs") hereby respond to the Movant Defendants'[1] Motion to Transfer for Coordination or Consolidation Under 28 U.S.C. § 1407 ("Motion"), filed December 23, 2025, in the above-captioned case. Plaintiffs agree with the Movant Defendants that centralization in a multidistrict litigation ("MDL") is appropriate for the six cases that the Movant Defendants have identified. Plaintiffs request, however, that the Judicial Panel on Multidistrict Litigation ("Panel") *also* (1) centralize additional cases that the Movant Defendants do not identify in their Motion, but are listed in Schedule A attached hereto as Exhibit 1, and (2) centralize all the Schedule A actions before Judge Rodney Gilstrap in the Eastern District of Texas or in the alternative Judge Alan Albright for the following reasons:

A. Judge Gilstrap and Judge Albright have extensive experience handling patent cases, particularly complex cases such as these, involving what will likely become dozens of defendants spread across the US.

B. The Eastern and Western Districts of Texas are centrally located and much less burdensome on the Defendants spread across the US. Further, Texas is the home of the Plaintiffs. Thus, convenience to all parties greatly favors Texas over the requested Northern District of Ohio.

C. There are pending cases in both the Eastern and Western Districts of Texas, with two cases currently before Judge Gilstrap. While these cases are in their earliest stages, none of the

---

[1] Plaintiffs refer herein to the particular defendants who filed their instant motion as the "Movant Defendants," namely, 80Mills LLC d/b/a Tactical Titan Supply; Pearson Gardner; DNT LLC d/b/a Deez Nutz Tactical; Zach Morrow; Z3 Productions LLC d/b/a Z3 PRO; Harrison Gunworks LLC; Tyler Harrison; Hanes Tactical LLC; Damion Terrell Bennett; and Steven Thanh Nguyen d/b/a Polymer Pew. Plaintiffs refer herein to all the defendants across all present and future tag-along cases as simply the "Defendants."

other cases, including the case pending in Ohio, have reached any significant procedural milestone.

For the foregoing reasons and others, Judge Gilstrap, or Judge Albright in the alternative, are the best choices from both an experience and convenience standpoint for the consolidation of these cases.

## I.      INTRODUCTION

The Plaintiffs agree with the Movant Defendants that the six actions identified in their Motion should be centralized. However, the Plaintiffs disagree about which cases the Panel should centralize and where the Panel should centralize them.

The Panel should centralize all of the Plaintiffs' overlapping cases in Schedule A, not just the six that the Movant Defendants identify. Currently, there is a large and growing number of overlapping cases across the country. Since the Plaintiffs settled litigation with the U.S. Department of Justice ("DOJ") in May 2025, and the DOJ then withdrew its position that the Plaintiffs' forced reset triggers are properly classified as "machineguns," the market has flooded with copycat products, sold at reduced prices, that infringe some combination of the Plaintiffs' patents on forced reset triggers. Related continuing patent applications are pending and may issue within the coming weeks. The infringing products are all variations of trigger systems that have similar components.

The infringement landscape is complex and evolving. Consistent with the conditions of their settlement with the DOJ, the Plaintiffs are investigating the market, and are regularly identifying new infringement and filing new actions. All of Plaintiffs' cases, as detailed below, share significant substantive overlap in terms of at least asserted patents and accused product designs, and therefore they are all highly likely to share common questions of, for example, claim construction, infringement and validity. There is no sound reason why—and the Movant

Defendants provide none—the centralization should be limited to the six particular cases identified in their Motion. The Panel should centralize all cases involving overlapping patents.

Further, the Panel should centralize all of the actions before Judge Gilstrap in the Eastern District of Texas, or alternatively Judge Albright in the Western District of Texas, because of their applicable experience. Judge Gilstrap has experience presiding over multidistrict litigation; a *vast* amount of expertise efficiently managing patent cases; and well-respected rules and procedures that enhance the predictability and efficiency of patent cases. Judge Albright has similar levels of experience, along with well-understood procedures for patent cases.

The Panel should also consolidate in Texas because it is a central location for all the actions, and notably more central than the Northern District of Ohio requested as transferee by the Movant Defendants. Texas already hosts the largest number of the Plaintiffs' actions of any state. Further, unlike the Northern District of Ohio, Marshall where Judge Gilstrap presides is easy to reach via either Dallas or Shreveport, both of which have numerous direct flights every day on multiple carriers from throughout the US. Austin where Judge Albright presides is similar with lots of direct flights to Austin and easy driving from Houston, San Antonio, and Dallas. Finally, the Plaintiffs' location in Texas also supports the centrality of Texas, since the Plaintiffs are parties to every action. Centralizing in Texas before Judge Gilstrap or Judge Albright would therefore result in greater efficiency, certainty, and convenience across all the actions.

For these reasons, discussed further below, Plaintiffs respectfully request that the Panel centralize all of the cases identified in Schedule A before Judge Gilstrap in the Eastern District of Texas, or alternatively, Judge Albright in the Western District of Texas.

## II.   FACTUAL BACKGROUND

### A.   Forced Reset Triggers

This case involves forced reset triggers ("FRTs") made for semi-automatic rifles. An FRT is a type of trigger that the federal government closely monitors because they are designed to increase the speed of firing a rifle. An FRT operates by mechanically resetting the trigger after each shot, allowing the user to take immediate follow-up shots without manually releasing pressure on the trigger. FRTs are distinct from other categories of trigger mechanisms, such as traditional semi-automatic or fully automatic trigger mechanisms.

### B.   The Plaintiffs' Asserted Patents

As relevant here, the Plaintiffs have so far asserted seven patents against FRT infringers: U.S. Patent Nos. 10,514,223 ("'223 Patent"); 11,724,003 ("'003 Patent"); 12,036,336 ("'336 Patent"); 12,274,807 ("'807 Patent"); 12,038,247 ("'247 Patent"); 12,031,784 ("'784 Patent"); and 7,398,723 ("'723 Patent"). The asserted patents cover various aspects of forced reset triggers.

The '223 Patent describes and claims a semi-automatic trigger mechanism involving a hammer, a trigger member, and a locking bar. '223 Patent, Abstract, cl. 4. As shown in Figures 3 and 4, when the trigger is pulled, the hammer contacts the firing pin, thereby causing the ammunition cartridge to discharge. '223 Patent, Figs. 3–4, 2:59–64, 4:61–5:25. This discharge causes the bolt carrier (52) to move rearwardly, and a lower surface of the bolt carrier pushes against the hammer (18), which in turn forces the trigger (via trigger member 26) to return to its reset position. '223 Patent, Figs. 4–5, 5:23–54. A locking bar (62) prevents the trigger member from being pulled again by the user until the bolt carrier (52) has returned to the original or "in-battery" position. '223 Patent, Figs. 4–5, 5:23–54.



**FIG. 5**

'233 Patent, Fig. 5 (showing the bolt carrier 52 forcing the hammer 18 and trigger 26 back into its reset position).

The '003, '336, and '807 Patents are similar and share a common specification, as the '336 and '807 Patents are continuations of the '003 Patent.[2]  Dkt. 1, Exs. B–D ('003, '336, and '807 Patents, respectively).  These patents describe and claim a device similar to that of the '223 Patent, but with the additional feature that it "provides a 'three position' trigger mechanism having safe, standard semi-automatic, and forced reset semi-automatic positions."  '003 Patent, 2:34–37, Figs. 7 (safe), 8A–8D (standard semi-automatic), and 9A–9D (forced reset semi-automatic).

The '723 Patent teaches a trigger mechanism in which the cycling action of a semiautomatic firearm causes a cam to forcibly reset the trigger member and lock it there until the action has reached the end of its cycle and is ready to fire again.  '723 Patent, Abstract, cl. 1.  The

---

[2] Another related continuation application is pending and expected to be examined this month.

5

'723 Patent claims a method of accelerating the firing cycle of a semi-automatic firearm. '723 Patent, 8:27–30, cl. 1. According to the method, a firearm trigger is depressed with a finger to discharge the firearm. '723 Patent, 8:35–43. This activates a reciprocating mechanism within the firearm (such as a bolt or bolt carrier) which causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position until the reciprocating mechanism has reached an approximately closed, ready-to-fire position. '723 Patent, 8:27–33, cl. 1. The '723 Patent has expired, but multiple Defendants were selling products accused of infringement before the expiration date.

The '247 Patent relates to a semiautomatic trigger mechanism that represents a further improvement because it offers a further selectable mode, for example, a forcible reset mode in which a trigger member is forcibly reset by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. '247 Patent, Abstract, 2:23–26, cls. 1, 4, 9, 14, 15, 20. The cam limits movement of the trigger member, and acts to prevent the trigger member from being pulled again until the bolt carrier has returned to the in-battery position.[3] '274 Patent, 9:02–27.

The '784 Patent provides a device that works in a forced reset trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. '784 Patent, 1:48–52. The invention of the '784 Patent overcomes the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to move separately from the body portion of the locking member when contacted by the bolt carrier as it cycles to the rear. '784 Patent, 1:48–52.

---

[3] A related continuation application is pending and is expected to be examined this month.

C.       **The Plaintiffs' Settlement With the DOJ**

In May 2025, RBT settled litigation with the U.S. Department of Justice ("DOJ") over whether the use of an FRT qualifies a rifle as a "machinegun." *See* Ex. 2 (Office of the Attorney General, *Department of Justice Announces Settlement of Litigation Between the Federal Government and Rare Breed Triggers* (May 16, 2025), https://www.justice.gov/opa/pr/department-justice-announces-settlement-litigation-between-federal-government-and-rare-breed (last visited Jan. 10, 2026)).  As the DOJ states in its press release, the settlement rested on certain conditions requiring Plaintiffs to ensure public safety and enforce their patents on forced reset triggers:

> The settlement includes agreed-upon conditions that significantly advance public safety with respect to FRTs, including that Rare Breed [1] will not develop or design FRTs for use in any pistol and [2] will enforce its patents to prevent infringement that could threaten public safety. Rare Breed also agrees to promote the safe and responsible use of its products.

*Id.*

D.       **The Rapidly Changing Litigation Landscape**

Since the settlement, an ever-increasing number of entities have flooded the market with infringing products—with an apparent marked increase around the holidays of 2025.  All of the accused products found in the market are variations on trigger systems with similar components. There are therefore now a fast-growing number of cases in which the Plaintiffs assert various combinations of their patents against various types of accused products throughout the country.

As an example, in a case ***not identified*** by the Movant Defendants, a manufacturer named Partisan Triggers ("Partisan") manufactures a knockoff that is a copy—except for irrelevant changes to the look of the outer housing—of RBT's FRT-15L3 three-position forced reset trigger. A Defendant, which is Partisan's distributor, then sells the knockoff to customers for two-thirds of RBT's price ($299 rather than RBT's $450 price).  Ex. 3; Ex. 4.  In this example case, the

7

Plaintiffs assert four patents—the '223, '003, '336, and '807 Patents—against the accused Disruptor product. *See, e.g.*, *Rare Breed Triggers, Inc. et al. v. Firearm Systems LLC et al.*, No. 2:25-cv-04938-SMB (D. Ariz.) ("*Firearm Systems*"), Dkt. 1, ¶¶ 25–42, 52, 59, 66, 73. Partisan publicly bragged it has shipped thousands of additional units in response to this case. Ex. 5.

 

**RBT FRT-15L3**         **Accused Partisan Disrupter**

As another example, in a case **identified** by the Movant Defendants—*ABC IP, LLC et al. v. Harrison Gunworks LLC et al.*, No. 4:25-cv-00299-REP (D. Idaho) ("*Harrison 299*")—the Plaintiffs assert two groups of patents against two types of products. Namely, the Plaintiffs assert (i) the '247 and '784[4] Patents against a "Super Safety" product, *Harrison 299*, Dkt. 1, ¶¶ 44–52, and (ii) the '223, '003, '336, and '807 Patents against the "Defender FRT" product, *id.*, ¶¶ 53–81.

---

[4] Inclusion of the '784 patent is subject to a pending motion to amend.

8



**Super Safety**



**Defender FRT**

In yet another example case *identified* by the Movant Defendants, another combination of asserted patents and accused products are at play: the Plaintiffs assert the '247 and '784[5] Patents against the accused Super Safety product. *ABC IP, LLC et al. v. Z3 Prods., LLC*, No. 5:25-cv-00695 (W.D. Okla.), Dkt. 1, ¶ 20.

As a final example case *not identified* by the Movant Defendants, the Plaintiffs assert another unique combination of patents—the '784, '247, and '723 Patents—against another Super Safety product. *ABC IP, LLC et al. v. Hoffman et al.*, No. 1:25-cv-00389-CLC-CHS (E.D. Tenn.), Dkt. 1, ¶¶ 44–53, 61–95. A Temporary Restraining Order issued against the defendants in this case today.

Thus, the relevant litigation landscape is complex and, at the moment, rapidly changing as the Plaintiffs uncover new infringers and new products around the country that practice the Plaintiffs' patents—a process updating almost daily. The landscape is made even more complicated by Plaintiffs' ownership of applications for patents in this same field that are soon to issue, and which Plaintiffs will seek to add to many of these cases.

---

[5] Inclusion of the '784 patent is subject to a pending motion to amend.

### E. The Plaintiffs' Pertinent Cases

The following are the six cases that the Movant Defendants *identify* for centralization:

| Case | District Court | Defense Counsel | Date Filed | Asserted Patent(s) | Accused Product(s) | |
|------|----------------|-----------------|------------|--------------------|--------------------|---|
| *Rare Breed Triggers, Inc. et al. v. DNT LLC et al.*, No. 4:25-cv-00298 | D. Idaho (J. Brailsford) | Elam & Burke; Emerson Thomson Bennet | 6/6/2025 | '247; '723; '784[6] | Super Safety | X |
| *ABC IP, LLC et al. v. Harrison Gunworks LLC et al.*, No. 4:25-cv-00299 | D. Idaho (J. Brailsford) | Elam & Burke; Emerson Thomson Bennet | 6/6/2025 | '223; '003; '336; '247; '807; '784[4] | Super Safety; Defender FRT | X |
| *ABC IP, LLC et al. v. Hanes Tactical LLC et al.*, No. 3:25-cv-00201 | W.D. Tex. (J. Guaderrama) | Langley Law | 6/6/2025 | '247; '723 | Super Safety | X |
| *ABC IP, LLC et al. v. Z3 Productions LLC*, No. 5:25-cv-00695 | W.D. Okla. (J. Goodwin) | Michael S. Vernon; Emerson Thomson Bennet | 6/23/2025 | '247; '748[4] | Super Safety | X |
| *ABC IP, LLC et al. v. 80Mills LLC et al.*, No. 1:25-cv-01262 | N.D. Ohio (J. Calabrese) | Emerson Thomson Bennet | 6/17/2025 | '247 | Super Safety | X |
| *ABC IP, LLC et al. v. Nguyen*, No. 4:25-cv-02961 | S.D. Tex. (J. Hanks) | Emerson Thomson Bennet; Langley Law | 6/26/2025 | '247; '748[4] | Super Safety | X |

A number of additional cases exist that the Movant Defendants *do not identify* for centralization. First, the following two cases existed when the Movant Defendants' filed their Motion, and Movant Defendants provide no reason for omitting them. *See generally* Motion.

---

[6] Inclusion of the '784 patent is subject to a pending motion to amend.

| Case | District Court | Defense Counsel | Date Filed | Asserted Patent(s) | Accused Product(s) | |
|------|----------------|-----------------|------------|--------------------|--------------------|---|
| *Rare Breed Triggers, Inc. et al. v. Dairyland Defense Solutions, LLC et al.,* No. 2:25-cv-00852 ("*Dairyland*") | E.D. Wis. (J. Adelman) | Emerson Thomson Bennet; Halling & Cayo | 6/13/2025 | '223; '003; '336; '807 | Three position safety selector | X |
| *ABC IP, LLC et al. v. Kline*, No. 3:25-cv-00454 ("*Kline*") | S.D. Miss. (J. Harris) | N/A | 6/23/2025 | '247 | Super Safety | X |

Second, the Plaintiffs filed the following ten new cases since the Movant Defendants filed their Motion.  These cases substantively overlap with the cases that the Movant Defendants identify in terms of asserted patents and accused product features.

| Case | District Court | Defense Counsel | Date Filed | Asserted Patent(s) | Accused Product(s) | |
|------|----------------|-----------------|------------|--------------------|--------------------|---|
| *ABC IP, LLC et al. v. AR-TT LLC et al.*, No. 2:26-cv-00014 | E.D. Washington | N/A | 1/13/2026 | '223; '003; '336; '807 | Partisan Disruptor | X |
| *ABC IP, LLC et al. v. Cope*, No. 2:26-cv-00033 | E.D. Texas (J. Gilstrap) | N/A | 1/13/2026 | '247; '784; '223; '003; '336; '807 | Super Safety; 2-pos FRT; 3-pos FRT; | X |
| *ABC IP, LLC et al. v. MaRs Trigger, LLC et al.*, No. 2:26-cv-00030 | E.D. Texas (J. Gilstrap) | N/A | 1/12/2026 | '247; '784 | Super Safety | X |
| *ABC IP, LLC et al. v. WebCorp, Inc. et al.,* No. 4:26-cv-00018 | E.D. Missouri (J. Collins) | N/A | 1/7/2026 | '247; '784; '223; '003; '336; '807 | Atrius Forced Reset Selector; Partisan Disruptor | X |

Other litigations not listed in the chart brought by ABC IP and Rare Breed Triggers. These are all defendants.

Peak Tactical filed 1/15/26
Hush Distribution filed 1/22/26
Pistol Cap, Frisco Guns filed 1/22/26
Mister Guns filed 1/22/26

ProSource filed 1/22/26
Superior filed 1/22/26
HK Parts filed 2/4/26
Orion Arms filed 2/4/26
TRG dba Mission Ridge Range filed 3/13/26
Canuck Tactical filed 3/17/26

11

| Case | District Court | Defense Counsel | Date Filed | Asserted Patent(s) | Accused Product(s) | |
|------|----------------|-----------------|------------|--------------------|--------------------|--|
| *ABC IP LLC et al. v. SGC LLC et al.,* No. 2:26-cv-00085 | D. Arizona (J. Lanham) | N/A | 1/7/2026 | '223; '003; '336; '807 | Partisan Disruptor | X |
| *ABC IP, LLC et al. v. Hawkphin Sales, LLC et al*; No. 4:26-cv-00015 | S.D. Iowa (J. Ebinger) | N/A | 1/7/2026 | '247; '784; '223; '003; '336; '807 | Super Safety; Atrius Forced Reset Selector; Partisan Disruptor | X |
| *ABC IP, LLC et al. v. Cloak Industries, Inc. et al.,* No. 1:26-cv-00001 | D. Idaho (J. Brailsford) | N/A | 1/5/2026 | '223; '003; '336; '807 | Partisan Disruptor | X |
| *Rare Breed Triggers, Inc. et al. v. AS Designs, LLC et al.,* No. 1:25-cv-01192 | M.D.N.C. (J. Osteen) | N/A | 12/30/2025 | '784; '247 | Super Safety; ARC-Fire | X |
| *Rare Breed Triggers Inc. et al. v. Firearm Systems LLC et al.,* No. 2:25-cv-04938 | D. Ariz. (J. Brnovich) | N/A | 12/23/2025 | '223; '003; '336; '807 | Partisan Disruptor | X |
| *ABC IP, LLC et al. v. Hoffman et al.,* No. 1:25-cv-00389 | E.D. Tenn. (J. Collier) | N/A | 12/23/2025 | '784; '247; '723 | Super Safety | |

## III.  LEGAL STANDARDS

Under 28 U.S.C. § 1407(a), "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings."  Transfer is appropriate where the Panel

12

determines that centralization will be "for the convenience of parties and witnesses" and "will promote the just and efficient conduct of such actions." *Id.*

## IV.    ARGUMENT

The Plaintiffs agree with the Movant Defendants that the Panel should centralize the Plaintiffs' actions into an MDL.  The parties appear to disagree only about *which* cases, and *where* centralization should occur.

First, the Panel should centralize all of the Plaintiffs' actions listed in Schedule A.  *See* Ex. 1.  The Movant Defendants seek centralization of only six of the eight actions that existed when they filed their Motion.  The Movant Defendants provide no reason for omitting the other two actions.  Because of their extensive substantive overlap with the Movant Defendants' six actions—including common patents and accused product designs—the two omitted actions should also be centralized.

Second, the Panel should centralize the actions with Judge Rodney Gilstrap of the Eastern District of Texas, or alternatively Judge Alan Albright of the Western District of Texas.  Judges Gilstrap and Albright are among the country's most experienced district court judges in patent cases.  Given the complexity not only of the patents here and patent law itself, but also this infringement landscape—marked by various products accused of infringing various combinations of patents—centralizing before Judge Gilstrap or Albright provides the surest route for efficient progression of these cases towards trial.  Texas is also a central location for these cases which, so far, span the country from Idaho to North Carolina.  Indeed, four existing cases are in Texas, and two are already before Judge Gilstrap.

A.      **The Panel Should Centralize All of Plaintiffs' Overlapping Actions**

1.      **The Panel Should Centralize the Six Actions That the Movant Defendants Identify**

The parties agree that centralization is appropriate for the six actions that the Movant Defendants have identified in their Motion. *See, e.g.*, Motion, 3; Dkt. 1-2. Given the overlap in asserted patents, prosecution histories, accused product design, pertinent prior art, and plaintiffs across these six actions, the actions share common questions of fact relating to at least claim construction, infringement, and validity. *See supra* §§ II.D, -E. These six actions' consolidation would therefore enhance the convenience of the parties and witnesses and promote the just and efficient conduct of the actions. Motion, 4–7; 28 U.S.C. § 1407(a).

2.      **The Panel Should Also Centralize Twelve Additional Overlapping Tag-Along Actions the Movant Defendants Do Not Identify**

Together with the six actions the Movant Defendants identify, the Panel should also centralize the twelve additional potential tag-along actions that the Movant Defendants fail to identify. *See supra* § II.D. Because these twelve actions also share significant substantive overlap with the six actions the Movant Defendants have identified, centralizing all of them together would yield significant efficiencies and benefits for the courts, parties, and witnesses. *See* 28 U.S.C. § 1407(a).

Tag-along actions include any "civil action pending in a district court which involves common questions of fact with . . . actions on a pending motion to transfer to create an MDL . . . and which the Panel would consider transferring under Section 1407." Panel Rule 1.1(h). The Panel often accounts for potential tag-along actions in deciding whether to centralize overlapping cases. *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 475 F. Supp. 2d 1403, 1403 n.1, 1404 (J.P.M.L. 2007); *In re Stand 'n Seal Prods.*, 469 F. Supp. 2d 1351, 1351 n.1, 1352 (J.P.M.L. 2007).

14

The twelve potential tag-along actions fall into two groups. ***First***, *Dairyland* and *Kline* (1) substantively overlap with the Movant Defendants' six actions in terms of accused product design and asserted patents; and (2) were filed within days of Movant Defendants' six actions. In *Kline*, the Plaintiffs assert claim 15 of the '247 Patent—a prominent reason Movant Defendants state for selecting their six actions for centralization. *See* Motion, 3. *Kline* also involves a Super Safety—the same accused product type in all six of Movant Defendants' identified actions—thus overlap with Movant Defendants' six cases is significant if not complete. *See supra* § II.E.

*Dairyland* also overlaps with the Movant Defendants' six actions. *Dairyland* involves the '223, '003, '336, and '807 Patents, also asserted in *Harrison 299*. *See supra* § II.E. The accused products in both *Dairyland* (three-position safety selector) and *Harrison 299* (Defender FRT) also overlap in their design, as shown below.




*Harrison 299*, Dkt. 1, ¶ 39     *Dairyland*, Dkt. 1, ¶ 24

Therefore, it is likely that the *Dairyland* will overlap significantly with the Movant Defendants' six identified actions. It is unclear why *Dairyland* or *Kline* would be excluded from centralization.

***Second***, the Movant Defendants have not identified the ten new actions listed above. *See supra* § II.E. These ten actions all have asserted patents—namely, the '223, '003, '336, '807, '247, and '723 Patents—in common with the Movant Defendants' six actions. *See supra* § II.E. They also overlap in terms of accused product design, since all ten involve the Super Safety and/or the

15

Partisan Disruptor (which shares features in common with the accused products in *Harrison 299* and *Dairyland*, as shown below).


**Defender FRT**
*Harrison 299*, Dkt. 1, ¶ 39


**Three-position safety selector**
*Dairyland*, Dkt. 1, ¶ 24


**Partisan Disrupter**
*Firearm Systems*, Dkt. 1, ¶ 52

Indeed, all accused products in all existing actions to date are simply variations on trigger systems with similar components. Under these circumstances, substantive overlap among all the cases is inescapable.

Because of their significant substantive overlap, the Panel should centralize all of the actions identified in Schedule A. Ex. 1. Doing so will yield further efficiencies for the presiding court, parties, and witnesses. *See* 28 U.S.C. § 1407(a); Motion, 6–7.

### 3.   The Panel Should Centralize Given the High Likelihood of Additional Future Overlapping Actions

Given an apparent spike of infringing activity in late 2025 that the Plaintiffs are currently actively investigating, the Plaintiffs anticipate that more overlapping actions will be filed in the coming days and weeks. Indeed, the DOJ charged RBT with enforcing their FRT patents as a condition of settlement, for public safety reasons, among others. *See supra* § II.C; Ex. 2. The Plaintiffs' ownership of relevant applications for patents soon to issue also increases the likelihood of more future tag-along actions. Where, as here, the potential tag-along actions are numerous and geographically distributed, centralization is warranted. *See, e.g.*, *In re: Packaged Ice Antitrust Litig.*, 560 F. Supp. 2d 1359, 1360 n.3, 1360–61 (J.P.M.L. 2008) (centralizing where actions included 26 potential tag-along actions in "various districts across the country"); *In re: Cathode*

*Ray Tube (CRT) Antitrust Litig.*, 536 F. Supp. 2d 1364, 1364 n.1, 1364–65 (J.P.M.L. 2008) (centralizing where 28 potential tag-along actions were pending in ten different districts).

**B.  The Panel Should Centralize Before Judge Gilstrap in the Eastern District of Texas, or Alternatively Judge Albright in the Western District of Texas**

Judges Gilstrap and Albright are both highly experienced and proficient at efficiently managing complex patent cases, and both have well-worn rules and procedures for patent cases, eliminating surprise and uncertainty for parties. That expertise is needed here given the complexity of the infringement landscape, the patents, and patent law itself. Texas is also a central place for these actions around the country—especially since more cases are located in Texas than any other state.

**1.  Judges Gilstrap and Albright Have Proven Track Records of Efficiently Advancing Complicated Patent Cases Towards Trial**

In choosing a transferee forum, the Panel considers whether a transferee judge has the experience and institutional capacity needed to manage complex litigation efficiently and effectively. Where, as here, the MDL involves highly technical fact questions, complex legal questions, and overlapping pretrial issues, the Panel has emphasized the importance of assigning the matter to an experienced judge "who [it is] confident will steer this litigation on a prudent course." *In re Mirena IUD Prods. Liab. Litig.*, 938 F. Supp. 2d 1355, 1358 (J.P.M.L. 2013); *see also In re "Agent Orange" Prods. Liab. Litig.*, 560 F. Supp. 2d 1352, 1353–54 (J.P.M.L. 2008). The transferee judge's experience carries additional weight where, as here, the cases are dispersed through the country and no single district clearly predominates in case count. *See In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (given geographical dispersal, selecting "a transferee district with the capacity and experience to steer this litigation on a prudent course").

17

This MDL will likely require the presiding judge to have substantial experience managing complex patent cases; otherwise, this case presents risk of meaningful delays on the path to trial that could unfairly prejudice the plaintiffs.  Here, claim construction—as one example—will likely be important and complex, given that there are numerous accused products that are similar but not identical.  *See supra*.  This complexity raises the prospect of inconsistent claim constructions absent centralization, and creates a need for seasoned experience managing claim construction procedures and assessing the strength of claim construction arguments.  Patent cases also present unique issues at discovery, expert discovery, and pretrial motions, and the complex landscape here increases the need for established experience at each stage.

The Plaintiffs thus propose Judge Gilstrap, who is "well-versed in complex patent litigation" and has presided over multidistrict litigation.  *In re Taasera Licensing, LLC, Pat. Litig.*, 619 F. Supp. 3d 1352, 1353 (J.P.M.L. 2022) (centralizing cases in MDL before Judge Gilstrap).  Judge Gilstrap already presides over two of the cases in question.  *ABC IP, LLC v. Cope*, No. 2:26-cv-00033 (E.D. Tex. 2026); *ABC IP, LLC v. MaRs Trigger, LLC*, No. 2:26-cv-00030 (E.D. Tex. 2026).  Judge Gilstrap also has well-understood rules and procedures for patent cases—including rules governing discovery disputes, motions in limine, trial, and even patent-specific issues.  *See* Ex. 6; Ex. 7.  According to LexMachina, Judge Gilstrap has presided over *9,871* patent cases, and in those cases, *690* claim construction hearings and *197* trials.  Ex. 8.  Judge Gilstrap's established patent and MDL experience favors him as transferee judge.

Judge Albright is a viable alternative as transferee judge.  *See, e.g.*, *In re BP p.l.c. Sec. Litig.*, 734 F. Supp. 2d 1376, 1379 (J.P.M.L. 2010) (transferring to a judge not yet presiding over the cases in question).  Judge Albright also has extensive experience presiding over patent cases—*6,345* cases total, and in those cases, *568* claim construction hearings and *105* trials.  Ex. 9.  Judge

18

Albright and his court also have frequently-litigated rules and procedures for patent cases. Ex. 10. Given these judges' experience, Judge Gilstrap, and alternatively Judge Albright, are well suited to manage this patent MDL efficiently.

### 2. Texas Is a Convenient and Central Geographic Location

The Panel should centralize in the Eastern District of Texas, or alternatively Western District of Texas, as discussed above, for several reasons.

*First*, Texas is a central location, given that the cases in question are dispersed throughout the country—currently from Idaho to North Carolina—with no clearly predominant state or district so far other than Texas. *See, e.g.*, *In re BP p.l.c. Sec. Litig.*, 734 F. Supp. 2d 1376, 1379 (J.P.M.L. 2010) (centralizing in a Texas court where potential plaintiffs would "reside in every corner of the country," even though no constituent action was pending there). Choosing a central location benefits all the parties and witnesses, consistent with the MDL statute's goals, by increasing convenience and minimizing travel burdens. *See, e.g.*, *In re African-American Slave Descendants Litig.*, 231 F. Supp. 2d 1357, 1358 (J.P.M.L. 2002); *In re Passenger Vehicle Replacement Tires Antitr. Litig.*, 737 F. Supp. 3d 1364, 1366 (J.P.M.L. 2024).

Although the Movant Defendants seek centralization in the Northern District of Ohio, centralization near either Dallas (Eastern District of Texas) or Austin (Western District of Texas) would be more convenient for the parties located on the West Coast, such as Idaho, and would more evenly distribute the travel burdens and inconvenience among the parties and witnesses. For example, flight searches show that it is generally faster and cheaper to fly from Boise to Austin or Dallas than it is to fly from Boise to Cleveland. *Compare* Ex. 11 (5 hour and 10 minute flight from Boise to Austin costing $370), *and* Ex. 12 (3 hour and 9 minute flight from Boise to Dallas costing $503), *and* Ex. 13 (5 hour and 8 minute flight from Boise to Dallas costing $229), *with* Ex. 14 (6 hour and 8 minute flight from Boise to Cleveland costing $483).

19

*Second*, Texas already hosts more of the actions in question than any other state. *See supra* § II.E. Based on the Plaintiffs' investigation to date, it is likely that more than ten additional future cases will be filed in Texas, and so Texas is just as likely, if not more likely, than any other state to predominate in case count as this MDL progresses.

*Third*, the Plaintiffs' location in Texas supports centralizing the actions in Texas to increase efficiency throughout the litigation, including during discovery. Where a party appears in every action, that party's location takes on heightened importance in assessing transfer. *See, e.g.*, *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 621 F. Supp. 3d 1349, 1350 (J.P.M.L. 2022); *In re Procter & Gamble Aerosol Prods. Mktg. & Sales Pracs. Litig.*, 600 F. Supp. 3d 1343, 1344 (J.P.M.L. 2022).

For all the reasons above, the Panel should centralize the cases in Texas to maximize the centrality and convenience for the parties and witnesses, and to benefit from Judge Gilstrap or Judge Albright's extensive experience advancing patent cases toward trial.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Panel transfer the Actions listed on Ex. 1 (Plaintiff's Schedule A) to the United States District Court for the Eastern District of Texas before the Honorable J. Rodney Gilstrap, or alternatively, to the United States District Court for the Western District of Texas before the Honorable J. Alan Albright, for coordinated or consolidated pretrial proceedings.

Dated: January 13, 2026

Respectfully submitted,

By: */s/ Glenn D. Bellamy*
    Glenn D. Bellamy
    Ohio Bar No. 00700321
    Wood Herron & Evans LLP
    600 Vine Street, Suite 2800
    Cincinnati OH 45202
    Tel: (513) 707-0243

E-mail: gbellamy@whe-law.com

Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
E-mail: colvin@fr.com
        bruce@fr.com

Ben Christoff
FISH & RICHARDSON P.C.
1000 Maine Ave, SW, Suite 100
Washington, DC 20024
(202) 783-5070
E-mail: christoff@fr.com

and

Glenn D. Bellamy
Ohio Bar No. 00700321
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati OH 45202
Tel: (513) 707-0243
E-mail: gbellamy@whe-law.com

*Attorneys for Plaintiffs*
*ABC IP, LLC and Rare Breed Triggers, Inc.*

21