IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ABC IP, LLC *et al.*,<br><br>　　　*Plaintiffs*,<br><br>v.<br><br>TIMOTHY HOFFMAN, *et al.*,<br><br>　　　*Defendants*. | Case No. 1:25-cv-00389-CLC-CHS<br><br>Judge Curtis Collier |

**NONPARTY AS DESIGNS, LLC'S SEPARATE MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11 REGARDING PLAINTIFFS' MOTION AND BRIEF FOR ORDER TO SHOW CAUSE WHY AS DESIGNS, LLC SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING PRELIMINARY INJUNCTION (DOC. 52)**

Nonparties AS Designs, LLC, Matthew Karlovic, and Calvin Olson (collectively, "AS Designs"), appearing specially and without waiving any jurisdictional or other defense, move separately under Federal Rule of Civil Procedure 11(c)(2) for sanctions against Plaintiffs and Plaintiffs' counsel arising from Plaintiffs' "Motion and Brief for Order to Show Cause Why AS Designs, LLC Should Not Be Held in Contempt for Violating Preliminary Injunction" (Doc. 52, the "Show-Cause Motion"). This motion is made separately from any other motion, as Rule 11(c)(2) requires.

The Show-Cause Motion violates Rule 11(b)(1)-(3). The legal theory advanced in the Show-Cause Motion is not warranted by existing law because Rule 65(d)(2) does not authorize contempt against every company that receives notice and sells a similar product. It reaches only persons who, after notice, are legally identified with the enjoined party or knowingly aid that party's violation. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 112 (1969); *Blackard v. Memphis Area Med. Ctr. for Women, Inc.*, 262 F.3d 568, 576 (6th Cir. 2001); *PHG*

*Techs., LLC v. St. John Cos., Inc.*, 529 F. Supp. 2d 852, 863 (M.D. Tenn. 2007). The Preliminary Injunction that the Court issued binds Defendants Hoffman, Hoffman Tactical, and those persons described in Rule 65(d)(2). It does not bind "all who have notice" of it. *See* Doc. 45 at 14 n.6; Doc. 46 at 1. Plaintiffs nonetheless filed a contempt motion that attempts to repackage that rejected theory as "active concert."

The Show-Cause Motion also lacks evidentiary support and was presented for an improper purpose. It identifies no act after February 11, 2026 (when the Preliminary Injunction issued) by Hoffman or Hoffman Tactical that AS Designs knowingly aided. Instead, the Motion relies on stale public file releases, historical third-party sales, pre-injunction contacts, and AS Designs' own alleged conduct. In context, the Show-Cause Motion is part of Plaintiffs' broader and unusually aggressive enforcement campaign to monopolize the forced-reset-trigger market; but Rule 11 forbids litigants from using extraordinary procedures to stretch governing law beyond what the Court ordered. AS Designs respectfully requests sanctions sufficient to deter repetition of this conduct, including the reasonable attorneys' fees and expenses directly caused by the Show-Cause Motion and such other relief as the Court deems just and proper.

## **BACKGROUND**

On February 11, 2026, the Court entered a Preliminary Injunction against Defendants Timothy Hoffman and Hoffman Tactical LLC. Doc. 46. The injunction prohibits Defendants and those persons described in Rule 65(d)(2) from making, using, selling, offering to sell, or importing the accused devices; disclosing or transferring the accused design files; and instructing or facilitating others to engage in the proscribed conduct. *Id*. at 1-2.

The accompanying Memorandum is equally important. Although the Court noted evidence that Hoffman knew of other companies making products "in accord with or based on" his design,

2

Doc. 45 at 7-8, the Court expressly *rejected* Plaintiffs' proposed Sections 60(f) and 60(g), which would have required posting the injunction and purported to bind "all who have notice of" it. The Court held that such relief "exceeds what was requested in Plaintiffs' motion . . . and was not addressed during the preliminary-injunction hearing." *Id.* at 14 n.6.

Plaintiffs have already chosen to litigate directly against AS Designs elsewhere. Their Show-Cause Motion acknowledges a pending suit against AS Designs in the Middle District of North Carolina. Doc. 52 at 3 n.2 (citing *Rare Breed Triggers, Inc. v. AS Designs, LLC*, No. 1:25-CV-1192 (M.D.N.C.)). The hearing record says the same. When asked about AS Designs, DeMonico answered: "We've already filed a suit against AS Designs." PI Hr'g Tr. Vol. 1 (Doc. 36) at 47:8-9. Plaintiffs also identified other separate sellers as distinct companies with their own Super Safety-based products. *Id*. at 53:23-54:3.

The broader backdrop matters. In the United States' Statement of Interest filed in this case, the government advised this Court that, after the May 2025 DOJ/ATF settlement with Rare Breed, Rare Breed agreed to "take all reasonable efforts to enforce its patents and seek injunctions against any person or entity that manufactures, sells, or distributes any FRT," and the government further noted that Plaintiffs had filed "more than 15 patent suits" in the prior seven months. Doc. 28 at 3, 6. That broader campaign is not itself sanctionable. But it provides essential context for why Plaintiffs attempted here to use contempt to reach a separately sued nonparty rather than proceed through ordinary merits litigation and direct provisional-relief practice.

Before the injunction was entered, the Court itself cautioned that its eventual scope was not yet known. When Plaintiffs asked DeMonico to speculate about whether an injunction against Hoffman would stop third parties, the Court stated: "No preliminary injunction has been issued yet. So even I don't know what the scope of that injunction would be," and "even I don't know

what the injunction would say." PI Hr'g Tr. Vol. 2 (Doc. 37) at 19:22-20:2. The Court later resolved that scope question by entering a standard Rule 65(d)(2) injunction and by rejecting Plaintiffs' proposed "all who have notice" language. Doc. 45 at 14 n.6; Doc. 46 at 1.

The evidence Plaintiffs now cite regarding AS Designs does not change that analysis. Hoffman testified that "hundreds or thousands" of people had asked him for troubleshooting help, PI Hr'g Tr. Vol. 3 (Doc. 38) at 40:16-18, and that the only specific AS Designs contact he recalled was an August 2025 conversation in which he pointed out a design flaw in one of AS Designs' products, *id*. at 41:6-8. Plaintiffs' motion also relies on website language, pre-injunction industry contacts, and a February 12, 2026 notice letter. Even taken at face value, those materials do not show that AS Designs knowingly helped Hoffman violate the injunction after it was entered.

## ARGUMENT

### I.    RULE 11 REQUIRES A REASONABLE INQUIRY INTO FACT AND LAW AND FORBIDS FILINGS MADE FOR IMPROPER PURPOSES OR WITHOUT EVIDENTIARY SUPPORT.

Per Rule 11(b), an attorney certifies that, after an inquiry reasonable under the circumstances, a paper is not presented for an improper purpose, that its legal contentions are warranted by existing law or a nonfrivolous argument for changing the law, and that its factual contentions have evidentiary support. Fed. R. Civ. P. 11(b)(1)-(3). The Sixth Circuit repeatedly applies an objective standard. In *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989), the court explained that Rule 11 imposes three separate duties: reasonable inquiry into fact, reasonable inquiry into law, and no improper purpose. Subjective good faith does not excuse noncompliance. *Id*.

*Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997), *Ridder v. City of Springfield*, 109 F.3d 288, 293-97 (6th Cir. 1997), and *Runfola & Assocs., Inc. v. Spectrum*

4

*Reporting II, Inc.*, 88 F.3d 368, 372-76 (6th Cir. 1996), reiterate that the test is whether the challenged conduct was reasonable under the circumstances and recognize the district court's wide discretion to determine whether Rule 11 has been violated and to fashion deterrent sanctions. *Runfola* further holds that Rule 11 imposes a continuing responsibility to review and reevaluate positions and permits sanctions where a party persists after it becomes clear the claim lacks competent evidentiary support. 88 F.3d at 374-76.

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510, 517 (6th Cir. 2002), likewise recognizes that Rule 11 reaches papers filed for an improper purpose, papers not warranted by existing law, and papers whose factual contentions lack evidentiary support, and that the core inquiry is objective unreasonableness. Rule 11 sanctions are designed to deter repetition and may include nonmonetary directives, a penalty, or fees and expenses directly caused by the violation when imposed on motion and warranted for effective deterrence. Fed. R. Civ. P. 11(c)(4); *Union Planters*, 115 F.3d at 384.

*Tahfs v. Proctor*, 316 F.3d 584, 594-95 (6th Cir. 2003), reinforces the same objective standard: a paper is sanctionable when, after reasonable inquiry, competent counsel could not form a reasonable belief that it is well grounded in fact and warranted by existing law. Rule 11 does not punish zeal by itself, but it does reach advocacy that presses unsupported factual contentions or uses a filing as a procedural weapon to obtain relief the governing law does not permit. *See id.;* *Jackson*, 875 F.2d at 1229; *First Bank*, 307 F.3d at 510, 517.

II.    **PLAINTIFFS' SHOW-CAUSE MOTION IS NOT WARRANTED BY EXISTING LAW BECAUSE NONPARTY CONTEMPT REQUIRES A SPECIFIC VIOLATION OF A DEFINITE ORDER AND KNOWING POST-INJUNCTION PARTICIPATION IN AN ENJOINED PARTY'S BREACH.**

Civil contempt is an extraordinary remedy. The movant must prove by ***clear and convincing evidence*** that the alleged contemnor violated a definite and specific order of the Court

5

with knowledge of that order. *See NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987); *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998). That standard is especially important here because Rule 65(d) is "designed to prevent uncertainty and confusion and to avoid founding a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

**For a nonparty, the bar is higher still**. Rule 65(d)(2) reaches only those nonparties who receive actual notice and are either legally identified with the enjoined party or act in active concert or participation with that party. Fed. R. Civ. P. 65(d)(2); *Zenith Radio*, 395 U.S. at 112. In deciding whether a nonparty is bound, courts "must examine the actual relationship between the person enjoined and the person thought to be bound by the injunction." *Blackard*, 262 F.3d at 576; *accord S. Elec. Health Fund v. Kelley*, 308 F. Supp. 2d 847, 868 (M.D. Tenn. 2003); *PHG Techs.*, 529 F. Supp. 2d at 863. The Sixth Circuit and Federal Circuit require proof that the nonparty knew of the injunction and knowingly aided and abetted an enjoined party's violation. *M & C Corp. v. Erwin Behr GmbH & Co.*, 508 F. App'x 498, 502 (6th Cir. 2012); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1351-53 (Fed. Cir. 1998).

Rule 65's active-concert clause exists to stop enjoined parties from nullifying a decree through aiders, abettors, or instrumentalities used to evade the order – not to impose an industry-wide injunction on independent actors. *See Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13-14 (1945); *Schenck v. Orosz*, 105 F. Supp. 3d 812, 821-22 (M.D. Tenn. 2015). A nonparty's independent conduct is not enough. *See United States v. Elsass*, 769 F.3d 390, 399 (6th Cir. 2014); *Havens v. James*, 76 F.4th 103, 111-12 (2d Cir. 2023); *Blockowicz v. Williams*, 630 F.3d 563, 567-68 (7th Cir. 2010). By ignoring these settled limits and treating notice plus alleged similarity as enough, Plaintiffs' Show-Cause Motion advanced a Rule 65 theory that is not warranted by existing law.

6

**III.**    **PLAINTIFFS IDENTIFY NO POST-FEBRUARY 11, 2026 VIOLATION BY HOFFMAN OR HOFFMAN TACTICAL THAT AS DESIGNS KNOWINGLY AIDED, SO THE SHOW-CASE MOTION LACKS EVIDENTIARY SUPPORT.**

Plaintiffs do not identify any post-February 11, 2026 violation by Hoffman or Hoffman Tactical that AS Designs supposedly assisted. That omission is fatal. *See Warner/Chappel Music, Inc. v. Blue Moon Ventures, Inc.*, No. , 2011 WL 13281770, at *4 (M.D. Tenn. Oct. 21, 2011) ("a nonparty in active concert cannot violate an injunction unless the enjoined party is also in contempt"). The Show-Cause Motion is not built around any act Hoffman took after entry of the injunction and then caused AS Designs to facilitate, nor does the Motion seek to hold Hoffman or Hoffman Tactical in contempt. Instead, Plaintiffs point to years-old public file releases, historical third-party sales, pre-injunction contacts, and AS Designs' own alleged conduct. Doc. 52 at 3-5, 9-10. ***Even if all of that were true, it would not show that AS Designs aided a post-injunction breach by the enjoined defendants.*** Nor would it establish the sort of actual relationship between Hoffman and AS Designs that Rule 65(d)(2) requires. *See Blackard*, 262 F.3d at 576; *S. Elec. Health Fund*, 308 F. Supp. 2d at 868.

The hearing testimony underscores the point. DeMonico admitted many alleged third-party sellers were already in the market "significantly before May of '25." PI Hr'g Tr. Vol. 2 (Doc. 37) at 16:23-24. He acknowledged that as of the night before his testimony, "15 different user accounts on Odysee.com" had Hoffman's files available for download, *id*. at 17:11-13, and that after one release "you can't put that genie back in the bottle," *id*. at 18:1-2. He also admitted: "I don't know what kind of control Mr. Hoffman has over anyone." *Id*. at 20:10-11. Those are not contempt facts. They are admissions that third-party republication and independent sales existed apart from any post-injunction direction or control by Hoffman. *See PHG Techs.*, 529 F. Supp. 2d at 863; *Elsass*, 769 F.3d at 399.

The AS Designs-specific testimony is even weaker. Hoffman testified that "hundreds or thousands" of people had asked him for troubleshooting assistance. PI Hr'g Tr. Vol. 3 (Doc. 38) at 40:16-18. The only AS Designs example he gave was a conversation "in, I believe, August of 2025" in which he pointed out a design flaw in one of ASD's products. *Id*. at 41:6-8. That was half a year before the Preliminary Injunction issued on February 11, 2026. Doc. 46. Pre-injunction assistance cannot establish contempt of a later order, and historical troubleshooting is not the kind of post-injunction assistance Rule 65(d)(2) targets. *See M & C Corp.*, 508 F. App'x at 502; *Schenck*, 105 F. Supp. 3d at 821-22.

*Runfola* and *Union Planters* make clear that Rule 11 is violated when a party persists in a factual theory after the record shows it lacks competent evidentiary support. *See Runfola*, 88 F.3d at 374-76; *Union Planters*, 115 F.3d at 384. That is what happened here.

## IV. PLAINTIFFS' CONTEMPT THEORY DIRECTLY CONTRADICTS THE INJUNCTION AND THE COURT'S ACCOMPANYING MEMORANDUM.

Plaintiffs' theory also contradicts the order they invoke. The Preliminary Injunction uses standard Rule 65(d)(2) language. Doc. 46 at 1. The accompanying Memorandum expressly refused to add Plaintiffs' proposed provisions that would have required posting the injunction and would have bound "all who have notice of" it. Doc. 45 at 14 n.6. That refusal matters. Rule 65 relief must be no broader than necessary, and the active-concert language is not a license to transform a party-specific order into a market-wide ban. *See Blackard*, 262 F.3d at 574-76; *Regal Knitwear*, 324 U.S. at 13-14. Yet the Show-Cause Motion proceeds as if notice plus alleged copying or design similarity were enough to make any seller a contemnor. That is simply the rejected "all who have notice" theory repackaged.

Nor can Plaintiffs stretch the Court's findings beyond what the Court actually found. The Memorandum recited evidence that Hoffman knew certain companies were making products "in

accord with or based on" his design. Doc. 45 at 7-8. But knowledge that third parties exist is not a finding of agency, proxy status, alter ego, legal identity, or post-injunction aiding and abetting. *See Elsass*, 769 F.3d at 399 (nonparty may not be brought within an injunction merely by naming him, and an actor proceeding on his own behalf is not swept in); *PHG Techs.*, 529 F. Supp. 2d at 863 (court must examine actual relationship); *Schenck*, 105 F. Supp. 3d at 821-22 (Rule 65(d)(2) targets aiders and abettors). If anything, the hearing record showed the opposite: the Court refused to let Plaintiffs elicit speculative testimony about the future scope of the injunction, and the Court later declined to enter the overbroad language Plaintiffs wanted. PI Hr'g Tr. Vol. 2 (Doc. 37) at 19:22-20:2; Doc. 45 at 14 n.6.

Filing a contempt motion built on the very theory the Court expressly rejected is objectively unreasonable under Rule 11. *See Jackson*, 875 F.2d at 1229; *First Bank*, 307 F.3d at 510, 517.

## V. PLAINTIFFS LACKED EVIDENTIARY SUPPORT FOR ANY ASSERTION THAT AS DESIGNS AND HOFFMAN WERE IN ACTIVE CONCERT OR THAT AS DESIGNS USED HOFFMAN'S CAD FILES.

Authorities confirm that the "active concert or participation" requirement is narrow and targets aiders, abettors, successors, or entities legally identified with the enjoined party – not independent actors engaged in similar conduct. The Federal Circuit has explained that injunctions may not be used to regulate the independent conduct of nonparties whose rights have not been adjudicated. *See Asetek Danmark A/S v. CMI USA Inc.*, 852 F.3d 1352, 1365-66 (Fed. Cir. 2017); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996). Courts addressing similar circumstances have likewise refused to extend injunctions to downstream manufacturers or sellers absent proof of coordinated activity after entry of the injunction. *See Paramount Pictures Corp. v. Carol Publ'g Grp., Inc.*, 25 F. Supp. 2d 372, 375-76

(S.D.N.Y. 1998); *O & L Assocs. v. Del Conte*, 601 F. Supp. 1463, 1465 (S.D.N.Y. 1985); *Petersen v. Fee Int'l, Ltd.*, 435 F. Supp. 938, 943-44 (W.D. Okla. 1975).

The supporting declarations of Tim Hoffman and Matthew Karlovic confirm that Hoffman and AS Designs are not in active concert with one another; are not aiders, abettors, successors-in-interest, privies, or entities legally identified with or controlled by one another; have no commercial or technical relationship; have no formal agreement; and have never transacted business or exchanged payments with one another. Those declarations further confirm that AS Designs does not use Hoffman's CAD drawings for either its Super Safety or ARC-Fire products, but instead uses its own drawings, CAD files, and designs.

Hoffman and AS Designs have not coordinated together on any activity since the injunction was issued against Hoffman, and they have not communicated with one another about any issue related to that injunction. In these circumstances, Plaintiffs had no evidentiary basis to file a contempt motion premised on active concert. *Union Planters* upheld sanctions where parties asserted factual contentions lacking evidentiary support and pursued them for delay or settlement leverage. 115 F.3d at 384. The same kind of unsupported factual overreach infects the Show-Cause Motion.

## VI.  PLAINTIFFS' SHOW-CAUSE MOTION IS PART OF AN OVERLY AGGRESSIVE ENFORCEMENT CAMPAIGN THAT USES CONTEMPT TO STRETCH THE LAW BEYOND THE COURT'S ORDER.

The proper vehicle for Plaintiffs' claims against AS Designs is the case in which AS Designs is a party. Plaintiffs admit they have already sued AS Designs in the Middle District of North Carolina. Doc. 52 at 3 n.2; PI Hr'g Tr. Vol. 1 (Doc. 36) at 47:8-9. If Plaintiffs believe AS Designs should be enjoined, they may litigate infringement, validity, claim scope, personal jurisdiction, and any request for provisional relief in that case. What they may not do is transform

10

the Hoffman injunction into a *de facto* injunction against a different defendant in a different lawsuit. That is precisely the sort of expansion Rule 65 forbids absent proof that the nonparty is actually identified with, represented by, or knowingly assisting the enjoined defendant. *See Blackard*, 262 F.3d at 576; *S. Elec. Health Fund*, 308 F. Supp. 2d at 868.

Viewed against Plaintiffs' broader litigation pattern, the Show-Cause Motion bears the hallmarks of an improperly aggressive procedural end run. The record shows Plaintiffs are pursuing a market-wide patent-enforcement campaign. Doc. 28 at 3, 6. Public dockets show that when Plaintiffs want emergency relief against a target seller, they know how to seek it directly, and the public dockets also show that Plaintiffs have not always obtained such relief. *See, e.g., ABC IP, LLC v. Peak Tactical LLC*, No. 2:26-cv-00018, Doc. 6 (D. Wyo. Jan. 16, 2026) (motion for preliminary injunction DENIED); *See ABC IP, LLC v. Hanes Tactical LLC*, No. 3:25-cv-00201, Doc. 14 (W.D. Tex. Aug. 20, 2025) (denying request for preliminary injunction without prejudice). A patentee may aggressively protect its patents. The Rule 11 problem is that Plaintiffs attempted here to use contempt to obtain equivalent market-stopping relief against a nonparty without satisfying Rule 65(d)(2) and without first securing that relief directly in the AS Designs case.

That is especially true here, where Plaintiffs' own litigation choices show that contempt is being used as a substitute for direct provisional-relief practice. Publicly available dockets reviewed as of March 7, 2026, in Plaintiffs' separate case against AS Designs and in several other parallel seller cases identified at the PI hearing do not reflect any motion for temporary restraining order or preliminary injunction. By contrast, Plaintiffs know how to seek direct provisional relief when they choose to do so.

11

An aggressive litigation strategy does not excuse a frivolous motion. Rule 11 exists precisely to prevent litigants from using any available procedural device to stretch the law in service of broader monopolistic business objectives. *See Jackson*, 875 F.2d at 1229; *Union Planters*, 115 F.3d at 384; *First Bank*, 307 F.3d at 510, 517; *Tahfs*, 316 F.3d at 594-95. Here, Plaintiffs used contempt as a procedural shortcut to try to stop a nonparty's independent sales before Plaintiffs proved that AS Designs was bound by the Hoffman injunction. That is objectively unreasonable and sanctionable.

## VII.    TO THE EXTENT PLAINTIFFS SEEK TO REACH THE ARC-FIRE OR ANY MODIFIED PRODUCT, THE SHOW-CAUSE MOTION IS LEGALLY AND FACTUALLY IMPROPER.

To the extent Plaintiffs seek to sweep in AS Designs' ARC-Fire or any other modified product, contempt is even less appropriate. In patent contempt proceedings, the movant must prove by clear and convincing evidence that the newly accused product is not more than colorably different from the adjudicated product and that it actually infringes the claims as previously construed. *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882-83 (Fed. Cir. 2011) (en banc). Plaintiffs' own motion confirms that the ARC-Fire raises product-specific infringement/noninfringement issues outside the present injunction record. Those issues belong in ordinary merits litigation, not in summary contempt proceedings against a nonparty.

Pressing contempt under *TiVo* on an undeveloped, product-specific record only reinforces the objective unreasonableness of the Show-Cause Motion. *See Jackson*, 875 F.2d at 1229; *Runfola*, 88 F.3d at 374-76.

## VIII.    SANCTIONS ARE WARRANTED AND SHOULD INCLUDE THE FEES AND EXPENSES DIRECTLY CAUSED BY THE SHOW-CAUSE MOTION.

Because the Show-Cause Motion violates Rule 11(b)(1)-(3), the Court should impose sanctions sufficient to deter repetition. The appropriate sanction is an order requiring Plaintiffs'

Counsel and, to the extent responsible under Rule 11(c)(1), Plaintiffs, to reimburse AS Designs for the reasonable fees and expenses directly caused by the Show-Cause Motion and by this separate Rule 11 motion, together with such nonmonetary directives as the Court deems appropriate. See Fed. R. Civ. P. 11(c)(1), (4).

*Union Planters* confirms that, where improper purpose and unsupported factual contentions have forced an opponent to incur needless expense, a direct payment to the injured party may be warranted for effective deterrence. 115 F.3d at 384. *Runfola* likewise recognizes the district court's broad discretion in tailoring sanctions once a Rule 11 violation has been found. 88 F.3d at 375-76. To the extent the Court views the violation as one involving purely unwarranted legal contentions under Rule 11(b)(2), any monetary sanction for that aspect of the violation should be directed to counsel rather than represented parties. Fed. R. Civ. P. 11(c)(5)(A).

A deterrent sanction is especially warranted where the challenged paper is part of a larger enforcement campaign spanning numerous cases. Without sanctions, Plaintiffs have every incentive to keep pressing the same overbroad "active concert" theory against other nonparties whenever ordinary patent litigation would be slower or more exacting – Plaintiffs have nothing to lose. Rule 11's deterrent function is designed for precisely this situation. *See Runfola*, 88 F.3d at 375-76; *Union Planters*, 115 F.3d at 384.

At a minimum, sanctions are warranted because Plaintiffs used contempt to press a legal theory the Court had already rejected (*see* Doc. 45 at 14 n.6), relied on a record that does not identify any post-injunction assistance by AS Designs, and attempted to obtain through contempt a result they should pursue, if at all, in separate merits litigation against AS Designs.

## **CONCLUSION**

For all of these reasons, AS Designs respectfully requests that the Court: grant this separate Rule 11 motion; find that Plaintiffs and/or Plaintiffs' counsel violated Rule 11 by filing the Show-Cause Motion; impose sanctions sufficient to deter repetition, including the reasonable fees and expenses directly caused by the Show-Cause Motion; deny or strike the Show-Cause Motion; and grant such other and further relief as the Court deems just and proper.

Dated: __, 2026

Respectfully submitted,

**EMERSON, THOMSON & BENNETT, LLC**

*/s/ John M. Skeriotis*
John M. Skeriotis (Ohio Bar # 0069263)
1914 Akron-Peninsula Road
Akron, Ohio 44313
Telephone: (330) 434-9999
jms@etblaw.com

*Attorney for Nonparties AS Designs, LLC, Matthew Karlovic, and Calvin Olson*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2026, I served a true and correct copy of the foregoing

motion on counsel for Plaintiffs via first-class mail:

Decker A. Cammack
Whitaker Chalk Swindle & Schwartz PLLC
301 Commerce Street, Suite 3500
Fort Worth, TX 76102

and via email:

Decker A. Cammack
dcammack@whitakerchalk.com

Glenn D. Bellamy
gbellamy@whe-law.com

Joseph Alan Jackson II
jaj@smrw.com

/s/ John M. Skeriotis
John M. Skeriotis (Ohio Bar # 0069263)
1914 Akron-Peninsula Road
Akron, Ohio 44313
Telephone: (330) 434-9999
jms@etblaw.com