**Exhibit 3 - Claim Chart for U.S. Patent No. 12,031,784**

**Super Safety**

| Claim: | Response to Infringement Allegations: |
|---|---|
| 1. In a forced rest [*sic*] trigger mechanism, an extended trigger member locking device, comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version).  *See also* Luettke Decl. & Ex. G (ECF Nos. 29-21, 29-28) (accusing Super Safety of infringement).<br><br>As best understood, neither version is a complete firearm trigger mechanism (*see* 2:16-17, 23-26, Figs. 1, 5), as each consists only of a lever, a cam, a detent, a trigger, and a centering block.  Similarly, these components individually are also not a firearm trigger mechanism.<br><br>The claim and specification refer to a "locking device" that comprises "a locking member" and no other components.  None of the dependent claims add any further components to the "locking device."  Neither does the prosecution history elucidate this ambiguity.  Thus, while the two are specified as separate components/limitations, it is unclear what the difference between them is, and specifically, what the "locking device" includes other than the "locking member." |
| a locking member that is movable between a first position in which it locks a trigger member against pulling movement and a second position where it does not restrict movement of the trigger member, | "Locking member" is a means-plus-function limitation governed by §112(f), as it uses a nonce word (member) prefixed by a function (locking) and does not have a plain and ordinary meaning connoting specific structure to a skilled artisan.  Thus, this limitation is limited to the corresponding structure disclosed in the specification and equivalents.  *See* Figs. 1-10, 3:7-4:57.<br><br>The Super Safety includes a lever that is movable between a first angular position and a second angular position.  The lever itself does not do anything to the trigger – it does not even contact the trigger.  When the lever is inserted |

1

| Claim: | Response to Infringement Allegations: |
|---|---|
| | into the cam and rotates the cam to the first position, the cam (if it is in forced-reset mode) forces the trigger to the reset position and prevents pulling it more than a nominal amount. When the lever rotates the cam to the second angular position, the cam allows the trigger to be pulled a greater amount than in the first position after which it will restrict pulling the trigger further, unlike the '784 Patent where the locking member in a second position does not at all restrict movement of the trigger (*see, e.g.*, Fig. 6). In standard semi-automatic mode, the cam moves between the first and second positions but does not restrict movement of the trigger. Neither the cam nor the lever "lock" the trigger as shown in Figs. 5 or 7. |
| the locking member configured to be movably supported by a frame and | The Super Safety lever is not configured to be movably supported by a frame (*see* 3:30-36, Figs. 1, 5-7). The lever is configured to be movably supported by the cam, which is designed to be movably supported by a lower receiver. However, the locking member 12 is disclosed as being pivotally mounted to the frame on a pin 20 through a hole, whereas the Super Safety cam has no hole through which a pin pivotally supports the cam to the frame. |
| including a generally upward extension portion configured to make actuating contact with a surface of a bolt carrier, | The Super Safety lever includes a generally upward-extending tail configured to make actuating contact with a surface of a bolt carrier (which is not included with the Super Safety). |
| such actuating contact causing the locking member to move from the first position to the second position, | Actuating contact between the (unincluded) bolt carrier and the lever tail causes the lever and cam to rotate from the second position to the first position and then back to the second position. |
| the locking member having a body portion that is movably supported and | The Super Safety lever has a lower portion that is movably supported by the cam, rather than a frame. The cam itself is slidable along its rotating axis, has no hole through which a pin secures it to the frame, is not spring-biased to move to any particular position, rotates through the entire length of the lever's travel (when moved by the bolt carrier), and allows the firearm to be set in safe, semi-automatic, and forced-reset modes, none of which is true for the |

2

| Claim: | Response to Infringement Allegations: |
|---|---|
| | body portion of the locking member disclosed in the specification. |
| an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position and a deflected position. | This claim recites that the locking member has both "a generally upward extension portion" and "an upwardly extending deflectable portion." Thus, while the two "portions" are specified as separate components/limitations, it is unclear what the difference between them is. The Super Safety lever does not have any other upwardly extending portion (other than its tail, which was discussed above with respect to the separate "upward extension portion"). <br><br> Furthermore, the lever is rigid and has no deflectable portion (and thus no deflected position). The lever's body and tail are unitary and are not separately movable relative to each other. Nor does the lever (alone or in combination with the cam) have a spring-biased portion that pivots about a pin in only one direction, as disclosed in the specification for the locking member. The slight wiggle room resulting from the tolerance of the dovetail connection would not be viewed by a POSA as deflection/movement relative to the body portion or as equivalent to the deflection disclosed in the '784 Patent (*see, e.g.*, Fig. 7), as it clearly has no function other than allowing assembly. |
| | |
| 3. The device of claim 1, | See claim 1 above. |
| wherein the locking member body portion pivots between the first and second positions. | As discussed above, the "locking member" is a means-plus-function limitation governed by §112(f). The specification discloses that the locking member 12, 48 body portion 26, 52 has a hole through which a pivot pin 20, 54 passes, about which the locking member body portion pivots between the first and second positions. *See* Figs. 5-7, 3:30-34, 4:40-44. <br><br> The Super Safety lever does not have a hole through which a pivot pin passes and about which the lever pivots. Neither does the Super Safety cam have a hole through which a pivot pin passes. |
| | |

3

| Claim: | Response to Infringement Allegations: |
|---|---|
| 4. The device of claim 1, | See claim 1 above. |
| wherein the locking member deflectable portion pivots relative to the body portion. | As discussed above, the "locking member" is a means-plus-function limitation governed by §112(f).  The specification discloses that the locking member 12, 48 deflectable portion 22, 50 and body portion 26, 52 have a hole through which a pivot pin 24, 54 passes, about which the locking member deflectable portion pivots relative to the body portion.  *See* Figs. 1-4, 7-10, 3:40-42, 4:40-44.<br><br>The Super Safety lever is rigid and has no deflectable or pivotable portion.  The lever's body and tail are unitary and do not separately pivot relative to each other.  Neither the lever nor the cam have a hole through which a pivot pin passes.  Nor does the lever (alone or in combination with the cam) have a portion that pivots in only one direction about a pin going through a hole in both.  The slight wiggle room resulting from the tolerance of the dovetail connection (between the lever and cam) would not be viewed by a POSA as deflection/pivoting relative to the body portion or as equivalent to the pivoting disclosed in the '784 Patent (*see, e.g.*, Fig. 7), as it clearly has no function other than allowing assembly. |

4

**ARC-Fire**

| Claim: | Response to Infringement Allegations: |
|---|---|
| 1. In a forced rest [*sic*] trigger mechanism, an extended trigger member locking device, comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." See also Luettke Decl. & Ex. F (ECF Nos. 29-21, 29-27) (accusing ARC-Fire of infringement but calling it the Atrius Super Selector).<br><br>The ARC-Fire is not a complete firearm trigger mechanism (*see* 2:16-17, 23-26, Figs. 1, 5), as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent.<br><br>The claim and specification refer to a "locking device" that comprises "a locking member" and no other components. None of the dependent claims add any further components to the "locking device." Neither does the prosecution history elucidate this ambiguity. Thus, while the two are specified as separate components/limitations, it is unclear what the difference between them is, and specifically, what the "locking device" includes other than the "locking member." |
| a locking member that is movable between a first position in which it locks a trigger member against pulling movement and a second position where it does not restrict movement of the trigger member, | "Locking member" is a means-plus-function limitation governed by §112(f), as it uses a nonce word (member) prefixed by a function (locking) and does not have a plain and ordinary meaning connoting specific structure to a skilled artisan. Thus, this limitation is limited to the corresponding structure disclosed in the specification and equivalents. *See* Figs. 1-10, 3:7-4:57.<br><br>Plaintiffs appear to view the entire ARC-Fire (including the above-listed components) as the locking member. But unlike the '784 Patent's locking member 12, the ARC-Fire has components that do not move between the recited first angular position and the second angular position. The ARC-Fire includes a lever that is movable between a first axial position and a second axial position. The lever itself does not |

5

| Claim: | Response to Infringement Allegations: |
|---|---|
|  | do anything to the trigger – it does not even contact the trigger.  When the lever is mated with the cam in forced-reset mode and rotates the cam to the first position, the cam forces the trigger to the reset position and prevents pulling it more than a nominal amount.  When the lever rotates the cam to the second position, the cam allows the trigger to be pulled a greater amount than in the first position after which it will restrict pulling the trigger further, unlike the '784 Patent where the locking member in a second position does not at all restrict movement of the trigger (*see, e.g.*, Fig. 6).  In standard semi-automatic mode, the ARC-Fire cam does not move between the first and second positions.  Neither the cam nor the lever "lock" the trigger as shown in Figs. 5 or 7. |
| the locking member configured to be movably supported by a frame and | The ARC-Fire as a whole is configured to be movably supported by a lower receiver (*see* 3:30-36, Figs. 1, 5-7), but various of its parts (including the lever and the cam) individually are not configured to be movably supported by a frame.  The lever and cam are configured to be movably supported by the detent bar, which is designed to be movably supported by a lower receiver along with the selector lever.  However, the locking member 12 is disclosed as being pivotally mounted to the frame on a pin 20 through a hole. |
| including a generally upward extension portion configured to make actuating contact with a surface of a bolt carrier, | The ARC-Fire lever includes a generally upward-extending tail configured to make actuating contact with a surface of a bolt carrier (which is not included with the ARC-Fire). |
| such actuating contact causing the locking member to move from the first position to the second position, | The recited "actuating contact" with the (unincluded) bolt carrier causes only the lever to rotate from the second position to the first position and then back to the second position.  If the ARC-Fire is in forced-reset mode, the lever also moves the cam, which restricts movement of the trigger when in the first position (but also somewhat when in the second position), as explained above.  If the ARC-Fire is in standard semi-automatic mode, only the lever rotates; such movement (between the first position and the second position) restricts movement of the |

| Claim: | Response to Infringement Allegations: |
|---|---|
| | trigger to the same extent, contrary to what is recited. |
| the locking member having a body portion that is movably supported and | Plaintiffs appear to view the ARC-Fire's ambi selector (and possibly the selector lever) and the detent bar as the locking member's "body portion." But unlike the '784 Patent, these components do not move at all in response to actuating contact with a bolt carrier's surface. They are supported by a lower receiver and are movable to the extent of pivoting to switch between safe, standard semi-automatic, and forced-reset modes, which is not how the '784 Patent's locking member body portion is movably supported. Furthermore, these components are not spring-biased to move to any particular position, nor do these components "lock" the trigger or restrict its movement, unlike the body portion of the locking member disclosed in the specification. |
| an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position and a deflected position. | This claim recites that the locking member has both "a generally upward extension portion" and "an upwardly extending deflectable portion." Thus, while the two "portions" are specified as separate components/limitations, it is unclear what the difference between them is. The ARC-Fire does not have any other upwardly extending portion other than the lever, which was discussed above with respect to the separate "upward extension portion."<br><br>Furthermore, the lever is rigid and has no deflectable portion (and thus no deflected position). The lever's body and tail are unitary and are not separately movable relative to each other. Nor does the lever (alone or in combination with the other ARC-Fire components) have a spring-biased portion that pivots about a pin in only one direction, as disclosed in the specification for the locking member. |
| | |
| 4. The device of claim 1, | See claim 1 above. |
| wherein the locking member deflectable portion pivots relative to the body portion. | As discussed above, the "locking member" is a means-plus-function limitation governed by §112(f). The specification discloses that the |

| Claim: | Response to Infringement Allegations: |
|---|---|
| | locking member 12, 48 deflectable portion 22, 50 and body portion 26, 52 have a hole through which a pivot pin 24, 54 passes, about which the locking member deflectable portion pivots relative to the body portion. *See* Figs. 1-4, 7-10, 3:40-42, 4:40-44.<br><br>The ARC-Fire lever is rigid and has no deflectable or pivotable portion. The lever's body and tail are unitary and do not separately pivot relative to each other. Nor does the lever (alone or in combination with the other ARC-Fire components) have a spring-biased portion that pivots in only one direction about a pin. |

8