**Exhibit 5 - Claim Chart for U.S. Patent No. 12,578,159**

**Super Safety**

| Claim: | Response to Infringement Allegations: |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | The reciprocating bolt means is a means-plus-function limitation governed by §112(f).<br><br>The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version). *See also* Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement). Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below. Similarly, these components individually are also not a firearm trigger mechanism. |
| the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | The Super Safety is operable in a standard semi-automatic mode and in a forced-reset mode. |
| a hammer having a hammer sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | Neither version of the Super Safety includes a hammer, a disconnector, a fire control mechanism pocket, a hammer pivot axis, or a reciprocating bolt means. |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. |
| wherein the trigger member sear surface and hammer sear catch surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | It is unclear whether "hammer sear catch surface" and "hammer sear surface" refer to the same or different surfaces; the same is true regarding "trigger sear surface" and "trigger member sear surface." |

1

| Claim: | Response to Infringement Allegations: |
|---|---|
|  | Since the Super Safety does not include a hammer (with the sear catch surface), the Super Safety's trigger sear surface is not in engagement with the missing hammer's sear catch surface. |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | Neither version of the Super Safety includes a disconnector, a hammer, or a fire control mechanism pocket. |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The Super Safety includes a cam having a lobe.<br><br><br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it is slidable along the axis between safe, standard semi-automatic, and forced-reset semi-automatic modes, and may be rotatable on the axis (depending on what mode it is in).  The original Complaint (ECF No. 1), the Amended Complaint (ECF No. 4), the proposed Second Amended Complaint, and the Luettke Decl. Ex. B viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. D (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents.<br><br>If the first and second positions are determined by rotation, then moving/rotating the cam to the second position does not force the trigger toward the set position if the cam is in standard semi-automatic mode; instead, such rotation forces the |

2

| Claim: | Response to Infringement Allegations: |
|---|---|
| | trigger toward the set position only if the cam is in forced-reset mode. |
| whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | The Super Safety does not include a reciprocating bolt means, a hammer, or a disconnector.<br><br>If the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components).  When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. |
| whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm. | The Super Safety does not include a reciprocating bolt means, a hammer, or a disconnector.<br><br>If the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. While the disconnector hook would (in this mode) eventually release the hammer hook, it is not due to the rearward pivoting of the hammer; indeed, the rearward pivoting of the hammer causes the disconnector hook to catch and hold the hammer hook, and no further rearward pivoting of the hammer prevents the disconnector hook from holding the hammer hook.  Continued rearward movement of the bolt carrier pushes the cam lever rearward, causing the cam to rotate, causing the disconnector hook to release the hammer hook (as recognized by Plaintiffs).  Stated alternatively, when the cam is in the second position, there is no rearward |

3

| Claim: | Response to Infringement Allegations: |
|---|---|
|  | pivoting of the hammer – by the time the cam reaches the second position, the hammer has finished its rearward pivoting.  When the bolt carrier thereafter moves forward into battery, the firearm user can pull the trigger to fire the firearm. |
|  |  |
| 3. The trigger mechanism of claim 1, | See claim 1 above. |
| further comprising a spring which biases the trigger member toward the set position. | The Super Safety does not include a spring for biasing the trigger. |
|  |  |
| 6. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | The reciprocating bolt means is a means-plus-function limitation governed by §112(f).<br><br>The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version).  *See also* Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement).  Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below.  Similarly, these components individually are also not a firearm trigger mechanism. |
| the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | The Super Safety is operable in a standard semi-automatic mode and in a forced-reset mode. |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | Neither version of the Super Safety includes a hammer, a disconnector, a fire control mechanism pocket, a hammer pivot axis, or a reciprocating bolt means. |
| a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | The Super Safety includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. |

4

| Claim: | Response to Infringement Allegations: |
|---|---|
| wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | Since the Super Safety does not include a hammer (with the sear surface), the Super Safety's trigger sear surface is not in engagement with the missing hammer's sear surface. |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | Neither version of the Super Safety includes a disconnector, a hammer, or a fire control mechanism pocket. |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam prevents the trigger member from moving from the set position to the released position, | The Super Safety includes a cam having a lobe.<br><br><br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it is slidable along the axis between safe, standard semi-automatic, and forced-reset semi-automatic modes, and may be rotatable on the axis (depending on what mode it is in). The original Complaint (ECF No. 1), the Amended Complaint (ECF No. 4), the proposed Second Amended Complaint, and the Luettke Decl. Ex. B viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. D (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents.<br><br>If the first and second positions are determined by rotation, then the cam being rotated to the second position does not prevent the trigger from moving toward the released position if the |

| Claim: | Response to Infringement Allegations: |
|---|---|
|  | cam is in standard semi-automatic mode; instead, the cam being in the second position prevents the trigger from moving off the set position only if the cam is in forced-reset mode. |
| whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to move to the set positions so that the user can pull the trigger member to fire the firearm again, and | The Super Safety does not include a reciprocating bolt means, a hammer, or a disconnector.<br><br>If the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. |
| whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer, movement of the trigger member to the set position, and the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is moved to the first position, allowing the user to pull the trigger member to fire the firearm. | This claim limitation is not entirely clear. Regardless, the Super Safety does not include a reciprocating bolt means, a hammer, or a disconnector.<br><br>As best understood, if the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. |
|  |  |

6

| Claim: | Response to Infringement Allegations: |
|---|---|
| 7. The trigger mechanism of claim 6, | See claim 6 above. |
| further comprising a spring which biases the trigger member toward the set position. | The Super Safety does not include a spring for biasing the trigger. |
| | |
| 9. The trigger mechanism of claim 6, | See claim 6 above. |
| wherein the trigger member pivots on a transverse trigger axis between set and released positions. | The Super Safety trigger is adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. |
| | |
| 10. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | The reciprocating bolt means is a means-plus-function limitation governed by §112(f).<br><br>The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version). *See also* Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement). Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below. Similarly, these components individually are also not a firearm trigger mechanism. |
| the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | The Super Safety is operable in a standard semi-automatic mode and in a forced-reset mode. |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | Neither version of the Super Safety includes a hammer, a disconnector, a fire control mechanism pocket, a hammer pivot axis, or a reciprocating bolt means. |
| a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | The Super Safety includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. |

| Claim: | Response to Infringement Allegations: |
|---|---|
| wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | Since the Super Safety does not include a hammer (with the sear surface), the Super Safety's trigger sear surface is not in engagement with the missing hammer's sear surface. |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | Neither version of the Super Safety includes a disconnector, a hammer, or a fire control mechanism pocket. |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, movement of the cam to the second position causing the trigger member to move from the released position toward the set position, | The Super Safety includes a cam having a lobe.<br><br><br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it is slidable along the axis between safe, standard semi-automatic, and forced-reset semi-automatic modes, and may be rotatable on the axis (depending on what mode it is in). The original Complaint (ECF No. 1), the Amended Complaint (ECF No. 4), the proposed Second Amended Complaint, and the Luettke Decl. Ex. B viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. D (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents.<br><br>If the first and second positions are determined by rotation, then the cam being rotated to the second position does not cause the trigger to move toward the set position if the cam is in |

8

| Claim: | Response to Infringement Allegations: |
|---|---|
| | standard semi-automatic mode; instead, the cam moving to the second position causes the trigger to move toward the set position only if the cam is in forced-reset mode. |
| whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to move to the set positions so that the user can pull the trigger member to fire the firearm again, and | The Super Safety does not include a reciprocating bolt means, a hammer, or a disconnector.<br><br>If the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components).  When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. |
| whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer and causes movement of the trigger member to the set position, and wherein the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is moved to the first position and the user can pull the trigger member to fire the firearm again. | The Super Safety does not include a reciprocating bolt means, a hammer, or a disconnector.<br><br>As best understood, if the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook.  The specification uses "cause" (and variants) to refer to a direct cause (e.g., the bolt carrier directly causing the hammer to pivot, Abstract).  Under such a construction, rearward movement of the bolt carrier does not cause the trigger to move to the set position.  Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, which forces the trigger member to the set position, which would also cause the disconnector to release the hammer hook.  When the bolt carrier thereafter moves forward into |

9

| Claim: | Response to Infringement Allegations: |
|---|---|
|  | battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. |
|  |  |
| 11. The trigger mechanism of claim 10, | See claim 10 above. |
| further comprising a spring which biases the trigger member toward the set position. | The Super Safety does not include a spring for biasing the trigger. |
|  |  |
| 14. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version).  *See also* Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement).  Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below.  Similarly, these components individually are also not a firearm trigger mechanism. |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | The bolt means is a means-plus-function limitation governed by §112(f).  Neither version of the Super Safety includes a hammer, a disconnector, a fire control mechanism pocket, or a bolt means. |
| a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | The Super Safety includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. |
| wherein the hammer sear surface and trigger member sear surface are in position to engage in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | Since the Super Safety does not include a hammer (with the sear surface), the Super Safety's trigger sear surface is not in position to engage with the missing hammer's sear surface. |
| the disconnector having a hook for engaging the hammer, and | Neither version of the Super Safety includes a disconnector or a hammer. |
| a cam having a cam lobe and adapted to be movably mounted in the fire control | The Super Safety includes a cam having a lobe. |

10

| Claim: | Response to Infringement Allegations: |
|---|---|
| mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | <br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it is slidable along the axis between safe, standard semi-automatic, and forced-reset semi-automatic modes, and may be rotatable on the axis (depending on what mode it is in).  The original Complaint (ECF No. 1), the Amended Complaint (ECF No. 4), the proposed Second Amended Complaint, and the Luettke Decl. Ex. B viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. D (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents.<br><br>If the first and second positions are determined by rotation, then moving/rotating the cam to the second position does not force the trigger toward the set position if the cam is in standard semi-automatic mode; instead, such rotation forces the trigger toward the set position only if the cam is in forced-reset mode. |
| when in a standard semi-automatic mode, rearward movement of the bolt carrier causes movement of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer sear | The "bolt carrier" lacks antecedent basis. Furthermore, the difference (if any) between the "bolt carrier" and the "bolt means" is unclear, adding to the indefiniteness.<br><br>Regardless, the Super Safety does not include a bolt carrier, a bolt means, a hammer, or a disconnector. |

11

| Claim: | Response to Infringement Allegations: |
|---|---|
| surface and trigger member sear surface to move into engagement so that the user can pull the trigger member to fire the firearm, and | If the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components).  When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions and engage so the user can pull the trigger to fire the firearm. |
| when in a forced reset semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm. | The Super Safety does not include a bolt means, a hammer, or a disconnector.  As best understood, if the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook.  Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, which forces the trigger member to the set position, which would also cause the disconnector to release the hammer hook.  When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. |
| | |
| 15. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version).  *See also* Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement).  Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other |

12

| Claim: | Response to Infringement Allegations: |
|---|---|
| | required components, as noted below.  Similarly, these components individually are also not a firearm trigger mechanism. |
| a hammer having a sear surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | The hook means and the bolt means are means-plus-function limitations governed by §112(f).<br><br>Neither version of the Super Safety includes a hammer, a disconnector, or a bolt means. |
| a trigger means having a sear surface and adapted to move between set and released positions, | The trigger means is a means-plus-function limitation governed by §112(f).<br><br>The Super Safety includes a trigger having a sear surface and adapted to pivot on a transverse trigger member pivot axis between set and released positions. |
| wherein the hammer sear surface and trigger means sear surface are positioned to engage when the hammer and trigger means are in their set positions and are out of engagement in the hammer and trigger means are in their released positions, | Since the Super Safety does not include a hammer (with the sear surface), the Super Safety's trigger sear surface is not in position to engage with the missing hammer's sear surface. |
| the disconnector having a disconnector hook means for engaging the hammer hook means, | Neither version of the Super Safety includes a disconnector or a hammer. |
| a cam adapted to be movable between a first position at which the cam does not force the trigger member into the set position and a second position at which the cam does force the trigger member toward the set position, and | The Super Safety includes a cam.<br><br><br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it is slidable along the axis between safe, standard semi-automatic, and forced-reset semi-automatic modes, and may be rotatable on the axis (depending on what mode it is in).  The original Complaint (ECF No. 1), the Amended Complaint (ECF No. 4), the proposed Second Amended Complaint, and the Luettke Decl. Ex. |

13

| Claim: | Response to Infringement Allegations: |
|---|---|
| | B viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. D (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents.

If the first and second positions are determined by rotation, then moving/rotating the cam to the second position does not force the trigger toward the set position if the cam is in standard semi-automatic mode; instead, such rotation forces the trigger toward the set position only if the cam is in forced-reset mode. |
| a means for selecting between at least standard semi-automatic and forced reset semi-automatic modes, | This is a means-plus-function limitation governed by §112(f) and is thus limited to the corresponding structure disclosed in the specification and its equivalents.

The specification discloses that selection of the operative mode (standard semi-automatic or forced-reset) is done by rotating/pivoting a safety selector 110, which has a lever, at one end that can be gripped and rotated by the user's hand, and includes a midportion (along the selector's length) that differs in configuration or cross-section as the selector is rotated in 90-degree increments (namely, where the midportion is rounded/semicircular 112, where the midportion is flat 114, and where the midportion has a rounded narrow section 116 flanked by flat sections).  2:54-57, 6:1-29, 8:43-65, Figs. 2, 4A-8A, 9A, Abstract.  The safety selector selects standard semi-automatic mode by rotating the flat and sufficiently wide portion 114 (of the selector) to face the tails 68 of the trigger 38 and the tail 66 of the disconnector 60, allowing both to rotate sufficiently.  8:48-54, Figs. 5A-B, 8A-D.  The safety selector selects forced-reset mode by rotating until a flat portion (of the selector) faces each tail of the trigger, allowing the trigger to sufficiently rotate, while |

14

| Claim: | Response to Infringement Allegations: |
|---|---|
| | the rounded extruding section 116 (of the selector) in-between the flat portions faces the tail of the disconnector, blocking the disconnector from rotating.  3:12-15, 8:54-65, 9:28-39, Figs. 6A-B, 9A-D.<br><br>The Super Safety does not include such a means for selecting.  The Super Safety does not have a safety selector with a lever that is rotated (by hand) in 90-degree increments to select a standard semi-automatic or forced-reset mode; rather the Super Safety operative mode is selected by sliding its cam (which does not have a lever that is operated by a user's hand) along the cam's axis.  The Super Safety does not have a safety selector with a midportion (along its length) that differs in configuration/cross-section as it is rotated in 90-degree increments (corresponding to different modes); rather, the Super Safety's cam has differing configurations/cross-sections (corresponding to different modes) along its axis, not circumferentially about its axis.  The Super Safety does not have (a) a safety selector with a wide flat portion facing the two trigger tails and the disconnector tail, or (b) a rounded section facing the disconnector tail and preventing its rotation, flanked by flat portions facing the two trigger tails; rather, the Super Safety cam presents a rounded recess to one tail of the trigger whereas the disconnector tail does not face or interact with the cam at all.  Nor does the Super Safety include equivalents of this limitation. |
| when in the standard semi-automatic position, rearward movement of the bolt means causes movement of the hammer such that the disconnector hook means catches the hammer hook means, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to the set positions | The Super Safety does not include a bolt means, a hammer, or a disconnector.<br><br>If the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components).  When the bolt carrier |

15

| Claim: | Response to Infringement Allegations: |
|---|---|
| so that the user can pull the trigger means to fire the firearm, and | thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. |
| when in the forced reset semi-automatic position, rearward movement of the bolt means causes movement of the hammer, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm. | The Super Safety does not include a bolt means, a hammer, or a disconnector.<br><br>As best understood, if the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook.  Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, which forces the trigger member to the set position, which would also cause the disconnector to release the hammer hook.  When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. |
|  |  |
| 16. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version).  *See also* Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement).  Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below.  Similarly, these components individually are also not a firearm trigger mechanism. |
| a hammer having a sear engagement surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer | The hook means and the bolt means are means-plus-function limitations governed by §112(f).<br><br>Neither version of the Super Safety includes a hammer or a disconnector, or a bolt means. |

16

| Claim: | Response to Infringement Allegations: |
|---|---|
| adapted to be moved to the set position by rearward movement of a bolt means, | |
| a trigger means having a sear engagement surface and adapted to move between set and released positions, | The trigger means is a means-plus-function limitation governed by §112(f).<br><br>The Super Safety includes a trigger having a sear engagement surface and adapted to pivot on a transverse trigger member pivot axis between set and released positions. |
| wherein the trigger means and hammer sear engagement surfaces are in position to engage in the set positions of the hammer and trigger means and will not engage in the released positions of the hammer and trigger means, | Since the Super Safety does not include a hammer (with the sear engagement surface), the Super Safety's trigger sear engagement surface is not in position to engage with the missing hammer's sear engagement surface. |
| the disconnector having a hook means for engaging the hammer hook means, and | The hook means is a means-plus-function limitation governed by §112(f).<br><br>Neither version of the Super Safety includes a disconnector or a hammer. |
| a cam movable between a first position and a second position, in the second position the cam forces the trigger member toward the set position, | The Super Safety includes a cam.<br><br><br><br>cam   lobe   axis<br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it is slidable along the axis between safe, standard semi-automatic, and forced-reset semi-automatic modes, and may be rotatable on the axis (depending on what mode it is in). The original Complaint (ECF No. 1), the Amended Complaint (ECF No. 4), the proposed Second Amended Complaint, and the Luettke Decl. Ex. B viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. D (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first |

17

| Claim: | Response to Infringement Allegations: |
|---|---|
| | and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents.<br><br>If the first and second positions are determined by rotation, then moving/rotating the cam to the second position does not force the trigger toward the set position if the cam is in standard semi-automatic mode; instead, such rotation forces the trigger toward the set position only if the cam is in forced-reset mode. |
| when in a standard semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook means catches the hammer hook means, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to their set positions so that the user can pull the trigger means to fire the firearm, and | The Super Safety does not include a bolt means, a hammer, or a disconnector.<br><br>If the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. |
| when in a forced reset semi-automatic mode, upon rearward movement of the bolt means, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm. | The Super Safety does not include a bolt means, a hammer, or a disconnector.<br><br>As best understood, if the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, which forces the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter |

18

| Claim: | Response to Infringement Allegations: |
|---|---|
| | moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. |
| | |
| 17. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version).  *See also* Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement).  Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below.  Similarly, these components individually are also not a firearm trigger mechanism. |
| a hammer movable between a set position and a released position, and having a sear engagement surface; | Neither version of the Super Safety includes a hammer. |
| a trigger member having a sear engagement surface, the trigger member being movable between a set position and a released position; | The Super Safety includes a trigger having a sear engagement surface and adapted to pivot on a transverse trigger member pivot axis between set and released positions. |
| a cam configured to move during cycling of the firearm's action and to contact the trigger member to bias it toward the set position; | The Super Safety includes a cam.<br><br><br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) during cycling of the bolt carrier (which is not provided with the Super Safety).  The cam may contact the trigger, but the cam does not bias it toward the set position if the cam is in standard semi-automatic mode; instead, the cam may force the trigger toward the set position |

19

| Claim: | Response to Infringement Allegations: |
|---|---|
| | only if the cam is in forced-reset mode and if the Super Safety lever rotates the cam. |
| a movable blocking means configured to selectively prevent the hammer sear catch surface from engaging with the sear in the set position; | The references to "the sear" and "the hammer sear catch surface" lack antecedent basis, as prior references are to "a sear engagement surface" (on the hammer and the trigger member). It is thus unclear what "the sear" and "the hammer sear catch surface" refer to.<br><br>The "movable blocking means" is a means-plus-function limitation governed by §112(f) and is thus limited to the corresponding structure disclosed in the specification and its equivalents. The specification does not use this phrase or any variant of "block," which renders it difficult to correlate any disclosed structure to this recited function. Searching the specification for disclosure of structure that prevents the (indefinite and unclear) hammer sear catch surface from engaging with the (indefinite and unclear) sear in the set position, the only relevant disclosure refers to releasing the trigger to allow the sear 56 to engage the sear catch 52, returning the hammer 36 and trigger member 38 to their set positions. 9:23-26. This suggests that the trigger member corresponds to the recited "movable blocking means." But the trigger member is already recited separately above and thus could not correspond to this limitation. With no other corresponding limitation disclosed, this renders this claim indefinite.<br><br>The Luettke Decl. Ex. B points to the disconnector as allegedly meeting this limitation. But Luettke cites to no portion of the specification as correlating the recited function and disclosed structure. Neither does he explain how the disconnector is "selected" to prevent or not prevent the hammer sear catch from engaging with the sear in the set position. Even if the disconnector corresponds to this limitation, neither version of the Super Safety includes a disconnector. |

20

| Claim: | Response to Infringement Allegations: |
|---|---|
| a mode selector operable by the user to select between at least two modes of operation of the trigger mechanism, including: | The Super Safety does not include a safety selector (that also selects the mode of operation) as disclosed in the patent.  The Super Safety achieves the selection of its mode of operation by the user by sliding the cam along its axis.  However, this claim recites the cam as a component separate from the mode selector, which means the same component in the accused device cannot meet both claim limitations. |
| a semi-automatic mode, in which the hammer and trigger member sear engagement surfaces are not able engage in the set position during cycling of the firearm's action until the user manually reduces pressure from the trigger member to disengage the blocking means before firing again, regardless of whether the cam moves the trigger member to the set position; and | The phrase "are not able engage in" is grammatically incorrect and unclear.  Also, as explained above, the "blocking means" is unclear.

The Super Safety does not include a hammer, a bolt carrier or other action mechanism, or a disconnector (if that is what "blocking means" refers to).

As best understood, if the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier (after pulling the trigger) may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook and prevent it from pivoting forward to have the hammer sear surface engage with the trigger sear surface as long as the trigger remains pulled (depending on the configuration and operation of the missing components).  When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm.  In this mode, the Super Safety cam does not move the trigger to the set position. |
| a forced reset mode, in which the cam moves during cycling and forcibly biases the trigger member into the set position with the hammer and trigger member sear engagement surfaces engaged, permitting the user to immediately fire again without | The Super Safety does not include a hammer, a bolt carrier or other action mechanism.

If the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the |

21

| Claim: | Response to Infringement Allegations: |
|---|---|
| the user manually releasing pressure on the trigger member; | bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch the disconnector hook.  Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, which forces the trigger member to the set position, which would also cause the disconnector to release the hammer hook and allow the hammer and trigger sear surfaces to engage.  However, so long as the cam moves into the position where it forcibly biases the trigger into the set position, the cam does not permit the user to immediately fire again.  Rather, the bolt carrier must first move forward into battery and cause the lever to rotate the cam back (away from the position where it biases the trigger), which would then unblock the trigger tail and allow the firearm user to pull the trigger to fire the firearm.  Furthermore, for such a firearm (with the Super Safety) to fire again, the user's pressure must be low enough to allow the cam to forcibly release/reset the trigger and rotate it toward the set position; otherwise, if the user maintains a sufficiently high level of pressure to not allow the trigger to be forcibly released by the cam, the firearm will not fire again. |
| wherein if the cam moves in both modes, the difference in operation between modes is determined by movable selection of the blocking means, thereby selectively either permitting or preventing the hammer and trigger member sear engagement surfaces from engaging when the trigger member is biased by the cam. | As explained above, the "blocking means" is unclear.

The Super Safety does not include a hammer or a disconnector (if that is what "blocking means" refers to).

As best understood, the Super Safety cam moves in both modes (standard semi-automatic and forced-reset) if its lever is rotated by the (not provided) bolt carrier.  There is no provision for a user to somehow "movably select" the disconnector in a firearm having a Super Safety (unlike the configuration disclosed in the '159 Patent).  Nor does the disconnector operate differently in the two modes; rather, in both modes, the disconnector hook catches the hammer hook and eventually releases it. |

22

| Claim: | Response to Infringement Allegations: |
|---|---|
|  | Furthermore, the cam can bias the trigger only in forced-reset mode, not in the standard semi-automatic mode; and since the cam does not contact the disconnector, it does not cause the disconnector to somehow permit or prevent engagement of the hammer and trigger sear surfaces while the cam biases the trigger. |

**ARC-Fire**

| Claim: | Response to Infringement Allegations: |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | The reciprocating bolt means is a means-plus-function limitation governed by §112(f).<br><br>The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." *See also* Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. |
| the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | The ARC-Fire is operable in a standard semi-automatic mode and in a forced-reset mode. |
| a hammer having a hammer sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | The ARC-Fire does not include a hammer, a disconnector, a fire control mechanism pocket, a hammer pivot axis, or a reciprocating bolt means. |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The ARC-Fire includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. |
| wherein the trigger member sear surface and hammer sear catch surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | It is unclear whether "hammer sear catch surface" and "hammer sear surface" refer to the same or different surfaces; the same is true regarding "trigger sear surface" and "trigger member sear surface."<br><br>Since the ARC-Fire does not include a hammer (with the sear catch surface), the ARC-Fire's trigger sear surface is not in engagement with the missing hammer's sear catch surface. |
| the disconnector having a hook for engaging the hammer and adapted to be | The ARC-Fire does not include a disconnector, a hammer, or a fire control mechanism pocket. |

24

| Claim: | Response to Infringement Allegations: |
|---|---|
| mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The ARC-Fire includes a cam having a lobe.<br><br><br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) and may also slide slightly along the axis (depending on the fitment with the adjacent components).  The original Complaint, the Amended Complaint, the proposed Second Amended Complaint, and the Luettke Decl. Ex. A viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. C (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents.<br><br>If the first and second positions are determined by rotation, then the cam does not rotate in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and does not force the trigger toward the set position; instead, such rotation forces the trigger toward the set position only if the ARC-Fire is in forced-reset mode. |
| whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the | The ARC-Fire does not include a reciprocating bolt means, a hammer, or a disconnector.<br><br>If the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward |

25

| Claim: | Response to Infringement Allegations: |
|---|---|
| trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. |
| whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm. | The ARC-Fire does not include a reciprocating bolt means, a hammer, or a disconnector.<br><br>If the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. While the disconnector hook would (in this mode) eventually release the hammer hook, it is not due to the rearward pivoting of the hammer; indeed, the rearward pivoting of the hammer <u>causes</u> the disconnector hook to <u>catch</u> and hold the hammer hook, and no further rearward pivoting of the hammer <u>prevents</u> the disconnector hook from holding the hammer hook. Continued rearward movement of the bolt carrier pushes the lever rearward, causing the cam to rotate, causing the disconnector hook to release the hammer hook (as recognized by Plaintiffs). Stated alternatively, when the cam is in the second position, there is no rearward pivoting of the hammer – by the time the cam reaches the second position, the hammer has finished its rearward pivoting. When the bolt carrier thereafter moves forward into battery, the firearm user can pull the trigger to fire the firearm. |
|  |  |
| 3. The trigger mechanism of claim 1, | See claim 1 above. |
| further comprising a spring which biases the trigger member toward the set position. | The ARC-Fire does not include a spring for biasing the trigger. |
|  |  |

26

| Claim: | Response to Infringement Allegations: |
|---|---|
| 6. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | The reciprocating bolt means is a means-plus-function limitation governed by §112(f).<br><br>The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." *See also* Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. |
| the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | The ARC-Fire is operable in a standard semi-automatic mode and in a forced-reset mode. |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | The ARC-Fire does not include a hammer, a disconnector, a fire control mechanism pocket, a hammer pivot axis, or a reciprocating bolt means. |
| a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | The ARC-Fire includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. |
| wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | Since the ARC-Fire does not include a hammer (with the sear surface), the ARC-Fire's trigger sear surface is not in engagement with the missing hammer's sear surface. |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The ARC-Fire does not include a disconnector, a hammer, or a fire control mechanism pocket. |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable | The ARC-Fire includes a cam having a lobe. |

| Claim: | Response to Infringement Allegations: |
|---|---|
| between a first position and a second position, in the second position the cam prevents the trigger member from moving from the set position to the released position, |  The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) and may also slide along the axis. The original Complaint, the Amended Complaint, the proposed Second Amended Complaint, and the Luettke Decl. Ex. A viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. C (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents.<br><br>If the first and second positions are determined by rotation, then the cam does not rotate in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and does not prevent the trigger from moving toward the released position; instead, the cam being in the second position prevents the trigger from moving off the set position only if the ARC-Fire is in forced-reset mode. |
| whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to move to the set positions so that the user can pull the | The ARC-Fire does not include a reciprocating bolt means, a hammer, or a disconnector.<br><br>If the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the |

| Claim: | Response to Infringement Allegations: |
|---|---|
| trigger member to fire the firearm again, and | firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. |
| whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer, movement of the trigger member to the set position, and the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is moved to the first position, allowing the user to pull the trigger member to fire the firearm. | This claim limitation is not entirely clear. Regardless, the ARC-Fire does not include a reciprocating bolt means, a hammer, or a disconnector.<br><br>As best understood, if the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. |
|  |  |
| 7. The trigger mechanism of claim 6, | See claim 6 above. |
| further comprising a spring which biases the trigger member toward the set position. | The ARC-Fire does not include a spring for biasing the trigger. |
|  |  |
| 9. The trigger mechanism of claim 6, | See claim 6 above. |
| wherein the trigger member pivots on a transverse trigger axis between set and released positions. | The ARC-Fire trigger is adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. |
|  |  |
| 10. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | The reciprocating bolt means is a means-plus-function limitation governed by §112(f).<br><br>The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." |

29

| Claim: | Response to Infringement Allegations: |
|---|---|
| | *See also* Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. |
| the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | The ARC-Fire is operable in a standard semi-automatic mode and in a forced-reset mode. |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | The ARC-Fire does not include a hammer, a disconnector, a fire control mechanism pocket, a hammer pivot axis, or a reciprocating bolt means. |
| a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | The ARC-Fire includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. |
| wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | Since the ARC-Fire does not include a hammer (with the sear surface), the ARC-Fire's trigger sear surface is not in engagement with the missing hammer's sear surface. |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The ARC-Fire does not include a disconnector, a hammer, or a fire control mechanism pocket. |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, movement of the cam to the second position causing the trigger member to move from the released position toward the set position, | The ARC-Fire includes a cam having a lobe. |

30

| Claim: | Response to Infringement Allegations: |
|---|---|
| | The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) and may also slide along the axis.  The original Complaint, the Amended Complaint, the proposed Second Amended Complaint, and the Luettke Decl. Ex. A viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. C (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents.<br><br>If the first and second positions are determined by rotation, then the cam does not rotate in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and thus does not cause the trigger to move toward the set position; instead, the cam can move to the second position and cause the trigger to move toward the set position only if the cam is in forced-reset mode. |
| whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to move to the set positions so that the user can pull the trigger member to fire the firearm again, and | The ARC-Fire does not include a reciprocating bolt means, a hammer, or a disconnector.<br><br>If the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components).  When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. |
| whereupon in the second mode, rearward movement of the bolt means causes | The ARC-Fire does not include a reciprocating bolt means, a hammer, or a disconnector. |

31

| Claim: | Response to Infringement Allegations: |
|---|---|
| rearward pivoting of the hammer and causes movement of the trigger member to the set position, and wherein the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is moved to the first position and the user can pull the trigger member to fire the firearm again. | As best understood, if the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. The specification uses "cause" (and variants) to refer to a direct cause (e.g., the bolt carrier directly causing the hammer to pivot, Abstract). Under such a construction, rearward movement of the bolt carrier does not cause the trigger to move to the set position. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. |
|  |  |
| 11. The trigger mechanism of claim 10, | See claim 10 above. |
| further comprising a spring which biases the trigger member toward the set position. | The ARC-Fire does not include a spring for biasing the trigger. |
|  |  |
| 14. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." *See also* Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to move between set and released positions, the hammer | The bolt means is a means-plus-function limitation governed by §112(f).<br><br>The ARC-Fire does not include a hammer, a disconnector, a fire control mechanism pocket, or a bolt means. |

32

| Claim: | Response to Infringement Allegations: |
|---|---|
| adapted to be moved to the set position by rearward movement of a bolt means, | |
| a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | The ARC-Fire includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. |
| wherein the hammer sear surface and trigger member sear surface are in position to engage in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | Since the ARC-Fire does not include a hammer (with the sear surface), the ARC-Fire's trigger sear surface is not in position to engage with the missing hammer's sear surface. |
| the disconnector having a hook for engaging the hammer, and | The ARC-Fire does not include a disconnector or a hammer. |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The ARC-Fire includes a cam having a lobe. The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) and may also slide along the axis.  The original Complaint, the Amended Complaint, the proposed Second Amended Complaint, and the Luettke Decl. Ex. A viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. C (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents.<br><br>If the first and second positions are determined by rotation, then the cam does not rotate in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and |

33

| Claim: | Response to Infringement Allegations: |
|---|---|
| | thus does not force the trigger toward the set position; instead, the cam can move to the second position and force the trigger toward the set position only if the cam is in forced-reset mode. |
| when in a standard semi-automatic mode, rearward movement of the bolt carrier causes movement of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer sear surface and trigger member sear surface to move into engagement so that the user can pull the trigger member to fire the firearm, and | The "bolt carrier" lacks antecedent basis. Furthermore, the difference (if any) between the "bolt carrier" and the "bolt means" is unclear, adding to the indefiniteness.<br><br>Regardless, the ARC-Fire does not include a bolt carrier, a bolt means, a hammer, or a disconnector.<br><br>If the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components).  When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions and engage so the user can pull the trigger to fire the firearm. |
| when in a forced reset semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm. | The ARC-Fire does not include a bolt means, a hammer, or a disconnector.<br><br>As best understood, if the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook.  Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook.  When the bolt carrier thereafter moves forward into battery, it causes the lever to |

34

| Claim: | Response to Infringement Allegations: |
|---|---|
|  | rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. |
|  |  |
| 15. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." *See also* Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. |
| a hammer having a sear surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | The hook means and the bolt means are means-plus-function limitations governed by §112(f). The ARC-Fire does not include a hammer, a disconnector, or a bolt means. |
| a trigger means having a sear surface and adapted to move between set and released positions, | The trigger means is a means-plus-function limitation governed by §112(f). The ARC-Fire includes a trigger having a sear surface and adapted to pivot on a transverse trigger member pivot axis between set and released positions. |
| wherein the hammer sear surface and trigger means sear surface are positioned to engage when the hammer and trigger means are in their set positions and are out of engagement in the hammer and trigger means are in their released positions, | Since the ARC-Fire does not include a hammer (with the sear surface), the ARC-Fire's trigger sear surface is not in position to engage with the missing hammer's sear surface. |
| the disconnector having a disconnector hook means for engaging the hammer hook means, | The ARC-Fire does not include a disconnector or a hammer. |
| a cam adapted to be movable between a first position at which the cam does not force the trigger member into the set position and a second position at which the cam does force the trigger member toward the set position, and | The ARC-Fire includes a cam.<br><br><br><br>cam   lobe   axis |

35

| Claim: | Response to Infringement Allegations: |
|---|---|
| | The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) and may also slide along the axis. The original Complaint, the Amended Complaint, the proposed Second Amended Complaint, and the Luettke Decl. Ex. A viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. C (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents.<br><br>If the first and second positions are determined by rotation, then the cam does not rotate or move in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and thus does not force the trigger toward the set position; instead, the cam can move to the second position and force the trigger toward the set position only if the cam is in forced-reset mode. |
| a means for selecting between at least standard semi-automatic and forced reset semi-automatic modes, | This is a means-plus-function limitation governed by §112(f) and is thus limited to the corresponding structure disclosed in the specification and its equivalents.<br><br>The specification discloses that selection of the operative mode (standard semi-automatic or forced-reset) is done by rotating/pivoting a safety selector 110, which has a lever, at one end that can be gripped and rotated by the user's hand, and includes a midportion (along the selector's length) that differs in configuration or cross-section as the selector is rotated in 90-degree increments (namely, where the midportion is rounded/semicircular 112, where the midportion is flat 114, and where the midportion has a rounded narrow section 116 flanked by flat sections). 2:54-57, 6:1-29, 8:43-65, Figs. 2, 4A-8A, 9A, Abstract. The safety |

| Claim: | Response to Infringement Allegations: |
|---|---|
|  | selector selects standard semi-automatic mode by rotating the flat and sufficiently wide portion 114 (of the selector) to face the tails 68 of the trigger 38 and the tail 66 of the disconnector 60, allowing both to rotate sufficiently.  8:48-54, Figs. 5A-B, 8A-D.  The safety selector selects forced-reset mode by rotating until a flat portion (of the selector) faces each tail of the trigger, allowing the trigger to sufficiently rotate, while the rounded extruding section 116 (of the selector) in-between the flat portions faces the tail of the disconnector, blocking the disconnector from rotating.  3:12-15, 8:54-65, 9:28-39, Figs. 6A-B, 9A-D.

The ARC-Fire does not include such a means for selecting.  The ARC-Fire has a selector with a lever that is rotated (by hand) to select a standard semi-automatic or forced-reset mode, but only some models have 90-degree increments for mode selection.  The ARC-Fire does not have a safety selector with a midportion (along its length) that differs in configuration/cross-section as it is rotated in 90-degree increments (corresponding to different modes).  The ARC-Fire does not have (a) a safety selector with a wide flat portion facing the two trigger tails and the disconnector tail, or (b) a rounded section facing the disconnector tail and preventing its rotation, flanked by flat portions facing the two trigger tails.  Rather, the ARC-Fire cam includes a rounded cavity to receive one trigger tail, a lobe to apply force to that tail, and a tapered cross-section (along the axis) that allows engagement and disengagement with the lever, which has a corresponding tapered cross-section; the selector has a rounded shield portion to cover the cam cavity; and the lever has angled sides for engagement with the detent bar, which has similarly configured angled sides.  None of these components are disclosed in the '159 Patent or are equivalent thereto.  The disconnector tail does not face or interact with the ARC-Fire cam at all. |

| Claim: | Response to Infringement Allegations: |
|---|---|
| when in the standard semi-automatic position, rearward movement of the bolt means causes movement of the hammer such that the disconnector hook means catches the hammer hook means, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to the set positions so that the user can pull the trigger means to fire the firearm, and | The ARC-Fire does not include a bolt means, a hammer, or a disconnector.<br><br>If the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. |
| when in the forced reset semi-automatic position, rearward movement of the bolt means causes movement of the hammer, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm. | The ARC-Fire does not include a bolt means, a hammer, or a disconnector.<br><br>As best understood, if the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. |
|  |  |
| 16. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." *See also* Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a |

38

| Claim: | Response to Infringement Allegations: |
|---|---|
|  | cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. |
| a hammer having a sear engagement surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | The hook means and the bolt means are means-plus-function limitations governed by §112(f). The ARC-Fire does not include a hammer, a disconnector, or a bolt means. |
| a trigger means having a sear engagement surface and adapted to move between set and released positions, | The trigger means is a means-plus-function limitation governed by §112(f). The ARC-Fire includes a trigger having a sear engagement surface and adapted to pivot on a transverse trigger member pivot axis between set and released positions. |
| wherein the trigger means and hammer sear engagement surfaces are in position to engage in the set positions of the hammer and trigger means and will not engage in the released positions of the hammer and trigger means, | Since the ARC-Fire does not include a hammer (with the sear engagement surface), the ARC-Fire's trigger sear engagement surface is not in position to engage with the missing hammer's sear engagement surface. |
| the disconnector having a hook means for engaging the hammer hook means, and | The hook means is a means-plus-function limitation governed by §112(f). The ARC-Fire does not include a disconnector or a hammer. |
| a cam movable between a first position and a second position, in the second position the cam forces the trigger member toward the set position, | The ARC-Fire includes a cam. The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) and may also slide along the axis. The original Complaint, the Amended Complaint, the proposed Second Amended Complaint, and the Luettke Decl. Ex. A viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. C (for the parent |

39

| Claim: | Response to Infringement Allegations: |
|---|---|
| | U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents.<br><br>If the first and second positions are determined by rotation, then the cam does not rotate in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and thus does not force the trigger toward the set position; instead, the cam can move to the second position and force the trigger toward the set position only if the cam is in forced-reset mode. |
| when in a standard semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook means catches the hammer hook means, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to their set positions so that the user can pull the trigger means to fire the firearm, and | The ARC-Fire does not include a bolt means, a hammer, or a disconnector.<br><br>If the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components).  When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. |
| when in a forced reset semi-automatic mode, upon rearward movement of the bolt means, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm. | The ARC-Fire does not include a bolt means, a hammer, or a disconnector.<br><br>As best understood, if the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook.  Continued rearward movement of the bolt carrier would |

40

| Claim: | Response to Infringement Allegations: |
|---|---|
|  | cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. |
|  |  |
| 17. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." *See also* Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. |
| a hammer movable between a set position and a released position, and having a sear engagement surface; | The ARC-Fire does not include a hammer. |
| a trigger member having a sear engagement surface, the trigger member being movable between a set position and a released position; | The ARC-Fire includes a trigger having a sear engagement surface and adapted to pivot on a transverse trigger member pivot axis between set and released positions. |
| a cam configured to move during cycling of the firearm's action and to contact the trigger member to bias it toward the set position; | The ARC-Fire includes a cam.<br><br><br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) during cycling of the bolt carrier (which is not provided with the ARC-Fire). The cam does not rotate or move during cycling in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and thus does not bias the trigger toward the set position; instead, the cam may rotate during |

41

| Claim: | Response to Infringement Allegations: |
|---|---|
|  | cycling and bias the trigger toward the set position only if the ARC-Fire is in forced-reset mode. |
| a movable blocking means configured to selectively prevent the hammer sear catch surface from engaging with the sear in the set position; | The references to "the sear" and "the hammer sear catch surface" lack antecedent basis, as prior references are to "a sear engagement surface" (on the hammer and the trigger member).  It is thus unclear what "the sear" and "the hammer sear catch surface" refer to.<br><br>The "movable blocking means" is a means-plus-function limitation governed by §112(f) and is thus limited to the corresponding structure disclosed in the specification and its equivalents.  The specification does not use this phrase or any variant of "block," which renders it difficult to correlate any disclosed structure to this recited function.  Searching the specification for disclosure of structure that prevents the (indefinite and unclear) hammer sear catch surface from engaging with the (indefinite and unclear) sear in the set position, the only relevant disclosure refers to releasing the trigger to allow the sear 56 to engage the sear catch 52, returning the hammer 36 and trigger member 38 to their set positions.  9:23-26.  This suggests that the trigger member corresponds to the recited "movable blocking means."  But the trigger member is already recited separately above and thus could not correspond to this limitation.  With no other corresponding limitation disclosed, this renders this claim indefinite.<br><br>The Luettke Decl. Ex. A points to the disconnector as allegedly meeting this limitation.  But Luettke cites to no portion of the specification as correlating the recited function and disclosed structure.  Neither does he explain how the disconnector is "selected" to prevent or not prevent the hammer sear catch from engaging with the sear in the set position.  Even if the disconnector corresponds to this limitation, the ARC-Fire does not include a disconnector. |

42

| Claim: | Response to Infringement Allegations: |
|---|---|
| a mode selector operable by the user to select between at least two modes of operation of the trigger mechanism, including: | The ARC-Fire includes a primary selector and an ambi selector operable by the user to select between at least two modes of operation. |
| a semi-automatic mode, in which the hammer and trigger member sear engagement surfaces are not able engage in the set position during cycling of the firearm's action until the user manually reduces pressure from the trigger member to disengage the blocking means before firing again, regardless of whether the cam moves the trigger member to the set position; and | The phrase "are not able engage in" is grammatically incorrect and unclear. Also, as explained above, the "blocking means" is unclear.<br><br>The ARC-Fire does not include a hammer, a bolt carrier or other action mechanism, or a disconnector (if that is what "blocking means" refers to).<br><br>As best understood, if the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier (after pulling the trigger) may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook and prevent it from pivoting forward to have the hammer sear surface engage with the trigger sear surface as long as the trigger remains pulled (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. In this mode, the ARC-Fire cam does not move the trigger to the set position. |
| a forced reset mode, in which the cam moves during cycling and forcibly biases the trigger member into the set position with the hammer and trigger member sear engagement surfaces engaged, permitting the user to immediately fire again without the user manually releasing pressure on the trigger member; | The ARC-Fire does not include a hammer, a bolt carrier or other action mechanism.<br><br>If the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch the disconnector hook. Continued rearward movement of the bolt carrier would |

43

| Claim: | Response to Infringement Allegations: |
|---|---|
| | cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook and allow the hammer and trigger sear surfaces to engage.  However, so long as the cam moves into the position where it forcibly biases the trigger into the set position, the cam does not permit the user to immediately fire again.  Rather, the bolt carrier must first move forward into battery and cause the lever to rotate the cam back (away from the position where it biases the trigger), which would then unblock the trigger tail and allow the firearm user to pull the trigger to fire the firearm.  Furthermore, for such a firearm (with the ARC-Fire) to fire again, the user's pressure must be low enough to allow the cam to forcibly release/reset the trigger and rotate it toward the set position; otherwise, if the user maintains a sufficiently high level of pressure to not allow the trigger to be forcibly released by the cam, the firearm will not fire again. |
| wherein if the cam moves in both modes, the difference in operation between modes is determined by movable selection of the blocking means, thereby selectively either permitting or preventing the hammer and trigger member sear engagement surfaces from engaging when the trigger member is biased by the cam. | As explained above, the "blocking means" is unclear.<br><br>The ARC-Fire does not include a hammer or a disconnector (if that is what "blocking means" refers to).<br><br>The ARC-Fire cam moves only in forced-reset mode.  It is thus unclear whether the rest of this claim limitation is inapplicable or per se not met.  There is no provision for a user to somehow "movably select" the disconnector in a firearm having an ARC-Fire (unlike the configuration disclosed in the '159 Patent).  Nor does the disconnector operate differently in the two modes; rather, in both modes, the disconnector hook catches the hammer hook and eventually releases it.  Furthermore, the cam can bias the trigger only in forced-reset mode, not in the standard semi-automatic mode; and since the cam does not contact the disconnector, it does not cause the disconnector to somehow permit or |

44

| Claim: | Response to Infringement Allegations: |
|---|---|
| | prevent engagement of the hammer and trigger sear surfaces while the cam biases the trigger. |