<u>**Exhibit 13 - INVALIDITY ARGUMENTS**</u>

U.S. Patent No. 12,038,247 ("'247 Patent") — Claim 15

## I.    <u>INTRODUCTION AND SUMMARY OF GROUNDS</u>

Claim 15 of the '247 Patent is directed to a selectable-mode firearm trigger mechanism providing both a standard semi-automatic mode and a "forced reset" semi-automatic mode, selected by moving a cam between a first position and a second position in which its lobe forces the trigger member toward its set position. The prior art relied upon is: (1) U.S. Patent No. 7,398,723 to Blakley ("Blakley"), the named inventor's own earlier patent; (2) U.S. Patent No. 3,045,555 to Stoner ("Stoner"); (3) U.S. Patent No. 4,023,465 to Inskip ("Inskip"); (4) U.S. Patent No. 9,146,067 to Stakes ("Stakes"); and (5) the Tommy Triggers FRT-15-3MD trigger assembly ("Tommy"), sold on or before February 21, 2022, as evidenced by the Complaint in *Rare Breed Triggers, LLC v. Strbac*, No. 1:22-cv-00280 (N.D. Ohio), ECF No. 1, U.S. provisional application No. 63/297,884 (filed January 10, 2022), and the June 29, 2022 "Bingly" YouTube video.

Seven grounds are advanced against claim 15: Ground 1, anticipation by Stakes under 35 U.S.C. § 102; Ground 2, anticipation by Blakley under § 102, or in the alternative single-reference obviousness under § 103; Ground 3, anticipation by Inskip under § 102; Ground 4, anticipation by the Tommy FRT-15-3MD under § 102(a)(1) (on-sale, public-use, and public-availability prior art); Ground 5, obviousness over Stoner in view of Blakley under § 103; Ground 6, obviousness over Blakley in view of Tommy under § 103; and Ground 7, obviousness over Tommy in view of Blakley under § 103.

## II.    CLAIM-CONSTRUCTION

### A.    "Forced Reset Semi-Automatic Mode"

"Forced reset semi-automatic mode" should be construed by its recited operation, not by the label a prior-art reference happens to use. The claim defines the mode operationally: the cam is in its second position; rearward bolt-carrier movement pivots the hammer rearward while the disconnector hook is prevented from catching the hammer hook; the bolt carrier returns to battery; and the user can then pull the trigger to fire. Any mechanism that (i) mechanically forces the trigger forward to its set position during the bolt-carrier cycle notwithstanding continued finger pressure, and (ii) discharges one round per function of the trigger, performs the claimed forced-reset semi-automatic operation. Notably, Blakley — the same inventor's prior patent, discussed in the '247 Patent — articulates the governing "one round per function of the trigger" rule: "The semi-automatic status of the firearm is retained as the firearm only discharges one round of ammunition for each pull of the trigger." (Blakley, col. 8, lns. 24–63.) That intrinsic definition is the yardstick against which the prior art's modes should be measured.

### B.    Cam "in said second position" during the cycle

The mode limitations recite that "said cam is in said second position" in forced-reset mode (and the first position in standard mode). Because the cam in the disclosed embodiments necessarily moves during bolt-carrier cycling, this limitation is properly read as requiring the cam to occupy the recited position during at least a portion of the bolt-carrier cycle (i.e., the position that characterizes the selected mode), not statically throughout the cycle. This reading is consistent with the '247 Patent's own operation and is adopted in the Blakley and Tommy charts.

## III.    INVALIDITY GROUNDS

### A.    Ground 1 — Anticipation by Stakes (U.S. 9,146,067) under § 102

Stakes expressly discloses a dual-mode fire-control group with a dedicated reset lever and requires no inference about the existence of a standard semi-automatic mode. Stakes discloses a firearm trigger mechanism 20 (Fig. 1; 6:7–20) with each structural element of claim 15: a hammer 40 having a sear catch 49 and a hook 47 for engaging a disconnector 30, pivotally mounted in the fire-control pocket on transverse axis 42 and pivoted rearward by the bolt carrier (6:12–15, 6:50–65, 8:47–9:12); a trigger member 21 having a sear 24 pivoting on transverse axis 28, 38 (6:12–15, 6:22–30, 8:34–60); trigger sear 24 and hammer sear catch 49 in engagement in the set positions (Fig. 4) and out of engagement in the released positions (Fig. 7) (8:34–60); and a disconnector 30 with a hook 33 pivoting on transverse axis 28, 38 (Figs. 1, 3; 6:30–42; 9:4–12).

The cam limitation is met by Stakes's reset lever 50, whose arm 53 is the cam lobe. The reset lever is movably mounted in the fire-control pocket and movable between a first, inoperative position (Figs. 4, 6-9) and a second operative position (Figs. 5, 10-14). When in the operative position, the reset lever is movable between two sub-positions: an open position (Fig. 12) and a closed position (Fig. 14). In the second operative position, "arm 53 acts on cam surface 35 pivoting trigger disconnector assembly 39, including trigger body 23 at pivot 28 … when arm 53 moves via the pivoting of reset lever 50 from the open position to the closed position, raising trigger nose 24 of head 24A to its set position in preparation to be received by trigger notch 49 in the cocked position of hammer 40." (14:39–47; see also Abstract; 6:66–7:24; 13:49–14:50.) The lever thus forces the trigger member toward its set position exactly as claimed. That Stakes calls the component a "reset lever" rather than a "cam" is immaterial; it functions as a cam acting through its arm/lobe on a mating cam surface 35, and Stakes itself uses cam terminology for the interface.

Both claimed modes are met. In standard semi-automatic mode the reset lever is in its first inoperative position, rearward carrier movement pivots the hammer so that disconnector hook 33 catches hammer hook 47, and the user must release the trigger before the hammer and trigger return to their set positions for the next shot (Figs. 4, 6–9; 8:22–9:54; 11:17–21). In Stakes's "assisted-reset" semi-automatic mode the lever is in its second operative position; during the carrier cycle, the lever moves from open to closed and thereafter hammer notch 47 "clips past disconnector hook 33 with a sharp, glancing blow" (14:19–23), but the disconnector hook "is pivoted rearwardly from the engaged position to the disengaged position removing it from engagement with hammer disconnect notch 47" (14:51–53), and the hammer is instead arrested by the trigger nose: "Forward movement of hammer 40 is arrested by trigger nose 24 engaging trigger notch 49. Hammer 40 is thus retained in the cocked position by trigger nose 24, preparatory to firing by another trigger pull." (14:54–57; see also Figs. 5, 10–14; 10:35–11:16; 11:21–12:43; 14:11–55; 16:38–61.)

The disconnector hook is affirmatively prevented from catching the hammer hook because the reset lever geometry pivots the hook to its disengaged position as the hammer passes. Every limitation of claim 15 is therefore disclosed, arranged as claimed, and claim 15 is anticipated.

B.    **Ground 2 — Anticipation By Blakley (U.S. 7,398,723) Under § 102; Alternatively Single-Reference Obviousness**

Blakley — the inventor's own earlier patent, discussed in the '247 Patent — discloses the claimed trigger mechanism 10 (Figs. 1–5; 4:58–5:5). Element by element: a hammer (the component bearing striking surface 56) with sear catch 52 and hook 54 for engaging disconnector 38, mounted in the fire-control pocket of receiver 16 to pivot on transverse axis 58 between set (Fig. 2) and released (Fig. 1) positions and pivoted rearward by bolt carrier 20 (Fig. 5; 2:32–45; 5:44–59; 7:4–18; 10:34–38); a trigger member 22 with sear 34 pivoting on transverse axis 46

(5:13–27, 35–38); sear 34 and sear catch 52 engaged in the set positions and disengaged in the released positions (5:49–50; 10:47–50); disconnector 38 with hook 44 pivoting on transverse axis 40, 46 (Figs. 1–3, 5; 5:28–38); and cam 66 with lobe 69, movably mounted in the pocket, movable between a first position (Fig. 1) and a second position (Fig. 2) in which the lobe forces trigger member 22 toward its set position (Figs. 1–2; 2:49–3:2; 5:60–6:32; 7:19–53; 10:34–11:10).

Forced-reset semi-automatic mode is Blakley's core disclosure — the patent is titled to, and claims, a "trigger forward displacement system." "In rotating to the rear (more than 45 degrees) the bottom surface of the cam has pressed downward on the trigger-extension forcing the rear of the trigger down thereby moving forward the surface of the trigger that the operator's finger engages." (10:42–46; Fig. 2.) During the forced-reset cycle the disconnector does not retain the hammer: "In resetting the trigger the disconnector ceases to engage the hammer." (10:46–47.)

Standard semi-automatic mode is disclosed at column 11, lines 11–25: "It is intended that the effect of the disclosed invention be able to be optionally selected or deselected by operating the selector-cam and by configuring the trigger extension to be able to move forward and rearward … thereby allowing or preventing the cam from resetting the trigger." A POSA would understand the "deselected" state to be standard semi-automatic operation, and the reference's own mechanics compel that result: with the cam unable to contact the trigger extension, rearward bolt travel cocks the hammer onto the disconnector (10:34–38) and nothing resets the trigger or breaks the disconnector/hammer engagement (10:38–47); the returning bolt rotates the cam without effect (10:55–64); and the user must release the trigger — under the bias of the trigger spring (Figs. 1, 5) and hammer spring 60 — for the disconnector to release the hammer onto the trigger sear before the next shot. That is textbook semi-automatic operation, expressly or inherently disclosed, and at

5

minimum obvious from Blakley's own disclosure (as further evidenced by the patents referenced at Blakley 1:21–30).

Accordingly, Blakley anticipates claim 15. In the alternative, to the extent the deselected mode is deemed not fully described, implementing the expressly invited "deselected" standard semi-automatic mode would have been obvious to a POSA from Blakley alone, or from Blakley as informed by Tommy or Stoner (see Grounds 5–7): doing so provides the user single-shot control alongside the increased firing rate, with better accuracy, reduced ammunition cost, and reduced wear — all predictable benefits.

**C.      Ground 3 — Anticipation By Inskip (U.S. 4,023,465) Under § 102**

Inskip discloses a dual-mode AK-pattern fire-control mechanism that anticipates claim 15 under the proper constructions. The structural elements are undisputed on the chart: hammer 72 with sear catch (sear surface 82) and hook (head 80 with sear surface 84) for engaging the disconnector (secondary sear 56); trigger 38 with sear surface 50; trigger sear 50 and hammer sear catch 82 engaged in the set positions (Figs. 1, 6); and disconnector 56 with hook 68 bearing sear surface 70 that engages hammer sear surface 84 (Fig. 4).

The cam limitation is met by trigger depressor plate 132 (the cam), whose bottom surface is the cam lobe. Plate 132 moves between a first position (Figs. 6–7) and a second position (Fig. 5); in the second position, "the cam surface 142 forces the trigger depressor plate 132 down against the upper surfaces of the trigger ribs 44 and 46, thereby causing the trigger 38 and the secondary member 56 to pivot counterclockwise (forwardly) even though the operator's finger may still be exerting pressure on the projection 42." (5:55–62.) That is a mechanically forced trigger reset against finger pressure — the defining act of forced reset.

Standard semi-automatic mode is expressly disclosed (col. 6, ln. 50 et seq.; Figs. 6–7): "when the trigger is released by the operator it will be rotated counterclockwise by the hammer and trigger spring 86 thereby releasing sear surfaces 84 and 70. The hammer 72 then moves clockwise until its sear surface 82 engages the trigger sear surface 50. The carrier 20 has by now returned to its forward position and the rifle can be fired again by pulling back on the trigger." (7:11–18.)

Inskip's second mode — which it calls "variable rate" — is the claimed forced-reset semi-automatic mode in operation. First, it employs forced reset: the trigger is driven forward and "held in its counterclockwise position and cannot be pulled clockwise" during the cycle (5:55–67). Second, it satisfies the intrinsic "one round per function of the trigger" definition of semi-automatic operation drawn from the inventor's own earlier patent (Blakley col. 8, lns. 24–63): after each shot the carrier cycles, the trigger is forced forward and unlocked only when the carrier returns, and "[a]t this point the operator's finger pressure on the trigger projection 42 may cause the rifle to fire again" (6:18–20) — one discharge per trigger function, with "[v]ariable finger pressures … produc[ing] firing rates between a single shot and maximum rate" (6:21–42). Third, Inskip's maximum rate of approximately 700 rounds per minute (6:24–31) sits at the low end of the range attributed to modern forced-reset triggers, undercutting any suggestion that Inskip's mode is functionally a machine gun rather than a rapid semi-automatic mechanism.

Inskip's use of pre-1986 nomenclature ("variable rate" / "fully automatic") does not change what the mechanism does. In 1975 there was no regulatory or commercial reason to distinguish "forced reset" from automatic fire; forced reset was simply Inskip's means of achieving a higher rate. Anticipation turns on the disclosed operation, not labels. Inskip's forced-reset cycle involves only a momentary disconnector/hammer hold-back that is immediately handed off to

hammer/trigger engagement, permitting continued finger pressure to fire the next round (2:10–18; 6:18–20; 7:7–10). Inskip therefore discloses preventing the disconnector hook from catching the hammer hook. Claim 15 is anticipated; alternatively, the claim is obvious over Inskip in view of Stakes or Tommy, each of which teaches disabling the disconnector entirely during forced-reset operation for the predictable benefits of simplified timing and reduced hook wear.

### D.    Ground 4 — Anticipation By The Tommy Triggers FRT-15-3MD Under § 102(A)(1)

The Tommy FRT-15-3MD embodies every claim limitation: an AR-pattern hammer with sear catch and hook engaging a disconnector, pivoting on a transverse axis and driven rearward by the bolt carrier (Complaint ¶¶ 44, 46, 50, 60 and p. 18 annotations); a trigger member with a sear on a transverse pivot (¶¶ 44, 46, 60); sear/sear-catch engagement in the set positions (p. 18); a disconnector with a hook on a transverse pivot (¶¶ 45–47, 60); and a cam — the locking bar — with a lobe, movable between a first position and a second position in which the lobe applies force keeping the trigger in its set position (¶¶ 31, 34, 44, 46, 50, 60; p. 20). In standard semi-automatic ("disconnector") mode the cam is in its first position and the mechanism operates as a conventional AR-15 fire-control group, requiring trigger release after each shot (¶¶ 22, 27, 29, 45, 47, 60). In forced-reset mode the cam occupies its second position during the relevant portion of the cycle, and the safety selector is machined so that it presses down the disconnector tail, disabling the disconnector and preventing its hook from catching the hammer hook; the bolt carrier returns to battery and the user can pull the trigger to fire (¶¶ 27–28, 30, 34–36, 44–47, 50, 60). This is a complete, literal disclosure of both claimed modes — including outright prevention of any disconnector/hammer engagement.

8

If Plaintiffs dispute that the locking bar is a "cam" with a "cam lobe" that "forces" the trigger toward the set position (because the hammer, rather than the bar, performs the initial reset stroke in the Tommy design), the claim is obvious over Tommy in view of Blakley (Ground 7).

**E.      Ground 5 — Obviousness over Stoner (U.S. 3,045,555) in view of Blakley under § 103**

Stoner is the foundational AR-pattern fire-control disclosure, and its parallelism to the '247 Patent is striking: Stoner provides three conditions — safe, semi-automatic, and fully automatic (1:28–36; 3:31–35) — achieved with the same architecture the '247 Patent uses (compare '247 Patent Figs. 4A–4B with Stoner Fig. 3 (safe); '247 Patent Figs. 5A–5B with Stoner Fig. 6 (semi-auto); '247 Patent Figs. 6A–6B with Stoner Fig. 8 (auto)). Stoner discloses trigger mechanism 30 (Figs. 2–9; 2:21–32); hammer 62 with sear catch (sear abutment) 64 and hook (intermediate sear abutment) 76 engaging disconnector (intermediate sear) 68, mounted in fire-control pocket 22 of receiver 14 on transverse axis 82 and pivoted rearward by bolt carrier 42 (Figs. 2, 4; 2:21–42, 53–69; 4:42–44); trigger member 50 with sear 60 on transverse axis 52 (2:43–55); set/released sear engagement as claimed (2:48–52; 3:45–51; 4:13–20); and disconnector 68 with hook 74 on transverse axis 52 (2:53–62). Its standard semi-automatic mode operates exactly as recited: the disconnector hook 74 catches hammer hook 76 on carrier recoil, and the user must release the trigger to transfer the hammer to the trigger sear before firing again (Figs. 4–6; 3:64–4:24). In fully automatic mode, the automatic sear 96 holds the hammer and the disconnector hook 74 is prevented from catching the hammer hook 76 entirely (Figs. 7–9; 4:25–74).

Stoner lacks only the cam that forces the trigger toward its set position and, with it, the forced-reset mode; Stoner instead uses automatic sear 96 for its third mode. Blakley supplies exactly the missing element: cam 66 with lobe 69, movable to a second position in which it forces the trigger toward its set position, implementing forced reset (Blakley Figs. 1–2; 10:34–11:10).

The motivation to combine is concrete and documented in the art itself. As Blakley explains, fully automatic firearms have been severely restricted since the 1986 amendments (Blakley 8:44–63), yet market demand for increased rate of fire persisted, driving designs that raise the practical rate of fire while remaining outside the statutory machine-gun definition (Blakley 8:64–10:33). A POSA facing that design need would replace Stoner's now-largely-unlawful automatic mode with the closest lawful alternative — Blakley's forced-reset mode — by removing Stoner's automatic sear 96 and substituting Blakley's cam 66 and trigger extender in the vacated selector position. Blakley itself teaches the flexibility to do so: the cam body may be omitted and the cam pinned directly to the receiver (Blakley 11:6–9). The POSA would shorten Stoner's hammer tip to clear the cam and trigger extender — a routine accommodation, particularly because the hammer tip no longer serves the automatic-sear engagement (abutment 92 becomes unnecessary) or trigger-reset functions. The result is a three-mode firearm (safe, semi-automatic, forced-reset semi-automatic) meeting every limitation of claim 15, achieved by substituting one known selector-controlled third-mode mechanism for another with entirely predictable results. This is the substitution of a known element for another to obtain predictable results, driven by an explicit market and regulatory design need with a finite set of known solutions.

F.     **Ground 6 — Obviousness over Blakley in view of Tommy under § 103**

This ground assumes, contrary to Ground 2, that Blakley's momentary disconnector/hammer engagement during forced reset ("In resetting the trigger the disconnector ceases to engage the hammer," 10:46–47) does not satisfy "prevented from catching." Blakley discloses every other limitation, including the cam and both modes, as detailed in Ground 2. Tommy supplies unambiguous prevention of catching: in FRT mode, "a narrow semi-circular portion of the safety selector allows the tail portion of the trigger member to rotate, thus, allowing

10

the trigger to be pulled. However, the narrow portion contacts the tail of the disconnector, which is sticking out of the housing, thus preventing the disconnector hook from engaging the hammer hook." (Bingly video at 3:20–4:53; 5:50–6:20; 6:35–13:43; see also Complaint ¶¶ 45–47.)

A POSA would be motivated to apply Tommy's selector-controlled disconnector-tail lockout to Blakley to simplify Blakley's design. Extending the tail end of Blakley's disconnector within trigger groove 30, per Tommy, eliminates Blakley's trigger-extension spring, its complex machined trigger-extension bearing surfaces, and the trigger-extension motion described at Blakley 11:11–25; indeed, Blakley already contemplates a simplified trigger extension (Figs. 2A–2C, 3A), inviting exactly this streamlining. Blakley's selector-cam would then act on the disconnector tail directly rather than working against trigger-extender spring force. The modification also reduces wear on the disconnector and hammer hooks, which no longer contact at all during forced-reset cycling. These are rational, predictable engineering improvements — fewer parts, simpler machining, less wear — and the combination discloses every limitation of claim 15.

### G.    Ground 7 — Obviousness over Tommy in view of Blakley under § 103

This ground is the mirror image of Ground 6 and protects against a challenge to Tommy's "cam" limitation. If Tommy's locking bar is not deemed to be a "cam" (because Tommy uses the hammer for the reset stroke and the locking bar to hold the reset), a POSA would modify Tommy in light of Blakley to replace the rectangular locking bar with Blakley's rounded cam 66. A single rounded cam performs both functions — resetting the trigger and retaining it until the carrier completes its cycle — eliminating the timing coordination Tommy requires between the hammer-driven reset and the bar-driven retention. The predictable benefits are reduced complexity, improved reliability, reduced hammer and trigger wear, and reduced material (the trigger no longer

11

needs the hump the hammer presses), lowering cost and weight. The combination meets every

limitation of claim 15.