**Exhibit 17 - <u>INVALIDITY ARGUMENTS</u>**

U.S. Patent No. 12,578,159 ("'159 Patent")

## I.    <u>THE '159 PATENT AND ITS ADMISSIONS</u>

The '159 Patent is directed to a firearm trigger mechanism for AR-pattern firearms. The Abstract states that the mechanism includes a hammer, trigger member, disconnector, cam, and a three-position safety selector having safe, standard semi-automatic, and forced-reset semi-automatic positions. The specification describes a drop-in module installed in a typical AR15-pattern lower receiver using standard AR-pattern hammer and trigger pins, standard AR-pattern hammer/trigger/disconnector springs, and a standard M16- or AR15-pattern bolt carrier. '159 Patent, Abstract; 2:19-31; 7:11-14; 7:25-8:40; 8:41-65.

The asserted independent claims recite the same small set of mechanical concepts. Claims 1, 6, 10, and 14 require a hammer, trigger member, disconnector, and cam/cam lobe arranged so that standard semi-automatic operation requires manual trigger release, while a second forced-reset mode uses the cycling action to reset the trigger and prevent or bypass disconnector retention. Claims 15 and 16 recite the same concepts using means-plus-function language for the hammer hook, trigger, disconnector hook, and mode selection. Claim 17 recites the same architecture as a hammer, trigger member, cam, movable blocking means, and mode selector. '159 Patent, claims 1, 3, 6, 7, 9-11, 14-17.

The '159 Patent admits that the basic standard semi-automatic sequence was conventional. It explains that in a standard semi-automatic firearm the bolt carrier reciprocates, resets the hammer, and that a standard semi-automatic trigger mechanism includes a disconnector that catches the hammer until the trigger is released/reset. The patent further admits that this disconnector operation prevents multiple rounds per trigger pull and prevents hammer follow. '159 Patent 1:19-38. This admitted prior art maps directly to the standard semi-automatic mode limitations in the charted claims.

The patent also admits the market demand that drove the art. It states that shooters desired to increase the rate of semi-automatic fire, including to approximate the feel of shooting a machine gun, and that users resorted to bump firing. '159 Patent 1:39-55. That is the same demand described in U.S. Patent No. 7,398,723 (Blakley), which explains that after the May 1986 freeze on civilian manufacture of machine guns, demand and regulatory burden created incentives to increase semi-automatic cyclic rate without crossing the one-round-per-trigger-function line. Blakley 8:44-63.

The patent admits that forced reset was already a known solution. It discusses devices that forcefully reset the trigger using rigid mechanical contact between the trigger member and the bolt, including Plaintiffs' own prior devices in which the hammer forces the trigger to the set position. '159 Patent 1:56-2:4. It then expressly identifies Blakley as another device for increasing semi-automatic rate of fire, incorporates Blakley by reference, describes Blakley's pivoting cam contacted by the rearwardly traveling bolt carrier to force the trigger forward, and states that further improvement in forced-reset triggers was desired. '159 Patent 2:5-16.

Those admissions are powerful because they identify both the problem and the claimed solution before the alleged invention: a standard AR-pattern semi-automatic trigger group could be supplemented with a bolt-actuated cam to force-reset the trigger, and the art was already trying to improve that exact mechanism. The '159 Patent also cites Stoner, Blakley, and Stakes on its face, confirming that the Examiner and applicant treated these references as directly relevant firearm trigger prior art.

## II.    PRIOR ART

### A.    Stoner (U.S. Patent No. 3,045,555)

Stoner discloses the classic AR-pattern trigger mechanism architecture. Its stated objectives are a trigger mechanism of extremely simple construction with a minimum number of components, resistant to dirt, sand, and mud because the larger components are mounted on pivot pins rather than

sliding surfaces. Stoner 1:11-29. Stoner further discloses a hammer, trigger, intermediate sear, automatic sear, and a single rotatable control member that determines whether the gun is in safety, semi-automatic, or automatic condition. Stoner 1:28-56.

Structurally, Stoner discloses a receiver 14 defining a trigger mechanism chamber 22 and a bolt assembly receiving chamber 24. The trigger mechanism 30 is received in the trigger mechanism chamber, and the bolt assembly 40 includes elongated bolt carrier 42. Stoner 2:21-42; Fig. 2. The trigger 50 is pivotally mounted in the receiver on transverse pivot pin 52; its forward extremity forms sear 60, which engages sear abutment 64 on hammer 62. Stoner 2:43-52; Figs. 2, 4. The same pin 52 also pivotally mounts intermediate sear 68, whose hook 74 engages hammer intermediate sear abutment 76. Stoner 2:53-62; Figs. 3, 5-6. Hammer 62 pivots on pin 82 and is biased by torsion spring 84. Stoner 2:67-72.



*Stoner Fig. 2 – AR-pattern receiver and trigger mechanism, showing trigger 50, hammer 62, intermediate sear 68, automatic sear 96, bolt carrier 42, and control member/safety 120 with control cam 124*

3

Stoner also discloses the mode selector architecture used by the '159 Patent. Common control member or safety 120 is mounted in the receiver and includes a control cam 124 juxtaposed to the adjacent extremities of trigger 50, intermediate sear 68, and automatic sear 96. Stoner 3:19-35. Rotation of control member 120 places the trigger mechanism in safety, semi-automatic, or automatic condition. Stoner 3:31-35. In semi-automatic mode, the control cam frees trigger 50 and intermediate sear 68 for rotation; after firing, bolt carrier 42 drives hammer 62 downward, and intermediate sear hook 74 catches hammer abutment 76 until the trigger is released, at which point trigger sear 60 re-engages hammer sear abutment 64. Stoner 3:63-4:24; Figs. 5-6.

In Stoner's automatic mode, the selector changes the relationship of the same components. Control cam 124 permits automatic sear 96 to engage automatic sear abutment 92 while the cam 136 locks the intermediate sear 68 against movement and prevents hook 74 from engaging hammer abutment 76. Stoner 4:25-41; Figs. 7-8. As bolt carrier 42 returns to battery, shoulder 106 strikes automatic sear head 102 and releases hammer 62. Stoner 4:42-56; Fig. 9. Stoner therefore supplies not merely a generic trigger, but the specific three-mode, rotatable-selector, AR-pattern fire-control architecture later claimed by the '159 Patent.

### B.    Blakley (U.S. Patent No. 7,398,723)

Blakley is directed to a trigger forward displacement system and method for increasing the cyclic rate of actuating the trigger and discharging a semi-automatic firearm. Blakley 1:6-20. The mechanism is used with a typical semi-automatic firearm having a reciprocating member such as a bolt, bolt carrier, slide, or similarly named part. Blakley 8:1-11. On rearward travel of the reciprocating member, the mechanism resets the trigger to the forward ready-to-fire position, potentially against rearward pressure applied by the operator's finger, and holds the trigger forward until the reciprocating member reaches a nearly closed position where it is safe to allow discharge. Blakley 8:12-26.

4

Blakley explains the market and regulatory reason for the design. It notes that fully automatic firearms continue firing while the trigger is held to the rear, but civilian manufacture of machine guns was outlawed in May 1986, creating a fixed supply, increasing prices, transfer taxes, registration requirements, and administrative burdens. Blakley 8:44-58. Given those economics and regulations, Blakley states that inventors devised ways to increase the cyclic rate of a semi-automatic firearm without causing it to become a machine gun by violating the one-round-per-function-of-the-trigger rule. Blakley 8:58-63. This is an express motivation to replace Stoner's full-auto third mode with a legally semi-automatic rate-enhancing third mode.

Blakley also points directly to the Stoner/AR platform. It distinguishes U.S. Patent No. 6,101,918 (Akins) because many military-style arms have separate pistol grips and buttstocks and therefore could not use Akins in their original configuration; Blakley lists AR15, L1A1, and AK47 as examples. Blakley 9:37-49. It distinguishes U.S. Patent No. 4,023,465 (Inskip) because Inskip transmits trigger-finger pressure to the bolt carrier during a low-energy portion of the carrier cycle, increasing friction and potentially causing the carrier to bind and cease travel. Blakley 9:50-10:24. Blakley's mechanism solves that problem by overcoming trigger-finger pressure during a higher-energy portion of the reciprocating member's travel, then holding the trigger in the ready-to-fire position while isolating the bolt from upward trigger-finger force. Blakley 10:12-24.

The Blakley structure maps directly to the '159 cam limitations. Blakley discloses trigger 22 with sear 34 and upward groove 30, disconnector 38, hammer with sear catch 52 and hook receptacle 54, cam body housing 64, cam 66 pivoted on cam mounting pin 68, and trigger extender 90 mated with the trigger groove. Blakley 5:6-6:33; Figs. 1-5. During operation, after the trigger is pulled and the hammer falls, the bolt moves rearward, first cocking the hammer and then contacting cam 66. As cam 66 rotates rearward, the bottom surface of the cam presses downward on the trigger-extension, forcing the rear of the trigger down and moving the trigger-finger surface forward. Blakley 10:34-46; Figs. 1-

3. In resetting the trigger, the disconnector ceases to engage the hammer, and the trigger is held firmly down/forward potentially against the operator's finger pressure. Blakley 10:46-60.



***Blakley Fig. 3 – Forced-reset mechanism, showing trigger 22, sear 34, disconnector 38, cam body housing 64 with cam pivoted therein, and the reciprocating member positioned to contact the cam***

Blakley further teaches packaging flexibility that makes the combination with Stoner straightforward. Blakley states that the cam body can be eliminated and the cam and firearm receiver fashioned so the cam is pinned directly to the receiver. Blakley 11:6-9. Blakley also teaches that the trigger-forward displacement effect may be optionally selected or deselected by operating a selector-cam and moving the trigger-extension between positions in which the cam does or does not contact the trigger-extension bearing surface. Blakley 11:11-25. Thus, Blakley supplies both the missing

cam/forced-reset feature and the express teaching that the feature can be selectively enabled or disabled, exactly as the '159 claims require.

### C.    Stakes (U.S. Patent No. 9,146,067)

Stakes independently confirms that selectable standard semi-automatic and assisted-reset semi-automatic trigger mechanisms were known years before the '159 priority date. Stakes discloses trigger mechanism 20 carried by a lower receiver of a firearm and expressly notes that it may be formed as a drop-in trigger mechanism. Stakes 6:7-17. Stakes states that trigger mechanism 20 allows selection between safe, semi-automatic, and assisted-reset semi-automatic modes of fire or operation, and that the assisted-reset semi-automatic mode is a form of semi-automatic operation. Stakes 6:18-22.

Stakes discloses trigger assembly 21 having trigger body 23, trigger nose 24, trigger 27, disconnector 30 with disconnector lever 32 and hook 33, and cam surface 35. Stakes 6:22-42. It discloses hammer 40 pivoting about pivot 42 between firing, cocked, and past-cocked positions, with trigger notch 49 receiving trigger nose 24 to hold the hammer cocked. Stakes 6:50-65. It discloses reset lever 50 with arms 52 and 53, pivot 56, and reset lever spring 60; arm 53 moves between an inoperative position away from cam surface 35 and an operative position contacting cam surface 35. Stakes 6:66-7:45.

Stakes selector 70 selects the modes. In the semi-automatic position, selector 70 holds reset lever 50 out of play, preventing hammer 40 from striking or interacting with reset lever 50 during semi-automatic firing. Stakes 7:50-8:29; 11:55-12:23. In the assisted-reset mode, selector 70 pivots reset lever 50 so that arm 53 contacts cam surface 35 of disconnector lever 32. Stakes 10:24-45. After a shot, the rearwardly moving bolt carrier pivots hammer 40 rearward toward and beyond the cocked position. With the trigger held pulled, hammer disconnect notch 47 clips past disconnector hook 33 with a sharp glancing blow; hammer tail 46 then strikes arm 53 of reset lever 50, pivoting the reset lever from open to closed. Stakes 14:11-34.

7

That reset lever action forces reset of the trigger assembly. Stakes states that arm 53 acts on cam surface 35, pivoting trigger disconnector assembly 39, including trigger body 23 at pivot 28 and disconnector 30 at pivot point 38, from the discharged orientation to the charged orientation, raising trigger nose 24 to its set position and moving disconnector hook 33 to a disengaged position. Stakes 14:34-57; 15:1-16:8. Stakes summarizes that reset lever 50 intercepts hammer 40 in the past-cocked position just after the hammer disconnect notch clips past disconnector hook 33; the interaction isolates the hammer from the trigger disconnector assembly and accelerates resetting from discharged to charged position. Stakes 16:9-33. Stakes thus independently discloses the claimed cam/reset-lever forced-reset concept, selector, standard mode, and forced-reset/assisted-reset mode.

### D.    Component Correspondence

The component correspondence is not loose analogy; it is a near one-to-one mapping in the same receiver pocket and the same mechanical design space:

| Function | Stoner | Blakley | Stakes | '159 Patent |
|---|---|---|---|---|
| Receiver / fire-control pocket | receiver 14; trigger mechanism chamber 22; bolt assembly receiving chamber 24 (2:21-42) | receiver 16 and safety selector aperture; AR15 host (5:6-12; 9:42-44) | lower receiver/drop-in trigger mechanism (6:7-17) | lower receiver 14 / fire-control pocket; AR-pattern drop-in module (7:11-44) |
| Bolt / reciprocating member | bolt carrier 42 (2:21-42) | reciprocating loading mechanism / bolt, bolt carrier, slide (8:1-11) | rearwardly moving bolt carrier engages hammer (14:11-18) | bolt carrier assembly 92 (8:17-40) |
| Hammer | hammer 62; sear abutment 64; intermediate sear abutment 76; pivot 82 (2:48-72) | hammer with sear catch 52 and hook receptacle 54 (5:44-56) | hammer 40; trigger notch 49; hammer disconnect notch 47; pivot 42 (6:50-65) | hammer 36; sear catch 52; hammer hook 53 (7:45-49) |
| Trigger / trigger sear | trigger 50; sear 60; pivot pin 52; | trigger 22; sear 34; upward | trigger assembly 21; trigger body 23; trigger nose | trigger member 38; sear 56; cam follower 58; pin |

8

| | groove 58 (2:43-52) | groove 30; pin 46 (5:13-27) | 24; trigger 27 (6:22-30) | 32/48 (7:36-63; 8:6-8) |
|---|---|---|---|---|
| Disconnector / blocking member | intermediate sear 68; hook 74; same pivot 52 (2:53-62) | disconnector 38 (5:28-34) | disconnector 30; hook 33; cam surface 35 (6:30-42) | disconnector 60; hook 64; same hollow pin 32 (7:64-8:2) |
| Selector | three-position control member/safety 120 and control cam 124 (3:19-35) | three-position safety selector 82; selector-cam for enable/disable (6:18-21; 11:11-25) | three-position selector 70 selects safe/semi/assisted-reset (7:61-8:5) | three-position selector 110 (8:41-65) |
| Cam / forced reset | automatic sear 96 is the third-mode part replaced in the combination (3:1-18; 4:25-56) | cam 66 and trigger extender 90; cam forces trigger forward and holds it (10:34-11:5) | reset lever 50/arm 53 contacts cam surface 35 to reset trigger assembly (14:24-57) | cam 72 with cam lobe 78 forces trigger/cam follower (8:3-16) |

## III.    GROUND 1: STONER IN VIEW OF BLAKLEY RENDERS THE ASSERTED CLAIMS OBVIOUS

### A.    Same Field, Same Host Platform, Same Architecture

Stoner and Blakley are analogous art in the strongest sense: they address fire-control mechanisms for the same category of firearms and use the same receiver-pocket/pivot-pin architecture. Stoner discloses an AR-pattern rifle receiver with trigger 50, hammer 62, intermediate sear 68, automatic sear 96, bolt carrier 42, and rotatable selector 120. Stoner 2:21-3:35; Figs. 1-9. Blakley discloses a forced-reset trigger displacement system for semi-automatic firearms and identifies military-style arms such as the AR15 as intended hosts. Blakley 8:1-26; 9:37-49; Figs. 1-5. The '159 Patent claims the same AR-pattern drop-in trigger environment. '159 Patent 7:11-8:65.

A POSA starting with Stoner would naturally look to Blakley because Blakley is not a remote reference. It is by the same named inventor as the '159 Patent, is expressly incorporated into the '159 Patent, and discloses the very improvement the '159 Patent says was known but in need of further refinement: a pivoting cam contacted by the rearwardly traveling bolt carrier to force the trigger forward. '159 Patent 2:5-16; Blakley 10:34-11:5.

9

**B.     Express Motivation to Replace Stoner's Automatic Third Mode With Blakley's Forced-Reset Third Mode.**

The motivation to combine is express, not reconstructed. Stoner provides a three-position select-fire trigger group with safe, semi-automatic, and automatic modes selected by control member 120. Stoner 1:28-56; 3:19-35; 3:63-4:56. Blakley explains that, after May 1986, civilian manufacture of machine guns was prohibited, creating a fixed supply and strong economic/regulatory pressure for semi-automatic mechanisms that increase cyclic rate without becoming machine guns. Blakley 8:44-63. A POSA seeking to keep Stoner's proven selector architecture while avoiding a full-auto third mode would have been directly motivated to substitute Blakley's forced-reset mechanism for Stoner's automatic-sear third mode.

Blakley articulates the exact design target. Its object is to increase the cyclic firing rate without requiring receiver modification and without causing the firearm to fall within the legal definition of a machine gun. Blakley 10:25-33. It further teaches that the effect can be selected or deselected using a selector-cam and a shiftable trigger extension. Blakley 11:11-25. Thus, Blakley does not merely provide a cam; it provides a reason to use that cam in place of a full-auto mode, and it teaches selective operation of the cam-based feature.

The '159 Patent's admissions independently confirm the same motivation. The patent states that shooters desired increased semi-automatic firing rates, acknowledges bump firing and prior forced-reset devices, describes Blakley's pivoting cam system, and states that further improvement in forced-reset triggers was desired. '159 Patent 1:39-2:16. Those admissions show a known demand and a known solution family, and they identify Blakley as part of that family.

**C.     The Combination Is a Straightforward Substitution of Known Mechanical Elements**

The proposed modification is simple: retain Stoner's receiver-pocket architecture, trigger 50, hammer 62, intermediate sear/disconnector 68, pivot pins, springs, and control member 120 for

standard semi-automatic operation, while replacing Stoner's automatic sear 96/automatic mode with Blakley's cam 66 and trigger extender 90/forced-reset mode. Stoner 2:43-4:56; Blakley 5:13-6:33; 10:34-11:5. Each element performs the same function it performed in the prior art.



*Demonstrative – Stoner Fig. 2 modified to incorporate Blakley's cam and trigger extender: automatic sear 96 is removed and replaced with Blakley's bolt-actuated forced-reset cam (pinned in the fire-control pocket) acting on a trigger extender carried by Stoner's trigger 50*

- **Retained Stoner structure.** Stoner's trigger 50 remains pivoted on pin 52, sear 60 continues to engage hammer sear abutment 64, and intermediate sear hook 74 continues to catch hammer abutment 76 in the standard semi-automatic sequence until the trigger is manually released. Stoner 2:43-62; 3:63-4:24.

- **Substituted Blakley forced-reset structure.** Blakley's cam 66 is contacted by the rearwardly moving bolt after the bolt cocks the hammer; cam rotation presses on trigger extender 90 and forces

11

the trigger forward/reset, holding it forward against the user's finger pressure until the bolt returns near battery. Blakley 10:34-11:5.

- **Selector functionality.** Stoner already uses a rotatable control member to select among three modes, and Blakley teaches that the forced-reset effect may be selected or deselected by a selector-cam. Stoner 3:19-35; Blakley 11:11-25. Reassigning Stoner's third selector position from automatic sear operation to Blakley forced reset is a predictable use of Stoner's established selector function.

- **Packaging.** Blakley states that the cam body may be eliminated and the cam pinned directly to the receiver. Blakley 11:6-9. This is just as the cam is attached in the '159 Patent. Fig. 3, 8:3-10.

The modification does not require changing the principle of operation of either reference. Stoner continues to provide pivot-mounted fire-control components and a single mode selector. Blakley continues to provide a bolt-actuated cam that forwardly displaces/resets the trigger. The result is exactly the claimed three-position arrangement: safe, standard semi-automatic, and forced-reset semi-automatic.

### D.    Reasonable Expectation of Success

A POSA would have expected success because the two mechanisms are mechanically complementary. Both mount fire-control components on transverse pivot pins within a receiver pocket. Stoner 2:43-62; Blakley 5:13-6:21. Both use a trigger with a rearward upper portion/groove that accommodates a sear/disconnector and provides a convenient bearing region for Blakley's trigger extender. Stoner 2:43-58; Figs. 3, 6, 8; Blakley 5:13-27; 6:22-33; Fig. 5. Blakley's cam is located above/behind the trigger where the bolt carrier can contact it; it does not require changing Stoner's hammer/trigger sear relationship or standard semi-automatic operation. Blakley 10:34-11:5.

Blakley itself confirms that routine adaptations in size, materials, shape, form, function, manner of operation, assembly, and use are readily apparent and obvious to one skilled in the art. Blakley 12:3-10. Thus, routine dimensional changes such as providing a cam pivot, fitting a trigger extender/cam

12

follower, or trimming a now-unused automatic-sear abutment/tail to clear the cam are ordinary mechanical packaging choices. The '159 Patent likewise treats the AR platform as modular and standardized, relying on standard AR-pattern pins, springs, and bolt carriers. '159 Patent 7:25-8:40.

The operating sequence is predictable. On firing, the bolt carrier moves rearward and cocks the hammer. In standard semi-automatic mode, Stoner's disconnector/intermediate sear catches the hammer until manual trigger release, exactly as claimed. Stoner 3:63-4:24. In forced-reset mode, Blakley's cam is contacted during cycling and forces the trigger toward/set into the reset position, after which the bolt returns toward battery and the trigger can be pulled again. Blakley 10:34-11:5. Nothing in either reference suggests that the combined sequence would be unreliable or inoperative.

## IV. CLAIM-BY-CLAIM APPLICATION OF GROUND 1 (STONER IN VIEW OF BLAKLEY)

### A. Claim 1

*Preamble and operating modes.* Stoner discloses a firearm trigger mechanism 30 for a firearm having receiver 14, trigger mechanism chamber 22, bolt assembly receiving chamber 24, and bolt carrier 42. Stoner 2:21-42; Fig. 2. Stoner provides selectable safe, semi-automatic, and automatic modes using control member 120. Stoner 3:19-35; 3:63-4:56. Blakley supplies the forced-reset semi-automatic mode: a bolt/reciprocating member actuates cam 66 to reset the trigger forward, hold it forward until the bolt is nearly closed, and preserve semi-automatic status because only one round fires for each trigger pull. Blakley 8:12-26; 10:34-11:5. Substituting Blakley's forced-reset third mode for Stoner's automatic third mode yields the claimed first standard semi-automatic mode and second forced-reset semi-automatic mode.

*Hammer.* Stoner discloses hammer 62 having sear abutment 64 and intermediate sear abutment 76 (the claimed hook/catch for the disconnector), mounted on pivot pin 82 and driven downward/rearward by bolt carrier 42 after firing. Stoner 2:48-72; 4:20-24; Figs. 2, 4-5. Blakley likewise discloses a hammer with sear catch 52 and hook receptacle 54. Blakley 5:44-56. The combined

13

mechanism therefore has the claimed hammer having a sear surface and hook for engaging a disconnector, pivotable between set and released positions, and adapted to be pivoted rearward by bolt movement.

*Trigger member and sear engagement.* Stoner discloses trigger 50 pivoting on transverse pivot pin 52, with sear 60 engaging hammer sear abutment 64 in the cocked/set position and disengaging when trigger 50 is pulled. Stoner 2:43-52; 3:46-50; 4:9-24; Figs. 2, 4. Blakley likewise discloses trigger 22 with sear 34 engaging hammer sear catch 52. Blakley 5:13-27; 5:44-56; Fig. 3. These disclosures meet the trigger member, trigger sear surface, hammer sear catch surface, set/released position, and engagement/disengagement limitations.

*Disconnector.* Stoner's intermediate sear 68 is the claimed disconnector: it is pivotally mounted on transverse pin 52, includes hook 74, and hook 74 engages hammer abutment 76. Stoner 2:53-62; Figs. 3, 5-6. The claim does not require that the disconnector be named "disconnector" in the prior art; it requires the pivoting hook function, which Stoner discloses. Blakley also discloses disconnector 38. Blakley 5:28-34.

*Cam/cam lobe.* Stoner lacks the claimed forced-reset cam, but Blakley supplies it. Blakley discloses cam 66 pivoted by cam mounting pin 68. When the rearwardly moving bolt contacts the cam, cam rotation presses downward on trigger extender 90, forcing the rear of the trigger down and moving the trigger finger surface forward; the trigger is held firmly down/forward against operator finger pressure until the bolt returns sufficiently. Blakley 5:57-6:33; 10:34-11:5. Blakley therefore supplies a cam having a cam lobe adapted to move between first and second positions, with the second position forcing the trigger member toward the set position.

*Standard semi-automatic mode.* Stoner discloses precisely the claimed first-mode sequence. In semi-automatic mode, after firing, bolt carrier 42 drives hammer 62 downward, intermediate sear hook 74 catches hammer abutment 76, and release of trigger 50 causes intermediate sear 68 to release the

14

hammer only after trigger sear 60 engages hammer sear abutment 64. Stoner 3:63-4:24. The user must manually reduce pressure/release the trigger before another shot can be fired. This matches the '159 Patent's admitted standard semi-automatic operation. '159 Patent 1:19-38.

*Forced-reset mode.* Stoner discloses that in its second/automatic mode, control cam 124 locks intermediate sear 68 so hook 74 cannot engage hammer abutment 76. Stoner 4:25-41. Blakley supplies the forced-reset trigger movement: the bolt contacts cam 66, cam 66 forces the trigger forward/set through trigger extender 90, and as the bolt returns to near battery, the cam is moved/freed so the operator can pull the trigger again. Blakley 10:34-11:5. In the combined third mode, the disconnector is prevented from holding the hammer by Stoner's selector/disconnector-blocking function, while Blakley's cam performs the claimed forced trigger reset. That combination satisfies the final limitation of claim 1.

### B.    Claims 3, 6, 7, 9, 10, and 11

Claim 3 adds a spring biasing the trigger member toward the set position. Stoner discloses spring 72 and the trigger spring arrangement that biases trigger 50/finger grip 88 toward its inoperative/reset position. Stoner 2:70-72. Blakley likewise shows the conventional trigger spring arrangement in its figures and discloses trigger/disconnector springs. Blakley 5:35-43; Fig. 5. Claim 3 is therefore obvious for the same reasons as claim 1.

Claim 6 largely restates claim 1 but recites that in the cam's second position the cam prevents the trigger member from moving from the set position to the released position. Blakley meets that limitation because its cam holds the trigger firmly down/forward in the ready-to-fire position, potentially against the operator's finger pressure, until the bolt nears battery; the operator's finger pressure is not permitted to pivot the trigger to release the hammer until the cam rotates/frees the trigger. Blakley 10:34-11:5. Stoner supplies the standard semi-automatic components and selector architecture as described above. Stoner 3:63-4:56.

Claim 7 again adds the trigger-biasing spring and is met for the same reasons as claim 3. Stoner 2:70-72. Claim 9 recites that the trigger member pivots on a transverse trigger axis between set and released positions. Stoner expressly discloses trigger 50 pivotally mounted on transversely oriented pivot pin 52. Stoner 2:43-46. Blakley likewise discloses trigger mounting pin 46. Blakley 5:35-38. These dependent claims add only conventional structure already disclosed in the primary reference.

Claim 10 restates the core mechanism but recites that movement of the cam to the second position causes the trigger member to move from the released position toward the set position. Blakley discloses exactly that: after the trigger has been pulled and the hammer has fallen, the rearwardly moving bolt contacts cam 66; as cam 66 rotates rearward, it presses down on trigger extender 90 and moves the trigger from its fire/rearward position to its forward ready-to-fire position. Blakley 10:34-46. Claim 11 adds a trigger-biasing spring and is met by Stoner's spring 72 and the conventional trigger spring arrangement. Stoner 2:70-72.

## C.    Claim 14

Claim 14 is a less detailed formulation of the same Stoner/Blakley combination. Stoner supplies the hammer 62 with sear abutment 64 and intermediate sear abutment 76, receiver pocket, bolt carrier 42 moving the hammer rearward, trigger 50 with sear 60, intermediate sear/disconnector 68 with hook 74, and standard semi-automatic operation. Stoner 2:21-4:24. Blakley supplies the cam 66/cam lobe and forced-reset second mode in which rearward bolt movement causes cam rotation that forces the trigger toward the set position and allows another trigger pull after the bolt returns into battery. Blakley 10:34-11:5. The same substitution and motivation described above therefore render claim 14 obvious.

## D.    Claims 15 and 16

Claims 15 and 16 recite the same components using "means" language. As these limitations are governed by 35 U.S.C. section 112(f), the corresponding structures are disclosed by the prior art. Stoner's hammer 62 and abutment 76 and Blakley's hammer hook receptacle 54 supply the hammer

16

hook means; Stoner's trigger 50 and Blakley's trigger 22 supply the trigger means; Stoner's intermediate sear hook 74 and Blakley's disconnector 38 supply the disconnector hook means; and Stoner's control member/safety 120 together with Blakley's selector-cam teaching supplies the means for selecting between standard semi-automatic and forced-reset semi-automatic modes. Stoner 2:43-3:35; Blakley 5:13-6:33; 11:11-25.

The cam limitation in claims 15 and 16 is met by Blakley's cam 66. In a first position it does not force the trigger into set position; in the second position, rearward bolt contact rotates the cam and forces the trigger toward the set position through trigger extender 90. Blakley 10:34-11:5. The standard semi-automatic and forced-reset mode limitations are met by Stoner's standard semi-automatic disconnector sequence and by the combined forced-reset mode using Blakley's cam in Stoner's selector-controlled third position. Stoner 3:63-4:24; 4:25-56; Blakley 10:34-11:5.

### E.    Claim 17

Claim 17 recites a hammer, trigger member, cam, movable blocking means, and mode selector. Stoner supplies hammer 62, trigger 50, intermediate sear/disconnector 68 as the movable blocking means, and control member 120 as the mode selector. Stoner 2:43-3:35. Blakley supplies the cam configured to move during cycling and to contact the trigger member, through trigger extender 90, to bias it toward the set position. Blakley 6:22-33; 10:34-11:5. The claim does not require that the cam directly contact a monolithic trigger surface; the '159 Patent itself uses a cam follower surface associated with the trigger member. '159 Patent 7:59-63; 8:3-16.

Claim 17's semi-automatic mode is Stoner's semi-automatic mode: hammer and trigger sear surfaces cannot re-engage until the user reduces pressure/releases the trigger to disengage the blocking/disconnector. Stoner 3:63-4:24. The forced-reset mode is supplied by the combination: Blakley's cam moves during cycling and forcibly biases the trigger member into set/reset position; Stoner's selector/disconnector blocking function determines whether the hammer/trigger sears can

17

engage when the trigger is biased by the cam. Stoner 4:25-56; Blakley 10:34-11:5. If the patentee argues that the "if the cam moves in both modes" clause requires cam movement in both modes, the Stoner/Blakley combination meets that too because Blakley's cam would move in both modes but would not reset the trigger in the semi-automatic mode because the disconnector, held in position by Stoner's selector, would prevent the cam from contacting the trigger extender.

## V.    GROUND 2: STAKES ANTICIPATES OR RENDERS OBVIOUS THE ASSERTED CLAIMS

### A.    Stakes Independently Discloses Selectable Standard and Assisted/Forced-Reset Operation.

Stakes addresses the same problem as the '159 Patent: a trigger mechanism that allows selection between standard semi-automatic and assisted-reset semi-automatic operation in a lower receiver/drop-in fire-control environment. Stakes 6:7-22. Stakes is especially important because it independently shows that by 2015 a POSA already had a selectable assisted-reset trigger mechanism with a hammer, trigger member, disconnector, reset lever/cam, and selector.

For claims 1, 6, 10, 14, 15, and 16, Stakes discloses the same elements under the names used in that patent. Trigger mechanism 20 is carried by a lower receiver and may be drop-in. Stakes 6:7-17. Selector 70 selects safe, semi-automatic, and assisted-reset semi-automatic modes. Stakes 6:18-22; 7:61-8:5. Trigger assembly 21 has trigger body 23, trigger nose 24, and trigger 27. Stakes 6:22-30. Disconnector 30 has disconnector hook 33 and cam surface 35 and pivots with the trigger assembly. Stakes 6:30-42. Hammer 40 has trigger notch 49 and hammer disconnect notch 47 and pivots rearward under bolt carrier action. Stakes 6:50-65; 14:11-18.

Stakes' reset lever 50/arm 53 is the claimed cam/cam lobe, or at minimum renders that feature obvious. Reset lever 50 is pivotally mounted, has arms 52 and 53, and moves between positions in which arm 53 is away from cam surface 35 and positions in which arm 53 contacts cam surface 35. Stakes 6:66-7:45. In assisted-reset mode, hammer tail 46 strikes arm 53, moving reset lever 50 from

18

open to closed; arm 53 then acts on cam surface 35 to pivot trigger disconnector assembly 39, raise trigger nose 24 to the set position, and move disconnector hook 33 to the disengaged position. Stakes 14:11-57; 15:1-16:8. That is the same functional relationship claimed by the '159 Patent: a movable cam/cam lobe forces the trigger member toward the set position during cycling.

### B.      Stakes Meets the Standard Semi-Automatic Mode Limitations

In Stakes' semi-automatic mode, selector 70 holds reset lever 50 out of play, away from hammer 40, so the hammer does not contact or interact with the reset lever during semi-automatic firing. Stakes 11:55-12:7. Standard semi-automatic function is performed by the disconnector: rearward bolt carrier movement pivots hammer 40 rearward; with trigger 27 held pulled, disconnector hook 33 is positioned to engage hammer disconnect notch 47 and prevent forward movement of the hammer; when trigger 27 is released, disconnector hook 33 pivots from engaged to disengaged, trigger nose 24 moves into trigger notch 49, and hammer 40 is retained cocked for another trigger pull. Stakes 11:55-12:23. This directly maps to the first-mode limitations requiring manual reduction of trigger pressure to free the hammer from the disconnector.

### C.      Stakes Meets the Forced-Reset / Assisted-Reset Mode Limitations

In Stakes' assisted-reset mode, the selector places reset lever 50 in play, arm 53 contacts cam surface 35, and after firing the rearwardly moving bolt carrier drives hammer 40 rearward beyond the cocked position. Stakes 10:24-45; 14:11-18. Hammer disconnect notch 47 clips past disconnector hook 33 with a sharp glancing blow as hammer 40 moves to the past-cocked position. Stakes 14:19-23. Hammer tail 46 then strikes arm 53 of reset lever 50, causing reset lever 50 to move from open to closed; arm 53 acts on cam surface 35 to pivot trigger disconnector assembly 39 from discharged to charged, raise trigger nose 24 to the set position, and remove disconnector hook 33 from engagement with hammer disconnect notch 47. Stakes 14:24-57.

19

Stakes then expressly states that the reset lever/trigger-disconnector interaction accelerates resetting from discharged to charged position and quickens the rate of semi-automatic fire, allowing faster trigger pulls between each round. Stakes 16:9-33. This is not materially different from the '159 Patent's forced-reset mode; both use action cycling to force or assist trigger reset to a position where the user can immediately pull again without a full manual trigger release/reset stroke.

### D.    Claim 17

For claim 17, Stakes supplies the hammer, trigger member, cam/reset lever, movable blocking means, and mode selector. Stakes 6:7-7:45; 7:61-8:5. The semi-automatic mode limitation is met because in semi-automatic mode the hammer and trigger sears are not restored for another shot until the user releases pressure and the disconnector disengages. Stakes 11:55-12:23. The forced-reset mode limitation is met because reset lever 50 moves during cycling and forces the trigger/disconnector assembly into the set/charged orientation, permitting a faster subsequent trigger pull. Stakes 14:11-57; 16:9-33.

If the patentee argues that claim 17 requires direct cam-to-trigger contact, Stakes still anticipates or renders obvious because arm 53 contacts cam surface 35 of the disconnector/trigger-disconnector assembly, which pivots trigger body 23 and raises trigger nose 24. Stakes 14:34-57. The claim language says the cam contacts the trigger member to bias it toward set; it does not exclude contact through an integral trigger/disconnector assembly or cam surface. The '159 Patent itself uses a cam follower 58 associated with the trigger member rather than requiring that cam lobe 78 bear directly on the finger pad. '159 Patent 7:59-63; 8:3-16. At minimum, replacing an indirect cam surface with a direct cam follower or vice versa is an obvious design choice in this mechanical art.

If the patentee argues that claim 17's final "if the cam moves in both modes" clause imposes a requirement that the cam move in both modes, Stakes provides an obvious variant and Stoner/Blakley supplies the same concept. Stakes teaches that selector 70 determines whether reset lever 50 is held out

of play or placed in play. Stakes 7:61-8:29; 10:24-45. Blakley likewise teaches selective enable/disable of the cam effect by selector-cam and trigger-extension positioning. Blakley 11:11-25. Thus, to the extent that limitation is narrowing, it would have been obvious to configure the same cam to move during cycling in both positions while selection of the blocking member or cam follower determines whether reset affects hammer/trigger engagement.

## VI.    ADDITIONAL OBVIOUSNESS RATIONALES AND RESPONSES TO EXPECTED ARGUMENTS

### A.    Finite, Predictable Solutions and Obvious to Try

The design space was small and mapped. Blakley itself surveys prior approaches to increasing semi-automatic cyclic rate: Hell Fire, Akins, and Inskip. Blakley 9:1-10:24. The '159 Patent surveys the same demand and known forced-reset solution family, including Blakley. '159 Patent 1:39-2:16. A POSA seeking to replace Stoner's full-auto third mode with a legally semi-automatic rate-enhancing mode would have had a finite set of predictable choices, and Blakley's bolt-actuated cam reset was the most directly suited to an AR15/Stoner host because it avoids Akins' stock/receiver movement requirements and Inskip's bolt-binding issue. Blakley 9:37-10:24.

### B.    Known Technique Used to Improve a Similar Device in the Same Way

Blakley teaches the known technique: use the firearm's reciprocating bolt/bolt carrier to rotate a cam that forcibly resets the trigger and holds it forward until the firearm is safe to fire again. Blakley 8:12-26; 10:34-11:5. Applying that known technique to Stoner's similar AR-pattern fire-control device improves it in the same predictable way: it replaces automatic fire with a semi-automatic forced-reset third mode that increases the rate of semi-automatic trigger pulls while preserving one round per trigger pull. Blakley 8:24-26; 10:29-33; Stoner 3:63-4:56.

### C.    Direct-versus-Indirect Cam Contact Is Not a Patentable Distinction

The prior art shows multiple routine ways to transmit cam/reset force to the trigger: Blakley uses cam lobe 69 acting on trigger extender 90 of trigger 22; Stakes uses reset lever arm 53 acting on

21

disconnector cam surface 35 to pivot trigger disconnector assembly 39; and the '159 Patent uses cam lobe 78 acting on cam follower 58 of trigger member 38. Blakley 6:22-33; 10:34-11:5; Stakes 14:34-57; '159 Patent 7:59-63; 8:3-16. These are mechanical equivalents for transmitting reset force to the trigger. Nothing in the claims requires a particular geometry, material, or direct point of contact that would distinguish the prior art.

### D.    Standard Semi-Automatic Mode Was Conventional

Any argument that Blakley alone does not spell out every standard semi-automatic detail is immaterial to the Stoner/Blakley ground because Stoner expressly discloses that detail. Stoner 3:63-4:24. It is also admitted in the '159 Patent as conventional background. '159 Patent 1:19-38. A POSA would have understood that when the Blakley forced-reset effect is deselected, the firearm operates in conventional semi-automatic mode using the trigger, hammer, and disconnector. Blakley 11:11-25.

### CONCLUSION

Stoner supplies the AR-pattern/select-fire fire-control architecture, including receiver pocket, bolt carrier, hammer, trigger, disconnector/intermediate sear, transverse pivot pins, spring-biased trigger reset, standard semi-automatic operation, and a three-position rotatable selector. Stoner 2:21-4:56. Blakley supplies the missing forced-reset cam/cam lobe and trigger-extender structure, the operating sequence by which bolt cycling forces the trigger forward and holds it until near battery, and the express motivation to increase semi-automatic firing rate without creating a machine gun. Blakley 8:44-11:25. The '159 Patent admits the problem, admits the standard semi-automatic background, admits prior forced-reset devices, and incorporates Blakley as prior art. '159 Patent 1:19-2:16.

A POSA therefore would have been motivated to replace Stoner's automatic third mode and automatic sear with Blakley's semi-automatic forced-reset cam mechanism, using Stoner's existing selector architecture to select between standard semi-automatic and forced-reset semi-automatic modes. The modification is a predictable substitution of known mechanical elements performing their

established functions, with a reasonable expectation of success and no teaching away. The charted claims 1, 3, 6, 7, 9-11, and 14-17 are therefore obvious over Stoner in view of Blakley. Stakes independently confirms that the same claimed features were known and, at minimum, further supports obviousness by showing a selectable standard/assisted-reset semi-automatic trigger mechanism with a reset lever/cam before the '159 priority date. Stakes 6:7-16:33.