## Exhibit 20 - INVALIDITY ARGUMENTS
U.S. Patent No. 12,529,538 ("'538 Patent")

### I.    INTRODUCTION AND SUMMARY OF GROUNDS

The asserted claims of the '538 Patent (claims 1–5 and 8–13) recite a firearm "safety mechanism" built around a cylindrical "cam selector" with a longitudinal top slot that receives the proximal end of a lever, first and second recesses on its bottom side that interact with a trigger tail, and a detent riding in three detent tracks — operable in three modes: a standard mode in which the trigger tail moves freely within the first recess, an active/forced-reset mode in which a cam portion of the second recess drives the trigger tail down as the selector rotates, and a safe mode in which the trigger cannot be pulled. That device is the "Super Safety" — an AR-pattern active-reset selector that Timothy Hoffman of Hoffman Tactical conceived, documented, publicly demonstrated, published as open-source design files, and saw sold well before the '538 Patent's December 4, 2023 priority date. The claims are invalid on three independent grounds:

1. *Ground 1:* The Super Safety was publicly disclosed, publicly used, and described in printed publications before the priority date — including through Mr. Hoffman's YouTube videos and his July 2023 release of the complete v4.4 design-file package on Odysee. Those disclosures teach every limitation of the asserted claims.

2. *Ground 2:* Cameron Smith, the sole named inventor, apparently did not invent the claimed subject matter; Mr. Hoffman did, and the corroborated record shows prior conception by Hoffman and Smith's access to and derivation from Hoffman's design.

3. *Ground 3:* Independent of the Super Safety itself, the claims would have been obvious over European Patent No. EP 2,950,033 B1 ("Ostanin") in view of U.S. Patent No. 7,398,723 ("Blakley") and U.S. Patent No. 2,539,447 ("Lochhead"), which together disclose every element: a rotatable cylindrical multi-mode safety shaft whose machined recess sections of

differing depth and width define free-travel, camming, and blocking relationships with the trigger (Ostanin); a bolt-cycled cam that forces the rear of the trigger down to reset it, together with the express suggestion of a combined "selector-cam" (Blakley); and a cylindrical selector with a transverse slot receiving a lever/lug end and a spring-biased detent defining three selectable fire-control positions (Lochhead).

## II.    THE '538 PATENT

The '538 Patent names Cameron Smith as its sole inventor and claims a firearm safety mechanism comprising a cam selector, a lever, and a trigger. Claim 1 recites the cam selector's geometry (first and second ends, top and bottom sides), a longitudinal slot on the top side configured to receive the proximal end of the lever, first and second recesses on the bottom side, a trigger with a first trigger tail portion, and the three-mode functionality described above. Dependent claims add a substantially cylindrical selector shape (claim 2); a detent and three detent tracks — transverse grooves on the selector's bottom side — for selecting among the modes (claims 3–5); the slot extending from the first end, its ovular shape, and its lever-travel opening (claims 8–9); a dovetail at the lever's proximal end and a bent portion adjacent its distal end (claims 10–11); and a rounded first trigger tail plus a second trigger tail with a corner cutout (claims 12–13). Functionally, the claimed device is an active-reset (forced-reset) trigger system implemented entirely within a rotary selector: in the second mode, cycling of the action rotates the cam selector so that a cam portion of its second recess drives the trigger tail down, resetting and holding the trigger — the same operating principle Blakley patented in 2003 and the same physical embodiment Hoffman publicly disclosed as the Super Safety in 2022–2023.

2

III.    **Ground 1: The Hoffman Super Safety Was Publicly Disclosed Before the Priority Date.**

1.    **The Disclosures And Their Dates**

The evidentiary record establishes a continuous, corroborated public trail, all before December 4, 2023: after Mr. Hoffman filed U.S. provisional application 63/377,498 on September 28, 2022 ("Hoffman Provisional"), disclosing the Super Safety and identifying himself as inventor, he posted multiple YouTube videos publicly showing a firearm equipped with the Super Safety operating in forced-reset mode on various dates preceding December 4, 2023. On July 20, 2023, he released the complete v4.4 design package — CAD drawings, the engineering documentation "Super Safety – 3D Printed Active Trigger System v4.4", and STL, STEP, and SLDPRT files — on Odysee, linked from hoffmantactical.com, with an explanatory YouTube video on July 21, 2023. These materials are printed publications and otherwise publicly available by any interested member of the public and expressly intended for reproduction by 3D printing.

2.    **The Hoffman Provisional discloses every limitation of the asserted claims.**

As mapped in the chart against the Hoffman Provisional's figures and the identical publicly released design (the same numerals carry through):

| Claim Element | Hoffman Provisional Super Safety Disclosure |
|---|---|
| Cam selector w/ first end, second end, top side, bottom side (cl. 1) | Cam 100; first end 320; second end 290; top and bottom sides visible in Fig. 7. Figs. 1, 5–7, p. 2. |
| Longitudinal slot on top side; extends from first end; ovular w/ opening for lever travel (cls. 1, 8, 9) | Longitudinal slot 330 on the top of cam 100, extending from first end 320, ovular with an opening for the lever. Figs. 1–5, 7, pp. 1–2. |
| Lever w/ proximal & distal ends; dovetail at proximal end; bent portion near distal end; slot receives proximal end (cls. 1, 10, 11) | Lever 110 with proximal end 250 (dovetail) and distal end 340 (bent portion); slot 330 receives proximal end 250. Figs. 1–6, 8, pp. 1–2. |

3

| Claim Element | Hoffman Provisional Super Safety Disclosure |
|---|---|
| First & second recesses on bottom side (cl. 1) | First recess ("second neutral profile") and second recess (active cam profile bounded by 190, 210, 260). Figs. 5–7, p. 2. |
| Trigger w/ first trigger tail portion; rounded; second tail w/ corner cutout (cls. 1, 12, 13) | Trigger 130 with first tail portion 380, 200, 270 (rounded, Figs. 5, 10) and second tail portion 200; corner-cutout second tail in the released v4.4 design files (CAD "AR-15 Trigger Dual V4.4," June 8, 2023; documentation § 6.1.2, July 19, 2023). |
| Three modes: (1) tail movable within first recess; (2) tail engaged & moved down by cam portion of second recess on rotation; (3) trigger prevented from being pulled (cl. 1) | Fig. 6, p. 2: standard semi-automatic mode (tail free in second neutral profile); active-reset mode (tail engages active cam profile and is moved down by cam portion 260 as cam 100 rotates); safety mode (safety cam profile 300 engages cam follower 270, blocking the trigger). |
| Detent; first/second/third detent tracks (transverse grooves on bottom) selecting the three modes (cls. 3–5) | Detent 120 riding in three detent tracks 280 (transverse grooves on the bottom of cam 100) corresponding to the three modes. Figs. 1–7, 9, p. 2. |

The July 2023 v4.4 public release anticipates every asserted claim, including claim 13 (the released trigger design has a second tail portion with the recited corner cutout). Even taking only the earlier disclosures (before the July 2023 release), the claimed mechanism was publicly used and disclosed in its entirety; and to the extent any dimensional details were deemed not visible in a given video, they are expressly present in the published v4.4 files and, independently, obvious: Hoffman's own documentation teaches narrowing the trigger tail to accommodate the three modes, and a POSA would at once envisage a corner cutout as the way to narrow a tail portion — a classic predictable variation.

### 3.    The Grace Period Does Not Save the Claims.

As I understand it, any of the Hoffman disclosures after December 4, 2022, fall within one year of the '538 Patent's priority date, but § 102(b)(1) shelters them only if they were made by the

4

inventor or by one who obtained the subject matter from him. Hoffman is a third party who, as I understand it, has publicly and consistently claimed sole inventorship of the Super Safety, his documented work considerably predates any known Smith activity, and the only established connection runs the wrong way: Smith's TwinBros LLC bought and resold Hoffman's Super Safety, branded as the "Hoffman Super Safety," with Hoffman Tactical's initials engraved on the cams. I have seen no evidence of any Smith disclosure — public or private — predating Hoffman's September 2022 provisional or December 2022 video. Unless the patentee can prove, with corroboration, that Hoffman derived the Super Safety from Smith, every Hoffman disclosure is prior art, and the claims are anticipated many times over.

## IV.   GROUND 2: IMPROPER INVENTORSHIP AND DERIVATION

The same record appears to invalidate the '538 Patent for failure to name the true inventor. Prior conception by Hoffman is corroborated by various documents and videos, including the September 28, 2022 provisional application disclosing the claimed mechanism in detail (cam 100, lever 110, detent 120, trigger 130, slot 330, recesses/profiles, detent tracks 280, and the three modes). Communication of the conception to — and access by — Smith is equally documented: the complete design was published to the world in July 2023, and Smith's own company apparently was buying, advertising ("letting freedom ring with Hoffman super safety!"), and reselling Hoffman's HT-engraved units.

## V.   GROUND 3: OBVIOUSNESS OVER OSTANIN IN VIEW OF BLAKLEY AND LOCHHEAD

### 1.   Scope and Content of the Prior Art

Ostanin discloses a trigger safety mechanism 01 for a semiautomatic long weapon built around a rotatable safety shaft 04 — a cylindrical cam selector — carrying two mirror-symmetric control cams 05 formed as recesses 11 machined into the shaft, rotated between positions by an

5

actuation lever 10, and cooperating with a trigger lever 13 through spring legs of element 02 that ride in the recesses. Figs. 1–9; claims 1–10; translation (pp. 2-5[1]). Each recess has a first section 21 of a first depth and width and a second section 22 of a second depth and width, with an at-least-partially spiral transition; the sections define distinct functional relationships between shaft and trigger. Translation (pp. 3-5). In the firing position, section 21 faces the trigger-side element, a trigger clearance 15 remains, and the trigger is free to pivot; rotating the shaft cams the element through the spiral recess portion, displacing it into the deeper/wider section 22; and in the safety position the solid shaft section 12 stands over the element, eliminating the clearance and positively blocking the trigger lever. Translation (pp. 3, 5).

Blakley discloses the forced-reset function itself: a pivoting cam 66, driven by the reciprocating bolt, whose bottom surface "presse[s] downward on the trigger-extension forcing the rear of the trigger down," resetting the trigger against the operator's finger (10:38–47; claim 1); a rotatable safety selector 82 seated in the receiver's standard selector aperture, with a downwardly displaced outer lever 84 and a solid tubular inner portion 86 bearing a plurality of flat recessed surfaces 88 (7:15–21); and the express teaching that the forced-reset effect "be able to be optionally selected or deselected by operating the selector-cam," with "engagement surfaces machined into the selector-cam" governing whether the cam resets the trigger (11:11–25). Blakley thus not only supplies the second (forced-reset) mode; it names the combined component — a selector-cam — that the '538 Patent claims.

Lochhead discloses the compact mechanical packaging the '538 Patent's dependent claims recite: a fire-control selector 48 comprising a cylindrical stud portion 49 and integral knob 50, with a transverse rectangular slot 51 machined into the cylinder that receives the projecting lug 46 of a

---

[1] The citations to the translation are to the numbered pages in the footer of the Google Patents translation of Ostanin.

lever-like sear arm to control fire modes (3:1–6; Fig. 2; claim 1), and a spring-biased detent plunger 53 that yieldingly engages radially spaced holes 58 and 59 and a further recess in the stud to releasably secure the selector in each of its positions — semi-automatic (slot bottom horizontal; lug free to move within the slot, 3:20–29), full-automatic (slot bottom vertical; slot surface controls the lug until trigger release, 3:47–67), and safe (lug bearing on the arcuate solid surface of stud 49, positively blocking the sear, 4:3–11). Lochhead is, in short, a three-position, detented, slotted cylindrical selector whose machined surfaces alternately free, control, and block a trigger-side member.

### 2.    Element-by-Element Correspondence

| Claim element | Ostanin | Blakley | Lochhead |
|---|---|---|---|
| Cam selector (cylindrical, cl. 2) | safety shaft 04 carrying control cams 05 formed by recesses 11; solid section 12 (Translation pp. 3-4) | "selector-cam"; selector 82, tubular inner portion 86 w/ flat recessed surfaces 88 (7:15–21); pivoting cam 66 (6:60–7:14) | selector 48: cylindrical stud 49 + integral knob 50 (3:1–6) |
| Lever (proximal/distal ends) | actuation lever 10 rotating shaft 04 (Translation p. 4) | outer portion 84: "downwardly displaced lever" (7:16–17) | knob 50; lug 46 (dovetail-form; bent) Fig. 2 |
| Longitudinal slot on selector receiving lever/lug end | — | — | transverse slot 51 in cylindrical portion 49 receiving lug 46 (3:1–6; Fig. 2; claim 1) |
| First & second recesses on bottom engaging trigger tail | recess sections 21 (first depth/width) & 22 (second depth/width) (Translation pp. 3-5) | flat recessed surfaces 88; engagement surfaces machined into the selector-cam (11:11–25) | slot 51 bottom surface & arcuate blocking surface of stud 49 (3:47–50; 4:3–11) |
| Mode 1 — tail movable within first recess | firing position: section 21 faces spacer; trigger clearance 15 remains; | reset deselected: cam cannot contact extension; ordinary | semi-auto: slot bottom horizontal; |

| Claim element | Ostanin | Blakley | Lochhead |
|---|---|---|---|
| | trigger pivotable (Translation pp. 3, 5) | semi-auto operation (11:11–25) | lug 46 free to move in slot (3:20–29) |
| Mode 2 — tail engaged & displaced by cam portion on rotation | spiral recess portion cams/displaces the spring-leg element as shaft 04 rotates (Translation pp. 3, 5) | cam presses downward on trigger extension, forcing rear of trigger down — forced reset (10:38–47; claim 1) | auto: slot bottom vertical; surface controls sear lug 46 until trigger release (3:47–67) |
| Mode 3 — trigger prevented from being pulled | safety position: solid shaft 12 over spacer; no trigger clearance; trigger lever 13 blocked (Translation pp. 3, 5) | trigger held; finger pressure prevented from moving trigger (7:54–64) | safe: lug 46 rests on arcuate surface of stud 49; sear cannot disengage (4:3–11) |
| Detent + three tracks (cls. 3–5) | spring legs of element 02 ride in sections 21/22 of recesses 11 (Figs. 5–6, Translation pp. 4-5) | — | spring-biased plunger 53 engaging spaced holes 58, 59 and a further recess in stud 49 — three detented positions (3:9–12, 24–29; 4:8–11; claim 1) |

### 3.     Motivation To Combine With A Reasonable Expectation Of Success

(a)     *Blakley itself proposes the combination.* The single structural difference between Blakley's preferred embodiment and the claimed device is packaging: Blakley mounts the reset cam 66 separately from the safety selector 82, while the '538 Patent machines the reset cam profiles into the selector body itself. Blakley expressly points to that consolidation by teaching mode selection "by operating the selector-cam" with "engagement surfaces machined into the selector-cam" (11:11–25), and by teaching elimination of the separate cam body (11:6–9). A POSA pursuing Blakley's stated objects — simple, durable, low-cost construction (8:8–24) — would combine the two rotary parts occupying the same fire-control pocket into one, reducing part

8

count, pins, and assembly steps. Integrating multiple cam functions onto a single rotatable shaft is among the oldest techniques in fire-control design.

(b)    *Ostanin supplies the recipe for a multi-mode cam selector.* Once the reset cam and selector are one rotary part, the designer needs a shaft geometry providing three distinct trigger relationships. Ostanin teaches exactly that: machine the shaft with recess sections of differing depth and width — a shallow section in which the trigger-side element travels freely (mode 1), a spiral/cam transition that positively displaces the element as the shaft rotates (the camming action of mode 2), and a solid or blocking section that eliminates trigger clearance entirely (mode 3) — with the same recess sections serving as tracks that locate the spring-loaded element in each mode. Translation (pp. 3-5). Applying Ostanin's multi-depth recess architecture to Blakley's selector-cam, with Blakley's cam surface oriented to bear down on the rear of the trigger (10:38–47), yields precisely claim 1's first recess (free travel), second recess with a cam portion that moves the trigger tail down upon rotation, and safe mode.

(c)    *Lochhead supplies the coupling and detent details.* For rotating and indexing such a selector, Lochhead teaches the standard solutions the dependent claims recite: a slot machined into the cylindrical body that receives the end of a lever/lug — a ubiquitous, reversible torque coupling that permits the lever to be inserted, removed, and to travel through an opening (claims 1, 8–9) — and a spring-biased detent engaging three circumferentially spaced tracks/recesses to positively index three modes (claims 3–5). 3:1–12, 20–29; 4:3–11. Adopting a slot-and-lever coupling and a three-position detent for a three-position selector is not invention; it is the selection of the known, expected mechanism for its known purpose, with utterly predictable results.

(d)    *Common field, common problem, documented incentives.* All three references are rotary fire-control safeties/selectors for self-loading rifles, addressing the same problem set —

selecting among firing behaviors and positively blocking the trigger — and Blakley documents the post-1986 market demand for lawful rate enhancement (8:44–63) that made a selectable forced-reset mode commercially valuable. The design space (free / cammed / blocked, indexed by a detent) was finite and fully mapped; a POSA had every reason and every tool to assemble the claimed selector, and — as the Super Safety's straightforward 3D-printed implementation confirms — a complete expectation of success.

### 4.    The Dependent Shape Limitations Are Unpatentable Design Choices

The remaining dependent claim limitations recite geometry without disclosed criticality: a substantially cylindrical selector (claim 2 — disclosed by all three references); an ovular slot with a lever-travel opening (claim 9); a dovetail at the lever's proximal end and a bent distal portion (claims 10–11 — both shown in Lochhead's lug 46 and knob arrangement, Fig. 2, and both conventional means of retaining a lever in a slot and clearing adjacent structure); a rounded trigger tail (claim 12); and a corner cutout on a second tail (claim 13 — the obvious way to narrow a tail to clear adjacent selector profiles). Where, as here, the specification attributes no unexpected function to the recited shapes, such configurations are matters of obvious design choice producing predictable results.