# EXHIBIT H

**Claim Chart for U.S. Patent No. 12,031,784 — Batzer Noninfringement Positions and Luettke Reply**

## Super Safety

### Claim 1

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 1[pre]. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version). See also Luettke Decl. & Ex. G (ECF Nos. 29-21, 29-28) (accusing Super Safety of infringement). As best understood, neither version is a complete firearm trigger mechanism (see 2:16-17, 23-26, Figs. 1, 5), as each consists only of a lever, a cam, a detent, a trigger, and a centering block. Similarly, these components individually are also not a firearm trigger mechanism. The claim and specification refer to a "locking device" that comprises "a locking member" and no other components. None of the dependent claims add any further components to the "locking device." Neither does the prosecution history elucidate this ambiguity. Thus, while the two are specified as separate components/limitations, it is unclear what the difference between them is, and specifically, what the "locking device" includes other than the "locking member." | The claim is directed to an extended trigger member locking device comprising at least a locking member (element 1[a]), not to a complete firearm trigger mechanism. "In a forced reset trigger mechanism" identifies the operating environment, and a POSITA would not read the claim to require the accused article to be an entire trigger mechanism. Whether the Super Safety is a complete mechanism is therefore irrelevant. To the extent the preamble is limiting, it is met: as assembled and used as intended in its forced-reset configuration, the Super Safety includes the recited locking member and provides the trigger-locking function addressed at element 1[a]. Because the claim uses open "comprising" language, the device is defined by its inclusion of at least that locking member; no further component need be recited, and a POSITA would understand the claimed device without ambiguity. |
| 1[a]. a locking member that is movable between a first position in which it locks a trigger member against pulling movement and a second position where it does not restrict movement of the trigger member, | "Locking member" is a means-plus-function limitation governed by §112(f), as it uses a nonce word (member) prefixed by a function (locking) and does not have a plain and ordinary meaning connoting specific structure to a skilled artisan. Thus, this limitation is limited to the corresponding structure disclosed in the specification and equivalents. See Figs. 1-10, 3:7-4:57. The Super Safety includes a lever that is movable between a first angular position and a second angular position. The lever itself does not do anything to the trigger – it does not even contact the trigger. When the lever is inserted into the cam and rotates the cam to the first position, the cam (if it is in forced-reset mode) forces the trigger to the reset position and prevents pulling it more than a nominal amount. When the lever rotates the cam to the second angular position, the cam allows the trigger to be pulled a greater amount than in the first position after which it will restrict pulling the trigger further, unlike the '784 Patent where the locking member in a second position does not at all restrict movement of the trigger (see, e.g., Fig. 6). In standard semi-automatic mode, the cam moves between the first and second positions but does not restrict | I understand from counsel that absence of the word "means" creates a rebuttable presumption that § 112(f) does not apply, and that the presumption is overcome only if a POSITA would read the term as a nonce word rather than as connoting structure. A POSITA would understand "locking member" to connote structure. The term names a physical component in the firearms trigger art, as reflected in the '784 Patent and the '223 Patent, which use "locking member" and "locking bar" as component names, and as reflected in Batzer's own use of "cam," "detent bar," and "centering block" to identify parts. The claim itself recites the member's structure and structural relationships: movable between two positions, movably supported by a frame, and having a body portion with an upwardly extending deflectable portion separately movable relative to it. A POSITA would understand that recitation to describe a physical part, not a functional placeholder.<br><br>The Super Safety's locking member is the lever and cam assembly: the cam is the body portion and the lever is the upwardly extending deflectable portion (elements 1[e], 1[f]). Batzer's argument that the lever does not itself contact the trigger |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | movement of the trigger. Neither the cam nor the lever "lock" the trigger as shown in Figs. 5 or 7. | is irrelevant, because the claim requires that the locking member lock the trigger member, not that every portion of it contact the trigger.<br><br>As assembled and used as intended in its forced-reset configuration, that assembly is movable between the two recited positions. In the first position it blocks the trigger member against the pulling movement required to release the hammer and fire. In the second position, reached when the returning bolt carrier makes actuating contact with the lever (elements 1[c], 1[d]), it does not restrict that pulling movement. |
| 1[b]. the locking member configured to be movably supported by a frame and | The Super Safety lever is not configured to be movably supported by a frame (see 3:30-36, Figs. 1, 5-7). The lever is configured to be movably supported by the cam, which is designed to be movably supported by a lower receiver. However, the locking member 12 is disclosed as being pivotally mounted to the frame on a pin 20 through a hole, whereas the Super Safety cam has no hole through which a pin pivotally supports the cam to the frame. | Batzer again evaluates the lever in isolation. As set out at element 1[a], the locking member is the lever and cam assembly, and Batzer concedes the cam is supported by the lower receiver. The lower receiver is a frame, and the assembly is movably supported by it: the cam is received in the receiver and rotates about its axis, carrying the lever with it. A POSITA would therefore understand the Super Safety's locking member to be configured to be movably supported by a frame.<br><br>Batzer's requirement of a pivot pin passing through a hole is a feature of one disclosed embodiment, not a requirement of the claim. The claim recites only that the locking member be "configured to be movably supported by a frame." |
| 1[c]. including a generally upward extension portion configured to make actuating contact with a surface of a bolt carrier, | The Super Safety lever includes a generally upward-extending tail configured to make actuating contact with a surface of a bolt carrier (which is not included with the Super Safety). | Batzer concedes this limitation is met, acknowledging that the Super Safety lever includes an upward-extending tail configured to make actuating contact with a bolt carrier surface. That is what the claim requires.<br><br>That the Super Safety does not itself include a bolt carrier is irrelevant. The claim does not require the bolt carrier to be a part of the extended trigger member locking device. |
| 1[d]. such actuating contact causing the locking member to move from the first position to the second position, | Actuating contact between the (unincluded) bolt carrier and the lever tail causes the lever and cam to rotate from the second position to the first position and then back to the second position. | Batzer appears to concede this limitation is met, acknowledging that actuating contact with the bolt carrier causes the lever and cam to rotate between the first and second positions. As addressed at element 1[c], the claim does not require the bolt carrier to be part of the claimed device. |
| 1[e]. the locking member having a body portion that is movably supported and | The Super Safety lever has a lower portion that is movably supported by the cam, rather than a frame. The cam itself is slidable along its rotating axis, has no hole through which a pin secures it to the frame, is not spring-biased to move to any particular position, rotates through the entire length of the lever's travel (when moved by the bolt carrier), and allows the firearm to be set in safe, semi-automatic, and forced-reset modes, none of | Batzer's discussion of the lever's lower portion is irrelevant. As set out at element 1[a], the body portion is the cam, not any part of the lever.<br><br>The cam is movably supported by the frame. As addressed at element 1[b], Batzer concedes the cam is supported by the lower receiver, and the cam rotates about its axis within it. His requirement of a pin-securing hole is a feature of one disclosed |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
| --- | --- | --- |
|  | which is true for the body portion of the locking member disclosed in the specification. | embodiment; the claim requires only that the body portion be movably supported. |
| 1[f]. an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position and a deflected position. | This claim recites that the locking member has both "a generally upward extension portion" and "an upwardly extending deflectable portion." Thus, while the two "portions" are specified as separate components/limitations, it is unclear what the difference between them is. The Super Safety lever does not have any other upwardly extending portion (other than its tail, which was discussed above with respect to the separate "upward extension portion"). Furthermore, the lever is rigid and has no deflectable portion (and thus no deflected position). The lever's body and tail are unitary and are not separately movable relative to each other. Nor does the lever (alone or in combination with the cam) have a spring-biased portion that pivots about a pin in only one direction, as disclosed in the specification for the locking member. The slight wiggle room resulting from the tolerance of the dovetail connection would not be viewed by a POSA as deflection/movement relative to the body portion or as equivalent to the deflection disclosed in the '784 Patent (see, e.g., Fig. 7), as it clearly has no function other than allowing assembly. | A POSITA reading the claim language in view of the specification would understand "generally upward extension portion" and "upwardly extending deflectable portion" to refer to the same portion of the locking member. The '784 Patent describes the upper lever arm portion as including the deflectable extension that both makes actuating contact with the bolt carrier and deflects to allow its passage. There is no ambiguity, and the Super Safety lever is that portion.<br><br>The lever and cam move separately relative to each other. The dovetail connection joins them with a significant amount of play, such that the lever moves noticeably back and forth within the cam. That separate movement is illustrated in my infringement chart and is readily observed by handling a Super Safety.<br><br>Batzer's characterization of that movement as mere assembly tolerance is contradicted by the Super Safety's own documentation, which states that "the lever pivots in the cam until the void is filled," and that the amount the lever rotates in the dovetail before transferring torque to the cam determines when the cam acts as the bolt carrier completes its forward movement. A POSITA would understand that movement to be designed and functionally significant, not incidental to assembly. That the lever is not spring-biased is not a requirement of claim 1. |

## Claim 3

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
| --- | --- | --- |
| 3. The device of claim 1, wherein the locking member body portion pivots between the first and second positions. | See claim 1 above.<br><br>As discussed above, the "locking member" is a means-plus-function limitation governed by §112(f). The specification discloses that the locking member 12, 48 body portion 26, 52 has a hole through which a pivot pin 20, 54 passes, about which the locking member body portion pivots between the first and second positions. See Figs. 5-7, 3:30-34, 4:40-44. The Super Safety lever does not have a hole through which a pivot pin passes and about which the lever pivots. Neither does the Super Safety cam have a hole through which a pivot pin passes. | For the reasons set out at element 1[a], a POSITA would understand "locking member" to connote structure. As addressed at elements 1[b] and 1[e], the body portion is the cam, and Batzer's requirement of a hole through which a pivot pin passes is a feature of one disclosed embodiment rather than a requirement of the claim. This claim requires only that the body portion pivot between the first and second positions.<br><br>It does. As Batzer acknowledges, the cam rotates about its axis within the lower receiver, and that rotation carries it between the first position, in which the trigger member is blocked against the pulling movement required to fire, and the second position, in which it is not. That is illustrated in my infringement chart. |

**Claim 4**

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 4. The device of claim 1, wherein the locking member deflectable portion pivots relative to the body portion. | See claim 1 above.<br><br>As discussed above, the "locking member" is a means-plus-function limitation governed by §112(f). The specification discloses that the locking member 12, 48 deflectable portion 22, 50 and body portion 26, 52 have a hole through which a pivot pin 24, 54 passes, about which the locking member deflectable portion pivots relative to the body portion. See Figs. 1-4, 7-10, 3:40-42, 4:40-44. The Super Safety lever is rigid and has no deflectable or pivotable portion. The lever's body and tail are unitary and do not separately pivot relative to each other. Neither the lever nor the cam have a hole through which a pivot pin passes. Nor does the lever (alone or in combination with the cam) have a portion that pivots in only one direction about a pin going through a hole in both. The slight wiggle room resulting from the tolerance of the dovetail connection (between the lever and cam) would not be viewed by a POSA as deflection/pivoting relative to the body portion or as equivalent to the pivoting disclosed in the '784 Patent (see, e.g., Fig. 7), as it clearly has no function other than allowing assembly. | See claim 1 above. For the reasons set out at elements 1[a], 1[b], 1[e], and 1[f], a POSITA would understand "locking member" to connote structure, Batzer's requirement of a shared pivot-pin hole is a feature of one disclosed embodiment rather than a requirement of the claim, and the lever pivots relative to the cam within the dovetail connection. This claim requires only that the deflectable portion pivot relative to the body portion, which it does. |

## ARC-Fire

**Claim 1**

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 1[pre]. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." See also Luettke Decl. & Ex. F (ECF Nos. 29-21, 29-27) (accusing ARC-Fire of infringement but calling it the Atrius Super Selector). The ARC-Fire is not a complete firearm trigger mechanism (see 2:16-17, 23-26, Figs. 1, 5), as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent. The claim and specification refer to a "locking device" that comprises "a locking member" and no other components. None of the dependent claims add any further components to the "locking device." Neither does the prosecution history elucidate this ambiguity. Thus, while the two are specified as separate components/limitations, it is unclear what the difference between them is, and specifically, what the "locking device" includes other than the "locking member." | The claim is directed to an extended trigger member locking device comprising at least a locking member (element 1[a]), not to a complete firearm trigger mechanism. "In a forced reset trigger mechanism" identifies the operating environment, and a POSITA would not read the claim to require the accused article to be an entire trigger mechanism. Whether the ARC-Fire is a complete mechanism is therefore irrelevant. To the extent the preamble is limiting, it is met: as assembled and used as intended in its forced-reset ("ARC") mode, the ARC-Fire includes the recited locking member and provides the trigger-locking function addressed at element 1[a]. Because the claim uses open "comprising" language, the device is defined by its inclusion of at least that locking member; no further component need be recited, and a POSITA would understand the claimed device without ambiguity. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 1[a]. a locking member that is movable between a first position in which it locks a trigger member against pulling movement and a second position where it does not restrict movement of the trigger member, | "Locking member" is a means-plus-function limitation governed by §112(f), as it uses a nonce word (member) prefixed by a function (locking) and does not have a plain and ordinary meaning connoting specific structure to a skilled artisan. Thus, this limitation is limited to the corresponding structure disclosed in the specification and equivalents. See Figs. 1-10, 3:7-4:57. Plaintiffs appear to view the entire ARC-Fire (including the above-listed components) as the locking member. But unlike the '784 Patent's locking member 12, the ARC-Fire has components that do not move between the recited first angular position and the second angular position. The ARC-Fire includes a lever that is movable between a first axial position and a second axial position. The lever itself does not do anything to the trigger – it does not even contact the trigger. When the lever is mated with the cam in forced-reset mode and rotates the cam to the first position, the cam forces the trigger to the reset position and prevents pulling it more than a nominal amount. When the lever rotates the cam to the second position, the cam allows the trigger to be pulled a greater amount than in the first position after which it will restrict pulling the trigger further, unlike the '784 Patent where the locking member in a second position does not at all restrict movement of the trigger (see, e.g., Fig. 6). In standard semi-automatic mode, the ARC-Fire cam does not move between the first and second positions. Neither the cam nor the lever "lock" the trigger as shown in Figs. 5 or 7. | I understand from counsel that absence of the word "means" creates a rebuttable presumption that § 112(f) does not apply, and that the presumption is overcome only if a POSITA would read the term as a nonce word rather than as connoting structure. A POSITA would understand "locking member" to connote structure. The term names a physical component in the firearms trigger art, as reflected in the '784 Patent and the '223 Patent, which use "locking member" and "locking bar" as component names, and as reflected in Batzer's own use of "cam," "detent bar," and "centering block" to identify parts. The claim itself recites the member's structure and structural relationships: movable between two positions, movably supported by a frame, and having a body portion with an upwardly extending deflectable portion separately movable relative to it. A POSITA would understand that recitation to describe a physical part, not a functional placeholder.<br><br>As stated in my infringement charts, the locking member is the lever, which is the upward extension portion, together with the body portion, which comprises the selector lever, the ARC cam, the detent bar, and the ambi selector.<br><br>The claim requires the locking member to be movable between the two recited positions, and as my infringement charts show, the locking member moves between those two recited positions. It is irrelevant that the static shaft of the body portion remains stationary while other parts move; a POSITA would readily understand the locking member as a whole to have moved from a first position to a second position. As assembled and used as intended in its forced-reset ("ARC") mode, the lever and cam rotate together when the bolt carrier makes actuating contact with the lever, and a POSITA would understand that the locking member is thereby in a different position, because the cam has been carried to a position in which it no longer restricts the trigger member.<br><br>In the first position the locking member blocks the trigger member against the pulling movement required to release the hammer and fire. In the second position, reached when the returning bolt carrier makes actuating contact with the lever (elements 1[c], 1[d]), it does not restrict that pulling movement. Batzer's argument that the lever does not itself contact the trigger is irrelevant, because the claim requires that the locking member lock the trigger member, not that every portion of it contact the trigger. |
| 1[b]. the locking member configured to be movably supported by a frame and | The ARC-Fire as a whole is configured to be movably supported by a lower receiver (see 3:30-36, Figs. 1, 5-7), but various of its | Batzer concedes that the ARC-Fire as a whole is configured to be movably supported by a lower receiver. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | parts (including the lever and the cam) individually are not configured to be movably supported by a frame. The lever and cam are configured to be movably supported by the detent bar, which is designed to be movably supported by a lower receiver along with the selector lever. However, the locking member 12 is disclosed as being pivotally mounted to the frame on a pin 20 through a hole. | His remaining argument assumes the locking member is limited to the lever and cam. As set out at element 1[a], the body portion also comprises the selector lever, the detent bar, and the ambi selector, which together form a shaft that spans the receiver and is supported by it. Batzer acknowledges as much, stating that the detent bar, along with the selector lever, is supported by the lower receiver.<br><br>Batzer's requirement of a pivot pin passing through a hole is a feature of one disclosed embodiment, not a requirement of the claim. The claim recites only that the locking member be "configured to be movably supported by a frame." |
| 1[c]. including a generally upward extension portion configured to make actuating contact with a surface of a bolt carrier, | The ARC-Fire lever includes a generally upward-extending tail configured to make actuating contact with a surface of a bolt carrier (which is not included with the ARC-Fire). | Batzer concedes this limitation is met, acknowledging that the ARC-Fire lever includes an upward-extending tail configured to make actuating contact with a bolt carrier surface. That is what the claim requires.<br><br>That the ARC-Fire does not itself include a bolt carrier is irrelevant. The claim does not require the bolt carrier to be a part of the extended trigger member locking device. |
| 1[d]. such actuating contact causing the locking member to move from the first position to the second position, | The recited "actuating contact" with the (unincluded) bolt carrier causes only the lever to rotate from the second position to the first position and then back to the second position. If the ARC-Fire is in forced-reset mode, the lever also moves the cam, which restricts movement of the trigger when in the first position (but also somewhat when in the second position), as explained above. If the ARC-Fire is in standard semi-automatic mode, only the lever rotates; such movement (between the first position and the second position) restricts movement of the trigger to the same extent, contrary to what is recited. | Batzer concedes the operative facts for forced-reset mode: actuating contact with the bolt carrier causes the lever to move the cam, and the cam restricts trigger movement in the first position.<br><br>As addressed at element 1[a], it is irrelevant that the static shaft of the body portion remains stationary; the locking member as a whole moves between the first and second positions. As addressed at element 1[c], the claim does not require the bolt carrier to be part of the claimed device.<br><br>Batzer's standard semi-automatic mode argument does not bear on this analysis, which is directed to the ARC-Fire as assembled and used as intended in its forced-reset ("ARC") mode. |
| 1[e]. the locking member having a body portion that is movably supported and | Plaintiffs appear to view the ARC-Fire's ambi selector (and possibly the selector lever) and the detent bar as the locking member's "body portion." But unlike the '784 Patent, these components do not move at all in response to actuating contact with a bolt carrier's surface. They are supported by a lower receiver and are movable to the extent of pivoting to switch between safe, standard semi-automatic, and forced-reset modes, which is not how the '784 Patent's locking member body portion is movably supported. Furthermore, these components are not spring-biased to move to any particular position, nor do these components "lock" the trigger or restrict its movement, unlike the body portion of the locking member disclosed in the specification. | Batzer correctly identifies the selector lever, the detent bar, and the ambi selector as components of the body portion, together with the ARC cam (element 1[a]).<br><br>This limitation requires only that the body portion be movably supported. It is. Batzer concedes those components are supported by the lower receiver, and they are movably supported because they move when the user switches between safe, standard semi-automatic, and forced reset modes, as Batzer also acknowledges.<br><br>Batzer's remaining points are directed to requirements this limitation does not contain. That the body portion is not spring-biased is not a requirement of claim 1. That portions of it do not move in response to actuating contact with the bolt carrier, and do |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | | not themselves lock the trigger member, is addressed at elements 1[a] and 1[d]. |
| 1[f]. an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position and a deflected position. | This claim recites that the locking member has both "a generally upward extension portion" and "an upwardly extending deflectable portion." Thus, while the two "portions" are specified as separate components/limitations, it is unclear what the difference between them is. The ARC-Fire does not have any other upwardly extending portion other than the lever, which was discussed above with respect to the separate "upward extension portion." Furthermore, the lever is rigid and has no deflectable portion (and thus no deflected position). The lever's body and tail are unitary and are not separately movable relative to each other. Nor does the lever (alone or in combination with the other ARC-Fire components) have a spring-biased portion that pivots about a pin in only one direction, as disclosed in the specification for the locking member. | A POSITA reading the claim language in view of the specification would understand "generally upward extension portion" and "upwardly extending deflectable portion" to refer to the same portion of the locking member. The '784 Patent describes the upper lever arm portion as including the deflectable extension that both makes actuating contact with the bolt carrier and deflects to allow its passage. There is no ambiguity, and the ARC-Fire lever is that portion.<br><br>As illustrated in my infringement chart, the lever is separately movable relative to the body portion between an extended position and a deflected position. That the lever is itself rigid does not matter. The claim requires the deflectable portion to be separately movable relative to the body portion, not to flex internally. That the lever is not spring-biased, and does not pivot on a pin, is not a requirement of claim 1. |

## Claim 4

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 4. The device of claim 1, wherein the locking member deflectable portion pivots relative to the body portion. | See claim 1 above.<br><br>As discussed above, the "locking member" is a means-plus-function limitation governed by §112(f). The specification discloses that the locking member 12, 48 deflectable portion 22, 50 and body portion 26, 52 have a hole through which a pivot pin 24, 54 passes, about which the locking member deflectable portion pivots relative to the body portion. See Figs. 1-4, 7-10, 3:40-42, 4:40-44. The ARC-Fire lever is rigid and has no deflectable or pivotable portion. The lever's body and tail are unitary and do not separately pivot relative to each other. Nor does the lever (alone or in combination with the other ARC-Fire components) have a spring-biased portion that pivots in only one direction about a pin. | See claim 1 above. For the reasons set out at elements 1[a], 1[b], 1[e], and 1[f], a POSITA would understand "locking member" to connote structure, Batzer's requirement of a shared pivot-pin hole is a feature of one disclosed embodiment rather than a requirement of the claim, and the lever is separately movable relative to the body portion. This claim requires only that the deflectable portion pivot relative to the body portion, which it does, as illustrated in my infringement chart. |