# EXHIBIT I

## Claim Chart for U.S. Patent No. 12,038,247 — Batzer Noninfringement Positions and Luettke Reply

### Super Safety

**Claim 15**

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 15[pre]. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version). See also Luettke Decl. & Ex. D (ECF Nos. 29-21, 29-25) (accusing Super Safety of infringement). Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below. Similarly, these components individually are also not a firearm trigger mechanism. | My analysis is directed to the firearm trigger mechanism as assembled and installed in an AR-15 pattern firearm in accordance with AS Designs' install guides. As I explained in my declaration, the Super Safety is sold as a kit of purpose-designed components, including a pre-cut trigger, cam, reset lever, centering block, and detent, that are dimensioned and shaped to fit together in the single configuration the instructions describe, and I am not aware of any alternative assembly configuration that would result in a different mode of operation.<br><br>Batzer's observation that the kit as shipped is not itself a complete trigger mechanism does not address that analysis. As assembled and installed as instructed, the resulting firearm trigger mechanism includes each component recited in claim 15, including the hammer, trigger member, disconnector, and cam addressed at elements 15[a] through 15[e]. To the extent the preamble is limiting, it is met. |
| 15[a]. a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | Neither version of the Super Safety includes a hammer, a disconnector, a receiver, or a bolt carrier. | As set out at element 15[pre], my analysis is directed to the trigger mechanism as assembled and installed per AS Designs' install guides. In that mechanism, the hammer of the AR-15 pattern fire control group has each recited characteristic. Batzer does not dispute that; his only point is that the kit as shipped omits the hammer, which does not address the assembled mechanism. |
| 15[b]. a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety includes a trigger having a sear and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. | Batzer concedes this limitation is met, acknowledging that the Super Safety includes a trigger having a sear and adapted to be mounted in a fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions. His parenthetical that the pocket is not included is addressed at element 15[pre]. |
| 15[c]. wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | Since the Super Safety does not include a hammer (with the sear catch), the Super Safety's trigger sear is not in engagement with the missing hammer's sear catch. | Batzer's only argument is again that the kit as shipped omits the hammer. As addressed at element 15[pre], my analysis is directed to the assembled mechanism. In that mechanism, the trigger member's sear, which Batzer concedes the Super Safety supplies (element 15[b]), engages the hammer's sear catch in the set |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | | positions and is out of engagement in the released positions. Batzer does not dispute that operation. |
| 15[d]. said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | Neither version of the Super Safety includes a disconnector, a hammer, or a fire control mechanism pocket. | Batzer's only argument is again that the kit as shipped omits these components. As addressed at element 15[pre], my analysis is directed to the assembled mechanism. In that mechanism, the disconnector of the AR-15 pattern fire control group has a hook for engaging the hammer and is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. Batzer does not dispute that; at elements 15[f] and 15[g] he analyzes the disconnector hook catching and releasing the hammer hook in the installed firearm. |
| 15[e]. a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The Super Safety includes a cam having a lobe.<br><br><br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it is slidable along the axis between safe, standard semi-automatic, and forced-reset semi-automatic modes, and may be rotatable on the axis (depending on what mode it is in). The original Complaint (ECF No. 1), the Amended Complaint (ECF No. 4), and the proposed Second Amended Complaint viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. D views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear. If the first and second positions are determined by rotation, then moving/rotating the cam to the second position does not force the trigger toward the set position if the cam is in standard semi-automatic mode; instead, such rotation forces the trigger toward the set position only if the cam is in forced-reset mode. Alternatively, if the sliding between modes results in the first and second positions, then having the cam slide to the forced-reset mode does not force the trigger toward the set position if the cam lever has not been moved backwards; instead, the cam lobe | Batzer concedes the Super Safety includes a cam having a cam lobe, designed to be mounted in a fire control mechanism pocket, slidable along its axis between safe, standard semi-automatic, and forced reset modes, and rotatable on that axis depending on the mode. That is the recited structure and movability.<br><br>Batzer's argument depends on a limitation the claim does not contain. The claim recites a cam "adapted to be movably mounted" and "movable between a first position and a second position." It does not restrict that movement to rotation, and it does not restrict it to sliding. It defines the second position by what the cam does there: "in said second position said cam lobe forces said trigger member towards said set position." Batzer applies that same definition, describing the second position as the position "where the cam lobe forces the trigger toward the set position." The Super Safety cam moves in both of the ways Batzer identifies, and the limitation is satisfied by each.<br><br>The cam's rotational movement satisfies it. As the bolt carrier drives the lever rearward, the cam rotates from a first position, in which the cam lobe does not force the trigger member toward the set position, into a second position, in which it does.<br><br>The cam's axial movement satisfies it as well. The user slides the cam between a first position, standard semi-automatic mode, and a second position, forced reset mode, and in the second position the cam lobe forces the trigger member toward the set position as the firearm cycles. Elements 15[f] and 15[g] describe the cam in those terms, reciting that it is in the first position in standard semi-automatic mode and in the second position in forced reset mode.<br><br>Batzer's remaining argument adds a further requirement the claim does not contain. The claim does not require that moving the cam into the second position is itself what forces the trigger member toward the set position. It requires that in the second position, the |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | (in forced-reset mode) forces the trigger toward the set position only if the lever has moved backwards and rotated the cam. | cam lobe forces the trigger member toward the set position. It does. |
| 15[f]. whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | The Super Safety does not include a bolt carrier, a hammer, or a disconnector. If the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. However, as noted above, it is unclear what Plaintiffs view as determining the first position (the cam's rotation about or sliding along the axis). In the standard semi-automatic mode, the cam is not limited to just the first rotational position (as claimed); instead, it may be in any position of rotation (first, second, or any other) due to the standard-fire groove. | Batzer's missing-components argument is addressed at element 15[pre]. Subject only to that point, Batzer describes the recited operation: with the Super Safety installed and set to standard semi-automatic mode, rearward movement of the bolt carrier pivots the hammer rearward, the disconnector hook catches the hammer hook, and after the bolt carrier returns to battery the user must manually release the trigger member to free the hammer before the firearm can be fired again. The cam is in the claimed first position in standard semi-automatic mode by either movement (element 15[e]). By its axial movement, the user has slid the cam to the standard semi-automatic position. By its rotational movement, the cam does not reach the second position in this mode at all: the standard-fire groove relieves the cam lobe so that it never forces the trigger member toward the set position, however the cam rotates. Batzer's observation that the cam "may be in any position of rotation (first, second, or any other) due to the standard-fire groove" therefore confirms this limitation rather than defeating it. |
| 15[g]. whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. | The Super Safety does not include a bolt carrier, a hammer, or a disconnector. As noted above, it is unclear what Plaintiffs view as determining the second position (the cam's rotation about or sliding along the axis). If the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset semi-automatic mode, it is not constrained to just be in the second rotational position (as claimed); indeed, the cam must be in the first position for the firearm to fire. Instead, the cam rotates between the first position and the second position. In this mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components). However, the rearward bolt carrier movement does not prevent the disconnector hook from catching the hammer hook; indeed, the rearward pivoting of the hammer causes the disconnector hook to catch the hammer hook, and no further rearward pivoting of the hammer prevents the disconnector hook from catching the hammer hook. Continued rearward movement of the bolt carrier pushes the cam lever rearward, causing the cam to rotate, causing the disconnector hook to release the hammer hook. Stated alternatively, when the cam is in the second rotational position (where the cam lobe forces the trigger toward the set position), there is no rearward pivoting of | Batzer's missing-components argument is addressed at element 15[pre]. Batzer concedes the recited result: continued rearward movement of the bolt carrier rotates the cam and causes the disconnector hook to release the hammer hook, and once the bolt carrier moves forward into battery the user can pull the trigger member to fire. The cam is in the claimed second position in forced reset mode by either movement (element 15[e]). By its axial movement, the user has slid the cam to the forced reset position before the cycle begins. By its rotational movement, the cam rotates into the second position as the bolt carrier drives the lever rearward, which is when the cam lobe forces the trigger member toward the set position. Batzer's statements that the cam "is not constrained to just be in the second rotational position" and "must be in the first position for the firearm to fire" do not matter under either movement. The claim does not require the cam to remain in the second position; this very limitation recites that the bolt carrier thereafter moves forward into battery and the user can then fire, which presupposes that the cam has moved on. Batzer's remaining argument is one of sequence. As the bolt carrier travels rearward it drives the lever, rotating the cam so that |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | the hammer – by the time the cam reaches the second position, the hammer has finished its rearward pivoting. Also, the Complaint image under this limitation shows the disconnector hook catching the hammer hook when the cam is in what the Complaint calls the second position, which is the opposite of what this limitation recites. When the bolt carrier thereafter moves forward into battery, the firearm user can pull the trigger to fire the firearm. | the cam lobe forces the trigger member to its set position. Because the disconnector is mounted on the trigger member pivot axis and travels with the trigger member, forcing the trigger member to the set position carries the disconnector hook clear of the hammer hook, so the hook does not catch and hold the hammer. That occurs during the same rearward stroke Batzer describes. The claim does not require that the rearward pivoting of the hammer itself be what prevents the catch; it recites that rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook is prevented from catching the hammer hook. Rearward movement of the bolt carrier drives both. |

## ARC-Fire

### Claim 15

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 15[pre]. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." See also Luettke Decl. & Ex. C (ECF Nos. 29-21, 29-24) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. | My analysis is directed to the firearm trigger mechanism as assembled and installed in an AR-15 pattern firearm in accordance with AS Designs' install guides. As I explained in my declaration, the ARC-Fire is sold as a kit of purpose-designed components, including a pre-cut trigger, transfer (reset) lever, detent bar, cam, primary selector, ambidextrous selector, and detent, that install within the firearm's fire control mechanism pocket and are dimensioned and shaped to fit together in the single configuration the instructions describe, and I am not aware of any alternative assembly configuration that would result in a different mode of operation.<br><br>Batzer's observation that the kit as shipped is not itself a complete trigger mechanism does not address that analysis. As assembled and installed as instructed, the resulting firearm trigger mechanism includes each component recited in claim 15, including the hammer, trigger member, disconnector, and cam addressed at elements 15[a] through 15[e]. To the extent the preamble is limiting, it is met. |
| 15[a]. a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted | The ARC-Fire does not include a hammer, a disconnector, a receiver, or a bolt carrier. | As set out at element 15[pre], my analysis is directed to the trigger mechanism as assembled and installed per AS Designs' install guides. In that mechanism, the hammer of the AR-15 pattern fire control group has each recited characteristic. Batzer does not dispute that; his only point is that the kit as shipped omits the hammer, which does not address the assembled mechanism. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| to be pivoted rearward by rearward movement of a bolt carrier, | | |
| 15[b]. a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The ARC-Fire includes a trigger having a sear and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. | Batzer concedes this limitation is met, acknowledging that the ARC-Fire includes a trigger having a sear and adapted to be mounted in a fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions. His parenthetical that the pocket is not included is addressed at element 15[pre]. |
| 15[c]. wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | Since the ARC-Fire does not include a hammer (with the sear catch), the ARC-Fire's trigger sear is not in engagement with the missing hammer's sear catch. | Batzer's only argument is again that the kit as shipped omits the hammer. As addressed at element 15[pre], my analysis is directed to the assembled mechanism. In that mechanism, the trigger member's sear, which Batzer concedes the ARC-Fire supplies (element 15[b]), engages the hammer's sear catch in the set positions and is out of engagement in the released positions. Batzer does not dispute that operation. |
| 15[d]. said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The ARC-Fire does not include a disconnector, a hammer, or a fire control mechanism pocket. | Batzer's only argument is again that the kit as shipped omits these components. As addressed at element 15[pre], my analysis is directed to the assembled mechanism. In that mechanism, the disconnector of the AR-15 pattern fire control group has a hook for engaging the hammer and is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. Batzer does not dispute that; at elements 15[f] and 15[g] he analyzes the disconnector hook catching and releasing the hammer hook in the installed firearm. |
| 15[e]. a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The ARC-Fire includes a cam having a lobe.<br><br><br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) and may also slide along the axis. The original Complaint, the Amended Complaint, and the proposed Second | Batzer concedes the ARC-Fire includes a cam having a cam lobe, designed to be mounted in a fire control mechanism pocket, that may rotate on its axis and may also slide along it.<br><br>Batzer's argument depends on a limitation the claim does not contain. The claim recites a cam "adapted to be movably mounted" and "movable between a first position and a second position." It does not restrict that movement to rotation, and it does not restrict it to sliding. It defines the second position by what the cam does there: "in said second position said cam lobe forces said trigger member towards said set position." Batzer applies that same definition, describing the second position as the position "where the cam lobe forces the trigger toward the set position."<br><br>The ARC-Fire cam's rotational movement satisfies the limitation. In forced reset mode the bolt carrier drives the lever rearward and the cam rotates with it, moving from a first position, in which the cam lobe does not force the trigger member toward the set position, into a second position, in which it does. Batzer concedes exactly that: "If the first and second positions are determined by |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | Amended Complaint viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. C views the sliding along the axis as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear. If the first and second positions are determined by rotation, then moving/rotating the cam to the second position forces the trigger toward the set position (if the ARC-Fire is in forced-reset mode). Alternatively, if the first and second positions are due to sliding, then the Luettke Decl. Ex. C shows that it is the lever that slides, not the cam, which means that the cam is not movable between any first and second positions. Even if it did, having the cam and lever slide together does not force the trigger toward the set position if the lever has not been moved backwards; instead, the cam lobe forces the trigger toward the set position only if the lever has moved backwards and rotated the cam. | rotation, then moving/rotating the cam to the second position forces the trigger toward the set position (if the ARC-Fire is in forced-reset mode)." Batzer's remaining argument adds a further requirement the claim does not contain. The claim does not require that moving the cam into the second position is itself what forces the trigger member toward the set position. It requires that in the second position, the cam lobe forces the trigger member toward the set position. It does. |
| 15[f]. whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | The ARC-Fire does not include a bolt carrier, a hammer, or a disconnector. If the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. However, as noted above, it is unclear what Plaintiffs view as determining the first position (the cam's rotation about or sliding along the axis). The cam does not slide along the axis, and thus has no first and second positions from the perspective of sliding. From the perspective of rotation, the cam remains in the first position in the standard semi-automatic mode. | Batzer's missing-components argument is addressed at element 15[pre]. Subject only to that point, Batzer describes the recited operation: with the ARC-Fire installed and set to standard semi-automatic mode, rearward movement of the bolt carrier pivots the hammer rearward, the disconnector hook catches the hammer hook, and after the bolt carrier returns to battery the user must manually release the trigger member to free the hammer before the firearm can be fired again. The cam is in the claimed first position in standard semi-automatic mode. Batzer concedes it, stating that "From the perspective of rotation, the cam remains in the first position in the standard semi-automatic mode." That is because the lever is not engaged with the cam in this mode, so rearward movement of the bolt carrier rotates the lever without rotating the cam, and the cam lobe never forces the trigger member toward the set position. |
| 15[g]. whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. | The ARC-Fire does not include a bolt carrier, a hammer, or a disconnector. As noted above, it is unclear what Plaintiffs view as determining the second position (the cam's rotation about or sliding along the axis). The cam does not slide along the axis, and thus has no first and second positions from the perspective of sliding. On rotation, if the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset semi-automatic mode, it is not constrained to just be in the second rotational position (as claimed); indeed, the cam must be in the first position for the firearm to fire. Instead, the cam rotates between the first position and the second position. In this mode, | Batzer's missing-components argument is addressed at element 15[pre]. Batzer concedes the recited result: continued rearward movement of the bolt carrier rotates the cam and causes the disconnector hook to release the hammer hook, and once the bolt carrier moves forward into battery the user can pull the trigger member to fire. The cam is in the claimed second position in forced reset mode. As set out at element 15[e], the cam rotates into that position as the bolt carrier drives the engaged lever rearward, which is when the cam lobe forces the trigger member toward the set position. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components). However, the rearward bolt carrier movement does not prevent the disconnector hook from catching the hammer hook; indeed, the rearward pivoting of the hammer causes the disconnector hook to catch the hammer hook, and no further rearward pivoting of the hammer prevents the disconnector hook from catching the hammer hook. Continued rearward movement of the bolt carrier pushes the cam lever rearward, causing the cam to rotate, causing the disconnector hook to release the hammer hook. Stated alternatively, when the cam is in the second rotational position (where the cam lobe forces the trigger toward the set position), there is no rearward pivoting of the hammer – by the time the cam reaches the second position, the hammer has finished its rearward pivoting. Also, the Complaint image under this limitation shows the disconnector hook catching the hammer hook when the cam is in what the Complaint calls the second position, which is the opposite of what this limitation recites. When the bolt carrier thereafter moves forward into battery, the firearm user can pull the trigger to fire the firearm. | Batzer's statements that the cam "is not constrained to just be in the second rotational position" and "must be in the first position for the firearm to fire" do not defeat the limitation. The claim does not require the cam to remain in the second position; this very limitation recites that the bolt carrier thereafter moves forward into battery and the user can then fire, which presupposes that the cam has moved on.<br><br>Batzer's remaining argument is one of sequence. As the bolt carrier travels rearward it drives the lever, rotating the engaged cam so that the cam lobe forces the trigger member to its set position. Because the disconnector is mounted on the trigger member pivot axis and travels with the trigger member, forcing the trigger member to the set position carries the disconnector hook clear of the hammer hook, so the hook does not catch and hold the hammer. That occurs during the same rearward stroke Batzer describes. The claim does not require that the rearward pivoting of the hammer itself be what prevents the catch; it recites that rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook is prevented from catching the hammer hook. Rearward movement of the bolt carrier drives both. |