# EXHIBIT J

## Claim Chart for U.S. Patent No. 12,578,159 — Batzer Noninfringement Positions and Luettke Reply

### Super Safety

**Claim 1**

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 1[pre]. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | The reciprocating bolt means is a means-plus-function limitation governed by §112(f). The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version). See also Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement). Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below. Similarly, these components individually are also not a firearm trigger mechanism. | My analysis is directed to the firearm trigger mechanism as assembled and installed in an AR-15 pattern firearm in accordance with AS Designs' install guides. As I explained in my declaration, the Super Safety is sold as a kit of purpose-designed components, including a pre-cut trigger, cam, reset lever, centering block, and detent, that are dimensioned and shaped to fit together in the single configuration the instructions describe, and I am not aware of any alternative assembly configuration that would result in a different mode of operation. Batzer's observation that the kit as shipped is not itself a complete trigger mechanism does not address that analysis.<br><br>The preamble recites the fire control mechanism pocket and the reciprocating bolt means as features of the firearm for which the mechanism is intended, not as components of the claimed mechanism. As assembled and installed as instructed, the resulting firearm trigger mechanism includes each recited component, and the firearm has both a fire control mechanism pocket and a reciprocating bolt.<br><br>A POSITA would understand "reciprocating bolt means" to connote structure. The same is true of each other term Batzer identifies as a means-plus-function limitation, including "bolt means," "trigger means," "hook means," and "disconnector hook means." Each names a physical component that is standard and well understood in the firearms art, and each is used in the '159 Patent consistently with its ordinary meaning. |
| 1[a]. the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | The Super Safety is operable in a standard semi-automatic mode and in a forced-reset mode. | Batzer concedes this limitation is met, acknowledging that the Super Safety is operable in a standard semi-automatic mode and in a forced-reset mode. |
| 1[b]. a hammer having a hammer sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer | Neither version of the Super Safety includes a hammer, a disconnector, a fire control mechanism pocket, a hammer pivot axis, or a reciprocating bolt means. | Batzer's only argument is that the kit as shipped omits these components. As addressed at element 1[pre], my analysis is directed to the assembled mechanism. In that mechanism, the hammer of the AR-15 pattern fire control group has each recited characteristic, and the firearm has a fire control mechanism pocket and a reciprocating bolt. Batzer does not dispute that. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| adapted to be pivoted rearward by rearward movement of the bolt means, | | |
| 1[c]. a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. | Batzer concedes this limitation is met, acknowledging that the Super Safety includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions. His parenthetical that the pocket is not included is addressed at element 1[pre]. |
| 1[d]. wherein the trigger member sear surface and hammer sear catch surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | It is unclear whether "hammer sear catch surface" and "hammer sear surface" refer to the same or different surfaces; the same is true regarding "trigger sear surface" and "trigger member sear surface." <br><br> Since the Super Safety does not include a hammer (with the sear catch surface), the Super Safety's trigger sear surface is not in engagement with the missing hammer's sear catch surface. | A POSITA reading the claims in light of the specification would understand "hammer sear surface" and "hammer sear catch surface" to refer to the same surface of the hammer, and "trigger sear surface" and "trigger member sear surface" to refer to the same surface of the trigger member. The '159 Patent describes a single sear on the trigger member that engages a single sear catch on the hammer, and the variation in wording is inconsistent shorthand for those same two surfaces. There is no ambiguity. <br><br> Batzer's remaining argument is that the kit as shipped omits the hammer, which is addressed at element 1[pre]. In the assembled mechanism, the trigger member's sear surface, which Batzer concedes the Super Safety supplies (element 1[c]), engages the hammer's sear catch surface in the set positions and is out of engagement in the released positions. |
| 1[e]. the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | Neither version of the Super Safety includes a disconnector, a hammer, or a fire control mechanism pocket. | Batzer's only argument is that the kit as shipped omits these components. As addressed at element 1[pre], my analysis is directed to the assembled mechanism. In that mechanism, the disconnector of the AR-15 pattern fire control group has a hook for engaging the hammer and is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. Batzer does not dispute that. |
| 1[f]. a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The Super Safety includes a cam having a lobe. The cam is designed to be mounted in a fire control mechanism pocket in such a way that it is slidable along the axis between safe, | Batzer concedes the Super Safety includes a cam having a cam lobe designed to be mounted in a fire control mechanism pocket, and that the cam may rotate on its axis. <br><br> The first and second positions are the rotational positions of the cam. The claims say so: elements 6[h] and 10[h] recite that after the bolt means moves forward into battery, "the cam is moved to the first position." That occurs during each firing cycle. Mode selection does not change during a firing cycle, so a POSITA would understand the first and second positions to be the rotational positions the cam occupies as the firearm cycles. <br><br> That is consistent with my analysis of the '247 Patent. As I explain there, nothing in that patent's claims restricts the first and second positions to a single kind of movement, and the cam satisfies the |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | standard semi-automatic, and forced-reset semi-automatic modes, and may be rotatable on the axis (depending on what mode it is in). The original Complaint (ECF No. 1), the Amended Complaint (ECF No. 4), the proposed Second Amended Complaint, and the Luettke Decl. Ex. B viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. D (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents. If the first and second positions are determined by rotation, then moving/rotating the cam to the second position does not force the trigger toward the set position if the cam is in standard semi-automatic mode; instead, such rotation forces the trigger toward the set position only if the cam is in forced-reset mode. | limitation by both its rotational movement and its mode position. The '159 Patent's claims go further and describe the cam moving between those positions during the firing cycle, which is rotational movement.<br><br>Batzer's remaining argument adds a requirement the claim does not contain. The claim does not require that the cam lobe force the trigger member toward the set position in every mode. It requires that in the second position the cam lobe forces the trigger member toward the set position, and as assembled and used as intended in its forced-reset mode, it does. That the cam does not do so when the mechanism is set to standard semi-automatic mode is what element 1[a] contemplates in reciting a mechanism operable in two modes. |
| 1[g]. whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | The Super Safety does not include a reciprocating bolt means, a hammer, or a disconnector. If the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. | Batzer's missing-components argument is addressed at element 1[pre].<br><br>Subject only to that point, Batzer describes the recited operation: with the Super Safety installed and set to standard semi-automatic mode, rearward movement of the bolt pivots the hammer rearward, the disconnector hook catches the hammer hook, and after the bolt returns to battery the user must manually reduce pressure on the trigger member to free the hammer before the firearm can be fired again. |
| 1[h]. whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm. | The Super Safety does not include a reciprocating bolt means, a hammer, or a disconnector. If the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. While the disconnector hook would (in this mode) eventually release the hammer hook, it is not due to the rearward pivoting of the hammer; indeed, the rearward pivoting of the hammer causes the disconnector hook to catch and hold the hammer hook, and no further rearward pivoting of the hammer prevents the disconnector hook from holding the hammer hook. Continued rearward movement of the bolt carrier pushes the cam lever rearward, causing the cam to rotate, causing the disconnector hook to release the hammer hook (as recognized by | Batzer's missing-components argument is addressed at element 1[pre].<br><br>Batzer concedes the recited result: in forced reset mode the disconnector does not hold the hammer, and once the bolt returns to battery the user can pull the trigger member to fire.<br><br>His remaining argument is one of sequence. As the bolt travels rearward it drives the lever rearward, rotating the cam to the second position, and the cam lobe forces the trigger member to its set position. Because the disconnector is mounted on the trigger member pivot axis and travels with the trigger member, forcing the trigger member to the set position carries the disconnector hook clear of the hammer hook, so the hook does not hold the hammer. That occurs during the same rearward stroke Batzer describes. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
|  | Plaintiffs). Stated alternatively, when the cam is in the second position, there is no rearward pivoting of the hammer – by the time the cam reaches the second position, the hammer has finished its rearward pivoting. When the bolt carrier thereafter moves forward into battery, the firearm user can pull the trigger to fire the firearm. | The claim does not require that the rearward pivoting of the hammer itself be what prevents the disconnector from holding the hammer. It recites that rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer. Rearward movement of the bolt drives both. |

## Claim 3

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 3. The trigger mechanism of claim 1, further comprising a spring which biases the trigger member toward the set position. | See claim 1 above.<br><br>The Super Safety does not include a spring for biasing the trigger. | See claim 1 above. As addressed at element 1[pre], my analysis is directed to the assembled mechanism, which includes the trigger spring of the AR-15 pattern fire control group biasing the trigger member toward the set position. |

## Claim 6

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 6[pre]. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | The reciprocating bolt means is a means-plus-function limitation governed by §112(f). The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version). See also Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement). Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below. Similarly, these components individually are also not a firearm trigger mechanism. | See element 1[pre]. |
| 6[a]. the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | The Super Safety is operable in a standard semi-automatic mode and in a forced-reset mode. | See element 1[a]. Batzer again concedes this limitation is met. |
| 6[b]. a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted | Neither version of the Super Safety includes a hammer, a disconnector, a fire control mechanism pocket, a hammer pivot axis, or a reciprocating bolt means. | See element 1[b]. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| rearward by rearward movement of the bolt means, | | |
| 6[c]. a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | The Super Safety includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. | See element 1[c]. Batzer again concedes this limitation is met. |
| 6[d]. wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | Since the Super Safety does not include a hammer (with the sear surface), the Super Safety's trigger sear surface is not in engagement with the missing hammer's sear surface. | See element 1[d]. In the assembled mechanism, the hammer sear surface and the trigger member sear surface are in engagement in the set positions and out of engagement in the released positions. |
| 6[e]. the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | Neither version of the Super Safety includes a disconnector, a hammer, or a fire control mechanism pocket. | See element 1[e]. |
| 6[f]. a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam prevents the trigger member from moving from the set position to the released position, | The Super Safety includes a cam having a lobe.<br><br><br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it is slidable along the axis between safe, standard semi-automatic, and forced-reset semi-automatic modes, and may be rotatable on the axis (depending on what mode it is in). The original Complaint (ECF No. 1), the Amended Complaint (ECF No. 4), the proposed Second Amended Complaint, and the Luettke Decl. Ex. B viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. D (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents. If the first and second positions are determined by rotation, then the cam being rotated to the second position does not | See element 1[f] for the first and second positions, which are the rotational positions of the cam.<br><br>In the second position the cam prevents the trigger member from moving from the set position to the released position. As assembled and used as intended in its forced-reset mode, the cam rotates to that position as the bolt drives the lever rearward, and while it remains there the trigger member is held at the set position and cannot be pulled. That the cam does not do so when the mechanism is set to standard semi-automatic mode is what element 1[a] contemplates in reciting a mechanism operable in two modes. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
|  | prevent the trigger from moving toward the released position if the cam is in standard semi-automatic mode; instead, the cam being in the second position prevents the trigger from moving off the set position only if the cam is in forced-reset mode. |  |
| 6[g]. whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to move to the set positions so that the user can pull the trigger member to fire the firearm again, and | The Super Safety does not include a reciprocating bolt means, a hammer, or a disconnector. If the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. | See element 1[g]. Batzer again describes the recited operation. |
| 6[h]. whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer, movement of the trigger member to the set position, and the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is moved to the first position, allowing the user to pull the trigger member to fire the firearm. | This claim limitation is not entirely clear. Regardless, the Super Safety does not include a reciprocating bolt means, a hammer, or a disconnector. As best understood, if the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. | See element 1[h], which addresses Batzer's sequencing argument. This limitation confirms the construction set out at element 1[f]. It recites that after the bolt means moves forward into battery, "the cam is moved to the first position, allowing the user to pull the trigger member to fire the firearm." Batzer describes that same operation, stating that when the bolt carrier moves forward into battery it causes the lever to rotate the cam back, unblocking the trigger. Mode selection does not change during a firing cycle, so the first and second positions are the cam's rotational positions. |

## Claim 7

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 7. The trigger mechanism of claim 6, further comprising a spring which biases the trigger member toward the set position. | See claim 6 above. The Super Safety does not include a spring for biasing the trigger. | See claim 3 above. |

## Claim 9

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 9. The trigger mechanism of claim 6, wherein the trigger member pivots on a transverse trigger axis between set and released positions. | See claim 6 above.<br><br>The Super Safety trigger is adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. | Batzer concedes this limitation is met, acknowledging that the Super Safety trigger pivots on a transverse trigger member pivot axis between set and released positions. His parenthetical that the pocket is not included is addressed at element 1[pre]. |

## Claim 10

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 10[pre]. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | The reciprocating bolt means is a means-plus-function limitation governed by §112(f). The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version). See also Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement). Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below. Similarly, these components individually are also not a firearm trigger mechanism. | See element 1[pre]. |
| 10[a]. the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | The Super Safety is operable in a standard semi-automatic mode and in a forced-reset mode. | See element 1[a]. Batzer again concedes this limitation is met. |
| 10[b]. a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | Neither version of the Super Safety includes a hammer, a disconnector, a fire control mechanism pocket, a hammer pivot axis, or a reciprocating bolt means. | See element 1[b]. |
| 10[c]. a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | The Super Safety includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. | See element 1[c]. Batzer again concedes this limitation is met. |
| 10[d]. wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of | Since the Super Safety does not include a hammer (with the sear surface), the Super Safety's trigger sear surface is not in engagement with the missing hammer's sear surface. | See element 1[d]. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| engagement in the released positions of the hammer and trigger member, | | |
| 10[e]. the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | Neither version of the Super Safety includes a disconnector, a hammer, or a fire control mechanism pocket. | See element 1[e]. |
| 10[f]. a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, movement of the cam to the second position causing the trigger member to move from the released position toward the set position, | The Super Safety includes a cam having a lobe.<br><br><br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it is slidable along the axis between safe, standard semi-automatic, and forced-reset semi-automatic modes, and may be rotatable on the axis (depending on what mode it is in). The original Complaint (ECF No. 1), the Amended Complaint (ECF No. 4), the proposed Second Amended Complaint, and the Luettke Decl. Ex. B viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. D (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents. If the first and second positions are determined by rotation, then the cam being rotated to the second position does not cause the trigger to move toward the set position if the cam is in standard semi-automatic mode; instead, the cam moving to the second position causes the trigger to move toward the set position only if the cam is in forced-reset mode. | See element 1[f] for the first and second positions, which are the rotational positions of the cam.<br><br>Movement of the cam to the second position causes the trigger member to move from the released position toward the set position. As assembled and used as intended in its forced-reset mode, the bolt drives the lever rearward, rotating the cam to the second position, and the cam lobe drives the trigger member forward to the set position. That the cam does not do so when the mechanism is set to standard semi-automatic mode is what element 1[a] contemplates in reciting a mechanism operable in two modes. |
| 10[g]. whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a | The Super Safety does not include a reciprocating bolt means, a hammer, or a disconnector. If the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the | See element 1[g]. Batzer again describes the recited operation. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to move to the set positions so that the user can pull the trigger member to fire the firearm again, and | configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. | |
| 10[h]. whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer and causes movement of the trigger member to the set position, and wherein the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is moved to the first position and the user can pull the trigger member to fire the firearm again. | The Super Safety does not include a reciprocating bolt means, a hammer, or a disconnector. As best understood, if the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. The specification uses "cause" (and variants) to refer to a direct cause (e.g., the bolt carrier directly causing the hammer to pivot, Abstract). Under such a construction, rearward movement of the bolt carrier does not cause the trigger to move to the set position. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, which forces the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. | See element 1[h], which addresses Batzer's sequencing argument, and element 6[h], which addresses the cam returning to the first position as the bolt moves forward into battery.<br><br>Batzer's further argument that "causes" must mean direct physical contact is not how a POSITA would read the claim. The claim recites that rearward movement of the bolt means causes movement of the trigger member to the set position, and it does: the bolt drives the lever, which rotates the cam, whose lobe drives the trigger member to the set position. On Batzer's reading the claim would also not be satisfied by the rearward pivoting of the hammer he acknowledges, since the bolt carrier acts on the hammer through the same kind of mechanical chain. |

## Claim 11

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 11. The trigger mechanism of claim 10, further comprising a spring which biases the trigger member toward the set position. | See claim 10 above.<br><br>The Super Safety does not include a spring for biasing the trigger. | See claim 3 above. |

## Claim 14

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 14[pre]. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version). See also Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement). Neither version is a complete firearm trigger mechanism, as each consists | See element 1[pre]. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
|  | only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below. Similarly, these components individually are also not a firearm trigger mechanism. |  |
| 14[a]. a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | The bolt means is a means-plus-function limitation governed by §112(f). Neither version of the Super Safety includes a hammer, a disconnector, a fire control mechanism pocket, or a bolt means. | See element 1[b]. A POSITA would understand "bolt means" to connote structure, as addressed at element 1[pre]. |
| 14[b]. a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | The Super Safety includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. | See element 1[c]. Batzer again concedes this limitation is met. |
| 14[c]. wherein the hammer sear surface and trigger member sear surface are in position to engage in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | Since the Super Safety does not include a hammer (with the sear surface), the Super Safety's trigger sear surface is not in position to engage with the missing hammer's sear surface. | See element 1[d]. |
| 14[d]. the disconnector having a hook for engaging the hammer, and | Neither version of the Super Safety includes a disconnector or a hammer. | See element 1[e]. |
| 14[e]. a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The Super Safety includes a cam having a lobe.<br><br><br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it is slidable along the axis between safe, standard semi-automatic, and forced-reset semi-automatic modes, and may be rotatable on the axis (depending on what mode it is in). The original Complaint (ECF No. 1), the Amended Complaint (ECF No. 4), the proposed Second Amended Complaint, and the | See element 1[f]. The first and second positions are the rotational positions of the cam, and in the second position the cam lobe forces the trigger member toward the set position. That the cam does not do so when the mechanism is set to standard semi-automatic mode is what element 1[a] contemplates in reciting a mechanism operable in two modes. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
|  | Luettke Decl. Ex. B viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. D (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents. If the first and second positions are determined by rotation, then moving/rotating the cam to the second position does not force the trigger toward the set position if the cam is in standard semi-automatic mode; instead, such rotation forces the trigger toward the set position only if the cam is in forced-reset mode. |  |
| 14[f]. when in a standard semi-automatic mode, rearward movement of the bolt carrier causes movement of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer sear surface and trigger member sear surface to move into engagement so that the user can pull the trigger member to fire the firearm, and | The "bolt carrier" lacks antecedent basis. Furthermore, the difference (if any) between the "bolt carrier" and the "bolt means" is unclear, adding to the indefiniteness. Regardless, the Super Safety does not include a bolt carrier, a bolt means, a hammer, or a disconnector.<br><br>If the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions and engage so the user can pull the trigger to fire the firearm. | See element 1[g]. A POSITA would understand "bolt carrier" and "bolt means" to refer to the same structure, which in an AR-15 pattern firearm is the reciprocating bolt carrier. |
| 14[g]. when in a forced reset semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm. | The Super Safety does not include a bolt means, a hammer, or a disconnector. As best understood, if the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, which forces the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. | See element 1[h], which addresses Batzer's sequencing argument. |

**Claim 15**

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 15[pre]. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version). See also Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement). Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below. Similarly, these components individually are also not a firearm trigger mechanism. | See element 1[pre]. |
| 15[a]. a hammer having a sear surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | The hook means and the bolt means are means-plus-function limitations governed by §112(f). Neither version of the Super Safety includes a hammer, a disconnector, or a bolt means. | See element 1[b]. A POSITA would understand "hook means" and "bolt means" to connote structure, as addressed at element 1[pre]. |
| 15[b]. a trigger means having a sear surface and adapted to move between set and released positions, | The trigger means is a means-plus-function limitation governed by §112(f). The Super Safety includes a trigger having a sear surface and adapted to pivot on a transverse trigger member pivot axis between set and released positions. | See element 1[c]. A POSITA would understand "trigger means" to connote structure, as addressed at element 1[pre]. Batzer again concedes the Super Safety includes a trigger having a sear surface adapted to move between set and released positions. |
| 15[c]. wherein the hammer sear surface and trigger means sear surface are positioned to engage when the hammer and trigger means are in their set positions and are out of engagement when the hammer and trigger means are in their released positions, | Since the Super Safety does not include a hammer (with the sear surface), the Super Safety's trigger sear surface is not in position to engage with the missing hammer's sear surface. | See element 1[d]. |
| 15[d]. the disconnector having a disconnector hook means for engaging the hammer hook means, | Neither version of the Super Safety includes a disconnector or a hammer. | See element 1[e]. A POSITA would understand "disconnector hook means" and "hammer hook means" to connote structure, as addressed at element 1[pre]. |
| 15[e]. a cam adapted to be movable between a first position at which the cam does not force the trigger member into the set position and a second position at which the cam does force the trigger member toward the set position, and | The Super Safety includes a cam.<br><br><br><br>cam   lobe   axis | See element 1[f]. The first and second positions are the rotational positions of the cam. In the first position the cam does not force the trigger member into the set position, and in the second position it does. That the cam does not do so when the mechanism is set to standard semi-automatic mode is what element 1[a] contemplates in reciting a mechanism operable in two modes. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | The cam is designed to be mounted in a fire control mechanism pocket in such a way that it is slidable along the axis between safe, standard semi-automatic, and forced-reset semi-automatic modes, and may be rotatable on the axis (depending on what mode it is in). The original Complaint (ECF No. 1), the Amended Complaint (ECF No. 4), the proposed Second Amended Complaint, and the Luettke Decl. Ex. B viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. D (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents. If the first and second positions are determined by rotation, then moving/rotating the cam to the second position does not force the trigger toward the set position if the cam is in standard semi-automatic mode; instead, such rotation forces the trigger toward the set position only if the cam is in forced-reset mode. | |
| 15[f]. a means for selecting between at least standard semi-automatic and forced reset semi-automatic modes, | This is a means-plus-function limitation governed by §112(f) and is thus limited to the corresponding structure disclosed in the specification and its equivalents. The specification discloses that selection of the operative mode (standard semi-automatic or forced-reset) is done by rotating/pivoting a safety selector 110, which has a lever, at one end that can be gripped and rotated by the user's hand, and includes a midportion (along the selector's length) that differs in configuration or cross-section as the selector is rotated in 90-degree increments (namely, where the midportion is rounded/semicircular 112, where the midportion is flat 114, and where the midportion has a rounded narrow section 116 flanked by flat sections). 2:54-57, 6:1-29, 8:43-65, Figs. 2, 4A-8A, 9A, Abstract. The safety selector selects standard semi-automatic mode by rotating the flat and sufficiently wide portion 114 (of the selector) to face the tails 68 of the trigger 38 and the tail 66 of the disconnector 60, allowing both to rotate sufficiently. 8:48-54, Figs. 5A-B, 8A-D. The safety selector selects forced-reset mode by rotating until a flat portion (of the selector) faces each tail of the trigger, allowing the trigger to sufficiently rotate, while the rounded extruding section 116 (of the selector) in-between the flat portions faces the tail of the disconnector, blocking the disconnector from rotating. 3:12-15, 8:54-65, 9:28-39, Figs. 6A-B, 9A-D. The Super Safety does not include such a means for selecting. The Super Safety does not have a safety selector with a lever that is rotated (by hand) in 90-degree increments to select a standard semi-automatic or forced-reset mode; rather the Super | A POSITA would understand "a means for selecting between at least standard semi-automatic and forced reset semi-automatic modes" to connote structure, as addressed at element 1[pre]. Mode selectors are standard, well understood components in the firearms art.

The Super Safety's cam includes a user-operable mode-selecting portion, detented in discrete positions, by which the user selects between safe, standard semi-automatic, and forced reset operation. That portion is the means for selecting, and it is mapped as set out in my infringement chart. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | Safety operative mode is selected by sliding its cam (which does not have a lever that is operated by a user's hand) along the cam's axis. The Super Safety does not have a safety selector with a midportion (along its length) that differs in configuration/cross-section as it is rotated in 90-degree increments (corresponding to different modes); rather, the Super Safety's cam has differing configurations/cross-sections (corresponding to different modes) along its axis, not circumferentially about its axis. The Super Safety does not have (a) a safety selector with a wide flat portion facing the two trigger tails and the disconnector tail, or (b) a rounded section facing the disconnector tail and preventing its rotation, flanked by flat portions facing the two trigger tails; rather, the Super Safety cam presents a rounded recess to one tail of the trigger whereas the disconnector tail does not face or interact with the cam at all. Nor does the Super Safety include equivalents of this limitation. | |
| 15[g]. when in the standard semi-automatic position, rearward movement of the bolt means causes movement of the hammer such that the disconnector hook means catches the hammer hook means, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to the set positions so that the user can pull the trigger means to fire the firearm, and | The Super Safety does not include a bolt means, a hammer, or a disconnector. If the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. | See element 1[g]. Batzer again describes the recited operation. |
| 15[h]. when in the forced reset semi-automatic position, rearward movement of the bolt means causes movement of the hammer, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm. | The Super Safety does not include a bolt means, a hammer, or a disconnector. As best understood, if the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, which forces the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. | See element 1[h], which addresses Batzer's sequencing argument. |

**Claim 16**

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 16[pre]. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version). See also Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement). Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below. Similarly, these components individually are also not a firearm trigger mechanism. | See element 1[pre]. |
| 16[a]. a hammer having a sear engagement surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | The hook means and the bolt means are means-plus-function limitations governed by §112(f). Neither version of the Super Safety includes a hammer or a disconnector, or a bolt means. | See element 1[b]. A POSITA would understand "hook means" and "bolt means" to connote structure, as addressed at element 1[pre]. |
| 16[b]. a trigger means having a sear engagement surface and adapted to move between set and released positions, | The trigger means is a means-plus-function limitation governed by §112(f). The Super Safety includes a trigger having a sear engagement surface and adapted to pivot on a transverse trigger member pivot axis between set and released positions. | See element 1[c]. A POSITA would understand "trigger means" to connote structure, as addressed at element 1[pre]. Batzer again concedes this limitation is met. |
| 16[c]. wherein the trigger means and hammer sear engagement surfaces are in position to engage in the set positions of the hammer and trigger means and will not engage in the released positions of the hammer and trigger means, | Since the Super Safety does not include a hammer (with the sear engagement surface), the Super Safety's trigger sear engagement surface is not in position to engage with the missing hammer's sear engagement surface. | See element 1[d]. |
| 16[d]. the disconnector having a hook means for engaging the hammer hook means, and | The hook means is a means-plus-function limitation governed by §112(f). Neither version of the Super Safety includes a disconnector or a hammer. | See element 1[e]. A POSITA would understand "hook means" to connote structure, as addressed at element 1[pre]. |
| 16[e]. a cam movable between a first position and a second position, in the second position the cam forces the trigger member toward the set position, | The Super Safety includes a cam.<br><br><br><br>cam    lobe    axis | See element 1[f]. The first and second positions are the rotational positions of the cam, and in the second position the cam forces the trigger member toward the set position. That the cam does not do so when the mechanism is set to standard semi-automatic mode is what element 1[a] contemplates in reciting a mechanism operable in two modes. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | The cam is designed to be mounted in a fire control mechanism pocket in such a way that it is slidable along the axis between safe, standard semi-automatic, and forced-reset semi-automatic modes, and may be rotatable on the axis (depending on what mode it is in). The original Complaint (ECF No. 1), the Amended Complaint (ECF No. 4), the proposed Second Amended Complaint, and the Luettke Decl. Ex. B viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. D (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents. If the first and second positions are determined by rotation, then moving/rotating the cam to the second position does not force the trigger toward the set position if the cam is in standard semi-automatic mode; instead, such rotation forces the trigger toward the set position only if the cam is in forced-reset mode. | |
| 16[f]. when in a standard semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook means catches the hammer hook means, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to their set positions so that the user can pull the trigger means to fire the firearm, and | The Super Safety does not include a bolt means, a hammer, or a disconnector. If the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. | See element 1[g]. Batzer again describes the recited operation. |
| 16[g]. when in a forced reset semi-automatic mode, upon rearward movement of the bolt means, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm. | The Super Safety does not include a bolt means, a hammer, or a disconnector. As best understood, if the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, which forces the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. | See element 1[h], which addresses Batzer's sequencing argument. |

## Claim 17

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 17[pre]. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies a "Super Safety" as the "First Infringing Device" and states that it is sold in two variations (DLC Black version and Black Oxide version). See also Luettke Decl. & Ex. B (ECF Nos. 29-21, 29-23) (accusing Super Safety of infringement). Neither version is a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent, a trigger, and a centering block, omitting other required components, as noted below. Similarly, these components individually are also not a firearm trigger mechanism. | See element 1[pre]. My analysis is directed to the firearm trigger mechanism as assembled and installed in accordance with AS Designs' install guides. |
| 17[a]. a hammer movable between a set position and a released position, and having a sear engagement surface; | Neither version of the Super Safety includes a hammer. | See element 1[b]. In the assembled mechanism the hammer of the AR-15 pattern fire control group is movable between set and released positions and has a sear engagement surface. |
| 17[b]. a trigger member having a sear engagement surface, the trigger member being movable between a set position and a released position; | The Super Safety includes a trigger having a sear engagement surface and adapted to pivot on a transverse trigger member pivot axis between set and released positions. | Batzer concedes this limitation is met, acknowledging that the Super Safety includes a trigger having a sear engagement surface and adapted to pivot between set and released positions. |
| 17[c]. a cam configured to move during cycling of the firearm's action and to contact the trigger member to bias it toward the set position; | The Super Safety includes a cam.<br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) during cycling of the bolt carrier (which is not provided with the Super Safety). The cam may contact the trigger, but the cam does not bias it toward the set position if the cam is in standard semi-automatic mode; instead, the cam may force the trigger toward the set position only if the cam is in forced-reset mode and if the Super Safety lever rotates the cam.<br><br><br><br>cam    lobe    axis | Batzer concedes the Super Safety includes a cam that may rotate on its axis during cycling of the bolt carrier, may contact the trigger, and may force the trigger toward the set position when the mechanism is in forced-reset mode.<br><br>This limitation is directed to what the cam is configured to do, and the Super Safety cam is configured to do exactly that. That the cam does not bias the trigger member toward the set position in standard semi-automatic mode does not bear on this limitation; element 17[g] separately recites the forced reset mode in which it does. |
| 17[d]. a movable blocking means configured to selectively prevent the | The references to "the sear" and "the hammer sear catch surface" lack antecedent basis, as prior references are to "a sear | A POSITA would understand "movable blocking means" to connote structure. A POSITA would also understand "the sear" |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| hammer sear catch surface from engaging with the sear in the set position; | engagement surface" (on the hammer and the trigger member). It is thus unclear what "the sear" and "the hammer sear catch surface" refer to. The "movable blocking means" is a means-plus-function limitation governed by §112(f) and is thus limited to the corresponding structure disclosed in the specification and its equivalents. The specification does not use this phrase or any variant of "block," which renders it difficult to correlate any disclosed structure to this recited function. Searching the specification for disclosure of structure that prevents the (indefinite and unclear) hammer sear catch surface from engaging with the (indefinite and unclear) sear in the set position, the only relevant disclosure refers to releasing the trigger to allow the sear 56 to engage the sear catch 52, returning the hammer 36 and trigger member 38 to their set positions. 9:23-26. This suggests that the trigger member corresponds to the recited "movable blocking means." But the trigger member is already recited separately above and thus could not correspond to this limitation. With no other corresponding limitation disclosed, this renders this claim indefinite. The Luettke Decl. Ex. B points to the disconnector as allegedly meeting this limitation. But Luettke cites to no portion of the specification as correlating the recited function and disclosed structure. Neither does he explain how the disconnector is "selected" to prevent or not prevent the hammer sear catch from engaging with the sear in the set position. Even if the disconnector corresponds to this limitation, neither version of the Super Safety includes a disconnector. | and "the hammer sear catch surface" to refer to the sear engagement surfaces recited at elements 17[a] and 17[b], for the reasons set out at element 1[d]. In the assembled mechanism the disconnector is the movable blocking means. It is movable, and when the hammer is pivoted rearward the disconnector hook catches and holds the hammer hook, which prevents the hammer sear engagement surface from engaging the trigger member sear engagement surface in the set position. Whether the disconnector performs that blocking function is determined by the mode the user selects, as addressed at elements 17[f] through 17[h]. Batzer's remaining argument is that the kit as shipped omits the disconnector, which is addressed at element 1[pre]. |
| 17[e]. a mode selector operable by the user to select between at least two modes of operation of the trigger mechanism, including: | The Super Safety does not include a safety selector (that also selects the mode of operation) as disclosed in the patent. The Super Safety achieves the selection of its mode of operation by the user by sliding the cam along its axis. However, this claim recites the cam as a component separate from the mode selector, which means the same component in the accused device cannot meet both claim limitations. | The Super Safety cam is a single component with structurally distinct portions. The ends of the cam are exposed and user-operable, and together with the detent they define the discrete mode positions by which the user selects between safe, standard semi-automatic, and forced reset operation. Those ends are the mode selector. The middle portion, which carries the cam lobes and bears on the trigger member, is the cam addressed at element 17[c]. A POSITA would recognize these as distinct portions of the component performing distinct functions. I understand from counsel that separately recited claim elements need not be satisfied by separately manufactured components unless the claim or the specification requires it. Claim 17 does not recite the cam as connected to, mounted on, or acting upon the mode selector. |
| 17[f]. a semi-automatic mode, in which the hammer and trigger member sear engagement surfaces are not able engage in the set position during cycling of the | The phrase "are not able engage in" is grammatically incorrect and unclear. Also, as explained above, the "blocking means" is unclear. The Super Safety does not include a hammer, a bolt carrier or other action mechanism, or a disconnector (if that is | Batzer's missing-components argument is addressed at element 1[pre]. A POSITA would read "are not able engage in" as "are not able to engage in." |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| firearm's action until the user manually reduces pressure from the trigger member to disengage the blocking means before firing again, regardless of whether the cam moves the trigger member to the set position; and | what "blocking means" refers to). As best understood, if the Super Safety cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier (after pulling the trigger) may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook and prevent it from pivoting forward to have the hammer sear surface engage with the trigger sear surface as long as the trigger remains pulled (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. In this mode, the Super Safety cam does not move the trigger to the set position. | Subject to those points, Batzer describes the recited operation: in standard semi-automatic mode the disconnector hook catches the hammer hook and prevents it from pivoting forward to engage the trigger member sear engagement surface so long as the trigger remains pulled, and the user must manually reduce pressure on the trigger member before firing again. <br><br> That is what this limitation recites, and it holds regardless of whether the cam moves the trigger member to the set position, as the limitation itself makes clear. |
| 17[g]. a forced reset mode, in which the cam moves during cycling and forcibly biases the trigger member into the set position with the hammer and trigger member sear engagement surfaces engaged, permitting the user to immediately fire again without the user manually releasing pressure on the trigger member; | The Super Safety does not include a hammer, a bolt carrier or other action mechanism. If the Super Safety cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, which forces the trigger member to the set position, which would also cause the disconnector to release the hammer hook and allow the hammer and trigger sear surfaces to engage. However, so long as the cam moves into the position where it forcibly biases the trigger into the set position, the cam does not permit the user to immediately fire again. Rather, the bolt carrier must first move forward into battery and cause the lever to rotate the cam back (away from the position where it biases the trigger), which would then unblock the trigger tail and allow the firearm user to pull the trigger to fire the firearm. Furthermore, for such a firearm (with the Super Safety) to fire again, the user's pressure must be low enough to allow the cam to forcibly release/reset the trigger and rotate it toward the set position; otherwise, if the user maintains a sufficiently high level of pressure to not allow the trigger to be forcibly released by the cam, the firearm will not fire again. | Batzer concedes the recited operation: in forced reset mode the bolt drives the lever, which rotates the cam, forcing the trigger member to the set position and causing the disconnector to release the hammer hook so that the sear engagement surfaces engage. <br><br> His remaining points add requirements the claim does not contain. The limitation recites that the mode permits the user to fire again without manually releasing pressure on the trigger member. It does not require that the user be able to fire at any given instant during the cycle. The '159 Patent describes the trigger member being held until the bolt returns to battery, which is the same operation Batzer describes. The limitation also says nothing about how much pressure the user applies. |
| 17[h]. wherein if the cam moves in both modes, the difference in operation between modes is determined by movable selection of the blocking means, thereby selectively either permitting or preventing the hammer and trigger member sear engagement | As explained above, the "blocking means" is unclear. The Super Safety does not include a hammer or a disconnector (if that is what "blocking means" refers to). As best understood, the Super Safety cam moves in both modes (standard semi-automatic and forced-reset) if its lever is rotated by the (not provided) bolt carrier. There is no provision for a user to somehow "movably select" the | As addressed at elements 17[d] and 17[e], the blocking means is the disconnector and the mode selector is the user-operable end portion of the cam. <br><br> Selecting forced reset mode causes the cam to force the trigger member to the set position during cycling. Because the disconnector travels with the trigger member, the disconnector |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| surfaces from engaging when the trigger member is biased by the cam. | disconnector in a firearm having a Super Safety (unlike the configuration disclosed in the '159 Patent). Nor does the disconnector operate differently in the two modes; rather, in both modes, the disconnector hook catches the hammer hook and eventually releases it.<br><br>Furthermore, the cam can bias the trigger only in forced-reset mode, not in the standard semi-automatic mode; and since the cam does not contact the disconnector, it does not cause the disconnector to somehow permit or prevent engagement of the hammer and trigger sear surfaces while the cam biases the trigger. | hook is carried clear of the hammer hook and the sear engagement surfaces engage. In standard semi-automatic mode the disconnector is not so moved, and it holds the hammer until the user reduces pressure on the trigger member. That difference in the operation of the blocking means between the two modes is what this limitation recites. |

## ARC-Fire

### Claim 1

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 1[pre]. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | The reciprocating bolt means is a means-plus-function limitation governed by §112(f). The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." See also Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. | My analysis is directed to the firearm trigger mechanism as assembled and installed in an AR-15 pattern firearm in accordance with AS Designs' install guides. As I explained in my declaration, the ARC-Fire is sold as a kit of purpose-designed components, including a pre-cut trigger, transfer (reset) lever, detent bar, cam, primary selector, ambidextrous selector, and detent, that are dimensioned and shaped to fit together in the single configuration the instructions describe, and I am not aware of any alternative assembly configuration that would result in a different mode of operation. Batzer's observation that the kit as shipped is not itself a complete trigger mechanism does not address that analysis.<br><br>The preamble recites the fire control mechanism pocket and the reciprocating bolt means as features of the firearm for which the mechanism is intended, not as components of the claimed mechanism. As assembled and installed as instructed, the resulting firearm trigger mechanism includes each recited component, and the firearm has both a fire control mechanism pocket and a reciprocating bolt.<br><br>A POSITA would understand "reciprocating bolt means" to connote structure. The same is true of each other term Batzer identifies as a means-plus-function limitation, including "bolt means," "trigger means," "hook means," and "disconnector hook means." Each names a physical component that is standard and well understood in the firearms art, and each is used in the '159 Patent consistently with its ordinary meaning. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 1[a]. the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | The ARC-Fire is operable in a standard semi-automatic mode and in a forced-reset mode. | Batzer concedes this limitation is met, acknowledging that the ARC-Fire is operable in a standard semi-automatic mode and in a forced-reset mode. |
| 1[b]. a hammer having a hammer sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | The ARC-Fire does not include a hammer, a disconnector, a fire control mechanism pocket, a hammer pivot axis, or a reciprocating bolt means. | Batzer's only argument is that the kit as shipped omits these components. As addressed at element 1[pre], my analysis is directed to the assembled mechanism. In that mechanism, the hammer of the AR-15 pattern fire control group has each recited characteristic, and the firearm has a fire control mechanism pocket and a reciprocating bolt. Batzer does not dispute that. |
| 1[c]. a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The ARC-Fire includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. | Batzer concedes this limitation is met, acknowledging that the ARC-Fire includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions. His parenthetical that the pocket is not included is addressed at element 1[pre]. |
| 1[d]. wherein the trigger member sear surface and hammer sear catch surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | It is unclear whether "hammer sear catch surface" and "hammer sear surface" refer to the same or different surfaces; the same is true regarding "trigger sear surface" and "trigger member sear surface." Since the ARC-Fire does not include a hammer (with the sear catch surface), the ARC-Fire's trigger sear surface is not in engagement with the missing hammer's sear catch surface. | A POSITA reading the claims in light of the specification would understand "hammer sear surface" and "hammer sear catch surface" to refer to the same surface of the hammer, and "trigger sear surface" and "trigger member sear surface" to refer to the same surface of the trigger member. The '159 Patent describes a single sear on the trigger member that engages a single sear catch on the hammer, and the variation in wording is inconsistent shorthand for those same two surfaces. There is no ambiguity.<br><br>Batzer's remaining argument is that the kit as shipped omits the hammer, which is addressed at element 1[pre]. In the assembled mechanism, the trigger member's sear surface, which Batzer concedes the ARC-Fire supplies (element 1[c]), engages the hammer's sear catch surface in the set positions and is out of engagement in the released positions. |
| 1[e]. the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The ARC-Fire does not include a disconnector, a hammer, or a fire control mechanism pocket. | Batzer's only argument is that the kit as shipped omits these components. As addressed at element 1[pre], my analysis is directed to the assembled mechanism. In that mechanism, the disconnector of the AR-15 pattern fire control group has a hook for engaging the hammer and is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. Batzer does not dispute that. |
| 1[f]. a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable | The ARC-Fire includes a cam having a lobe. | Batzer concedes the ARC-Fire includes a cam having a cam lobe designed to be mounted in a fire control mechanism pocket, and that the cam may rotate on its axis. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | <br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) and may also slide slightly along the axis (depending on the fitment with the adjacent components). The original Complaint, the Amended Complaint, the proposed Second Amended Complaint, and the Luettke Decl. Ex. A viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. C (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents. If the first and second positions are determined by rotation, then the cam does not rotate in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and does not force the trigger toward the position; instead, such rotation forces the trigger toward the set position only if the ARC-Fire is in forced-reset mode. | The first and second positions are the rotational positions of the cam. The claims say so: elements 6[h] and 10[h] recite that after the bolt means moves forward into battery, "the cam is moved to the first position." That occurs during each firing cycle. Mode selection does not change during a firing cycle, so a POSITA would understand the first and second positions to be the rotational positions the cam occupies as the firearm cycles.<br><br>That is consistent with my analysis of the '247 Patent. As I explain there, nothing in that patent's claims restricts the first and second positions to a single kind of movement, and the ARC-Fire cam satisfies the limitation by its rotational movement. The '159 Patent's claims describe the cam moving between those positions during the firing cycle, which is likewise rotational movement.<br><br>Batzer's remaining argument adds a requirement the claim does not contain. The claim does not require that the cam lobe force the trigger member toward the set position in every mode. It requires that in the second position the cam lobe forces the trigger member toward the set position, and as assembled and used as intended in its forced-reset mode, it does. Batzer confirms as much, stating that in standard semi-automatic mode the lever does not engage the cam, so the cam does not rotate and does not act on the trigger member. |
| 1[g]. whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | The ARC-Fire does not include a reciprocating bolt means, a hammer, or a disconnector. If the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. | Batzer's missing-components argument is addressed at element 1[pre].<br><br>Subject only to that point, Batzer describes the recited operation: with the ARC-Fire installed and set to standard semi-automatic mode, rearward movement of the bolt pivots the hammer rearward, the disconnector hook catches the hammer hook, and after the bolt returns to battery the user must manually reduce pressure on the trigger member to free the hammer before the firearm can be fired again. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 1[h]. whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm. | The ARC-Fire does not include a reciprocating bolt means, a hammer, or a disconnector. If the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. While the disconnector hook would (in this mode) eventually release the hammer hook, it is not due to the rearward pivoting of the hammer; indeed, the rearward pivoting of the hammer causes the disconnector hook to catch and hold the hammer hook, and no further rearward pivoting of the hammer prevents the disconnector hook from holding the hammer hook. Continued rearward movement of the bolt carrier pushes the lever rearward, causing the cam to rotate, causing the disconnector hook to release the hammer hook (as recognized by Plaintiffs). Stated alternatively, when the cam is in the second position, there is no rearward pivoting of the hammer – by the time the cam reaches the second position, the hammer has finished its rearward pivoting. When the bolt carrier thereafter moves forward into battery, the firearm user can pull the trigger to fire the firearm. | Batzer's missing-components argument is addressed at element 1[pre].<br><br>Batzer concedes the recited result: in forced reset mode the disconnector does not hold the hammer, and once the bolt returns to battery the user can pull the trigger member to fire.<br><br>His remaining argument is one of sequence. As the bolt travels rearward it drives the lever rearward, rotating the cam to the second position, and the cam lobe forces the trigger member to its set position. Because the disconnector is mounted on the trigger member pivot axis and travels with the trigger member, forcing the trigger member to the set position carries the disconnector hook clear of the hammer hook, so the hook does not hold the hammer. That occurs during the same rearward stroke Batzer describes.<br><br>The claim does not require that the rearward pivoting of the hammer itself be what prevents the disconnector from holding the hammer. It recites that rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer. Rearward movement of the bolt drives both. |

## Claim 3

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 3. The trigger mechanism of claim 1, further comprising a spring which biases the trigger member toward the set position. | See claim 1 above.<br><br>The ARC-Fire does not include a spring for biasing the trigger. | See claim 1 above. As addressed at element 1[pre], my analysis is directed to the assembled mechanism, which includes the trigger spring of the AR-15 pattern fire control group biasing the trigger member toward the set position. |

## Claim 6

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 6[pre]. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | The reciprocating bolt means is a means-plus-function limitation governed by §112(f). The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." See also Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. | See element 1[pre]. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 6[a]. the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | The ARC-Fire is operable in a standard semi-automatic mode and in a forced-reset mode. | See element 1[a]. Batzer again concedes this limitation is met. |
| 6[b]. a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | The ARC-Fire does not include a hammer, a disconnector, a fire control mechanism pocket, a hammer pivot axis, or a reciprocating bolt means. | See element 1[b]. |
| 6[c]. a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | The ARC-Fire includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. | See element 1[c]. Batzer again concedes this limitation is met. |
| 6[d]. wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | Since the ARC-Fire does not include a hammer (with the sear surface), the ARC-Fire's trigger sear surface is not in engagement with the missing hammer's sear surface. | See element 1[d]. In the assembled mechanism, the hammer sear surface and the trigger member sear surface are in engagement in the set positions and out of engagement in the released positions. |
| 6[e]. the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The ARC-Fire does not include a disconnector, a hammer, or a fire control mechanism pocket. | See element 1[e]. |
| 6[f]. a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam prevents the trigger member from moving from the set position to the released position, | The ARC-Fire includes a cam having a lobe.<br><br> | See element 1[f] for the first and second positions, which are the rotational positions of the cam.<br><br>In the second position the cam prevents the trigger member from moving from the set position to the released position. As assembled and used as intended in its forced-reset mode, the cam rotates to that position as the bolt drives the lever rearward, and while it remains there the trigger member is held at the set position and cannot be pulled. Batzer confirms as much, stating that in standard semi-automatic mode the lever does not engage the cam, so the cam does not rotate and does not act on the trigger member. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) and may also slide along the axis. The original Complaint, the Amended Complaint, the proposed Second Amended Complaint, and the Luettke Decl. Ex. A viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. C (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents. If the first and second positions are determined by rotation, then the cam does not rotate in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and does not prevent the trigger from moving toward the released position; instead, the cam being in the second position prevents the trigger from moving off the set position only if the ARC-Fire is in forced-reset mode. | |
| 6[g]. whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to move to the set positions so that the user can pull the trigger member to fire the firearm again, and | The ARC-Fire does not include a reciprocating bolt means, a hammer, or a disconnector. If the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. | See element 1[g]. Batzer again describes the recited operation. |
| 6[h]. whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer, movement of the trigger member to the set position, and the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is moved to the first position, allowing the user to pull the trigger member to fire the firearm. | This claim limitation is not entirely clear. Regardless, the ARC-Fire does not include a reciprocating bolt means, a hammer, or a disconnector. As best understood, if the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. | See element 1[h], which addresses Batzer's sequencing argument.<br><br>This limitation confirms the construction set out at element 1[f]. It recites that after the bolt means moves forward into battery, "the cam is moved to the first position, allowing the user to pull the trigger member to fire the firearm." Batzer describes that same operation, stating that when the bolt carrier moves forward into battery it causes the lever to rotate the cam back, unblocking the trigger. Mode selection does not change during a firing cycle, so the first and second positions are the cam's rotational positions. |

## Claim 7

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 7. The trigger mechanism of claim 6, further comprising a spring which biases the trigger member toward the set position. | See claim 6 above.<br><br>The ARC-Fire does not include a spring for biasing the trigger. | See claim 3 above. |

## Claim 9

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 9. The trigger mechanism of claim 6, wherein the trigger member pivots on a transverse trigger axis between set and released positions. | See claim 6 above.<br><br>The ARC-Fire trigger is adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. | Batzer concedes this limitation is met, acknowledging that the ARC-Fire trigger pivots on a transverse trigger member pivot axis between set and released positions. His parenthetical that the pocket is not included is addressed at element 1[pre]. |

## Claim 10

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 10[pre]. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | The reciprocating bolt means is a means-plus-function limitation governed by §112(f). The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device."<br><br>See also Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. | See element 1[pre]. |
| 10[a]. the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | The ARC-Fire is operable in a standard semi-automatic mode and in a forced-reset mode. | See element 1[a]. Batzer again concedes this limitation is met. |
| 10[b]. a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | The ARC-Fire does not include a hammer, a disconnector, a fire control mechanism pocket, a hammer pivot axis, or a reciprocating bolt means. | See element 1[b]. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 10[c]. a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | The ARC-Fire includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. | See element 1[c]. Batzer again concedes this limitation is met. |
| 10[d]. wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | Since the ARC-Fire does not include a hammer (with the sear surface), the ARC-Fire's trigger sear surface is not in engagement with the missing hammer's sear surface. | See element 1[d]. |
| 10[e]. the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The ARC-Fire does not include a disconnector, a hammer, or a fire control mechanism pocket. | See element 1[e]. |
| 10[f]. a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, movement of the cam to the second position causing the trigger member to move from the released position toward the set position, | The ARC-Fire includes a cam having a lobe.<br><br><br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) and may also slide along the axis. The original Complaint, the Amended Complaint, the proposed Second Amended Complaint, and the Luettke Decl. Ex. A viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. C (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents. If the first and second positions are determined by rotation, then the cam does not rotate in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and thus does not cause the trigger | See element 1[f] for the first and second positions, which are the rotational positions of the cam.<br><br>Movement of the cam to the second position causes the trigger member to move from the released position toward the set position. As assembled and used as intended in its forced-reset mode, the bolt drives the lever rearward, rotating the cam to the second position, and the cam lobe drives the trigger member forward to the set position. Batzer confirms as much, stating that in standard semi-automatic mode the lever does not engage the cam, so the cam does not rotate and does not act on the trigger member. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | to move toward the set position; instead, the cam can move to the second position and cause the trigger to move toward the set position only if the cam is in forced-reset mode. | |
| 10[g]. whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to move to the set positions so that the user can pull the trigger member to fire the firearm again, and | The ARC-Fire does not include a reciprocating bolt means, a hammer, or a disconnector. If the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. | See element 1[g]. Batzer again describes the recited operation. |
| 10[h]. whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer and causes movement of the trigger member to the set position, and wherein the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is moved to the first position and the user can pull the trigger member to fire the firearm again. | The ARC-Fire does not include a reciprocating bolt means, a hammer, or a disconnector.

As best understood, if the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. The specification uses "cause" (and variants) to refer to a direct cause (e.g., the bolt carrier directly causing the hammer to pivot, Abstract). Under such a construction, rearward movement of the bolt carrier does not cause the trigger to move to the set position. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. | See element 1[h], which addresses Batzer's sequencing argument, and element 6[h], which addresses the cam returning to the first position as the bolt moves forward into battery.

Batzer's further argument that "causes" must mean direct physical contact is not how a POSITA would read the claim. The claim recites that rearward movement of the bolt means causes movement of the trigger member to the set position, and it does: the bolt drives the lever, which rotates the cam, whose lobe drives the trigger member to the set position. On Batzer's reading the claim would also not be satisfied by the rearward pivoting of hammer he acknowledges, since the bolt carrier acts on the hammer through the same kind of mechanical chain. |

## Claim 11

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 11. The trigger mechanism of claim 10, further comprising a spring which biases the trigger member toward the set position. | See claim 10 above.

The ARC-Fire does not include a spring for biasing the trigger. | See claim 3 above. |

**Claim 14**

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 14[pre]. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." See also Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. | See element 1[pre]. |
| 14[a]. a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | The bolt means is a means-plus-function limitation governed by §112(f). The ARC-Fire does not include a hammer, a disconnector, a fire control mechanism pocket, or a bolt means. | See element 1[b]. A POSITA would understand "bolt means" to connote structure, as addressed at element 1[pre]. |
| 14[b]. a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | The ARC-Fire includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket (which is not included) to pivot on a transverse trigger member pivot axis between set and released positions. | See element 1[c]. Batzer again concedes this limitation is met. |
| 14[c]. wherein the hammer sear surface and trigger member sear surface are in position to engage in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | Since the ARC-Fire does not include a hammer (with the sear surface), the ARC-Fire's trigger sear surface is not in position to engage with the missing hammer's sear surface. | See element 1[d]. |
| 14[d]. the disconnector having a hook for engaging the hammer, and | The ARC-Fire does not include a disconnector or a hammer. | See element 1[e]. |
| 14[e]. a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The ARC-Fire includes a cam having a lobe.<br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) and may also slide along the axis. The original Complaint, the Amended Complaint, the proposed Second Amended Complaint, and the Luettke Decl. Ex. A viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. C (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents. If the first and second | See element 1[f]. The first and second positions are the rotational positions of the cam, and in the second position the cam lobe forces the trigger member toward the set position. Batzer confirms as much, stating that in standard semi-automatic mode the lever does not engage the cam, so the cam does not rotate and does not act on the trigger member. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | positions are determined by rotation, then the cam does not rotate in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and thus does not force the trigger toward the set position; instead, the cam can move to the second position and force the trigger toward the set position only if the cam is in forced-reset mode.<br><br><br>cam    lobe    axis | |
| 14[f]. when in a standard semi-automatic mode, rearward movement of the bolt carrier causes movement of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer sear surface and trigger member sear surface to move into engagement so that the user can pull the trigger member to fire the firearm, and | The "bolt carrier" lacks antecedent basis. Furthermore, the difference (if any) between the "bolt carrier" and the "bolt means" is unclear, adding to the indefiniteness. Regardless, the ARC-Fire does not include a bolt carrier, a bolt means, a hammer, or a disconnector. If the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions and engage so the user can pull the trigger to fire the firearm. | See element 1[g]. A POSITA would understand "bolt carrier" and "bolt means" to refer to the same structure, which in an AR-15 pattern firearm is the reciprocating bolt carrier. |
| 14[g]. when in a forced reset semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm. | The ARC-Fire does not include a bolt means, a hammer, or a disconnector. As best understood, if the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier | See element 1[h], which addresses Batzer's sequencing argument. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. | |

## Claim 15

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 15[pre]. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." See also Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. | See element 1[pre]. |
| 15[a]. a hammer having a sear surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | The hook means and the bolt means are means-plus-function limitations governed by §112(f). The ARC-Fire does not include a hammer, a disconnector, or a bolt means. | See element 1[b]. A POSITA would understand "hook means" and "bolt means" to connote structure, as addressed at element 1[pre]. |
| 15[b]. a trigger means having a sear surface and adapted to move between set and released positions, | The trigger means is a means-plus-function limitation governed by §112(f). The ARC-Fire includes a trigger having a sear surface and adapted to pivot on a transverse trigger member pivot axis between set and released positions. | See element 1[c]. A POSITA would understand "trigger means" to connote structure, as addressed at element 1[pre]. Batzer again concedes the ARC-Fire includes a trigger having a sear surface adapted to move between set and released positions. |
| 15[c]. wherein the hammer sear surface and trigger means sear surface are positioned to engage when the hammer and trigger means are in their set positions and are out of engagement when the hammer and trigger means are in their released positions, | Since the ARC-Fire does not include a hammer (with the sear surface), the ARC-Fire's trigger sear surface is not in position to engage with the missing hammer's sear surface. | See element 1[d]. |
| 15[d]. the disconnector having a disconnector hook means for engaging the hammer hook means, | The ARC-Fire does not include a disconnector or a hammer. | See element 1[e]. A POSITA would understand "disconnector hook means" and "hammer hook means" to connote structure, as addressed at element 1[pre]. |
| 15[e]. a cam adapted to be movable between a first position at which the cam does not force the trigger member into the set position and a second position at which the cam does force the trigger member toward the set position, and | The ARC-Fire includes a cam. | See element 1[f]. The first and second positions are the rotational positions of the cam. In the first position the cam does not force the trigger member into the set position, and in the second position it does. Batzer confirms as much, stating that in standard semi-automatic mode the lever does not engage the cam, so the cam does not rotate and does not act on the trigger member. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) and may also slide along the axis. The original Complaint, the Amended Complaint, the proposed Second Amended Complaint, and the Luettke Decl. Ex. A viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. C (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents. If the first and second positions are determined by rotation, then the cam does not rotate or move in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and thus does not force the trigger toward the set position; instead, the cam can move to the second position and force the trigger toward the set position only if the cam is in forced-reset mode. | |
| 15[f]. a means for selecting between at least standard semi-automatic and forced reset semi-automatic modes, | This is a means-plus-function limitation governed by §112(f) and is thus limited to the corresponding structure disclosed in the specification and its equivalents. The specification discloses that selection of the operative mode (standard semi-automatic or forced-reset) is done by rotating/pivoting a safety selector 110, which has a lever, at one end that can be gripped and rotated by the user's hand, and includes a midportion (along the selector's length) that differs in configuration or cross-section as the selector is rotated in 90-degree increments (namely, where the midportion is rounded/semicircular 112, where the midportion is flat 114, and where the midportion has a rounded narrow section 116 flanked by flat sections). 2:54-57, 6:1-29, 8:43-65, Figs. 2, 4A-8A, 9A, Abstract. The safety selector selects standard semi-automatic mode by rotating the flat and sufficiently wide portion 114 (of the selector) to face the tails 68 of the trigger 38 and the tail 66 of the | A POSITA would understand "a means for selecting between at least standard semi-automatic and forced reset semi-automatic modes" to connote structure, as addressed at element 1[pre]. Mode selectors are standard, well understood components in the firearms art. Batzer concedes the ARC-Fire has a selector with a lever rotated by hand to select a mode. That selector, together with the detent bar, is the means for selecting, and it is mapped as set out in my infringement chart. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | disconnector 60, allowing both to rotate sufficiently. 8:48-54, Figs. 5A-B, 8A-D. The safety selector selects forced-reset mode by rotating until a flat portion (of the selector) faces each tail of the trigger, allowing the trigger to sufficiently rotate, while the rounded extruding section 116 (of the selector) in-between the flat portions faces the tail of the disconnector, blocking the disconnector from rotating. 3:12-15, 8:54-65, 9:28-39, Figs. 6A-B, 9A-D. The ARC-Fire does not include such a means for selecting. The ARC-Fire has a selector with a lever that is rotated (by hand) to select a standard semi-automatic or forced-reset mode, but only some models have 90-degree increments for mode selection. The ARC-Fire does not have a safety selector with a midportion (along its length) that differs in configuration/cross-section as it is rotated in 90-degree increments (corresponding to different modes). The ARC-Fire does not have (a) a safety selector with a wide flat portion facing the two trigger tails and the disconnector tail, or (b) a rounded section facing the disconnector tail and preventing its rotation, flanked by flat portions facing the two trigger tails. Rather, the ARC-Fire cam includes a rounded cavity to receive one trigger tail, a lobe to apply force to that tail, and a tapered cross-section (along the axis) that allows engagement and disengagement with the lever, which has a corresponding tapered cross-section; the selector has a rounded shield portion to cover the cam cavity; and the lever has angled sides for engagement with the detent bar, which has similarly configured angled sides. None of these components are disclosed in the '159 Patent or are equivalent thereto. The disconnector tail does not face or interact with the ARC-Fire cam at all. | |
| 15[g]. when in the standard semi-automatic position, rearward movement of the bolt means causes movement of the hammer such that the disconnector hook means catches the hammer hook means, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to the set positions so that the user can pull the trigger means to fire the firearm, and | The ARC-Fire does not include a bolt means, a hammer, or a disconnector. If the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. | See element 1[g]. Batzer again describes the recited operation. |
| 15[h]. when in the forced reset semi-automatic position, rearward movement of the bolt means causes movement of the | The ARC-Fire does not include a bolt means, a hammer, or a disconnector. As best understood, if the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced | See element 1[h], which addresses Batzer's sequencing argument. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| hammer, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm. | reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. | |

## Claim 16

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 16[pre]. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." See also Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. | See element 1[pre]. |
| 16[a]. a hammer having a sear engagement surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | The hook means and the bolt means are means-plus-function limitations governed by §112(f). The ARC-Fire does not include a hammer, a disconnector, or a bolt means. | See element 1[b]. A POSITA would understand "hook means" and "bolt means" to connote structure, as addressed at element 1[pre]. |
| 16[b]. a trigger means having a sear engagement surface and adapted to move between set and released positions, | The trigger means is a means-plus-function limitation governed by §112(f). The ARC-Fire includes a trigger having a sear engagement surface and adapted to pivot on a transverse trigger member pivot axis between set and released positions. | See element 1[c]. A POSITA would understand "trigger means" to connote structure, as addressed at element 1[pre]. Batzer again concedes this limitation is met. |
| 16[c]. wherein the trigger means and hammer sear engagement surfaces are in position to engage in the set positions of the hammer and trigger means and will not engage in the released positions of the hammer and trigger means, | Since the ARC-Fire does not include a hammer (with the sear engagement surface), the ARC-Fire's trigger sear engagement surface is not in position to engage with the missing hammer's sear engagement surface. | See element 1[d]. |
| 16[d]. the disconnector having a hook means for engaging the hammer hook means, and | The hook means is a means-plus-function limitation governed by §112(f). The ARC-Fire does not include a disconnector or a hammer. | See element 1[e]. A POSITA would understand "hook means" to connote structure, as addressed at element 1[pre]. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 16[e]. a cam movable between a first position and a second position, in the second position the cam forces the trigger member toward the set position, | The ARC-Fire includes a cam.<br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) and may also slide along the axis. The original Complaint, the Amended Complaint, the proposed Second Amended Complaint, and the Luettke Decl. Ex. A viewed the rotation on the axis as meeting the first and second positions, while the Luettke Decl. Ex. C (for the parent U.S. Patent 12,038,247) views the sliding along the axis between the various modes as meeting the first and second positions, thus rendering Plaintiffs' position on this limitation unclear, as the same claim term should be used consistently within related patents. If the first and second positions are determined by rotation, then the cam does not rotate in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and thus does not force the trigger toward the set position; instead, the cam can move to the second position and force the trigger toward the set position only if the cam is in forced-reset mode.<br><br> | See element 1[f]. The first and second positions are the rotational positions of the cam, and in the second position the cam forces the trigger member toward the set position. Batzer confirms as much, stating that in standard semi-automatic mode the lever does not engage the cam, so the cam does not rotate and does not act on the trigger member. |
| 16[f]. when in a standard semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook means catches the hammer hook means, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to their set positions so that the user can pull the trigger means to fire the firearm, and | The ARC-Fire does not include a bolt means, a hammer, or a disconnector. If the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. | See element 1[g]. Batzer again describes the recited operation. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 16[g]. when in a forced reset semi-automatic mode, upon rearward movement of the bolt means, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm. | The ARC-Fire does not include a bolt means, a hammer, or a disconnector. As best understood, if the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch and hold the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook. When the bolt carrier thereafter moves forward into battery, it causes the lever to rotate the cam to the first position, unblocking the trigger and allowing the firearm user to pull the trigger to fire the firearm. | See element 1[h], which addresses Batzer's sequencing argument. |

## Claim 17

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| 17[pre]. A firearm trigger mechanism comprising: | The proposed Second Amended Complaint (ECF No. 20-1) identifies an "ARC-Fire Trigger – AMBI Kit" as the "Second Infringing Device." See also Luettke Decl. & Ex. A (ECF Nos. 29-21, 29-22) (accusing ARC-Fire of infringement). The ARC-Fire is not a complete firearm trigger mechanism, as each consists only of a lever, a cam, a detent bar, a trigger, a primary selector, an ambi selector, and a safety detent, omitting other required components, as noted below. | See element 1[pre]. My analysis is directed to the firearm trigger mechanism as assembled and installed in accordance with AS Designs' install guides. |
| 17[a]. a hammer movable between a set position and a released position, and having a sear engagement surface; | The ARC-Fire does not include a hammer. | See element 1[b]. In the assembled mechanism the hammer of the AR-15 pattern fire control group is movable between set and released positions and has a sear engagement surface. |
| 17[b]. a trigger member having a sear engagement surface, the trigger member being movable between a set position and a released position; | The ARC-Fire includes a trigger having a sear engagement surface and adapted to pivot on a transverse trigger member pivot axis between set and released positions. | Batzer concedes this limitation is met, acknowledging that the ARC-Fire includes a trigger having a sear engagement surface and adapted to pivot between set and released positions. |
| 17[c]. a cam configured to move during cycling of the firearm's action and to contact the trigger member to bias it toward the set position; | The ARC-Fire includes a cam. | Batzer concedes the ARC-Fire includes a cam that may rotate on its axis during cycling of the bolt carrier and may bias the trigger toward the set position when the ARC-Fire is in forced-reset mode.<br><br>This limitation is directed to what the cam is configured to do, and the ARC-Fire cam is configured to do exactly that. That the cam does not bias the trigger member toward the set position in standard semi-automatic mode does not bear on this limitation; |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | <br><br>The cam is designed to be mounted in a fire control mechanism pocket in such a way that it may rotate on the axis (depending on what mode it is in) during cycling of the bolt carrier (which is not provided with the ARC-Fire). The cam does not rotate or move during cycling in the standard semi-automatic mode (because the rotating lever does not engage with the cam) and thus does not bias the trigger toward the set position; instead, the cam may rotate during cycling and bias the trigger toward the set position only if the ARC-Fire is in forced-reset mode. | element 17[g] separately recites the forced reset mode in which it does. |
| 17[d]. a movable blocking means configured to selectively prevent the hammer sear catch surface from engaging with the sear in the set position; | The references to "the sear" and "the hammer sear catch surface" lack antecedent basis, as prior references are to "a sear engagement surface" (on the hammer and the trigger member). It is thus unclear what "the sear" and "the hammer sear catch surface" refer to. The "movable blocking means" is a means-plus-function limitation governed by §112(f) and is thus limited to the corresponding structure disclosed in the specification and its equivalents. The specification does not use this phrase or any variant of "block," which renders it difficult to correlate any disclosed structure to this recited function. Searching the specification for disclosure of structure that prevents the (indefinite and unclear) hammer sear catch surface from engaging with the (indefinite and unclear) sear in the set position, the only relevant disclosure refers to releasing the trigger to allow the sear 56 to engage the sear catch 52, returning the hammer 36 and trigger member 38 to their set positions. 9:23-26. This suggests that the trigger member corresponds to the recited "movable blocking means." But the trigger member is already recited separately above and thus could not correspond to this limitation. With no other corresponding limitation disclosed, this renders this claim indefinite. The Luettke Decl. Ex. A points to the disconnector as allegedly meeting this limitation. But Luettke cites to no portion of the specification as correlating the recited function | A POSITA would understand "movable blocking means" to connote structure. A POSITA would also understand "the sear" and "the hammer sear catch surface" to refer to the sear engagement surfaces recited at elements 17[a] and 17[b], for the reasons set out at element 1[d].<br><br>In the assembled mechanism the disconnector is the movable blocking means. It is movable, and when the hammer is pivoted rearward the disconnector hook catches and holds the hammer hook, which prevents the hammer sear engagement surface from engaging the trigger member sear engagement surface in the set position. Whether the disconnector performs that blocking function is determined by the mode the user selects, as addressed at elements 17[f] through 17[h].<br><br>Batzer's remaining argument is that the kit as shipped omits the disconnector, which is addressed at element 1[pre]. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | and disclosed structure. Neither does he explain how the disconnector is "selected" to prevent or not prevent the hammer sear catch from engaging with the sear in the set position. Even if the disconnector corresponds to this limitation, the ARC-Fire does not include a disconnector. | |
| 17[e]. a mode selector operable by the user to select between at least two modes of operation of the trigger mechanism, including: | The ARC-Fire includes a primary selector and an ambi selector operable by the user to select between at least two modes of operation. | Batzer concedes this limitation is met, acknowledging that the ARC-Fire includes a primary selector and an ambi selector operable by the user to select between at least two modes of operation. |
| 17[f]. a semi-automatic mode, in which the hammer and trigger member sear engagement surfaces are not able engage in the set position during cycling of the firearm's action until the user manually reduces pressure from the trigger member to disengage the blocking means before firing again, regardless of whether the cam moves the trigger member to the set position; and | The phrase "are not able engage in" is grammatically incorrect and unclear. Also, as explained above, the "blocking means" is unclear. The ARC-Fire does not include a hammer, a bolt carrier or other action mechanism, or a disconnector (if that is what "blocking means" refers to). As best understood, if the ARC-Fire cam is installed in a firearm that includes the missing components and set to standard semi-automatic mode, rearward movement of a bolt carrier (after pulling the trigger) may cause rearward pivoting of the hammer such that the disconnect hook might catch the hammer hook and prevent it from pivoting forward to have the hammer sear surface engage with the trigger sear surface as long as the trigger remains pulled (depending on the configuration and operation of the missing components). When the bolt carrier thereafter moves forward into battery, the firearm user would normally need to manually release the trigger to free the hammer from the disconnector to permit the hammer and trigger to pivot to their set positions so the user can pull the trigger to fire the firearm. In this mode, the ARC-Fire cam does not move the trigger to the set position. | Batzer's missing-components argument is addressed at element 1[pre]. A POSITA would read "are not able engage in" as "are not able to engage in." Subject to those points, Batzer describes the recited operation: in standard semi-automatic mode the disconnector hook catches the hammer hook and prevents it from pivoting forward to engage the trigger member sear engagement surface so long as the trigger remains pulled, and the user must manually reduce pressure on the trigger member before firing again. That is what this limitation recites, and it holds regardless of whether the cam moves the trigger member to the set position, as the limitation itself makes clear. |
| 17[g]. a forced reset mode, in which the cam moves during cycling and forcibly biases the trigger member into the set position with the hammer and trigger member sear engagement surfaces engaged, permitting the user to immediately fire again without the user manually releasing pressure on the trigger member; | The ARC-Fire does not include a hammer, a bolt carrier or other action mechanism. If the ARC-Fire cam is installed in a firearm that includes the missing components and set to forced reset mode, rearward movement of the bolt carrier may cause rearward pivoting of the hammer (depending on the configuration and operation of the missing components), which would catch the disconnector hook. Continued rearward movement of the bolt carrier would cause the lever to rotate the cam, thus forcing the trigger member to the set position, which would also cause the disconnector to release the hammer hook and allow the hammer and trigger sear surfaces to engage. However, so long as the cam moves into the position where it forcibly biases the trigger into the set position, the cam does not permit the user to immediately fire again. Rather, the bolt carrier must first move forward into battery and cause the lever to rotate the cam back (away from the position | Batzer concedes the recited operation: in forced reset mode the bolt drives the lever, which rotates the cam, forcing the trigger member to the set position and causing the disconnector to release the hammer hook so that the sear engagement surfaces engage. His remaining points add requirements the claim does not contain. The limitation recites that the mode permits the user to fire again without manually releasing pressure on the trigger member. It does not require that the user be able to fire at any given instant during the cycle. The '159 Patent describes the trigger member being held until the bolt returns to battery, which is the same operation Batzer describes. The limitation also says nothing about how much pressure the user applies. |

| Claim Element | Batzer's Noninfringement Argument | Luettke Reply |
|---|---|---|
| | where it biases the trigger), which would then unblock the trigger tail and allow the firearm user to pull the trigger to fire the firearm. Furthermore, for such a firearm (with the ARC-Fire) to fire again, the user's pressure must be low enough to allow the cam to forcibly release/reset the trigger and rotate it toward the set position; otherwise, if the user maintains a sufficiently high level of pressure to not allow the trigger to be forcibly released by the cam, the firearm will not fire again. | |
| 17[h]. wherein if the cam moves in both modes, the difference in operation between modes is determined by movable selection of the blocking means, thereby selectively either permitting or preventing the hammer and trigger member sear engagement surfaces from engaging when the trigger member is biased by the cam. | As explained above, the "blocking means" is unclear. The ARC-Fire does not include a hammer or a disconnector (if that is what "blocking means" refers to). The ARC-Fire cam moves only in forced-reset mode. It is thus unclear whether the rest of this claim limitation is inapplicable or per se not met. There is no provision for a user to somehow "movably select" the disconnector in a firearm having an ARC-Fire (unlike the configuration disclosed in the '159 Patent). Nor does the disconnector operate differently in the two modes; rather, in both modes, the disconnector hook catches the hammer hook and eventually releases it. Furthermore, the cam can bias the trigger only in forced-reset mode, not in the standard semi-automatic mode; and since the cam does not contact the disconnector, it does not cause the disconnector to somehow permit or prevent engagement of the hammer and trigger sear surfaces while the cam biases the trigger. | As addressed at element 17[d], the blocking means is the disconnector.<br><br>Batzer states that the ARC-Fire cam moves only in forced reset mode. On that premise the condition this limitation states, "if the cam moves in both modes," is not triggered, and the limitation imposes no further requirement.<br><br>In any event, selecting forced reset mode causes the cam to force the trigger member to the set position during cycling. Because the disconnector travels with the trigger member, the disconnector hook is carried clear of the hammer hook and the sear engagement surfaces engage. In standard semi-automatic mode the disconnector is not so moved, and it holds the hammer until the user reduces pressure on the trigger member. That difference in the operation of the blocking means between the two modes is what this limitation recites. |