## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM** **MDL 3176** |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., Plaintiffs, v. AS DESIGNS, LLC, MATTHEW S. KARLOVIC, CALVIN OLSON and JOHN DOE, an individual using the alias "s3igu2" and/or "Seagoo Threetwo," Defendants. | Civil Action No. 4:26-cv-00370-ALM |

## PLAINTIFFS' REPLY IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

**Page**

I.  RARE BREED IS SUFFERING IRREPARABLE HARM ............................................... 1

    A.  As Designs Sold Nearly ▮▮▮▮▮▮ of the Accused Units After Rare Breed Told It to Stop, and It Holds ▮▮▮ More....................................................................... 2

    B.  As Designs Cannot Satisfy a Judgment, and ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ ............................................................. 3

    C.  As Designs' Own Evidence and Its Designee's Testimony Supply the Causal Nexus ................................................................................................. 6

    D.  The Remaining Objections Attack Theories Rare Breed Need Not Prove, and Rare Breed Did Not Delay ..................................................................... 7

II.  RARE BREED IS LIKELY TO SUCCEED ON THE MERITS ...................................... 8

    A.  AS Designs Has Not Shown Likelihood of Non-Infringement ............................ 8

        1.  On the '538 Patent, AS Designs Concedes That the Super Safety Infringes, and Its Improper Inventorship Defense Fails............................................... 8

        2.  The Kit-as-Shipped Argument Answers a Contention Rare Breed Does Not Make ............................................................................................ 9

        3.  The Super Safety Cam Moves Both Ways Dr. Batzer Identifies, and Each Satisfies the Limitation ................................................................. 10

        4.  Dr. Batzer's § 112(f) Designations Cannot Survive His Own Invalidity Analysis............................................................................................. 11

    B.  AS Designs Has Not Raised a Substantial Question of Invalidity....................... 11

        1.  Several Grounds Depend on a Passage of Blakley That Discloses No Structure............................................................................................. 11

        2.  The Remaining References Restrain a Hammer or Disclose a Single Mode ................................................................................................. 12

        3.  The Combinations Rest on Conclusory Assertions and Would Not Work 12

        4.  The Objective Evidence Confirms What the References Show ............... 13

III.  THE BALANCE OF THE EQUITIES FAVORS THE REQUESTED INJUNCTIVE RELIEF ................................................................................................................. 14

IV.  THE REQUESTED PI WOULD NOT HARM THE PUBLIC INTEREST.................... 14

V.  AS DESIGNS' $20 MILLION BOND FIGURE IS UNTETHERED TO RULE 65(C) . 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Sandoz, Inc.*,
544 F.3d 1341 (Fed. Cir. 2008)....................................................................................7

*ABC IP, LLC v. Hoffman*,
No. 1:25-cv-00389 (E.D. Tenn.), Dkt. 26 (Jan. 23, 2026), Dkt. 46...................................12, 14

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012).....................................................................................12

*Alloc, Inc. v. Pergo, LLC*,
2009 WL 1939034 (E.D. Wis. July 2, 2009) ........................................................................11

*Apple Inc. v. Samsung Elecs. Co.*,
678 F.3d 1314 (Fed. Cir. 2012) (stating the district court "should not have
faulted Apple for not filing suit as early as 2007, since Apple's design patents
had not issued as of that date.") ....................................................................................7

*Apple Inc. v. Samsung Elecs. Co.*,
735 F.3d 1352 (Fed. Cir. 2013)....................................................................................4, 6

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015)......................................................................................15

*Aspen Tech., Inc. v. M3 Tech., Inc.*,
569 F. App'x 259 (5th Cir. 2014) ...................................................................................5

*Atrius Dev. Grp. Corp. v. ABC IP LLC*,
IPR No. 2025-1473 .................................................................................................12

*Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.*,
132 F.3d 701 (Fed. Cir. 1997).....................................................................................14

*Bio-Rad Lab'ys v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020).....................................................................................6

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)................................................................................................10

*Continuum Co. v. Incepts, Inc.*,
873 F.2d 801 (5th Cir. 1989) ........................................................................................5

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*,
 960 F.3d 549 (9th Cir. 2020) ..............................................................................................14

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
 567 F.3d 1314 (Fed. Cir. 2009)...........................................................................................13

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
 717 F.3d 1336 (Fed. Cir. 2013).........................................................................................3, 7

*Ethicon, Inc. v. U.S. Surgical Corp.*,
 135 F.3d 1456 (Fed. Cir. 1998)..............................................................................................9

*Fox Factory, Inc. v. SRAM, LLC*,
 944 F.3d 1366 (Fed. Cir. 2019)...........................................................................................13

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*,
 790 F.3d 1369 (Fed. Cir. 2015).............................................................................................8

*Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*,
 383 F.3d 1352 (Fed. Cir. 2004).............................................................................................9

*Genband US LLC v. Metaswitch Networks Corp.*,
 861 F.3d 1378 (Fed. Cir. 2017)..............................................................................................6

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
 438 F.3d 1354 (Fed. Cir. 2006)...........................................................................................10

*In re Gordon*,
 733 F.2d 900 (Fed. Cir. 1984).............................................................................................13

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
 91 F.3d 1580 (Fed. Cir. 1996).............................................................................................11

*Hybritech Inc. v. Abbott Lab'ys*,
 849 F.2d 1446 (Fed. Cir. 1988)...........................................................................................14

*Innogenetics, N.V. v. Abbott Lab'ys*,
 512 F.3d 1363 (Fed. Cir. 2008)...........................................................................................12

*Janvey v. Alguire*,
 647 F.3d 585 (5th Cir. 2011) .................................................................................................5

*KSR Int'l Co. v. Teleflex Inc.*,
 550 U.S. 398 (2007)..............................................................................................................12

*Leo Pharm. Prods., Ltd. v. Rea*,
 726 F.3d 1346 (Fed. Cir. 2013)...........................................................................................13

iii

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
   848 F.3d 1358 (Fed. Cir. 2017)................................................................................2, 14

*Mintz v. Dietz & Watson, Inc.*,
   679 F.3d 1372 (Fed. Cir. 2012)....................................................................................13

*Motiva Pats., LLC v. Sony Corp.*,
   408 F. Supp. 3d 819 (E.D. Tex. 2019).........................................................................10

*Natera, Inc. v. NeoGenomics Lab'ys, Inc.*,
   106 F.4th 1369 (Fed. Cir. 2024) ...................................................................................8

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011)......................................................................................1

*Tinnus Enters., LLC v. Telebrands Corp.*,
   846 F.3d 1190 (Fed. Cir. 2017)......................................................................................7

*Titan Tire Corp. v. Case New Holland, Inc.*,
   566 F.3d 1372 (Fed. Cir. 2009)......................................................................................8

*Trebro Mfg., Inc. v. FireFly Equip., LLC*,
   748 F.3d 1159 (Fed. Cir. 2014)..................................................................................1, 2

*In re Van Os*,
   844 F.3d 1359 (Fed. Cir. 2017)....................................................................................12

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015) (en banc)...................................................................11

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
   782 F.2d 995 (Fed. Cir. 1986)......................................................................................14

**Statutes**

28 U.S.C. § 517..................................................................................................................14

**Other Authorities**

Federal Rules of Civil Procedure Rule 65(c) .............................................................5, 15

AS Designs' irreparable harm arguments rest on one premise: that this is just a money case, and money can wait. Discovery has proven that premise wrong twice over. AS Designs sold roughly ▮▮▮▮▮ of its ▮▮▮▮ accused units after Rare Breed told it to stop, still holds ▮▮▮▮ more, and keeps booking dealer orders. AS Designs' designee admitted that any judgment would have to come solely from AS Designs, yet AS Designs' two owners withdraw money at will, nearly draining the company and ▮▮▮▮▮▮▮▮. That is an ongoing transfer of market share that no later accounting can restore.

On the remaining issues, AS Designs does not dispute that the Super Safety infringes the '538 Patent, despite its inventorship witness swearing the opposite nine months ago, and its invalidity ground rests on a passage every forum to consider it has rejected. Having built its business after notice of infringement, AS Designs cannot now complain that an injunction would hurt, and the United States agrees the public interest favors one. The Court should enjoin further sales and set a nominal bond, if any, not the $20 million it invents from gross margin.

## I.    RARE BREED IS SUFFERING IRREPARABLE HARM

AS Designs sells forced-reset triggers built to the design Plaintiffs ("Rare Breed") patented, well below Rare Breed's prices, into the market Rare Breed built. Eichmann Reply Decl. ("ERD") ¶¶ 32, 58. Every sale displaces a Rare Breed sale, taking a customer who may not need another trigger for years—if ever. *Id.* ¶¶ 11, 38–41. AS Designs answers with a single, repeated theme: the harm can be calculated and paid later. Dkt. 50 ("Opp.") at 8–23.

That core argument is legally incorrect and does not defeat irreparable harm. A damages award is adequate only if it captures what the patentee is losing *and* the infringer can pay it. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155–56 (Fed. Cir. 2011) (award must be "a meaningful one in light of the financial condition of the infringer"); *Trebro Mfg., Inc. v. FireFly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014) (lost market share and customers are not likely

to be recovered). The record forecloses both. *See* ERD ¶ 194.

Discovery has confirmed irreparable harm. In summary, first, the harm is ongoing and will continue: AS Designs sold roughly ▮▮▮▮▮ of its ▮▮▮▮ accused units after Rare Breed's cease-and-desist letter, ERD ¶¶ 7, 133; holds ▮▮▮ more, *id.* at ¶¶ 53, 109, 134; and booked ▮▮▮▮▮▮ in new dealer orders after Rare Breed moved, *id.* at ¶¶ 44, 96. Second, no damages award will be collectable: AS Designs' owners withdraw its revenue at will and have taken more than the company is worth, leaving ▮▮▮▮▮ in net equity against ▮▮▮▮▮ in accused sales. *Id.* at ¶¶ 36, 83. Third, AS Designs' own evidence supplies the causal nexus: the accused products generate ▮▮ percent of its revenue, *id.* at ¶¶ 13, 32, 101, and are the patented mechanism. Fourth, its remaining objections attack reputational and first-mover theories Rare Breed need not prove, and Rare Breed moved six weeks after the '538 and '159 Patents issued—so AS Designs' delay argument also fails.

### A.    As Designs Sold Nearly ▮▮▮▮▮ of the Accused Units After Rare Breed Told It to Stop, and It Holds ▮▮▮ More

AS Designs argues that because the parties compete directly with no non-infringing substitutes, Rare Breed's damages fit the *Panduit* model and are adequate. Opp. 10–11. On that reasoning, no patentee practicing its invention against a direct competitor could obtain an injunction because the closer the competition the easier the arithmetic. *Trebro* rejected that: an ability to estimate price, per-unit profit, and volume "does not automatically mean money damages are adequate," because "a loss of market share and customers is a loss that [the patentee] is not likely to recover." *Trebro Mfg., Inc. v. FireFly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014). There, as here, every sale by the new entrant was "essentially a lost sale." *Id.* The test is quantifiability of losing long-term customers, not mere computability, and the direct competition here makes the injury irreparable rather than compensable. *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d

2

1358, 1368 (Fed. Cir. 2017); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013); ERD ¶¶ 16-22, 50-56.

Here, the scale is AS Designs' own interrogatory response: ███ accused units sold from December 2024 through May 2026, on products its designee confirmed are "those that are at issue in this case." Ex. U (Karlovic Dep.) at 29:6–16; Ex. V (Karlovic Dep. Ex. 5, ASD 000046); ERD ¶ 7. Of those, ███—roughly ███—were sold in August 2025 or later, the month Rare Breed hand-delivered its cease-and-desist letter, and Mr. Karlovic agreed those sales were made with awareness of the infringement allegations. Ex. U at 33:6–34:14; 34:24–35:6; ERD ¶¶ 133, 153. A patentee does not suffer less harm because the infringer accelerated after notice.

The displacement is also unfinished. The same response reports ███ units of accused inventory on hand—stock awaiting buyers, not a projection—and AS Designs launched a new product generation, ARC-Fire V2, in the month this Motion was filed. Ex. V; ERD ¶¶ 8, 53, 96, 109, 134. It says further "products in development . . . are lowers compatible with the accused systems." Dkt. 50-1, ¶ 25. And its dealer log records ███ orders worth ███ from ███ dealers placed after Rare Breed moved, running through July 23, 2026—two weeks after its opposition. Ex. W (Karlovic Dep. Ex. 11, ASD 000438); ERD ¶¶ 44, 96–97. What AS Designs calls a compensable accounting entry is an ongoing transfer of market share. ERD ¶¶ 138–141.

### B.    As Designs Cannot Satisfy a Judgment, and ███████████████

AS Designs' ability to pay argument did not survive its own designee. It told the Court that its "actual operations refute any suggestion that it is a judgment-proof shell": it retains ███ percent of revenue as cash and so allegedly "has the capacity to satisfy a reasonable-royalty judgment." Opp. 21, 23; *cf.* ERD ¶¶ 77–82. Asked where a judgment would be paid from, Mr. Karlovic answered that it ███████████████████████

3

▇▇▇▇▇▇ Ex. U at 131:13–20; 133:18–22. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, *id.* 133:24–134:3, and its asset schedule ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *id.* 135:21–136:2; ERD ¶ 87.

That schedule makes the arithmetic plain. As of April 30, 2026, total assets were ▇▇▇▇▇▇ against ▇▇▇▇ in liabilities, including ▇▇▇▇ of sales tax payable that will be satisfied before any judgment creditor. Ex. X (Karlovic Dep. Ex. 10, ASD 000002); Ex. U at 45:10–12; ERD ¶ 83. Net equity is ▇▇▇▇. That is what stands behind a judgment on ▇▇▇▇▇ of accused sales, ERD ¶ 36 & n.29, and over ▇▇▇▇ in lost profits to Rare Breed. Even if AS Designs had some ability to pay, that would not make the remedy adequate. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1369 (Fed. Cir. 2013) ("*Apple III*"); ERD ¶¶ 97–99, 192. Factoring AS Designs' willfulness into the equation only worsens the inadequacy. Ex. U at 33:6–34:14; 34:24–35:6.

The ▇ percent is the problem, not the answer. A company that has taken in ▇▇▇▇ at a ▇▇▇▇ gross margin has kept ▇▇▇▇ in cash. Dkt. 50-1, ¶¶ 20–21; ERD ¶ 83. ▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. X; Ex. U at 22:5-16, 41:10–42:5; ERD ¶ 89. ▇▇▇▇▇▇▇▇▇▇▇▇ Ex. U at 42:8, ▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. X; ERD ¶ 90. ▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. U at 85:17-88:15; Ex. Z (Karlovic Dep. Ex. 16).

Indeed, AS Design's owners follow no withdrawal rule. ▇▇▇▇▇▇▇▇▇▇

4

████████████████████████████████████████ Ex. U at 134:4–7; ERD ¶ 91. ████

████████████████████████████████████████████████ Ex. U at 134:8–16, ██████████████████████████████████████████, *id.* 85:18–86:7; 88:17–22. ██████████████████████████

█████████████████████████████████████████████████

████████████████████████████ *Id.* 62:24–63:11; 91:18–92:20; 95:23–98:17; ERD ¶ 91. ███

█████████████████████████████████████████████████

██████████████████████████ Ex. U at 99:24–100:1.

Notably, the money moves when AS Designs' legal risk increases. ████████████

█████████████████████████████████████████████████

███████████████████████████████ *Id.* 87:14–88:6. ████████

█████████████████████████████████████████████████

█████████████████████████████████████████████ *Id.* 89:8–90:8; 90:25–91:6. The withdrawals then continued. Ex. Y (Karlovic Dep. Ex. 18); ERD ¶ 192.

The point is not that AS Designs is insolvent today. ████████████████

██████████████████████████████████████████████, and that is when a damages remedy becomes inadequate. *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 273 (5th Cir. 2014); *see Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (inability to collect if assets are dissipated is itself a threat of irreparable harm); ERD ¶¶ 88, 97. AS Designs' offer of security "tailored to proven risk," Opp. 22, concedes the premise, and Rule 65(c) runs the other way: it secures the defendant against a wrongful injunction, not the patentee against an infringer's insolvency. *Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989).

5

C.    **As Designs' Own Evidence and Its Designee's Testimony Supply the Causal Nexus**

Causal nexus asks only for "some connection" between the patented feature and demand, not that the feature be the sole driver, *Apple III*, 735 F.3d at 1361, 1364, and "may have little work to do" where the accused product "contains no feature relevant to consumers' purchasing decisions other than what the patent claims," *Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1384 n.2 (Fed. Cir. 2017). Here, the Super Safety and the ARC-Fire are forced-reset trigger devices—the same mechanisms to which the asserted claims are drawn. Dkts. 29-22 to 29-28. AS Designs also concedes the accused products have generated ███ percent of all revenue, with "no other product line that could meaningfully mitigate or redirect" those sales. Dkt. 50-1, ¶¶ 20, 25; *see Bio-Rad Lab'ys v. 10X Genomics Inc.*, 967 F.3d 1353, 1377–78 (Fed. Cir. 2020); *accord* ERD ¶¶ 13, 32, 101, 109.

Mr. Karlovic's testimony confirms the causal nexus. Asked whether "price is a factor in a customer's decision to purchase an accused AS Designs's product rather than a Rare Breed product," he answered, "Correct." Ex. U at 117:10–13. He agreed AS Designs products "could substitute for a Rare Breed trigger." *Id.* 115:21–25; ERD ¶¶ 9, 34, 62. That undermines his declaration's statement that customers switch "for reasons unrelated to price." Dkt. 50-1, ¶ 12. Nor can AS Designs have it both ways: to oppose irreparable harm it describes a two-supplier market with no non-infringing substitutes, and to oppose causation it describes a differentiated market in which modularity and brand drive purchases. Opp. 10–12. A market cannot be substitutable enough that Rare Breed would have made every AS Designs sale and differentiated enough that they would have made none. ERD ¶¶ 23–24, 28.

AS Designs' price-erosion attack fails on the same ground. AS Designs says Rare Breed's reduction from $499 to $450 cannot be traced to it because the ARC-Fire had not launched when

6

the decision was made. Opp. 13–14. But Rare Breed did not have the field to itself: the Super Safety had launched, it is accused, and Mr. DeMonico identifies it as a cause. DeMonico Decl. ¶ 43; ERD ¶¶ 64–65. Erosion already underway from other sellers does not negate the harm a new infringing entrant inflicts. *Abbott Lab'ys v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008). Nor is the customer base AS Designs has taken hypothetical: its dealer log identifies ▮ dealer accounts, ▮ of which placed a first order after the August 2025 letter, on a business it "designed . . . to support dealer participation." Ex. W; Dkt. 50-1, ¶ 23; ERD ¶¶ 33, 43.

## D. The Remaining Objections Attack Theories Rare Breed Need Not Prove, and Rare Breed Did Not Delay

AS Designs' attacks on reputational harm and first-mover advantage answer claims Rare Breed need not press. Exclusivity is itself "an intangible asset that is part of a company's reputation," and the Federal Circuit affirmed an injunction from this District on that theory. *Douglas Dynamics*, 717 F.3d at 1344–45; *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205–07 (Fed. Cir. 2017); ERD ¶¶ 150–152. That Rare Breed enjoyed a first-mover advantage after its 2020 launch, Opp. 19, says nothing about the '538 and '159 Patents, which issued in 2026. ERD ¶¶ 125–131, 148. Rare Breed does not press a dealer lock-in theory. And none is necessary: AS Designs' concession that the '538 Patent covers the accused Super Safety, Dkt. 51, ¶ 126, a defendant that cannot satisfy a judgment, and owners who withdraw the revenue as it arrives are enough.

Delay also runs from issuance of the asserted patent, not from when the patentee first saw the accused product. *Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012) (stating the district court "should not have faulted Apple for not filing suit as early as 2007, since Apple's design patents had not issued as of that date."). Two of the Asserted Patents did not exist when AS Designs says Rare Breed should have moved: the '538 issued January 20, 2026, the '159

7

on March 17, 2026. Dkt. 51, ¶¶ 83, 90. Rare Breed moved six weeks later, shortly after these actions were centralized here. Seven months from issuance was reasonable in *Natera, Inc. v. Neo-Genomics Lab'ys, Inc.*, 106 F.4th 1369, 1380 (Fed. Cir. 2024); six weeks is not delay here.

## II.   RARE BREED IS LIKELY TO SUCCEED ON THE MERITS

A patentee must show that it will likely prove infringement of at least one valid claim and will likely withstand the challenges to validity. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379–80 (Fed. Cir. 2009). AS Designs bears the initial burden of coming forward with an invalidity defense; Rare Breed must then show it lacks substantial merit. *Id.*; *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369 (Fed. Cir. 2015). Rare Breed prevails as to both showings.

AS Designs' opposition brief does not identify a single noninfringement defense or a single ground of invalidity. Instead, it relegates its entire response to the declaration of Dr. Stephen Batzer and that declaration's 20 exhibits, telling the Court only that "for the detailed reasons explained" there, the accused products do not infringe and "the asserted claims of each patent are invalid." Opp. 6-7; Dkt. 51. Rare Breed has nonetheless responded to every contention Dr. Batzer raises. As to noninfringement, Rare Breed submits the supplemental declaration of Brian Luettke. As to invalidity, Rare Breed submits the declaration of Dr. Joshua Harrison, which addresses each of the 14 grounds Dr. Batzer asserts across the four asserted patents. Rare Breed has shown that neither AS Designs' brief nor Dr. Batzer's declaration raises a substantial question on either issue.

### A.   AS Designs Has Not Shown Likelihood of Non-Infringement

#### 1.   On the '538 Patent, AS Designs Concedes That the Super Safety Infringes, and Its Improper Inventorship Defense Fails

AS Designs concedes that the Super Safety infringes the '538 Patent. Opp. 6–7; Dkt. 51, ¶ 126. AS Designs' main defense is alleged improper inventorship argument based on a declaration

of alleged inventor Timothy Hoffman. Dkt. 51, ¶¶ 152-61; Dkt. 52-13. Dr. Batzer supplies no independent basis for the inventorship defense, but rather relies on Hoffman's declaration. Dkt. 51, ¶¶ 153, 156.

Mr. Hoffman has also sworn the other way. On November 10, 2025, he signed a statement confirming that he is not an inventor of the invention described in Application No. 18/968,984, and that Cameron Smith is its "true and sole inventor." Smith Decl., Exs. 2-3. He signed voluntarily in Mr. Smith's presence, and DocuSign records, text messages, and a timestamped photograph corroborate the execution. *Id.* ¶¶ 14-17 & Exs. 3-6. Mr. Smith signed a declaration on October 31, 2025, later submitted to the Patent Office, swearing to his sole inventorship, and swears to it again here. *Id.* ¶¶ 4-5 & Ex. 1.

AS Designs thus offers a swearing contest in which its Mr. Hoffman now swears the other way, after he is accused of infringement and already enjoined from selling Super Safeties. Inventorship requires clear and convincing evidence, and an alleged inventor's testimony cannot suffice alone; it requires corroboration. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998). Crediting one witness over the other does not close the gap, because a credibility determination "does not itself rise to the level of clear and convincing evidence." *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1382 (Fed. Cir. 2004). Uncorroborated testimony from an enjoined competitor who signed the opposite nine months ago raises no substantial question.

### 2. The Kit-as-Shipped Argument Answers a Contention Rare Breed Does Not Make

For the remaining three patents that AS Designs does not concede are infringed, Dr. Batzer's answer is that the Super Safety and ARC-Fire kits ship without a hammer, disconnector, bolt carrier, or fire control pocket. Rare Breed agrees the kits are not the claimed mechanism as

9

boxed. It comes into existence on installation, and the purchaser who installs it directly infringes. This is classic indirect infringement.

*Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363-64 (Fed. Cir. 2006), governs what follows. Where a seller ships components with instructions teaching the patented assembly, a customer's compliance may be inferred circumstantially, and the burden shifts to the seller to show otherwise. *Id.* Those facts are undisputed: each kit is a set of purpose-designed components dimensioned for the single configuration AS Designs' install guides describe, and Dr. Batzer identifies no alternative assembly. Luettke Decl., Ex. H, I, J. Courts here treat such documentation as evidence of both intent and the resulting direct infringement. *Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 831-33 (E.D. Tex. 2019). And AS Designs' belief that the patents are invalid is no answer. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644–45 (2015). Dr. Batzer concedes the assembled mechanism supplies the recited trigger member and sear and operates in both modes. *See, e.g.*, Luettke '784 Chart at 1[c]–1[d]; '247 Chart at 15[b]; '159 Chart at 1[a], 1[c].]

### 3. The Super Safety Cam Moves Both Ways Dr. Batzer Identifies, and Each Satisfies the Limitation

Regarding the Super Safety, Dr. Batzer's argument is not that the cam limitation is unmet but that Rare Breed has identified two ways it is met. Batzer Decl., Ex. 4 at 2. That is not a noninfringement argument—it is infringement. The claims recite a cam "movable between a first position and a second position" and define the second by what the cam does there. Dr. Batzer applies that definition himself, and nothing restricts the movement to one kind. Both are present: the cam rotates as the returning bolt carrier drives the lever, and it moves axially when the user selects the mode. Luettke '247 Chart at 15[e].

10

### 4.    Dr. Batzer's § 112(f) Designations Cannot Survive His Own Invalidity Analysis

Dr. Batzer designates "locking member"—and, in the '159 patent, "bolt means," "trigger means," and "hook means"—as means-plus-function limitations. None of the '784 patent's terms uses "means," so the presumption runs against him, and he bears that burden. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (en banc). "Member" is not a nonce word absent functional "for" language, which claim 1 lacks; it instead recites, as shown above, structural mounting and movement. *Alloc, Inc. v. Pergo, LLC*, 2009 WL 1939034, \*14–18 (E.D. Wis. July 2, 2009) (same term). The '159 terms fare no better for him: each names a component well understood in the art. *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) ("[T]hat the term [detent], as the name for structure, has a reasonably well understood meaning in the art."). The decisive point is that Dr. Batzer does not apply his own construction: for invalidity he maps "locking member" onto Daley's automatic sear, which restrains a hammer and never contacts a trigger. Batzer Decl., Ex. 7 at 1, Ex. 8 at 7. A term cannot be confined to a spring-biased bar on a pin for infringement and expanded to a hammer sear for invalidity.

### B.    AS Designs Has Not Raised a Substantial Question of Invalidity

One ground fails at the threshold. Ground 1 against the '538 patent rests on a provisional application never published, unretrievable from USPTO, and never produced. Dr. Batzer's footnote calls it prior art because it predates the priority date. That is not the standard.

### 1.    Several Grounds Depend on a Passage of Blakley That Discloses No Structure

Five grounds across three patents rest on a passage at column 11 of Blakley '723 purported to describe a selectable standard semi-automatic mode. AS Designs asks this court to credit an argument that every other forum to consider it has rejected. The examiner called Blakley the closest prior art and allowed the '247 claims because it discloses no mechanism operable in a standard

11

semi-automatic mode, then held the same when allowing the '159 patent. Harrison Decl. ¶¶ 79. The Eastern District of Tennessee rejected the identical argument and enjoined. *ABC IP, LLC v. Hoffman*, No. 1:25-cv-00389 (E.D. Tenn.), Dkt. 26 at 4 n.1 (Jan. 23, 2026), Dkt. 46. And the petitioner's own declarant acknowledged that Blakley's figures and specification do not clearly support a three-position reading; institution was denied. *Atrius Dev. Grp. Corp. v. ABC IP LLC*, IPR No. 2025-1473, Paper 1 at 14 (P.T.A.B. Aug. 29, 2025); *id.*, Paper 20 (P.T.A.B. Feb. 18, 2026). Mr. Blakley himself, in the Background of his later '247 patent, attributed to the '723 only the forced-reset function. '247 Patent, 2:04–2:13.

### 2. The Remaining References Restrain a Hammer or Disclose a Single Mode

Stoner's third condition is automatic fire: the user holds the trigger and the mechanism fires repeatedly, the opposite of a mode in which the user pulls for each round. Dr. Batzer's own chart concedes Stoner is not operable in a forced-reset mode. Batzer Decl., Ex. 14 at 10. Stakes' assisted-reset mode is the *standard* semi-automatic operation claim 15 recites: the disconnector captures the hammer after every shot and the user must release pressure before firing again. And the Tommy materials describe a hammer that resets the trigger and a locking bar that blocks it. Batzer Decl., Ex. 13 at 10.

### 3. The Combinations Rest on Conclusory Assertions and Would Not Work

KSR did not dispense with the requirement of an articulated reason to combine; it directed that the reasoning be explicit. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). Conclusory testimony supplies none. *Innogenetics, N.V. v. Abbott Lab'ys*, 512 F.3d 1363, 1373 (Fed. Cir. 2008); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327–28 (Fed. Cir. 2012). Invoking KSR's language about substituting known elements, without a reason for the substitution, is no different from asserting the conclusion. *In re Van Os*, 844 F.3d 1359, 1361–62 (Fed.

12

Cir. 2017). That is most of what Dr. Batzer offers. The combinations also fail on their own terms. Adding Blakley's bolt-driven cam to Stoner would force the trigger to its set position on every cycle, eliminating the standard semi-automatic mode claim 15 requires, and neither reference supplies a means of disabling it. A modification rendering the primary reference unsuitable for its purpose supplies no suggestion of its desirability, *In re Gordon*, 733 F.2d 900, 902 (Fed. Cir. 1984), and predictability requires that the combination would have worked, *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326 (Fed. Cir. 2009).

His stated reasons compound the problem. For one combination he says the ground "protects against a challenge" to the cam limitation—a reason the claim would be met, not a reason a skilled artisan would have acted. Elsewhere the benefit he claims is that the hooks would no longer contact during forced-reset cycling, which is the limitation claim 15 recites. A benefit that restates the claim is no motivation; it uses the invention to define the problem the invention solves. *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1377 (Fed. Cir. 2012).

### 4. The Objective Evidence Confirms What the References Show

Objective indicia guard against hindsight. *Id.* at 1378. Rare Breed proves nexus directly rather than by presumption: the evidence below is attributable to the claimed combination—a drop-in mechanism selectable among safe, standard semi-automatic, and forced reset operation. *See Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1378 (Fed. Cir. 2019).

The need was technological, not merely regulatory: the 1986 registry closure set the constraint, but meeting it required a mechanical solution the art could not reach. Mr. Blakley called the improvement desirable in 2003 and never achieved it. The field turned instead to binary triggers, bump stocks, and crank actuators, and no mechanism offering all three modes appeared before 2022. The interval is probative because it accompanies failure of others. *Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1357–59 (Fed. Cir. 2013).

13

## III.    THE BALANCE OF THE EQUITIES FAVORS THE REQUESTED INJUNCTIVE RELIEF

AS Designs' hardship argument rests on that same ██ percent, which describes *Windsurfing*, not hardship: "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction . . . destroys the business so elected." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). AS Designs did not merely keep selling after the August 9, 2025 letter, the *Hoffman* injunction, and suit; it built almost the whole business afterward, having downloaded Hoffman's design files. Ex. U at 126:21–23. Losses flowing from a defendant's "own calculated risk in selling a product with knowledge of" the patent do not tip the balance, *Celsis*, 664 F.3d at 931, and a defendant is not shielded because an injunction may end a business concentrated in accused products, *Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed. Cir. 1997). Any harm from a wrongful injunction is secured by the bond; what Rare Breed loses meanwhile is not. *Metalcraft*, 848 F.3d at 1369.

## IV.    THE REQUESTED PI WOULD NOT HARM THE PUBLIC INTEREST

The United States has spoken on this factor. In litigation over these patents it advised the court that the "public interest should be weighed heavily in plaintiffs' favor." Dkt. 29-20 at 7. A statement of interest under 28 U.S.C. § 517 does not bind the Court but merits serious consideration, particularly on public safety. *Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 569 (9th Cir. 2020). AS Designs answers the Department of Justice settlement, Opp. 27; it does not answer the government's statement of interest. Its own authority does not help it either: *Hybritech* affirmed a preliminary injunction as to most accused products, withholding it only as to cancer and hepatitis test kits the public needed. *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1458 (Fed. Cir. 1988). AS Designs identifies no comparable need, and the one category it names— stripped MP5 lowers with no accused component—Rare Breed has agreed to exclude. Where the

14

patentee practices its own invention, the public interest "nearly always weighs in favor of protecting property rights." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015).

**V.      AS DESIGNS' $20 MILLION BOND FIGURE IS UNTETHERED TO RULE 65(c)**

Rule 65(c) secures the costs and damages of a wrongful injunction during its pendency—not a defendant's lifetime revenue. AS Designs' demand rests on gross margin, which is not profit, and assumes an injunction of indefinite duration with no mitigation, offering no lost-profit figure and no estimate of duration. *See Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (Fed. Cir. 2006). Its own records undermine AS Designs' proposal: net income of ▓▓▓▓▓▓▓▓ for January through April 2026, roughly ▓▓▓▓▓ a month. Ex. X. An injunction would defer much of that rather than destroy it, because the ▓▓▓▓ units of accused inventory keep their value. No or nominal security would be appropriate, and AS Designs provides no sound basis for its figure.

15

DATED: August 6, 2026

Respectfully submitted,

*/s/ Matthew A. Colvin*

Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
        bruce@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Glenn D. Bellamy (pro hac vice forthcoming)
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

*Attorneys for Plaintiffs*
*ABC IP, LLC and Rare Breed Triggers, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 6, 2026, to all counsel of record via electronic mail.

*/s/ Matthew A. Colvin*
Matthew A. Colvin

## CERTIFICATE OF MOTION TO FILE UNDER SEAL

The undersigned hereby certifies that a motion for leave to file the following documents under seal has been filed with the Court as Dkt. 62 prior to the submission of these documents.

- This Motion

- The Declaration of Joshua C. Harrison

- The Declaration of Richard Eichmann and Appendices 1 and 2

- The Exhibits U-Z in Support of the Declaration of Matthew A. Colvin

*/s/ Matthew A. Colvin*
Matthew A. Colvin