[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176**<br>[redacted] |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AS DESIGNS, LLC, MATTHEW S. KARLOVIC, CALVIN OLSON and JOHN DOE, an individual using the alias "s3igu2" and/or "Seagoo Threetwo,"<br><br>Defendants. | Civil Action No. 4:26-cv-00370-ALM |

**ABC IP, LLC AND RARE BREED TRIGGERS, INC.'S**
**<u>MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. Rare Breed's Forced Reset Trigger Technology ..... 3

B. Plaintiffs ABC and RBT ..... 4

1. Rare Breed Spends Years and Millions to Pioneer and Defend a Market for Its Forced Reset Trigger Products ..... 4

2. Rare Breed's Products ..... 4

3. Rare Breed Develops and Releases the FRT-RD3™ for the HK Roller-Delayed Market ..... 6

4. The Asserted Patents ..... 8

C. The Defendants and the Accused ARHK Forced Reset Trigger ..... 9

1. The Defendants: AS Designs, Karlovic, Olson, and S3igu2 ..... 9

2. The Accused ARHK and AS Designs' Plan to [redacted] the FRT-RD3™ 11

D. Rare Breed's Patent Enforcement Efforts ..... 12

E. JPML Centralization Proceedings ..... 14

III. Legal Standard ..... 15

IV. Argument ..... 15

A. Rare Breed Is Likely to Succeed on the Merits ..... 16

1. The Accused ARHK Likely Infringes ..... 16

a) The Asserted Claims Should Carry Their Plain Meaning ..... 16

b) The Accused ARHK Satisfies That Plain Meaning ..... 17

2. The Asserted Patents Are Presumed Valid and Enforceable ..... 18

B. Rare Breed Is Suffering, and Will Continue to Suffer, Irreparable Harm Without Injunctive Relief ..... 20

1. Rare Breed Is Losing Market Share in a Niche, Limited, and Emerging Market ..... 21

2. Each Day of Continued Infringement Erodes Rare Breed's Patent-Earned Lead Time ..... 23

3. Defendants Are Eroding Rare Breed's Innovator Reputation and Premium Brand Identity ..... 23

4. Absent an Injunction, Infringers Will Likely Overrun the HK Forced Reset Market as They Did with the AR-15's ..... 25

5. Damages Would Be Inadequate Because AS Designs' Owners Withdraw Revenue as It Arrives: The Company Is Worth About [redacted] But Could Already Owe More Than [redacted] in Lost Profits ..... 25

C. The Balance of the Equities Favors the Requested Injunctive Relief ..... 28

**TABLE OF CONTENTS (cont'd)**

**Page**

D. The Requested TRO Would Not Harm the Public Interest .................................. 29

E. The Court Should Require No Security, or Alternatively, Nominal Security ...... 30

V. CONCLUSION .................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Corp. I v. P'ship & Unincorporated Ass'ns*,
52 F.4th 934 (Fed. Cir. 2022) ....15

*ABC IP, LLC v. Cloak Indus., Inc.*,
No. 4:26-cv-00608-ALM, Dkt. 48-3....6, 14, 23

*ABC IP, LLC v. Hoffman*,
No. 1:25-cv-00389, Dkt. 14 (E.D. Tenn. Jan. 7, 2026)....13, 19, 29

*ABC IP, LLC v. Peak Tactical, LLC*,
No. 26-1527 (Fed. Cir.)....14

*ABC IP, LLC v. Peak Tactical, LLC*,
No. 4:26-cv-00698, Dkt. 6 (E.D. Tex. Jan. 16, 2026)....13

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015)....29

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
726 F.3d 1296 (Fed. Cir. 2013)....20

*Aspen Tech., Inc. v. M3 Tech., Inc.*,
569 F. App'x 259 (5th Cir. 2014) ....25, 27

*Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC*,
No. 4:26-cv-00448-ALM, Dkt. 57 (E.D. Tex. Aug. 3, 2026)....14

*Atrius Dev. Grp. Corp. v. ABC IP, LLC*,
IPR2025-01473, Paper 1 (P.T.A.B. Aug. 29, 2025) ....19

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*,
692 F. Supp. 2d 805 (N.D. Ohio 2010)....20

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020)....20, 23

*Canon Inc. v. GCC Int'l Ltd.*,
450 F. Supp. 2d 243 (S.D.N.Y. 2006), *aff'd*, 263 F. App'x 57 (Fed. Cir. 2008)....25

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012)....28, 29

*City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*,
636 F.2d 1084 (5th Cir. 1981) ....30

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013)....................23, 24

*EcoNova Inc. v. DPS Utah*,
No. 12-cv-174, 2012 WL 5944257 (D. Utah Nov. 28, 2012)....................20, 21, 22

*Eli Lilly & Co. v. Premo Pharm. Lab'ys, Inc.*,
630 F.2d 120 (3d Cir. 1980)....................25

*EyeTicket Corp. v. Unisys Corp.*,
155 F. Supp. 2d 527 (E.D. Va. 2001) ....................23

*Fred Hutchinson Cancer Rsch. Ctr. v. BioPet Vet Lab, Inc.*,
No. 10-cv-616, 2011 WL 1119565 (E.D. Va. Mar. 1, 2011)....................18, 21, 22

*Garland v. Cargill*,
602 U.S. 406 (2024)....................4

*Genband US LLC v. Metaswitch Networks Corp.*,
861 F.3d 1378 (Fed. Cir. 2017)....................27

*Hybritech Inc. v. Abbott Lab'ys*,
849 F.2d 1446 (Fed. Cir. 1988)....................25, 28

*Janvey v. Alguire*,
647 F.3d 585 (5th Cir. 2011) ....................27

*Kaepa, Inc. v. Achilles Corp.*,
76 F.3d 624 (5th Cir. 1996) ....................30

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
829 F.2d 1171 (D.C. Cir. 1987) ....................15

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) ....................16

*Merial Ltd. v. Velcera Inc.*,
877 F. Supp. 2d 1348 (M.D. Ga. 2012) ....................28

*Metalcraft of Mayville, Inc. v. Toro Co.*,
848 F.3d 1358 (Fed. Cir. 2017)....................28

*Munilla Constr. Mgmt., LLC v. United States*,
130 Fed. Cl. 131 (2016) ....................15

*Natera, Inc. v. NeoGenomics Lab'ys, Inc.*,
106 F.4th 1369 (Fed. Cir. 2024) ....................16, 21

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*In re NORPLANT Contraceptive Prods. Liab. Litig.*,
878 F. Supp. 972 (E.D. Tex. 1995) ....................15

*Oakley, Inc. v. Sunglass Hut Int'l*,
316 F.3d 1331 (Fed. Cir. 2003) ....................16

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ....................17

*PPG Indus., Inc. v. Guardian Indus. Corp.*,
75 F.3d 1558 (Fed. Cir. 1996) ....................28

*In re: Rare Breed Triggers Pat. Litig.*,
4:26-md-03176, Dkt. 7 (E.D. Tex. May 29, 2026) ....................14

*In re: Rare Breed Triggers Pat. Litig.*,
MDL No. 3176, Dkt. 44 (J.P.M.L. Apr. 2, 2026) ....................14

*Rare Breed Triggers v. Big Daddy Enters. Inc.*,
C.A. No. 1:21-cv-149-RH-HTC, Dkt. 1 (N.D. Fla. Sept. 15, 2021) ....................12, 13

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011) ....................20, 21, 25

*S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*,
No. 06-cv-9170, 2014 WL 1652436 (E.D. La. Apr. 24, 2014) ....................24

*Symbol Techs., Inc. v. Janam Techs. LLC*,
729 F. Supp. 2d 646 (D. Del. 2010) ....................27

*Thorner v. Sony Comput. Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ....................17

*Tinnus Enters., LLC v. Telebrands Corp.*,
846 F.3d 1190 (Fed. Cir. 2017) ....................15, 23

*Titan Tire Corp. v. Case New Holland, Inc.*,
566 F.3d 1372 (Fed. Cir. 2009) ....................18

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
748 F.3d 1159 (Fed. Cir. 2014) ....................21, 22, 28

*Turner v. Epps*,
460 F. App'x 322 (5th Cir. 2012) ....................15

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
782 F.2d 995 (Fed. Cir. 1986) ....................28, 29

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*Yang v. Does 1-89*,
No. 4:24-cv-922, 2024 WL 5190362 (E.D. Tex. Dec. 20, 2024) ....................23

**Statutes**

35 U.S.C. § 283 ....................15

**Other Authorities**

Fed. R. Civ. P. 65 ....................30

Fed. R. Civ. P. 65(c) ....................30

Fed. R. Civ. P. 65(d)(2) ....................15

# TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| ’159 Patent | U.S. Patent No. 12,578,159 |
| ’247 Patent | U.S. Patent No. 12,038,247 |
| ’403 Patent | U.S. Patent No. 12,636,403 |
| ’784 Patent | U.S. Patent No. 12,031,784 |
| ABC | ABC IP, LLC |
| Accused Product | ARHK |
| AMBI | A firearm with an ambidextrous lower-housing pattern |
| ARHK | Forced-reset trigger device being developed and marketed by Defendants |
| AS Designs | AS Designs, LLC |
| Asserted Claims | Claims 1, 3, 6–7, 9–11, 14–17 of the ’159 Patent; Claim 15 of the ’247 Patent; Claims 14–15, 17, 29–30, 32, 38–39 of the ’403 Patent; and Claims 1, 3–4 of the ’784 Patent |
| Asserted Patents | The ’159 Patent, ’247 Patent, ’403 Patent, and ’784 Patent |
| ATF | Bureau of Alcohol, Tobacco, Firearms and Explosives |
| Defendants | AS Designs, LLC, Matthew S. Karlovic, Calvin Olson and John Doe (as those entities are defined and individuals identified herein) |
| DeMonico B&T Decl. | Declaration of Lawrence DeMonico, *ABC IP, LLC v. Cloak Indus., Inc.*, No. 4:26-cv-00608-ALM, Dkt. 48-3. |
| DOJ | Department of Justice |
| HK | A family of roller-delayed blowback firearms built around Heckler & Koch’s MP5 and its variants, together with clones and variants from other manufacturers. |
| JPML | Judicial Panel on Multidistrict Litigation |
| Luettke I Decl. | Declaration of Brian Luettke, *In re Rare Breed Patent Litig.*, No. 4:26-md-03176, Dkt. 29-21. |
| Luettke II Decl. | Declaration of Brian Luettke, *In re Rare Breed Patent Litig.*, No. 4:26-md-03176, Dkt. 8. |
| MDL | Multidistrict Litigation |
| PI | Preliminary Injunction |
| Plaintiffs | ABC IP, LLC and Rare Breed Triggers, Inc. |
| Rare Breed | ABC IP, LLC and Rare Breed Triggers, Inc. |
| RBT | Rare Breed Triggers, Inc. |
| SEF | A firearm with a single-side lower-housing pattern |
| TRO | Temporary Restraining Order |
| Wide Open Trigger | Forced-reset trigger device at issue in *Rare Breed Triggers v. Big Daddy Enters. Inc.*, C.A. No. 1:21-cv-149-RH-HTC (N.D. Fla.). The case resolved in October 2022 with a consent judgment and permanent injunction. See *id.* at Dkt. 194. |

# I. INTRODUCTION

AS Designs is weeks away from dropping 1,500 infringing triggers, in a single day, into a market segment Rare Breed created and alone supplies. AS Designs waited for Rare Breed to publish its price, then priced its new trigger low enough to, in the words of the company's head engineer, [redacted] Rare Breed's product. Rare Breed asks the Court to temporarily enjoin that launch until it can decide a preliminary injunction.

Rare Breed spent years and millions of dollars developing what it calls "forced reset" trigger technology—triggers that enable a semi-automatic rifle to be fired faster while still requiring a separate trigger pull for each shot. It brought its first FRT® to market at the end of 2020, built for the AR-15, the most common rifle in the United States. Then the Department of Justice moved to shut it down. Rare Breed fought for four years to lawfully sell its forced reset trigger products, and cleared that path in May 2025, when it settled with the federal government. Around that same time, infringing forced reset triggers for the AR-15 flooded the market. More than a hundred sellers offer them today, including Defendant AS Designs. Rare Breed's flagship AR-15 trigger, the FRT-15L3®, [redacted]

This February, Rare Breed brought its FRT® technology to a different platform: HK roller-delayed firearms, which include the iconic MP5 and its clones. The HK market differs from the AR-15's in three key ways. First, it is far smaller. Second, it is premium—HK's SP5 retails for $3,679, more than triple a typical AR-15. Third, its owners prize their firearms' original appearance; HK itself markets the SP5 as built "in the same factory, on the same lines" as the legendary MP5. Rare Breed engineered its new trigger, the FRT-RD3™, for exactly those buyers. It is the first and only forced reset trigger that installs as a self-contained cassette inside the firearm's factory housing, otherwise leaving the firearm as HK built it. Six months after its launch, [redacted]

AS Designs is weeks from entering the HK market with a new infringing product "built on" its existing ARC-Fire trigger. The ARC-Fire is the subject of Rare Breed's pending preliminary-injunction motion in this member action. AS Designs has sold [redacted] ARC-Fires—roughly [redacted] of them after Rare Breed asked AS Designs to cease and desist. It has now repackaged that same technology for the HK platform.

AS Designs built its new trigger—the "ARHK"—to take out Rare Breed's, and its internal messages lay out how. In [redacted], before Rare Breed had published a price for the FRT-RD3™, [redacted]

AS Designs then priced the ARHK at $549.99—$65 to $70 under the FRT-RD3™, and [redacted]

AS Designs has even structured the ARHK's launch so that the entire first run hits the market in a single day. On June 30, AS Designs announced a first drop of 1,500 units—all to ship in a single day—and expected in late August. [redacted] [redacted], released at once. Consumers are already refusing to buy the FRT-RD3™ to wait for the ARHK. One explained: "Although [Rare Breed] make[s] the best current MP5 FRT, I refuse to buy it. I'll wait for AS Designs to release their new FRT."

The Court should grant a TRO because all four factors favor relief.

***First***, Rare Breed is likely to succeed on the merits. AS Designs advertises that the ARHK is built on the ARC-Fire—which Rare Breed's expert has already charted, element by element,

against each Asserted Patent to show infringement. Rare Breed asked AS Designs for the ARHK's engineering drawings or a unit to inspect in case AS Designs believed something different about it did not infringe; it refused. ***Second***, the harm is irreparable. Damages cannot return the market position Rare Breed may never get to build. The FRT-RD3™ is today the only forced reset trigger that installs inside an HK firearm's factory housing. The ARHK would make that segment a two-product market, and each ARHK sale would come largely at Rare Breed's expense during the months when the FRT-RD3™'s customer and dealer relationships are being set. Most of those sales are gone for good: each trigger typically lasts the life of the rifle it goes into, and a customer who installs an ARHK is less likely to choose Rare Breed for a future purchase. ***Third***, the equities tip decisively toward Rare Breed. The ARHK has not launched. A TRO preserves the status quo: each ARHK keeps its value, and AS Designs' worst case is a delayed launch for a product it built and priced with full knowledge of Rare Breed's patents. ***Fourth***, no critical public interest weighs against an injunction. To the contrary, the DOJ filed a Statement of Interest in this MDL explaining that the public interest "heavily" favors a preliminary injunction.

Rare Breed respectfully asks the Court to temporarily enjoin the ARHK's launch until a preliminary injunction motion can be decided.

## II. BACKGROUND

### A. Rare Breed's Forced Reset Trigger Technology

Rare Breed's FRT® products are trigger components for semi-automatic rifles that allow faster follow-up shots—but still require a separate trigger pull for each shot. Dkt. 29-21 ("Luettke I Decl.") ¶¶ 11–12. In a standard semi-automatic rifle, a shooter manually releases the trigger to reset. *Id.* ¶ 11. In a forced reset trigger, once a shot is fired, the rifle's cycling motion mechanically resets the trigger, reducing manual movement and enabling faster follow-up shots. *Id.* ¶ 12. Rare Breed's FRT® products are distinct from fully automatic triggers, which fire continuously with a

single sustained pull. *Garland v. Cargill*, 602 U.S. 406, 410 (2024).

### B. Plaintiffs ABC and RBT

ABC is a Delaware LLC that owns and exclusively licenses the Asserted Patents (the ’247, ’784, ’159, and ’403) to RBT. DeMonico Decl. ¶ 5, Exs. 1-3. RBT is a Texas corporation that designs, manufactures, and sells forced reset trigger products covered by ABC’s patents.

#### 1. Rare Breed Spends Years and Millions to Pioneer and Defend a Market for Its Forced Reset Trigger Products

Rare Breed set out to build and commercialize a trigger to deliver faster follow-up shots while remaining lawful and semi-automatic. *Id.* ¶¶ 7–10. That effort required extended concept and prototype work, followed by roughly eight months of testing and redesign to turn the proof of concept into a marketable product. *Id.* ¶ 9. Rare Breed brought the FRT-15®—the first commercially available forced reset trigger—to market at the end of 2020. *Id.* ¶¶ 7, 10. Rare Breed then litigated with the DOJ for about the next four years, culminating in a settlement allowing them to market its products subject to certain conditions, including that “[Rare Breed] will not develop or design FRTs for use in any handgun,” will enforce its patents to prevent infringement, and will “promote the safe and responsible use of its devices.” *Id.* ¶¶ 11–15, Ex. 4 ¶ 7. Since then RBT has built a 13-person team and expanded its product line. ABC owns 15 issued U.S. forced reset patents, all of which are exclusively licensed to RBT; no other entity in the country holds an issued forced reset trigger patent. DeMonico Decl. ¶¶ 6, 18–21, 36, Exs. 5–9.

#### 2. Rare Breed’s Products

Rare Breed today offers eight FRT® trigger products across three firearm platforms: five for the AR-15, two for the HK[1] MP5 family, and, most recently, one for B&T pistol-caliber

[1] This Motion uses “HK” as shorthand for the family of roller-delayed blowback firearms built around Heckler & Koch’s MP5 and its variants, together with clones and variants from other manufacturers. These firearms use a different operating system from AR-15-pattern rifles.

firearms. This Motion concerns the HK MP5-family product: the FRT-RD3™. DeMonico Decl. ¶¶ 20, 33.

| RBT Product | Platform | Patent(s) | Price | DeMonico Decl. |
|---|---|---|---|---|
| FRT-15L3® | AR-15 | ’223, ’003, ’336, ’807, ’403[2] | $450 | Ex. 5 |
| FRT-15L3® Flat | AR-15 | ’223, ’003, ’336, ’807, ’403 | $450 | Ex. 5 |
| FRT-15C3™ | AR-15 | ’247, ’159, [3] ’403 | $450 | Ex. 6 |
| FRT-MR3™ | AR-15 (piston-driven) | ’223, ’003, ’336, ’807, ’403 | $525 | Ex. 7 |
| FRT-MR3™ Flat | AR-15 (piston-driven) | ’223, ’003, ’336, ’807, ’403 | $525 | Ex. 7 |

Rare Breed released the FRT-RD3™ in February 2026, its first trigger for a firearm platform besides the AR-15. The FRT-RD3™ is compatible with HK’s 9mm roller-delayed family—the MP5, MP5K, SP5, and SP5K—and the clones sold by manufacturers like PTR, MKE, Zenith, Century Arms, and MAC. DeMonico Decl. ¶ 25. The FRT-RD3™ is the first, and to date only, forced reset trigger that installs as a self-contained, drop-in cassette inside the firearm’s factory housing. DeMonico Decl. ¶¶ 34–35. HK-pattern firearms ship with one of two lower-housing patterns: the traditional “SEF” or ambidextrous “AMBI.” The FRT-RD3™ comes in a version for each; the two are not interchangeable. DeMonico Decl. ¶ 33.

| RBT Product | Platform | Patent(s) | Price | DeMonico Decl. |
|---|---|---|---|---|
| FRT-RD3™ (SEF) | HK MP5/SP5 | ’223, ’003, ’336, ’807, ’403 | $615 | Ex. 8 |
| FRT-RD3™ (AMBI) | HK MP5/SP5 | ’223, ’003, ’336, ’807, ’403 | $620 | Ex. 8 |

Rare Breed’s newest trigger is the FRT-SG3™, released on July 15, 2026, for B&T’s SPC9, GHM9, and GHM45 pistol-caliber firearms. *ABC IP, LLC v. Cloak Indus., Inc.*, No. 4:26-cv-

[2] U.S. Patent Nos. 10,514,223; 11,724,003; 12,036,336; 12,274,807; 12,636,403.
[3] U.S. Patent Nos. 12,038,247; 12,578,159.

00608-ALM ("*Cloak*"), Dkt. 48-3 ("DeMonico B&T Decl.") ¶¶ 19, 26–27 & Ex. 11. Rare Breed developed it in collaboration with B&T, which tested and approved the design and now sells firearms with Rare Breed's trigger factory-installed. *Id.* ¶¶ 26–27, 60. Rare Breed launched the FRT-SG3™ with no advance announcement: infringement on the AR-15 platform has taught Rare Breed that announcing a product hands infringers a head start, so it now launches in silence, concealing even the platform identities of products in development. *Id.* ¶¶ 55–56 & Exs. 40–41.

| **RBT Product** | **Platform** | **Patent(s)** | **Price** | **DeMonico Decl.** |
|---|---|---|---|---|
| FRT-SG3™ | B&T SPC9, GHM9, GHM45 | *E.g.*, '403 | $525 | Ex. 9 |

All eight models operate in three modes—safe, traditional semi-automatic, and forced reset. DeMonico Decl. ¶ 22. All incorporate technology covered by the '403 Patent (among others). *Id.* ¶¶ 19–21, 33. As explained below, the FRT-RD3™ [redacted] DeMonico Decl. ¶ 63; Eichmann Decl. ¶ 141.

### 3. Rare Breed Develops and Releases the FRT-RD3™ for the HK Roller-Delayed Market

With the FRT-RD3™, Rare Breed gave the premium HK firearm market a forced reset trigger that drops into the factory housing and otherwise leaves the firearm as HK built it. DeMonico Decl. ¶ 34. The 9mm MP5 family is part of a broader line of HK roller-delayed firearms that also includes larger-caliber models—the G3/91 and the HK11/21/31/32/33. DeMonico Decl. ¶¶ 25, 51. This market segment differs from the AR-15's in three ways that matter here. First, it is far smaller. Industry estimates state that, as of 2023, over 32 million modern sporting rifles (which includes AR-15-pattern rifles and AK-47-style rifles) are in circulation in the United States and are the "most popular . . . rifle sold in America today"; the roller-delayed population is a small

fraction of that. Colvin Decl. ¶ 14, Ex. 12 at 2; *see also* DeMonico Decl. ¶ 27.[4] Second, it is a premium market: HK's SP5 currently carries an MSRP of $3,679 on HK's website (with an MSRP of $2,799 upon its launch in December of 2019), and even HK clones retail for roughly $1,359 to $1,889, against sub-$1,000 MSRPs for popular AR-15s. DeMonico Decl. ¶ 28, Exs. 10-16. Third, owners in this market prize their firearm's original external appearance. HK itself markets to that value, selling the SP5 as made "in the same factory, on the same lines, and by the same workforce" as the legendary MP5—because "even a pretty good copy is still just a copy." *Id.* ¶ 29 & Ex. 16.

Many of Rare Breed's customers agree: one ran a Super Safety and slip trip in a replacement housing for two years, but "hated the Cheesy way it looked" and installed the FRT-RD3™ "so that [his] beautiful German gun would look its best"; another had been "running a crappy 3d printed lower and it just took away from the classic MP5 aesthetic that we all love." *Id.* ¶ 30 & Ex. 17. A trigger that requires replacing the firearm's factory housing is thus substantially less attractive in this market than one that installs inside it—which is why Rare Breed engineered the FRT-RD3™ as a drop-in cassette, and why AS Designs advertises the ARHK the same way: "installs directly into factory OEM polymer housings with no modifications required." *Id.* ¶¶ 29–31; Ex. 18.

When Rare Breed released the FRT-RD3™ in February 2026, it was the first product of its kind—and it remains the only drop-in forced reset trigger on the market for roller-delayed HKs; every alternative requires the owner to replace the housing (lower receiver) or convert the fire control group. *Id.* ¶ 34.

FRT® products are Rare Breed's entire business: all of its revenue comes from its FRT® products and related parts. *Id.* ¶ 24. Rare Breed has historically positioned those products as

[4] No known official statistics count roller-delayed firearms in the United States.

premium offerings, maintaining a no-discount policy as part of its business practice. *Id.* ¶ 73. It has also mainly sold direct-to-consumer, but the influx of infringing products has forced it to launch a dealer program earlier than planned and at lower margins, just to hold its market share. *Id.* ¶ 83. Because FRT® and infringing products are durable products designed to last the life of the rifle in which they are installed (Luettke I Decl. ¶¶ 64–66), a lost sale is hard to recover: a customer who installs a competitor's trigger is less likely to choose Rare Breed for their next gun. DeMonico Decl. ¶ 66; Eichmann Decl. ¶¶ 54, 62, 143. Each lost customer thus represents lost future sales across other firearms. *Id.*

#### 4. The Asserted Patents

As summarized below, the Asserted Patents claim related innovations in forced reset trigger design covering the trigger, the safety selector, and the locking interface with the bolt carrier.

| **Asserted Patent** | **Asserted Claim(s)** | **Description** |
|---|---|---|
| U.S. Patent No. 12,038,247 | 15 | A trigger mechanism with two selectable modes—standard and "forced reset"—in which a cam mechanically resets the trigger and prevents it from being pulled again until the bolt carrier returns fully forward. Luettke I Decl. ¶ 27; *see generally also* Colvin Decl., Ex. 1. |
| U.S. Patent No. 12,578,159 | 1, 3, 6, 7, 9–11, 14–17 | A trigger mechanism with a three-position safety selector—safe, standard semi-automatic, and "forced reset" semi-automatic—in which a cam and safety selector control whether manual pressure must release to reset the trigger. Luettke I Decl. ¶ 30; *see generally also* Colvin Decl., Ex. 2. |
| U.S. Patent No. 12,031,784 | 1, 3, 4 | A locking device that shifts between blocking and permitting trigger pull, controlled by contact between the bolt carrier and an extension on the locking member. Luettke I Decl. ¶ 28; *see generally also* Colvin Decl., Ex. 3. |
| U.S. Patent No. 12,636,403 | 14, 15, 17, 29, 30, 32, 38, 39 | A trigger device in which the firearm's cycling action causes the hammer to contact the trigger, resetting both the hammer and trigger after each shot. The device can be operated in either of two modes: a standard semi-automatic mode (using a conventional disconnector) or a forced reset semi-automatic mode. No. 4:26-md-03176, Dkt. 8 |

| Asserted Patent | Asserted Claim(s) | Description |
|---|---|---|
| | | (“Luettke II Decl.”) ¶ 37; *see generally also* Colvin Decl., Ex. 4. |

### C. The Defendants and the Accused ARHK Forced Reset Trigger

This Motion seeks a TRO against the AS Designs Defendants. AS Designs announced the “ARHK” at the SHOT Show trade show in January 2026. It is a drop-in forced reset trigger cassette built for the same HK roller-delayed firearms as Rare Breed’s FRT-RD3™. DeMonico Decl. ¶¶ 49–50. AS Designs markets the ARHK as “built on [its] ARC-Fire technology,” the same technology already accused, briefed, and charted element-by-element in Plaintiffs’ pending PI Motion in this member case. DeMonico Decl. ¶ 50; Dkts. 28, 50, 63. AS Designs has long known of Plaintiffs’ patents (DeMonico Decl. ¶¶ 42, 44, Ex. 19), but has nonetheless spent the last seven months promoting the ARHK anyway. On July 1, 2026, it announced that the ARHK had “entered full production,” with a “first drop of 1500 units” to ship in a single day, hoped for late August. DeMonico Decl. ¶ 67, Ex. 41.

Before filing this Motion, Plaintiffs asked AS Designs for the ARHK’s engineering drawings or a unit to inspect. Colvin Decl. ¶ 7, Ex. 5 at 4–5. AS Designs declined. *Id.* at 1–2 Plaintiffs’ infringement showing thus rests on what AS Designs has said publicly: its published specifications, its admission that the ARHK is built on the ARC-Fire, and its head engineer’s public statements explaining how the ARHK operates.

#### 1. The Defendants: AS Designs, Karlovic, Olson, and S3igu2

AS Designs, LLC, d/b/a Active Safety Designs, is a North Carolina LLC formed in December 2024—it has operated for roughly 21 months. Colvin Decl., Ex. 6 at 2. Its principals are

Defendants Matthew Karlovic and Calvin Olson.[5] AS Designs sells the Super Safety and ARC-Fire, which, by Karlovic's own admission, [redacted]. Dkt. 50-1 ¶ 20. Those products are the subject of Plaintiffs' pending PI Motion in the AS Designs member action. Dkts. 28, 50, 63.

AS Designs sold roughly [redacted] of its [redacted] accused units after Rare Breed asked it to stop—and [redacted], including [redacted] the day after Rare Breed moved for an injunction. [redacted] against the *ARC-Fire and Super Safety alone*—the entire fund from which any judgment in this case would be paid. *Id.*, Ex. 9; Dkt. 63 at 3–5.

Defendant John Doe, sued under his aliases "s3igu2" and "Seagoo Threetwo," designed the ARHK. AS Designs' own Instagram account credits the ARHK to him. DeMonico Decl. ¶ 53, Ex. 23. [redacted]. Posting as "s3igu2," he promotes the ARHK on public forums—answering technical questions, confirming specifications, and steering customers away from Rare Breed's FRT-RD3™. DeMonico Decl. ¶¶ 53, 56, 65, Exs. 23–25, 35, 39–40. AS

[5] In his Answer, Calvin Olson denied being a principal of AS Designs. Dkt. 17 ¶ 5. [redacted]

Designs' internal communications even show him [redacted]. Colvin Decl., Ex. [redacted].

### 2. The Accused ARHK and AS Designs' Plan to [redacted] the FRT-RD3™

The ARHK is a self-contained, drop-in forced reset trigger cassette for HK roller-delayed firearms. DeMonico Decl. ¶¶ 49–50. AS Designs describes it as "built on [its] ARC-Fire technology." *Id.* ¶ 50. It installs "directly into factory OEM polymer housings with no modifications required." *Id.* AS Designs priced the ARHK at $549.99—$65 to $70 below the FRT-RD3™, which sells for $615 (SEF) and $620 (AMBI). DeMonico Decl. ¶¶ 56, 75.

| Rare Breed FRT-RD3™ | ARHK |
|---|---|
|   |  |

Defendants' own messages show that they [redacted]

[redacted]

When Rare Breed's FRT-RD3™ pricing went live on February 24, 2026, [redacted]

These exchanges capture, in Defendants' own words, three facts at the heart of this Motion: Rare Breed beat AS Designs to this market; Rare Breed's position reflects a years-long headstart; and the ARHK is priced to take that market from Rare Breed. That leaves the ARHK's launch. AS Designs announced on July 1, 2026, that the "first drop of 1500 units will be in roughly 8 weeks." DeMonico Decl. ¶ 67, Ex. 41. Its production-status page confirms the same. DeMonico Decl. ¶ 42.

**D. Rare Breed's Patent Enforcement Efforts**

Rare Breed vigorously enforced its patents before it was enjoined from doing so in September 2023, and has aggressively renewed those efforts since its May 2025 DOJ settlement. To start, in September 2021, Rare Breed sued Big Daddy Unlimited and Wide Open Enterprises in the Northern District of Florida over their "Wide Open Trigger." *See Rare Breed Triggers v. Big Daddy Enters. Inc.*, C.A. No. 1:21-cv-149-RH-HTC, Dkt. 1 (N.D. Fla. Sept. 15, 2021). The court

granted a PI in December 2021, finding the Wide Open Trigger "was plainly copied from the FRT-15." Order Granting PI, *Rare Breed Triggers v. Big Daddy Enters. Inc.*, C.A. No. 1:21-cv-149-RH-HTC, Dkt. 47 (N.D. Fla. Dec. 30, 2021). The case resolved in October 2022 with a consent judgment and permanent injunction. *See Rare Breed Triggers v. Big Daddy Enters. Inc.*, C.A. No. 1:21-cv-149-RH-HTC, Dkt. 194 (N.D. Fla. Oct. 19, 2022).

Starting in 2023, and for the next several years, the DOJ's enforcement action shut down Rare Breed's operations and foreclosed any patent enforcement during the injunction's pendency. As a result, although two of Rare Breed's trigger patents issued in July 2024, Rare Breed could not assert them without risking contempt. DeMonico Decl. ¶ 13. The May 2025 settlement not only ended that prohibition but also imposed upon Rare Breed an affirmative obligation to enforce its patents against products it has a good faith belief infringe any of its patents. *Id.* ¶ 15, Ex. 4.

Rare Breed has therefore resumed enforcing its patents. Since the May 2025 settlement, Rare Breed has filed more than 125 patent-infringement actions, including the one at issue in this motion. DeMonico Decl. ¶ 17. To date, Rare Breed has pursued preliminary injunctive relief in those actions through seven motions. ***First***, Rare Breed requested a TRO and PI against the Hoffman Defendants, the original publishers of the "open-source" Super Safety design files. *ABC IP, LLC v. Hoffman*, No. 1:25-cv-00389 ("*Hoffman*"), Dkt. 14 (E.D. Tenn. Jan. 7, 2026); *Hoffman*, Dkt. 15 (E.D. Tenn. Jan. 9, 2026). On January 13, 2026, the court granted a TRO. *Hoffman*, Dkt. 20 (E.D. Tenn. Jan. 13, 2026). After a three-day evidentiary hearing, it also entered a PI on February 11, 2026. *Hoffman*, Dkts. 31, 46. ***Second***, Rare Breed has separately moved for a PI against AS Designs; expedited discovery is ongoing. Dkt. 31. ***Third***, Rare Breed moved for a TRO and PI against Peak Tactical LLC and related defendants based on Rare Breed's '223, '003, '336, and '807 Patents before that case was consolidated in this MDL. *ABC IP, LLC v. Peak Tactical, LLC*,

No. 4:26-cv-00698 ("*Peak*"), Dkt. 6 (E.D. Tex. Jan. 16, 2026). The court denied Rare Breed's motion, *Peak*, Dkt. 39 (E.D. Tex. Feb. 13, 2026), and the decision is currently on appeal, *see ABC IP, LLC v. Peak Tactical, LLC*, No. 26-1527 (Fed. Cir.). That motion did *not* involve the '403 Patent—which had not yet issued—and the patents asserted in this Motion were never before the District of Wyoming. ***Fourth***, Rare Breed has filed a First Consolidated Motion for PI against 13 defendants selling cam-style products. *In re: Rare Breed Triggers Pat. Litig.*, 4:26-md-03176, Dkt. 7 (E.D. Tex. May 29, 2026). ***Fifth***, Rare Breed has filed a Second Consolidated Motion for PI against the defendants in 11 of the cases consolidated into this MDL based on the Disruptor's infringement of the '403 Patent. *See, e.g.*, *Peak*, Dkts. 76–79 (E.D. Tex. July 2, 2026). ***Sixth***, Rare Breed has moved for preliminary injunction against Atrius and related defendants for infringement of Rare Breed's '247, '159, '784, and '403 Patents through sales of the Atrius Selector and its variations. *See, e.g.*, *Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC*, No. 4:26-cv-00448-ALM, Dkt. 57 (E.D. Tex. Aug. 3, 2026). ***Seventh***, Rare Breed has moved for a temporary restraining order against Cloak Industries, Inc., Peak Tactical, LLC d/b/a Partisan Triggers, and Optics Planet, Inc. d/b/a Ecentria, based on their Accused B&T Disruptors—modified Disruptor variants configured for third-party B&T's SPC9, GHM9, GHM45, and APC9 platforms—and their infringement of the '403 Patent. *See, e.g., Cloak*, Dkt. 43 (E.D. Tex. Aug. 10, 2026). That motion has been opposed and remains pending.

### E. JPML Centralization Proceedings

The JPML created this MDL on April 2, 2026, finding that centralization would "eliminate duplicative discovery, prevent inconsistent pretrial rulings—especially regarding claim construction, patent validity, and *the appropriateness of injunctive relief*—and conserve the resources of the parties, their counsel, and the judiciary." *In re: Rare Breed Triggers Pat. Litig.*, MDL No. 3176, Dkt. 44, at 2 (J.P.M.L. Apr. 2, 2026) (emphasis added).

## III. LEGAL STANDARD

This Court has power to grant injunctive relief "in accordance with the principles of equity" and "on such terms as the court deems reasonable." 35 U.S.C. § 283. Pursuant to Federal Rule of Civil Procedure 65(d)(2), an injunction should bind defendants, their "officers, agents, servants, employees, and attorneys," and anyone in "active concert or participation" with defendants and their officers, agents, servants, employees, or attorneys. "The standards for determining whether to grant a temporary restraining order are the same as those that apply to a motion for a preliminary injunction." *Munilla Constr. Mgmt., LLC v. United States*, 130 Fed. Cl. 131, 135 (2016) (citation omitted); *see also Turner v. Epps*, 460 F. App'x 322, 325 & n.3, 327 (5th Cir. 2012). To obtain such relief, the movant must show: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017). Likelihood of success on the merits is governed by Federal Circuit law; the other factors are governed by the law of the regional circuit—here, the Fifth Circuit, in which this Court sits. *ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934, 941 (Fed. Cir. 2022). That holds true regardless of where a transferred member case originated: an MDL transferee court applies the law of its own circuit, not the transferor circuit's, to questions of federal law. *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987); *accord In re NORPLANT Contraceptive Prods. Liab. Litig.*, 878 F. Supp. 972, 974–75 (E.D. Tex. 1995) (this district, as an MDL transferee, applying the same rule). All factors favor relief here.

## IV. ARGUMENT

The Court should grant a TRO. Rare Breed is likely to succeed on the merits: the ARHK is, by Defendants' own description, built on the ARC-Fire, an accused product in Plaintiffs' briefed

preliminary-injunction motion. The harm is immediate and irreparable: weeks from now, Defendants plan to release 1,500 infringing units in a single day into a market where the FRT-RD3™ is the only product. And they will do it during the FRT-RD3™'s early launch window—the opening months in which a new product's customer relationships, dealer network, and market position are set. The equities also tip sharply toward Rare Breed. Defendants designed, built, and priced the ARHK—with full knowledge of Rare Breed's patents—to [redacted] the FRT-RD3™. Nor would the TRO harm a critical public interest. To the contrary, the DOJ has said the public interest should be weighed "heavily" in favor of an injunction. No. 4:26-md-03176, Dkt. 44 ("Statement of Interest") at 7.

### A. Rare Breed Is Likely to Succeed on the Merits

"To show likelihood of success on the merits, a patentee must show (1) it will likely prove infringement, and (2) its infringement claim will likely withstand challenges to the validity and enforceability . . . ." *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024) (citation omitted). Rare Breed satisfies both elements.

#### 1. The Accused ARHK Likely Infringes

Determining the likelihood of infringement involves a two-step analysis: (1) the court construes the asserted claims and then (2) compares those construed claims to the accused products. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). Applying the above framework here establishes likely infringement.

##### a) The Asserted Claims Should Carry Their Plain Meaning

The Court should apply the Asserted Claims' plain and ordinary meaning. Claim construction is a question of law for the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Courts generally construe claim terms according to their "ordinary and customary meaning," which is "the meaning the terms would have

[had] to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). Courts depart from that rule in limited circumstances—namely, when the patentee "acts as its own lexicographer" (by expressly redefining a claim term) or "disavows the full scope of a claim term" (by limiting the invention in the specification or during prosecution). *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

The Asserted Claims use familiar terms for firearm components—such as "trigger," "hammer," and "disconnector"—to describe trigger mechanism operations. Colvin Decl., Ex. 4. These terms are widely used in this industry, including in materials describing AR-pattern trigger assemblies. *See, e.g.*, Luettke I Decl. ¶ 36; *see also Phillips*, 415 F.3d at 1314 ("[T]he ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.") The infringement analysis thus involves a straightforward comparison between the plain language of the Asserted Claims and the Accused Product.

#### b) The Accused ARHK Satisfies That Plain Meaning

Rare Breed's technical expert Brian Luettke spent 22 years as a Special Agent with the ATF. Luettke I Decl. ¶ 6. He has testified as an expert in federal and state courts 39 times, including on the mechanical operation and classification of forced reset triggers. *Id.* ¶ 7.

Mr. Luettke has already charted the ARC-Fire, element by element, against every Asserted Patent. He charted the '247, '784, and '159 Patents in Plaintiffs' pending PI Motion in this member action. Dkt. 29-21, Luettke I Decl. Exs. A, C, F; *see also* Dkt. 64-1, Luettke Reply Decl. Exs. H, I, J. He charted the '403 Patent in Plaintiffs' First Consolidated Motion for Preliminary Injunction. Luettke II Decl. Ex. K. The ARHK is, by AS Designs' own description, "built on [its] ARC-Fire technology." DeMonico Decl., Ex. 18. The differences AS Designs' engineer describes—larger

cam surfaces, a thicker detent bar and transfer lever—are differences in geometry, not operation; based on the publicly available information, none limits any Asserted Claim. *See, e.g.*, DeMonico Decl., Ex. 25 at 2 ("*ARHK uses ARC similar to the AR15 version at its core to handle reset, locking the trigger, and mode selection*, but it's a scaled up version with larger cam surfaces, a thicker detent bar and transfer lever.") (emphasis added).

Because the ARHK is unreleased, no physical unit is publicly available to inspect—and Defendants refused Plaintiffs' pre-Motion requests for engineering drawings or a unit. Colvin Decl. ¶ 7, Ex. 5 at 1. Plaintiffs' showing thus rests on what Defendants have told the market. AS Designs advertises that the ARHK has a three-position selector: safe, a semi mode that is "fully disengaged with no active reset, giving you a standard trigger pull," and a third position that "en-gage[s] the ARC-Fire clutch for active reset." DeMonico Decl., Ex. 18. These are the same safe, standard semi-automatic, and forced reset modes that the Asserted Claims recite and that Mr. Lu-ettke's existing charts map to the ARC-Fire clutch mechanism. *Id.*; Luettke I Decl. Exs. A, C, F; Luettke Reply Decl. Exs. H, I, J; Luettke II Decl. Ex. K.

**2. The Asserted Patents Are Presumed Valid and Enforceable**

Patents are presumed valid at all stages of the case, including at the TRO/PI stage. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009). To defeat preliminary injunctive relief on validity grounds, Defendants must raise a "substantial question" as to the patents' validity. *Id.* at 1379. In making this determination, courts consider "whether it is more likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid." *Id.* Only if Defendants make this showing would the burden shift back to Rare Breed to show it is likely to succeed on validity at trial. *Fred Hutchinson Cancer Rsch. Ctr. v. BioPet Vet Lab, Inc.*, No. 10-cv-616, 2011 WL 1119565, at *2 (E.D. Va. Mar. 1, 2011) (citing *Titan Tire*, 566 F.3d at 1377).

The ’403 Patent issued on May 26, 2026. The Examiner considered all relevant and material prior art ever asserted against Rare Breed’s other patents in its portfolio (including the related ’336, ’003, and ’807 patents) and still allowed the patent without any rejections. Any invalidity defenses based on prior art that has been previously asserted against Rare Breed’s related patents lack merit because those references were considered by the Examiner and were not found to prevent patentability of the ’403 Patent claims.

The ’247, ’784, and ’159 Patents already face Defendants’ validity attack in this member action—an attack that rests on a prior-art reading three forums have rejected, plus obviousness combinations justified only in hindsight. In opposition to Plaintiffs’ pending MPI Motion, AS Designs’ expert, Dr. Batzer, advanced several invalidity grounds; Plaintiffs answered each through their expert, Dr. Harrison. Dkt. 63 at 11–14; Dkt. 64 (“Harrison Decl.”) ¶¶ 221–89. Batzer’s centerpiece is a passage at column 11 of Blakley ’723. The Examiner called Blakley the closest prior art and allowed the ’247 claims anyway, because Blakley discloses only a forced-reset trigger—not one the shooter can also switch into an ordinary, standard semi-automatic mode, as the ’247’s claims require. The Examiner reached the same conclusion in allowing the ’159 Patent. Harrison Decl. ¶ 79. The Eastern District of Tennessee rejected an identical argument and entered a preliminary injunction. *Hoffman*, Dkt. 26 at 4 n.1 (E.D. Tenn. Jan. 23, 2026). The PTAB has also denied institution on the same theory—after the petitioner’s own declarant acknowledged that Blakley’s figures and specification do not clearly support a three-position reading. *Atrius Dev. Grp. Corp. v. ABC IP, LLC*, IPR2025-01473, Paper 1 at 48 (P.T.A.B. Aug. 29, 2025); Paper 20 (P.T.A.B. Feb. 18, 2026). Even Blakley himself, describing his ’723 patent in the later ’247’s Background, claimed only the forced-reset function. ’247 Patent at 2:04–2:13. Batzer’s remaining references teach automatic fire or a single operating mode, and his combinations supply no reason to combine

beyond the invention itself. Dkt. 63 at 12–13. That record raises no substantial question—let alone one Defendants could prove by clear and convincing evidence at trial. *See* Dkt. 63 at 11–13; Harrison Decl. ¶¶ 221–95.

**B. Rare Breed Is Suffering, and Will Continue to Suffer, Irreparable Harm Without Injunctive Relief**

Rare Breed's FRT-RD3™ is the only drop-in forced reset trigger on the market for roller-delayed HKs. Within weeks, AS Designs plans to release 1,500 stockpiled ARHK units into that market in a single day. DeMonico Decl. ¶¶ 67–68. This drop, and every ARHK sale that follows, will inflict precisely the harms the Federal Circuit has recognized as irreparable: lost market share, price erosion, lost lead time, lost goodwill, lost business opportunities, and reputational damage. *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013); *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1378 (Fed. Cir. 2020).

Start with market share. Buyers are already publicly deferring or declining to buy Rare Breed's FRT-RD3™ to wait for the ARHK: "Holding out for ASD." DeMonico Decl. ¶ 64, Exs. 36, 37, 38. Second, price erosion is AS Designs' strategy: It priced the ARHK $65 to $70 below the FRT-RD3™ to [redacted] Colvin Decl., [redacted]. Third, the lead time Rare Breed's patents should protect is being erased. DeMonico Decl. ¶ 111; Eichmann Decl. ¶¶ 90, 107. Fourth, Rare Breed's innovator reputation is under attack from a Defendant that markets itself as "[l]eading the FRT industry with cutting edge innovation." DeMonico Decl. ¶¶ 88–89, Exs. 18, 45. Nor would money damages be adequate: A judgment would mean little against a company [redacted]. *Cf.* Colvin Decl., Ex. 13.[6]

---

[6] Factors that courts have found to negate irreparable harm are not present here: Rare Breed has not licensed its patents to third parties, *see* DeMonico Decl. ¶¶ 5, 41, and it practices its own patented inventions, *id.* ¶¶ 19, 20; *see supra* § II.B.2. It also moved promptly to enforce its rights

### 1. Rare Breed Is Losing Market Share in a Niche, Limited, and Emerging Market

Damages may partially restore the revenue from sales an infringer took; they cannot restore a market position the patentee never got to build. Lost market share often becomes irreparable when the infringer is a direct competitor, because then the infringer's gain is the patentee's loss. *Robert Bosch*, 659 F.3d at 1152–54. It grows in a specialized, two-player market, because a customer who buys from the infringer had only one other place to go. *Natera*, 106 F.4th at 1378–79. It accelerates in niche markets, because when the sales are few, each one matters more. *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014). It hardens where a lost customer is difficult to win back. *Fred Hutchinson*, 2011 WL 1119565, at *4–5 (no means of recapturing lost customers). And it is particularly acute where the infringement strikes the core of the patentee's business. *EcoNova Inc.*, 2012 WL 5944257, at *14.

AS Designs is already Rare Breed's direct competitor, and the ARHK's release would make this segment—drop-in forced reset triggers for HK firearms—a two-competitor market. *Cf.* Colvin Decl., Ex. 7 at 114:12–116:14; DeMonico Decl. ¶ 55. So ARHK sales would come largely at Rare Breed's expense. DeMonico Decl. ¶¶ 60–72; Eichmann Decl. ¶¶ 16–19. AS Designs' other accused MP5 products, its replacement lowers and slip trip components, compete on this platform but not in this segment: each requires discarding the factory housing, the one thing many HK owners refuse to give up. DeMonico Decl. ¶¶ 27, 61.

---

and did not unreasonably delay. Across these actions, Rare Breed moved for preliminary relief between one and seven months after filing the complaint. Courts have excused far longer delays. *See, e.g.*, *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 692 F. Supp. 2d 805, 821–22 (N.D. Ohio 2010) (excusing a two-year gap between the plaintiff's knowledge of infringement and its request for an injunction). This is especially true given the scope and pace of infringement, the number of cases filed, and Plaintiffs' resource limitations. *See, e.g.*, *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011); *EcoNova Inc. v. DPS Utah*, No. 12-cv-174, 2012 WL 5944257, at *14 (D. Utah Nov. 28, 2012) (nine-month wait reasonable under the circumstances).

Second, the roller-delayed market is niche. It is confined to the limited number of roller-delayed firearms in the United States—far less than the AR-15 market. DeMonico Decl. ¶¶ 27, 61. Rare Breed reached this segment first, launching the FRT-RD3™ in February 2026. It is now in the opening months when customer relationships, dealer relationships, and platform reputation are set. DeMonico Decl. ¶¶ 61–62; Eichmann Decl. ¶¶ 26, 28, 55, 66–67, 72–74, 104. Losing share in a "small, niche" market is irreparable, because each lost sale matters. *Trebro*, 748 F.3d at 1170.

Third, each diverted sale is likely gone for good. The ARHK is a durable good. DeMonico Decl. Ex. 25 at 2. Once a customer installs an ARHK in a firearm, Rare Breed is far less likely to sell another trigger for that firearm. DeMonico Decl. ¶ 66; Eichmann Decl. ¶¶ 54, 62, 143; *cf. Fred Hutchinson*, 2011 WL 1119565, at *4. The lost sales then multiply. Many customers own multiple firearms and buy multiple triggers. For example, more than [redacted] Rare Breed customers have purchased more than one FRT®. DeMonico Decl. ¶ 66. A customer who goes to AS Designs first is that much harder to win back for the next rifle, and the one after that. *Id.*; Eichmann Decl. ¶¶ 65–66, 74.

Fourth, FRT® products are Rare Breed's entire business. DeMonico Decl. ¶ 24; *EcoNova*, 2012 WL 5944257, at *14. Within that business, the FRT-RD3™ has become especially important. By June 2026, four months after launch, [redacted]. DeMonico Decl. ¶ 63, Ex. 35; Eichmann Decl. ¶ 141. The ARHK is aimed at the one product Rare Breed cannot afford to lose.

The Court need not speculate about what infringing entry does to Rare Breed's market share; it has already happened once on the AR-15 platform. As accused forced reset trigger products flooded that market—with AS Designs among the most popular sellers, moving [redacted]

accused units—Rare Breed's FRT-15L3® fell from a peak of [redacted], a roughly [redacted]. Colvin Decl., Ex. 8; DeMonico Decl. ¶ 63, Ex. 35.

#### 2. Each Day of Continued Infringement Erodes Rare Breed's Patent-Earned Lead Time

A patent gives its holder time: time to build expertise, customer relationships, and a technological lead before competitors arrive. Money cannot give that time back. *See Yang v. Does 1-89*, No. 4:24-cv-922, 2024 WL 5190362, at *4 (E.D. Tex. Dec. 20, 2024) ("[L]ost exclusivity is neither quantifiable nor adequately compensable and is thus irreparable."); *EyeTicket Corp. v. Unisys Corp.*, 155 F. Supp. 2d 527, 548 (E.D. Va. 2001) ("Money damages alone cannot restore . . . technological lead-time . . . ."); *Bio-Rad Lab'ys*, 967 F.3d at 1378 (an infringer's improper head start lets it trade on customer relationships the patentee should have enjoyed).

Rare Breed's lead time was hard won: nearly four years and millions of dollars in litigation costs before the May 2025 settlement with the DOJ opened this market at all. DeMonico Decl. ¶¶ 7–17. On the AR-15 platform, infringement consumed that window before Rare Breed could fully benefit from it. *Supra* § IV.B.1. The ARHK threatens to do the same here.

Infringement has cost Rare Breed lead time in one more way: it can no longer announce a new product before launch, because it tells infringers where to aim. So Rare Breed now launches without pre-launch marketing. It released the FRT-SG3™ that way, and it has announced nothing about the platforms it is developing next. DeMonico B&T Decl. ¶¶ 23, 55–56.

#### 3. Defendants Are Eroding Rare Breed's Innovator Reputation and Premium Brand Identity

Reputational injury and loss of goodwill are also established forms of irreparable harm. Where customers can find "the same innovations" at lower prices, the patentee's "reputation as an innovator will certainly be damaged." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344–45 (Fed. Cir. 2013); *accord Tinnus Enters.*, 846 F.3d at 1208 (irreparable harm where

the infringing product's market presence eroded the patentee's reputation and goodwill with customers); *see also S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, No. 06-cv-9170, 2014 WL 1652436, at *6–7 (E.D. La. Apr. 24, 2014) (irreparable reputational harm where infringement allowed competitors to incorporate the patentee's innovations into their own reputations).

Rare Breed pioneered the forced reset trigger market. It brought the first commercially available forced reset trigger to market in 2020, roughly five years before AS Designs entered the space. DeMonico Decl. ¶ 88. But AS Designs now claims the innovator mantle for itself: its Instagram profile announces that it is "[l]eading the FRT industry with cutting edge innovation"; its product pages call the ARC-Fire "the latest innovation from AS Designs" and the ARHK "[d]esigned from the ground up"; and its customer-facing FAQ rests the legality of its accused products on the federal settlement that Rare Breed fought to win. DeMonico Decl. ¶¶ 89–90, Exs. 18, 45, 61.

AS Designs' narrative is working. Customers now credit it as the pioneer and cast Rare Breed as the copier: "so copying as designs arc fire?"; "Someone beat them to market with an idea!" DeMonico Decl. ¶ 91, Exs. 33, 62. And some customers cannot tell the products apart—the *Douglas Dynamics* harm precisely: "I can barely see a mechanical difference between theirs and RB" (discussing the FRT-RD3™ and ARHK); one consumer is "convinced that [AS Designs] licensed (or made a deal with RB) to make the ARHK"; another calls the ARC-Fire the "Rare Greed arc fire." *Id.* ¶ 92, Exs. 43, 66; *see Douglas Dynamics*, 717 F.3d at 1344–45. Once buyers cannot tell the ARHK from the FRT-RD3™, believe it is cheaper, and suspect Rare Breed authorized it, the damage to Rare Breed's reputation is done. No damages award can undo it.

#### 4. Absent an Injunction, Infringers Will Likely Overrun the HK Forced Reset Market as They Did with the AR-15's

The absence of injunctive relief can embolden additional infringers, compounding harm beyond what damages can address. *Eli Lilly & Co. v. Premo Pharm. Lab'ys, Inc.*, 630 F.2d 120, 137–38 (3d Cir. 1980) (affirming PI where rival market entry compounded irreparable harm); *see also Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1456 (Fed. Cir. 1988) ("[I]n the absence of the injunction, other potential infringers will be encouraged to infringe"). This case shows what that harm looks like. For the AR-15 platform, unchecked infringement produced well over a hundred sellers of infringing products, [redacted], and forced its price down. DeMonico Decl. ¶¶ 63, 74, 108; *supra* § IV.B.1. Whether the ARHK ships is the signal every would-be entrant is watching; the public already frames the launch as a race against enforcement, predicting AS Designs will stockpile inventory because "as soon as they start shipping, RB will file an injunction to try to prevent them from selling." DeMonico Decl. ¶ 69. Each infringer that enters the market further erodes Rare Breed's position, pricing power, and customer relationships in the small, niche HK market.

#### 5. Damages Would Be Inadequate Because AS Designs' Owners Withdraw Revenue as It Arrives: The Company Is Worth About [redacted] Million But Could Already Owe More Than [redacted] in Lost Profits

Money damages are not an adequate remedy where there is a substantial probability Rare Breed could not collect an award. Damages are inadequate where the remedy would not be "a meaningful one in light of the financial condition of the infringer . . . ."; *Robert Bosch*, 659 F.3d at 1155–56; *see also Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 273 (5th Cir. 2014); *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 256 (S.D.N.Y. 2006) (defendant's "far-flung" operations made attaching assets "exceedingly difficult"), *aff'd*, 263 F. App'x 57 (Fed. Cir. 2008).

The Defendants' financial condition suggests that no damages remedy here would be meaningful due to Defendants' likely inability to pay.

Discovery has already put AS Designs' financial condition on the record, under oath. [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]. *Aspen Tech.*, 569 F. App'x at 273; *see Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (inability to collect if assets are dissipated is itself a threat of irreparable harm).

On top of that, newly formed entities with limited operating histories are less likely to have enough capital to satisfy a damages award. *See Symbol Techs., Inc. v. Janam Techs. LLC*, 729 F. Supp. 2d 646, 665 (D. Del. 2010) (finding that evidence of a "young business" not "sufficiently capitalized to be able to pay" a predicted damages award weighed in favor of irreparable harm). AS Designs was only formed in December 2024. Colvin Decl., Ex. 6. [redacted] Dkt. 50-1 ¶¶ 20, 25.

In summary, Rare Breed is losing customers and sales, watching its pricing and reputation erode, and facing a growing wave of infringement—all by a company that has no apparent ability to satisfy a judgment.[7]

---

[7] To the extent AS Designs disputes causal nexus, the ARHK has no feature relevant to buyers other than what the Asserted Claims cover. DeMonico Decl. ¶ 60; *see Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1384 n.2 (Fed. Cir. 2017) (nexus requirement "may

### C. The Balance of the Equities Favors the Requested Injunctive Relief

Balancing the equities requires the Court to weigh the harm Rare Breed will suffer without an injunction against the harm Defendants will suffer if one is entered. *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1369 (Fed. Cir. 2017). This factor rarely defeats an injunction unless the equities tilt heavily toward the accused infringer. *See Hybritech*, 849 F.2d at 1457–58.

On one side, Rare Breed faces the loss of the FRT-RD3™'s launch window in the small, premium roller-delayed segment it reached first, lost lead time, reputational harm, and the risk that any judgment will be worth only what remains in AS Designs' accounts when it is entered. *See supra* § IV.B; *Trebro*, 748 F.3d at 1170–71 (recognizing early displacement weighs heavily in the patentee's favor in a small niche market with limited sales opportunities).

On the other side, AS Designs' harms are limited and self-inflicted. Where an accused infringer proceeds in the face of known patent rights, courts give little weight to claims of hardship. *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."); *see also Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012). Two independent reasons show that any claimed hardship to AS Designs is entitled to little or no equitable weight.

First, the ARHK has not launched. The requested TRO preserves the status quo: the inventory keeps its value, and if AS Designs prevails, it can sell the ARHK. *See PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996) (noting that a preliminary injunction preserves the status quo and thus creates minimal hardship to an accused infringer where "it would require only a temporary interruption in . . . production and sale of its [products]."); *see also Merial*

---

have little work to do" where the accused product's only relevant features are the claimed ones). Plaintiffs' fuller nexus argument appears at Dkt. 63 at 6–7, incorporated here.

*Ltd. v. Velcera Inc.*, 877 F. Supp. 2d 1348, 1366 (M.D. Ga. 2012) (finding the balance of hardships factor supporting issuance of injunction because enjoining the launch of an alleged infringer's product not yet on the market "would be far less burdensome than enjoining sales of a product that is already on the market."). AS Designs' worst case is a delayed launch.

Second, whatever hardship remains is self-inflicted twice over. AS Designs has continued to design, price, and build the ARHK after the August 9, 2025 cease-and-desist letter, after the *Hoffman* injunction, after suit, and after the '403 Patent issued on May 26, 2026. *See supra* §§ II.B.4, II.C, II.D. And it did so to undercut Rare Breed by pricing the ARHK against the FRT-RD3™. A defendant that plans its launch around taking the patentee's market has made the calculated choice *Windsurfing* describes, and the consequences of that choice are not hardship. *Celsis*, 664 F.3d at 931.

The balance of the equities thus favors a TRO.

**D. The Requested TRO Would Not Harm the Public Interest**

The public interest "nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015). Rare Breed practices these inventions, and no countervailing interest favors access to cheaper forced reset triggers. The United States agrees that injunctive relief here would advance public safety. In a Statement of Interest filed August 31, 2026, the Department of Justice explained that it has "a strong interest in promoting the safe use of firearms" and in "discouraging unregulated manufacture of forced reset triggers that allegedly infringe Rare Breed's patents," and advised that the "public interest should be weighed heavily in plaintiffs' favor." Statement of Interest at 1, 7. And because the ARHK has not launched, the requested Order takes nothing from the public: it removes no product and interrupts no supply.

### E. The Court Should Require No Security, or Alternatively, Nominal Security

Under Rule 65(c), the movant is required to give security only "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "[T]he amount of security required by the rule is a matter within the discretion of the trial court," and the Court "may elect to require no security at all." *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981) (citation omitted); *accord Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (affirming injunction issued without any bond). Rule 65(c) secures the costs and damages of a wrongful restraint during its pendency, and here that figure approaches zero. The ARHK has not launched: the requested TRO interrupts no revenue and only defers a launch of a product that keeps its value.

## V. CONCLUSION

For the above reasons, Rare Breed respectfully asks the Court to grant the Motion and issue a temporary restraining order enjoining Defendants and all other entities encompassed within Rule 65 from making, using, offering to sell, selling, or importing any Accused ARHK until a preliminary injunction can be briefed and entered.

DATED: September 2, 2026

Respectfully submitted,

*/s/ Matthew A. Colvin*
Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
bruce@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Glenn D. Bellamy *(admitted pro hac vice)*
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
Texas State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

*Attorneys for Plaintiffs*
*ABC IP, LLC and Rare Breed Triggers, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on September 2, 2026, to all counsel of record via electronic mail.

*/s/ Matthew A. Colvin*
Matthew A. Colvin

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred before Plaintiffs filed this Motion. On July 28, 2026, Mr. Matt Colvin for Plaintiffs emailed Messrs. John Skeriotis and Sergey Vernyuk for Defendants and requested a sample and design drawings of the ARHK to evaluate whether the ARHK infringes Plaintiffs' patents. Mr. Colvin explained that based on Defendants' public representations, the ARHK appears to function similarly to the ARC-Fire. Mr. Colvin further informed counsel for Defendants that Plaintiffs intended to file this Motion for a Temporary Restraining Order if Defendants refused to allow pre-release inspection of the ARHK. The Parties conferred via email on August 4, 2026, and August 5, 2026. Mr. Skeriotis responded on August 7, 2026, via email, and declined to produce information related to the ARHK or to permit pre-release inspection of the product.

The parties then conferred telephonically on August 31, 2026. Mr. Jory Hoffman attended for Plaintiffs. Mr. Skeriotis and Mr. Vernyuk attended for Defendants. The parties discussed their positions on this Motion. No agreement could be reached, leaving an open issue for the Court to resolve. Counsel for Defendants indicated that they oppose this Motion.

*/s/ Matthew A. Colvin*
Matthew A. Colvin

[redacted]

[redacted]

/s/ Matthew A. Colvin
Matthew A. Colvin