IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| IN RE: RARE BREED TRIGGERS PATENT LITIGATION | CASE NO. 4:26-md-03176-ALM |
| RARE BREED TRIGGERS, INC. et al.,<br>Plaintiffs,<br>vs.<br>AS DESIGNS, LLC et al.,<br>Defendants. | (CASE NO. 4:26-cv-00370-ALM)<br><br>CHIEF JUDGE AMOS L. MAZZANT |

**DEFENDANTS' MOTION FOR ALTERNATIVE SUBPOENA SERVICE AND FOR EXTENSION OF TIME TO FILE SUR-REPLY**

Defendants AS Designs, LLC, Matthew Karlovic, and Calvin Olson respectfully move for authorization to serve by alternative means discovery subpoenas on Cameron Smith – the person named as inventor on U.S. Patent 12,529,538 (the "'538 Patent," Dkt. #39-3) – and to extend the deadline for their sur-reply to Plaintiffs' Motion for Preliminary Injunction ("PI Mot.," Dkt. #28) until that discovery is obtained.

The need for the document and deposition subpoenas directed to Mr. Smith can be stated succinctly. Timothy Hoffman and Mr. Smith each claim to be the sole inventor of the subject matter claimed in the '538 Patent, and their accounts cannot both be true. Both men have submitted declarations to this Court – and Mr. Smith has also submitted one to the U.S. Patent and Trademark Office ("USPTO") – swearing under penalty of perjury that he alone is the inventor. One of them has therefore committed perjury before this Court, and if it is Mr. Smith, before the USPTO as well. Defendants accordingly seek the subpoenas directed to Mr. Smith, as more fully explained below.

# I. BACKGROUND FACTS

Plaintiffs sued Defendants for patent infringement, accusing several products, one of which is called the Super Safety. (Dkt. #1 at 6-8.[1])

## A. Super Safety Inventorship

The relevant community knows the Super Safety as the creation of Timothy Hoffman of Hoffman Tactical. Mr. Hoffman made various social media posts showing the Super Safety since early 2022. (*See* Dkt. #52-13 at ¶¶ 3-4, 7-11.) He formally released the design files for the Super Safety, along with an introductory YouTube video ("Introducing the Super Safety"), in July 2023. (*Id*. at ¶¶ 12-14; Dkt. #39-6.) Mr. Hoffman filed a provisional patent application on the Super Safety in September 2022[2] and submitted the Super Safety to the International Firearm Specialist Academy for examination approximately at the same time. (Dkt. #52-13 at ¶¶5-6.) He confirmed under penalty of perjury that he is the sole inventor of the Super Safety. (*Id*. at ¶¶ 2, 16, 23.)

More than a year after Mr. Hoffman filed his provisional patent application on the Super Safety, another individual – Cameron Smith – filed his own provisional application on the same device (the Super Safety). (*See* Dkt. #39-3 at 2 (identifying provisional application filed December 4, 2023).) Mr. Smith eventually filed a non-provisional patent application claiming the benefit of his provisional application and declaring himself to be the inventor, and that non-provisional application eventually issued as the '538 Patent. (*See id*.; Vernyuk Decl. Ex. 2 at 1-2.)

During prosecution of that non-provisional application, Mr. Smith submitted a declaration to the USPTO noting Mr. Hoffman's YouTube video introducing the Super Safety but claiming

[1] Page citations to the record in this case are to the page numbers in the ECF header.

[2] Mr. Hoffman allowed his provisional application to expire after publicly releasing the Super Safety design files. *See* Hoffman Decl. filed in *ABC IP, LLC v. Hoffman*, 1:25-cv-00389-CLS-CHS (E.D. Tenn.), Dkt. #26-1 (attached herein as Exhibit 1 to the supporting Declaration of Sergey Vernyuk ("Vernyuk Decl.")) at ¶¶ 24-25.

that *Mr. Smith* is the real inventor of the Super Safety. (Dkt. #64-5 at ¶¶ 6-8; Dkt. #64-6 at ¶¶ 1-3.) That declaration was submitted on Mr. Smith's behalf by Mr. Glenn Bellamy of Wood, Herron & Evans, LLP, after Mr. Smith executed a power of attorney appointing the practitioners of that firm as his attorneys to prosecute that application. (Vernyuk Decl. Ex. 2 at 10.)

Concurrently with that declaration, Mr. Smith also executed an assignment, transferring that application to Plaintiff ABC. (*Id*. at 3-6.) In that assignment, Mr. Smith agreed that he shall "undertake such other or additional actions in respect of the [assigned] Patents as are reasonably requested by" ABC. (*Id*. at 3 (¶3).)

When the '538 Patent issued, Plaintiffs moved to assert that patent against Defendants (Dkt. #20 and #39) and filed their PI Motion based on the asserted patents, including the '538 Patent. (*See* Dkt. #28 at 8; Dkt. #29-26.) Defendants opposed the PI Motion, explaining that the '538 Patent is invalid because it names an incorrect inventor. (*See* Dkt. #50 at 7; Dkt. #51 at ¶¶ 152-156.) Defendants' Opposition included a declaration from Mr. Hoffman itemizing various early corroborations of his inventorship of the Super Safety and explaining that Mr. Smith offered to pay Mr. Hoffman a royalty for the Super Safety design. (Dkt. #52-13 at ¶¶ 3-14, 17.) Defendants' Opposition included evidence showing that Mr. Smith's company (TwinBros) described the "Hoffman super safety" on its website, that TwinBros' purchase orders were also called the "Hoffman Super Safety," and that the Super Safety products procured from Mr. Smith were marked with the logo of Mr. Hoffman's company, all of which supports Mr. Hoffman's inventorship. (Dkt. #52 at ¶¶ 4-5; Dkt. #52-13 at 18-22.)

Plaintiffs filed their Reply to Defendants' Opposition. (Dkt. #63.) The Reply included yet another declaration from Mr. Smith. (Dkt. #64-5.) Mr. Smith included zero corroboration of his earlier invention of the Super Safety (preceding Mr. Hoffman's evidence). Nor did Mr. Smith

include even a single communication where he allegedly disclosed the Super Safety to Mr. Hoffman before the earliest dates listed by Mr. Hoffman. Instead, Mr. Smith's declaration simply contradicted Mr. Hoffman's assertions, declared that Mr. Smith is the Super Safety's inventor, and included an affidavit – allegedly signed by Mr. Hoffman in November 2025 (years after the relevant patent applications were filed and posts were made) – where Mr. Hoffman allegedly repudiates any claims of inventorship of the Super Safety. (*Id*. at ¶¶ 4-5, 9-21[3]; Dkt. #64-7.)

Even aside from various deficiencies of this alleged "Affidavt [*sic*] of Timothy Hoffman" (Mr. Smith admits its date is incorrect (Dkt. #64-5 at ¶17); it is not notarized; it does not have the "penalty of perjury" jurat to qualify as a declaration), the direct contradiction of Mr. Hoffman's testimony and Mr. Smith's testimony cries out for further investigation. Even Plaintiffs, when deposed last week, admitted that these individuals' assertions cannot be both correct. Further discovery from Mr. Smith is imperative.

**B. <u>Prior Service Attempts</u>**

Because of Mr. Smith's importance to the '538 Patent, Defendants issued a deposition subpoena and a document-production subpoena to Mr. Smith, giving Plaintiffs the required advance notice per Fed. R. Civ. P. 45(a)(4). (Vernyuk Decl. Ex. 3; Vernyuk Decl. Ex. 4 at 11.) Defendants' process server made three attempts to serve those subpoenas at the address[4] Mr. Smith previously provided to the Indiana Secretary of State as the member of TwinBros, in his 2022 bankruptcy petition, and when recently registering a new company. (*See* Dkt. #52-1; *In re Smith*, No. 22-30658-pes (Bankr. N.D. Ind.), Dkt. #1 at 2; Vernyuk Decl. Ex. 5 at 3.) However, no one

[3] The Docusign Certificate at the end of that declaration shows that Mr. Smith corresponded by email with personnel from Fish & Richardson (one of the firms representing Plaintiffs) as recently as August 6, 2026.

[4] 176 North Comstock Street, Wabash, Indiana 46992, which is in the Northern District of Indiana.

answered the door (even though noises were heard inside). (Vernyuk Decl. Ex. 6.)

Defendants tried again several weeks later, at Mr. Smith's residence address and at another address he identified for the company (Indiana Machining Solutions LLC) that he registered just last month with the Indiana Secretary of State. (Vernyuk Decl. Ex. 5 at 3; Vernyuk Decl. Ex. 7.) The process server made four attempts at each address (at different times and on different days), with no success. (Vernyuk Decl. Ex. 8.) Defendants tried to serve the subpoena via USPS Certified Mail, *see Doe v. Hersemann*, 155 F.R.D. 630, 630 (N.D. Ind. 1994), but again – no luck. (Vernyuk Decl. Ex. 9.) At this point, it is looking more and more likely that Mr. Smith is evading service.

Defendants also reached out to Plaintiffs for their assistance. (Vernyuk Decl. Ex. 4 at 10-11.) Having submitted Mr. Smith's declaration and asserted his patent, presumably they stand behind his testimony and have no fear of its examination. Mr. Smith is obligated (by his assignment of the '538 Patent to ABC, as noted above) to undertake such additional actions in respect to the patent as are reasonably requested by ABC, and participating in discovery regarding his patent seems eminently reasonable. *See also* Fed. R. Civ. P. 1 (parties obligated to cooperate to "secure the just, speedy, and inexpensive determination of every action"). Furthermore, Plaintiffs' counsel communicated with Mr. Smith multiple times over the past year, previously represented him (as noted above), and stated that they "expect to represent him" if he were deposed. (Vernyuk Decl. Ex. 4 at 12.) Surely Plaintiffs would see the necessity of working with Mr. Smith so that he would participate in the discovery process, especially given his centrality to the '538 Patent (which is one of the bases of Plaintiffs' PI Motion) and Plaintiffs' professed desire to avoid delays in resolving that motion (which would surely happen if additional time is required to obtain that discovery from Mr. Smith). But alas, Plaintiffs declined to help. Eventually, after

further prodding, Plaintiffs' counsel replied that they contacted Mr. Smith but that he did not give them permission to accept the subpoenas on his behalf.[5] (*Id.* at 5-9.)

Hearing from Plaintiffs' counsel that they neither currently represent Mr. Smith nor know if he is currently represented by other counsel (*Id.* at 6), Defendants' counsel reached out to him directly, using the email address (sales.imsllc@outlook.com) listed in his latest Reply declaration and elsewhere (Dkt. #64-5 at 6; Dkt. #64-6 at 4; Dkt. #64-8 at 2). Indeed, Mr. Smith listed this email address as the "service of process email" when registering his recent company with the Indiana Secretary of State. (Vernyuk Decl. Ex. 5 at 3.) Counsel explained the need to serve the subpoenas and requested a convenient time and location for the process server to deliver them. (Vernyuk Decl. Ex. 10). Counsel received delivery confirmation of that email, but Mr. Smith never replied. (Vernyuk Decl. Ex. 11.)

To summarize, Defendants tried to serve Mr. Smith a total of *eleven* times by process server (at locations Mr. Smith identified) in addition to attempts by USPS Certified Mail, with further unsuccessful attempts to coordinate service by email and through counsel. It is a safe bet that Mr. Smith is evading service. Thus, Defendants turn to the Court, seeking its help.

### C. Defendants' Sur-Reply to PI Motion

As noted above, Plaintiffs filed the PI Motion, Defendants filed their Opposition, and Plaintiffs filed their Reply (which introduced the recent Smith Declaration and alleged Hoffman affidavit), which leaves just Defendants' Sur-Reply before closing briefing. On August 17, 2026, the parties stipulated, and Defendants moved, to extend the deadline for Defendants' Sur-Reply until after the depositions of Plaintiffs were taken. (Dkt. #70.) That extension motion further noted Defendants' need to obtain discovery from Mr. Smith in light of his claim of inventorship

[5] It is not clear on what basis Mr. Smith could refuse ABC's request to participate in discovery, given the obligation in the assignment, unless perhaps ABC did not remind him of it when asking.

of the '538 Patent. (*Id*. at ¶¶ 8-12; *see also* Vernyuk Decl. Ex. 12 at 1.) Defendants thus requested that their Sur-Reply (on the PI Motion) be due after the depositions of Plaintiffs *and* Mr. Smith's discovery, while Plaintiffs did not agree to the extension including Mr. Smith. (*Id*.)

The Court granted the extension motion, extending the Sur-Reply deadline to ten days after completion of the last deposition of Plaintiffs. (Dkt. #81.) The last such deposition finished on September 17, 2026 (Dkt. #84 at 4), which would result in the Sur-Reply deadline being September 28, 2026. However, the Court's Order on the extension motion acknowledged that "Defendants seek discovery from and the deposition of third-party Cameron Smith." (Dkt. #81.) The Court did not resolve that issue but invited Defendants to seek appropriate relief from the Court if the parties are unable to resolve that issue. (*Id*.) Plaintiffs continue to oppose the requested discovery from Mr. Smith and thus do not agree to extend the Sur-Reply deadline until after such discovery is obtained, so Defendants must ask the Court.

## II. <u>APPLICABLE LAW</u>

### A. <u>Subpoena Service</u>

Because Mr. Smith resides in the Northern District of Indiana, compliance will be required in that District, and that District's law will govern any disputes. *See* Fed. R. Civ. P. 45(c), (d)(3), (g); *In re Ramaekers*, 33 F. Supp. 2d 312, 315-16 (S.D.N.Y. 1999) (where subpoena compliance is required in a District different from one where the underlying case is pending, the law of the compliance District applies)[6]; *cf. Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 423 (C.D. Cal. 1999) ("where the court hearing the discovery dispute and the court hearing the underlying action differ, the court hearing the discovery dispute must apply the choice of law rules of its forum").

Under the governing law, personal service is not required; service by USPS Certified Mail

[6] *Ramaekers* was decided before the 2013 amendments to Rule 45; under the prior version, the court enforcing compliance with a subpoena was also the court issuing the subpoena.

is also proper under Rule 45. *See Stepp v. Rexnord Indus.*, No. 1:13-cv-00683-TWP-MJD, 2014 WL3866135, at *2 (S.D. Ind. Aug. 5, 2014) (citing *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012)). For other delivery methods, courts must determine whether the method is a "sensible option" for delivering a copy to the named person. *Id*. To do so, courts have looked to other service provisions of the Federal Rules of Civil Procedure (e.g., Rule 5). *Id*. An alternative means of serving a subpoena (other than personal service or by certified mail) may be appropriate "once the party seeking evidence demonstrates an inability to effectuate service after a diligent effort." *Doe v. Purdue Univ.*, No. 2:17-CV-33-JPK, 2021 WL 84531, at *4 (N.D. Ind. Jan. 11, 2021); *see also OceanFirst Bank v. Hartford Fire Ins. Co.*, 794 F. Supp. 2d 752, 754 (E.D. Mich. 2011). Alternative service means include: mailing by first-class mail, posting at the known address of the prospective witness, and sending by email. *OceanFirst Bank*, 794 F. Supp. 2d at 754; *Snyder-Hill v. Ohio State Univ.*, No. 2:23-cv-2993, 2026 WL 1846747, at *1-2 (S.D. Ohio Jan. 12, 2026).

**B. Extension of Time**

The Court may, for good cause, extend Defendants' Sur-Reply deadline. *See* Fed. R. Civ. P. 6(b)(1)(A); Local Rule CV-7(e). Where an extension is sought prior to the expiration of the deadline, "a court may extend the period for any reason, upon a party's motion or even on its own initiative." *L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521, 524 (5th Cir. 2021); *see also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995) (court has "broad discretion to expand filing deadlines"); *Devillier v. Texas*, No. 3:20-cv-00223, 2023 WL 2744398, at *1 (S.D. Tex. Mar. 31, 2023) (Rule 6's "good cause" standard is "far more lenient" than Rule 16's standard). Timely requests for extensions of time normally will be granted absent bad faith or undue prejudice. *Willis v. Aron*, No. 4:23-cv-732-ALM-KPJ, 2024 WL 778384, at *2 (E.D. Tex. Feb.

26, 2024); *see also Lizarazo v. Miami-Dade Corr. & Rehab. Dep't,* 878 F.3d 1008, 1012 (11th Cir. 2017) (timely Rule 6(b)(1)(A) motions should be liberally granted).

## III. DISCUSSION

### A. Alternative Subpoena Service on Mr. Smith Is Warranted.

As recounted above, Defendants diligently attempted to serve Mr. Smith by personal service (*eleven* times) and certified mail, but to no avail in light of Mr. Smith's evasion. Defendants' attempts to arrange subpoena service directly with Mr. Smith and through Plaintiffs' counsel (Mr. Smith's former counsel) have also failed. At this point, Defendants have exhausted all means available to them without the Court's assistance. Thus, Defendants respectfully request authorization to serve the subpoenas by alternative means, namely, by: (1) mailing a copy of the subpoenas to Mr. Smith by first-class USPS mail; (2) posting a copy of the subpoenas at the last-known residence address of Mr. Smith (*see* n.4 above); and (3) emailing a copy of the subpoena to Mr. Smith at sales.imsllc@outlook.com. Each of these means is a sensible option for delivering a copy of the subpoenas to Mr. Smith. *See also* Fed. R. Civ. P. 5(b)(2)(C) and (E) (service by mailing to the person's last known address and by electronic means). Cumulatively, they will assure it.

Additionally, Defendants respectfully request the Court's authorization for the U.S. Marshals Service ("USMS") to attempt to serve the subpoenas on Mr. Smith. *See* 28 U.S.C. §566(c). In light of Mr. Smith's evasion of the more than dozen prior attempts, Defendants do not hold out much hope that this attempt will succeed, and thus request the alternative methods listed above. Nevertheless, Defendants are willing to attempt personal service through the USMS.[7]

[7] When Defendants' counsel previously spoke to the USMS, counsel was informed that an order from this Court would be required to the USMS's office in this District, and that the office would forward the lead to the USMS's office in the Northern District of Indiana for execution.

One last note on the request for alternative subpoena service: when asked, Plaintiffs indicated that they would oppose the request. But Plaintiffs do not have standing to oppose this request. *See Snyder-Hill*, 2026 WL 1846747, at *3. The subpoenas are not directed to them, but to Mr. Smith, who is not a party to this lawsuit. The subpoenas do not require Plaintiffs to do anything. Furthermore, Plaintiffs' assertion that discovery is not necessary or appropriate is directly contrary to their own expedited-discovery motion that insisted that discovery related to its PI Motion was necessary to "aid the parties and the Court by developing the record" on "critical preliminary injunction issues." (Dkt. #30 at 2.) Plaintiffs' own participation in requesting and producing discovery in this case belies its newfound claim that discovery is inappropriate here.

### B. Good Cause Exists to Extend Defendants' Sur-Reply Deadline.

As noted above, discovery from Mr. Smith is essential for the Court to properly resolve Plaintiffs' PI Motion. Mr. Hoffman testified, under penalty of perjury:

> "I am the sole inventor of the Super Safety . . . . Mr. Smith alleged [in his declaration to the USPTO] that I obtained the subject matter disclosed in [Mr. Hoffman's YouTube] video directly from him. That statement is completely false. As explained above, I invented the Super Safety and subsequently released it to the public. The truth is exactly opposite of what Mr. Smith alleges: he obtained the subject matter disclosed in [the '538 Patent's application] from me. . . . [T]he '538 Patent should list me, not Mr. Smith, as the inventor."

(Dkt. #52-13 at ¶¶ 2, 16, 23.) And Mr. Smith testified, also under penalty of perjury:

> "I am the inventor of the subject matter claimed in the '538 Patent. I conceived of that subject matter myself. Timothy Hoffman did not conceive of it, and he is not an inventor or a co-inventor of it. I have reviewed the declaration of Timothy Hoffman [Dkt. #52-13] that has been submitted in this action. To the extent Mr. Hoffman states in that declaration that he conceived of the subject matter claimed in the '538 Patent, or that he is its inventor, those statements are false."

(Dkt. #64-5 at ¶¶ 4-5.) Clearly, someone is committing perjury in front of this Court, and obtaining discovery from Mr. Smith is vital, especially since he, living in Indiana, is outside of this District's power to compel attendance at the preliminary injunction hearing. *See* Fed. R. Civ. P. 45(c)(1).

Indeed, one would have thought that Plaintiffs would have done everything they could to make Mr. Smith promptly available, especially in light of Defendants' repeated statements regarding the need for discovery from him. (*See, e.g.*, Vernyuk Decl. Ex. 4 at 10, 15, 17; Vernyuk Decl. Ex. 12 at 1; Vernyuk Decl. Ex. 13.) Without discovery from him, the Court would be deciding the PI Motion without critical evidence necessary to resolve whether Plaintiffs have met their burden on the preliminary-injunction factors. This justifies extending the Sur-Reply deadline so that such evidence can be provided to the Court.

There is no evidence of Defendants' bad faith in seeking the extension, nor is there any undue prejudice to Plaintiffs from the short delay necessary to obtain such evidence. Indeed, none of this extra expenditure of time and resources would be necessary if Plaintiffs simply insisted that Mr. Smith comply with his assignment obligations and authorize Plaintiffs' counsel (who previously represented him and likely will represent him again) to accept the subpoenas on his behalf. That would certainly expedite the acquisition of the necessary discovery, reduce any required time for the Sur-Reply, and move the PI Motion along towards a hearing and resolution. But with things the way they are, Defendants have no alternative but to ask for the Court's authorization of the above-listed service methods and for an extension of their Sur-Reply deadline until 10 days after such discovery (deposition and document production) is obtained from Mr. Smith. Indeed, that is what the Court instructed Defendants to do. (*See* Dkt. #81 at 1 ("[T]he Court is aware that Defendants seek discovery from and the deposition of third-party Cameron Smith. . . . If the parties are unable to reach an agreement regarding such discovery, Defendants must seek appropriate relief from the Court.").)

In the event the Court is not inclined to grant the requested extension of time until discovery is obtained from Mr. Smith, Defendants respectfully request a short, seven-day extension of time

from the denial, so that Defendants can submit their Sur-Reply on the PI Motion. Plaintiffs have made similar requests previously. *See, e.g., ABC IP, LLC v. Z3 Prods. LLC*, No. 4:26-cv-00367-ALM (E.D. Tex.), Dkt. #80 at 7 (Plaintiffs missed their deadline to file a reply to those defendants' opposition in light of Plaintiffs' motion to strike the opposition, but requesting 14 days to file the reply if the Court denies the motion to strike); *see also ABC IP, LLC v. Mister Guns, LLC*, No. 2:26-cv-00056-ALM (E.D. Tex.), Dkt. #77 at 4-5 (Plaintiffs failed to file a reply by the deadline, and instead moving, on the day the reply was due, to vacate the briefing schedule and enter an extended, "coordinated" schedule).

Respectfully submitted,

Dated: September 23, 2026

EMERSON, THOMSON & BENNETT, LLC
*/s/ Sergey Vernyuk*
John M. Skeriotis (Ohio Bar # 0069263)
jms@etblaw.com
Sergey Vernyuk (Ohio Bar # 0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile
*Attorneys for Defendants AS Designs, LLC, Matthew S. Karlovic, and Calvin Olson*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendants has complied with the meet and confer requirement in Local Rule CV-7(h). This Motion is opposed by Plaintiffs.

Sergey Vernyuk (counsel for Defendants) conferred with Glenn Bellamy (counsel for Plaintiffs) on September 11 and 15, 2026, by email and on September 15, 2026, by telephone regarding the relief requested in this Motion. The parties were unable to reach agreement. The parties' discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Sergey Vernyuk*
Counsel for Defendants