**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176** |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AS DESIGNS, LLC, MATTHEW S. KARLOVIC, CALVIN OLSON and JOHN DOE, an individual using the alias "s3igu2" and/or "Seagoo Threetwo,"<br><br>Defendants. | Civil Action No. 4:26-cv-00370-ALM<br><br>[redacted] |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ALTERNATIVE SUBPOENA SERVICE AND FOR EXTENSION OF TIME TO FILE SUR-REPLY**

# TABLE OF CONTENTS

**Page**


**I. INTRODUCTION** .......... 1

**II. BACKGROUND** .......... 2

- **A. The Court Authorized Narrowly Tailored PI Motion Discovery, and Defendants Agreed Their Preliminary PI Motion Discovery Would Be Reciprocal** .......... 2
- **B. Defendants Did Not Fully or Promptly Comply with the Court's Order** .......... 3
- **C. Defendants Received More Than Reciprocal Discovery, Including Testimony About Mr. Smith And His Inventions, and PI-Motion Discovery Here is Completed** .......... 4
- **D. Defendants Have Known Since July That They Desired Discovery From Non- Party Mr. Smith, that Plaintiffs Did Not Agree, and Such Discovery Required Subpoenas** .......... 5

**III. ARGUMENT** .......... 7

- **A. Defendants Have No Authorization to Take Non-Party Discovery at the PI Phase** .......... 7
- **B. Defendants' Smith Subpoenas Are Not Narrowly Tailored or Reciprocal** .......... 8
- **C. Defendants Already Have the Inventorship Record They Need for This Stage** .......... 10
- **D. The Proposed Alternative Service Methods Should Be Denied in Any Event** .......... 12
- **E. Defendants Have Not Shown Good Cause to Suspend Their Deadline Indefinitely** .......... 13
  - **1. Defendants Seek an Open-Ended Suspension, Not an Extension** .......... 13
  - **2. The Timing Problem is Defendants' Own Making** .......... 13
  - **3. Continued Extension Would Unduly Prejudice Plaintiffs** .......... 14
  - **4. Defendants' Alternative Request Should be Limited** .......... 15

**IV. CONCLUSION** .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001)....................11

*Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC*,
No. 4:26-cv-00448-ALM....................3, 6

*In re Dennis*,
330 F.3d 696 (5th Cir. 2003)....................12

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998)....................11

*Huawei Techs. Co., Ltd. v. Huang*,
No. 4:17-CV-893-ALM, 2018 WL 10127086 (E.D. Tex. Feb. 13, 2018)....................7

*Price v. Symsek*,
988 F.2d 1187 (Fed. Cir. 1993)....................11

*Ricks v. DMA Cos.*,
No. 1:22-cv-773-RP, 2024 WL 4810378 (W.D. Tex. Sept. 19, 2024)....................13

*Snyder-Hill v. Ohio State Univ.*,
No. 2:23-cv-2993, 2026 WL 1846747 (S.D. Ohio Jan. 12, 2026)....................8

*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981)....................10

**Statutes**

28 U.S.C. § 566(c)....................13

35 U.S.C. § 282(a)....................11

Plaintiffs respectfully submit this opposition to the Motion for Alternative Subpoena Service and for Extension of Time to File Sur-Reply (Dkt. #86) filed by Defendants AS Designs, LLC, Matthew S. Karlovic, and Calvin Olson (collectively, "Defendants").

## I. INTRODUCTION

Defendants' motion asks the Court to decide *how* Defendants can serve subpoenas on non-party Cameron Smith without first asking *whether* Defendants may take that discovery at all. They may not. Fact discovery has not opened. The only preliminary discovery the Court authorized is the narrowly tailored discovery it permitted Plaintiffs to take in support of their preliminary injunction motion (Dkt. #28, "PI Motion"; Dkt #31, Order Granting Pls. Motion for Expedited Discovery). Defendants' own PI Motion-phase discovery proceeded only under the parties' agreement that it would be *reciprocal* to Plaintiffs' discovery. No order from this Court and no agreement between parties authorized discovery from any non-party. Here, Defendants have already taken far more than limited reciprocal discovery, including extensive depositions from both Plaintiffs on inventorship questions involving Mr. Smith.

When the Court last extended Defendants' sur-reply deadline, it tied that deadline solely to depositions of the Plaintiffs and their principals, and expressly did not authorize additional delay of the sur-reply deadline to account for any discovery sought from Mr. Smith. (Dkt. #81.) Though Defendants have known since at least mid-July that they wanted discovery from Mr. Smith and such discovery required a subpoena, they waited until five days before their sur-reply deadline to seek relief. Defendants' requested relief seeks to suspend briefing on Plaintiffs' April 2026 PI Motion indefinitely, conditioned on the cooperation of a non-party in preliminary discovery while Defendants' infringement continues unabated.

To prevent further delay in resolving Plaintiffs' PI Motion that is otherwise ripe for a hearing pending only Defendants' filing of their sur-reply, Plaintiffs respectfully request this Court

to deny this motion. As a courtesy, given Defendants' existing sur-reply deadline fell three business days into the period for opposing this motion, Plaintiffs will not seek to strike Defendants' sur-reply as untimely if filed by October 5, 2026, a week beyond the existing deadline. (Dkt. #81.)

## II. BACKGROUND

### A. The Court Authorized Narrowly Tailored PI Motion Discovery, and Defendants Agreed Their Preliminary PI Motion Discovery Would Be Reciprocal

Because early discovery is appropriate only when narrowly tailored to issues the Court must decide on a preliminary injunction, Plaintiffs confined their discovery requests to what was essential to their burden on irreparable harm and the balance of the equities: three interrogatories, five requests for production, and depositions of Mr. Karlovic and a Rule 30(b)(6) designee of AS Designs on a limited set of defined topics. (Dkt. #30; Dkt. #30-3.) Before filing, Plaintiffs described that precise scope to Defendants, who responded that they did "not oppose the filing so long as this is reciprocated," and whose only other request was a longer response period. (Ex. 1, Email from E. DeToro to J. Skeriotis, Apr. 24, 2026; *id.*, Email from J. Skeriotis to M. Colvin, Apr. 24, 2026.) Plaintiffs' motion for limited, expedited discovery accordingly stated that Defendants did not oppose, provided they were "granted leave to conduct reciprocal expedited discovery." (*Id.*; Dkt. #30.) At no point in reaching that agreement did Defendants mention Mr. Smith or the need to obtain any discovery from any non-party.

The Court granted Plaintiffs' motion for expedited discovery on May 1, 2026, ordering Defendants to produce their responsive documents and information within 20 days and to make Defendants available for depositions. (Dkt. #31 at 1–2.) Defendants' discovery of Plaintiffs proceeded under, and often exceeded, the parties' reciprocity arrangement. The Court's subsequent orders addressed only the timing and length of Defendants' depositions of Plaintiffs and their

principals and their effect on Defendants' sur-reply deadline. (*See* Dkt. #81; *Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC*, Minute Entry for Proceedings (Aug. 28, 2026).)

**B. Defendants Did Not Fully or Promptly Comply with the Court's Order**

Defendants' May 21 discovery responses consisted of 49 pages of documents, many of them limited summaries of other materials prepared solely for purposes of this lawsuit, rather than Defendants' actual records kept in the ordinary course. Defendants' responses contained nothing at all in response to Plaintiffs' request for Defendants' communications with Hoffman Tactical or Timothy Hoffman (RFP No. 4). (Ex. 2, Letter from M. Colvin to J. Skeriotis, June 15, 2026 (describing material deficiencies in Defendants' discovery responses); Ex. 3, Email from B. Winterle to J. Skeriotis, July 2, 2026 (noting Defendants' ongoing failure to resolve material deficiencies despite Defendants' June 24, 2026, agreement to supplement).

Only after multiple written notices of deficiencies, a conference between counsel, and a last-minute cancellation by Defendants of a follow-up conference between counsel scheduled for July 10, 2026, did Defendants begin providing piecemeal supplements that the Court ordered them to produce two months earlier. (Ex. 4, Email with attached letter from J. Skeriotis to B. Winterle, July 10, 2026.) These include: a second production on July 15, supplemental interrogatory answers on July 21 (consisting of Bates-number citations), and a third production on July 27, just three days before Defendants' witnesses were scheduled to be deposed. (Ex. 5, Email from J. Skeriotis to B. Winterle, July 15, 2026; Ex. 6, Email from J. Skeriotis to B. Winterle, July 21, 2026; Ex. 7, Email from J. Skeriotis to M. Colvin, July 27, 2026.) No materials Defendants produced appear to contain any communications with Mr. Hoffman or Hoffman Tactical, despite Defendants' July 10 representation that they "will supplement" on RFP No. 4. (Ex. 4, Email with attached letter from J. Skeriotis to B. Winterle, July 10, 2026, at 5.) AS Designs' corporate designee then testified that Defendants exchanged "direct messages" with Mr. Hoffman concerning, *inter alia*, "the design of

the [accused] Super Safety." (Ex. 8, AS Designs 30(b)(6) Dep. at 117:14–21 and 118:18–122:4 (sealed).) Defendants have not produced these messages to Plaintiffs.

The parties had stipulated that Defendants' witnesses would be deposed after Defendants filed their opposition and before Plaintiffs' reply. (Dkt. #40 at 2–3.) Once Defendants' opposition was filed on July 9, Plaintiffs offered depositions on July 20, 21, or 22. Defendants insisted on July 30. (Ex. 9, Email Correspondence between B. Christoff and J. Skeriotis, July 13–15, 2026.)

### C. Defendants Received More Than Reciprocal Discovery, Including Testimony About Mr. Smith And His Inventions, and PI-Motion Discovery Here is Completed

Against Plaintiffs' targeted requests aimed at issues relevant to their PI Motion, Defendants served written and deposition discovery on a wide range of topics, including thirteen interrogatories comprising many discrete subparts, twenty-two document requests, and twenty-one Rule 30(b)(6) topics, later replaced with a notice served September 9, 2026, containing twenty-three topics for Rare Breed Triggers and fourteen topics for ABC IP, all of which Plaintiffs designated and prepared their witnesses to address, subject to reasonable stated objections. (Ex. 10, Pls.' Suppl. Objs. & Resps. to Defs.' Interrogatory No. 9, July 29, 2026; Ex. 11, Defs.' Notice of Rule 30(b)(6) Depositions, September 9, 2026.) Plaintiffs objected that Defendants' topics were "non-reciprocal" and "non-proportional." (Ex. 12, Email chain between B. Winterle and J. Skeriotis, Aug. 7–10, 2026.)

Defendants' June 24-served RFP No. 8 and Interrogatory No. 5 sought every document and fact Plaintiffs had concerning Mr. Smith's conception and inventorship. Plaintiffs produced documents responsive to part "(c)" of RFP No. 8 found after a reasonable search and stood on their other objections. Defendants never moved to compel or raised this issue. (Ex. 13, Pls.' Objs. & Resps. to Defs.' Requests for Production Nos. 1–22, July 14, 2026; Ex. 10, Pls.' Suppl. Objs. & Init'l Resps. to Defs.' Interrogatories Collectively Numbered as "No. 9", July 29, 2026, at 13–16.)

Defendants deposed both Plaintiffs and their two principals on September 16 and 17, 2026. Defendants' September 9, 2026, replacement Notice of Rule 30(b)(6) Depositions of Plaintiffs covered ABC's acquisition of the application that issued as the '538 Patent, "the consideration paid, the identity of each inventor and prior owner," and the license addendum executed on the '538 Patent's issue date. (Ex. 11, Defs.' Notice of Rule 30(b)(6) Depositions, September 9, 2026, Sched. A, Topic 6; Sched. B, Topics 2–3; Definitions ¶ 12) Defendants' counsel even told ABC's designee, "We are going to spend some time on Mr. Smith," and did so, as described below. (Ex. 14, Leleux Dep. at 90:7–8 (sealed).)

### D. Defendants Have Known Since July That They Desired Discovery From Non-Party Mr. Smith, that Plaintiffs Did Not Agree, and Such Discovery Required Subpoenas

Defendants first proposed deposing Mr. Smith on July 15. (Ex. 9, Email from J. Skeriotis to B. Christoff, July 15, 2026.) At the parties' July 20 conference, Plaintiffs' counsel promised to confirm that no counsel for Plaintiffs currently represented Mr. Smith and stated that a non-party deposition was neither proportional nor necessary at the PI Motion stage. Defendants responded that they would subpoena Mr. Smith if he was not controlled by Plaintiffs. On July 23, Defendants again requested Mr. Smith's deposition "if under [Plaintiffs'] control," and on July 24 Plaintiffs confirmed that they "do not control Cameron Smith." (Ex. 15, Email Correspondence between B. Christoff and J. Skeriotis, July 23–24, 2026.)[1] On July 29, 2026, Defendants served notice of subpoenas they "will be serving on Cameron Smith." (Ex. 16, Cameron Smith Subpoenas.)

[1]Defendants' motion states that Plaintiffs' counsel "expect[ed] to represent" Mr. Smith. (Dkt. #86 at 5, 10.) That July 24 statement concerned representation at any deposition that might ever occur in this lawsuit; it did not concede that a deposition was appropriate at the PI Motion stage. Plaintiffs had already told Defendants on July 20 that non-party discovery was disproportionate at the PI stage. Mr. Smith later declined to authorize Plaintiffs' counsel to accept service, and Plaintiffs' counsel does not represent him. (Ex. 15, Email Correspondence between B. Christoff and J. Skeriotis, July 23–24, 2026; Dkt. 86-5, Vernyuk Decl. Ex. 4 at 5–9.)

On August 7, the day after receiving Plaintiffs' PI Motion Reply (Dkt. #63) that included Mr. Smith's declaration (Dkt. #64-05), Defendants vaguely complained about Plaintiffs' discovery and threatened to use their undefined complaint as a basis for seeking an extension of their sur-reply deadline. However, Defendants' August 7 deficiency email did not even mention Mr. Smith. (Ex. 12, Email chain between J. Skeriotis and B. Winterle, Aug. 7-10, 2026.) The following business day, Plaintiffs assured that they would not hold Defendants to any sur-reply deadline falling before Plaintiffs' depositions, and asked Defendants to identify specifically what additional materials or information (beyond what Plaintiffs had just provided in their Reply and the accompanying exhibits served August 6) that Defendants contended they still needed in order to prepare their sur-reply. (Ex. 12, Email chain between J. Skeriotis and B. Winterle, Aug. 7-10, 2026.) Defendants never answered that question, not even with this motion.

The parties then stipulated to extend Defendants' sur-reply deadline to fall after Plaintiffs' depositions. (Dkt. #70.) Plaintiffs expressly declined to extend it for discovery from Mr. Smith. (*Id.*) Plaintiffs' depositions were then somewhat delayed by disputes among the MDL defendants, including Atrius, over whether and how multiple defendants wishing to depose Plaintiffs and their witnesses at the preliminary injunction stage would share deposition time, an issue the Court resolved at an August 28 telephonic hearing by ordering all such defendants to share seven hours with each of Plaintiffs' witnesses. (*See* Dkt. #81; *Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC*, No. 4:26-cv-00448-ALM, Minute Entry for Proceedings (Aug. 28, 2026).)

On September 14, the Court granted the parties' stipulated motion, extending the deadline to ten days after "completion of the last deposition of Plaintiffs." (Dkt. #81 at 1.) As to Mr. Smith, the Court stated that it was "aware that Defendants seek discovery from and the deposition of third-party Cameron Smith," that the Court "does not address that issue in this Order," and that "[i]f the

parties are unable to reach an agreement regarding such discovery, Defendants must seek appropriate relief from the Court." (*Id.*)[2] The parties never reached any agreement regarding such discovery. The depositions of Plaintiffs concluded September 17, making Defendants' sur-reply due September 28. (Dkt. #84 at 4.) Defendants then filed this motion on September 23, sixty-one days after learning that Plaintiffs do not control Mr. Smith, fifty-six days after providing Plaintiffs with notice of Defendants' intent to serve Mr. Smith with subpoenas, nine days after the Court's order, and a mere five days before their now-passed sur-reply deadline.

## III. ARGUMENT

### A. Defendants Have No Authorization to Take Non-Party Discovery at the PI Phase

A party "may not seek discovery from any source" before the Rule 26(f) conference except as authorized by rule, stipulation, or court order. Fed. R. Civ. P. 26(d)(1). A Rule 45 subpoena is discovery subject to that limit. Courts in this Circuit permit expedited discovery only upon a showing of good cause, considering the reasonableness of the request considering the entire record, including whether the request is narrowly tailored to the issues to be decided. *See, e.g.*, *Huawei Techs. Co., Ltd. v. Huang*, No. 4:17-CV-893-ALM, 2018 WL 10127086, at *1 (E.D. Tex. Feb. 13, 2018) (noting "[a]n increasing majority of district courts, including several in the Fifth Circuit" have adopted the good cause standard) (citation omitted).

Defendants' motion never addresses that standard. Defendants instead improperly ***assume*** the Smith subpoenas were authorized and ask only how they can be served. Its sole "good cause" discussion concerns Rule 6(b) and the sur-reply deadline. (Dkt. #86 at 8–11.) No order authorizes

---

[2]Defendants' quotation of this passage omits, by ellipsis, the Court's statement that it "does not address that issue in this Order." (Dkt. #86 at 11.) The omitted sentence confirms that the extended deadline was tied solely to Plaintiffs' depositions, not to any discovery from Mr. Smith.

subpoenas or other third-party discovery; the only stipulation covering Defendants' discovery was limited to reciprocal discovery; and the Court's prior order directing Defendants to "seek appropriate relief" (Dkt. #81) invited a showing, not a conclusion. That omission is dispositive.

Defendants' contention that Plaintiffs lack standing (Dkt. #86 at 10) misses the point. Defendants cite a single non-controlling case invoking a rule that does not apply.[3] Plaintiffs' opposition here concerns the timing and scope of discovery under Rules 26(b), (c), and (d) and compliance with this Court's orders. Any party may raise these issues, including by seeking a protective order. Fed. R. Civ. P. 26(c)(1). Plaintiffs are also directly affected, because the Smith subpoenas are now Defendants' latest tool for delaying resolution of the PI Motion. To the extent necessary to prevent further delay of such resolution, Plaintiffs request a protective order that discovery from Mr. Smith is not to be taken until fact discovery opens.

**B. Defendants' Smith Subpoenas Are Not Narrowly Tailored or Reciprocal**

Plaintiffs held themselves to the narrow-tailoring standard required at this stage. Each of Plaintiffs' requests was directed to a specific preliminary injunction factor, principally irreparable harm and the balance of the equities, and all of it was directed to the parties. Defendants' subpoenas to Smith are the opposite: they target a non-party; they go not to the equitable factors but to the merits of but one of Defendants' invalidity defenses to a single one of several patents asserted against them; and they open an inquiry into conception, corroboration, and years of communications that cannot fairly proceed in only one direction or at this stage.

Nor are Defendants' Smith subpoenas "reciprocal" to anything. Defendants conditioned their non-opposition on reciprocity. Reciprocal discovery, in its ordinary meaning and in the

[3] Defendants cite *Snyder-Hill v. Ohio State Univ.*, No. 2:23-cv-2993, 2026 WL 1846747 (S.D. Ohio Jan. 12, 2026), which concerns objections to a non-party subpoena that belong to the non-party, such as burden or privilege. Plaintiffs make no such burden or privilege objections in opposing this motion.

context of the parties' April 24 exchange, is discovery corresponding in kind and scope to Plaintiffs' own requested discovery, which was known to Defendants at that time. Plaintiffs asked to subpoena no one. Defendants may note that Plaintiffs' requests sought Defendants' communications with Mr. Hoffman or Hoffman Tactical. But that discovery was directed to a party, fell under the Court's order, and concerned Defendants' own conduct and relationships, including whether Defendants act in concert with a party enjoined in related litigation – an issue bearing on the balance of the equities and the scope of any injunction. (Dkt. #30-3 (topics including the "corporate relationship between AS Designs and Hoffman Tactical"); *see* Fed. R. Civ. P. 65(d)(2)(C).) It did not seek to litigate inventorship. And in any event, Defendants, having already completed extensive discovery of Plaintiffs, have already received more than reciprocal discovery.

Defendants' failure to seek permission to serve non-party discovery before attempting to do so also contradicts Defendants' own behavior. For example, Defendants treated the Court-approved deposition topics as the outer boundary of any PI Motion discovery into Defendants when they were the responding party. At Defendants' deposition, their counsel read Plaintiffs' topics into the record as "approved by the Court," objected that questioning went "way past the scope of what we're supposed to be talking about," and even instructed Defendants' witness not to answer questions Defendants unilaterally deemed "[o]utside the scope of the deposition topics." (Ex. 21, Karlovic 30(b)(1) Dep. at 13:19–14:19, 18:4–19:19 (sealed).)[4] Defendants cannot reasonably insist on strict limits to expedited discovery when responding to Plaintiffs' discovery and then claim license to take non-party discovery that no party agreed to and no order permits.

[4] Plaintiffs cite Defendants' instructions at the Karlovic deposition not to endorse them, but to show Defendants understood the scope of PI-phase discovery when they were responding to it.

Finally, Defendants' request would only open the door to even more discovery that is not necessary at this stage of the proceedings. If Defendants may depose Mr. Smith, Plaintiffs would be entitled to reciprocally depose Mr. Hoffman, whose declaration Defendants submitted and whom Defendants' witness described in favorable terms as someone with whom Defendants and their personnel communicate about the Super Safety (*Id*. at 118:11–120:2, 124:4–125:8 (sealed)). Plaintiffs will ultimately want to test Mr. Hoffman's claimed 2022 posts, his lapsed provisional application, and the circumstances of his October 2025 affidavit. But that time is not now. The preliminary injunction phase cannot and need not become a full inventorship trial. A preliminary injunction is customarily decided on a limited record precisely to avoid that result. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Plaintiffs intend to pursue discovery from Mr. Hoffman in merits discovery, which is also where discovery from Mr. Smith belongs.

### C. Defendants Already Have the Inventorship Record They Need for This Stage

Defendants' assertion that discovery from Mr. Smith is "vital" (Dkt. #86 at 10) ignores both that Defendants are accused of infringing patents other than the one Mr. Smith invented, as well as the discovery they have already taken on this subject. At the September 17 deposition, Defendants examined ABC IP's designee at length on: ABC IP's first contact and in-person meeting with Mr. Smith; the purchase agreement and its amendment, including the condition concerning sole inventorship; Mr. Smith's November 2025 meeting with Mr. Hoffman; how ABC IP obtained Mr. Hoffman's affidavit; Mr. Smith's USPTO and reply declarations; and what ABC did to evaluate Mr. Smith's account. Ex. 14, Leleux Dep. at 68:17–79:17, 90:7–125:11 (sealed). Defendants also covered much of the same ground with Rare Breed's designee the day before. Ex. 17, DeMonico Dep. at 99:15–104:9, 127:4–129:6, 132:2–146:15 (sealed). Plaintiffs also produced their underlying agreements with Mr. Smith, which Defendants used as exhibits. *Id*. at 100:19–101:5; Ex. 14, Leleux Dep. at 69:19–70:8 and 71:21–72:13.

Inventorship is not part of Plaintiffs' affirmative preliminary injunction showing. Alleged incorrect inventorship is one of Defendants' defenses, on which Defendants bear the burden. Plaintiffs' Reply declaration from Mr. Smith rebutted the Hoffman declaration that Defendants chose to submit with their opposition. Defendants never moved to compel or otherwise brought any discovery dispute to the Court on their Interrogatory No. 5 or any part of RFP No. 8, never responded to Plaintiffs' August 10 request that they identify what else they needed for their sur-reply after reviewing the Reply and accompanying exhibits (including Mr. Smith's declaration), and nonetheless were able to examine both of Plaintiffs' witnesses on this subject matter at length.

Most fundamentally, Defendants do not need Mr. Smith's deposition to make the argument they want to make. On a motion for preliminary injunction, the question is whether Defendants have raised a substantial question of invalidity on the record before the Court. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001). An issued patent is presumed valid, including as to its named inventor, 35 U.S.C. § 282(a), and a party alleging incorrect inventorship must prove it by clear and convincing evidence, with evidence to corroborate testimony of the proffered inventor. *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998) (citation omitted) (stating an inventor's testimony standing alone cannot "rise to the level of clear and convincing proof"); *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993) (noting that "oral testimony by an alleged inventor" is viewed with skepticism and "must be supported by some type of corroborating evidence"). Defendants already contend that Mr. Smith's account is uncorroborated. (Dkt. #86 at 3–4.) They are free to make that argument in their sur-reply on the existing record. Competing declarations are a routine feature of preliminary injunction practice; they are not a reason to convert that practice into merits discovery. If Defendants think Mr. Smith's declaration deserves less weight than other evidence because he

has not been examined about it, they are free to argue that in their sur-reply, just as Plaintiffs can argue about Mr. Hoffman's untested, competing recent declaration that contradicts his prior declaration explicitly stating that Mr. Smith is the sole inventor. Ex. 18, Affidavit of Timothy Hoffman dated October 10, 2025.

**D. The Proposed Alternative Service Methods Should Be Denied in Any Event**

Even if the Smith subpoenas were authorized or agreed to, Defendants' proposed alternative service methods are improper. Rule 45 contemplates personal delivery, together with tender of one day's attendance fee and mileage for a deposition subpoena. Fed. R. Civ. P. 45(b)(1); *see In re Dennis*, 330 F.3d 696, 704–05 (5th Cir. 2003). Defendants here rely on out-of-circuit authority (Dkt. #86 at 7–8), asking *this* Court to authorize the method of service. First-class mail, posting, and email cannot accomplish tender of fees, and Defendants' proposed order makes no provision for it. (Dkt. #86-15.) And Rule 5, on which Defendants also rely, governs service of papers on parties already before the court, not compulsory process on non-parties.

Defendants also have not shown the diligence they claim. Unanswered doors and a non-party's failure to agree to a deposition by one defendant among many at the preliminary injunction stage or to respond to a lawyer's email are not evidence of evasion; a non-party has no obligation whatsoever to help arrange his own service, and Mr. Smith's decision not to authorize Plaintiffs' counsel to accept any service on his behalf was his alone to make.[5] Moreover, a business solicitation from Mr. Smith that Defendants themselves produced in July lists his telephone number and invites the recipient to "call or text." Ex. 19, ASD 000055 (sealed). Defendants do not

[5] The clause in Mr. Smith's patent assignment to ABC IP that Defendants cite in their motion (Dkt. #86 at 5) runs to ABC IP, not to Defendants. Nothing in that agreement obliges ABC IP to procure non-party testimony sought by its adversary, certainly not at the preliminary injunction stage.

even claim to have tried calling or texting that phone number in the months since they notified Plaintiffs that they intended to serve Mr. Smith with their subpoenas.

Defendants' request that the Court direct the U.S. Marshals Service to serve their subpoenas fares no better. Section 566(c) of 28 U.S.C. permits such an order, but Defendants cite no authority directing the Marshals to serve a civil discovery subpoena on behalf of private litigants represented by counsel, and Defendants concede they "do not hold out much hope" it will succeed. (Dkt. #86 at 9.) *See, e.g.*, *Ricks v. DMA Cos.*, No. 1:22-cv-773-RP, 2024 WL 4810378, at *2 (W.D. Tex. Sept. 19, 2024) (denying request to have U.S. Marshals Service serve a subpoena).

### E. Defendants Have Not Shown Good Cause to Suspend Their Deadline Indefinitely

#### 1. Defendants Seek an Open-Ended Suspension, Not an Extension

Defendants ask that their sur-reply be due "ten (10) days after the production of documents by Mr. Cameron Smith . . . and Defendants' completion of Mr. Cameron Smith's deposition, whichever is later." (Dkt. #86-15 at 1–2.) That date depends on proceedings this Court would not control: as Defendants stress, any objection, motion to quash, or motion to compel must be decided in Indiana. (Dkt. #86 at 7; Fed. R. Civ. P. 45(d)(3), (g).) Defendants' proposed order here contains no outer limit. It would leave Plaintiffs' motion unresolved for as long as Mr. Smith's cooperation, or another court's docket, requires. Defendants have sought several times to delay resolution of the PI Motion and now seek to do so indefinitely.

#### 2. The Timing Problem is Defendants' Own Making

Defendants knew in July that Plaintiffs did not agree to non-party discovery at the PI Motion stage and that seeking the Court's authorization for a subpoena was their only route to Mr. Smith. They had prepared their subpoenas to Mr. Smith by July 29. Their own July 15 proposal contemplated deposing Mr. Smith by August 21 and filing their sur-reply by September 4. (Ex. 9,

Email from J. Skeriotis to B. Christoff, July 15, 2026.) When Defendants vaguely attempted to raise a discovery dispute to delay their sur-reply on August 7, Plaintiffs promptly accommodated Defendants' timing concern regarding reciprocal depositions of Plaintiffs and asked what else, specifically, Defendants contended they needed to prepare their sur-reply; Defendants went silent. (Ex. 12, Email chain between J. Skeriotis and B. Winterle, Aug. 7–10, 2026.)

Even after the Court directed Defendants to "seek appropriate relief" if they actually wanted permission to take any discovery from Mr. Smith (Dkt. #81), Defendants still waited nine more days, until after exhausting their final excuse for continued delay (completing depositions of Plaintiffs). A party that waits until the eve of a deadline to seek leave it has known for months it needed has not shown good cause. Plaintiffs objected to any third-party discovery in July, and again within Dkt. #70. The Court expressly put the burden on Defendants to seek ***appropriate*** relief. Yet Defendants still have not done so. This motion incorrectly asks how to serve the Smith subpoenas, not for the leave required to take that discovery at this stage in the first place.

**3. Continued Extension Would Unduly Prejudice Plaintiffs**

Defendants acknowledge that timely extension requests are granted "absent bad faith or undue prejudice." (Dkt. #86 at 8 (citing *Willis v. Aron*, No. 4:23-cv-732-ALM-KPJ, 2024 WL 778384, at *2 (E.D. Tex. Feb. 26, 2024).) But they ignore the undue prejudice present here. Plaintiffs sought preliminary relief over *five months ago* because Defendants' infringement is ongoing, and every week without a preliminary injunction is another week of lost sales and eroded market position. Defendants' own records show substantial amounts of AS Designs' monies moving to its principals and affiliated entities during the pendency of the preliminary injunction motion, which bears directly on whether money damages could be an adequate remedy. (Ex. 20, ASD 000056–58, 000066–67, 000073 (sealed).) Defendants' pattern of continuous delays in this case, including drawn-out, partial compliance with the Court's order on Plaintiffs' expedited

discovery (including their failure to produce their Hoffman-related communications) confirms that further delay, not a more complete record, is the intended result of the relief Defendants seek.

#### 4. Defendants' Alternative Request Should be Limited

Defendants alternatively request seven days after any denial of this motion to file their sur-reply. (Dkt. #86 at 11–12.) That request would again make Defendants' deadline for closing the briefing on the PI Motion dependent on the timing of the Court's actions, rather than on anything Defendants actually need to provide their sur-reply. Defendants have had Plaintiffs' Reply since August 6 and completed depositions of Plaintiffs on September 17. Their motion offers no reason why they could not have prepared and filed their sur-reply while this motion was pending.[6] Their deadline under the Court's order was September 28. (Dkt. #81; Dkt. #84 at 4.) As courtesy, Plaintiffs will not seek to strike Defendants' sur-reply if filed by Monday, October 5, 2026 (one week after the Court's deadline). However, Plaintiffs reserve all rights to move to strike any sur-reply materials filed by Defendants after that date. That courtesy is more than sufficient. Defendants should not be allowed to further drag out briefing on the PI Motion.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' Motion for Alternative Subpoena Service and for Extension of Time to File Sur-Reply (Dkt. #86) in its entirety; order that Defendants' sur-reply be filed no later than October 5, 2026, and that discovery from Mr. Smith shall not proceed until fact discovery opens, without prejudice to any party's right to seek discovery from Mr. Smith or Mr. Hoffman at that later time.

---

[6] Defendants' comparison to scheduling requests Plaintiffs made in other member cases (Dkt. #86 at 12) has no bearing on whether Defendants have shown good cause here. Each of Plaintiffs' requests sought a defined period; none sought to suspend a briefing deadline indefinitely pending a non-party's (or another court's) cooperation or schedule, as Defendants' motion does here.

DATED: October 2, 2026

Respectfully submitted,

*/s/ Matthew A. Colvin*

Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
bruce@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Oliver J. Richards
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130
E-mail: ojr@fr.com
Tel: (858) 678-5070
Fax: (858) 678-5099

Glenn D. Bellamy (admitted *pro hac vice*)
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

*Attorneys for Plaintiffs*
*ABC IP, LLC and Rare Breed Triggers, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 2, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Matthew A. Colvin*
Matthew A. Colvin

**CERTIFICATE OF MOTION TO FILE UNDER SEAL**

The undersigned hereby certifies that a Motion for Leave to File Under Seal this document, the Plaintiffs' Opposition to Defendants' Motion for Alternative Service and for Extension of Time to File Sur-Reply and Exhibits in support have been filed with the Court prior to the submission of these documents as Dkt. No. 93.

*/s/ Matthew A. Colvin*
Matthew A. Colvin