# EXHIBIT 11

[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE: RARE BREED TRIGGERS PATENT LITIGATION**<br><br>**This Document Relates To:**<br>*ABC IP, LLC, et al. v. Z3 Productions LLC, et al.*, No. 4:26-cv-00367-ALM<br>*ABC IP, LLC, et al. v. Hanes Tactical LLC, et al.*, No. 4:26-cv-00369-ALM<br>*ABC IP, LLC, et al. v. DNT LLC, et al.*, No. 4:26-cv-00377-ALM<br>*ABC IP, LLC, et al. v. Harrison Gunworks LLC, et al.*, No. 4:26-cv-00379-ALM<br>*ABC IP, LLC, et al. v. 80Mills LLC, et al.*, No. 4:26-cv-00380-ALM<br>*ABC IP, LLC, et al. v. Nguyen*, No. 4:26-cv-00425-ALM<br>*ABC IP, LLC, et al. v. AS Designs, LLC, et al.*, No. 4:26-cv-00370-ALM | § § § § § § § § § § § § § § § § § § § § | **MDL No. 3176**<br><br>**Case No. 4:26-md-03176-ALM**<br><br>*Preliminary-Injunction Discovery* |

**DEFENDANTS' NOTICE OF RULE 30(b)(6) DEPOSITIONS OF PLAINTIFFS RARE BREED TRIGGERS, INC. AND ABC IP, LLC**

**TO:** Plaintiffs ABC IP, LLC and Rare Breed Triggers, Inc., through their counsel of record, Fish & Richardson P.C., Wood Herron & Evans LLP, and Gillam & Smith, LLP.

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, including Rule 30(b)(6) and Local Rule CV-30, Defendants 80Mills LLC d/b/a Tactical Titan Supply and Pearson Gardner; DNT LLC d/b/a Deez Nutz Tactical and Zach Morrow; Hanes Tactical LLC and Damion Terrell Bennett; Harrison Gunworks LLC and Tyler Harrison; Steven Thanh Nguyen d/b/a Polymer Pew; and Z3 Productions LLC d/b/a Z3Pro and Ari Bytyqi; and AS Designs, LLC, Matthew S. Karlovic, and Calvin Olson (collectively, "Defendants"), by and through undersigned counsel, will take the depositions upon oral examination of Plaintiffs Rare

Breed Triggers, Inc. ("Rare Breed") and ABC IP, LLC ("ABC") (together, "Plaintiffs"), as follows:

| Deponent | Date and Time | Location | Matters for Examination |
|---|---|---|---|
| **Rare Breed Triggers, Inc.** | September 16, 2026, beginning at 9:00 a.m. Central Time | Offices of:<br>Fish and Richardson<br>1717 Main Street, Suite 5000<br>Dallas, TX 75201 | Schedule A |
| **ABC IP, LLC** | September 17, 2026, beginning at 9:00 a.m. Central Time | Same | Schedule B |

1. **Designation and preparation.** Pursuant to Rule 30(b)(6), Rare Breed and ABC must each designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf regarding the matters for examination set forth in Schedule A (as to Rare Breed) and Schedule B (as to ABC), and must prepare each designee to testify about information known or reasonably available to the organization on each such matter, including information held by the organization's owners, officers, employees, agents, and other representatives. Defendants request that Plaintiffs identify in writing, no later than two (2) business days before the first deposition, each person designated and, for each, the matters on which that person will testify.

2. **Conferral.** As Rule 30(b)(6) requires, Defendants will confer in good faith with Plaintiffs about the matters for examination before or promptly after service of this Notice, and are available to do so at Plaintiffs' earliest convenience. Defendants request that Plaintiffs raise any objection to any matter for examination promptly and sufficiently in advance of the depositions to permit its resolution, or its presentation to the Court, before the depositions begin. Defendants will

not agree to the withholding of a designee, or the limiting of a designee's preparation, on the basis of an objection first raised at the deposition.

3. **Manner of recording.** The depositions will be taken before a notary public or other officer authorized by law to administer oaths and will be recorded by stenographic means and by sound-and-visual (videographic) means pursuant to Rule 30(b)(3)(A). Real-time transcription may also be used. Defendants intend to use the testimony, including the video recording, at the hearing on the PI Motion and the AS Designs PI Motion, at trial, and for every other purpose permitted by the Federal Rules of Civil Procedure and the Federal Rules of Evidence. Pursuant to Rule 30(b)(3)(B), any party may, at its own expense and upon prior written notice, designate an additional method of recording.

4. **Attendance.** The witness, the deposition officer, and Defendants' examining counsel will attend in person at the location stated above; other counsel and party representatives may attend and participate remotely by videoconference through the court-reporting service.

5. **Duration and coordination.** Pursuant to agreement of the parties, the depositions of Rare Breed and ABC together are limited to seven (7) hours of examination on the record, which Defendants may allocate between the two deponents as they see fit, and are being taken in coordination with the separately noticed individual depositions of Lawrence DeMonico and Cole Leleux. Consistent with Rule 30(d)(1) and the Advisory Committee Notes thereto, only time spent on the record in examination by Defendants counts toward the limit; time consumed by recesses, by objections and colloquy of Plaintiffs' counsel, and by any examination by Plaintiffs' counsel does not. Each deposition will continue from day to day, excluding weekends and Court holidays, until completed. Defendants reserve the right to seek additional time under Rule 30(d)(1) if a

designee is not adequately prepared, if the examination is impeded or delayed, or if a deposition otherwise cannot be completed within the allotted time.

6. **Examination beyond the Schedules.** Nothing in this Notice limits Defendants' right to examine any designee on matters beyond those listed in the applicable Schedule, and an objection that a question exceeds the scope of a Schedule is not a basis for instructing the witness not to answer. Testimony on matters beyond the Schedule is given in the witness's individual capacity unless the organization designates otherwise. This Notice is without prejudice to, and does not limit, the separately noticed individual depositions of Messrs. DeMonico and Leleux.

7. **Reservation of rights.** Defendants reserve all rights, including the right to serve amended or supplemental notices, to notice additional depositions, and to seek relief from the Court for any failure to designate and adequately prepare witnesses in accordance with Rule 30(b)(6) and the parties agreement per the email exchange between Matt Colvin, counsel for Plaintiffs and John Skeriotis, counsel for Defendants.

Dated: September 9, 2026

Respectfully submitted,

*/s/ John M. Skeriotis*
John M. Skeriotis (Ohio Bar No. 0069263)
Sergey Vernyuk (Ohio Bar No. 0089101)
**EMERSON, THOMSON & BENNETT, LLC**
1914 Akron-Peninsula Road
Telephone: 330.434.9999
jms@etblaw.com
sv@etblaw.com

*Attorneys for Defendants 80Mills LLC d/b/a Tactical Titan Supply and Pearson Gardner; DNT LLC d/b/a Deez Nutz Tactical and Zach Morrow; Hanes Tactical LLC and Damion Terrell Bennett; Harrison Gunworks LLC and*

*Tyler Harrison; Steven Thanh Nguyen d/b/a Polymer Pew; and Z3 Productions LLC d/b/a Z3Pro and Ari Bytyqi and AS Designs, LLC, Matthew S. Karlovic, and Calvin Olson*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 9, 2026, a true and correct copy of the foregoing Notice, including Schedules A, B, and C, was served on all counsel of record for Plaintiffs by electronic mail. Pursuant to Fed. R. Civ. P. 5(d)(1)(A), this Notice is not being filed with the Court.

*/s/ John M. Skeriotis*
John M. Skeriotis

**DEFINITIONS AND INSTRUCTIONS**
**(Applicable to Schedules A, B, and C)**

**Definitions**

The following definitions apply to the Notice and to Schedules A, B, and C:

1. "**Plaintiffs**" means ABC IP, LLC and Rare Breed Triggers, Inc., individually and collectively.

2. "**ABC**" means ABC IP, LLC, together with its members, managers, officers, employees, agents, and representatives, and any predecessor, successor, parent, subsidiary, or Affiliate. In Schedule B, "**You**" and "**Your**" refer to ABC.

3. "**Rare Breed**" means Rare Breed Triggers, Inc., together with its shareholders, officers, directors, employees, agents, and representatives, and any predecessor, successor, parent, subsidiary, or Affiliate, including Rare Breed Triggers, LLC, Rare Breed Firearms, LLC, and any other entity that has done business under the Rare Breed name. In Schedule A, "**You**" and "**Your**" refer to Rare Breed.

4. "**Affiliate**" means any Person that directly or indirectly controls, is controlled by, or is under common ownership or control with the referenced entity.

5. "**Defendants**" means 80Mills LLC d/b/a Tactical Titan Supply and Pearson Gardner; DNT LLC d/b/a Deez Nutz Tactical and Zach Morrow; Hanes Tactical LLC and Damion Terrell Bennett; Harrison Gunworks LLC and Tyler Harrison; Steven Thanh Nguyen d/b/a Polymer Pew; and Z3 Productions LLC d/b/a Z3Pro and Ari Bytyqi; and AS Designs, LLC, Matthew S. Karlovic, and Calvin Olson.

6. "**Related Cases**" means the following member cases of this MDL: *ABC IP, LLC, et al. v. Z3 Productions LLC, et al.*, No. 4:26-cv-00367-ALM; *ABC IP, LLC, et al. v. Hanes Tactical LLC, et al.*, No. 4:26-cv-00369-ALM; *ABC IP, LLC, et al. v. DNT LLC, et al.*, No. 4:26-cv-00377-ALM; *ABC IP, LLC, et al. v. Harrison Gunworks LLC, et al.*, No. 4:26-cv-00379-ALM; *ABC IP, LLC, et al. v. 80Mills LLC, et al.*, No. 4:26-cv-00380-ALM; *ABC IP, LLC, et al. v. Nguyen*, No. 4:26-cv-00425-ALM; *ABC IP, LLC, et al. v. AS Designs, LLC, et al.*, No. 4:26-cv-00370-ALM.

7. "**PI Motion**" means Plaintiffs' Consolidated Motion for Preliminary Injunction (Dkt. 7), including all supporting declarations and exhibits (Dkts. 7-1 through 7-26 and 8 through 8-13), and any reply and reply declarations. "**AS Designs PI Motion**" means the motion for preliminary injunction filed in *ABC IP, LLC v. AS Designs, LLC*, No. 4:26-cv-00370-ALM (Dkt. 28), including all supporting and reply papers.

8. "**DeMonico Declarations**" means the declarations of Lawrence DeMonico dated April 24, 2026 (submitted with the AS Designs PI Motion) and May 28, 2026 (Dkt. 7-2), together with all exhibits thereto. "**Eichmann Declaration**" means the declaration of Plaintiffs' economics expert submitted as Dkt. 7-1 and any declaration by the same expert submitted with the AS Designs PI Motion or any reply. "**Luettke Declaration**" means the declaration

of Plaintiffs' technical expert submitted as Dkt. 8, together with its exhibits (Dkts. 8-1 through 8-13).

9. "**Asserted Patents**" means every United States patent asserted against any Defendant in any Related Case. "**PI Patents**" means the five Asserted Patents on which the PI Motion is based, referred to in the PI Motion as the '784, '247, '538, '159, and '403 patents.

10. "**Accused Products**" means each product, kit, component, part, jig, accessory, or design file identified in the PI Motion, the AS Designs PI Motion, or the operative complaint in any Related Case as allegedly infringing, or as allegedly used to infringe, any Asserted Patent, or that Plaintiffs seek to enjoin, including the products sold under the names Super Safety, ARC-Fire and all associated kits, components, and jigs.

11. "**Rare Breed Products**" means every forced-reset-trigger product that Rare Breed has made, offered for sale, or sold at any time, including the FRT-15, FRT-15L3, FRT-15L3 Flat, FRT-15C3, FRT-SG3, FRT-MR3, FRT-MR3 Flat, FRT-RD3 (AMBI), and FRT-RD3 (SEF), and all components, parts, and accessories therefor.

12. "**License Agreement**" means the license agreement between ABC and Rare Breed dated on or about October 20, 2022 concerning any Asserted Patent, together with every amendment, addendum (including the addendum dated on or about May 19, 2025 and the addendum executed on or about the issue date of the '538 patent), side letter, and related agreement, and every prior or successor license between ABC (or any predecessor owner of any Asserted Patent) and Rare Breed or any Affiliate.

13. "**DEF Consulting**" means the entity referred to as DEF Consulting in paragraphs 83 and 84 of the complaint filed January 19, 2023 in the DOJ Action, and any Affiliate or successor of that entity.

14. "**DOJ Action**" means *United States v. Rare Breed Triggers, LLC, et al.*, No. 1:23-cv-00369 (NRM) (RML) (E.D.N.Y.), including all proceedings therein. "**DOJ Settlement**" means the agreement or agreements resolving the DOJ Action, executed on or about May 13, 2025, together with all exhibits and related agreements.

15. "**Hoffman Action**" means *ABC IP, LLC, et al. v. Hoffman, et al.*, Case No. 4:26-cv-00378, including the temporary-restraining-order and preliminary-injunction proceedings therein. "**Peak Tactical Action**" means *ABC IP, LLC, et al. v. Peak Tactical, LLC, et al.*, No. 4:26-cv-00698, including the temporary-restraining-order and preliminary-injunction proceedings therein and the appeal, No. 26-1527 (Fed. Cir.).

16. "**Cease-and-Desist Letters**" means every letter sent by or on behalf of either Plaintiff to any Defendant asserting infringement of any Asserted Patent, including the letters dated March 28, 2025 (Hanes Tactical; Harrison Gunworks), March 31, 2025 (80Mills; DNT; Polymer Pew), and April 1, 2025 (Z3 Productions) (Dkts. 7-15 through 7-20), and the letter dated on or about August 9, 2025 to AS Designs.

17. "**Motion to Seal**" means Plaintiffs' Motion for Leave to File Under Seal (Dkt. 5), filed May 28, 2026.

18. "**Person**" means any natural person and any business, legal, or governmental entity or association.

19. "**Document**" has the broadest meaning permitted by Rule 34(a)(1)(A) and includes electronically stored information and every draft and non-identical copy. "**Communication**" means any transmission of information by any means, including in person, by telephone, and by electronic means.

20. "**Concerning**" means referring to, describing, evidencing, constituting, reflecting, supporting, contradicting, or otherwise bearing upon.

21. "**Identify**" means (a) as to a Person, to state the Person's name, last known address or business affiliation, and role; (b) as to a Document, to state its date, author, recipients, type, subject, and production number; and (c) as to a sale, customer, or order, to state the date, product, quantity, price, purchaser, and channel.

22. "**Relevant Period**" means January 1, 2020 through the date of the deposition, unless a matter for examination states otherwise.

**<u>Instructions</u>**

A. Each matter for examination includes the non-privileged facts and Documents Concerning it, the identity of Persons with knowledge of it, and the sources of the information on which the organization's testimony is based.

B. "Including" means "including without limitation." The singular includes the plural and vice versa, and "and" and "or" are to be read conjunctively or disjunctively as necessary to bring within a matter for examination all information that might otherwise be construed to fall outside it.

C. Each matter for examination that refers to a Defendant or an Accused Product applies separately to each Defendant and to each Accused Product.

D. Where a matter for examination refers to a statement in a declaration, brief, or other filing, it includes the factual basis for the statement, the source of the information, the Documents that support or contradict it, and the identity of each Person involved in preparing or verifying it.

E. If the organization contends that any matter for examination calls for privileged information, its designee must nonetheless be prepared to testify to all non-privileged information within the matter, and the organization must state the basis of any privilege asserted with sufficient particularity to permit evaluation of the claim.

F. These Definitions and Instructions apply to Schedules A, B, and C.

**SCHEDULE A**
**MATTERS FOR EXAMINATION — RARE BREED TRIGGERS, INC.**

Rare Breed Triggers, Inc. shall designate and prepare one or more witnesses to testify on its behalf regarding each of the following matters. The Definitions and Instructions set forth above apply.

1. Your corporate organization, including Your date and state of incorporation; each shareholder (and the percentage held) at any time during the Relevant Period; Your officers, directors, and managers; Your headcount by year; the relationship among Rare Breed, Rare Breed Triggers, LLC, Rare Breed Firearms, LLC, ABC, DEF Consulting, and any other Affiliate, including any common ownership or control; and any transfer of business, assets, customers, or goodwill among them.

2. Each Rare Breed Product, including its launch date; whether it is a single-stage or two-stage design; the platform(s) for which it is offered; its list price and every change in its price during the Relevant Period, with the date of and reason for each change; and Your plans for additional product launches or discontinuations during the next twelve months, including any launch cancelled, delayed, or altered because of any Defendant or Accused Product.

3. Your unit sales, gross and net revenue, average selling price, and units returned, by Rare Breed Product, by month, and by channel (direct-to-consumer, dealer or distributor, and other) from January 1, 2023 to the present; the Documents and systems in which that information is recorded; and the basis for the weekly sales figures stated in the DeMonico Declarations, including "roughly 3,000 units per week," "approximately $75,000 in weekly sales," and "approximately 1,000 units per week."

4. Your per-unit cost to manufacture and sell each Rare Breed Product, including each component of that cost (materials, labor, overhead, packaging, shipping, payment processing, warranty, and royalty); how, when, and by whom each cost figure was determined; every change in cost during the Relevant Period; the basis for the $125 (FRT-15L3) and $129 (FRT-MR3) cost figures stated in the DeMonico Declarations; the basis for the testimony given on Your behalf in the Hoffman Action and the Peak Tactical Action that the manufacturing cost was approximately $100; and whether and how that testimony was corrected in any proceeding.

5. Your per-unit profit on each Rare Breed Product, and the "combined lost profit" and per-unit "loss" figures stated in the DeMonico Declarations and the PI Motion (including the figures of $325 to $420 and $420.50), including each input, assumption, and calculation and the allocation of each figure between Rare Breed and ABC.

6. The License Agreement, including the negotiation and execution of the agreement and of each addendum (the Persons involved on each side, whether any Person acted for both parties, the dates, and the reasons for each addendum and for its timing); the $300 per-unit royalty and how it was determined; whether the royalty applies to every Rare Breed Product and to component sales; the circumstances in which the royalty may be changed and by whom; any payment obligation of Rare Breed to ABC other than the per-unit

royalty; and every royalty and other payment made by Rare Breed to ABC, to DEF Consulting, or to any owner of Rare Breed or ABC, by month, during the Relevant Period.

7. Your identification and monitoring of Persons offering forced-reset-trigger products that Plaintiffs contend infringe any Asserted Patent, including the identity of each such Person; the date on which and means by which You first became aware of each; the basis for the statements that approximately seventy such sellers existed by May 2025, that more than one hundred exist today, and that new sellers enter the market weekly; the identity of each Person You contend entered the market after any Defendant and the basis for attributing that entry to any Defendant; and Your knowledge of the sale, distribution, or availability of design files for such products.

8. Plaintiffs' enforcement activity Concerning the Asserted Patents, including each Cease-and-Desist Letter and each response to it; the date on which each Related Case and every other action asserting any Asserted Patent was filed and issued; each action in which a temporary restraining order or preliminary injunction was sought (including the Hoffman Action, the Peak Tactical Action, and the AS Designs case) and the dates on which each such motion was filed and decided; the non-privileged facts Concerning the timing of the PI Motion as to each Defendant, including the factual bases for the explanations offered at page 29 n.9 of the PI Motion (resources and the proceedings before the Judicial Panel on Multidistrict Litigation); and every license, covenant not to sue, settlement, or other resolution reached with any Person accused of infringing any Asserted Patent, including its date and financial terms.

9. Your market share and the market for forced-reset triggers, including the basis for the estimate that Your share is "less than 25%" (May 28, 2026 DeMonico Decl. ¶ 75) and for any contention that Your share was "effectively 100%" at any time; the market definition and time period used; every Document, data source, analysis, or method used to estimate the share of Rare Breed, of any Defendant, or of any other seller; and the identity, products, and prices of every competitor known to You.

10. Every sale, customer, dealer, distributor, or order that You contend You lost, in whole or in part, to any Defendant or Accused Product, including the identity of the customer or dealer, the date, the product and quantity involved, and the basis for attributing the loss to that Defendant rather than to any other seller; every Communication with any customer or dealer Concerning any Defendant or Accused Product; the information Concerning "former and prospective customers" and "product losses" referenced in the Motion to Seal (Dkt. 5 ¶ 4) and where that information appears in the PI Motion papers; East Valley Tactical, including its purchases of Rare Breed Products (approximately $350,000), the terms on which You offered or declined to offer it dealer status, and its purchases of any Accused Product; and Your repeat-customer data, including the statement that more than 5,000 customers have purchased more than one Rare Breed Product.

11. Your pricing decisions during the Relevant Period, including the decision to relaunch the FRT-15L3 at $499 in or about May 2025, the decision to reduce that price to $450 in or about August 2025, and every other decision to set, change, discount, or hold the price of any Rare Breed Product; for each such decision, the Person(s) who made it, the date, the reasons, the information considered (including the identity and prices of each competing

product reviewed), and every Document reflecting it; and the price comparisons in the PI Motion between Rare Breed Products and Accused Products, including the $80-to-$269 range attributed to Accused Products (Eichmann Decl. ¶ 5), the products, configurations, and components compared, and the basis for the contention that Accused Products serve as a reference point for consumers' price expectations.

12. Your dealer and distributor program, including its structure, terms, margins, and timing; the basis for the statements that the program was opened "sooner than planned" and on lower margins because of infringing competition; each dealer or distributor, its terms, and any change in its purchases; any dealer or distributor that carries or has carried any Accused Product; the "dealer relationships" information referenced in the Motion to Seal (Dkt. 5 ¶ 4); and the statement in the Eichmann Declaration (¶ 20 n.27) that Rare Breed does not have a dealer network.

13. Your manufacturing capacity and inventory, including the capacity of each production source by month during the Relevant Period; each increase or decrease in capacity and the date of and reason for it; inventory levels by Rare Breed Product by month; the basis for the statements that You "increased Your manufacturing capacity" and had "excess capacity and inventory" (May 28, 2026 DeMonico Decl. ¶ 71), including when the excess arose and which Accused Products had entered the market at that time; and any change in Your headcount, payroll, or production schedule that You attribute to any Defendant.

14. Your financial condition from January 1, 2023 to the present, including revenue, gross margin, operating income, cash, debt, and distributions to shareholders by quarter; any missed payment, layoff, or reduction in operations; any financing sought or obtained; Your ability to post security in any amount; and the basis for any contention that Your survival or ability to compete depends on preliminary relief against any Defendant.

15. Every analysis, calculation, estimate, model, or Document, whether or not prepared for litigation, that quantifies or attempts to quantify any harm Plaintiffs attribute to any Defendant or Accused Product—including lost unit sales, lost profits, price erosion, lost market share, lost customers or dealers, harm to reputation or goodwill, and harm to any business relationship—together with the inputs, data, and assumptions used, the Person(s) who prepared it, and the allocation of any such harm among the Defendants and among all other sellers of allegedly infringing products; and every fact on which Plaintiffs rely for any contention that such harm cannot be quantified or compensated by money damages.

16. The factual bases for Plaintiffs' contentions of reputational harm, loss of goodwill, consumer confusion, or safety or quality concerns attributable to any Defendant or Accused Product, including each exhibit relied upon (including Exhibits F through H to the April 24, 2026 DeMonico Declaration and Exhibits U and W to the May 28, 2026 DeMonico Declaration); every customer complaint, warranty claim, return, injury report, or regulatory inquiry Plaintiffs attribute to any Accused Product; Your monitoring of social-media and online forums (including Facebook groups, AR15.com, and YouTube); and the deletion, moderation, or preservation of any post or comment Concerning Rare Breed, any Defendant, or any Accused Product.

17. All facts known to You Concerning each Defendant, including each Defendant's products, prices, unit volumes, revenues, sales channels, customers, dealers, and financial condition; every purchase, test, inspection, or examination by or for You of any Defendant's product; when You learned that 80Mills had suspended, and Hanes Tactical had ceased, selling Accused Products; the basis for characterizing any Defendant as "infringement-built" or any Defendant's product as "defective" (PI Mot. 39 n.13); and any analysis, before or after the filing of the Related Cases, of any Defendant's ability to satisfy a judgment.

18. The relief sought in the PI Motion and the AS Designs PI Motion, including the identification of each product, kit, component, part, jig, and file Plaintiffs seek to enjoin (including cams, levers, detents, springs, pre-cut triggers, selectors, and "platform-extension" products) and the basis for contending that the sale of each such item displaces a sale of a Rare Breed Product; the harm Plaintiffs contend they would suffer during the pendency of this litigation absent an injunction, and the harm each Defendant would suffer if an injunction issues; Plaintiffs' request that no or nominal security be required (PI Mot. 40) and the basis for it; and whether preliminary relief is sought on any trademark claim asserted in any Related Case.

19. The DOJ Action and the DOJ Settlement, including the effect of the January 2023 temporary restraining order and preliminary injunction on Your sales, production, customers, dealers, and market position; the non-privileged terms of the DOJ Settlement Concerning the manufacture or sale of forced-reset triggers and the enforcement of the Asserted Patents; each Communication between Plaintiffs and any governmental entity Concerning any Defendant, any Accused Product, or any Related Case (including the Statement of Interest filed in the Hoffman Action); and the factual basis for any contention that the public interest favors preliminary relief against any Defendant.

20. The testimony given on Your behalf in the Hoffman Action (including at the hearing on or about January 28, 2026), in the Peak Tactical Action (including at the hearing on or about February 4, 2026), and in the DOJ Action Concerning Your costs, prices, sales, market share, capacity, and harm; Your position on the accuracy of that testimony; and each correction, errata sheet, or supplementation of it.

21. The DeMonico Declarations, including the factual basis for and source of each statement of fact and each figure in them; the differences between the April 24, 2026 and May 28, 2026 declarations and the reasons for them; the identification and contents of each exhibit (including Exhibits A through D to the May 28, 2026 declaration); and every Document reviewed or relied upon in preparing them.

22. The information, data, Documents, and assumptions provided by or on behalf of Plaintiffs to the authors of the Eichmann Declaration and the Luettke Declaration, and the Persons who provided them.

23. Your efforts to identify, preserve, collect, and produce Documents Concerning the matters in this Schedule and the Documents requested in Schedule C, and the Documents each designee reviewed to prepare for the deposition.

**SCHEDULE B**
**MATTERS FOR EXAMINATION — ABC IP, LLC**

ABC IP, LLC shall designate and prepare one or more witnesses to testify on its behalf regarding each of the following matters. The Definitions and Instructions set forth above apply.

1. Your organization, including Your date and state of formation; each member (and the percentage interest held) and each manager and officer at any time during the Relevant Period; Your employees, if any; Your offices and operations; whether You design, manufacture, sell, or distribute any product or provide any service; each source of Your revenue; and Your relationship with, and any common ownership or control shared with, Rare Breed, Rare Breed Triggers, LLC, Rare Breed Firearms, LLC, DEF Consulting, Lawrence DeMonico, Cole Leleux, and any other Affiliate or owner.

2. Your acquisition and ownership of each Asserted Patent and of the applications from which each issued, including the date and terms of each acquisition or assignment (including the acquisition on or about October 30, 2025 of the application that issued as the ’538 patent), the consideration paid, the identity of each inventor and prior owner, and every license, security interest, or other encumbrance on any Asserted Patent.

3. The License Agreement, including the negotiation and execution of the agreement and of each addendum (the Persons involved on each side, whether any Person acted for both parties, the dates, and the reasons for each addendum and for its timing); the $300 per-unit royalty and how it was determined, including whether it was compared to any other license, industry benchmark, or valuation; the scope of the license (exclusivity, field, products, components, and sublicensing rights); Your rights and obligations Concerning enforcement of the Asserted Patents; the circumstances in which the royalty may be modified and by whom; and every royalty and other payment received by You from Rare Breed, by month, during the Relevant Period.

4. The use and distribution of Your revenue, including every distribution, payment, loan, or transfer by You to any member, manager, owner, or Affiliate (including Lawrence DeMonico, Cole Leleux, and DEF Consulting) during the Relevant Period, and Your assets, liabilities, revenue, and expenses by year.

5. Every license, covenant not to sue, release, settlement, or offer to license Concerning any Asserted Patent granted or made to any Person other than Rare Breed, including its date, the products covered, and its financial terms (including any royalty rate or lump-sum payment); every request for a license and Your response; and Your willingness or unwillingness to license any Asserted Patent to any Defendant or to any other Person, and the reasons for it.

6. The harm You contend You have suffered or will suffer from the sale of any Accused Product by any Defendant, including the nature of each such harm, its quantification, the method of quantification, and the basis for any contention that it cannot be compensated by money; the relationship between Your alleged harm and the per-unit royalty under the License Agreement; and Your per-unit and aggregate “loss” as stated or implied in the PI Motion.

7. Plaintiffs' enforcement activity Concerning the Asserted Patents, including the date on which You first became aware of each Defendant and each Accused Product; each Cease-and-Desist Letter and each response to it; the date of filing of each Related Case and of every other action asserting any Asserted Patent; each action in which a temporary restraining order or preliminary injunction was sought (including the Hoffman Action, the Peak Tactical Action, and the AS Designs case) and the dates on which each such motion was filed and decided; and the non-privileged facts Concerning the timing of the PI Motion as to each Defendant, including the factual bases for the explanations offered at page 29 n.9 of the PI Motion.

8. All facts known to You Concerning each Defendant, including each Defendant's products, prices, unit volumes, revenues, sales channels, customers, and financial condition; every purchase, test, inspection, or examination by or for You of any Defendant's product; and any analysis of any Defendant's ability to satisfy a judgment.

9. The Hoffman Action and the Peak Tactical Action, including the harm You alleged in each, the testimony given on Your behalf, the relief obtained or denied, and the pending appeal in the Peak Tactical Action.

10. Your involvement, if any, in the DOJ Action and the DOJ Settlement, including any provision of the DOJ Settlement Concerning You, the Asserted Patents, or the License Agreement, and every Communication between You and any governmental entity Concerning any Defendant, any Accused Product, or any Related Case.

11. The relief sought in the PI Motion and the AS Designs PI Motion insofar as it concerns You, including the products, components, and parts You seek to enjoin; the basis for the request that no or nominal security be required; Your ability to pay damages to any Defendant that is wrongfully enjoined; and whether preliminary relief is sought on any trademark claim asserted in any Related Case.

12. Your role in the preparation of the DeMonico Declarations, the Eichmann Declaration, and the Luettke Declaration, including each fact, Document, or datum You supplied and each statement in those declarations made on Your behalf or Concerning You.

13. The Motion to Seal insofar as it concerns You, including the "license agreements" and any other information of Yours that Plaintiffs represented to be confidential (Dkt. 5 ¶ 4) and where that information appears in the PI Motion papers.

14. Your efforts to identify, preserve, collect, and produce Documents Concerning the matters in this Schedule and the Documents requested in Schedule C, and the Documents each designee reviewed to prepare for the deposition.