[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176** |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AS DESIGNS, LLC, MATTHEW S. KARLOVIC, CALVIN OLSON and JOHN DOE, an individual using the alias "s3igu2" and/or "Seagoo Threetwo,"<br><br>Defendants. | Civil Action No. 4:26-cv-00370-ALM |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR**
**<u>MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. 74)</u>**

[redacted]

Rare Breed sells the FRT-RD3™, the only drop-in forced reset trigger for HK roller-delayed firearms like the MP5. AS Designs is days from launching a competitor, the ARHK, which it says is built on its ARC-Fire technology. The ARC-Fire is already accused in this case, and Rare Breed has shown that it likely infringes 23 claims across four patents. Rare Breed asks the Court to restrain the ARHK's launch. All four TRO factors support that relief.

On the ***merits***, AS Designs does not deny that the ARHK is built on ARC-Fire technology, and it offers no new reason the ARHK would not infringe Rare Breed's patents. It objects only that no complaint names the ARHK and that Rare Breed's expert declarations evade the page limits. But this District lets a complaint accuse products by example, and Rare Breed's complaint accuses products that embody the patented technology, "including" the ARC-Fire. On ***irreparable harm***, the ARHK will cost Rare Breed unrecoverable sales, depress its prices, end its head start, and damage its reputation as the innovator. [redacted] [redacted] at [redacted] less. AS Designs calls that harm "modest, uncertain, and compensable." Dkt. 88 ("Opp.") at 19. [redacted] The ***balance of hardships*** and the ***public interest*** also favor relief. AS Designs built the ARHK knowing about Rare Breed's patents, and a TRO would only temporarily delay its launch unless the Court later enters a PI. By contrast, Rare Breed would lose a market position that money cannot restore. And the United States has told this Court that the public interest weighs heavily in Rare Breed's favor.

Since Rare Breed moved, AS Designs announced on October 4 that the ARHK is finished, that it doubled its first drop, and that it will release it "in a few weeks." Colvin Reply Decl. Ex. A.

[redacted]

It has refused to hold the launch until the Court rules, and it has asked the Court to strike the TRO Motion or deny it "without reaching the merits." Dkt. 89 at 1. The Court should hear the TRO Motion at its earliest convenience and restrain the ARHK's launch.

## I. Rare Breed Is Likely to Succeed on the Merits: AS Designs Does Not Dispute That the ARHK Is Built on ARC-Fire Technology, Which Likely Infringes

The parties agree on the legal standard for likelihood of success on the merits. Mot. 16; Opp. 3. Rare Breed meets that standard because AS Designs tacitly concedes the ARHK is built on its ARC-Fire technology. Nowhere in its 24-page opposition does AS Designs say the ARHK works differently from the ARC-Fire; nor do any of its three declarants. *See generally* Opp.; Dkt. 88-1 ("Karlovic Decl."); Dkt. 88-2 ("Phillips Decl."); Dkt. 88-3 ("Vernyuk Decl.").

The reasons the ARC-Fire likely infringes, and the reasons Rare Breed's patents are likely valid, apply equally to the ARHK. Dkt. 28 at 7–10; Dkt. 63 at 8–13; Luettke I Decl. Exs. A, C, F; Luettke Reply Decl. Exs. H–J; Luettke II Decl. Ex. K; Mot. 16–20. Infringement and validity both turn on the same feature: a trigger the shooter can switch between a standard semi-automatic mode and a forced reset mode. The '159, '247, and '403 patents each claim a trigger with both modes, and AS Designs advertises that the ARHK has both. Mot. 17–18. Blakley, the reference at the center of Dr. Batzer's invalidity opinions, does not. Dkt. 63 at 11–12; Harrison Decl. ¶ 81.

AS Designs' first procedural argument is that Rare Breed cannot enjoin the ARHK because no complaint names it as an accused product. Opp. 3–4. But this District has "long" refused to require a complaint to identify each accused product by name. *Estech Sys. IP, LLC v. Grandstream Networks Inc.*, No. 2:24-cv-1018, 2025 WL 2780145, at *2 (E.D. Tex. Sept. 30, 2025) (citation modified). A complaint may instead identify the accused products as those that "include, but are not limited to," listed examples. *See Zinser v. Vivint, LLC*, No. 4:25-cv-1030, 2026 WL 2533161, at *1 n.1, *3 (E.D. Tex. Aug. 27, 2026) (Mazzant, J.). Rare Breed's complaint accuses products

[redacted]

"including" the ARC-Fire. Dkt. 39 ¶ 31; Dkt. 75-25 at 2. It thus gives AS Designs fair notice that the ARHK is accused, and a TRO may reach it.

AS Designs' second procedural argument is that Rare Breed's reliance on Mr. Luettke's declarations is "a transparent attempt to circumvent this District's page limits." Opp. 6. But this District's page limits "exclud[e] attachments." E.D. Tex. L.R. CV-7(a)(2).

## II. The ARHK's Launch Will Irreparably Harm Rare Breed

### 1. Rare Breed Need Not Show That Every Loss Is Incalculable to Meet Its Burden

Irreparable harm asks whether the patentee faces injury that "no damages payment, however great, could address"—not whether every loss defies calculation. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). "[T]he simple fact that one could, if pressed, compute a money damages award does not always preclude a finding of irreparable harm." *Id.* *Celsis* affirmed a preliminary injunction based on price erosion, lost goodwill, and lost business opportunities during a product's "growth stage," because there was "no effective way . . . to ascertain the people who do not knock on the door." *Id.* at 930–31 (quoting the district court).

AS Designs argues that Rare Breed's own economist, Mr. Eichmann, "concedes" that the harm can be measured. Opp. 9–10. But Mr. Eichmann concedes only that some of it can be measured, like the profit on a specific sale or certain historical price effects. Eichmann Decl. ¶¶ 122, 147. He then explains that money damages are unlikely to capture the rest—the chance to win customers while the FRT-RD3™ is new, the potential effect on pricing conditions, and the loss of Rare Breed's remaining head start. *Id.* ¶ 123; Eichmann Reply Decl. ¶¶ 12, 44–45, 51. Nor will sales records necessarily show the buyers who put off or abandoned a purchase. Eichmann Decl. ¶ 148. Nor is the first sale the only one at stake: [redacted] Eichmann Reply Decl. ¶¶ 7, 41.

[redacted]

### 2. AS Designs Has No Answer to the Harms the ARHK Will Cause

*Lost sales and market share.* AS Designs says the record does not show that the ARHK will divert sales from the FRT-RD3™. Opp. 13–14. [redacted] Those sales will largely come from Rare Breed: the FRT-RD3™ is currently the only drop-in forced reset trigger for these rifles, and the alternatives require discarding the original grip frame that HK owners prize. Mot. 20–21; DeMonico Decl. ¶¶ 34, 55. AS Designs' claim that Rare Breed "often has no inventory to divert," Opp. 13, rests on a "SOLD OUT" page its expert dates to about September 1. Phillips Decl. ¶ 24 & fig. 2. That page was captured May 19, DeMonico Decl. at 37 (Ex. 8), and Mr. Phillips's own archive shows the FRT-RD3™ available on August 23, Phillips Decl. fig. 2. [redacted]

*Price erosion.* The ARHK will undercut the FRT-RD3™ by $65 to $100, lowering the price buyers expect for a drop-in HK trigger. Karlovic Decl. ¶ 15; DeMonico Decl. ¶ 75. If Rare Breed cuts its price to compete, it cannot raise it again later without alienating buyers who expect the lower one. That lost goodwill is irreparable. *Celsis*, 664 F.3d at 930 (affirming finding of irreparable harm from lost goodwill "when an effort is later made to restore the original price").

[redacted]

AS Designs' remaining objections—that Rare Breed's lead has run out, that its reputational harm is self-inflicted, and that new entrants are speculative, Opp. 15–16—ignore what AS Designs elsewhere concedes: the ARHK would be the FRT-RD3™'s "only drop-in competitor." Opp. 22. Losing that exclusivity, and with it Rare Breed's lead and its reputation as the innovator, is the irreparable harm. *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) (reversing denial of permanent injunction where patentee "suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions"); *id.* at 1344–45 (patentee's "reputation as an innovator will certainly be damaged if customers found the same 'innovations' appearing in competitors' [products]"); *Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1456 (Fed. Cir. 1988) (affirming PI where "other potential infringers will be encouraged to infringe").

**3. AS Designs Could Not Pay a Damages Award**

Damages are inadequate for a second reason: AS Designs will not have the money to pay them. The question is not whether an infringer is profitable today, but whether a damages award will be "a meaningful one" when it comes. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155–56 (Fed. Cir. 2011); *see Eli Lilly & Co. v. Premo Pharm. Lab'ys, Inc.*, 630 F.2d 120, 137 (3d Cir. 1980) (infringer's profits small next to its potential liability). [redacted]

[redacted]

### 4. Rare Breed Moved Within Weeks of the ARHK Entering "Full Production," and It Has Never Licensed an Accused Infringer

AS Designs first argues that Rare Breed waited too long to seek a TRO—seven months, counting from the ARHK's January announcement. Opp. 8–9. But delay runs from when the harm becomes concrete, not from a first announcement. *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1380 (Fed. Cir. 2024) (no delay where the patentee sued within months of "events which would significantly increase the harm"). AS Designs' only case found delay where the patentee waited almost 17 months and offered no "good explanation." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995). Here, the ARHK became concrete on July 1, when AS Designs announced "full production" and a 1,500-unit drop "in roughly 8 weeks." DeMonico Decl. ¶ 67. Rare Breed moved on September 2, and the ARHK still has not shipped. Colvin Reply Decl. Ex. A.

AS Designs next argues that Rare Breed's licenses defeat irreparable harm. Opp. 11. But licensing is "but one factor," and its weight turns on "the identity of the past licensees, the experience in the market since the licenses were granted, and the identity of the new infringer." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008). Three kinds of licenses carry little weight. The first does not put the licensee in competition with the patentee. *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 703 (Fed. Cir. 2008). The second excludes the patentee's market. *Canon, Inc. v. Color Imaging, Inc.*, 292 F. Supp. 3d 1339, 1350, 1352 (N.D. Ga. 2018) (enjoining a direct competitor where a rival's license "expressly prohibited" competing sales). The third is part of a broader business relationship, not a simple sale of patent rights for cash. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 449 F. App'x 923, 933 (Fed. Cir. 2011) (affirming an injunction where a customer's license reflected the patentee's role as its supplier).

[redacted]

[redacted] Colvin Reply Decl. Ex. C (PDA) §§ 3.2.1, 3.2.5, at ABCRBT-MDL-0004715–16; MSA § 3.2, at ABCRBT-MDL-0004744; DeMonico Dep. 77:13–25. [redacted] *See* PDA § 4.1, at ABCRBT-MDL-0004716–17 [redacted]; MSA §§ 2.8–2.9, at ABCRBT-MDL-0004744 [redacted]

**5. Forced Reset Is Why Buyers Want the ARHK**

AS Designs builds its nexus argument on one sentence from *Apple I*: "Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature." Opp. 7–8 (quoting *Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012)). But the patented feature does not have to be the only reason people buy the product; it just has to be more than an "insubstantial" one. *Genband US LLC v. Metaswitch*

[1] AS Designs also argues that Rare Breed's settlements show its harm can be measured in money. Opp. 11. But a patentee "may compromise its legitimate business interests, even to the point of enduring irreparable harm, to avoid protracted litigation." *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 323 F. Supp. 3d 1071, 1078 (W.D. Wis. 2018); *see also* DeMonico Dep. 85:17–86:2. [redacted] DeMonico Dep. 77:1–6, 85:21–86:7, 87:23–88:2.

[redacted]

*Networks Corp.*, 861 F.3d 1378, 1384 (Fed. Cir. 2017) (standard lies between "sole reason" and "insubstantial connection"); *Natera*, 106 F.4th at 1380 (citing *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 642 (Fed. Cir. 2015)) (feature need only "impact consumers' decisions to purchase"). Caliber compatibility, trigger feel, and dislike of Rare Breed may explain why a buyer chooses the ARHK over the FRT-RD3™. They do not explain why anyone would buy the ARHK without the patented forced reset technology. Opp. 11–12.

### III. AS Designs Built the ARHK Knowing of Rare Breed's Patents, and a TRO Only Delays Its Launch

The balance of hardships weighs what each side stands to lose. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Federal Circuit treats forcing a patentee "to compete against its own patented invention" as a "substantial hardship." *See Bosch*, 659 F.3d at 1156. AS Designs argues that its own side weighs more for two reasons. Opp. 17–19. But AS Designs took its risk knowingly, and its loss is only a delay.

First, AS Designs reads *Windsurfing* to discount self-inflicted hardship only after a finding of infringement. Opp. 18–19 (citing *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)). But the Federal Circuit applies the same reasoning before judgment, upholding preliminary relief where the accused infringer's harms were "the result of its own calculated risk to launch its product pre-judgment." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006). AS Designs does not deny that it built the ARHK knowing of Rare Breed's patents, Opp. 18–19, and Section I shows likely infringement. That is the calculated risk the cases describe.

Second, AS Designs says a restraint would put its projected profit at risk. Opp. 17. But a restraint postpones those sales, and nothing in the record shows it would destroy them. AS Designs has already postponed the launch on its own: it "pushed the drop back to double the size of the initial drop." Colvin Reply Decl. Ex. A. A TRO might cost AS Designs time, not its business.

[redacted]

### IV. A TRO Injures No Critical Public Interest, and the United States Says the Public Interest Favors Rare Breed

AS Designs agrees on the test: whether "some critical public interest . . . would be injured by the grant of preliminary relief." *Hybritech*, 849 F.2d at 1458; *see* Opp. 21. But AS Designs identifies no such interest. It offers only lower prices, consumer choice, and competition. Opp. 21–22. Lower prices do not "justify infringing a patent"; if they did, "most injunctions would be denied because copiers universally price their products lower than innovators." *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993).

The only public interest specific to this case favors Rare Breed. The United States has told this Court that it has "a strong interest" in "discouraging unregulated manufacture of forced reset triggers that allegedly infringe Rare Breed's patents," and that the "public interest should be weighed heavily in Plaintiffs' favor." *In re Rare Breed Triggers Pat. Litig.*, No. 4:26-md-03176, Dkt. 44 at 1, 7 (E.D. Tex. Aug. 31, 2026) ("Statement of Interest"). AS Designs says that interest does not reach the ARHK because the ARHK is not a handgun trigger and Rare Breed's settlement with the government names only the '223 patent. Opp. 20–21. But the United States tied its interest to neither. The settlement "does not bind other potential manufacturers," so Rare Breed's suits "would support ATF's public safety efforts, if successful in enjoining use of FRTs by third parties." Statement of Interest at 7. AS Designs is one of those manufacturers.

### V. A TRO Would Delay AS Designs' Sales, Not Destroy Them, So Security Should Be Nominal

Rule 65(c) security pays "the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount "is a matter for the discretion of the trial court," which "may elect to require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (citation modified).

[redacted]

[redacted] That figure counts every sale a TRO would delay as a sale lost. Eichmann Reply Decl. ¶¶ 11, 60–63. AS Designs' customers are already waiting. AS Designs has imposed "a limit of 1" on its first two drops in response to "concerns regarding availability/selling out." Colvin Reply Decl. Ex. A. In a prior Rare Breed case, the defendants claimed that "10,000 people" were "ready to purchase" at launch and that a TRO would cost them "much, much higher than $20,000"; the court found a $20,000 bond adequate. Dkt. 29-19 at 16 (court granting an injunction in *ABC IP, LLC v. Hoffman*, No. 1:25-cv-00389 (E.D. Tenn. Feb. 11, 2026)).

The Court should require no security or, at most, nominal security. If the Court requires security, $25,000 would suffice; another Texas court found that amount "appropriate to protect" a competitor enjoined by a patent preliminary injunction. *Gonza LLC v. Mission Competition Fitness Equip. LLC*, No. 6:21-cv-00771-ADA, Dkt. 17 at 18 (W.D. Tex. Dec. 1, 2021).

## VI. Conclusion

For these reasons, Rare Breed respectfully asks the Court to hear the TRO Motion at its earliest convenience, grant it, and enter the proposed order restraining the ARHK's launch until the Court decides whether to enter a preliminary injunction.

[redacted]

DATED: October 13, 2026

Respectfully submitted,

*/s/ Matthew A. Colvin*

Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
Bret T. Winterle
Texas Bar No. 24084249
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
bruce@fr.com
winterle@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Oliver J. Richards
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130
E-mail: ojr@fr.com
Tel: (858) 678-5070
Fax: (858) 678-5099

Glenn D. Bellamy (admitted *pro hac vice*)
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

[redacted]

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

*Attorneys for Plaintiffs*
*ABC IP, LLC and Rare Breed Triggers, Inc.*

[redacted]

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 13, 2026, to all counsel of record via electronic mail.

*/s/ Carl E. Bruce*
Carl E. Bruce

[redacted]

**CERTIFICATE OF MOTION TO FILE UNDER SEAL**

The undersigned hereby certifies that a Motion for Leave to File Under Seal this document has been filed with the Court prior to the submission of this document as Dkt. 108.

*/s/ Carl E. Bruce*
Carl E. Bruce