[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176**<br>[redacted] |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AS DESIGNS, LLC, MATTHEW S. KARLOVIC, CALVIN OLSON and JOHN DOE, an individual using the alias "s3igu2" and/or "Seagoo Threetwo,"<br><br>Defendants. | Civil Action No. 4:26-cv-00370-ALM |

**ABC IP, LLC AND RARE BREED TRIGGERS, INC.'S**
**MOTION FOR TEMPORARY RESTRAINING ORDER**
**<u>AND PRELIMINARY INJUNCTION AGAINST THE ARHK</u>**

[redacted]

# TABLE OF CONTENTS


Page

I. Introduction ..... 1

II. Background ..... 2

A. Rare Breed's Forced Reset Trigger Technology ..... 2

B. Plaintiffs ABC and RBT ..... 3

1. Rare Breed Spends Years and Millions to Pioneer and Defend a Market for Its Forced Reset Trigger Products ..... 3

2. Rare Breed's Products ..... 3

3. Rare Breed Develops and Releases the FRT-RD3™ for the HK Roller-Delayed Market ..... 5

4. The Asserted Patents ..... 7

C. The Defendants and the Accused ARHK Forced Reset Trigger ..... 8

1. The Defendants: AS Designs, Karlovic, Olson, and S3igu2 ..... 8

2. The Accused ARHK and AS Designs' Plan to [redacted] the FRT-RD3™ ..... 10

D. Rare Breed's Patent Enforcement Efforts ..... 12

E. JPML Centralization Proceedings ..... 14

F. The Court Denied Rare Breed's First Motion Because the ARHK Had Not Been Released ..... 14

G. Rare Breed Received an ARHK Unit ..... 16

III. Legal Standard ..... 15

IV. Argument ..... 16

A. Rare Breed Is Likely to Succeed on the Merits ..... 16

1. The ARHK Infringes the Asserted Claims ..... 16

a) The Asserted Claims Should Carry Their Plain Meaning ..... 17

b) [redacted] ..... 17

c) The ARHK Meets Every Element of the Asserted Claims ..... 19

[redacted]

**TABLE OF CONTENTS (cont'd)**

**Page**


2. The Asserted Patents Are Presumed Valid and Enforceable ............ 21

B. Rare Breed Is Suffering, and Will Continue to Suffer, Irreparable Harm Without Injunctive Relief........................................................................ 23

1. Rare Breed Is Losing Market Share in a Niche, Limited, and Emerging Market...................................................................... 25

2. AS Designs Priced the ARHK to Erode Rare Breed's Price.............. 27

3. Each Day of Continued Infringement Erodes Rare Breed's Patent-Earned Lead Time...................................................... 27

4. Defendants Are Eroding Rare Breed's Innovator Reputation and Premium Brand Identity ...................................................... 28

5. Absent an Injunction, Infringers Will Likely Overrun the HK Forced Reset Market as They Did with the AR-15's................... 30

6. Damages Would Be Inadequate Because AS Designs' Owners Withdraw Revenue as It Arrives: The Company Is Worth About [redacted] Against Nearly [redacted] in Accused Sales...... 30

7. Rare Breed Moved Promptly, and Its One Sublicense Does Not Make Its Harm Compensable................................................. 32

8. Forced Reset Is Why Buyers Want the ARHK.................................. 34

C. The Balance of the Equities Favors the Requested Injunctive Relief........... 35

D. The Requested Relief Would Not Harm the Public Interest.......................... 37

E. The Court Should Require No Security, or Alternatively, Nominal Security........................................................................................ 38

V. Conclusion ................................................................................................. 39

[redacted]

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABC Corp. I v. P'ship & Unincorporated Ass'ns*,
52 F.4th 934 (Fed. Cir. 2022) ....................15

*ABC IP, LLC v. Cloak Indus., Inc.*,
No. 4:26-cv-00608-ALM, Dkt. 48-3....................5, 13, 28

*ABC IP, LLC v. Hoffman*,
No. 1:25-cv-00389, Dkt. 14 (E.D. Tenn. Jan. 7, 2026)....................12, 13, 23, 36

*ABC IP, LLC v. Peak Tactical, LLC*,
No. 26-1527 (Fed. Cir.)....................13

*ABC IP, LLC v. Peak Tactical, LLC*,
No. 4:26-cv-00698, Dkt. 6 (E.D. Tex. Jan. 16, 2026)....................13

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015)....................37

*Aspen Tech., Inc. v. M3 Tech., Inc.*,
569 F. App'x 259 (5th Cir. 2014) ....................30, 32

*Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC*,
No. 4:26-cv-00448-ALM, Dkt. 57 (E.D. Tex. Aug. 3, 2026)....................13

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020)....................28

*Canon Inc. v. GCC Int'l Ltd.*,
450 F. Supp. 2d 243 (S.D.N.Y. 2006), *aff'd*, 263 F. App'x 57 (Fed. Cir. 2008)....................30

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012)....................35, 36

*City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*,
636 F.2d 1084 (5th Cir. 1981) ....................38

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013)....................28, 29

*EcoNova Inc. v. DPS Utah*,
No. 12-cv-174, 2012 WL 5944257 (D. Utah Nov. 28, 2012)....................26

*Eli Lilly & Co. v. Premo Pharm. Lab'ys, Inc.*,
630 F.2d 120 (3d Cir. 1980)....................30

[redacted]

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*EyeTicket Corp. v. Unisys Corp.*,
155 F. Supp. 2d 527 (E.D. Va. 2001) ....................28

*Fred Hutchinson Cancer Rsch. Ctr. v. BioPet Vet Lab, Inc.*,
No. 10-cv-616, 2011 WL 1119565 (E.D. Va. Mar. 1, 2011)....................22, 25, 26

*Garland v. Cargill*,
602 U.S. 406 (2024)....................2

*Hybritech Inc. v. Abbott Lab'ys*,
849 F.2d 1446 (Fed. Cir. 1988)....................30, 35

*Janvey v. Alguire*,
647 F.3d 585 (5th Cir. 2011) ....................32

*Kaepa, Inc. v. Achilles Corp.*,
76 F.3d 624 (5th Cir. 1996) ....................38

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
829 F.2d 1171 (D.C. Cir. 1987) ....................15

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) ....................17

*Merial Ltd. v. Velcera Inc.*,
877 F. Supp. 2d 1348 (M.D. Ga. 2012) ....................35

*Metalcraft of Mayville, Inc. v. Toro Co.*,
848 F.3d 1358 (Fed. Cir. 2017)....................35

*Munilla Constr. Mgmt., LLC v. United States*,
130 Fed. Cl. 131 (2016) ....................15

*Natera, Inc. v. NeoGenomics Lab'ys, Inc.*,
106 F.4th 1369 (Fed. Cir. 2024) ....................16, 25

*In re NORPLANT Contraceptive Prods. Liab. Litig.*,
878 F. Supp. 972 (E.D. Tex. 1995)....................15

*Oakley, Inc. v. Sunglass Hut Int'l*,
316 F.3d 1331 (Fed. Cir. 2003)....................16

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc)....................17

*PPG Indus., Inc. v. Guardian Indus. Corp.*,
75 F.3d 1558 (Fed. Cir. 1996)....................35

[redacted]

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*In re: Rare Breed Triggers Pat. Litig.*,
4:26-md-03176, Dkt. 7 (E.D. Tex. May 29, 2026) ....................13

*In re: Rare Breed Triggers Pat. Litig.*,
MDL No. 3176, Dkt. 44 (J.P.M.L. Apr. 2, 2026) ....................14

*Rare Breed Triggers v. Big Daddy Enters. Inc.*,
C.A. No. 1:21-cv-149-RH-HTC, Dkt. 1 (N.D. Fla. Sept. 15, 2021)....................12

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011)....................30

*S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*,
No. 06-cv-9170, 2014 WL 1652436 (E.D. La. Apr. 24, 2014)....................28

*Symbol Techs., Inc. v. Janam Techs. LLC*,
729 F. Supp. 2d 646 (D. Del. 2010)....................32

*Thorner v. Sony Comput. Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)....................17

*Tinnus Enters., LLC v. Telebrands Corp.*,
846 F.3d 1190 (Fed. Cir. 2017)....................15, 28

*Titan Tire Corp. v. Case New Holland, Inc.*,
566 F.3d 1372 (Fed. Cir. 2009)....................22

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
748 F.3d 1159 (Fed. Cir. 2014)....................25, 26, 35

*Turner v. Epps*,
460 F. App'x 322 (5th Cir. 2012) ....................15

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
782 F.2d 995 (Fed. Cir. 1986)....................35, 36

*Yang v. Does 1-89*,
No. 4:24-cv-922, 2024 WL 5190362 (E.D. Tex. Dec. 20, 2024) ....................27

**Statutes**

35 U.S.C. § 283....................15

[redacted]

## TABLE OF AUTHORITIES (cont'd)

**Other Authorities** **Page(s)**

Fed. R. Civ. P. 65(c) ....................................................................................................................38

Fed. R. Civ. P. 65(d)(2)....................................................................................................................15

[redacted]

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| ’159 Patent | U.S. Patent No. 12,578,159 |
| ’247 Patent | U.S. Patent No. 12,038,247 |
| ’403 Patent | U.S. Patent No. 12,636,403 |
| ’784 Patent | U.S. Patent No. 12,031,784 |
| ABC | ABC IP, LLC |
| Accused Product | ARHK |
| AMBI | A firearm with an ambidextrous lower-housing pattern |
| ARC-Fire | AS Designs’ forced reset trigger for AR-15-pattern rifles, accused in Plaintiffs’ pending PI Motion (Dkt. 28) |
| ARHK | AS Designs’ forced reset trigger for HK roller-delayed firearms, sold as the “ARHK” |
| AS Designs | AS Designs, LLC |
| Asserted Claims | Claims 1, 3, 6–7, 9–11, 14–17 of the ’159 Patent; Claim 15 of the ’247 Patent; Claims 14–15, 17, 29–30, 32, 38–39 of the ’403 Patent; and Claims 1 and 4 of the ’784 Patent |
| Asserted Patents | The ’159 Patent, ’247 Patent, ’403 Patent, and ’784 Patent |
| ATF | Bureau of Alcohol, Tobacco, Firearms and Explosives |
| Colvin ARHK Decl. | Declaration of Matthew A. Colvin, filed with this Motion |
| Colvin Decl. | Declaration of Matthew A. Colvin, Dkt. 75. Its exhibits are at Dkts. 75-1 to 75-6 (Exs. 1–6), 74-5 to 74-9 (Exs. 7–11; public versions, Dkts. 79-5 to 79-9), 75-7 (Ex. 12), and 74-10 (Ex. 13; public version, Dkt. 79-10) |
| Defendants | AS Designs, LLC, Matthew S. Karlovic, Calvin Olson and John Doe (as those entities are defined and individuals identified herein) |
| DeMonico B&T Decl. | Declaration of Lawrence DeMonico, *ABC IP, LLC v. Cloak Indus., Inc.*, No. 4:26-cv-00608-ALM, Dkt. 48-3. |
| DeMonico Decl. | Declaration of Lawrence DeMonico, Dkt. 74-2 (sealed; public version, Dkt. 79-2). Its exhibits are at Dkts. 75-8 to 75-41 (Exs. 1–34), 74-3 (Ex. 35; public version, Dkt. 79-3), 76 and 76-1 to 76-41 (Exs. 36–77), and 74-4 (Ex. 78; public version, Dkt. 79-4) |
| DOJ | Department of Justice |
| Eichmann Decl. | Declaration of Richard J. Eichmann, Dkt. 74-1 (sealed; public version, Dkt. 79-1) |
| Eichmann Reply Decl. | Reply Declaration of Richard J. Eichmann, Dkt. 109-1 (sealed) |
| Harrison Validity Decl. | Declaration of Dr. Joshua C. Harrison, Dkt. 64 |
| HK | A family of roller-delayed blowback firearms built around Heckler & Koch’s MP5 and its variants, together with clones and variants from other manufacturers. |
| JPML | Judicial Panel on Multidistrict Litigation |

[redacted]

| | |
|---|---|
| Luettke ARHK Decl. | Declaration of Brian Luettke, filed with this Motion |
| Luettke I Decl. | Declaration of Brian Luettke, *In re Rare Breed Patent Litig.*, No. 4:26-md-03176, Dkt. 29-21. |
| Luettke II Decl. | Declaration of Brian Luettke, *In re Rare Breed Patent Litig.*, No. 4:26-md-03176, Dkt. 8. |
| Luettke Reply Decl. | Reply Declaration of Brian Luettke, Dkt. 64-1. Its exhibits are at Dkts. 64-2 to 64-4 (Exs. H–J) |
| MDL | Multidistrict Litigation |
| Order | Memorandum Opinion and Order, Dkt. 113 (Oct. 20, 2026) |
| PI | Preliminary Injunction |
| Plaintiffs | ABC IP, LLC and Rare Breed Triggers, Inc. |
| Rare Breed | ABC IP, LLC and Rare Breed Triggers, Inc. |
| RBT | Rare Breed Triggers, Inc. |
| SEF | A firearm with a single-side lower-housing pattern |
| Statement of Inter-esr | Statement of Interest of The United States of America, *In re Rare Breed Patent Litig.*, No. 4:26-md-03176, Dkt. 44 |
| Tr. | Transcript of the Oct. 15, 2026 hearing (Colvin ARHK Decl. Ex. A) |
| TRO | Temporary Restraining Order |
| TRO Motion | Plaintiffs' Motion for Temporary Restraining Order, Dkt. 74 |
| Wide Open Trigger | Forced-reset trigger device at issue in *Rare Breed Triggers v. Big Daddy Enters. Inc.*, C.A. No. 1:21-cv-149-RH-HTC (N.D. Fla.). The case resolved in October 2022 with a consent judgment and permanent injunction. See *id.* at Dkt. 194. |

[redacted]

## I. INTRODUCTION

When Rare Breed first asked the Court to stop the ARHK, it told the Court that the ARHK was the ARC-Fire, the trigger already accused in this case, "built on" the same technology and repackaged for HK firearms. Dkt. 113 at 1–2. AS Designs answered that Rare Breed had "no evidence" and "no proof." Tr. 171:4–6. The Court then denied the motion for one reason: because the ARHK had not been released, Rare Breed could not yet "point to a physical product or any product specifications that are covered by the Asserted Patents." Dkt. 113 at 5.

That gap was not Rare Breed's doing. Before it filed, Rare Breed asked AS Designs for the ARHK's engineering drawings or a unit to inspect. Colvin Decl. ¶ 7, Ex. 5 at 4–5. AS Designs declined and told Rare Breed to wait for the commercial release. *Id.*, Ex. 5 at 2. Its opposition then identified no structural or operational difference between the ARHK and the ARC-Fire. *See generally* Dkt. 88. It argued instead that Rare Breed could not prove what it had not been allowed to see. Dkt. 88 at 6, 23.

Rare Breed has now seen it. Rare Breed received an ARHK from someone who obtained it from AS Designs. Colvin ARHK Decl. ¶¶ 5–7. [redacted]

[redacted]

[redacted]

[redacted]

What Rare Breed told the Court the first time was true: the ARHK is "built on" the ARC-Fire and "repackages that same technology" for the HK platform, so the ARC-Fire charts already in the record show that the ARHK infringes. *See* Dkt. 113 at 1–2, 5 (describing the TRO Motion).

The harm has grown since Rare Breed first moved. Rare Breed's FRT-RD3™ is the only forced reset trigger that fits inside an HK's factory housing. DeMonico Decl. ¶ 34. While the first motion was pending, AS Designs announced that it had finished the ARHK, doubled the size of its first drop, and would ship "in a few weeks." Dkt. 110-1 at 1. On October 20, the day the Court denied that motion, AS Designs announced that the "[o]fficial ARHK drop date will be announced next week." Colvin ARHK Decl. ¶ 9, Ex. E. AS Designs priced the ARHK at $549.99, $65 to $70 below Rare Breed's trigger, DeMonico Decl. ¶ 56, and has since cut the price to $519.99, $95 to $100 below, Colvin ARHK Decl. ¶ 8, Ex. D. Every unit it ships before the Court can rule takes a share of that market that Rare Breed cannot get back.

Rare Breed therefore asks the Court to restrain the ARHK's launch now, by a temporary restraining order, and to hear the request for a preliminary injunction whenever its schedule allows.

## II. BACKGROUND

### A. Rare Breed's Forced Reset Trigger Technology

Rare Breed's FRT® products are trigger components for semi-automatic rifles that allow faster follow-up shots—but still require a separate trigger pull for each shot. Dkt. 29-21 ("Luettke I Decl.") ¶¶ 11–12. In a standard semi-automatic rifle, a shooter manually releases the trigger to reset. *Id.* ¶ 11. In a forced reset trigger, once a shot is fired, the rifle's cycling motion mechanically resets the trigger, reducing manual movement and enabling faster follow-up shots. *Id.* ¶ 12. Rare Breed's FRT® products are distinct from fully automatic triggers, which fire continuously with a single sustained pull. *Garland v. Cargill*, 602 U.S. 406, 410 (2024).

[redacted]

### B. Plaintiffs ABC and RBT

ABC is a Delaware LLC that owns and exclusively licenses the Asserted Patents (the ’247, ’784, ’159, and ’403) to RBT. DeMonico Decl. ¶ 5, Exs. 1-3. RBT is a Texas corporation that designs, manufactures, and sells forced reset trigger products covered by ABC’s patents.

#### 1. Rare Breed Spends Years and Millions to Pioneer and Defend a Market for Its Forced Reset Trigger Products

Rare Breed set out to build and commercialize a trigger to deliver faster follow-up shots while remaining lawful and semi-automatic. *Id.* ¶¶ 7–10. That effort required extended concept and prototype work, followed by roughly eight months of testing and redesign to turn the proof of concept into a marketable product. *Id.* ¶ 9. Rare Breed brought the FRT-15®—the first commercially available forced reset trigger—to market at the end of 2020. *Id.* ¶¶ 7, 10. Rare Breed then litigated with the DOJ for about the next four years, culminating in a settlement allowing them to market its products subject to certain conditions, including that “[Rare Breed] will not develop or design FRTs for use in any handgun,” will enforce its patents to prevent infringement, and will “promote the safe and responsible use of its devices.” *Id.* ¶¶ 11–15, Ex. 4 ¶ 7. Since then RBT has built a 13-person team and expanded its product line. As of September 2026, ABC owned 15 issued U.S. forced reset patents, all of which are exclusively licensed to RBT; no other entity in the country held an issued forced reset trigger patent. DeMonico Decl. ¶¶ 6, 18–21, 36, Exs. 5–9.

#### 2. Rare Breed’s Products

As of September 2026, Rare Breed offered eight FRT® trigger products across three firearm platforms: five for the AR-15, two for the HK[1] MP5 family, and, most recently, one for B&T pistol-caliber firearms. This Motion concerns the HK MP5-family product: the FRT-RD3™.

---

[1] This Motion uses “HK” as shorthand for the family of roller-delayed blowback firearms built around Heckler & Koch’s MP5 and its variants, together with clones and variants from other manufacturers. These firearms use a different operating system from AR-15-pattern rifles.

[redacted]

DeMonico Decl. ¶¶ 20, 33.[2]

| RBT Product | Platform | Patent(s) | Price | DeMonico Decl. |
|---|---|---|---|---|
| FRT-15L3® | AR-15 | ’223, ’003, ’336, ’807, ’403[3] | $450 | Ex. 5 |
| FRT-15L3® Flat | AR-15 | ’223, ’003, ’336, ’807, ’403 | $450 | Ex. 5 |
| FRT-15C3® | AR-15 | ’247, ’159,[4] ’403 | $450 | Ex. 6 |
| FRT-MR3™ | AR-15 (piston-driven) | ’223, ’003, ’336, ’807, ’403 | $525 | Ex. 7 |
| FRT-MR3™ Flat | AR-15 (piston-driven) | ’223, ’003, ’336, ’807, ’403 | $525 | Ex. 7 |

Rare Breed released the FRT-RD3™ in February 2026, its first trigger for a firearm platform besides the AR-15. The FRT-RD3™ is compatible with HK’s 9mm roller-delayed family—the MP5, MP5K, SP5, and SP5K—and the clones sold by manufacturers like PTR, MKE, Zenith, Century Arms, and MAC. DeMonico Decl. ¶ 25. The FRT-RD3™ is the first, and to date only, forced reset trigger that installs as a self-contained, drop-in cassette inside the firearm’s factory housing. DeMonico Decl. ¶¶ 34–35. HK-pattern firearms ship with one of two lower-housing patterns: the traditional “SEF” or ambidextrous “AMBI.” The FRT-RD3™ comes in a version for each; the two are not interchangeable. DeMonico Decl. ¶ 33.

| RBT Product | Platform | Patent(s) | Price | DeMonico Decl. |
|---|---|---|---|---|
| FRT-RD3™ (SEF) | HK MP5/SP5 | ’223, ’003, ’336, ’807, ’403 | $615 | Ex. 8 |
| FRT-RD3™ (AMBI) | HK MP5/SP5 | ’223, ’003, ’336, ’807, ’403 | $620 | Ex. 8 |

[2] Rare Breed’s website now also lists five more: the FRT-AP3™, for B&T’s APC9 and APC45 pistol-caliber firearms; the FRT-22®, for the Ruger 10/22 rifle; and three new versions of existing triggers, the FRT-15L3® (MIL), FRT-15C3® (FLAT), and FRT-MR3™ (MIL). *See* Rare Breed Triggers, *Triggers*, https://rarebreedtriggers.com/product-category/triggers/ (last visited Oct. 27, 2026).
[3] U.S. Patent Nos. 10,514,223; 11,724,003; 12,036,336; 12,274,807; 12,636,403.
[4] U.S. Patent Nos. 12,038,247; 12,578,159.

[redacted]

On July 15, 2026, Rare Breed released the FRT-SG3™ for B&T's SPC9, GHM9, and GHM45 pistol-caliber firearms. *ABC IP, LLC v. Cloak Indus., Inc.*, No. 4:26-cv-00608-ALM ("*Cloak*"), Dkt. 48-3 ("DeMonico B&T Decl.") ¶¶ 19, 26–27 & Ex. 11. Rare Breed developed it in collaboration with B&T, which tested and approved the design and now sells firearms with Rare Breed's trigger factory-installed. *Id.* ¶¶ 26–27, 60. Rare Breed launched the FRT-SG3™ with no advance announcement: infringement on the AR-15 platform has taught Rare Breed that announcing a product hands infringers a head start, so it now launches in silence, concealing even the platform identities of products in development. *Id.* ¶¶ 55–56 & Exs. 40–41.

| **RBT Product** | **Platform** | **Patent(s)** | **Price** | **DeMonico Decl.** |
|---|---|---|---|---|
| FRT-SG3™ | B&T SPC9, GHM9, GHM45 | *E.g.*, '403 | $525 | Ex. 9 |

All eight models operate in three modes—safe, traditional semi-automatic, and forced reset. DeMonico Decl. ¶ 22. All incorporate technology covered by the '403 Patent (among others). *Id.* ¶¶ 19–21, 33. As explained below, the FRT-RD3™ [redacted] DeMonico Decl. ¶ 63; Eichmann Decl. ¶ 141; Eichmann Reply Decl. ¶¶ 26–27.

### 3. Rare Breed Develops and Releases the FRT-RD3™ for the HK Roller-Delayed Market

With the FRT-RD3™, Rare Breed gave the premium HK firearm market a forced reset trigger that drops into the factory housing and otherwise leaves the firearm as HK built it. DeMonico Decl. ¶ 34. The 9mm MP5 family is part of a broader line of HK roller-delayed firearms that also includes larger-caliber models—the G3/91 and the HK11/21/31/32/33. DeMonico Decl. ¶¶ 25, 51. This market segment differs from the AR-15's in three ways that matter here. First, it is far smaller. Industry estimates state that, as of 2023, over 32 million modern sporting rifles (which

[redacted]

includes AR-15-pattern rifles and AK-47-style rifles) are in circulation in the United States and are the "most popular . . . rifle sold in America today"; the roller-delayed population is a small fraction of that. Colvin Decl. ¶ 14, Ex. 12 at 2; *see also* DeMonico Decl. ¶ 27.[5] Second, it is a premium market: HK's SP5 currently carries an MSRP of $3,679 on HK's website (with an MSRP of $2,799 upon its launch in December of 2019), and even HK clones retail for roughly $1,359 to $1,889, against sub-$1,000 MSRPs for popular AR-15s. DeMonico Decl. ¶ 28, Exs. 10-16. Third, owners in this market prize their firearm's original external appearance. HK itself markets to that value, selling the SP5 as made "in the same factory, on the same lines, and by the same workforce" as the legendary MP5—because "even a pretty good copy is still just a copy." *Id.* ¶ 29 & Ex. 16.

Many of Rare Breed's customers agree: one ran a Super Safety and slip trip in a replacement housing for two years, but "hated the Cheesy way it looked" and installed the FRT-RD3™ "so that [his] beautiful German gun would look its best"; another had been "running a crappy 3d printed lower and it just took away from the classic MP5 aesthetic that we all love." *Id.* ¶ 30 & Ex. 17. A trigger that requires replacing the firearm's factory housing is thus substantially less attractive in this market than one that installs inside it—which is why Rare Breed engineered the FRT-RD3™ as a drop-in cassette, and why AS Designs advertises the ARHK the same way: "installs directly into factory OEM polymer housings with no modifications required." *Id.* ¶¶ 29–31; Ex. 18.

When Rare Breed released the FRT-RD3™ in February 2026, it was the first product of its kind—and it remains the only drop-in forced reset trigger on the market for roller-delayed HKs; every alternative requires the owner to replace the housing (lower receiver) or convert the fire control group. *Id.* ¶ 34.

[5] No known official statistics count roller-delayed firearms in the United States.

[redacted]

FRT® products are Rare Breed's entire business: all of its revenue comes from its FRT® products and related parts. *Id.* ¶ 24. Rare Breed has historically positioned those products as premium offerings, maintaining a no-discount policy as part of its business practice. *Id.* ¶ 73. It has also mainly sold direct-to-consumer, but the influx of infringing products has forced it to launch a dealer program earlier than planned and at lower margins, just to hold its market share. *Id.* ¶ 83. Because FRT® and infringing products are durable products designed to last the life of the rifle in which they are installed (Luettke I Decl. ¶¶ 64–66), a lost sale is hard to recover: a customer who installs a competitor's trigger is less likely to choose Rare Breed for their next gun. DeMonico Decl. ¶ 66; Eichmann Decl. ¶¶ 54, 62, 143. Each lost customer thus represents lost future sales across other firearms. DeMonico Decl. ¶ 66.

#### 4. The Asserted Patents

As summarized below, the Asserted Patents claim related innovations in forced reset trigger design covering the trigger, the safety selector, and the locking interface with the bolt carrier.

| **Asserted Patent** | **Asserted Claim(s)** | **Description** |
|---|---|---|
| U.S. Patent No. 12,038,247 | 15 | A trigger mechanism with two selectable modes—standard and "forced reset"—in which a cam mechanically resets the trigger and prevents it from being pulled again until the bolt carrier returns fully forward. Luettke I Decl. ¶ 27; *see generally also* Colvin Decl., Ex. 1. |
| U.S. Patent No. 12,578,159 | 1, 3, 6, 7, 9–11, 14–17 | A trigger mechanism with a three-position safety selector—safe, standard semi-automatic, and "forced reset" semi-automatic—in which a cam and safety selector control whether manual pressure must release to reset the trigger. Luettke I Decl. ¶ 30; *see generally also* Colvin Decl., Ex. 2. |
| U.S. Patent No. 12,031,784 | 1, 4 | A locking device that shifts between blocking and permitting trigger pull, controlled by contact between the bolt carrier and an extension on the locking member. Luettke I Decl. ¶ 28; *see generally also* Colvin Decl., Ex. 3. |
| U.S. Patent No. 12,636,403 | 14, 15, 17, 29, 30, 32, 38, 39 | A trigger device in which the firearm's cycling action causes the hammer to contact the trigger, resetting both the hammer and trigger after each shot. The device can be |

[redacted]

| Asserted Patent | Asserted Claim(s) | Description |
|---|---|---|
| | | operated in either of two modes: a standard semi-automatic mode (using a conventional disconnector) or a forced reset semi-automatic mode. No. 4:26-md-03176, Dkt. 8 ("Luettke II Decl.") ¶ 37; *see generally also* Colvin Decl., Ex. 4. |

### C. The Defendants and the Accused ARHK Forced Reset Trigger

This Motion seeks relief against the AS Designs Defendants. AS Designs announced the "ARHK" at the SHOT Show trade show in January 2026. It is a drop-in forced reset trigger cassette built for the same HK roller-delayed firearms as Rare Breed's FRT-RD3™ trigger. DeMonico Decl. ¶¶ 49–50. AS Designs markets the ARHK as "built on [its] ARC-Fire technology," the same technology already accused, briefed, and charted element by element in Plaintiffs' pending PI Motion in this member case. *Id.* ¶ 50; Dkts. 28, 50, 63. AS Designs has long known of Plaintiffs' patents, *id.* ¶¶ 42, 44, Ex. 19, but it has promoted the ARHK for nine months, announced on July 1, 2026, that the ARHK had "entered full production," and announced on October 4 that the ARHK was complete and its first drop doubled. *Id.* ¶¶ 54, 67, Ex. 41; Dkt. 110-1 at 1. It has not yet released the ARHK. Colvin ARHK Decl. ¶ 8, Ex. D.

Before filing the TRO Motion, Plaintiffs asked AS Designs for the ARHK's engineering drawings or a unit to inspect. Colvin Decl. ¶ 7, Ex. 5 at 4–5. AS Designs declined. It told Plaintiffs to wait: "upon commercial release, the ARHK product will be publicly available, and Plaintiffs may obtain a unit and perform their analysis exactly as Rule 11 contemplates." *Id.*, Ex. 5 at 2. The ARHK still has not been released. But Plaintiffs have since received an ARHK from someone who obtained it from AS Designs. *See infra* § II.G.

#### 1. The Defendants: AS Designs, Karlovic, Olson, and S3igu2

AS Designs, LLC, d/b/a Active Safety Designs, is a North Carolina LLC formed in December 2024—it has operated for roughly 22 months. Colvin Decl., Ex. 6 at 2. Its principals are

[redacted]

Defendants Matthew Karlovic and Calvin Olson.[6] AS Designs sells the Super Safety and ARC-Fire, which, by Karlovic's own admission, [redacted]. Dkt. 50-1 ¶ 20. Those products are the subject of Plaintiffs' pending PI Motion in the AS Designs member action. Dkts. 28, 50, 63.

AS Designs sold roughly [redacted] of its [redacted] accused units after Rare Breed asked it to stop—and [redacted], including [redacted] the day after Rare Breed moved for an injunction. Colvin Decl., [redacted] *Id.*, [redacted] *Id.*, [redacted] against the *ARC-Fire and Super Safety alone*—the entire fund from which any judgment in this case would be paid. *Id.*, Ex. 9; Dkt. 63 at 3–5.

Defendant John Doe, sued under his aliases "s3igu2" and "Seagoo Threetwo," designed the ARHK. AS Designs' own Instagram account credits the ARHK to him. DeMonico Decl. ¶ 53, Ex. 23. [redacted] Posting as "s3igu2," he promotes the ARHK on public forums—answering technical questions, confirming specifications, and steering customers away from Rare Breed's FRT-RD3™. DeMonico Decl. ¶¶ 53, 56, 65, Exs. 23–25, 35, 39–40. AS

[6] In his Answer, Calvin Olson denied being a principal of AS Designs. Dkt. 17 ¶ 5. [redacted]

[redacted]

Designs' internal communications even show him [redacted]. Colvin Decl., Ex. 11 at ASD 000041–42.

### 2. The Accused ARHK and AS Designs' Plan to [redacted] the FRT-RD3™

The ARHK is a self-contained, drop-in forced reset trigger cassette for HK roller-delayed firearms. DeMonico Decl. ¶¶ 49–50. AS Designs describes it as "built on [its] ARC-Fire technology." *Id.* ¶ 50. It installs "directly into factory OEM polymer housings with no modifications required." *Id.* AS Designs priced the ARHK at $549.99—$65 to $70 below the FRT-RD3™, which sells for $615 (SEF) and $620 (AMBI). DeMonico Decl. ¶¶ 56, 75. It has since cut the price to $519.99, $95 to $100 below the FRT-RD3™. Colvin ARHK Decl. ¶ 8, Ex. D.

| **Rare Breed FRT-RD3™** | **ARHK** |
|---|---|
|  |  |

Defendants' own messages show that they [redacted]

[redacted]

[redacted]

When Rare Breed's FRT-RD3™ pricing went live on February 24, 2026, [redacted] It has since cut the price to $519.99. Colvin ARHK Decl. ¶ 8, Ex. D.

These exchanges capture, in Defendants' own words, three facts at the heart of this Motion: Rare Breed beat AS Designs to this market; Rare Breed's position reflects a years-long headstart; and the ARHK is priced to take that market from Rare Breed. AS Designs then moved to launch. It announced on July 1, 2026, that the "first drop of 1500 units will be in roughly 8 weeks." DeMonico Decl. ¶ 67, Ex. 41. On October 4, it announced that it had "pushed the drop back to double the size of the initial drop," that the ARHK was "completed and fully functional," and that the drop would come "in a few weeks." Dkt. 110-1 at 1.

[redacted]

### D. Rare Breed's Patent Enforcement Efforts

Rare Breed vigorously enforced its patents before it was enjoined from doing so in September 2023, and has aggressively renewed those efforts since its May 2025 DOJ settlement. To start, in September 2021, Rare Breed sued Big Daddy Unlimited and Wide Open Enterprises in the Northern District of Florida over their "Wide Open Trigger." *See Rare Breed Triggers v. Big Daddy Enters. Inc.*, C.A. No. 1:21-cv-149-RH-HTC, Dkt. 1 (N.D. Fla. Sept. 15, 2021). The court granted a PI in December 2021, finding the Wide Open Trigger "was plainly copied from the FRT-15." Order Granting PI, *Rare Breed Triggers v. Big Daddy Enters. Inc.*, C.A. No. 1:21-cv-149-RH-HTC, Dkt. 47 (N.D. Fla. Dec. 30, 2021). The case resolved in October 2022 with a consent judgment and permanent injunction. *See Rare Breed Triggers v. Big Daddy Enters. Inc.*, C.A. No. 1:21-cv-149-RH-HTC, Dkt. 194 (N.D. Fla. Oct. 19, 2022).

Starting in 2023, and for the next several years, the DOJ's enforcement action shut down Rare Breed's operations and foreclosed any patent enforcement during the injunction's pendency. As a result, although two of Rare Breed's trigger patents issued in July 2024, Rare Breed could not assert them without risking contempt. DeMonico Decl. ¶ 13. The May 2025 settlement not only ended that prohibition but also imposed upon Rare Breed an affirmative obligation to enforce its patents against products it has a good faith belief infringe any of its patents. *Id.* ¶ 15, Ex. 4.

Rare Breed has therefore resumed enforcing its patents. Since the May 2025 settlement, Rare Breed has filed more than 125 patent-infringement actions, including the one at issue in this motion. DeMonico Decl. ¶ 17. Before this Motion, Rare Breed pursued preliminary injunctive relief in those actions through eight motions. ***First***, Rare Breed requested a TRO and PI against the Hoffman Defendants, the original publishers of the "open-source" Super Safety design files. *ABC IP, LLC v. Hoffman*, No. 1:25-cv-00389 ("*Hoffman*"), Dkt. 14 (E.D. Tenn. Jan. 7, 2026); *Hoffman*, Dkt. 15 (E.D. Tenn. Jan. 9, 2026). On January 13, 2026, the court granted a TRO.

[redacted]

*Hoffman*, Dkt. 20 (E.D. Tenn. Jan. 13, 2026). After a three-day evidentiary hearing, it also entered a PI on February 11, 2026. *Hoffman*, Dkts. 31, 46. ***Second****, Rare Breed has separately moved for a PI against AS Designs' ARC-Fire and Super Safety; that motion remains pending. Dkts. 28, 50, 63*. ***Third***, Rare Breed moved for a TRO and PI against Peak Tactical LLC and related defendants based on Rare Breed's '223, '003, '336, and '807 Patents before that case was consolidated in this MDL. *ABC IP, LLC v. Peak Tactical, LLC*, No. 4:26-cv-00698 ("*Peak*"), Dkt. 6 (D. Wyo. Jan. 16, 2026). The court denied Rare Breed's motion, *Peak, Dkt. 39 (D. Wyo. Feb. 13, 2026)*, and the Federal Circuit affirmed without opinion. *ABC IP, LLC v. Peak Tactical, LLC*, No. 2026-1527, Dkt. 54 (Fed. Cir. Sept. 15, 2026) (Rule 36 judgment). That motion did *not* involve the '403 Patent—which had not yet issued—and the patents asserted in this Motion were never before the District of Wyoming. ***Fourth***, Rare Breed has filed a First Consolidated Motion for PI against 13 defendants selling cam-style products. *In re: Rare Breed Triggers Pat. Litig.*, 4:26-md-03176, Dkt. 7 (E.D. Tex. May 29, 2026). ***Fifth***, Rare Breed has filed a Second Consolidated Motion for PI against the defendants in 11 of the cases consolidated into this MDL based on the Disruptor's infringement of the '403 Patent. *See, e.g.*, *Peak*, Dkts. 76–79 (E.D. Tex. July 2, 2026). ***Sixth***, Rare Breed has moved for preliminary injunction against Atrius and related defendants for infringement of Rare Breed's '247, '159, '784, and '403 Patents through sales of the Atrius Selector and its variations. *See, e.g.*, *Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC*, No. 4:26-cv-00448-ALM, Dkt. 57 (E.D. Tex. Aug. 3, 2026). ***Seventh***, Rare Breed has moved for a temporary restraining order against Cloak Industries, Inc., Peak Tactical, LLC d/b/a Partisan Triggers, and Optics Planet, Inc. d/b/a Ecentria, based on their Accused B&T Disruptors—modified Disruptor variants configured for third-party B&T's SPC9, GHM9, GHM45, and APC9 platforms—and their infringement of the '403 Patent. *See, e.g., Cloak*, Dkt. 43 (E.D. Tex. Aug. 10, 2026). That motion has been opposed

[redacted]

and remains pending. Eighth, Rare Breed moved for a TRO against the ARHK; the Court denied it without prejudice. Dkt. 113. *See infra* § II.F.

**E. JPML Centralization Proceedings**

The JPML created this MDL on April 2, 2026, finding that centralization would "eliminate duplicative discovery, prevent inconsistent pretrial rulings—especially regarding claim construction, patent validity, and *the appropriateness of injunctive relief*—and conserve the resources of the parties, their counsel, and the judiciary." *In re: Rare Breed Triggers Pat. Litig.*, MDL No. 3176, Dkt. 44, at 2 (J.P.M.L. Apr. 2, 2026) (emphasis added).

**F. The Court Denied Rare Breed's First Motion Because the ARHK Had Not Been Released**

Rare Breed moved for a TRO against the ARHK on September 2, 2026. Dkt. 74. AS Designs opposed and moved to strike, arguing that the ARHK was not part of this case. Dkts. 88, 89. At the October 15 hearing, AS Designs faulted Rare Breed for relying on AS Designs' public statements instead of a unit: "You buy the product. You don't rely on things that are on the internet. You buy the product, or you wait for it to get released and then you buy it yourself." Tr. 143:12–14.

On October 20, the Court denied both motions. Dkt. 113 at 6. It held that the ARHK is properly part of this case: Rare Breed "should not be prevented from including the ARHK as an accused product at this stage in this lawsuit." *Id.* at 4. But it denied the TRO without prejudice on likelihood of success alone. *Id.* at 5–6. Because the ARHK had not been released, Rare Breed could not yet "point to a physical product or any product specifications that are covered by the Asserted Patents." *Id.* at 5. The Court did not reach the other three factors. *Id.* at 6.

**G. Rare Breed Received an ARHK Unit**

Although the ARHK has not been released, Rare Breed received an ARHK from someone who obtained it from AS Designs. Colvin ARHK Decl. ¶¶ 5–6. Rare Breed's technical expert,

[redacted]

Brian Luettke, compared photographs of the unit's parts, id. ¶ 7, Ex. C, with the ARC-Fire. [redacted] Luettke ARHK Decl. ¶¶ 10, 15. Rare Breed filed this Motion five days after receiving the unit.

## III. LEGAL STANDARD

This Court has power to grant injunctive relief "in accordance with the principles of equity" and "on such terms as the court deems reasonable." 35 U.S.C. § 283. Pursuant to Federal Rule of Civil Procedure 65(d)(2), an injunction should bind defendants, their "officers, agents, servants, employees, and attorneys," and anyone in "active concert or participation" with defendants and their officers, agents, servants, employees, or attorneys. "The standards for determining whether to grant a temporary restraining order are the same as those that apply to a motion for a preliminary injunction." *Munilla Constr. Mgmt., LLC v. United States*, 130 Fed. Cl. 131, 135 (2016) (citation omitted); *see also Turner v. Epps*, 460 F. App'x 322, 325 & n.3, 327 (5th Cir. 2012). To obtain such relief, the movant must show: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017). Likelihood of success on the merits is governed by Federal Circuit law; the other factors are governed by the law of the regional circuit—here, the Fifth Circuit, in which this Court sits. *ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934, 941 (Fed. Cir. 2022). That holds true regardless of where a transferred member case originated: an MDL transferee court applies the law of its own circuit, not the transferor circuit's, to questions of federal law. *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987); *accord In re NORPLANT Contraceptive Prods. Liab. Litig.*, 878 F. Supp. 972, 974–75 (E.D. Tex. 1995) (this district, as an MDL transferee, applying the same rule). All factors favor relief here. The Court applied the same standard to Rare Breed's first motion against the ARHK.

[redacted]

Dkt. 113 at 2–3.

## IV. ARGUMENT

The Court should grant relief. Rare Breed is likely to succeed on the merits: [redacted], and Rare Breed's expert has now shown, from an ARHK obtained from AS Designs, that the ARHK practices every element of the Asserted Claims. The harm is immediate and irreparable: AS Designs is about to launch the ARHK into a segment where the FRT-RD3™ trigger is the only product, during its launch window—the months in which a new product's customer relationships, dealer network, and market position are set. The equities tip sharply toward Rare Breed. AS Designs designed, built, and priced the ARHK with full knowledge of Rare Breed's patents to [redacted] the FRT-RD3™ trigger, and it has pressed ahead with the launch knowing that Rare Breed has moved to stop it. And the DOJ has said that the public interest should be weighed "heavily" in favor of an injunction. Statement of Interest at 7.

### A. Rare Breed Is Likely to Succeed on the Merits

"To show likelihood of success on the merits, a patentee must show (1) it will likely prove infringement, and (2) its infringement claim will likely withstand challenges to the validity and enforceability . . . ." *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024) (citation omitted). Rare Breed satisfies both elements.

#### 1. The ARHK Infringes the Asserted Claims

Determining the likelihood of infringement involves a two-step analysis: (1) the court construes the asserted claims and then (2) compares those construed claims to the accused products. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). Applying the above framework here establishes likely infringement.

[redacted]

**a) The Asserted Claims Should Carry Their Plain Meaning**

The Court should apply the Asserted Claims' plain and ordinary meaning. Claim construction is a question of law for the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Courts generally construe claim terms according to their "ordinary and customary meaning," which is "the meaning the terms would have [had] to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). Courts depart from that rule in limited circumstances—namely, when the patentee "acts as its own lexicographer" (by expressly redefining a claim term) or "disavows the full scope of a claim term" (by limiting the invention in the specification or during prosecution). *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

The Asserted Claims use familiar terms for firearm components—such as "trigger," "hammer," and "disconnector"—to describe trigger mechanism operations. Colvin Decl., Ex. 4. These terms are widely used in this industry, including in materials describing AR-pattern trigger assemblies. *See, e.g.*, Luettke I Decl. ¶ 36; *see also Phillips*, 415 F.3d at 1314 ("[T]he ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.") The infringement analysis thus involves a straightforward comparison between the plain language of the Asserted Claims and the Accused Product.

**b)** [redacted]

Rare Breed received an ARHK from someone who obtained it from AS Designs. Colvin ARHK Decl. ¶¶ 5–7. Mr. Luettke compared photographs and videos of its parts with the ARC-Fire's. Luettke ARHK Decl. ¶¶ 8–11, Table 1. He had already charted the ARC-Fire, element by element, against each Asserted Patent. Luettke I Decl. ¶ 6, Exs. A, C, F; Dkt. 64-1, Luettke Reply

[redacted]

Decl. Exs. H, I, J; Luettke II Decl. Ex. K.

[redacted]. In every respect the Asserted Claims address, [redacted] Luettke ARHK Decl. ¶ 10 & Fig. 1. [redacted] Id. ¶¶ 10, 13. [redacted] *Id.* ¶¶ 10, 15. [redacted] *Id.* ¶¶ 12, 16. At the hearing, AS Designs told the Court that there was "no evidence" and "no proof" that the ARHK's clutch is "the same ARC-Fire." Tr. 171:4–6. There is now.

That is also what AS Designs told its customers. It describes the ARHK as "built on [its] ARC-Fire technology," DeMonico Decl. ¶ 50, Ex. 18, and says that the ARHK's third selector position "engage[s] the ARC-Fire clutch for active reset," Dkt. 95-5 at 2. AS Designs already sells the pieces separately: "ARC-Fire products, Super Safety products, MP5 lowers, slip-trip kits, and related parts." Dkt. 88-1 ¶ 4. HK owners have long run an AR-pattern forced reset trigger with a slip trip in a replacement housing. DeMonico Decl. ¶ 30, Ex. 17. [redacted] Luettke ARHK Decl. ¶¶ 10, 15.

AS Designs has never said otherwise. Its opposition to the TRO Motion identified no structural or operational difference between the ARHK and the ARC-Fire; its managing member, Mr. Karlovic, compared the ARHK to Rare Breed's FRT-RD3™. Dkt. 88-1 ¶¶ 6–13. Its non-infringement defense was the one its expert had offered for the ARC-Fire. Dkt. 88 at 13. As its counsel

[redacted]

put it, if the ARHK "is just the ARC-Fire," AS Designs "would rely on our oppositions to the PI motion on the ARC-Fire." Tr. 171:15–18.

AS Designs argued that "a product 'built on' the same technology is not the same product," and it pointed to Rare Breed's description of the ARHK as "a scaled up version with larger cam surfaces, a thicker detent bar and transfer lever." Dkt. 89 at 4, 11. But no Asserted Claim [redacted]. Luettke ARHK Decl. ¶ 13. [redacted]. And "one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device." *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983).

**c) The ARHK Meets Every Element of the Asserted Claims**

Mr. Luettke compared the ARHK to each Asserted Claim, element by element, using photographs of the unit. Luettke ARHK Decl. ¶ 17, Exs. 2–5. His charts keep his earlier evidence for the ARC-Fire and add the ARHK's corresponding structure beside it, so the Court can see that the showing for each element is the same. *Id.* They show that the ARHK practices each Asserted Claim. *Id.* The representative claims below illustrate the comparison.

*The '403 Patent.* Claim 39 recites a forced reset trigger mechanism with a hammer and a disconnector, each with a hook and each pivoting on a transverse axis; a trigger member; and a safety selector movable between a standard semi-automatic position and a forced reset semi-automatic position. '403 Patent, cl. 39. In either position, cycling the action pivots the hammer past the disconnector hook. *Id.* In the standard position, the shooter must reduce rearward pressure before firing again; in the forced reset position, "the trigger member is forced to move to a full reset position against rearward pressure on the trigger member and the rearward pressure on the trigger member does not need to be reduced to actuate the trigger to fire the firearm." *Id.* The ARHK has each element. Mr. Luettke shows each element in the ARHK, with its selector's standard and active

[redacted]

reset positions as the claimed standard and forced reset positions. Luettke ARHK Decl. ¶ 17, Ex. 5 (cl. 39). AS Designs describes the ARHK the same way: its "Semi" mode gives "a standard trigger pull," and its third position "engage[s] the ARC-Fire clutch for active reset." Dkt. 95-5 at 2. Mr. Luettke charted the same elements in the ARC-Fire. MDL Dkt. 8-11 at 31–57. AS Designs' only '403 defense is Dr. Batzer's analysis from another member action, incorporated by reference. Dkt. 88 at 7 (citing *ABC IP, LLC v. Z3 Prods.*, No. 4:26-cv-00367, Dkt. 72 ¶¶ 152–53, 191–99).

*The '247 Patent.* Claim 15 recites a trigger mechanism with a hammer, a trigger member, and a disconnector, each mounted in the fire control mechanism pocket to pivot on a transverse axis, and a cam movable between two positions; in the second position, "said cam lobe forces said trigger member towards said set position." '247 Patent, cl. 15. With the cam in the first position (the standard semi-automatic mode), the disconnector catches the hammer until the shooter releases the trigger. *Id.* With the cam in the second position (the forced reset mode), "said disconnector hook is prevented from catching said hammer hook," and the shooter can fire again once the bolt carrier returns to battery. *Id.* The ARHK has each element. Mr. Luettke shows each element in the ARHK; in forced reset mode, the cam's second position [redacted]. Luettke ARHK Decl. ¶ 17, Ex. 2 (cl. 15[g]); *see* Dkt. 29-24 (ARC-Fire chart); Dkt. 64-3 at 5–8.

*The '159 Patent.* Claim 1 recites the same hammer, trigger member, disconnector, and cam in a mechanism "operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode." '159 Patent, cl. 1. In the second mode, rearward movement of the bolt "causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer," and the shooter can fire again once the bolt returns to battery. *Id.* The ARHK has each element. Mr. Luettke shows each element in the ARHK. Luettke ARHK Decl. ¶ 17, Ex.

[redacted]

3 (cl. 1); *see* Dkt. 29-22 (ARC-Fire chart). AS Designs' expert did not dispute the ARC-Fire's two modes or its trigger member. *See* Dkt. 64-4 at 22.

*The '784 Patent.* Claim 1 recites a locking device for a forced reset trigger: a locking member, movably supported by a frame, that moves between a first position that "locks a trigger member against pulling movement" and a second position that frees it, with an upward extension "configured to make actuating contact with a surface of a bolt carrier," that contact moving the member from the first position to the second, and a deflectable portion "separately movable relative to the body portion." '784 Patent, cl. 1. The ARHK has each element. Mr. Luettke shows each element in the ARHK. Luettke ARHK Decl. ¶ 17, Ex. 4 (cl. 1); *see* Dkt. 29-27 (ARC-Fire chart); Dkt. 64-2 at 5–8.

That is the showing the Order found missing. Rare Breed now points to "a physical product" and shows, element by element, that the Asserted Claims cover it. *See* Dkt. 113 at 5.

AS Designs' only non-infringement defense does not raise a substantial question. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001). It is Dr. Batzer's ARC-Fire analysis, incorporated by reference. Dkt. 88 at 7. Rare Breed answered that analysis in the ARC-Fire briefing. Dkt. 63 at 8–13; Dkts. 64-2 to 64-4. Dr. Batzer's lead point was that the ARC-Fire ships as a kit without a hammer or disconnector. Dkt. 64-3 at 5–8. The ARHK ships as a complete cassette with its own hammer, trigger member, and disconnector, Luettke ARHK Decl. ¶¶ 11–12, so that point does not reach the ARHK at all. His other points—how the cam moves, and whether the disconnector briefly catches the hammer—are answered in Mr. Luettke's reply charts, Dkts. 64-2 to 64-4, and by Mr. Luettke's comparison of the ARHK itself. Luettke ARHK Decl. ¶¶ 10–17.

### 2. The Asserted Patents Are Presumed Valid and Enforceable

Patents are presumed valid at all stages of the case, including at the TRO/PI stage. *See*

[redacted]

*Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009). To defeat preliminary injunctive relief on validity grounds, Defendants must raise a "substantial question" as to the patents' validity. *Id.* at 1379. In making this determination, courts consider "whether it is more likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid." *Id.* Only if Defendants make this showing would the burden shift back to Rare Breed to show it is likely to succeed on validity at trial. *Fred Hutchinson Cancer Rsch. Ctr. v. BioPet Vet Lab, Inc.*, No. 10-cv-616, 2011 WL 1119565, at *2 (E.D. Va. Mar. 1, 2011) (citing *Titan Tire*, 566 F.3d at 1377).

The '403 Patent issued on May 26, 2026. The Examiner considered all relevant and material prior art ever asserted against Rare Breed's other patents in its portfolio (including the related '336, '003, and '807 patents) and still allowed the patent without any rejections. Any invalidity defenses based on prior art that has been previously asserted against Rare Breed's related patents lack merit because those references were considered by the Examiner and were not found to prevent patentability of the '403 Patent claims.

The '247, '784, and '159 Patents already face Defendants' validity attack in this member action—an attack that rests on a prior-art reading three forums have rejected, plus obviousness combinations justified only in hindsight. In opposition to Plaintiffs' pending MPI Motion, AS Designs' expert, Dr. Batzer, advanced several invalidity grounds; Plaintiffs answered each through their expert, Dr. Harrison. Dkt. 63 at 11–14; Dkt. 64 ("Harrison Validity Decl.") ¶¶ 221–89. Batzer's centerpiece is a passage at column 11 of Blakley '723. The Examiner called Blakley the closest prior art and allowed the '247 claims anyway, because Blakley discloses only a forced-reset trigger—not one the shooter can also switch into an ordinary, standard semi-automatic mode, as the '247's claims require. The Examiner reached the same conclusion in allowing the '159

[redacted]

Patent. Harrison Validity Decl. ¶ 79. The Eastern District of Tennessee credited "unrebutted testimony that the '723 Patent teaches a two-position trigger" and entered a preliminary injunction on claim 15 of the '247 Patent. *Hoffman*, Dkt. 45 ¶¶ 8, 10 (E.D. Tenn. Feb. 11, 2026) (Dkt. 29-19 at 8). The PTAB has also denied institution of a petition built on that reading—after the petitioner's own declarant acknowledged that Blakley's figures and specification do not clearly support a three-position reading. *Atrius Dev. Grp. Corp. v. ABC IP, LLC*, IPR2025-01473, Ex. 1004 (Brown Decl.) ¶ 90, at 48 (P.T.A.B. Aug. 29, 2025) (inter partes review of the '247 Patent); *see also id.*, Paper 1 at 54; *id.*, Paper 20 at 2 (P.T.A.B. Feb. 18, 2026). Even Blakley himself, describing his '723 patent in the later '247's Background, claimed only the forced-reset function. '247 Patent at 2:4–13. Batzer's remaining references teach automatic fire or a single operating mode, and his combinations supply no reason to combine beyond the invention itself. Dkt. 63 at 12–13. That record raises no substantial question—let alone one Defendants could prove by clear and convincing evidence at trial. *See* Dkt. 63 at 11–13; Harrison Validity Decl. ¶¶ 221–95.

The Order framed the question: a patentee should not receive preliminary relief if the accused infringer "raises a substantial question concerning either infringement or validity." Dkt. 113 at 5 (quoting *Amazon.com*, 239 F.3d at 1350–51). AS Designs has offered no validity challenge specific to the ARHK. It incorporated Dr. Batzer's opinions from the ARC-Fire briefing. Dkt. 88 at 7. As to the '247, '784, and '159 Patents, those opinions are answered above and in Dr. Harrison's prior declaration, and nothing about the ARHK changes them. Luettke ARHK Decl. ¶¶ 10–16; Harrison Validity Decl. ¶¶ 221–95.

### B. Rare Breed Is Suffering, and Will Continue to Suffer, Irreparable Harm Without Injunctive Relief

Rare Breed's FRT-RD3™ trigger is the only drop-in forced reset trigger on the market for roller-delayed HKs. DeMonico Decl. ¶ 34. AS Designs has finished the ARHK and plans a first

[redacted]

drop double the 1,500 units it first announced. *Id.* ¶ 67, Ex. 41; Dkt. 110-1 at 1. That drop, and every ARHK sale that follows, will inflict the harms the Federal Circuit has recognized as irreparable: lost market share, price erosion, lost lead time, lost goodwill, lost business opportunities, and reputational damage. *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013); *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1378 (Fed. Cir. 2020).

Start with market share. Buyers are already publicly deferring or declining to buy Rare Breed's FRT-RD3™ to wait for the ARHK: "Holding out for ASD." DeMonico Decl. ¶ 64, Exs. 36, 37, 38. Second, price erosion is AS Designs' strategy: It priced the ARHK $65 to $70 below the FRT-RD3™ to [redacted] Colvin Decl., Ex. 11 at ASD 000041. It has since cut the price to $519.99, $95 to $100 below the FRT-RD3™. Colvin ARHK Decl. ¶ 8, Ex. D. Third, the lead time Rare Breed's patents should protect is being erased. DeMonico Decl. ¶ 111; Eichmann Decl. ¶¶ 90, 107. Fourth, Rare Breed's innovator reputation is under attack from a Defendant that markets itself as "[l]eading the FRT industry with cutting edge innovation." DeMonico Decl. ¶¶ 88–89, Exs. 18, 45. Nor would money damages be adequate: A judgment would mean little against a company [redacted] *Cf.* Colvin Decl., Ex. 13.

Irreparable harm asks whether the patentee faces injury that "no damages payment, however great, could address"—not whether every loss defies calculation. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). "[T]he simple fact that one could, if pressed, compute a money damages award does not always preclude a finding of irreparable harm." *Id.* In *Celsis*, the Federal Circuit affirmed a preliminary injunction based on price erosion, lost goodwill, and lost business opportunities during a product's "growth stage," because there was "no effective way . . . to ascertain the people who do not knock on the door." *Id.* at 930–32 (quoting the district

[redacted]

court). AS Designs argued that every ARHK sale will be recorded, so the harm can be measured. Dkt. 88 at 9–10. But sales records will not show the buyers who put off or abandoned a purchase of the FRT-RD3™, or the price Rare Breed could have held without the ARHK. They are the customers who, in *Celsis*'s words, "do not knock on the door." 664 F.3d at 930.

**1. Rare Breed Is Losing Market Share in a Niche, Limited, and Emerging Market**

Damages may partially restore the revenue from sales an infringer took; they cannot restore a market position the patentee never got to build. Lost market share often becomes irreparable when the infringer is a direct competitor, because then the infringer's gain is the patentee's loss. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1152–54 (Fed. Cir. 2011). It grows in a specialized, two-player market, because a customer who buys from the infringer had only one other place to go. *Natera*, 106 F.4th at 1378–79. It accelerates in niche markets, because when the sales are few, each one matters more. *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014). It hardens where a lost customer is difficult to win back. *Fred Hutchinson*, 2011 WL 1119565, at *4–5 (no means of recapturing lost customers). And it is particularly acute where the infringement strikes the core of the patentee's business. *EcoNova Inc. v. DPS Utah,* No. 1:12-CV-174-TC, 2012 WL 5944257, at *14 (D. Utah Nov. 28, 2012).

AS Designs is already Rare Breed's direct competitor, and the ARHK's release would make this segment—drop-in forced reset triggers for HK firearms—a two-competitor market. *Cf.* Colvin Decl., Ex. 7 at 114:12–116:14; DeMonico Decl. ¶ 55. So ARHK sales would come largely at Rare Breed's expense. DeMonico Decl. ¶¶ 60–72; Eichmann Decl. ¶¶ 16–19. AS Designs' other accused MP5 products, its replacement lowers and slip trip components, compete on this platform but not in this segment: each requires discarding the factory housing, the one thing many HK owners refuse to give up. DeMonico Decl. ¶¶ 27, 61.

[redacted]

AS Designs has admitted the diversion. [redacted]

Second, the roller-delayed market is niche. It is confined to the limited number of roller-delayed firearms in the United States—far less than the AR-15 market. DeMonico Decl. ¶¶ 27, 61. Rare Breed reached this segment first, launching the FRT-RD3™ in February 2026. It is now in the opening months when customer relationships, dealer relationships, and platform reputation are set. DeMonico Decl. ¶¶ 61–62; Eichmann Decl. ¶¶ 26, 28, 55, 66–67, 72–74, 104. Losing share in a "small, niche" market is irreparable, because each lost sale matters. *Trebro*, 748 F.3d at 1170.

Third, each diverted sale is likely gone for good. The ARHK is a durable good. DeMonico Decl. Ex. 25 at 2. Once a customer installs an ARHK in a firearm, Rare Breed is far less likely to sell another trigger for that firearm. DeMonico Decl. ¶ 66; Eichmann Decl. ¶¶ 54, 62, 143; *cf. Fred Hutchinson*, 2011 WL 1119565, at *4. The lost sales then multiply. Many customers own multiple firearms and buy multiple triggers. For example, more than [redacted] Rare Breed customers have purchased more than one FRT®. DeMonico Decl. ¶ 66. A customer who goes to AS Designs first is that much harder to win back for the next rifle, and the one after that. *Id.*; Eichmann Decl. ¶¶ 65–66, 74.

Fourth, FRT® products are Rare Breed's entire business. DeMonico Decl. ¶ 24; *EcoNova*, 2012 WL 5944257, at *14. Within that business, the FRT-RD3™ has become especially important.

[redacted]

By June 2026, four months after launch, [redacted] DeMonico Decl. ¶ 63, Ex. 35; Eichmann Decl. ¶ 141; Eichmann Reply Decl. ¶¶ 26–27. Sales have continued since: Rare Breed shipped [redacted] FRT-RD3™ units in July 2026, [redacted] in August, and [redacted] in September. Eichmann Reply Decl., Supp. Sched. R5. The ARHK is aimed at the one product Rare Breed cannot afford to lose.

The Court need not speculate about what infringing entry does to Rare Breed's market share; it has already happened once on the AR-15 platform. As accused forced reset trigger products flooded that market—with AS Designs among the most popular sellers, moving [redacted] accused units—Rare Breed's FRT-15L3® fell from a peak of [redacted], a roughly [redacted]. Colvin Decl., Ex. 8; DeMonico Decl. ¶ 63, Ex. 35.

**2. AS Designs Priced the ARHK to Erode Rare Breed's Price**

The ARHK undercuts the FRT-RD3™ by $65 to $70, lowering the price buyers expect to pay for a drop-in HK forced reset trigger. Dkt. 88-1 ¶ 15; DeMonico Decl. ¶ 75; Colvin ARHK Decl. ¶ 8, Ex. D. If Rare Breed cuts its price to compete, it cannot raise it again later without alienating the buyers who have come to expect the lower one. That lost goodwill is irreparable. *Celsis*, 664 F.3d at 930 (affirming finding of irreparable harm from lost goodwill "when an effort is later made to restore the original price").

**3. Each Day of Continued Infringement Erodes Rare Breed's Patent-Earned Lead Time**

A patent gives its holder time: time to build expertise, customer relationships, and a technological lead before competitors arrive. Money cannot give that time back. *See Yang v. Does 1-89*, No. 4:24-cv-922, 2024 WL 5190362, at *4 (E.D. Tex. Dec. 20, 2024) ("[L]ost exclusivity is

[redacted]

neither quantifiable nor adequately compensable and is thus irreparable."); *EyeTicket Corp. v. Unisys Corp.*, 155 F. Supp. 2d 527, 548 (E.D. Va. 2001) ("Money damages alone cannot restore . . . technological lead-time . . . ."); *Bio-Rad Lab'ys*, 967 F.3d at 1378 (an infringer's improper head start lets it trade on customer relationships the patentee should have enjoyed).

Rare Breed's lead time was hard won: nearly four years and millions of dollars in litigation costs before the May 2025 settlement with the DOJ opened this market at all. DeMonico Decl. ¶¶ 7–17. On the AR-15 platform, infringement consumed that window before Rare Breed could fully benefit from it. *Supra* § IV.B.1. The ARHK threatens to do the same here.

Infringement has cost Rare Breed lead time in one more way: it can no longer announce a new product before launch, because it tells infringers where to aim. So Rare Breed now launches without pre-launch marketing. It released the FRT-SG3™ that way, and it has announced nothing about the platforms it is developing next. DeMonico B&T Decl. ¶¶ 23, 55–56.

#### 4. Defendants Are Eroding Rare Breed's Innovator Reputation and Premium Brand Identity

Reputational injury and loss of goodwill are also established forms of irreparable harm. Where customers can find "the same innovations" at lower prices, the patentee's "reputation as an innovator will certainly be damaged." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344–45 (Fed. Cir. 2013); *accord Tinnus Enters.*, 846 F.3d at 1208 (irreparable harm where the infringing product's market presence eroded the patentee's reputation and goodwill with customers); *see also S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, No. 06-cv-9170, 2014 WL 1652436, at *6–7 (E.D. La. Apr. 24, 2014) (irreparable reputational harm where infringement allowed competitors to incorporate the patentee's innovations into their own reputations).

Rare Breed pioneered the forced reset trigger market. It brought the first commercially available forced reset trigger to market in 2020, roughly five years before AS Designs entered the

[redacted]

space. DeMonico Decl. ¶ 88. But AS Designs now claims the innovator mantle for itself: its Instagram profile announces that it is "[l]eading the FRT industry with cutting edge innovation"; its product pages call the ARC-Fire "the latest innovation from AS Designs" and the ARHK "[d]esigned from the ground up"; and its customer-facing FAQ rests the legality of its accused products on the federal settlement that Rare Breed fought to win. DeMonico Decl. ¶¶ 89–90, Exs. 18, 45, 61.

AS Designs' narrative is working. Customers now credit it as the pioneer and cast Rare Breed as the copier: "so copying as designs arc fire?"; "Someone beat them to market with an idea!" DeMonico Decl. ¶ 91, Exs. 33, 62. And some customers cannot tell the products apart—the *Douglas Dynamics* harm precisely: "I can barely see a mechanical difference between theirs and RB" (discussing the FRT-RD3™ and ARHK); one consumer is "convinced that [AS Designs] licensed (or made a deal with RB) to make the ARHK"; another calls the ARC-Fire the "Rare Greed arc fire." *Id.* ¶ 92, Exs. 43, 66; *see Douglas Dynamics*, 717 F.3d at 1344–45. Once buyers cannot tell the ARHK from the FRT-RD3™, believe it is cheaper, and suspect Rare Breed authorized it, the damage to Rare Breed's reputation is done. No damages award can undo it.

[redacted]

#### 5. Absent an Injunction, Infringers Will Likely Overrun the HK Forced Reset Market as They Did with the AR-15's

The absence of injunctive relief can embolden additional infringers, compounding harm beyond what damages can address. *Eli Lilly & Co. v. Premo Pharm. Lab'ys, Inc.*, 630 F.2d 120, 137–38 (3d Cir. 1980) (affirming PI where rival market entry compounded irreparable harm); *see also Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1456 (Fed. Cir. 1988) ("[I]n the absence of the injunction, other potential infringers will be encouraged to infringe"). This case shows what that harm looks like. For the AR-15 platform, unchecked infringement produced well over a hundred sellers of infringing products, [redacted] [redacted], and forced its price down. DeMonico Decl. ¶¶ 63, 74, 108; *supra* § IV.B.1. Whether the ARHK ships is the signal every would-be entrant is watching; the public already frames the launch as a race against enforcement, predicting AS Designs will stockpile inventory because "as soon as they start shipping, RB will file an injunction to try to prevent them from selling." DeMonico Decl. ¶ 69. Each infringer that enters the market further erodes Rare Breed's position, pricing power, and customer relationships in the small, niche HK market.

#### 6. Damages Would Be Inadequate Because AS Designs' Owners Withdraw Revenue as It Arrives: The Company Is Worth About [redacted] Against Nearly [redacted] in Accused Sales

Money damages are not an adequate remedy where there is a substantial probability Rare Breed could not collect an award. Damages are inadequate where the remedy would not be "a meaningful one in light of the financial condition of the infringer . . . ." *Robert Bosch*, 659 F.3d at 1155–56; *see also Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 273 (5th Cir. 2014); *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 256 (S.D.N.Y. 2006) (defendant's "far-flung" operations made attaching assets "exceedingly difficult"), *aff'd*, 263 F. App'x 57 (Fed. Cir. 2008).

The Defendants' financial condition suggests that no damages remedy here would be meaningful due to Defendants' likely inability to pay.

Discovery has already put AS Designs' financial condition on the record, under oath. [redacted]

[redacted]

[redacted].

[redacted]

[redacted] *Aspen Tech.*, 569 F. App'x at 273; *see Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (inability to collect if assets are dissipated is itself a threat of irreparable harm).

On top of that, newly formed entities with limited operating histories are less likely to have enough capital to satisfy a damages award. *See Symbol Techs., Inc. v. Janam Techs. LLC*, 729 F. Supp. 2d 646, 665 (D. Del. 2010) (finding that evidence of a "young business" not "sufficiently capitalized to be able to pay" a predicted damages award weighed in favor of irreparable harm). AS Designs was only formed in December 2024. Colvin Decl., Ex. 6. [redacted]. Dkt. 50-1 ¶¶ 20, 25.

#### 7. Rare Breed Moved Promptly, and Its One Sublicense Does Not Make Its Harm Compensable

AS Designs argued that Rare Breed waited too long, counting from the ARHK's January announcement. Dkt. 88 at 8–9. But delay runs from when the harm becomes concrete, not from a first announcement. *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1380 (Fed. Cir. 2024) (no delay where the patentee sued within months of "events which would significantly increase the harm"). AS Designs' only case found delay where the patentee waited almost seventeen months and offered no "good explanation." *High Tech Med. Instrumentation, Inc. v. New Image*

[redacted]

*Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995). Here, the ARHK became concrete on July 1, when AS Designs announced "full production" and a 1,500-unit drop "in roughly 8 weeks." DeMonico Decl. ¶ 67, Ex. 41. Rare Breed moved for a TRO on September 2, before any ARHK had shipped. Dkt. 74. After the Court denied that motion because Rare Breed did not have a unit, Rare Breed received one and filed this Motion five days after receiving it. Colvin ARHK Decl. ¶ 6.

AS Designs also argued that Rare Breed's licenses defeat irreparable harm. Dkt. 88 at 11. But licensing is "but one factor," and its weight turns on "the identity of the past licensees, the experience in the market since the licenses were granted, and the identity of the new infringer." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008). Three kinds of license carry little weight. The first does not put the licensee in competition with the patentee. *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 703 (Fed. Cir. 2008). The second excludes the patentee's market. *Canon, Inc. v. Color Imaging, Inc.*, 292 F. Supp. 3d 1339, 1350, 1352 (N.D. Ga. 2018) (enjoining a direct competitor where a rival's license "expressly prohibited" competing sales). The third is part of a broader business relationship, not a simple sale of patent rights for cash. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 449 F. App'x 923, 933 (Fed. Cir. 2011) (affirming an injunction where a customer's license reflected the patentee's role as its supplier).

[redacted]

[redacted]

[redacted]

### 8. Forced Reset Is Why Buyers Want the ARHK

AS Designs built its nexus argument on one sentence from *Apple I*: "Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature." Dkt. 88 at 7–8 (quoting *Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012)). But the patented feature does not have to be the only reason people buy the product; it just has to be more than an "insubstantial" one. *Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1384 (Fed. Cir. 2017) (standard lies between "sole reason" and "insubstantial connection"); *Natera*, 106 F.4th at 1380 (citing *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 642 (Fed. Cir. 2015)) (feature need only "impact consumers' decisions to purchase"). AS Designs' other reasons—caliber compatibility, trigger feel, and dislike of Rare Breed, *id.* at 11–12—may explain why a buyer chooses the ARHK over the FRT-RD3™. They do not explain why anyone would buy the ARHK without forced reset. AS Designs sells the ARHK on that feature: its third position "engage[s] the ARC-Fire clutch for active reset." Dkt. 95-5 at 2. The ARHK has no feature relevant to buyers other than what the Asserted Claims cover. DeMonico Decl. ¶ 60; *see Genband*, 861 F.3d at 1384 n.2 (nexus requirement "may have little work to do" where the accused product's only relevant features are the claimed ones).

In summary, Rare Breed is losing customers and sales, watching its pricing and reputation erode, and facing a growing wave of infringement—all by a company that has no apparent ability

---

[7] AS Designs also argued that Rare Breed's settlements show its harm can be measured in money. Dkt. 88 at 11. But a patentee "may compromise its legitimate business interests, even to the point of enduring irreparable harm, to avoid protracted litigation." *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 323 F. Supp. 3d 1071, 1078 (W.D. Wis. 2018); *see also* Colvin ARHK Decl. Ex. B (DeMonico Dep.) at 85:21–88:2.

[redacted]

to satisfy a judgment.

### C. The Balance of the Equities Favors the Requested Injunctive Relief

Balancing the equities requires the Court to weigh the harm Rare Breed will suffer without an injunction against the harm Defendants will suffer if one is entered. *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1369 (Fed. Cir. 2017). This factor rarely defeats an injunction unless the equities tilt heavily toward the accused infringer. *See Hybritech*, 849 F.2d at 1457–58.

On one side, Rare Breed faces the loss of the launch window for the FRT-RD3™ trigger in the small, premium roller-delayed segment it reached first, lost lead time, reputational harm, and the risk that any judgment will be worth only what remains in AS Designs' accounts when it is entered. *See supra* § IV.B; *Trebro*, 748 F.3d at 1170–71 (recognizing early displacement weighs heavily in the patentee's favor in a small niche market with limited sales opportunities).

On the other side, AS Designs' harms are limited and self-inflicted. Where an accused infringer proceeds in the face of known patent rights, courts give little weight to claims of hardship. *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."); *see also Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012). Three independent reasons show that any claimed hardship to AS Designs is entitled to little or no equitable weight.

First, the ARHK has not launched. The requested relief preserves the status quo: the inventory keeps its value, and if AS Designs prevails, it can sell the ARHK. *See PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996) (noting that a preliminary injunction preserves the status quo and thus creates minimal hardship to an accused infringer where "it would require only a temporary interruption in . . . production and sale of its [products]."); *see also Merial Ltd. v. Velcera Inc.*, 877 F. Supp. 2d 1348, 1366 (M.D. Ga. 2012) (finding the balance of hardships

[redacted]

factor supporting issuance of injunction because enjoining the launch of an alleged infringer's product not yet on the market "would be far less burdensome than enjoining sales of a product that is already on the market."). AS Designs' worst case is a delayed launch.

AS Designs argued that *Windsurfing* discounts self-inflicted hardship only after a finding of infringement. Dkt. 88 at 18–19. But the Federal Circuit applies the same reasoning before judgment. It has upheld preliminary relief on the balance of hardships where the accused infringer's harms were "the result of its own calculated risk to launch its product pre-judgment." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006). And AS Designs has already shown that delay costs it little: on its own, it "pushed the drop back to double the size of the initial drop." Dkt. 110-1 at 1.

Second, whatever hardship remains is self-inflicted twice over. AS Designs has continued to design, price, and build the ARHK after the August 9, 2025 cease-and-desist letter, after the *Hoffman* injunction, after suit, and after the '403 Patent issued on May 26, 2026, and after Rare Breed moved to restrain its launch. *See supra* §§ II.B.4, II.C, II.D. And it did so to undercut Rare Breed by pricing the ARHK against the FRT-RD3™. A defendant that plans its launch around taking the patentee's market has made the calculated choice *Windsurfing* describes, and the consequences of that choice are not hardship. *Celsis*, 664 F.3d at 931.

Third, the relief Rare Breed seeks reaches only the ARHK, a product AS Designs has not yet sold. It reaches no other AS Designs product. AS Designs argued that an injunction would bar ARHK sales for 5.56 and 7.62 rifles, for which Rare Breed sells no product. Dkt. 88 at 18. But the ARHK is one cassette in every configuration: AS Designs advertises that it moves between host firearms by swapping ejectors. DeMonico Decl. ¶ 51, Ex. 22. An injunction limited to 9mm hosts would leave the same infringing cassette free to be sold. [redacted]

[redacted]

[redacted]

[redacted] But a restraint postpones those sales; nothing in the record shows it would destroy them. Profit from a product that likely infringes is not a hardship equity protects. *Windsurfing*, 782 F.2d at 1003 n.12. The comparison also runs the other way: [redacted], DeMonico Decl. ¶ 63, while the ARHK is one new product line for a company whose [redacted]. Dkt. 50-1 ¶ 20.

The balance of the equities thus favors relief.

**D. The Requested Relief Would Not Harm the Public Interest**

The public interest "nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015). Rare Breed practices these inventions, and no countervailing interest favors access to cheaper forced reset triggers. The United States agrees that injunctive relief here would advance public safety. In a Statement of Interest filed August 31, 2026, the Department of Justice explained that it has "a strong interest in promoting the safe use of firearms" and in "discouraging unregulated manufacture of forced reset triggers that allegedly infringe Rare Breed's patents," and advised that the "public interest should be weighed heavily in plaintiffs' favor." Statement of Interest at 1, 7. And because the ARHK has not launched, the requested relief takes nothing from the public: it removes no product and interrupts no supply.

AS Designs argued that lower prices, consumer choice, and competition favor the ARHK. Dkt. 88 at 21–22. But the test is whether "some critical public interest . . . would be injured by the grant of preliminary relief." *Hybritech*, 849 F.2d at 1458. Lower prices do not "justify infringing

[redacted]

a patent"; if they did, "most injunctions would be denied because copiers universally price their products lower than innovators." *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993).

AS Designs also argued that the United States' interest does not reach the ARHK, because the ARHK is not a handgun trigger and Rare Breed's settlement with the government names only the '223 patent. Dkt. 88 at 20–21. But the United States tied its interest to neither. ATF has "an interest in limiting the sale and distribution of FRTs," Statement of Interest at 6, and the settlement "does not bind other potential manufacturers," so Rare Breed's suits "would support ATF's public safety efforts, if successful in enjoining use of FRTs by third parties," *id.* at 7. AS Designs is one of those manufacturers.

**E. The Court Should Require No Security, or Alternatively, Nominal Security**

Under Rule 65(c), the movant is required to give security only "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "[T]he amount of security required by the rule is a matter within the discretion of the trial court," and the Court "may elect to require no security at all." *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981) (citation omitted); *accord Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (affirming injunction issued without any bond). Rule 65(c) secures the costs and damages of a wrongful restraint during its pendency, and here that figure approaches zero. The ARHK has not launched: the requested relief interrupts no revenue and only defers a launch of a product that keeps its value.

[redacted] That figure counts every sale an injunction would defer as a sale lost. AS Designs' own conduct shows otherwise. It delayed its first drop to double its size and limited buyers to one unit each, because buyers had

[redacted]

raised "concerns regarding availability/selling out." Dkt. 110-1 at 1. Buyers who want an ARHK will still want one if AS Designs prevails.

The Court should require no security or, at most, nominal security. If the Court requires security, $25,000 would suffice; another Texas court found that amount "appropriate to protect" a competitor enjoined by a patent preliminary injunction. *Gonza LLC v. Mission Competition Fitness Equip. LLC*, No. 6:21-cv-00771-ADA, Dkt. 17 at 18 (W.D. Tex. Dec. 1, 2021).

## V. CONCLUSION

For the above reasons, Rare Breed respectfully asks the Court to grant the Motion and enter a temporary restraining order now, restraining Defendants and all other persons encompassed by Rule 65(d)(2) from making, using, offering to sell, selling, or importing the ARHK or any derivative of it. Rare Breed further asks the Court to hear its request for a preliminary injunction whenever the Court's schedule allows, and then to enter a preliminary injunction on the same terms.

DATED: October 27, 2026

Respectfully submitted,

/s/ Matthew A. Colvin

Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
Bret T. Winterle
Texas Bar No. 24084249
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
bruce@fr.com
winterle@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635

[redacted]

**FISH & RICHARDSON P.C.**
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Oliver J. Richards
CA Bar No. 310972
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130
E-mail: ojr@fr.com
Tel: (858) 678-5070
Fax: (858) 678-5099

Glenn D. Bellamy (admitted pro hac vice)
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
Texas Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

*Attorneys for Plaintiffs*
*ABC IP, LLC and Rare Breed Triggers, Inc.*

[redacted]

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 27, 2026, to all counsel of record via electronic mail.

/s/ Matthew A. Colvin
Matthew A. Colvin

[redacted]

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred before Plaintiffs filed this Motion. On October 25, 2026, counsel for Plaintiffs emailed John Skeriotis and Sergey Vernyuk for Defendants, told them that Plaintiffs had obtained and examined an ARHK unit and intended to renew their motion, and asked whether Defendants would agree to hold the ARHK's release until the Court rules. On October 26, 2026, Jory Hoffman, Bret T. Winterle, and Oliver J. Richards for Plaintiffs conferred by videoconference with John Skeriotis and Sergey Vernyuk for Defendants. Defendants oppose this Motion. They stated that they do not object to Plaintiffs' moving for a preliminary injunction but object to Plaintiffs' seeking a second temporary restraining order. Defendants would not commit to holding the ARHK's release until the Court rules. The discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

/s/ Matthew A. Colvin
Matthew A. Colvin

[redacted]

[redacted]

[redacted]

/s/ Matthew A. Colvin
Matthew A. Colvin