# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Panel Litigation** | **4:26-md-03176** **MDL 3176** |
| ABC IP, LLC, and RARE BREED TRIGGERS, INC., *Plaintiffs,* v. AS DESIGNS, LLC, MATTHEW S. KARLOVIC, CALVIN OLSON and JOHN DOE, an individual using the alias "s3igu2" and/or "Seagoo Threetwo,", *Defendants.* | Civil No. 4:26-cv-370 |

## ORDER

Pending before the Court is ABC IP, LLC and Rare Breed Triggers, Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction Against the ARHK (Dkt. #117). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part.**

## BACKGROUND

This is a patent infringement case. Plaintiffs accuse Defendants of infringing the Asserted Patents in this case.[1] Plaintiffs seek injunctive relief against Defendants to prevent the launch of the ARHK (Dkt. #117). The ARHK is a "self-contained, drop-in forced reset trigger cassette for HK roller-delayed firearms" (Dkt. #117 at p. 19). Following inspection of the ARHK, Plaintiffs contend

[1] The "Asserted Patents" include U.S. Patent Nos. 12,038,247, 12,031,784, 12,529,538, 12,578,159, and 12,636,403 (Dkt. #117 at p. 16).

that inside the ARHK is "the ARC-Fire's clutch and level, scaled up to fit an HK housing" (Dkt. #117 at p. 10). The ARHK was first announced at the SHOT show trade show in January 2026 but still has not launched (Dkt. #117 at p. 18). At the November 6, 2026 hearing, Plaintiffs' counsel represented to the Court that the ARHK launch may occur as soon as this Friday, November 13, 2026.

On October 27, 2026, Plaintiff filed the present Motion seeking to enjoin the launch of the ARHK (Dkt. #117). On November 3, 2025, the Court ordered expedited briefing on the motion (Dkt. #121). On November 4, 2026, Defendant filed its opposition to the Motion (Dkt. #124). On November 6, 2026, the Court heard arguments from both sides on the Motion.

**LEGAL STANDARD**

A party seeking a temporary restraining order must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). Because this is a patent infringement case, likelihood of success on the merits is governed by Federal Circuit law; the other factors are governed by the law of the regional circuit—here, the Fifth Circuit, in which this Court sits. *ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Sch. "A"*, 52 F.4th 934, 941 (Fed. Cir. 2022). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "'is not required to prove its case in full at a preliminary injunction hearing.'" *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Camenisch*, 451

U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

The Court will consider each factor of the temporary restraining order analysis below.

### I. Likelihood of Success on the Merits

"To demonstrate a likelihood of success on the merits, a patentee must show, among other things, that it will likely prove infringement of the asserted patent." *Socket Solutions, LLC v. Import Global, LLC*, 185 F.4th 1150, 1154 (Fed. Cir. 2026). Plaintiffs assert 22 claims[2] from the Asserted Patents against AS Designs (Dkt. #117 at p. 16).

#### A. Infringement

The likelihood of infringement analysis requires a two-step process: first, a determination of the scope and meaning of the asserted patent claims; and second, comparison of the properly construed claims to the allegedly infringing device. *Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331, 1339 (Fed. Cir. 2003).

##### 1. Claim Construction

Plaintiffs ask the Court to apply the Asserted Claim's plain and ordinary meaning (Dkt. #117 at p. 26). Defendants argue that to do so would be "simply impossible" (Dkt. #124 at p. 13). Defendants give examples of terms that "do not have a 'plain and ordinary meaning' in the field and must be construed," but do not propose any construction to the Court (Dkt. #124 at p. 13). Thus, the Court will construe the claim language to carry its plain and ordinary meaning,

[2] The "Asserted Claims" include Claim 15 of U.S. Patent No. 12,038,247, Claims 1, 3, 6, 7, 9–11, 14–17 of U.S. Patent No. 12,529,538, Claims 1, 4 of U.S. Patent No. 12,031,784, 12, 578,159, and Claims 14, 15, 17, 29, 30, 32, 38, 39 of U.S. Patent No. 12,636,403 (Dkt. #117 at p. 16).

emphasizing that claim construction at this stage of the proceedings is preliminary. *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002).

### 2. Comparison of Claims to the Accused Device

Plaintiffs contend that the ARHK practices each Asserted Claim (Dkt. #117 at p. 28). Plaintiff uses four representative claims, one from each Asserted Patent, to illustrate the comparison to the ARHK (Dkt. #117 at pp. 28–30). Defendants' opposition argues that Plaintiff's infringement arguments are "conclusory and undeveloped" and "are not how one shows infringement" (Dkt. #124 at p. 13). Defendants follow that arguments with the statement that "for the detailed reasons explained in the accompanying declaration of Dr. Stephen A. Batzer (Batzer Decl. §VII and Exhibits 3-6), the ARHK does not infringe the asserted claims of the [Asserted Patents]" (Dkt. #124 at p. 14). In their briefing Defendants do nothing to refute infringement of the four representative claims in the body of their motion.[3]

The Court notes that Plaintiffs do not have the burden at this stage to prove that Defendants infringe each of the Asserted Claims. Rather, at the preliminary injunction stage, a patentee must prove that infringement is "more likely than not." *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525–26 (Fed. Cir. 2012). The Court finds that Plaintiffs have carried that burden here.

## B. Validity

The likelihood of validity also involves a two-step process: first, the same claim construction implicated in an infringement analysis; and second, comparison of the properly construed claims to the prior art. *Oakley, Inc.* 316 F.3d at 1339. When seeking preliminary injunctive relief, the "burden of proving invalidity is with the party attacking validity" while the party seeking

---

[3] Based on time constraints Defendants did not argue infringement at the November 6, 2026, hearing, focusing on the irreparable harm factor at the Court's request.

the injunction "retains the burden of showing a reasonable likelihood that the attack on its patent's validity would fail." Here, Defendants argue that "as thoroughly explained by Dr. Batzer (Batzer Decl. §VIII), the asserted claims of each patent are invalid" (Dkt. #124 at p. 14). Defendants also point the Court to the fact that "other defendants in this MDL have likewise submitted expert declarations that the asserted patents are invalid" (Dkt. #124 at p. 15). Finally, Defendants argue that whether the prior art Blakely reference discloses a feature of the Asserted patents "involves dueling experts" and thus prevents Plaintiff from proving a likelihood of success on the merits (Dkt. #124 at p. 15). The Court finds that neither argument raises a substantial question of validity of the Asserted Patents. Patents are presumed valid at all stages of the case, including at the TRO/PI stage. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009). The Court finds that Defendants have not shown that "it is more likely than not that [Defendants] will be able to prove at trial, by clear and convincing evidence, that the patent is invalid." *Id.* at 1379. Thus, the Court finds that Plaintiff has shown a likelihood of success on the merits at this stage in the proceeding.

**II. Irreparable Harm**

The Court finds that in light of the upcoming ARHK launch, the potential customers that Plaintiff may lose to Defendant can create long-term effects that are difficult to calculate and may not be recaptured. Plaintiffs point to several causes of harm as recognized by the Federal Circuit: a loss of market share, price erosion, lost lead time, lost goodwill, lost business opportunities, and reputational damages (Dkt. #117 at p. 33). Defendant responds that any harm from the upcoming ARHK launch can be compensated for in money (Dkt. #124 at p. 16). However, the Court finds the *Celsis* case from the Federal Circuit persuasive here. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).

In *Celsis*, the Federal Circuit found that "the simple fact that one could, if pressed, compute a money damages award does not always preclude a finding of irreparable harm." *Id.* Rather, the "the irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address." *Id.* The Federal Circuit considered the fact that Plaintiffs' products were "in their growth phase" and that "the loss of a single sale in this market may be more harmful than for products purchased daily." *Id.* Further in *Celsis*, the Federal Circuit considered "the difficulty in quantifying the effect on reputation and business due to [Plaintiff] being precluded from marketing to potential and existing customers that it is the exclusive market leader." *Id.* (finding "[d]uring the growth stage of a product, it is particularly crucial to be able to distinguish oneself from competitors"). The Court finds each of these considerations present in this case, and sufficient for a showing of irreparable harm to support a temporary restraining order. Here, Plaintiffs argue that lost market share will become irreparable because "the infringer's gain is the patentee's loss" especially where the products are in a "niche market" and where the "sales are few, each one matters more" (Dkt. #117 at p. 34). Because the Court finds these arguments sufficient to support a temporary restraining order under these circumstances, the Court will not reach the remaining irreparable harm arguments because "the mere possibility of future monetary damages does not defeat a motion for preliminary injunction." *Celsis*, 664 F.3d at 930.

## III. Balance of Hardships

The district court must balance the harm that will occur to the moving party from the denial of the request for injunctive relief with the harm that the non-moving party will incur if the request is granted. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). The Court finds that the balance of hardships weigh in favor of granting the temporary restraining order. *See PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1558). Here, a temporary restraining

order would "require only a temporary interruption" in Defendants' preparation for launch of the ARHK while the parties prepare for a preliminary injunction hearing. *Id.*

## IV. Public Interest

Finally, the Court finds that there is no countervailing public interest that weighs against an injunction in this case. Although Defendant argues the public has a strong interest in "competition," and "accurate pricing," Defendants' plans to sell the ARHK at a lower price are not sufficient. *See Payless Shoesource, Inc. v. Reebok Intern. Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993) ("Were that to be a justification for patent infringement, most injunctions would be denied because copiers universally price their products lower than innovator."). "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015). As in *Apple*, Plaintiff "does not seek to enjoin the sale of lifesaving drugs" but to prevent Defendant "from profiting from the unauthorize use of infringing features" in the Accused Products. Thus, the Court finds that the public interest weighs in favor of protecting Plaintiffs' property rights.

## V. Bond

In connection with the requirements of Rule 65, the Court finds that Plaintiffs are required to post a security bond in the amount of $25,000.

## CONCLUSION

It is therefore **ORDERED** that ABC IP, LLC and Rare Breed Triggers, Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction Against the ARHK (Dkt. #117) is hereby **GRANTED in part.**

It is further **ORDERED** that each Enjoined Defendant,[4] together with its officers, directors, members, managers, agents, servants, employees, attorneys, successors, and assigns, and all other persons or entities in active concert or participation with any of them—including any parent company, affiliate, trust, subsidiary, division, or entity under common ownership or control—who receive actual notice of this Order by personal service or otherwise, are hereby **RESTRAINED, ENJOINED, AND PROHIBITED** from:

a. Selling, offering for sale, or importing any ARHK trigger, accessory product for use therewith, or other component that is a material part of any Accused Product, any derivative thereof, or any substantially similar product, and that has no substantial use other than in an Accused Product or derivative thereof; and

b. Inducing, encouraging, instructing, or assisting any other person or entity to engage in any conduct prohibited by this Order, including by providing design files, manufacturing specifications, assembly or installation instructions, technical support, or troubleshooting assistance for any Accused Product, any derivative thereof, or any substantially similar product.

It is further **ORDERED** that within seven (7) days of receiving actual notice of this Order, each Enjoined Defendant shall:

a. Remove, delist, or otherwise take down all online listings, product pages, advertisements, and promotional materials for the Accused Product on any website,

[4] The "Enjoined Defendants" include AS Designs, LLC, Matthew S. Karlovic, Calvin Olson and John Doe, an individual using the alias "s3igu2" and/or "Seagoo Threetwo."

marketplace, or social media platform owned, operated, or controlled by the Enjoined Defendant;

b. Notify in writing each distributor, reseller, dealer, and other commercial counterparty to whom the Enjoined Defendant has sold or shipped any Accused Product within the preceding twelve (12) months of the entry and terms of this Order, and provide a copy of this Order to each such counterparty; and

c. Quarantine and segregate from inventory available for sale any unsold Accused Product in the Enjoined Defendant's possession, custody, or control.

It is further **ORDERED** that within fourteen (14) days of receiving actual notice of this Order, each Enjoined Defendant shall file with the Court and serve on counsel for Plaintiffs a sworn certificate of compliance attesting to the specific steps taken to comply with this Order.

It is further **ORDERED** that this Order shall take effect immediately upon entry and will expire 14 days after the entry of this Order, unless the Court extends it for good cause or the Enjoined Defendants consent to an extension.

It is further **ORDERED** that Plaintiffs are required to post a security bond in the amount of $25,000.

It is further **ORDERED** that the parties shall meet and confer regarding a briefing schedule for the remaining preliminary injunction briefing as well as a date for the preliminary injunction hearing. The parties shall notify the Court of their proposed schedule following the meet and confer.

**IT IS SO ORDERED.**
**SIGNED this 12th day of November, 2026.**



AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE