[redacted]

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| IN RE: RARE BREED TRIGGERS PATENT LITIGATION | CASE NO. 4:26-md-03176-ALM |
| RARE BREED TRIGGERS, INC. et al.,<br>Plaintiffs,<br>vs.<br>AS DESIGNS, LLC et al.,<br>Defendants. | (CASE NO. 4:26-cv-00370-ALM)<br><br>CHIEF JUDGE AMOS L. MAZZANT |

**DECLARATION OF STEPHEN A. BATZER, PH.D., P.E.**

I, Stephen A. Batzer, having personal knowledge of the facts stated herein, and being of legal age and sound mind and memory, do hereby declare as follows:

1. I have been retained to provide expert opinions on behalf of Defendants AS Designs, LLC, Matthew S. Karlovic, and Calvin Olson in this action.

2. I have been asked to provide my opinion regarding U.S. Patent Nos. 12,031,784 (the "'784 Patent"), 12,038,247 (the "'247 Patent"), 12,578,159 (the "'159 Patent"), and 12,636,403 (the "'403 Patent") (collectively, the "asserted patents") from the perspective of a person of ordinary skill in the art relevant to those patents ("POSA").

3. This declaration is specifically prepared in support of Defendants' opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction Against the ARHK filed on October 27, 2026 ("Motion"), in this multidistrict litigation ("MDL") and to the October 27, 2026 Declaration of Brian Luettke in support thereof ("Luettke Declaration").

[redacted]

4. I previously provided a declaration (executed July 9, 2026) in support of Defendants' opposition to the Motion for Preliminary Injunction filed by Plaintiffs on April 27, 2026, in this case. I also previously provided a declaration ("Consolidated Decl.," executed August 17, 2026) in support of other defendants' opposition to the Consolidated Motion for Preliminary Injunction filed by Plaintiffs on May 28, 2026, in MDL No. 4:26-md-03176-ALM (E.D. Tex.). Those motions filed by Plaintiffs are similar in substance to the instant Motion, and the declarations of Brian Luettke supporting those motions are similar in substance to the Luettke Declaration supporting this Motion. Thus, much of what I said in my prior declarations also applies to this Motion and is incorporated here by reference.

## I. QUALIFICATIONS AND CREDENTIALS

5. I have attached, as Exhibit 1 to this declaration, a current copy of my curriculum vitae which documents my education, employment history, and other credentials. I hold a B.S. degree in mechanical engineering from the Michigan Technological University, an M.S. degree in manufacturing systems engineering from the GMI Engineering and Management Institute (the former General Motors Institute, now Kettering), and a Ph.D. in mechanical engineering from the Michigan Technological University. I am a licensed professional engineer (P.E.) in Michigan meeting the requirements of education, experience, two written examinations, and the recommendation of my peers. I am the former vice president of the northern region of the Michigan Society of Professional Engineers (MSPE). I am regularly engaged in professional development, which is a requirement of engineering licensure. I am board certified in forensic engineering (DFE) and an elected fellow, the highest membership grade, of the National Academy of Forensic Engineers (NAFE). I am a retired U.S. Army Lieutenant Colonel of Ordnance (i.e., munitions). I served over twenty years in uniform. I have been a mechanical

[redacted]

engineer for forty years, specializing in forensic engineering and failure analysis for the past twenty-five years. I hold three U.S. Patents regarding mechanical designs, U.S. Patent No. 9,352,714, U.S. Patent No. 9,487,171, and U.S. Patent No. 11,305,713. As is shown in the respective prosecution histories, my co-inventor and I submitted these patents through issue pro se.

6. I am a member of various professional organizations, including the American Society of Mechanical Engineers, the National Academy of Forensic Engineers, the Society of Automotive Engineers, and the National Society of Professional Engineers. I regularly review technical manuscripts at the request of the editor prior to their publication. I have authored over seventy peer-reviewed publications. These manuscripts are based upon my research, analysis, and testing. I have taught engineering coursework at five universities. Upon invitation, I have given lectures at universities nationally and internationally on a variety of topics, principally dealing with insights derived from my career as a mechanical forensic engineer. I regularly teach continuing education to other licensed engineers at the request of private organizations.

7. I have served as an expert witness in previous weapons patent / intellectual property cases, to include, but not limited to:

a. *Adcor Defense v. Beretta USA*, No. 03C15006837 (Maryland, Baltimore County Circuit Court);

b. *Evolusion v. Juggernaut*, No. 8:18-CV-1378-JLS-DFM (C.D. Cal.);

c. *Kyntec v. ITT Enidine*, No. 14-cv-271 A (W.D.N.Y.);

d. *TTC Performance v. Mossberg*, No. 3:18-cv-01270-KAD (D. Conn.);

e. *RTG Parts, LLC v. Schmeisser GmbH*, No. IPR2022-00083 (P.T.A.B.).

8. I have no conflicts of interest regarding any party to this litigation.

[redacted]

9. I am being compensated for my work in this matter at the rate of $380 per hour. I also am being reimbursed for reasonable and customary associated case expenses. My compensation is not contingent on the outcome of this matter or the specifics of my opinions.

10. In preparing this declaration, I have reviewed a number of materials in order to inform and support my opinions. A list of those materials is attached to this declaration as Exhibit 2.

11. In forming the opinions expressed herein, I have considered the materials cataloged in Exhibit 2, the relevant legal standards, and my own knowledge and experience in the field of firearms.

## II. LEVEL OF ORDINARY SKILL IN THE ART

12. I understand that a POSA is a hypothetical person who is presumed to have the skill and experience of an ordinary worker in the field at the time of the effective filing date of the relevant patent claiming the invention at issue, and who is presumed to know the relevant prior art.

13. I understand that the effective filing date of a claimed invention is the filing date of the earliest patent application to which the claimed invention can properly claim priority. I understand that the asserted patents claim the following effective filing dates:

a. '784 Patent – November 5, 2021;

b. '247 Patent and '159 Patent – September 8, 2022;

c. '403 Patent – January 10, 2022.

14. I understand that various factors may guide the determination of the ordinary level of skill in the art, including the educational level of the inventor and active workers in the field, the type of problems encountered in the art, prior art solutions to those problems, the rapidity with which innovations are made, the sophistication of the technology, and the patent's purpose.

[redacted]

15. Based on my knowledge and experience in this field and review of the asserted patents and their prosecution history, I believe that a hypothetical POSA in the field of the asserted patents (firearms) as of November 2021 to September 2022 and later would have been a technical person who has had at least some experience working in the field of firearms, reviewing firearms or engineering related to firearms, and is generally familiar with prior art firearms. Such a person would likely have at least a bachelor's degree in mechanical engineering or related discipline such as physics or, alternatively, would have at least five years of experience in the field of firearms or testing or engineering related to firearms. Lack of work experience can be remedied by additional education, and vice versa.

16. Based on my education and experience, I believe that I am qualified and able to opine and testify regarding a POSA's knowledge and perspective on various technical issues, and the opinions in this declaration are made from that perspective.

## III. LEGAL STANDARDS

17. I am not an attorney, so I have been advised by counsel about the legal standards applicable in this suit (including on claim construction, infringement, anticipation, obviousness, indefiniteness, lack of written description, lack of enablement, and improper dependent claims) as discussed in §III of my prior Consolidated Declaration. I have applied these standards in this declaration.

## IV. TECHNOLOGY OVERVIEW

18. Firearms shoot projectiles using explosive force generated from combustion of a propellant. Modern firearms use cartridges (or rounds), which are pre-assembled ammunition that packages a projectile (e.g., bullet), the propellant (e.g., gunpowder), and an ignition device (e.g., primer) within a brass or steel case. A magazine stores multiple cartridges along with a

[redacted]

feeding device (typically a spring) to sequentially push each cartridge into position for loading into the firearm's firing chamber.

19. A firearm's "action" describes its loading, firing, and unloading cycle and falls into two broad categories. Manual action is any type of action where the cartridge is loaded, and usually fired, one cartridge at a time manually by the user, rather than automatically. Automatic action utilizes the discharge of the cartridge (namely, the energy, force, or gas generated by the discharge) to cycle the action. In fully automatic firearms, once the user fires a round, a portion of the energy released from the discharged cartridge is used to eject the spent cartridge case, load a new cartridge into the firing chamber, and ignite the propellant to discharge the new cartridge, repeating this cycle until the user releases the trigger or the ammunition runs out. Semi-automatic firearms likewise use a portion of the energy released from the discharge of a cartridge to eject the spent cartridge case and chamber a new cartridge; however, the new cartridge will not be fired unless the user releases the trigger and pulls it again.

20. Fully automatic firearms (also known as machine guns) are subject to numerous restrictions, including the prohibition on further manufacture of machine guns for civilian sale after 1986. See, e.g., U.S. Patent No. 7,398,723 ("Blakley"), 8:44-63[1]; U.S. Patent App. Pub. No. 2013/0014417, [0012][2]; U.S. Patent App. Pub. No. 2007/0266845, [0015]; U.S. Patent App. Pub. No. 2009/0151213, [0008]. Thus, there is a marketplace demand for firearms that operate with an increased rate of firing without falling into the legal definition of a machine gun. See, e.g., Blakley, 8:44-63.

---

[1] Citations to U.S. patents are in the format *column:line(s)*.

[2] Citations to U.S. patent application publications are to their bracketed paragraphs.

[redacted]

21. One approach that accomplishes an increased rate of firing while still actually pulling the trigger once per each shot utilizes the recoil of the bolt carrier, through intermediate components, to force the trigger to "un-pull" or reset (even with the user continuing to apply force to the trigger face). When the bolt carrier returns "into battery" (i.e., bolt is locked in the normal, ready-to-fire position), the forward displacing force on the trigger is released and the trigger can be pivoted normally to fire a subsequent shot. Thus, if a user continues to maintain pressure on the trigger, such a design will fire many shots quickly, with the trigger rapidly cycling through the pull/un-pull cycle for each shot. Such designs are known by various names including forced reset trigger, active reset trigger, positive reset trigger, assisted reset trigger, active trigger system, positive displacement trigger, and trigger forward displacement system. Examples include Blakley; U.S. Patent No. 9,568,264; U.S. Patent No. 9,939,221; U.S. Patent No. 10,514,223; and Tommy Triggers FRT-15-3MD. Indeed, such designs were known as early as 1934. See, e.g., U.S. Patent No. 2,056,975; U.S. Patent No. 2,139,691.

## V. ASSERTED PATENTS

22. The asserted patents were discussed in §V of my prior Consolidated Declaration.

## VI. ACCUSED PRODUCT

23. Plaintiffs' Motion accuses AS Designs' ARHK product.

24. The ARHK includes [redacted]

[redacted]

[redacted]



[redacted]

25. [redacted]

[redacted]

[redacted]

[redacted]

28. The ARHK is intended to be installed directly into the lower receiver of a compatible firearm (e.g., roller-delayed blowback platforms such as MP5, AP53, HK21).

29. [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

## VII. RESPONSE TO INFRINGEMENT ALLEGATIONS

32. The Luettke Declaration discusses Plaintiffs' infringement allegations in its Exhibits 2-5 as follows.

### A. '784 Patent

33. Exhibit 4 to the Luettke Declaration accuses the ARHK (and ARC-Fire) of infringing claims 1 and 4 of the '784 Patent.

34. My response to these allegations is in Exhibit 3 to this declaration. As discussed therein, certain claim limitations are unclear. As further discussed therein, my opinion is that (as best understood in light of such indefiniteness) the accused products do not meet each and every claim limitation of the asserted claims and thus do not infringe those claims.

[redacted]

**B. ‘247 Patent**

35. Exhibit 2 to the Luettke Declaration accuses the ARHK (and ARC-Fire) of infringing claim 15 of the ‘247 Patent.

36. My response to these allegations is in Exhibit 4 to this declaration. As discussed therein, certain claim limitations are unclear. As further discussed therein, my opinion is that (as best understood in light of such indefiniteness) the accused products do not meet each and every claim limitation of the asserted claim and thus do not infringe that claim.

**C. ‘159 Patent**

37. Exhibit 3 to the Luettke Declaration accuses the ARHK (and ARC-Fire) of infringing claims 1, 3, 6-7, 9-11, and 14-17 of the ‘159 Patent.

38. My response to these allegations is in Exhibit 5 to this declaration. As discussed therein, certain claim limitations are unclear. As further discussed therein, my opinion is that (as best understood in light of such indefiniteness) the accused products do not meet each and every claim limitation of the asserted claims and thus do not infringe those claims.

**D. ‘403 Patent**

39. Exhibit 5 to the Luettke Declaration accuses the ARHK (and ARC-Fire) of infringing claims 14, 15, 17, 29, 30, 32, 38, and 39 of the ‘159 Patent.

40. My response to these allegations is in Exhibit 6 to this declaration. As discussed therein, certain claim limitations are unclear. As further discussed therein, my opinion is that (as best understood in light of such indefiniteness) the accused products do not meet each and every claim limitation of the asserted claims and thus do not infringe those claims.

[redacted]

## VIII. INVALIDITY OF THE ASSERTED PATENTS

41. As further explained in §VIII of my prior Consolidated Declaration, it is my opinion that the asserted patent claims are invalid.

42. I also understand that other defendants in this MDL submitted their own expert declarations that the asserted patents are invalid (e.g., Declaration of Ryan D. Cook executed June 26, 2026).

43. I reserve the right to amend or supplement the opinions expressed in this declaration, including based on any new information that comes to light. This is especially the case because, as noted above, this declaration is being prepared in response to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction on a preliminary and expedited record.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: Nov 4, 2026
Date

Stephen A. Batzer, Ph.D., P.E.