# Exhibit B - Claim Chart for U.S. Patent No. 12,031,784

## Super Safety

| Claim: | Luettke Reply: | Sur-Reply: |
|---|---|---|
| 1. In a forced rest [*sic*] trigger mechanism, an extended trigger member locking device, comprising: | The claim is directed to an extended trigger member locking device comprising at least a locking member (element 1[a]), not to a complete firearm trigger mechanism. "In a forced reset trigger mechanism" identifies the operating environment, and a POSITA would not read the claim to require the accused article to be an entire trigger mechanism. Whether the Super Safety is a complete mechanism is therefore irrelevant. To the extent the preamble is limiting, it is met: as assembled and used as intended in its forced-reset configuration, the Super Safety includes the recited locking member and provides the trigger-locking function addressed at element 1[a]. Because the claim uses open "comprising" language, the device is defined by its inclusion of at least that locking member; no further component need be recited, and a POSITA would understand the claimed device without ambiguity. | Luettke implicitly agrees that if the preamble is limiting, it would not be met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |
| a locking member that is movable between a first position in which it locks a trigger member against pulling movement and a second position where it does not restrict movement of the trigger member, | I understand from counsel that absence of the word "means" creates a rebuttable presumption that § 112(f) does not apply, and that the presumption is overcome only if a POSITA would read the term as a nonce word rather than as connoting structure. A POSITA would understand "locking member" to connote structure. The term names a physical component in the firearms trigger art, as reflected in the '784 Patent and the '223 Patent, which use "locking member" and "locking bar" as component names, and as reflected in Batzer's own use of "cam," "detent bar," and "centering block" to identify parts. The claim itself recites the member's structure and structural relationships: movable between two positions, movably supported by a frame, and having a body portion with an upwardly extending deflectable portion separately movable relative to it. A POSITA would | As I previously explained, "locking member" does not have a plain and ordinary meaning connoting specific structure to a POSA in this field. Because it is phrased as a generic, black-box placeholder ("member") accompanied by a recited function ("locking"), any presumption that §112(f) does not apply is easily rebutted. The subsequent claim recitations that the locking member is "movable" or "movably supported" are likewise functional characterizations. Citing to the '784 patent for support regarding a claim limitation of the '784 |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | understand that recitation to describe a physical part, not a functional placeholder.<br>The Super Safety's locking member is the lever and cam assembly: the cam is the body portion and the lever is the upwardly extending deflectable portion (elements 1[e], 1[f]). Batzer's argument that the lever does not itself contact the trigger is irrelevant, because the claim requires that the locking member lock the trigger member, not that every portion of it contact the trigger.<br>As assembled and used as intended in its forced-reset configuration, that assembly is movable between the two recited positions. In the first position it blocks the trigger member against the pulling movement required to release the hammer and fire. In the second position, reached when the returning bolt carrier makes actuating contact with the lever (elements 1[c], 1[d]), it does not restrict that pulling movement. | patent is circular and does not show that the relevant field uses that term as connotation for specific structure. The '223 patent does not use the term "locking member." Additionally, my use of *other* words (e.g., cam or detent bar) says nothing about whether a completely different term ("locking member") is governed by §112(f).<br><br>Luettke does not argue that the Super Safety meets this limitation if it is governed by §112(f).<br><br>The claim limitation states that in a second position, the locking member does not restrict movement of the trigger member. This is confirmed by, e.g., Fig. 6. But when the Super Safety is in what Luettke views as the second position, it *does* restrict movement of the trigger member (just not to the extent as when it is in the first position). Luettke argues that in the second position, the cam "does not restrict that pulling movement," but the claim (and disclosed embodiment) requires it to not restrict movement at all, which is not the case for the Super Safety. |
| the locking member configured to be movably | Batzer again evaluates the lever in isolation. As set out at element 1[a], the locking member is the lever and cam assembly, and Batzer concedes the cam is supported by the lower receiver. The lower receiver is a frame, and the assembly is movably supported | As explained above, Luettke does not argue that the Super Safety meets this limitation if it is governed by §112(f). |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| supported by a frame and | by it: the cam is received in the receiver and rotates about its axis, carrying the lever with it. A POSITA would therefore understand the Super Safety's locking member to be configured to be movably supported by a frame.<br>Batzer's requirement of a pivot pin passing through a hole is a feature of one disclosed embodiment, not a requirement of the claim. The claim recites only that the locking member be "configured to be movably supported by a frame." | |
| including a generally upward extension portion configured to make actuating contact with a surface of a bolt carrier, | Batzer concedes this limitation is met, acknowledging that the Super Safety lever includes an upward-extending tail configured to make actuating contact with a bolt carrier surface. That is what the claim requires.<br>That the Super Safety does not itself include a bolt carrier is irrelevant. The claim does not require the bolt carrier to be a part of the extended trigger member locking device. | My response in Exhibit 3 to my Opposition Declaration speaks for itself. |
| such actuating contact causing the locking member to move from the first position to the second position, | Batzer appears to concede this limitation is met, acknowledging that actuating contact with the bolt carrier causes the lever and cam to rotate between the first and second positions. As addressed at element 1[c], the claim does not require the bolt carrier to be part of the claimed device. | My response in Exhibit 3 to my Opposition Declaration speaks for itself. |
| the locking member having a body portion that is movably supported and | Batzer's discussion of the lever's lower portion is irrelevant. As set out at element 1[a], the body portion is the cam, not any part of the lever.<br>The cam is movably supported by the frame. As addressed at element 1[b], Batzer concedes the cam is supported by the lower receiver, and the cam rotates about its axis within it. His requirement of a pin-securing hole is a feature of one disclosed embodiment; the claim requires only that the body portion be movably supported. | As explained above, Luettke does not argue that the Super Safety meets this limitation if it is governed by §112(f). |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position and a deflected position. | A POSITA reading the claim language in view of the specification would understand “generally upward extension portion” and “upwardly extending deflectable portion” to refer to the same portion of the locking member. The ’784 Patent describes the upper lever arm portion as including the deflectable extension that both makes actuating contact with the bolt carrier and deflects to allow its passage. There is no ambiguity, and the Super Safety lever is that portion.<br>The lever and cam move separately relative to each other. The dovetail connection joins them with a significant amount of play, such that the lever moves noticeably back and forth within the cam. That separate movement is illustrated in my infringement chart and is readily observed by handling a Super Safety. Batzer’s characterization of that movement as mere assembly tolerance is contradicted by the Super Safety’s own documentation, which states that “the lever pivots in the cam until the void is filled,” and that the amount the lever rotates in the dovetail before transferring torque to the cam determines when the cam acts as the bolt carrier completes its forward movement. A POSITA would understand that movement to be designed and functionally significant, not incidental to assembly. That the lever is not spring-biased is not a requirement of claim 1. | Here again Luettke conflates the “upwardly extending deflectable portion” with the “generally upward extension portion,” which are listed as separate claim limitations and recited using different wording. Luettke nakedly asserts that this would be understandable to a POSA “in view of the specification” but does not cite any portion of the specification. As I previously explained, a POSA would not understand them to refer to the same component but would not know what their difference is, thus rendering this claim indefinite.<br><br>As explained above, Luettke does not argue that the Super Safety meets this limitation if it is governed by §112(f).<br><br>I also disagree that the dovetail connection results in “significant amount of play.” Instead, a POSA would view it as slight wiggle room, as I previously explained. |
| | | |
| 3. The device of claim 1, | | |
| wherein the locking member body portion pivots between | For the reasons set out at element 1[a], a POSITA would understand “locking member” to connote structure. As addressed at elements 1[b] and 1[e], the body portion is the cam, and Batzer’s requirement of a hole through which a pivot pin passes is a feature of one disclosed embodiment rather than a requirement | See my above comments. Luettke does not argue that the Super Safety meets this limitation if it is governed by §112(f). |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| the first and second positions. | of the claim. This claim requires only that the body portion pivot between the first and second positions.<br>It does. As Batzer acknowledges, the cam rotates about its axis within the lower receiver, and that rotation carries it between the first position, in which the trigger member is blocked against the pulling movement required to fire, and the second position, in which it is not. That is illustrated in my infringement chart. | |
| | | |
| 4. The device of claim 1, | | |
| wherein the locking member deflectable portion pivots relative to the body portion. | See claim 1 above. For the reasons set out at elements 1[a], 1[b], 1[e], and 1[f], a POSITA would understand "locking member" to connote structure, Batzer's requirement of a shared pivot-pin hole is a feature of one disclosed embodiment rather than a requirement of the claim, and the lever pivots relative to the cam within the dovetail connection. This claim requires only that the deflectable portion pivot relative to the body portion, which it does. | See my above comments. Luettke does not argue that the Super Safety meets this limitation if it is governed by §112(f). |

**ARC-Fire**

| Claim: | Luettke Reply: | Sur-Reply: |
|---|---|---|
| 1. In a forced rest [*sic*] trigger mechanism, an extended trigger member locking device, comprising: | The claim is directed to an extended trigger member locking device comprising at least a locking member (element 1[a]), not to a complete firearm trigger mechanism. “In a forced reset trigger mechanism” identifies the operating environment, and a POSITA would not read the claim to require the accused article to be an entire trigger mechanism. Whether the ARC-Fire is a complete mechanism is therefore irrelevant. To the extent the preamble is limiting, it is met: as assembled and used as intended in its forced-reset (“ARC”) mode, the ARC-Fire includes the recited locking member and provides the trigger-locking function addressed at element 1[a]. Because the claim uses open “comprising” language, the device is defined by its inclusion of at least that locking member; no further component need be recited, and a POSITA would understand the claimed device without ambiguity. | Luettke implicitly agrees that if the preamble is limiting, it would not be met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire. |
| a locking member that is movable between a first position in which it locks a trigger member against pulling movement and a second position where it does not restrict movement of the trigger member, | I understand from counsel that absence of the word “means” creates a rebuttable presumption that § 112(f) does not apply, and that the presumption is overcome only if a POSITA would read the term as a nonce word rather than as connoting structure. A POSITA would understand “locking member” to connote structure. The term names a physical component in the firearms trigger art, as reflected in the ’784 Patent and the ’223 Patent, which use “locking member” and “locking bar” as component names, and as reflected in Batzer’s own use of “cam,” “detent bar,” and “centering block” to identify parts. The claim itself recites the member’s structure and structural relationships: movable between two positions, movably supported by a | As I previously explained, “locking member” does not have a plain and ordinary meaning connoting specific structure to a POSA in this field. Because it is phrased as a generic, black-box placeholder (“member”) accompanied by a recited function (“locking”), any presumption that §112(f) does not apply is easily rebutted. The subsequent claim recitations that the locking member is “movable” or “movably supported” are likewise functional characterizations. Citing to the ‘784 patent for support regarding a claim limitation of the ‘784 patent is circular and does not show that the relevant field uses that term as connotation for |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | frame, and having a body portion with an upwardly extending deflectable portion separately movable relative to it. A POSITA would understand that recitation to describe a physical part, not a functional placeholder.<br><br>As stated in my infringement charts, the locking member is the lever, which is the upward extension portion, together with the body portion, which comprises the selector lever, the ARC cam, the detent bar, and the ambi selector.<br><br>The claim requires the locking member to be movable between the two recited positions, and as my infringement charts show, the locking member moves between those two recited positions. It is irrelevant that the static shaft of the body portion remains stationary while other parts move; a POSITA would readily understand the locking member as a whole to have moved from a first position to a second position. As assembled and used as intended in its forced-reset ("ARC") mode, the lever and cam rotate together when the bolt carrier makes actuating contact with the lever, and a POSITA would understand that the locking member is thereby in a different position, because the cam has been carried to a position in which it no longer restricts the trigger member.<br><br>In the first position the locking member blocks the trigger member against the pulling movement required to release the hammer and fire. In the second position, reached when the returning bolt carrier makes actuating contact with the lever (elements 1[c], 1[d]), it does not restrict that pulling movement. Batzer's argument that the lever does not itself contact the trigger is irrelevant, because the claim | specific structure. The '223 patent does not use the term "locking member." Additionally, my use of *other* words (e.g., cam or detent bar) says nothing about whether a completely different term ("locking member") is governed by §112(f).<br><br>Luettke does not argue that the ARC-Fire meets this limitation if it is governed by §112(f).<br><br>The claim limitation states that in a second position, the locking member does not restrict movement of the trigger member. This is confirmed by, e.g., Fig. 6. But when the ARC-Fire is in what Luettke views as the second position, it *does* restrict movement of the trigger member (just not to the extent as when it is in the first position). Luettke argues that in the second position, the cam "does not restrict that pulling movement," but the claim (and disclosed embodiment) requires it to not restrict movement at all, which is not the case for the ARC-Fire.<br><br>As I explained previously, this claim requires the entire "locking member" to be movable between a first position and a second position; and Luettke points to the lever (which he equates with the upward extension portion) and the selector lever, cam, detent bar, and ambi selector (which he equates with the body portion) as allegedly meeting the locking member limitation. But the selector lever, detent bar, and ambi selector do not move at all when the lever (and cam if in forced- |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | requires that the locking member lock the trigger member, not that every portion of it contact the trigger. | reset mode) move between the positions. With the majority of components not moving, a POSA would not "readily understand the locking member as a whole to have moved from a first position to a second position"; quite the opposite. |
| the locking member configured to be movably supported by a frame and | Batzer concedes that the ARC-Fire as a whole is configured to be movably supported by a lower receiver.<br><br>His remaining argument assumes the locking member is limited to the lever and cam. As set out at element 1[a], the body portion also comprises the selector lever, the detent bar, and the ambi selector, which together form a shaft that spans the receiver and is supported by it. Batzer acknowledges as much, stating that the detent bar, along with the selector lever, is supported by the lower receiver.<br><br>Batzer's requirement of a pivot pin passing through a hole is a feature of one disclosed embodiment, not a requirement of the claim. The claim recites only that the locking member be "configured to be movably supported by a frame." | As explained above, Luettke does not argue that the ARC-Fire meets this limitation if it is governed by §112(f). |
| including a generally upward extension portion configured to make actuating contact with a surface of a bolt carrier, | Batzer concedes this limitation is met, acknowledging that the ARC-Fire lever includes an upward-extending tail configured to make actuating contact with a bolt carrier surface. That is what the claim requires.<br><br>That the ARC-Fire does not itself include a bolt carrier is irrelevant. The claim does not require the bolt carrier to be a part of the extended trigger member locking device. | My response in Exhibit 3 to my Opposition Declaration speaks for itself. |
| such actuating contact causing the locking member to move | Batzer concedes the operative facts for forced-reset mode: actuating contact with the bolt carrier causes the lever to move the cam, and the cam restricts trigger movement in the first position. | My response in Exhibit 3 to my Opposition Declaration speaks for itself. Furthermore, see my comments above regarding the "locking member." |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| from the first position to the second position, | As addressed at element 1[a], it is irrelevant that the static shaft of the body portion remains stationary; the locking member as a whole moves between the first and second positions. As addressed at element 1[c], the claim does not require the bolt carrier to be part of the claimed device.<br><br>Batzer's standard semi-automatic mode argument does not bear on this analysis, which is directed to the ARC-Fire as assembled and used as intended in its forced-reset ("ARC") mode. | Luettke's comment here confirms that a firearm with an ARC-Fire operated in standard semi-automatic mode does not infringe these claims. Since many firearm users wish to operate in standard semi-automatic mode (hence the provision of this mode), the ARC-Fire has substantial noninfringing uses. |
| the locking member having a body portion that is movably supported and | Batzer correctly identifies the selector lever, the detent bar, and the ambi selector as components of the body portion, together with the ARC cam (element 1[a]).<br><br>This limitation requires only that the body portion be movably supported. It is. Batzer concedes those components are supported by the lower receiver, and they are movably supported because they move when the user switches between safe, standard semi-automatic, and forced reset modes, as Batzer also acknowledges.<br><br>Batzer's remaining points are directed to requirements this limitation does not contain. That the body portion is not spring-biased is not a requirement of claim 1. That portions of it do not move in response to actuating contact with the bolt carrier, and do not themselves lock the trigger member, is addressed at elements 1[a] and 1[d]. | As explained above, Luettke does not argue that the ARC-Fire meets this limitation if it is governed by §112(f). Furthermore, see my comments above regarding the "locking member." |
| an upwardly extending deflectable portion that is separately | A POSITA reading the claim language in view of the specification would understand "generally upward extension portion" and "upwardly extending deflectable portion" to refer to the same portion of the locking member. The '784 Patent describes the upper lever arm | Here again Luettke conflates the "upwardly extending deflectable portion" with the "generally upward extension portion," which are listed as separate claim limitations and recited using different wording. Luettke nakedly asserts that |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| movable relative to the body portion between an extended position and a deflected position. | portion as including the deflectable extension that both makes actuating contact with the bolt carrier and deflects to allow its passage. There is no ambiguity, and the ARC-Fire lever is that portion.<br><br>As illustrated in my infringement chart, the lever is separately movable relative to the body portion between an extended position and a deflected position. That the lever is itself rigid does not matter. The claim requires the deflectable portion to be separately movable relative to the body portion, not to flex internally. That the lever is not spring-biased, and does not pivot on a pin, is not a requirement of claim 1. | this would be understandable to a POSA "in view of the specification" but does not cite any portion of the specification. As I previously explained, a POSA would not understand them to refer to the same component but would not know what their difference is, thus rendering this claim indefinite.<br><br>As explained above, Luettke does not argue that the ARC-Fire meets this limitation if it is governed by §112(f). |
| | | |
| 4. The device of claim 1, | | |
| wherein the locking member deflectable portion pivots relative to the body portion. | See claim 1 above. For the reasons set out at elements 1[a], 1[b], 1[e], and 1[f], a POSITA would understand "locking member" to connote structure, Batzer's requirement of a shared pivot-pin hole is a feature of one disclosed embodiment rather than a requirement of the claim, and the lever is separately movable relative to the body portion. This claim requires only that the deflectable portion pivot relative to the body portion, which it does, as illustrated in my infringement chart. | See my above comments. Luettke does not argue that the ARC-Fire meets this limitation if it is governed by §112(f). |