**Exhibit C - Claim Chart for U.S. Patent No. 12,038,247**

**Super Safety**

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| 15. A firearm trigger mechanism comprising: | My analysis is directed to the firearm trigger mechanism as assembled and installed in an AR-15 pattern firearm in accordance with AS Designs' install guides. As I explained in my declaration, the Super Safety is sold as a kit of purpose-designed components, including a pre-cut trigger, cam, reset lever, centering block, and detent, that are dimensioned and shaped to fit together in the single configuration the instructions describe, and I am not aware of any alternative assembly configuration that would result in a different mode of operation. Batzer's observation that the kit as shipped is not itself a complete trigger mechanism does not address that analysis. As assembled and installed as instructed, the resulting firearm trigger mechanism includes each component recited in claim 15, including the hammer, trigger member, disconnector, and cam addressed at elements 15[a] through 15[e]. To the extent the preamble is limiting, it is met. | Luettke implicitly agrees that if the preamble is limiting, it would not be met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer | As set out at element 15[pre], my analysis is directed to the trigger mechanism as assembled and installed per AS Designs' install guides. In that mechanism, the hammer of the AR-15 pattern fire control group has each recited characteristic. Batzer does not dispute that; his only point is that the kit as shipped omits the | Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
| --- | --- | --- |
| pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | hammer, which does not address the assembled mechanism. | |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | Batzer concedes this limitation is met, acknowledging that the Super Safety includes a trigger having a sear and adapted to be mounted in a fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions. His parenthetical that the pocket is not included is addressed at element 15[pre]. | My response in Exhibit 4 to my Opposition Declaration speaks for itself. |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | Batzer's only argument is again that the kit as shipped omits the hammer. As addressed at element 15[pre], my analysis is directed to the assembled mechanism. In that mechanism, the trigger member's sear, which Batzer concedes the Super Safety supplies (element 15[b]), engages the hammer's sear catch in the set positions and is out of engagement in the released positions. Batzer does not dispute that operation. | Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | Batzer's only argument is again that the kit as shipped omits these components. As addressed at element 15[pre], my analysis is directed to the assembled mechanism. In that mechanism, the disconnector of the AR-15 pattern fire control group has a hook for engaging the hammer and is mounted in the fire control mechanism pocket to pivot on a transverse | Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |

| Claim: | Luettke Reply: | Sur-Reply: |
|---|---|---|
| | disconnector pivot axis. Batzer does not dispute that; at elements 15[f] and 15[g] he analyzes the disconnector hook catching and releasing the hammer hook in the installed firearm. | |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | Batzer concedes the Super Safety includes a cam having a cam lobe, designed to be mounted in a fire control mechanism pocket, slidable along its axis between safe, standard semi-automatic, and forced reset modes, and rotatable on that axis depending on the mode. That is the recited structure and movability. Batzer's argument depends on a limitation the claim does not contain. The claim recites a cam "adapted to be movably mounted" and "movable between a first position and a second position." It does not restrict that movement to rotation, and it does not restrict it to sliding. It defines the second position by what the cam does there: "in said second position said cam lobe forces said trigger member towards said set position." Batzer applies that same definition, describing the second position as the position "where the cam lobe forces the trigger toward the set position." The Super Safety cam moves in both of the ways Batzer identifies, and the limitation is satisfied by each.<br>The cam's rotational movement satisfies it. As the bolt carrier drives the lever rearward, the cam rotates from a first position, in which the cam lobe does not force the trigger member toward the set position, into a second position, in which it does. | My Opposition Declaration pointed out that Plaintiffs have been inconsistent regarding what they view as the recited movement. The Luettke Reply does not clarify which movement Plaintiffs accuse and instead claims both meet the limitation. But the two movements (sliding along the axis, and rotating about the axis) are different movements, caused by different causes, and reaching different results. Two inconsistent movements cannot both meet the same claim limitation, which must be supported by the specification. Luettke does not explain where the '247 Patent specification discloses two independent and different cam movements that allegedly meet this limitation and instead argues that this limitation encompasses any movement regardless of what the specification actually supports. If so, that renders this claim not enabled and lacking written description support under §112(a), as the specification does not show a POSA that the inventor had possession of any and all such cam movements as part of his invention, nor did the inventor enable such through his specification. Furthermore, if Plaintiffs stand by Luettke's comment that the cam limitation is defined "by what the cam does there," rather than by specific structural characteristics, then this limitation is governed by §112(f) and is limited to |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | The cam's axial movement satisfies it as well. The user slides the cam between a first position, standard semi-automatic mode, and a second position, forced reset mode, and in the second position the cam lobe forces the trigger member toward the set position as the firearm cycles. Elements 15[f] and 15[g] describe the cam in those terms, reciting that it is in the first position in standard semi-automatic mode and in the second position in forced reset mode. Batzer's remaining argument adds a further requirement the claim does not contain. The claim does not require that moving the cam into the second position is itself what forces the trigger member toward the set position. It requires that in the second position, the cam lobe forces the trigger member toward the set position. It does. | what is disclosed in the specification and equivalents thereof. As noted, the only cam movement disclosed by the specification is rotation about its pivot axis, which therefore limits this limitation to only rotation.<br><br>On rotation, the cam's rotation (whether the movement itself or after the cam has been rotated to the so-called second position) does not force the trigger to the set position if the cam is in standard semi-automatic mode. Luettke does not acknowledge this.<br><br>Even if sliding were considered (as Luettke seems to suggest by reference to elements 15[f] and [g]), the mere sliding of the cam from any one mode into another (whether the movement itself or after the cam has slid to the so-called second position) does not force the trigger to the set position if the lever has not been also moved. Luettke again does not acknowledge this.<br><br>In other words, neither of Plaintiffs' inconsistent positions meets this claim limitation. |
| whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer | Batzer's missing-components argument is addressed at element 15[pre].<br>Subject only to that point, Batzer describes the recited operation: with the Super Safety installed and set to standard semi-automatic mode, rearward movement of the bolt carrier pivots the hammer rearward, the disconnector hook catches the hammer hook, and after the | Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety.<br><br>Regarding the first position, see my comments above. Furthermore, as I previously explained, this limitation requires the cam to be in first |

| Claim: | Luettke Reply: | Sur-Reply: |
|---|---|---|
| hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | bolt carrier returns to battery the user must manually release the trigger member to free the hammer before the firearm can be fired again. The cam is in the claimed first position in standard semi-automatic mode by either movement (element 15[e]). By its axial movement, the user has slid the cam to the standard semi-automatic position. By its rotational movement, the cam does not reach the second position in this mode at all: the standard-fire groove relieves the cam lobe so that it never forces the trigger member toward the set position, however the cam rotates. Batzer's observation that the cam "may be in any position of rotation (first, second, or any other) due to the standard-fire groove" therefore confirms this limitation rather than defeating it. | position. But if that is determined by rotation (consistent with the cam disclosed in the specification), then the Super Safety cam is not in the first position while all the recited actions take place in the standard semi-automatic mode. Luettke argues that by rotating, the cam does not reach the second position in this mode. The cam's rotation is exactly the same in standard semi-automatic mode and in forced-reset mode, because the same movement of the lever (by the bolt carrier) occurs in both modes; so it is impossible for the same rotation to both reach and not reach the same (second) position. |
| whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. | Batzer's missing-components argument is addressed at element 15[pre].<br>Batzer concedes the recited result: continued rearward movement of the bolt carrier rotates the cam and causes the disconnector hook to release the hammer hook, and once the bolt carrier moves forward into battery the user can pull the trigger member to fire.<br>The cam is in the claimed second position in forced reset mode by either movement (element 15[e]). By its axial movement, the user has slid the cam to the forced reset position before the cycle begins. By its rotational movement, the cam rotates into the second position as the bolt carrier drives the lever rearward, which is when | Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety.<br><br>Regarding the second position, see my comments above. Furthermore, as I previously explained, this limitation requires the cam to be in second position. But if that is determined by rotation (consistent with the cam disclosed in the specification), then the Super Safety cam is not in the second position while all the recited actions take place in the forced-reset mode. Luettke argues that the "claim does not require the cam to remain in the second position." That argument on |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | the cam lobe forces the trigger member toward the set position. Batzer's statements that the cam "is not constrained to just be in the second rotational position" and "must be in the first position for the firearm to fire" do not matter under either movement. The claim does not require the cam to remain in the second position; this very limitation recites that the bolt carrier thereafter moves forward into battery and the user can then fire, which presupposes that the cam has moved on.<br>Batzer's remaining argument is one of sequence. As the bolt carrier travels rearward it drives the lever, rotating the cam so that the cam lobe forces the trigger member to its set position. Because the disconnector is mounted on the trigger member pivot axis and travels with the trigger member, forcing the trigger member to the set position carries the disconnector hook clear of the hammer hook, so the hook does not catch and hold the hammer. That occurs during the same rearward stroke Batzer describes. The claim does not require that the rearward pivoting of the hammer itself be what prevents the catch; it recites that rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook is prevented from catching the hammer hook. Rearward movement of the bolt carrier drives both. | this limitation and the preceding one effectively reads out the contrasting "said cam is in said [first/second] position" portions – that elimination is improper when construing the claims, not to mention erroneous in light of the claim language, which clearly delineates where the cam must be depending on the mode. Luettke argues that the subsequent firing limitations "presuppos[e] that the cam has moved on." The claim nowhere recites that the cam must move off the second position; to the contrary, the claim recites that in this mode, the cam "is" in the second position. If poor claim drafting renders the resulting mechanism non-functional, then this claim is invalid under §112(a) for lack of written description support and enablement and under §101 for lack of utility.<br><br>Luettke is also incorrect regarding the disconnector. As the bolt carrier moves rearwards, it first contacts and pivots the hammer toward the disconnector, causing the disconnector hook to catch and hold the hammer hook, as I explained previously. As the bolt carrier keeps moving rearwards, it subsequently contacts the Super Safety lever and rotates it rearwards, causing the cam to rotate, causing the trigger to reset, which only then causes the disconnector to pivot and release the hammer hook. By the time the cam resets the trigger, the disconnector hook has already caught the hammer hook. |

**ARC-Fire**

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| 15. A firearm trigger mechanism comprising: | My analysis is directed to the firearm trigger mechanism as assembled and installed in an AR-15 pattern firearm in accordance with AS Designs' install guides. As I explained in my declaration, the ARC-Fire is sold as a kit of purpose-designed components, including a pre-cut trigger, transfer (reset) lever, detent bar, cam, primary selector, ambidextrous selector, and detent, that install within the firearm's fire control mechanism pocket and are dimensioned and shaped to fit together in the single configuration the instructions describe, and I am not aware of any alternative assembly configuration that would result in a different mode of operation. Batzer's observation that the kit as shipped is not itself a complete trigger mechanism does not address that analysis. As assembled and installed as instructed, the resulting firearm trigger mechanism includes each component recited in claim 15, including the hammer, trigger member, disconnector, and cam addressed at elements 15[a] through 15[e]. To the extent the preamble is limiting, it is met. | Luettke implicitly agrees that if the preamble is limiting, it would not be met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire. |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a | As set out at element 15[pre], my analysis is directed to the trigger mechanism as assembled and installed per AS Designs' install guides. In that mechanism, the hammer of the AR-15 pattern fire control group has each recited characteristic. Batzer does not | Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | dispute that; his only point is that the kit as shipped omits the hammer, which does not address the assembled mechanism. | |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | Batzer concedes this limitation is met, acknowledging that the ARC-Fire includes a trigger having a sear and adapted to be mounted in a fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions. His parenthetical that the pocket is not included is addressed at element 15[pre]. | My response in Exhibit 4 to my Opposition Declaration speaks for itself. |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | Batzer's only argument is again that the kit as shipped omits the hammer. As addressed at element 15[pre], my analysis is directed to the assembled mechanism. In that mechanism, the trigger member's sear, which Batzer concedes the ARC-Fire supplies (element 15[b]), engages the hammer's sear catch in the set positions and is out of engagement in the released positions. Batzer does not dispute that operation. | Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire. |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | Batzer's only argument is again that the kit as shipped omits these components. As addressed at element 15[pre], my analysis is directed to the assembled mechanism. In that mechanism, the disconnector of the AR-15 pattern fire control group has a hook for engaging the hammer and is mounted in the fire control mechanism pocket to pivot on a | Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | transverse disconnector pivot axis. Batzer does not dispute that; at elements 15[f] and 15[g] he analyzes the disconnector hook catching and releasing the hammer hook in the installed firearm. | |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | Batzer concedes the ARC-Fire includes a cam having a cam lobe, designed to be mounted in a fire control mechanism pocket, that may rotate on its axis and may also slide along it. Batzer's argument depends on a limitation the claim does not contain. The claim recites a cam "adapted to be movably mounted" and "movable between a first position and a second position." It does not restrict that movement to rotation, and it does not restrict it to sliding. It defines the second position by what the cam does there: "in said second position said cam lobe forces said trigger member towards said set position." Batzer applies that same definition, describing the second position as the position "where the cam lobe forces the trigger toward the set position."<br>The ARC-Fire cam's rotational movement satisfies the limitation. In forced reset mode the bolt carrier drives the lever rearward and the cam rotates with it, moving from a first position, in which the cam lobe does not force the trigger member toward the set position, into a second position, in which it does. Batzer concedes exactly that: "If the first and second positions are determined by rotation, | My Opposition Declaration pointed out that Plaintiffs have been inconsistent regarding what they view as the recited movement. The Luettke Reply argues that both meet the limitation while focusing on the rotation. But the two movements (sliding along the axis, and rotating about the axis) are different movements, caused by different causes, and reaching different results. Two inconsistent movements cannot both meet the same claim limitation, which must be supported by the specification. Luettke does not explain where the '247 Patent specification discloses two independent and different cam movements that allegedly meet this limitation and instead argues that this limitation encompasses any movement regardless of what the specification actually supports. If so, that renders this claim not enabled and lacking written description support under §112(a), as the specification does not show a POSA that the inventor had possession of any and all such cam movements as part of his invention, nor did the inventor enable such through his specification. Furthermore, if Plaintiffs stand by Luettke's comment that the cam limitation is defined "by what the cam does there," rather than by specific structural characteristics, then this limitation is governed by §112(f) and is limited to |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | then moving/rotating the cam to the second position forces the trigger toward the set position (if the ARC-Fire is in forced-reset mode).”<br>Batzer’s remaining argument adds a further requirement the claim does not contain. The claim does not require that moving the cam into the second position is itself what forces the trigger member toward the set position. It requires that in the second position, the cam lobe forces the trigger member toward the set position. It does. | what is disclosed in the specification and equivalents thereof. As noted, the only cam movement disclosed by the specification is rotation about its pivot axis, which therefore limits this limitation to only rotation.<br><br>On rotation (the movement Luettke addresses), the cam’s rotation (whether the movement itself or after the cam has been rotated to the so-called second position) does not force the trigger to the set position if the cam is in standard semi-automatic mode. Luettke does not acknowledge this. |
| whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger | Batzer’s missing-components argument is addressed at element 15[pre].<br>Subject only to that point, Batzer describes the recited operation: with the ARC-Fire installed and set to standard semi-automatic mode, rearward movement of the bolt carrier pivots the hammer rearward, the disconnector hook catches the hammer hook, and after the bolt carrier returns to battery the user must manually release the trigger member to free the hammer before the firearm can be fired again.<br>The cam is in the claimed first position in standard semi-automatic mode. Batzer concedes it, stating that “From the perspective of rotation, the cam remains in the first position in the standard semi-automatic mode.” That is because the lever is not engaged with the cam in this mode, so | Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire.<br><br>Regarding the first position, see my comments above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| member to fire the firearm, and | rearward movement of the bolt carrier rotates the lever without rotating the cam, and the cam lobe never forces the trigger member toward the set position. | |
| whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. | Batzer's missing-components argument is addressed at element 15[pre].<br>Batzer concedes the recited result: continued rearward movement of the bolt carrier rotates the cam and causes the disconnector hook to release the hammer hook, and once the bolt carrier moves forward into battery the user can pull the trigger member to fire.<br>The cam is in the claimed second position in forced reset mode. As set out at element 15[e], the cam rotates into that position as the bolt carrier drives the engaged lever rearward, which is when the cam lobe forces the trigger member toward the set position.<br>Batzer's statements that the cam "is not constrained to just be in the second rotational position" and "must be in the first position for the firearm to fire" do not defeat the limitation. The claim does not require the cam to remain in the second position; this very limitation recites that the bolt carrier thereafter moves forward into battery and the user can then fire, which presupposes that the cam has moved on.<br>Batzer's remaining argument is one of sequence. As the bolt carrier travels rearward it drives the lever, rotating the engaged cam so that the cam lobe forces the trigger | Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire.<br><br>Regarding the second position, see my comments above. Furthermore, as I previously explained, this limitation requires the cam to be in second position. But if that is determined by rotation (the movement Luettke addresses), then the ARC-Fire cam is not in the second position while all the recited actions take place in the forced-reset mode. Luettke argues that the "claim does not require the cam to remain in the second position." That argument on this limitation and the preceding one effectively reads out the contrasting "said cam is in said [first/second] position" portions – that elimination is improper when construing the claims, not to mention erroneous in light of the claim language, which clearly delineates where the cam must be depending on the mode. Luettke argues that the subsequent firing limitations "presuppos[e] that the cam has moved on." The claim nowhere recites that the cam must move off the second position; to the contrary, the claim recites that in this mode, the cam "is" in the second position. If poor claim drafting renders the resulting mechanism non-functional, then this |

| Claim: | Luettke Reply: | Sur-Reply: |
| --- | --- | --- |
| | member to its set position. Because the disconnector is mounted on the trigger member pivot axis and travels with the trigger member, forcing the trigger member to the set position carries the disconnector hook clear of the hammer hook, so the hook does not catch and hold the hammer. That occurs during the same rearward stroke Batzer describes. The claim does not require that the rearward pivoting of the hammer itself be what prevents the catch; it recites that rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook is prevented from catching the hammer hook. Rearward movement of the bolt carrier drives both. | claim is invalid under §112(a) for lack of written description support and enablement and under §101 for lack of utility.<br><br>Luettke is also incorrect regarding the disconnector. As the bolt carrier moves rearwards, it first contacts and pivots the hammer toward the disconnector, causing the disconnector hook to catch and hold the hammer hook, as I explained previously. As the bolt carrier keeps moving rearwards, it subsequently contacts the ARC-Fire lever and rotates it rearwards, causing the cam to rotate, causing the trigger to reset, which only then causes the disconnector to pivot and release the hammer hook. By the time the cam resets the trigger, the disconnector hook has already caught the hammer hook. |