**Exhibit D - Claim Chart for U.S. Patent No. 12,578,159**

**Super Safety**

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | My analysis is directed to the firearm trigger mechanism as assembled and installed in an AR-15 pattern firearm in accordance with AS Designs' install guides. As I explained in my declaration, the Super Safety is sold as a kit of purpose-designed components, including a pre-cut trigger, cam, reset lever, centering block, and detent, that are dimensioned and shaped to fit together in the single configuration the instructions describe, and I am not aware of any alternative assembly configuration that would result in a different mode of operation. Batzer's observation that the kit as shipped is not itself a complete trigger mechanism does not address that analysis.<br>The preamble recites the fire control mechanism pocket and the reciprocating bolt means as features of the firearm for which the mechanism is intended, not as components of the claimed mechanism. As assembled and installed as instructed, the resulting firearm trigger mechanism includes each recited component, and the firearm has both a fire control mechanism pocket and a reciprocating bolt. | Luettke implicitly agrees that if the preamble is limiting, it would not be met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety.<br><br>As Luettke admits in his Exhibit H, the recital of "means" creates a presumption that the limitation is governed by §112(f). His comments here merely nakedly assert that the "means" terms would be understood as structure; but other than his say-so, he does not bother to rebut the presumption. Furthermore, a POSA in this field does not use terms like "bolt means," "trigger means," "hook means," or "means for selecting"; because a POSA does not even use such terms, they certainly do not have a "plain and ordinary" meaning to a POSA. Thus, as explained in my Opposition Declaration, such terms are in fact governed by §112(f). Luettke does not argue that the Super Safety meets these limitations if they are governed by §112(f). |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | A POSITA would understand "reciprocating bolt means" to connote structure. The same is true of each other term Batzer identifies as a means-plus-function limitation, including "bolt means," "trigger means," "hook means," and "disconnector hook means." Each names a physical component that is standard and well understood in the firearms art, and each is used in the '159 Patent consistently with its ordinary meaning. | |
| the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | Batzer concedes this limitation is met, acknowledging that the Super Safety is operable in a standard semi-automatic mode and in a forced-reset mode. | My response in Exhibit 5 to my Opposition Declaration speaks for itself. |
| a hammer having a hammer sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | Batzer's only argument is that the kit as shipped omits these components. As addressed at element 1[pre], my analysis is directed to the assembled mechanism. In that mechanism, the hammer of the AR-15 pattern fire control group has each recited characteristic, and the firearm has a fire control mechanism pocket and a reciprocating bolt. Batzer does not dispute that. | Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | Batzer concedes this limitation is met, acknowledging that the Super Safety includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket to pivot on a transverse trigger member pivot axis | My response in Exhibit 5 to my Opposition Declaration speaks for itself. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | between set and released positions. His parenthetical that the pocket is not included is addressed at element 1[pre]. | |
| wherein the trigger member sear surface and hammer sear catch surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | A POSITA reading the claims in light of the specification would understand "hammer sear surface" and "hammer sear catch surface" to refer to the same surface of the hammer, and "trigger sear surface" and "trigger member sear surface" to refer to the same surface of the trigger member. The '159 Patent describes a single sear on the trigger member that engages a single sear catch on the hammer, and the variation in wording is inconsistent shorthand for those same two surfaces. There is no ambiguity.<br>Batzer's remaining argument is that the kit as shipped omits the hammer, which is addressed at element 1[pre]. In the assembled mechanism, the trigger member's sear surface, which Batzer concedes the Super Safety supplies (element 1[c]), engages the hammer's sear catch surface in the set positions and is out of engagement in the released positions. | Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety.<br><br>Luettke concedes that this claim is inconsistent in its wording, which renders it unclear. |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | Batzer's only argument is that the kit as shipped omits these components. As addressed at element 1[pre], my analysis is directed to the assembled mechanism. In that mechanism, the disconnector of the AR-15 pattern fire control group has a hook for engaging the hammer and is | Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. Batzer does not dispute that. | |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | Batzer concedes the Super Safety includes a cam having a cam lobe designed to be mounted in a fire control mechanism pocket, and that the cam may rotate on its axis.<br>The first and second positions are the rotational positions of the cam. The claims say so: elements 6[h] and 10[h] recite that after the bolt means moves forward into battery, "the cam is moved to the first position." That occurs during each firing cycle. Mode selection does not change during a firing cycle, so a POSITA would understand the first and second positions to be the rotational positions the cam occupies as the firearm cycles.<br>That is consistent with my analysis of the '247 Patent. As I explain there, nothing in that patent's claims restricts the first and second positions to a single kind of movement, and the cam satisfies the limitation by both its rotational movement and its mode position. The '159 Patent's claims go further and describe the cam moving between those positions during the firing cycle, which is rotational movement. | My Opposition Declaration pointed out that Plaintiffs have been inconsistent regarding what they view as the recited movement. Luettke points to limitations of other claims as allegedly clarifying that the cam movement in this limitation refers to rotation, despite the fact that those other limitations (of other claims) say nothing about the cam rotating. Luettke also concedes the assertion of differing meanings between this patent and its parent '247 Patent. However, as I previously pointed out, the same claim term in related patents should carry the same meaning.<br><br>The cam's rotation (whether the movement itself or after the cam has been rotated to the so-called second position) does not force the trigger to the set position if the cam is in standard semi-automatic mode. Luettke contradicts the claim language by arguing that this trigger-forcing must occur in only one mode. But the limitation nowhere says that the trigger-forcing occurs in only one mode; instead, the limitation says, without reference to any mode, that "in the second position the cam lobe forces the trigger member toward the set position." |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | Batzer's remaining argument adds a requirement the claim does not contain. The claim does not require that the cam lobe force the trigger member toward the set position in every mode. It requires that in the second position the cam lobe forces the trigger member toward the set position, and as assembled and used as intended in its forced-reset mode, it does. That the cam does not do so when the mechanism is set to standard semi-automatic mode is what element 1[a] contemplates in reciting a mechanism operable in two modes. | And the referenced "element 1[a]" does not even mention a cam or its position. |
| whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | Batzer's missing-components argument is addressed at element 1[pre].<br>Subject only to that point, Batzer describes the recited operation: with the Super Safety installed and set to standard semi-automatic mode, rearward movement of the bolt pivots the hammer rearward, the disconnector hook catches the hammer hook, and after the bolt returns to battery the user must manually reduce pressure on the trigger member to free the hammer before the firearm can be fired again. | Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |
| whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | Batzer's missing-components argument is addressed at element 1[pre].<br>Batzer concedes the recited result: in forced reset mode the disconnector does not hold the hammer, and once the bolt | Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm. | returns to battery the user can pull the trigger member to fire.<br>His remaining argument is one of sequence. As the bolt travels rearward it drives the lever rearward, rotating the cam to the second position, and the cam lobe forces the trigger member to its set position. Because the disconnector is mounted on the trigger member pivot axis and travels with the trigger member, forcing the trigger member to the set position carries the disconnector hook clear of the hammer hook, so the hook does not hold the hammer. That occurs during the same rearward stroke Batzer describes.<br>The claim does not require that the rearward pivoting of the hammer itself be what prevents the disconnector from holding the hammer. It recites that rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer. Rearward movement of the bolt drives both. | Luettke is incorrect regarding the disconnector. As the bolt carrier moves rearwards, it first contacts and pivots the hammer toward the disconnector, causing the disconnector hook to catch and hold the hammer hook, as I explained previously.<br>As the bolt carrier keeps moving rearwards, it subsequently contacts the Super Safety lever and rotates it rearwards, causing the cam to rotate, causing the trigger to reset, which only then causes the disconnector to pivot and release the hammer hook. By the time the cam resets the trigger, the disconnector hook has already caught and held the hammer hook. |
| | | |
| 3. The trigger mechanism of claim 1, | | |
| further comprising a spring which biases the trigger member toward the set position. | See claim 1 above. As addressed at element 1[pre], my analysis is directed to the assembled mechanism, which includes the trigger spring of the AR-15 pattern fire | Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | control group biasing the trigger member toward the set position. | |
| | | |
| 6. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | See element 1[pre]. | See my corresponding sur-reply above. |
| the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | See element 1[a]. Batzer again concedes this limitation is met. | See my corresponding sur-reply above. |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | See element 1[b]. | See my corresponding sur-reply above. |
| a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | See element 1[c]. Batzer again concedes this limitation is met. | See my corresponding sur-reply above. |
| wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | See element 1[d]. In the assembled mechanism, the hammer sear surface and the trigger member sear surface are in engagement in the set positions and out of engagement in the released positions. | See my corresponding sur-reply above. |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism | See element 1[e]. | See my corresponding sur-reply above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| pocket to pivot on a transverse disconnector pivot axis, and | | |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam prevents the trigger member from moving from the set position to the released position, | See element 1[f] for the first and second positions, which are the rotational positions of the cam.<br>In the second position the cam prevents the trigger member from moving from the set position to the released position. As assembled and used as intended in its forced-reset mode, the cam rotates to that position as the bolt drives the lever rearward, and while it remains there the trigger member is held at the set position and cannot be pulled. That the cam does not do so when the mechanism is set to standard semi-automatic mode is what element 1[a] contemplates in reciting a mechanism operable in two modes. | See my corresponding sur-reply above.<br><br>The cam's rotation (whether the movement itself or after the cam has been rotated to the so-called second position) does not prevent the trigger from moving to the released position if the cam is in standard semi-automatic mode. Luettke contradicts the claim language by arguing that this prevention must occur in only one mode. But the limitation nowhere says that the prevention occurs in only one mode; instead, the limitation says, without reference to any mode, that "in the second position the cam prevents the trigger member from moving from the set position to the released position." And the referenced "element 1[a]" (which is not even in this claim) does not even mention a cam or its position. |
| whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member | See element 1[g]. Batzer again describes the recited operation. | See my corresponding sur-reply above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| to move to the set positions so that the user can pull the trigger member to fire the firearm again, and | | |
| whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer, movement of the trigger member to the set position, and the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is moved to the first position, allowing the user to pull the trigger member to fire the firearm. | See element 1[h], which addresses Batzer's sequencing argument.<br>This limitation confirms the construction set out at element 1[f]. It recites that after the bolt means moves forward into battery, "the cam is moved to the first position, allowing the user to pull the trigger member to fire the firearm." Batzer describes that same operation, stating that when the bolt carrier moves forward into battery it causes the lever to rotate the cam back, unblocking the trigger. Mode selection does not change during a firing cycle, so the first and second positions are the cam's rotational positions. | See my corresponding sur-reply above. Since this is claim 6, the reference to "element 1[f]" is not clear, especially since the cam limitation of claim 1 differs from the cam limitation in claim 6. Furthermore, Luettke's comment here addresses only the forward movement into battery but not the rearward movement. |
| | | |
| 7. The trigger mechanism of claim 6, | | |
| further comprising a spring which biases the trigger member toward the set position. | See claim 3 above. | Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |
| | | |
| 9. The trigger mechanism of claim 6, | | |
| wherein the trigger member pivots on a transverse trigger axis between set and released positions. | Batzer concedes this limitation is met, acknowledging that the Super Safety trigger pivots on a transverse trigger member pivot axis between set and released positions. His parenthetical that | My response in Exhibit 5 to my Opposition Declaration speaks for itself. |

| Claim: | Luettke Reply: | Sur-Reply: |
|---|---|---|
| | the pocket is not included is addressed at element 1[pre]. | |
| | | |
| 10. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | See element 1[pre]. | See my corresponding sur-reply above. |
| the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | See element 1[a]. Batzer again concedes this limitation is met. | See my corresponding sur-reply above. |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | See element 1[b]. | See my corresponding sur-reply above. |
| a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | See element 1[c]. Batzer again concedes this limitation is met. | See my corresponding sur-reply above. |
| wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | See element 1[d]. | See my corresponding sur-reply above. |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism | See element 1[e]. | See my corresponding sur-reply above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| pocket to pivot on a transverse disconnector pivot axis, and | | |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, movement of the cam to the second position causing the trigger member to move from the released position toward the set position, | See element 1[f] for the first and second positions, which are the rotational positions of the cam.<br>Movement of the cam to the second position causes the trigger member to move from the released position toward the set position. As assembled and used as intended in its forced-reset mode, the bolt drives the lever rearward, rotating the cam to the second position, and the cam lobe drives the trigger member forward to the set position. That the cam does not do so when the mechanism is set to standard semi-automatic mode is what element 1[a] contemplates in reciting a mechanism operable in two modes. | See my corresponding sur-reply above.<br><br>The cam's rotation does not cause the trigger to move to the set position if the cam is in standard semi-automatic mode. Luettke contradicts the claim language by arguing that this causation must occur in only one mode. But the limitation nowhere says that the causation occurs in only one mode; instead, the limitation says, without reference to any mode, that "movement of the cam to the second position causing the trigger member to move from the released position to the set position." And the referenced "element 1[a]" (which is not even in this claim) does not even mention a cam or its position.<br><br>Furthermore, in Exhibit I with respect to the '247 Patent, Luettke argues that I added a requirement that *movement* of the cam forces the trigger member toward the set position; his argument was proffered to defend against my explanation that the Super Safety does not meet that requirement, saying that the Super Safety did not need to meet such a movement requirement. But here, this claim limitation expressly *requires* such movement. So Luettke is inconsistent in stating that a |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | | requirement is simultaneously met and not required to be met. |
| whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to move to the set positions so that the user can pull the trigger member to fire the firearm again, and | See element 1[g]. Batzer again describes the recited operation. | See my corresponding sur-reply above. |
| whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer and causes movement of the trigger member to the set position, and wherein the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is moved to the first position and the user can pull the trigger member to fire the firearm again. | See element 1[h], which addresses Batzer's sequencing argument, and element 6[h], which addresses the cam returning to the first position as the bolt moves forward into battery.<br>Batzer's further argument that "causes" must mean direct physical contact is not how a POSITA would read the claim. The claim recites that rearward movement of the bolt means causes movement of the trigger member to the set position, and it does: the bolt drives the lever, which rotates the cam, whose lobe drives the trigger member to the set position. On Batzer's reading the claim would also not be satisfied by the rearward pivoting of the hammer he acknowledges, since the | See my corresponding sur-reply above.<br><br>Additionally, a POSA would read the claims in light of the specification, as a POSA must. My Opposition Declaration explained how the specification uses "cause" and variants. Luettke's reply is a naked contradiction without any explanation or support. His reference to the bolt carrier directly causing the hammer to pivot is unclear, as that is what the patent discloses. But if he agrees that the claim would not be satisfied under such a construction, then that is an additional reason why the claim is not met. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | bolt carrier acts on the hammer through the same kind of mechanical chain. | |
| | | |
| 11. The trigger mechanism of claim 10, | | |
| further comprising a spring which biases the trigger member toward the set position. | See claim 3 above. | See my corresponding sur-reply above. |
| | | |
| 14. A firearm trigger mechanism comprising: | See element 1[pre]. | See my corresponding sur-reply above. |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | See element 1[b]. A POSITA would understand "bolt means" to connote structure, as addressed at element 1[pre]. | See my corresponding sur-reply above, including regarding "bolt means." |
| a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | See element 1[c]. Batzer again concedes this limitation is met. | See my corresponding sur-reply above. |
| wherein the hammer sear surface and trigger member sear surface are in position to engage in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | See element 1[d]. | See my corresponding sur-reply above. |
| the disconnector having a hook for engaging the hammer, and | See element 1[e]. | See my corresponding sur-reply above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | See element 1[f]. The first and second positions are the rotational positions of the cam, and in the second position the cam lobe forces the trigger member toward the set position. That the cam does not do so when the mechanism is set to standard semi-automatic mode is what element 1[a] contemplates in reciting a mechanism operable in two modes. | See my corresponding sur-reply above. |
| when in a standard semi-automatic mode, rearward movement of the bolt carrier causes movement of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer sear surface and trigger member sear surface to move into engagement so that the user can pull the trigger member to fire the firearm, and | See element 1[g]. A POSITA would understand "bolt carrier" and "bolt means" to refer to the same structure, which in an AR-15 pattern firearm is the reciprocating bolt carrier. | See my corresponding sur-reply above. Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety.<br><br>Luettke concedes that this claim is inconsistent in its wording, which renders it unclear. |
| when in a forced reset semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm. | See element 1[h], which addresses Batzer's sequencing argument. | See my corresponding sur-reply above. |
| | | |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| 15. A firearm trigger mechanism comprising: | See element 1[pre]. | See my corresponding sur-reply above. |
| a hammer having a sear surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | See element 1[b]. A POSITA would understand “hook means” and “bolt means” to connote structure, as addressed at element 1[pre]. | See my corresponding sur-reply above, including regarding “hook means” and “bolt means.” |
| a trigger means having a sear surface and adapted to move between set and released positions, | See element 1[c]. A POSITA would understand “trigger means” to connote structure, as addressed at element 1[pre]. Batzer again concedes the Super Safety includes a trigger having a sear surface adapted to move between set and released positions. | See my corresponding sur-reply above, including regarding “trigger means.” |
| wherein the hammer sear surface and trigger means sear surface are positioned to engage when the hammer and trigger means are in their set positions and are out of engagement in the hammer and trigger means are in their released positions, | See element 1[d]. | See my corresponding sur-reply above. |
| the disconnector having a disconnector hook means for engaging the hammer hook means, | See element 1[e]. A POSITA would understand “disconnector hook means” and “hammer hook means” to connote structure, as addressed at element 1[pre]. | See my corresponding sur-reply above, including regarding “hook means.” |
| a cam adapted to be movable between a first position at which the cam does not force the trigger member into the set position and a second position at which the cam does force the trigger member toward the set position, and | See element 1[f]. The first and second positions are the rotational positions of the cam. In the first position the cam does not force the trigger member into the set position, and in the second position it does. That the cam does not do so when | See my corresponding sur-reply above.<br><br>The cam’s rotation (whether the movement itself or after the cam has been rotated to the so-called second position) does not force the trigger to the set position if the |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | the mechanism is set to standard semi-automatic mode is what element 1[a] contemplates in reciting a mechanism operable in two modes. | cam is in standard semi-automatic mode. Luettke contradicts the claim language by arguing that this trigger-forcing must occur in only one mode. But the limitation nowhere says that the trigger-forcing occurs in only one mode; instead, the limitation recites, without reference to any mode, that the cam is movable to "a second position at which the cam does force the trigger member toward the set position." And the referenced "element 1[a]" (which is not even in this claim) does not even mention a cam or its position. |
| a means for selecting between at least standard semi-automatic and forced reset semi-automatic modes, | A POSITA would understand "a means for selecting between at least standard semi-automatic and forced reset semi-automatic modes" to connote structure, as addressed at element 1[pre]. Mode selectors are standard, well understood components in the firearms art.<br>The Super Safety's cam includes a user-operable mode-selecting portion, detented in discrete positions, by which the user selects between safe, standard semi-automatic, and forced reset operation. That portion is the means for selecting, and it is mapped as set out in my infringement chart. | See my corresponding sur-reply above, including regarding "means for selecting," which is pure functional claiming and recites no structure (much less sufficiently definite structure that a POSA would understand as such). A "mode selector" is not the same claim term as a "means for selecting." Luettke does not argue that the Super Safety meets this limitation if it is governed by §112(f). |
| when in the standard semi-automatic position, rearward movement of the bolt means causes movement of the hammer such that the disconnector hook means | See element 1[g]. Batzer again describes the recited operation. | See my corresponding sur-reply above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| catches the hammer hook means, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to the set positions so that the user can pull the trigger means to fire the firearm, and | | |
| when in the forced reset semi-automatic position, rearward movement of the bolt means causes movement of the hammer, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm. | See element 1[h], which addresses Batzer's sequencing argument. | See my corresponding sur-reply above. |
| | | |
| 16. A firearm trigger mechanism comprising: | See element 1[pre]. | See my corresponding sur-reply above. |
| a hammer having a sear engagement surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | See element 1[b]. A POSITA would understand "hook means" and "bolt means" to connote structure, as addressed at element 1[pre]. | See my corresponding sur-reply above, including regarding "hook means" and "bolt means." |
| a trigger means having a sear engagement surface and adapted to move between set and released positions, | See element 1[c]. A POSITA would understand "trigger means" to connote structure, as addressed at element 1[pre]. Batzer again concedes this limitation is met. | See my corresponding sur-reply above, including regarding "trigger means." |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| wherein the trigger means and hammer sear engagement surfaces are in position to engage in the set positions of the hammer and trigger means and will not engage in the released positions of the hammer and trigger means, | See element 1[d]. | See my corresponding sur-reply above. |
| the disconnector having a hook means for engaging the hammer hook means, and | See element 1[e]. A POSITA would understand "hook means" to connote structure, as addressed at element 1[pre]. | See my corresponding sur-reply above, including regarding "hook means." |
| a cam movable between a first position and a second position, in the second position the cam forces the trigger member toward the set position, | See element 1[f]. The first and second positions are the rotational positions of the cam, and in the second position the cam forces the trigger member toward the set position. That the cam does not do so when the mechanism is set to standard semi-automatic mode is what element 1[a] contemplates in reciting a mechanism operable in two modes. | See my corresponding sur-reply above.<br><br>The cam's rotation (whether the movement itself or after the cam has been rotated to the so-called second position) does not force the trigger to the set position if the cam is in standard semi-automatic mode. Luettke contradicts the claim language by arguing that this trigger-forcing must occur in only one mode. But the limitation nowhere says that the trigger-forcing occurs in only one mode; instead, the limitation recites, without reference to any mode, that "in the second position the cam forces the trigger member toward the set position." And the referenced "element 1[a]" (which is not even in this claim) does not even mention a cam or its position. |
| when in a standard semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook means catches the hammer hook means, and | See element 1[g]. Batzer again describes the recited operation. | See my corresponding sur-reply above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to their set positions so that the user can pull the trigger means to fire the firearm, and | | |
| when in a forced reset semi-automatic mode, upon rearward movement of the bolt means, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm. | See element 1[h], which addresses Batzer's sequencing argument. | See my corresponding sur-reply above. |
| | | |
| 17. A firearm trigger mechanism comprising: | See element 1[pre]. My analysis is directed to the firearm trigger mechanism as assembled and installed in accordance with AS Designs' install guides. | See my corresponding sur-reply above. Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |
| a hammer movable between a set position and a released position, and having a sear engagement surface; | See element 1[b]. In the assembled mechanism the hammer of the AR-15 pattern fire control group is movable between set and released positions and has a sear engagement surface. | See my corresponding sur-reply above. Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |
| a trigger member having a sear engagement surface, the trigger member being movable between a set position and a released position; | Batzer concedes this limitation is met, acknowledging that the Super Safety includes a trigger having a sear engagement surface and adapted to pivot between set and released positions. | My response in Exhibit 5 to my Opposition Declaration speaks for itself. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| a cam configured to move during cycling of the firearm's action and to contact the trigger member to bias it toward the set position; | Batzer concedes the Super Safety includes a cam that may rotate on its axis during cycling of the bolt carrier, may contact the trigger, and may force the trigger toward the set position when the mechanism is in forced-reset mode.<br>This limitation is directed to what the cam is configured to do, and the Super Safety cam is configured to do exactly that. That the cam does not bias the trigger member toward the set position in standard semi-automatic mode does not bear on this limitation; element 17[g] separately recites the forced reset mode in which it does. | As I previously explained, the cam's rotation does not bias the trigger to the set position if the cam is in standard semi-automatic mode. Luettke contradicts the claim language by arguing that this biasing must occur in only one mode. But the limitation nowhere says that the trigger-biasing occurs in only one mode; instead, the limitation says, without reference to any mode, that the cam is configured "to contact the trigger member to bias it toward the set position." |
| a movable blocking means configured to selectively prevent the hammer sear catch surface from engaging with the sear in the set position; | A POSITA would understand "movable blocking means" to connote structure. A POSITA would also understand "the sear" and "the hammer sear catch surface" to refer to the sear engagement surfaces recited at elements 17[a] and 17[b], for the reasons set out at element 1[d].<br>In the assembled mechanism the disconnector is the movable blocking means. It is movable, and when the hammer is pivoted rearward the disconnector hook catches and holds the hammer hook, which prevents the hammer sear engagement surface from engaging the trigger member sear engagement surface in the set position. Whether the disconnector performs that blocking | As Luettke admits in his Exhibit H, the recital of "means" creates a presumption that the limitation is governed by §112(f). His comments here merely nakedly assert that the "movable blocking means" term would be understood as structure; but other than his say-so, he does not bother to rebut the presumption. Furthermore, a POSA in this field does not use the term "movable blocking means"; because a POSA does not even use such a terms, it certainly does not have a "plain and ordinary" meaning to a POSA. Thus, as explained in my Opposition Declaration, such terms are in fact governed by §112(f). Luettke does not argue that the Super Safety meets this limitations if it is governed by §112(f). |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | function is determined by the mode the user selects, as addressed at elements 17[f] through 17[h].<br>Batzer's remaining argument is that the kit as shipped omits the disconnector, which is addressed at element 1[pre]. | Furthermore, as I previously explained, the specification does not clearly link any structure to this recited function, which renders the term indefinite, especially given that Luettke's linkage to the disconnector is not the same as the arguable linkage to the trigger member.<br><br>Moreover, Luettke concedes that this claim is inconsistent in its wording, which renders it even more unclear. His reference to an entirely different claim ("element 1[d]") does nothing to clear up the deficiency in *this* claim.<br><br>Even if the "blocking means" refers to a disconnector, one is not provided with the Super Safety, as I previously explained. Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |
| a mode selector operable by the user to select between at least two modes of operation of the trigger mechanism, including: | The Super Safety cam is a single component with structurally distinct portions. The ends of the cam are exposed and user-operable, and together with the detent they define the discrete mode positions by which the user selects between safe, standard semi-automatic, and forced reset operation. Those ends are the mode selector. The middle portion, which carries the cam lobes and bears on | Luettke concedes that he is relying on a single component (the Super Safety cam) to meet multiple separately recited claim limitations (the "mode selector" here and the "cam" recited above). He asserts that a POSA would recognize these as distinct, but he includes no explanation other than his mere say-so. Luettke argues that separately recited limitations need not require separate components "unless the |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | the trigger member, is the cam addressed at element 17[c]. A POSITA would recognize these as distinct portions of the component performing distinct functions. I understand from counsel that separately recited claim elements need not be satisfied by separately manufactured components unless the claim or the specification requires it. Claim 17 does not recite the cam as connected to, mounted on, or acting upon the mode selector. | claim or the specification requires it." From my understanding, it is exactly the opposite: where a claim lists elements separately, the clear and strong implication is that those elements are distinct components, especially if the specification shows them as separate components (which is the case here, as the cam 72 and selector 110 are consistently disclosed as separate components, see, e.g., Figs. 1-9D, 8:3-14, 43-65). The burden is on Plaintiffs and Luettke to rebut that presumption, but Luettke does not even try. |
| a semi-automatic mode, in which the hammer and trigger member sear engagement surfaces are not able engage in the set position during cycling of the firearm's action until the user manually reduces pressure from the trigger member to disengage the blocking means before firing again, regardless of whether the cam moves the trigger member to the set position; and | Batzer's missing-components argument is addressed at element 1[pre]. A POSITA would read "are not able engage in" as "are not able to engage in."<br>Subject to those points, Batzer describes the recited operation: in standard semi-automatic mode the disconnector hook catches the hammer hook and prevents it from pivoting forward to engage the trigger member sear engagement surface so long as the trigger remains pulled, and the user must manually reduce pressure on the trigger member before firing again. That is what this limitation recites, and it holds regardless of whether the cam moves the trigger member to the set position, as the limitation itself makes clear. | Luettke implicitly concedes that this claim wording requires correction. He also implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| a forced reset mode, in which the cam moves during cycling and forcibly biases the trigger member into the set position with the hammer and trigger member sear engagement surfaces engaged, permitting the user to immediately fire again without the user manually releasing pressure on the trigger member; | Batzer concedes the recited operation: in forced reset mode the bolt drives the lever, which rotates the cam, forcing the trigger member to the set position and causing the disconnector to release the hammer hook so that the sear engagement surfaces engage.<br>His remaining points add requirements the claim does not contain. The limitation recites that the mode permits the user to fire again without manually releasing pressure on the trigger member. It does not require that the user be able to fire at any given instant during the cycle. The ’159 Patent describes the trigger member being held until the bolt returns to battery, which is the same operation Batzer describes. The limitation also says nothing about how much pressure the user applies. | Luettke implicitly agrees that this limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety.<br><br>He further completely ignores the word “immediately” from the phrase “permitting the user to immediately fire again without the user manually releasing pressure on the trigger member.” As I previously explained, the cam forcibly biasing the trigger into the set position does not permit the user to “immediately fire again,” until the bolt carrier first returns into battery, moves the lever, which rotates the cam and unblock the trigger tail. That is not “immediately.” Luettke seems to say that the specification does not describe a user being able to fire “immediately” after the trigger has been set – indeed, the sole use of the word “immediately” is in this claim; but that simply shows that the claim is unsupported by the specification and invalid under §112(a).<br><br>Additionally, he states that the claim “says nothing about how much pressure the user applies.” Presumably he refers to the initial pressure applied, because the claim assuredly does recite that the user does not “releas[e] pressure on the trigger member.” As I noted, if the user applies a sufficiently |

| Claim: | Luettke Reply: | Sur-Reply: |
| --- | --- | --- |
| | | high level of pressure, the cam will not bias the trigger into the set position without the user manually releasing pressure on the trigger, contrary to this limitation.<br><br>Lastly, his statement that the rotating cam forces the trigger to the set position and "caus[es] the disconnector to release the hammer hook" is an admission that the disconnector hook is indeed not prevented from holding the hammer, as required by preceding claims. |
| wherein if the cam moves in both modes, the difference in operation between modes is determined by movable selection of the blocking means, thereby selectively either permitting or preventing the hammer and trigger member sear engagement surfaces from engaging when the trigger member is biased by the cam. | As addressed at elements 17[d] and 17[e], the blocking means is the disconnector and the mode selector is the user-operable end portion of the cam.<br>Selecting forced reset mode causes the cam to force the trigger member to the set position during cycling. Because the disconnector travels with the trigger member, the disconnector hook is carried clear of the hammer hook and the sear engagement surfaces engage. In standard semi-automatic mode the disconnector is not so moved, and it holds the hammer until the user reduces pressure on the trigger member. That difference in the operation of the blocking means between the two modes is what this limitation recites. | See my corresponding sur-reply above regarding "blocking means" and "mode selector." Furthermore, a disconnector (recited by Luettke) is not provided with the Super Safety, as I previously explained. Luettke implicitly agrees above that such a limitation is not met by just the Super Safety and instead requires additional components that are not sold as part of the Super Safety.<br><br>Moreover, Luettke is incorrect regarding the disconnector. As the bolt carrier moves rearwards (in both standard semi-automatic and forced-reset mode), it first contacts and pivots the hammer toward the disconnector, causing the disconnector hook to catch and hold the hammer hook, as I explained previously. Subsequently, the bolt carrier keeps moving rearwards, contacts the lever, |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | | and moves it rearwards, which rotates the cam. Only in forced-reset mode does the rotating cam then reset the trigger, which causes the disconnector to release the hammer, similar to how a user manually releases the trigger in standard semi-automatic mode, causing it to reset, which causes the disconnector to release the hammer. The disconnector does not operate differently in the two modes. |

**ARC-Fire**

| Claim: | Luettke Reply: | Sur-Reply: |
|---|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | My analysis is directed to the firearm trigger mechanism as assembled and installed in an AR-15 pattern firearm in accordance with AS Designs' install guides. As I explained in my declaration, the ARC-Fire is sold as a kit of purpose-designed components, including a pre-cut trigger, transfer (reset) lever, detent bar, cam, primary selector, ambidextrous selector, and detent, that are dimensioned and shaped to fit together in the single configuration the instructions describe, and I am not aware of any alternative assembly configuration that would result in a different mode of operation. Batzer's observation that the kit as shipped is not itself a complete trigger mechanism does not address that analysis.<br>The preamble recites the fire control mechanism pocket and the reciprocating bolt means as features of the firearm for which the mechanism is intended, not as components of the claimed mechanism. As assembled and installed as instructed, the resulting firearm trigger mechanism includes each recited component, and the firearm has both a fire control mechanism pocket and a reciprocating bolt.<br>A POSITA would understand "reciprocating bolt means" to connote structure. The same is true of each other term Batzer identifies as | Luettke implicitly agrees that if the preamble is limiting, it would not be met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire .<br><br>As Luettke admits in his Exhibit H, the recital of "means" creates a presumption that the limitation is governed by §112(f). His comments here merely nakedly assert that the "means" terms would be understood as structure; but other than his say-so, he does not bother to rebut the presumption. Furthermore, a POSA in this field does not use terms like "bolt means," "trigger means," "hook means," or "means for selecting"; because a POSA does not even use such terms, they certainly do not have a "plain and ordinary" meaning to a POSA. Thus, as explained in my Opposition Declaration, such terms are in fact governed by §112(f). Luettke does not argue that the ARC-Fire meets these limitations if they are governed by §112(f). |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | a means-plus-function limitation, including "bolt means," "trigger means," "hook means," and "disconnector hook means." Each names a physical component that is standard and well understood in the firearms art, and each is used in the '159 Patent consistently with its ordinary meaning. | |
| the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | Batzer concedes this limitation is met, acknowledging that the ARC-Fire is operable in a standard semi-automatic mode and in a forced-reset mode. | My response in Exhibit 5 to my Opposition Declaration speaks for itself. |
| a hammer having a hammer sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | Batzer's only argument is that the kit as shipped omits these components. As addressed at element 1[pre], my analysis is directed to the assembled mechanism. In that mechanism, the hammer of the AR-15 pattern fire control group has each recited characteristic, and the firearm has a fire control mechanism pocket and a reciprocating bolt. Batzer does not dispute that. | Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire . |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | Batzer concedes this limitation is met, acknowledging that the ARC-Fire includes a trigger having a sear surface and adapted to be mounted in a fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions. His parenthetical that the pocket is not included is addressed at element 1[pre]. | My response in Exhibit 5 to my Opposition Declaration speaks for itself. |
| wherein the trigger member sear surface and hammer sear catch surface | A POSITA reading the claims in light of the specification would understand "hammer | Luettke implicitly agrees that this limitation is not met by just the ARC-Fire |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | sear surface" and "hammer sear catch surface" to refer to the same surface of the hammer, and "trigger sear surface" and "trigger member sear surface" to refer to the same surface of the trigger member. The '159 Patent describes a single sear on the trigger member that engages a single sear catch on the hammer, and the variation in wording is inconsistent shorthand for those same two surfaces. There is no ambiguity. Batzer's remaining argument is that the kit as shipped omits the hammer, which is addressed at element 1[pre]. In the assembled mechanism, the trigger member's sear surface, which Batzer concedes the ARC-Fire supplies (element 1[c]), engages the hammer's sear catch surface in the set positions and is out of engagement in the released positions. | and instead requires additional components that are not sold as part of the ARC-Fire.<br><br>Luettke concedes that this claim is inconsistent in its wording, which renders it unclear. |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | Batzer's only argument is that the kit as shipped omits these components. As addressed at element 1[pre], my analysis is directed to the assembled mechanism. In that mechanism, the disconnector of the AR-15 pattern fire control group has a hook for engaging the hammer and is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. Batzer does not dispute that. | Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire . |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam | Batzer concedes the ARC-Fire includes a cam having a cam lobe designed to be | My Opposition Declaration pointed out that Plaintiffs have been inconsistent regarding what they view as the recited |

| Claim: | Luettke Reply: | Sur-Reply: |
|---|---|---|
| being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | mounted in a fire control mechanism pocket, and that the cam may rotate on its axis. The first and second positions are the rotational positions of the cam. The claims say so: elements 6[h] and 10[h] recite that after the bolt means moves forward into battery, "the cam is moved to the first position." That occurs during each firing cycle. Mode selection does not change during a firing cycle, so a POSITA would understand the first and second positions to be the rotational positions the cam occupies as the firearm cycles.<br>That is consistent with my analysis of the '247 Patent. As I explain there, nothing in that patent's claims restricts the first and second positions to a single kind of movement, and the ARC-Fire cam satisfies the limitation by its rotational movement. The '159 Patent's claims describe the cam moving between those positions during the firing cycle, which is likewise rotational movement.<br>Batzer's remaining argument adds a requirement the claim does not contain. The claim does not require that the cam lobe force the trigger member toward the set position in every mode. It requires that in the second position the cam lobe forces the trigger member toward the set position, and as assembled and used as intended in its forced-reset mode, it does. Batzer confirms | movement. Luettke points to limitations of other claims as allegedly clarifying that the cam movement in this limitation refers to rotation, despite the fact that those other limitations (of other claims) say nothing about the cam rotating. Luettke also concedes the assertion of differing meanings between this patent and its parent '247 Patent. However, as I previously pointed out, the same claim term in related patents should carry the same meaning.<br><br>Luettke seems to suggest that this limitation requires the cam to move in only one mode, but this limitation says nothing about any mode. It requires the cam to move between a first position and a second position, and further to force the trigger toward the set position when the cam is in the second position. As I explained in my Opposition Declaration, this limitation is not met when the ARC-Fire is in standard semi-automatic mode. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | as much, stating that in standard semi-automatic mode the lever does not engage the cam, so the cam does not rotate and does not act on the trigger member. | |
| whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | Batzer's missing-components argument is addressed at element 1[pre].<br>Subject only to that point, Batzer describes the recited operation: with the ARC-Fire installed and set to standard semi-automatic mode, rearward movement of the bolt pivots the hammer rearward, the disconnector hook catches the hammer hook, and after the bolt returns to battery the user must manually reduce pressure on the trigger member to free the hammer before the firearm can be fired again. | Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire . |
| whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm. | Batzer's missing-components argument is addressed at element 1[pre].<br>Batzer concedes the recited result: in forced reset mode the disconnector does not hold the hammer, and once the bolt returns to battery the user can pull the trigger member to fire.<br>His remaining argument is one of sequence. As the bolt travels rearward it drives the lever rearward, rotating the cam to the second position, and the cam lobe forces the trigger member to its set position. Because the disconnector is mounted on the trigger member pivot axis and travels with the trigger member, forcing the trigger member | Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire.<br><br>Luettke is incorrect regarding the disconnector. As the bolt carrier moves rearwards, it first contacts and pivots the hammer toward the disconnector, causing the disconnector hook to catch and hold the hammer hook, as I explained previously. As the bolt carrier keeps moving rearwards, it subsequently contacts the ARC-Fire lever and rotates it rearwards, causing the cam to rotate, |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | to the set position carries the disconnector hook clear of the hammer hook, so the hook does not hold the hammer. That occurs during the same rearward stroke Batzer describes.<br>The claim does not require that the rearward pivoting of the hammer itself be what prevents the disconnector from holding the hammer. It recites that rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer. Rearward movement of the bolt drives both. | causing the trigger to reset, which only then causes the disconnector to pivot and release the hammer hook. By the time the cam resets the trigger, the disconnector hook has already caught and held the hammer hook. |
| | | |
| 3. The trigger mechanism of claim 1, | | |
| further comprising a spring which biases the trigger member toward the set position. | See claim 1 above. As addressed at element 1[pre], my analysis is directed to the assembled mechanism, which includes the trigger spring of the AR-15 pattern fire control group biasing the trigger member toward the set position. | Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire. |
| | | |
| 6. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | See element 1[pre]. | See my corresponding sur-reply above. |
| the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | See element 1[a]. Batzer again concedes this limitation is met. | See my corresponding sur-reply above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | See element 1[b]. | See my corresponding sur-reply above. |
| a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | See element 1[c]. Batzer again concedes this limitation is met. | See my corresponding sur-reply above. |
| wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | See element 1[d]. In the assembled mechanism, the hammer sear surface and the trigger member sear surface are in engagement in the set positions and out of engagement in the released positions. | See my corresponding sur-reply above. |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | See element 1[e]. | See my corresponding sur-reply above. |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam prevents the trigger | See element 1[f] for the first and second positions, which are the rotational positions of the cam.<br>In the second position the cam prevents the trigger member from moving from the set position to the released position. As assembled and used as intended in its | See my corresponding sur-reply above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| member from moving from the set position to the released position, | forced-reset mode, the cam rotates to that position as the bolt drives the lever rearward, and while it remains there the trigger member is held at the set position and cannot be pulled. Batzer confirms as much, stating that in standard semi-automatic mode the lever does not engage the cam, so the cam does not rotate and does not act on the trigger member. | |
| whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to move to the set positions so that the user can pull the trigger member to fire the firearm again, and | See element 1[g]. Batzer again describes the recited operation. | See my corresponding sur-reply above. |
| whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer, movement of the trigger member to the set position, and the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is | See element 1[h], which addresses Batzer's sequencing argument.<br>This limitation confirms the construction set out at element 1[f]. It recites that after the bolt means moves forward into battery, "the cam is moved to the first position, allowing the user to pull the trigger member to fire the firearm." Batzer describes that same operation, stating that when the bolt carrier | See my corresponding sur-reply above. Since this is claim 6, the reference to "element 1[f]" is not clear, especially since the cam limitation of claim 1 differs from the cam limitation in claim 6. Furthermore, Luettke's comment here addresses only the forward movement into battery but not the rearward movement. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| moved to the first position, allowing the user to pull the trigger member to fire the firearm. | moves forward into battery it causes the lever to rotate the cam back, unblocking the trigger. Mode selection does not change during a firing cycle, so the first and second positions are the cam's rotational positions. | |
| | | |
| 7. The trigger mechanism of claim 6, | | |
| further comprising a spring which biases the trigger member toward the set position. | See claim 3 above. | Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire. |
| | | |
| 9. The trigger mechanism of claim 6, | | |
| wherein the trigger member pivots on a transverse trigger axis between set and released positions. | Batzer concedes this limitation is met, acknowledging that the ARC-Fire trigger pivots on a transverse trigger member pivot axis between set and released positions. His parenthetical that the pocket is not included is addressed at element 1[pre]. | My response in Exhibit 5 to my Opposition Declaration speaks for itself. |
| | | |
| 10. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, | See element 1[pre]. | See my corresponding sur-reply above. |
| the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | See element 1[a]. Batzer again concedes this limitation is met. | See my corresponding sur-reply above. |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire | See element 1[b]. | See my corresponding sur-reply above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means, | | |
| a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | See element 1[c]. Batzer again concedes this limitation is met. | See my corresponding sur-reply above. |
| wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, | See element 1[d]. | See my corresponding sur-reply above. |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | See element 1[e]. | See my corresponding sur-reply above. |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, movement of the cam to the second position causing the trigger member to move from the released position toward the set position, | See element 1[f] for the first and second positions, which are the rotational positions of the cam.<br>Movement of the cam to the second position causes the trigger member to move from the released position toward the set position. As assembled and used as intended in its forced-reset mode, the bolt drives the lever rearward, rotating the cam to the second position, and the cam lobe drives the trigger | See my corresponding sur-reply above.<br><br>Furthermore, in Exhibit I with respect to the ‘247 Patent, Luettke argues that I added a requirement that *movement* of the cam forces the trigger member toward the set position; his argument was proffered to defend against my explanation that the ARC-Fire does not meet that requirement, saying that the ARC-Fire did not need to |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | member forward to the set position. Batzer confirms as much, stating that in standard semi-automatic mode the lever does not engage the cam, so the cam does not rotate and does not act on the trigger member. | meet such a movement requirement. But here, this claim limitation expressly *requires* such movement. So Luettke is inconsistent in stating that a requirement is simultaneously met and not required to be met. |
| whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to move to the set positions so that the user can pull the trigger member to fire the firearm again, and | See element 1[g]. Batzer again describes the recited operation. | See my corresponding sur-reply above. |
| whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer and causes movement of the trigger member to the set position, and wherein the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is moved to the first position and the user can pull the trigger member to fire the firearm again. | See element 1[h], which addresses Batzer's sequencing argument, and element 6[h], which addresses the cam returning to the first position as the bolt moves forward into battery.<br>Batzer's further argument that "causes" must mean direct physical contact is not how a POSITA would read the claim. The claim recites that rearward movement of the bolt means causes movement of the trigger member to the set position, and it does: the bolt drives the lever, which rotates the cam, | See my corresponding sur-reply above.<br><br>Additionally, a POSA would read the claims in light of the specification, as a POSA must. My Opposition Declaration explained how the specification uses "cause" and variants. Luettke's reply is a naked contradiction without any explanation or support. His reference to the bolt carrier directly causing the hammer to pivot is unclear, as that is what the patent discloses. But if he agrees that |

| Claim: | Luettke Reply: | Sur-Reply: |
|---|---|---|
| | whose lobe drives the trigger member to the set position. On Batzer's reading the claim would also not be satisfied by the rearward pivoting of the hammer he acknowledges, since the bolt carrier acts on the hammer through the same kind of mechanical chain. | the claim would not be satisfied under such a construction, then that is an additional reason why the claim is not met. |
| | | |
| 11. The trigger mechanism of claim 10, | | |
| further comprising a spring which biases the trigger member toward the set position. | See claim 3 above. | See my corresponding sur-reply above. |
| | | |
| 14. A firearm trigger mechanism comprising: | See element 1[pre]. | See my corresponding sur-reply above. |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | See element 1[b]. A POSITA would understand "bolt means" to connote structure, as addressed at element 1[pre]. | See my corresponding sur-reply above, including regarding "bolt means." |
| a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, | See element 1[c]. Batzer again concedes this limitation is met. | See my corresponding sur-reply above. |
| wherein the hammer sear surface and trigger member sear surface are in position to engage in the set positions of the hammer and trigger member and are out of engagement in the released | See element 1[d]. | See my corresponding sur-reply above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| positions of the hammer and trigger member, | | |
| the disconnector having a hook for engaging the hammer, and | See element 1[e]. | See my corresponding sur-reply above. |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | See element 1[f]. The first and second positions are the rotational positions of the cam, and in the second position the cam lobe forces the trigger member toward the set position. Batzer confirms as much, stating that in standard semi-automatic mode the lever does not engage the cam, so the cam does not rotate and does not act on the trigger member. | See my corresponding sur-reply above. |
| when in a standard semi-automatic mode, rearward movement of the bolt carrier causes movement of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer sear surface and trigger member sear surface to move into engagement so that the user can pull the trigger member to fire the firearm, and | See element 1[g]. A POSITA would understand "bolt carrier" and "bolt means" to refer to the same structure, which in an AR-15 pattern firearm is the reciprocating bolt carrier. | See my corresponding sur-reply above. Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire.<br><br>Luettke concedes that this claim is inconsistent in its wording, which renders it unclear. |
| when in a forced reset semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook is | See element 1[h], which addresses Batzer's sequencing argument. | See my corresponding sur-reply above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm. | | |
| | | |
| 15. A firearm trigger mechanism comprising: | See element 1[pre]. | See my corresponding sur-reply above. |
| a hammer having a sear surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | See element 1[b]. A POSITA would understand "hook means" and "bolt means" to connote structure, as addressed at element 1[pre]. | See my corresponding sur-reply above, including regarding "hook means" and "bolt means." |
| a trigger means having a sear surface and adapted to move between set and released positions, | See element 1[c]. A POSITA would understand "trigger means" to connote structure, as addressed at element 1[pre]. Batzer again concedes the ARC-Fire includes a trigger having a sear surface adapted to move between set and released positions. | See my corresponding sur-reply above, including regarding "trigger means." |
| wherein the hammer sear surface and trigger means sear surface are positioned to engage when the hammer and trigger means are in their set positions and are out of engagement in the hammer and trigger means are in their released positions, | See element 1[d]. | See my corresponding sur-reply above. |
| the disconnector having a disconnector hook means for engaging the hammer hook means, | See element 1[e]. A POSITA would understand "disconnector hook means" and | See my corresponding sur-reply above, including regarding "hook means." |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | "hammer hook means" to connote structure, as addressed at element 1[pre]. | |
| a cam adapted to be movable between a first position at which the cam does not force the trigger member into the set position and a second position at which the cam does force the trigger member toward the set position, and | See element 1[f]. The first and second positions are the rotational positions of the cam. In the first position the cam does not force the trigger member into the set position, and in the second position it does. Batzer confirms as much, stating that in standard semi-automatic mode the lever does not engage the cam, so the cam does not rotate and does not act on the trigger member. | See my corresponding sur-reply above. |
| a means for selecting between at least standard semi-automatic and forced reset semi-automatic modes, | A POSITA would understand "a means for selecting between at least standard semi-automatic and forced reset semi-automatic modes" to connote structure, as addressed at element 1[pre]. Mode selectors are standard, well understood components in the firearms art.<br>Batzer concedes the ARC-Fire has a selector with a lever rotated by hand to select a mode. That selector, together with the detent bar, is the means for selecting, and it is mapped as set out in my infringement chart. | See my corresponding sur-reply above, including regarding "means for selecting," which is pure functional claiming and recites no structure (much less sufficiently definite structure that a POSA would understand as such). A "mode selector" is not the same claim term as a "means for selecting." Luettke does not argue that the ARC-Fire meets this limitation if it is governed by §112(f). |
| when in the standard semi-automatic position, rearward movement of the bolt means causes movement of the hammer such that the disconnector hook means catches the hammer hook means, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce | See element 1[g]. Batzer again describes the recited operation. | See my corresponding sur-reply above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to the set positions so that the user can pull the trigger means to fire the firearm, and | | |
| when in the forced reset semi-automatic position, rearward movement of the bolt means causes movement of the hammer, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm. | See element 1[h], which addresses Batzer's sequencing argument. | See my corresponding sur-reply above. |
| | | |
| 16. A firearm trigger mechanism comprising: | See element 1[pre]. | See my corresponding sur-reply above. |
| a hammer having a sear engagement surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, | See element 1[b]. A POSITA would understand "hook means" and "bolt means" to connote structure, as addressed at element 1[pre]. | See my corresponding sur-reply above, including regarding "hook means" and "bolt means." |
| a trigger means having a sear engagement surface and adapted to move between set and released positions, | See element 1[c]. A POSITA would understand "trigger means" to connote structure, as addressed at element 1[pre]. Batzer again concedes this limitation is met. | See my corresponding sur-reply above, including regarding "trigger means." |
| wherein the trigger means and hammer sear engagement surfaces are in position to engage in the set positions | See element 1[d]. | See my corresponding sur-reply above. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| of the hammer and trigger means and will not engage in the released positions of the hammer and trigger means, | | |
| the disconnector having a hook means for engaging the hammer hook means, and | See element 1[e]. A POSITA would understand "hook means" to connote structure, as addressed at element 1[pre]. | See my corresponding sur-reply above, including regarding "hook means." |
| a cam movable between a first position and a second position, in the second position the cam forces the trigger member toward the set position, | See element 1[f]. The first and second positions are the rotational positions of the cam, and in the second position the cam forces the trigger member toward the set position. Batzer confirms as much, stating that in standard semi-automatic mode the lever does not engage the cam, so the cam does not rotate and does not act on the trigger member. | See my corresponding sur-reply above. |
| when in a standard semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook means catches the hammer hook means, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to their set positions so that the user can pull the trigger means to fire the firearm, and | See element 1[g]. Batzer again describes the recited operation. | See my corresponding sur-reply above. |
| when in a forced reset semi-automatic mode, upon rearward movement of the | See element 1[h], which addresses Batzer's sequencing argument. | See my corresponding sur-reply above. |

| Claim: | Luettke Reply: | Sur-Reply: |
|---|---|---|
| bolt means, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm. | | |
| | | |
| 17. A firearm trigger mechanism comprising: | See element 1[pre]. My analysis is directed to the firearm trigger mechanism as assembled and installed in accordance with AS Designs' install guides. | See my corresponding sur-reply above. Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire. |
| a hammer movable between a set position and a released position, and having a sear engagement surface; | See element 1[b]. In the assembled mechanism the hammer of the AR-15 pattern fire control group is movable between set and released positions and has a sear engagement surface. | See my corresponding sur-reply above. Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire. |
| a trigger member having a sear engagement surface, the trigger member being movable between a set position and a released position; | Batzer concedes this limitation is met, acknowledging that the ARC-Fire includes a trigger having a sear engagement surface and adapted to pivot between set and released positions. | My response in Exhibit 5 to my Opposition Declaration speaks for itself. |
| a cam configured to move during cycling of the firearm's action and to contact the trigger member to bias it toward the set position; | Batzer concedes the ARC-Fire includes a cam that may rotate on its axis during cycling of the bolt carrier and may bias the trigger toward the set position when the ARC-Fire is in forced-reset mode.<br>This limitation is directed to what the cam is configured to do, and the ARC-Fire cam is configured to do exactly that. That the cam does not bias the trigger member toward the set position in standard semi-automatic | As I previously explained, the cam does not rotate and bias the trigger to the set position if the cam is in standard semi-automatic mode. Luettke contradicts the claim language by arguing that this biasing must occur in only one mode. But the limitation nowhere says that the cam-rotation and trigger-biasing occurs in only one mode; instead, the limitation says, without reference to any mode, that the |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | mode does not bear on this limitation; element 17[g] separately recites the forced reset mode in which it does. | cam is "configured to move during cycling of the firearm's action and to contact the trigger member to bias it toward the set position." |
| a movable blocking means configured to selectively prevent the hammer sear catch surface from engaging with the sear in the set position; | A POSITA would understand "movable blocking means" to connote structure. A POSITA would also understand "the sear" and "the hammer sear catch surface" to refer to the sear engagement surfaces recited at elements 17[a] and 17[b], for the reasons set out at element 1[d].<br>In the assembled mechanism the disconnector is the movable blocking means. It is movable, and when the hammer is pivoted rearward the disconnector hook catches and holds the hammer hook, which prevents the hammer sear engagement surface from engaging the trigger member sear engagement surface in the set position. Whether the disconnector performs that blocking function is determined by the mode the user selects, as addressed at elements 17[f] through 17[h].<br>Batzer's remaining argument is that the kit as shipped omits the disconnector, which is addressed at element 1[pre]. | As Luettke admits in his Exhibit H, the recital of "means" creates a presumption that the limitation is governed by §112(f). His comments here merely nakedly assert that the "movable blocking means" term would be understood as structure; but other than his say-so, he does not bother to rebut the presumption. Furthermore, a POSA in this field does not use the term "movable blocking means"; because a POSA does not even use such a terms, it certainly does not have a "plain and ordinary" meaning to a POSA. Thus, as explained in my Opposition Declaration, such terms are in fact governed by §112(f). Luettke does not argue that the ARC-Fire meets this limitations if it is governed by §112(f). Furthermore, as I previously explained, the specification does not clearly link any structure to this recited function, which renders the term indefinite, especially given that Luettke's linkage to the disconnector is not the same as the arguable linkage to the trigger member.<br><br>Moreover, Luettke concedes that this claim is inconsistent in its wording, which renders it even more unclear. His |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | | reference to an entirely different claim ("element 1[d]") does nothing to clear up the deficiency in *this* claim.<br><br>Even if the "blocking means" refers to a disconnector, one is not provided with the ARC-Fire, as I previously explained. Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire. |
| a mode selector operable by the user to select between at least two modes of operation of the trigger mechanism, including: | Batzer concedes this limitation is met, acknowledging that the ARC-Fire includes a primary selector and an ambi selector operable by the user to select between at least two modes of operation. | My response in Exhibit 5 to my Opposition Declaration speaks for itself. |
| a semi-automatic mode, in which the hammer and trigger member sear engagement surfaces are not able engage in the set position during cycling of the firearm's action until the user manually reduces pressure from the trigger member to disengage the blocking means before firing again, regardless of whether the cam moves the trigger member to the set position; and | Batzer's missing-components argument is addressed at element 1[pre]. A POSITA would read "are not able engage in" as "are not able to engage in."<br>Subject to those points, Batzer describes the recited operation: in standard semi-automatic mode the disconnector hook catches the hammer hook and prevents it from pivoting forward to engage the trigger member sear engagement surface so long as the trigger remains pulled, and the user must manually reduce pressure on the trigger member before firing again.<br>That is what this limitation recites, and it holds regardless of whether the cam moves | Luettke implicitly concedes that this claim wording requires correction. He also implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire. |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | the trigger member to the set position, as the limitation itself makes clear. | |
| a forced reset mode, in which the cam moves during cycling and forcibly biases the trigger member into the set position with the hammer and trigger member sear engagement surfaces engaged, permitting the user to immediately fire again without the user manually releasing pressure on the trigger member; | Batzer concedes the recited operation: in forced reset mode the bolt drives the lever, which rotates the cam, forcing the trigger member to the set position and causing the disconnector to release the hammer hook so that the sear engagement surfaces engage. His remaining points add requirements the claim does not contain. The limitation recites that the mode permits the user to fire again without manually releasing pressure on the trigger member. It does not require that the user be able to fire at any given instant during the cycle. The '159 Patent describes the trigger member being held until the bolt returns to battery, which is the same operation Batzer describes. The limitation also says nothing about how much pressure the user applies. | Luettke implicitly agrees that this limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire.<br><br>He further completely ignores the word "immediately" from the phrase "permitting the user to immediately fire again without the user manually releasing pressure on the trigger member." As I previously explained, the cam forcibly biasing the trigger into the set position does not permit the user to "immediately fire again," until the bolt carrier first returns into battery, moves the lever, which rotates the cam and unblock the trigger tail. That is not "immediately." Luettke seems to say that the specification does not describe a user being able to fire "immediately" after the trigger has been set – indeed, the sole use of the word "immediately" is in this claim; but that simply shows that the claim is unsupported by the specification and invalid under §112(a).<br><br>Additionally, he states that the claim "says nothing about how much pressure the user applies." Presumably he refers to the initial pressure applied, because the claim assuredly does recite that the user does not |

| Claim: | Luettke Reply: | Sur-Reply: |
|---|---|---|
| | | "releas[e] pressure on the trigger member." As I noted, if the user applies a sufficiently high level of pressure, the cam will not bias the trigger into the set position without the user manually releasing pressure on the trigger, contrary to this limitation.<br><br>Lastly, his statement that the rotating cam forces the trigger to the set position and "caus[es] the disconnector to release the hammer hook" is an admission that the disconnector hook is indeed not prevented from holding the hammer, as required by preceding claims. |
| wherein if the cam moves in both modes, the difference in operation between modes is determined by movable selection of the blocking means, thereby selectively either permitting or preventing the hammer and trigger member sear engagement surfaces from engaging when the trigger member is biased by the cam. | As addressed at element 17[d], the blocking means is the disconnector.<br>Batzer states that the ARC-Fire cam moves only in forced reset mode. On that premise the condition this limitation states, "if the cam moves in both modes," is not triggered, and the limitation imposes no further requirement.<br>In any event, selecting forced reset mode causes the cam to force the trigger member to the set position during cycling. Because the disconnector travels with the trigger member, the disconnector hook is carried clear of the hammer hook and the sear engagement surfaces engage. In standard semi-automatic mode the disconnector is not so moved, and it holds the hammer until the | See my corresponding sur-reply above regarding "blocking means" and "mode selector." Furthermore, a disconnector (recited by Luettke) is not provided with the ARC-Fire, as I previously explained. Luettke implicitly agrees above that such a limitation is not met by just the ARC-Fire and instead requires additional components that are not sold as part of the ARC-Fire.<br><br>Moreover, Luettke is incorrect regarding the disconnector. As the bolt carrier moves rearwards (in both standard semi-automatic and forced-reset mode), it first contacts and pivots the hammer toward the disconnector, causing the disconnector hook to catch and hold the hammer hook, |

| **Claim:** | **Luettke Reply:** | **Sur-Reply:** |
|---|---|---|
| | user reduces pressure on the trigger member. That difference in the operation of the blocking means between the two modes is what this limitation recites. | as I explained previously. Subsequently, the bolt carrier keeps moving rearwards, contacts the lever, and moves it rearwards. Only in forced-reset mode does the lever then rotate the cam, which then resets the trigger, which causes the disconnector to release the hammer – this is similar to how a user manually releases the trigger in standard semi-automatic mode, causing it to reset, which causes the disconnector to release the hammer. The disconnector does not operate differently in the two modes. |