**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | **4:26-md-03176-ALM**<br>**MDL 3176** |
| ABC IP, LLC, a Delaware limited liability company, RARE BREED TRIGGERS, INC., a Texas corporation, and RBTM LLC, a Wyoming limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>AS DESIGNS, LLC, a North Carolina limited liability company, MATTHEW S. KARLOVIC, an individual, CALVIN OLSON, an individual, and CHRISTOPHER ULRICK, an individual also known as “s3igu2” and/or “Seagoo Threetwo,”<br><br>Defendants. | Civil Action No. 4:26-cv-00370-ALM<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS’ FOURTH AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND TRADEMARK INFRINGEMENT**

This is an action for patent infringement, trademark infringement, and unfair competition in which ABC IP LLC (“ABC”), Rare Breed Triggers, Inc. (“Rare Breed”), and RBTM LLC (“RBTM”) (collectively, “Plaintiffs”) accuse AS Designs, LLC, also known as Active Safety Designs (“AS Designs”), Matthew S. Karlovic (“Karlovic”), Calvin Olson (“Olson”), and Christopher Ulrick, also known as “s3igu2” and/or “Seagoo Threetwo” (“Ulrick”) (collectively, “Defendants”), of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,529,538, 12,578,159, and 12,636,403; infringing Plaintiffs’ trademark rights; and engaging in unfair competition, as follows:

## I. PLAINTIFFS

1. ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2. Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, Texas 76306.

3. RBTM is a limited liability company organized under the laws of the State of Wyoming with an address at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801. RBTM is a Plaintiff only on the trademark counts.

## II. DEFENDANTS

4. Upon information and belief, AS Designs, also known as Active Safety Designs, is a limited liability company existing under the laws of the State of North Carolina, with a business address of 3000 Rivercross Drive, High Point, North Carolina 27265-8025.

5. Upon information and belief, Karlovic is an individual residing in High Point, North Carolina, and is an owner and managing member of AS Designs who directs AS Designs to engage in the infringing activities, which he operates from his residence.

6. Upon information and belief, Olson is an individual residing in Greensboro, North Carolina, and is an owner and member of AS Designs who directs AS Designs to engage in the infringing activities.

7. Upon information and belief, Ulrick is an individual residing in Texas and committing acts of infringement in Greensboro, North Carolina, and is providing CAD files to AS Designs. Ulrick uses the alias “s3igu2” and/or “Seagoo Threetwo” and was previously sued in this action as John Doe. AS Designs has identified Ulrick as the person who uses the alias “s3igu2” and has described him as its “Head Engineer.” Upon information and belief, Ulrick provides AS Designs designs it makes and sells, or some combination of these.

## III. JURISDICTION

8. This Court has subject-matter jurisdiction over the patent claims under 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has subject-matter jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and over the related common-law claims under 28 U.S.C. §§ 1338(b) and 1367(a).

10. Plaintiffs filed this action in the United States District Court for the Middle District of North Carolina ("the Transferor Court"), No. 1:25-cv-01192, and the Judicial Panel on Multidistrict Litigation transferred it to this Court under 28 U.S.C. § 1407 for coordinated pretrial proceedings. Personal jurisdiction and venue are therefore pleaded as to the transferor court.

11. Personal jurisdiction over Defendants is proper in the Transferor Court because Defendants have committed acts of infringement and regularly conduct business in that District. Upon information and belief, Ulrick has committed acts of infringement in North Carolina, including by designing, building, testing, and promoting Accused Products for AS Designs, a North Carolina company located in High Point.

12. Venue is proper in the Transferor Court pursuant to 28 U.S.C. § 1400(b). Defendants have committed acts of infringement and have a regular and established place of business in that District.

## IV. THE PATENTS-IN-SUIT

13. Plaintiffs assert the patents listed below (the "Patents-in-Suit"). Each is referred to by the last three digits of its number (for example, U.S. Patent No. 12,038,247 is the "'247 patent"). A copy of each is attached as the exhibit shown.

| Ex. | Patent | U.S. Patent No. | Title | Issued |
|---|---|---|---|---|
| A | ’247 | 12,038,247 | Firearm Trigger Mechanism | July 16, 2024 |
| B | ’784 | 12,031,784 | Adapted Forced Reset Trigger | July 9, 2024 |
| C | ’538 | 12,529,538 | Safety Mechanism for Firearm | Jan. 20, 2026 |
| D | ’159 | 12,578,159 | Firearm Trigger Mechanism | Mar. 17, 2026 |
| E | ’403 | 12,636,403 | Firearm Trigger Mechanism | May 26, 2026 |

14. Each Patent-in-Suit was duly and legally issued by the United States Patent and Trademark Office and is presumed valid. 35 U.S.C. § 282.

**Ownership and license**

15. ABC owns all right, title, and interest in and to the Patents-in-Suit. ABC holds them by assignment recorded at the United States Patent and Trademark Office, or as the original applicant, as shown below:

| Patent | U.S. Patent No. | Title | Assignment Reel/Frame |
|---|---|---|---|
| ’247 | 12,038,247 | Firearm Trigger Mechanism | 63791/0546 |
| ’784 | 12,031,784 | Adapted Forced Reset Trigger | 61657/0550 |
| ’538 | 12,529,538 | Safety Mechanism for Firearm | 72845/0001 |
| ’159 | 12,578,159 | Firearm Trigger Mechanism | Appl. filed by ABC IP LLC |
| ’403 | 12,636,403 | Firearm Trigger Mechanism | Appl. filed by ABC IP LLC |

16. Rare Breed is the exclusive licensee of the Patents-in-Suit.

**Marking**

17. Rare Breed sells various products that practice the Patents-in-Suit, including the following:

| RBT Product | Platform | Patent(s) |
|---|---|---|
| FRT-15L3® | AR-15 | ’403 |
| FRT-15L3® (Flat) | AR-15 | ’403 |
| FRT-15L3® (MIL) | AR-15 | ’403 |
| FRT-15C3® | AR-15 | ’247, ’159, ’403 |
| FRT-15C3® (Flat) | AR-15 | ’247, ’159, ’403 |
| FRT-MR3™ | AR-15 (piston-driven) | ’403 |

| RBT Product | Platform | Patent(s) |
|---|---|---|
| FRT-MR3™ (Flat) | AR-15 (piston-driven) | ’403 |
| FRT-MR3™ (MIL) | AR-15 (piston-driven) | ’403 |
| FRT-RD3™ (SEF) | HK MP5/SP5 | ’403 |
| FRT-RD3™ (AMBI) | HK MP5/SP5 | ’403 |
| FRT-AP3™ | B&T APC9/APC40 | ’247, ’159, ’403 |
| FRT-SG3™ | B&T SPC9/SPC45/GHM9/GHM45 | ’247, ’159, ’403 |
| FRT-22® | Ruger® 10/22® | ’403 |

18. Each of the above products is physically marked with the following: “PATENTS: RBTPATENTS.COM.”

19. RBTPatents.com routes consumers to Rare Breed’s website, https://rarebreedtriggers.com/patents, which informs consumers that Rare Breed’s products are protected in the United States by one or more patents owned by ABC IP, LLC. The website identifies which patents are practiced by each of Rare Breed’s products.

20. Accordingly, to the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the Patents-in-Suit.

## V. FORCED RESET TRIGGER TECHNOLOGY

21. A typical AR-15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a standard disconnector AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector, and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in

which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

22. In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

23. In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt mechanically moves the trigger member to the reset position and holds it there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

## VI. THE PATENTED INVENTIONS

24. The '247 and '159 patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a "forced reset" semiautomatic mode and uses a cam, rotated by cycling of the action, to cause the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

25. The ’784 patent provides a device that works in a trigger system as an extended trigger member locking mechanism for use with a semiautomatic firearm that employs, in some embodiments, a “deflectable extension of the locking member that is actuated by forward movement of the bolt carrier,” among other innovations as explicitly claimed. Certain inventions of the ’784 patent overcome the geometric limitations of prior art designs for use in multiple and varied semiautomatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

26. The ’538 patent provides a safety mechanism for a firearm that employs a cam selector, a lever, and a trigger. The cam selector contains multiple recesses and is configured to operate between a first mode, a second mode, and a third mode. In the first mode, a portion of the trigger referred to as a first trigger tail portion is movable within the first recess. In the second mode, the first trigger tail portion is allowed to engage the second recess and be moved down by a cam portion of the second recess when the cam selector rotates. In the third mode, the cam selector is configured to prevent the trigger from being pulled.

27. The ’403 patent describes and claims a device that can be selected to operate in either of two distinct modes: (1) standard disconnector semiautomatic mode and (2) “forced reset” semiautomatic mode.

28. The claims of the Patents-in-Suit define the scope of the patented inventions.

## VII. THE ACCUSED PRODUCT FAMILIES

29. The accused products fall into two product families. A family is defined by the design and operation of its fire-control mechanism, not by its maker or seller. Products in a family operate the same way in the respects the asserted claims address, whether sold as a complete unit, a kit, a part, or installed in a lower receiver. Differences among the products in a

family, such as branding, labeling, color, finish, material, method of manufacture, packaging, an ambidextrous selector, or an external housing, do not affect any element of the asserted claims. In this Complaint, the "user" is the person operating a firearm in which a family product is installed.

30. On information and belief, Defendants are making, using, selling, and/or offering for sale products that embody the technology claimed in the Patents-in-Suit, including the Super Safety and the ARC-Fire described below (collectively, the "Accused Products").

| Family | What it is | Patents asserted | Charts |
|---|---|---|---|
| Super Safety | Three-position cam safety selector, sold as a partial or complete kit, with other firearm parts, or installed. | '247, '784, '538, '159, '403 | K-1 to K-5 |
| ARC-Fire | Three-position forced reset selector, sold alone, with other firearm parts, or installed. | '247, '784, '159, '403 | K-11 to K-14 |

**The Super Safety family**

31. The Super Safety family includes the (3-Position) "Super Safety" and every product of the same design and operation, whatever its maker or name. A Super Safety uses a specially made cam and cam lever that replace a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam.

32. On information and belief, Defendants are making, using, selling, and/or offering for sale Super Safety family products in multiple variants, including at least: (a) a complete assembly, which includes at minimum the cam and cam lever components, which when installed in combination with a standard AR-pattern hammer, disconnector, springs, and a modified trigger, infringes the claims of the '247, '784, '538, '159, and '403 patents; (b) as a kit, which includes at minimum the complete assembly and may further include one or more additional components (e.g., a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger); (c) a complete assembly pre-installed in a lower receiver, grip, fire control group, or

firearm; (d) components and replacement parts of the complete assembly; and (e) parts specially designed solely for use with the complete assembly (e.g., modified triggers or trigger cutting jigs).

33. On information and belief, Defendants make, use, sell, and/or offer for sale the Super Safety through the AS Designs website, https://www.activesafetydesigns.com, and in person at shows.






34. Defendants also separately make, use, sell, offer for sale, and/or import a "Centering Block for SS," "Rounded Detent for SS," "Precut Trigger for SS," "SS Cam + Lever," "SS Cam," and "SS Lever," which are specially designed parts solely for use with a Super Safety, as shown below:






35. A Super Safety can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by moving the safety selector laterally between positions.

36. Plaintiffs assert the '247, '784, '538, '159, and '403 patents against the Super Safety family.

**The ARC-Fire family**

37. The ARC-Fire family includes the Three-Position ARC-Fire trigger device (the "ARC-Fire"), including the ARHK, which incorporates an ARC-Fire within an additional housing, and every product of the same design and operation, whatever its maker or name.

38. On information and belief, Defendants are making, using, selling, and/or offering for sale ARC-Fire family products in multiple variants, including at least: (a) a complete assembly, which includes at minimum the cam and cam lever components, which when installed in combination with a standard AR-pattern hammer, disconnector, springs, and trigger, infringes the claims of the '247, '784, '159, and '403 patents; (b) as a kit, which includes at minimum the

complete assembly and may further include one or more additional components (e.g., a standard AR-pattern hammer, disconnector, and standard springs); (c) a complete assembly pre-installed in a lower receiver, grip, fire control group, or firearm; (d) components and replacement parts of the complete assembly; and (e) parts specially designed solely for use with the complete assembly (e.g., lever blockers).

39. On information and belief, Defendants make, use, sell, and/or offer for sale the ARC-Fire through the AS Designs website, https://www.activesafetydesigns.com.






40. Defendants also separately sell or offer to sell specially designed parts solely for use with the ARC-Fire, including a "Lever Blocker," "ARC-Fire V1 – Mil-Spec Selectors," "KNS Safety Detent," "ARC-Fire V2 – 416 Selectors," and "ARC-Fire V2 – Long Ambi Selector," as shown below:



41. An ARC-Fire can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic ("Active Reset Clutch" or "ARC") with cam modes by rotating the safety selector between positions.

42. Plaintiffs assert the '247, '784, '159, and '403 patents against the ARC-Fire family.

**Claim charts**

43. The claim charts listed below, attached as the exhibits shown, compare a representative claim of each Patent-in-Suit to each family against which it is asserted. Each chart shows how a family product meets each limitation when assembled and used as intended.

| **Ex.** | **Family** | **Patent** | **Claim** |
|---|---|---|---|
| K-1 | Super Safety | '247 | 15 |
| K-2 | Super Safety | '784 | 1 |
| K-3 | Super Safety | '538 | 1 |
| K-4 | Super Safety | '159 | 1 |
| K-5 | Super Safety | '403 | 38 |
| K-11 | ARC-Fire | '247 | 15 |
| K-12 | ARC-Fire | '784 | 1 |
| K-13 | ARC-Fire | '159 | 1 |
| K-14 | ARC-Fire | '403 | 38 |

**Asserted claims**

44. Plaintiffs assert the claims listed below.

| **Asserted Patent** | **Accused Product Family** | **Asserted Claims** |
|---|---|---|
| '247 Patent | Super Safety Family | 15, 17–20, 23 |
| '247 Patent | ARC-Fire Family | 15, 17–20, 23 |
| '784 Patent | Super Safety Family | 1, 3, 4 |
| '784 Patent | ARC-Fire Family | 1, 4 |
| '538 Patent | Super Safety Family | 1–13 |
| '159 Patent | Super Safety Family | 1, 3–17 |
| '159 Patent | ARC-Fire Family | 1, 3–17 |

| Asserted Patent | Accused Product Family | Asserted Claims |
|---|---|---|
| ’403 Patent | Super Safety Family | 14–29, 32, 35–39, 53 |
| ’403 Patent | ARC-Fire Family | 14–30, 32, 35–39, 53–55 |

## VIII. INFRINGEMENT THEORIES

45. **Direct infringement.** A Defendant that, without authority, makes, uses, sells, offers to sell, or imports into the United States a family product directly infringes the asserted claims of a Patent-in-Suit asserted against that family, literally or under the doctrine of equivalents. 35 U.S.C. § 271(a).

46. **Assembled use.** Many family products are sold as kits or parts that the buyer installs in an AR-15-pattern lower receiver. When assembled and used as intended, as the seller’s instructions direct, the resulting fire-control mechanism practices asserted claims, as the claim charts show. A Defendant that assembles, installs, tests, or demonstrates family products, including by installing them in its customers’ firearms, itself makes and uses the claimed inventions and directly infringes. 35 U.S.C. § 271(a).

47. Induced infringement. A Defendant that knows of a Patent-in-Suit and, intending that customers infringe it, provides instructions, installation guides, videos, compatibility statements, or marketing that leads customers to assemble and use family products as claimed, induces infringement. 35 U.S.C. § 271(b).

48. **Contributory infringement.** A Defendant that sells, offers to sell, or imports a component of a family product, such as a cam, reset or transfer lever, lever arm, selector, or cassette or housing assembly, or a family product sold as a kit for assembly, contributes to infringement of a Patent-in-Suit when the component constitutes a material part of the invention and the Defendant knows it to be especially made or especially adapted for use in an infringement of that patent. 35 U.S.C. § 271(c). These components are not staple articles or

commodities of commerce suitable for substantial noninfringing use: they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the Patents-in-Suit.

49. **Individuals: personal participation.** An individual who personally takes part in infringing acts, for example by designing, making, promoting, or selling family products, is liable for that direct infringement whatever the individual's position in a company.

50. **Individuals: inducement.** An individual who knows of a Patent-in-Suit and actively and knowingly aids and abets a company's infringement, for example by directing the company to keep making and selling family products after learning of the patent, induces infringement. 35 U.S.C. § 271(b).

**Defendants' inducing and contributing acts**

51. On information and belief, in addition to their direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the Patents-in-Suit, knowing that those steps will induce, encourage, and facilitate direct infringement by others. Those steps include encouraging, advertising, promoting, and instructing others to use, and how to use, the Super Safety and the ARC-Fire.

52. For example, AS Designs' website contains promotional material that tells customers to install the Accused Products into an AR-15 and instructs them how to do so, including at https://activesafetydesigns.com/ar-platform-troubleshooting, https://activesafetydesigns.com/mp5-troubleshooting, and https://activesafetydesigns.com/videos.

53. As a further example, AS Designs sells or offers for sale multiple versions of trigger components, including the trigger, disconnector, hammer, and springs, that are specially

modified for combination with the Super Safety and the ARC-Fire, as shown, for example, at https://activesafetydesigns.com/ar15/geissele-sd-3g-precut-trigger.

54. As a further example, Defendants make, use, sell, and/or offer for sale slip trip kits and lower housings so that the Super Safety and the ARC-Fire may also be used in MCX- or MPX-pattern firearms, as shown, for example, at https://activesafetydesigns.com/mp5/mp5-slip-trip-v5, which states: "To use the super safety or ARC-Fire in the MP5 (SP5, AP5, etc.), you will need a new lower that uses AR FCG parts and the MP5 Slip Trip. You can get the lowers from AS Designs, Polymer Pew, or any Leber V2 spec lower. The super safety or ARC-Fire does NOT work with the stock MP5 lowers."

55. AS Designs' website further states that "[t]he MP5 Slip Trip V5 was created by s3igu2 and his approval was given for our product." As alleged in ¶ 7, "s3igu2" is Ulrick. Defendants also offer a lower for the MP5 platform specially designed for use with the Super Safety and the ARC-Fire, which they describe as "fully machined and ready for super safe and ARC-Fire action!" See https://activesafetydesigns.com/g3-91/super-safety-g3-91-mp5-machined-lower-9c-9ct-9rs-91-a3s-51-full-kit/.

56. On information and belief, Defendants know or should know that these activities induce others to directly infringe the Patents-in-Suit, and Defendants intend that result. At a minimum, Defendants believe there is a high probability that these activities induce infringement of the Patents-in-Suit and have deliberately avoided confirming it.

57. On information and belief, Defendants also contribute to the infringement of the Patents-in-Suit by others, including their customers, by selling, offering for sale, and/or importing components of the Accused Products, such as the cam, cam lever, selectors, lever blockers, and modified trigger assemblies. Those components are not suitable for substantial

noninfringing use because they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the Patents-in-Suit.

58. On information and belief, Karlovic and Olson, as owners and members of AS Designs, and Karlovic, as its managing member who operates it from his residence, personally participate in, direct, and benefit from AS Designs' making, selling, promotion, and support of the Accused Products. On information and belief, Ulrick personally participates in the infringement by providing CAD files to AS Designs and by creating the MP5 Slip Trip V5 that AS Designs sells for use with the Accused Products. Karlovic's and Olson's roles are further alleged in ¶¶ 59–61 below, and Ulrick's in ¶¶ 62–67.

**Karlovic's and Olson's roles**

59. Karlovic and Olson own AS Designs and direct its business. AS Designs is a closely held company, organized in December 2024, that operates from Karlovic's home; Karlovic and Olson are its owners and members (¶¶ 4–6). On information and belief, Karlovic and Olson decide or approve which products AS Designs designs and makes, when it releases them, how it prices them, and how it promotes them, including through the AS Designs website that offers, sells, and promotes the Accused Products (¶¶ 33, 39, 52–55, 79).

60. Karlovic and Olson learned of Plaintiffs' infringement allegations before this action was filed. The August 9, 2025 cease-and-desist letter, which accused the Super Safety and the ARC-Fire of infringing the '247 patent, was delivered by hand to AS Designs and Karlovic (¶ 68). On information and belief, Olson, as Karlovic's co-owner, learned of the letter when it arrived. AS Designs did not stop selling either product. On information and belief, later that month it opened pre-orders for a 2,500-unit run of the ARC-Fire at an introductory price of $199, and it publicly mocked the letter as a "gift" (¶ 71).

61. Karlovic and Olson have been defendants in this action since it was filed on December 30, 2025. Each was served on January 15, 2026, and on February 26, 2026, Karlovic and Olson answered and, with AS Designs, asserted counterclaims against Plaintiffs (Transferor Court D.I. 17). AS Designs did not stop selling the Accused Products. Instead, it expanded the ARC-Fire family. In January 2026, at the SHOT Show trade show, it announced the ARHK, which it describes as "built on our ARC-Fire technology" (¶ 63), and, on information and belief, in early 2026 it began selling the ARC-Fire V2 (¶¶ 39–40). On July 1, 2026, it announced that the ARHK had "entered full production." On information and belief, Karlovic and Olson decided or approved each of these steps knowing of the Patents-in-Suit then asserted against them and that Plaintiffs accuse the Super Safety and ARC-Fire families of infringing them, and intending that AS Designs make and sell these products and that its customers install and use them.

**Ulrick's role**

62. Ulrick's precise relationship with AS Designs is within Defendants' knowledge, and his liability does not depend on it. Whatever that relationship is, Ulrick acts both for AS Designs and in his own name. AS Designs' MP5 Slip Trip V5 page states that the product "was created by s3igu2 and his approval was given for our product," and it sends customers to Ulrick's own X account, https://x.com/s3igu2, "for updates, other designs, and to support his work." Ulrick has referred to AS Designs' MP5 products as "my mp5 stuff." On information and belief, AS Designs compensates Ulrick for his designs, whether through wages, contract payments, or royalties.

63. Ulrick designed the ARHK, an ARC-Fire family product (¶ 37). AS Designs' Instagram account credits "s3igu2" with the ARHK's design, and AS Designs describes the ARHK as "built on our ARC-Fire technology." Ulrick also designed the MP5 Slip Trip V5 and, on information and belief, the MP5 lower that AS Designs sells for use with the Super Safety and

the ARC-Fire (¶¶ 55–56) (together, the "MP5 Parts"). The MP5 Parts have no use other than to let a customer install and use a Super Safety or ARC-Fire in an MP5-pattern firearm.

64. Ulrick has personally made and used ARC-Fire family products. He has described building and test-firing the ARHK: it "was specifically built to hold up to thousands of rounds in a suppressed HK 51 running absurdly hard due to a out of spec bolt gap," and "everything is scaled up for the 51 and 21 compared to the AR15 version of ARC which already has a very low failure rate even when used in 308." He has reported its trigger pull ("around 4 to 5 pounds with full power springs before break in") and rate of fire ("800 to 900 depending on K vs full size also if using a can or not") from first-hand use. On information and belief, Ulrick has likewise assembled, installed, and test-fired Super Safety and ARC-Fire units with the MP5 Parts, which he could not have validated without doing so.

65. Ulrick also directs AS Designs' product and business decisions. AS Designs obtained "his approval" for the MP5 Slip Trip V5. Ulrick speaks for AS Designs as "we," explaining, for example, that "[w]e held the release until it functioned correctly in all platforms and calibers, not just 556." When AS Designs' customer service told a customer that it had not tested the ARHK with non-ambidextrous lowers, Ulrick publicly overrode it: "ARHK will work with any lower you use it with ambi or non ambi, MKE, PTR, HK anything…." And after this action was filed, he took part in AS Designs' internal discussion of how to price the ARHK against Rare Breed's competing product, writing that a $500 price "would MURDER rarebreeds."

66. Through these acts, Ulrick has actively and knowingly induced AS Designs' direct infringement, including its making, testing, and offering for sale of the ARHK and its

making and selling of Super Safety and ARC-Fire kits, MP5 full kits, and pre-installed lowers, intending that AS Designs make and sell those products.

67. Ulrick also induces AS Designs' customers to infringe. Posting as "s3igu2" on Reddit, AR15.com, and HKPRO, he answers technical questions, confirms specifications, and tells customers how to install and use ARC-Fire family products. He reassures ARC-Fire owners, telling them that "[w]e haven't seen really any failures with v2," and, on information and belief, has offered them warranty support. He also steers buyers from Rare Breed to AS Designs: "Id just wait for the ARHK it has a true disengaged semi mode... works in basically every roller delayed host... the ROF is the same as the factory FA guns." On information and belief, Ulrick has given similar instructions and support to customers installing and using the Super Safety, the ARC-Fire, and the MP5 Parts.

## IX. NOTICE, KNOWLEDGE, AND WILLFULNESS

68. AS Designs and Karlovic have known of the '247 patent, and that Plaintiffs accuse the Super Safety, the ARC-Fire, and similar products of infringing it, at least since August 9, 2025, when a cease-and-desist demand letter informing them of the '247 patent and expressly accusing the "Super Safety," the "ARC-FIRE Trigger – AMBI KIT," and other similar products sold through www.activesafetydesigns.com of patent infringement was delivered to them. Defendants ignored that demand and continued to make, use, sell, offer for sale, and/or import the Accused Products.

69. On information and belief, each Defendant has known of the Patents-in-Suit then issued and asserted against it since at least December 30, 2025, when AS Designs published, through its @asdesignsfrts account, a statement on Plaintiffs' patent allegations. See Image posted by AS Designs (@asdesignsfrts), Instagram (Dec. 30, 2025) https://www.instagram.com/p/DS6ccF1jZp_ (on file with Plaintiffs).

70. Each Defendant has known of each other Patent-in-Suit asserted against it, in any event, since service of the first complaint that asserted that patent against it.

71. Ulrick in particular has known of this action, and of the products it accuses, since no later than January 1, 2026, two days after it was filed. That day, in a Reddit thread whose opening post announced that "S3igu2 is now being sued by rare breed," Ulrick acknowledged that Rare Breed was "alot more upeset about arc-fire and my mp5 stuff." On information and belief, Ulrick also learned of the August 9, 2025 letter (¶ 67) when it was delivered, because it accused AS Designs' AR MP5-K Lower, which on information and belief he designed, and because AS Designs publicly mocked the letter as a "gift" on the same Instagram account it uses to credit his designs.

72. On information and belief, by February 2026 Ulrick also knew that Rare Breed held patents directed to forced-reset triggers for the MP5 platform. In the AR15.com thread where he posted for AS Designs, AS Designs' own account wrote: "That's RB's MP5 patent, so you're not wrong to go down that thought path." Ulrick nonetheless continued to design, build, approve, price, promote, and support Accused Products, intending that AS Designs and its customers make, use, and sell them. To the extent Ulrick did not learn of a Patent-in-Suit when it was asserted against AS Designs, he believed there was a high probability that Rare Breed's patents covered the Accused Products and deliberately avoided confirming it.

73. A Defendant that, after learning of a Patent-in-Suit and how its products are accused of infringing it, continues to make, sell, or promote those products infringes willfully. Plaintiffs seek enhanced damages under 35 U.S.C. § 284 against that Defendant.

74. Plaintiffs' damages run from the earlier of the date Plaintiffs' marking began under 35 U.S.C. § 287(a), *see* ¶¶ 17–20, and the date of actual notice to the Defendant, including notice by the filing of suit.

## X. THE FRT® MARKS

75. RBTM owns the FRT® trademark and its variations, the registrations and applications listed below, and the common-law rights in those marks (together, the "FRT® marks"). ABC assigned the registrations and applications, with their goodwill, to RBTM by an assignment executed May 26, 2026, and submitted to the United States Patent and Trademark Office for recording on June 11, 2026 (Assignment IDs 1867613 and 1867473). Rare Breed is the exclusive licensee of the FRT® marks, with the right to enforce them.

76. The following FRT® marks are registered with the United States Patent and Trademark Office for triggers for firearms (the "Registered FRT® Marks"):

| **Mark** | **Reg. No.** | **Registered** | **Serial No.** | **Assignment to RBTM LLC** |
|---|---|---|---|---|
| FRT® | 8,187,914 | Mar. 24, 2026 | 97248519 | Reel: 009301, Frame: 0033 |
| FRT-15® | 7,004,418 | Mar. 21, 2023 | 97245949 | Reel: 009301, Frame: 0033 |
| FRT-22® | 8,232,406 | Apr. 28, 2026 | 97248530 | Reel: 009301, Frame: 0033 |
| FRT-47® | 8,232,405 | Apr. 28, 2026 | 97248528 | Reel: 009301, Frame: 0033 |
| FRT-15L3® | 8,225,451 | Apr. 21, 2026 | 98715335 | Reel: 009301, Frame: 0033 |
| FRT-15C3® | 8,369,662 | July 28, 2026 | 98715353 | Reel: 009300, Frame: 0614 |

77. RBTM also owns the following applications to register marks for triggers for firearms:

| **Mark** | **Serial No.** | **Status** | **Assignment to RBTM LLC** |
|---|---|---|---|
| FRT-MR3™ | 99714625 | Pending | Reel: 009300, Frame: 0614 |
| FRT-RD3™ | 99714703 | Pending | Reel: 009300, Frame: 0614 |

78. Since at least 2020, the FRT® mark has been used by Rare Breed to identify a unique trigger for firearms, which has been a remarkably successful offering. As a result of the

long-term and high-profile use, the FRT® mark has come to be uniquely identified with Rare Breed and is a valuable identifier of Rare Breed's products.

79. The FRT® marks are inherently distinctive and have acquired significant goodwill in the marketplace through Plaintiffs' continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT® marks have become uniquely associated in the minds of consumers and the trade with Plaintiffs.

80. The reputation Plaintiffs have built in the FRT® marks is of great value to Plaintiffs.

81. A product that does not originate with Plaintiffs is not a Rare Breed FRT® product, whatever its seller calls it. A seller's unauthorized use of the FRT® marks to identify and promote its products is likely to mislead consumers into believing that the seller's products are Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

82. AS Designs is advertising its products as "FRT," as shown at https://activesafetydesigns.com/mac-ix/mac-ix-slip-trip-kit/, where AS Designs offers a "MAC IX FRT Slip Trip & Shim Kit - ARC-Fire V2 Compatible," and on the social-media profile @asdesignsfrts, whose handle uses the mark "FRTs" and bio states "Leading the FRT industry with cutting edge innovation and application into the biggest platforms." Exemplary images are shown below:

MAC IX Slip Trip Kit
https://activesafetydesigns.com/mac-ix/mac-ix-slip-trip-kit/
2026-11-14 06:28:46 UTC / 12:28:46 AM CT

**MAC IX FRT Slip Trip & Shim Kit - ARC-Fire V2 Compatible**

asdesignsfrts - AS Designs
URL not shown in screenshot - social media profile @asdesignsfrts (links to www.activesafetydesigns.com)
2026-11-14 17:57:26 UTC / 11:57:26 AM CT




83. Despite AS Designs' marketing, AS Designs' products are not one of Plaintiffs' FRT products.

84. AS Designs' unauthorized use of the FRT® marks to identify and promote its products is likely to mislead consumers into falsely believing that AS Designs' products are in fact Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

85. The only reason AS Designs would use the FRT® marks in connection with its products is to trade on the goodwill Plaintiffs have developed in the FRT® marks, and thus AS Designs' conduct is willful.

## XI. CLAIMS FOR RELIEF

### COUNT I: INFRINGEMENT OF THE '247 PATENT (U.S. PATENT NO. 12,038,247)

86. Plaintiffs incorporate the paragraphs of §§ I–IX.

87. Defendants have infringed and continue to infringe at least claim 15 of the '247 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety and ARC-Fire families, in violation of 35 U.S.C. § 271(a).

88. Defendants have also induced infringement of the '247 patent in violation of 35 U.S.C. § 271(b).

89. Defendants have contributed to infringement of the '247 patent in violation of 35 U.S.C. § 271(c).

90. Defendants' infringement of the '247 patent has been willful.

91. Defendants' infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

92. Defendants' infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT II: INFRINGEMENT OF THE '784 PATENT (U.S. PATENT NO. 12,031,784)**

93. Plaintiffs incorporate the paragraphs of §§ I–IX.

94. Defendants have infringed and continue to infringe at least claim 1 of the '784 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety and ARC-Fire families, in violation of 35 U.S.C. § 271(a).

95. Defendants have also induced infringement of the '784 patent in violation of 35 U.S.C. § 271(b).

96. Defendants have contributed to infringement of the '784 patent in violation of 35 U.S.C. § 271(c).

97. Defendants' infringement of the '784 patent has been willful.

98. Defendants' infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

99. Defendants' infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT III: INFRINGEMENT OF THE '538 PATENT (U.S. PATENT NO. 12,529,538)**

100. Plaintiffs incorporate the paragraphs of §§ I–IX.

101. Defendants have infringed and continue to infringe at least claim 1 of the ’538 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety family, in violation of 35 U.S.C. § 271(a).

102. Defendants have also induced infringement of the ’538 patent in violation of 35 U.S.C. § 271(b).

103. Defendants have contributed to infringement of the ’538 patent in violation of 35 U.S.C. § 271(c).

104. Defendants’ infringement of the ’538 patent has been willful.

105. Defendants’ infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

106. Defendants’ infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT IV: INFRINGEMENT OF THE ’159 PATENT (U.S. PATENT NO. 12,578,159)**

107. Plaintiffs incorporate the paragraphs of §§ I–IX.

108. Defendants have infringed and continue to infringe at least claim 1 of the ’159 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety and ARC-Fire families, in violation of 35 U.S.C. § 271(a).

109. Defendants have also induced infringement of the ’159 patent in violation of 35 U.S.C. § 271(b).

110. Defendants have contributed to infringement of the ’159 patent in violation of 35 U.S.C. § 271(c).

111. Defendants' infringement of the '159 patent has been willful.

112. Defendants' infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

113. Defendants' infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

**COUNT V: INFRINGEMENT OF THE '403 PATENT (U.S. PATENT NO. 12,636,403)**

114. Plaintiffs incorporate the paragraphs of §§ I–IX.

115. Defendants have infringed and continue to infringe at least claim 38 of the '403 patent, literally or under the doctrine of equivalents, by making, using, selling, offering to sell, or importing into the United States, without authority, Accused Products of the Super Safety and ARC-Fire families, in violation of 35 U.S.C. § 271(a).

116. Defendants have also induced infringement of the '403 patent in violation of 35 U.S.C. § 271(b).

117. Defendants have contributed to infringement of the '403 patent in violation of 35 U.S.C. § 271(c).

118. Defendants' infringement of the '403 patent has been willful.

119. Defendants' infringement has damaged Plaintiffs, who are entitled to damages adequate to compensate for it, and in no event less than a reasonable royalty. 35 U.S.C. § 284.

120. Defendants' infringement has caused and will continue to cause Plaintiffs irreparable harm for which damages are not an adequate remedy, and Plaintiffs are entitled to an injunction. 35 U.S.C. § 283.

### COUNT VI: TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

121. In this count, "Plaintiffs" means RBTM and Rare Breed. Plaintiffs incorporate the paragraphs of §§ I–III and X.

122. As described above, RBTM is the owner and Rare Breed is the exclusive licensee of the Registered FRT® Marks in connection with firearm triggers.

123. The federal trademark registrations for the Registered FRT® Marks are in full force and effect. RBTM owns all right, title, and interest in and to these registrations.

124. Plaintiffs' use of and rights in the Registered FRT® Marks predate any use by AS Designs.

125. AS Designs is wrongfully using "FRT" as a source identifier in U.S. commerce in connection with the distribution, advertising, or sale of firearm trigger products.

126. AS Designs' use of the Registered FRT® Marks was and is without Plaintiffs' consent. Such unauthorized use is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of AS Designs' products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

127. AS Designs' unlawful acts were committed, and continue to be committed, with full knowledge of Plaintiffs' prior rights in the FRT® marks, and are knowing, willful, and in bad faith.

128. AS Designs' unlawful acts have caused and, unless enjoined by this Court under 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT® marks with Plaintiffs.

129. Plaintiffs are entitled to injunctive relief prohibiting AS Designs from using the Registered FRT® Marks and any mark confusingly similar to them.

130. On information and belief, AS Designs has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT® marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

**COUNT VII: FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)(1)(A))**

131. In this count, "Plaintiffs" means RBTM and Rare Breed. Plaintiffs incorporate the paragraphs of §§ I–III and X.

132. As described above, RBTM owns and Rare Breed is the exclusive licensee of the distinctive FRT® marks in connection with firearm triggers, through the continuous and substantially exclusive use of the FRT® marks since at least as early as 2020, which is well before any use of "FRT" by AS Designs.

133. Plaintiffs' common-law rights in the FRT® marks predate AS Designs' infringing use of "FRT" and any other confusingly similar name or mark comprised of or containing "FRT."

134. AS Designs is using "FRT" as a source identifier in U.S. commerce in connection with the distribution, advertising, or sale of firearm trigger products.

135. AS Designs' actions constitute use of a false designation of origin that wrongfully and falsely designates the origin of AS Designs' goods and is likely to cause confusion or mistake, or to deceive, as to affiliation, connection, or association, or as to the origin, sponsorship, or approval of AS Designs' goods by Plaintiffs. These actions constitute a false designation of origin in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

136. AS Designs' unlawful acts were committed, and continue to be committed, with full knowledge of Plaintiffs' prior rights in the FRT® marks, and are knowing, willful, and in bad faith.

137. AS Designs' unlawful acts have caused and, unless enjoined by this Court under 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT® marks with Plaintiffs.

138. Plaintiffs are entitled to injunctive relief prohibiting AS Designs from using the FRT® marks or any other mark confusingly similar to the FRT® marks.

139. On information and belief, AS Designs has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT® marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

## COUNT VIII: COMMON-LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

140. In this count, "Plaintiffs" means RBTM and Rare Breed. Plaintiffs incorporate the paragraphs of §§ I–III and X.

141. As described above, RBTM owns and Rare Breed is the exclusive licensee of the distinctive FRT® marks in connection with firearm triggers, through the continuous use of the marks since at least as early as 2020, before any use of "FRT" by AS Designs.

142. Plaintiffs' common-law rights in the FRT® marks predate AS Designs' infringing use of "FRT" and any other confusingly similar mark comprised of or containing "FRT."

143. AS Designs is using "FRT" as a source identifier in U.S. commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

144. AS Designs' use of "FRT" was and is without Plaintiffs' consent. Such unauthorized use is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of AS Designs' goods. AS Designs' acts constitute trademark infringement and unfair competition under common law.

145. AS Designs' unlawful acts were committed, and continue to be committed, with full knowledge of Plaintiffs' prior rights in the FRT® marks, and are knowing, willful, and in bad faith.

146. AS Designs' acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Plaintiffs for which they have no adequate remedy at law, including undermining consumers' association of the FRT® marks with Plaintiffs.

147. Plaintiffs are entitled to injunctive relief prohibiting AS Designs from using "FRT" or any other mark confusingly similar to the FRT® marks.

148. On information and belief, AS Designs has realized unjust profits, gains, and advantages from its unlawful actions, including by making sales under the FRT® marks, and has caused Plaintiffs monetary damage in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

(a) a judgment that Defendants have infringed each asserted Patent-in-Suit;

(b) damages adequate to compensate for the infringement, in no event less than a reasonable royalty, with pre- and post-judgment interest and costs (35 U.S.C. § 284);

(c) enhanced damages for willful infringement (35 U.S.C. § 284);

(d) a preliminary and permanent injunction against further infringement of any unexpired Patent-in-Suit (35 U.S.C. § 283);

(e) a finding that the case is exceptional and an award of reasonable attorneys' fees (35 U.S.C. § 285);

(f) on the trademark counts, an injunction (15 U.S.C. § 1116);

(g) on the trademark counts, Defendants' profits, Plaintiffs' damages, and costs (15 U.S.C. § 1117(a));

(h) on the trademark counts, enhanced damages and attorneys' fees where the law allows (15 U.S.C. § 1117(a)); and

(i) any other relief the Court finds just.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable. Fed. R. Civ. P. 38.

DATED: November 19, 2026

Respectfully submitted,

*/s/ Matthew A. Colvin*
Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
Bret T. Winterle
Texas Bar No. 24084249
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
bruce@fr.com
winterle@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635
**FISH & RICHARDSON P.C.**
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Oliver J. Richards
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130
E-mail: ojr@fr.com

Tel: (858) 678-5070
Fax: (858) 678-5099

Glenn D. Bellamy (admitted pro hac vice)
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

***Attorneys for Plaintiffs ABC IP, LLC, Rare Breed Triggers, Inc., and RBTM LLC***

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was served on November 19, 2026 on all counsel of record who are deemed to have consented to electronic service through the Court's CM/ECF system.

*/s/ Matthew A. Colvin*
Matthew A. Colvin