[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

**In Re: Rare Breed Triggers Patent Litigation**

**4:26-md-03176-ALM**
**MDL 3176**

[redacted]

ABC IP, LLC, and RARE BREED TRIGGERS, INC.,

Plaintiffs,

v.

AS DESIGNS, LLC, MATTHEW S. KARLOVIC, CALVIN OLSON and JOHN DOE, an individual using the alias "s3igu2" and/or "Seagoo Threetwo,"

Defendants.

Civil Action No. 4:26-cv-00370-ALM

**PLAINTIFFS ABC IP, LLC AND RARE BREED TRIGGERS, INC.'S REPLY IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST THE ARHK (DKT. 117)**

[redacted]

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 1
A. The Renewed Motion Supplies the Evidence the Court Found Missing, and AS Designs Has Confirmed that the Unit Is Its Own ARHK ..... 1
B. Rare Breed Is Likely to Succeed on the Merits, as the Court Has Already Found. 2
1. AS Designs Does Not Seriously Dispute That the ARHK Meets '403 Claims 38 and 39 ..... 3
2. [redacted] ..... 5
3. AS Designs Raises No Substantial Question of Validity ..... 7
C. Rare Breed Will Suffer Irreparable Harm Because the ARHK Would Take Customers, Lead Time, and Pricing That No Later Award Restores ..... 8
1. Being Able to Count Some Lost Sales Does Not Make the Harm Reparable ..... 8
2. AS Designs' Concessions Make the Harm More Certain, Not More Compensable ..... 10
3. Forced Reset Drives Demand, and Buyers Hostile to Rare Breed Have Nowhere Else to Go ..... 11
4. The ARHK Would Take Rare Breed's Standing as the Innovator, and Enforcing Its Patents Is Costing Rare Breed Its Goodwill in the Market. 12
5. The ARHK Threatens Rare Breed's Pricing and Lead Time, Which a Later Award Would Not Restore ..... 14
6. Rare Breed Moved Within Days of Obtaining the Evidence the Court Required, Which Is the Good Explanation *High Tech* Contemplates ..... 14
7. Rare Breed's Limited Arrangements Do Not Show that a Royalty Is Adequate, Because None Put a Competitor in the Drop-In Segment ..... 15
D. The Balance of Hardships Favors Rare Breed Because AS Designs' Hardship Is the Delayed Launch of an Accused Product ..... 16
E. The Public Interest Favors Enforcing Rare Breed's Patents Against an Unreleased Accused Product ..... 17
F. The $25,000 Bond the Court Set Is Adequate Security for a Preliminary Injunction ..... 18
III. CONCLUSION ..... 18

[redacted]

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC IP, LLC v. Peak Tactical, LLC*,
No. 26-CV-18-R, 2026 WL 940599 (D. Wyo. Mar. 11, 2026) ....................2

*Acumed LLC v. Stryker Corp.*,
551 F.3d 1323 (Fed. Cir. 2008)....................15, 16

*Apple Inc. v. Samsung Elecs. Co.*,
735 F.3d 1352 (Fed. Cir. 2013)....................11

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015)....................12

*AstraZeneca LP v. Apotex, Inc.*,
633 F.3d 1042 (Fed. Cir. 2010)....................3

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012)....................8, 9, 12, 14

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013)....................10, 11, 13, 17

*High Tech Med. Instrumentation, Inc. v. New Image Indus.*,
49 F.3d 1551 (Fed. Cir. 1995)....................5, 14

*Hybritech Inc. v. Abbott Labs.*,
849 F.2d 1446 (Fed. Cir. 1988)....................17

*i4i Ltd. P'ship v. Microsoft Corp.*,
670 F. Supp. 2d 568 (E.D. Tex. 2009), *aff'd as modified*, 598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011)....................10

*Intel Corp. v. U.S. Int'l Trade Comm'n*,
946 F.2d 821 (Fed. Cir. 1991)....................5

*Janvey v. Alguire*,
647 F.3d 585 (5th Cir. 2011) ....................8

*Kaepa, Inc. v. Achilles Corp.*,
76 F.3d 624 (5th Cir. 1996) ....................18

*Natera, Inc. v. NeoGenomics Lab'ys, Inc.*,
106 F.4th 1369 (Fed. Cir. 2024) ....................9, 11

[redacted]

*Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*,
No. 4:15-CV-571-ALM-CAN, 2015 WL 9876952 (E.D. Tex. Dec. 23, 2015) ..........11, 15, 16

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011)..........................................................................9, 10

*Sanofi-Synthelabo v. Apotex, Inc.*,
470 F.3d 1368 (Fed. Cir. 2006)..............................................................................17

*Sierra Club, Lone Star Chapter v. FDIC*,
992 F.2d 545 (5th Cir. 1993) ...............................................................................2

*Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*,
895 F.3d 1304 (Fed. Cir. 2018)...............................................................................8

*Titan Tire Corp. v. Case New Holland, Inc.*,
566 F.3d 1372 (Fed. Cir. 2009)...............................................................................7

*Trebro Mfg., Inc. v. FireFly Equip., LLC*,
748 F.3d 1159 (Fed. Cir. 2014)...............................................................................9

*Whirlpool Corp. v. Samsung Elecs. Co.*,
No. 2:25-CV-01042-JRG-RSP, 2026 WL 2968841 (E.D. Tex. Sept. 24, 2026),
*R. & R. adopted*, 2026 WL 2946524 (E.D. Tex. Sept. 30, 2026) ....................................11, 15

**Other Authorities**

Fed. R. Evid. 801(d)(2)(A) .........................................................................................2

[redacted]

# TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Batzer Consol. Decl. | Consolidated Declaration of Dr. Stephen A. Batzer, ABC IP, LLC v. Z3 Prods., No. 4:26-cv-00367-ALM, Dkt. 72, with Exhibits 22–25 at Dkts. 72-22 to 72-25 |
| Batzer Decl. | Declaration of Dr. Stephen A. Batzer, Dkt. 124-1. Its Exhibits 1–6 are at Dkts. 124-2 to 124-7. |
| Colvin ARHK Decl. | Declaration of Matthew A. Colvin, Dkt. 118 |
| Colvin Decl. | Declaration of Matthew A. Colvin, Dkt. 75, with Exhibits 7–11 at Dkts. 74-5 to 74-9 |
| Cook Decl. | Declaration of Ryan D. Cook, ABC IP, LLC v. Mister Guns, LLC, No. 2:26-cv-00056-ALM, Dkt. 71-7 |
| DeMonico Decl. | Declaration of Lawrence DeMonico, Dkt. 74-2 |
| DeMonico Dep. | Deposition of Lawrence DeMonico (Sept. 16, 2026), excerpts at Dkts. 88-4 and 117-7 |
| Eichmann Decl. | Declaration of Richard J. Eichmann, Dkt. 74-1 |
| Eichmann Reply Decl. | Reply Declaration of Richard J. Eichmann, Dkt. 109-1 |
| Harrison ARHK Decl. | Declaration of Dr. Joshua C. Harrison, Ph.D., J.D. Regarding Plaintiffs' Reply in Support of Motion for Temporary Restraining Order and Preliminary Injunction Against the ARHK, filed with this Reply |
| Karlovic Decl. | Declaration of Matthew S. Karlovic, Dkt. 88-1 |
| Luettke ARHK Decl. | Declaration of Brian Luettke, Dkt. 117-1. Its Exhibits 2–5 are at Dkts. 117-2 to 117-5. |
| Luettke ARHK Reply Decl. | Declaration of Brian Luettke in Support of Plaintiffs' Reply in Support of Motion for Temporary Restraining Order and Preliminary Injunction Against the ARHK, filed with this Reply |
| Mot. | Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction Against the ARHK, Dkt. 117 |
| Opp. | Defendants' Response in Opposition, Dkt. 124 |
| Phillips Decl. | Declaration of Eric J. Phillips, Dkt. 88-2 |
| Statement of Interest | Statement of Interest of the United States, *In re Rare Breed Triggers Patent Litig.*, No. 4:26-md-03176-ALM, Dkt. 44 |

[redacted]

## I. INTRODUCTION

AS Designs' own expert describes the ARHK working the way the asserted claims recite, and AS Designs concedes that the ARHK is "the only drop-in competitor" to Rare Breed's FRT-RD3. Opp. 25. The remaining question is whether Rare Breed must lose that segment before trial.

The renewed motion supplies what the Court found missing in October: a physical ARHK, photographed and charted element by element. AS Designs' own post confirms that the unit is one of its prototypes. Dr. Batzer concedes every structural element of '403 claim 39 and, in his own declaration, describes the forced-reset cycle that claim recites. His invalidity opinions, incorporated from earlier declarations, do not engage the evidence already before the Court. On harm, AS Designs concedes a two-supplier drop-in segment, which makes the loss of customers, lead time, and pricing more certain, not more compensable. Rare Breed moved five days after it obtained a unit. AS Designs' hardship is the delayed launch of an accused product.

The Court has already found that each factor favors Rare Breed and has restrained ARHK sales pending a preliminary-injunction hearing. Dkt. 129 at 3–9. Nothing in AS Designs' opposition warrants a different result. The Court should enter a preliminary injunction on the terms of its temporary restraining order and continue the $25,000 bond.

## II. ARGUMENT

### A. The Renewed Motion Supplies the Evidence the Court Found Missing, and AS Designs Has Confirmed that the Unit Is Its Own ARHK

The renewed motion follows the Court's order rather than evading it. The Court denied the first motion for one stated reason: Rare Breed could not yet "point to a physical product or any product specifications." Dkt. 113 at 5. It denied that motion without prejudice. *Id.* at 6. AS Designs calls that disposition dicta, Opp. 4, but its own public post gives the same reason for the denial:

[redacted]

Rare Breed "did not have one to examine." Dkt. 120-2 at 3. Rare Breed received an ARHK on October 22 and filed this motion five days later. Colvin ARHK Decl. ¶¶ 5–7.

*Peak Tactical* does not bar renewal. The Wyoming court recognized "new evidence previously unavailable" as a ground to revisit a ruling, and the line AS Designs paraphrases about waiting quoted another decision, in a parenthetical, about a movant that needed discovery. *ABC IP, LLC v. Peak Tactical, LLC*, No. 26-CV-18-R, 2026 WL 940599, at *3–4 (D. Wyo. Mar. 11, 2026) (internal quotation marks omitted); *see* Opp. 4. Here the new evidence arrived after the Court ruled. Colvin ARHK Decl. ¶¶ 5–7.

AS Designs' own statement authenticates the unit. Its post states that "one of the 5 ARHK Prototypes we loaned to content creators was sent to the plaintiffs." Dkt. 120-2 at 3. AS Designs concedes that the post "seems to implicitly admit the identity" of the unit. Opp. 5. As AS Designs' own statement, it is not hearsay when offered against AS Designs. Fed. R. Evid. 801(d)(2)(A). And at this stage the Court "may rely on otherwise inadmissible evidence, including hearsay evidence." *Sierra Club, Lone Star Chapter v. FDIC*, 992 F.2d 545, 551 (5th Cir. 1993). Dr. Batzer, who lists an ARHK among the products he considered, analyzed Mr. Luettke's photographs of the unit without questioning that they show an ARHK. Batzer Ex. 2 at 4 (item 55); Batzer Ex. 5 at 15.[1]

### B. Rare Breed Is Likely to Succeed on the Merits, as the Court Has Already Found

The Court has already found that Rare Breed is likely to succeed on the merits. Dkt. 129 at 3–5. Because AS Designs "d[id] not propose any construction," the Court construed "the claim

[1] AS Designs' remaining procedural points need little answer. For its suggestion that Rare Breed induced anyone to send the unit, AS Designs cites only Plaintiffs' notice of supplemental evidence and its exhibits. Opp. 18–19. Its own post there says that someone "willingly provided" the prototype. Dkt. 120-2 at 3. It objects to 219 pages of Luettke material while conceding that its own response "must also largely rely on" expert declarations, and it incorporates hundreds of pages of declarations from this case and two others. Opp. 8–9 (citing Dkt. 51; Batzer Consol. Decl.; Cook Decl. and exhibits).

[redacted]

language to carry its plain and ordinary meaning" at this stage. *Id.* at 3–4. Under that plain meaning, the ARHK meets every limitation of every asserted claim. Luettke ARHK Decl. ¶ 17 & Exs. 2–5; Luettke ARHK Reply Decl. Exs. A–E. Rare Breed need show only that one of those claims is likely infringed and will likely withstand AS Designs' validity challenges, *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010), and only that infringement is "more likely than not," Dkt. 129 at 4 (quoting *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525–26 (Fed. Cir. 2012)). Three of those claims, '403 claims 38 and 39 and '247 claim 15, do not contain the terms AS Designs says require construction under § 112(f), *see* Opp. 7, so construing those terms would not change the result on them. On these three claims, AS Designs does not seriously dispute infringement. As the Court observed, its brief does "nothing to refute infringement of the four representative claims," Dkt. 129 at 4, and its expert concedes nearly every limitation.

**1. AS Designs Does Not Seriously Dispute That the ARHK Meets '403 Claims 38 and 39**

Claim 38 is short enough to compare to the ARHK element by element here. It recites:

> A forced reset trigger mechanism, comprising: a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis; a trigger member; and a safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position, wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm.

'403 Patent cl. 38. Dr. Batzer concedes that [redacted]

[redacted]

[redacted] Batzer Ex. 6 at 11–12. His declaration also describes the operation the claim recites. [redacted] Batzer Decl. ¶ 30; *see* Batzer Ex. 6 at 12.

Dr. Batzer's remaining points do not dispute any limitation. He [redacted] Batzer Ex. 6 at 12, yet he himself [redacted]. Batzer Decl. ¶¶ 29–31; Luettke ARHK Reply Decl. Ex. D (15[a], 38[d]). That the selector also [redacted] does not matter, because the claim uses the open term "comprising." Luettke ARHK Reply Decl. Ex. D (38[d]). And [redacted], describe the claimed operation rather than contradict it. Batzer Ex. 6 at 12; Luettke ARHK Reply Decl. Ex. D (38[e]).

Claim 39 adds two limitations. Dr. Batzer concedes the first: [redacted] Batzer Ex. 6 at 13. His only answer to the second, that the trigger is "forced to move to a full reset position against rearward pressure," [redacted] *Id.* at 14. His own declaration answers that caveat. He defines a forced-reset trigger as one that uses the recoil of the bolt carrier, "through intermediate components, to force the trigger to 'un-pull' or reset (even with the user continuing to apply force to the trigger face)." Batzer Decl. ¶ 21. And he describes the ARHK doing exactly that: [redacted]

[redacted]

[redacted] *Id.* ¶ 31; *see* Luettke ARHK Reply Decl. Ex. D (39[g]).

That the ARHK is sold without a receiver or bolt carrier does not avoid either claim. *See* Batzer Ex. 6 at 12–14. Every component that claims 38 and 39 recite is inside the ARHK, Batzer Decl. ¶¶ 24–25, which is "intended to be installed directly into the lower receiver of a compatible firearm," *id.* ¶ 28. The claims' "when" clauses describe how that mechanism operates once installed, and under comparable "when" language the device "need only be capable of operating" as claimed; actual operation "is not required." *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991).

Finally, AS Designs advertises that the ARHK "installs directly into factory OEM polymer housings with no modifications required." Dkt. 118-1 at 3. And when a device "is designed to be altered or assembled before operation, the manufacturer may be held liable for infringement if the device, as altered or assembled, infringes a valid patent." *High Tech Med. Instrumentation, Inc. v. New Image Indus.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995).

**2.** [redacted]

'247 claim 15 independently supports relief. Dr. Batzer concedes [redacted] Batzer Ex. 4 at 1. He also concedes that [redacted] *id.* at 2, and that [redacted] *id.* at 3.

That leaves Dr. Batzer's assertion that [redacted] *Id.* at 3. The ARHK does not work that way. [redacted]

[redacted]

[redacted] Luettke ARHK Reply Decl. Ex. B (15[g]). [redacted] *Id.* [redacted] *Id.* Mr. Luettke's photographs show both positions:

[redacted] Luettke ARHK Reply Decl. Ex. B (15[g], Figs. 1–2).

Dr. Batzer offers nothing to the contrary. He lists an ARHK among the products he considered, Batzer Ex. 2 at 4 (item 55), yet offers no photograph or test showing a disconnector catching the hammer. His remaining point, [redacted], Batzer Ex. 4 at 3, adds a requirement the claim does not contain. Claim 15 itself recites that the user can fire after the bolt carrier returns, which presupposes that the cam has moved. Luettke ARHK Reply Decl. Ex. B (15[g]). The same points (missing host components, the disconnector, and constructions AS Designs has never proposed) account for nearly all of Dr. Batzer's charts on the remaining claims, and Mr. Luettke answers each one. Luettke ARHK Reply Decl. Exs. A–E.

[redacted]

### 3. AS Designs Raises No Substantial Question of Validity

The Court has also found that AS Designs raises no substantial question of validity, Dkt. 129 at 4–5, and the record gives no reason to revisit that finding. Dr. Batzer offers no new invalidity analysis. His invalidity section incorporates a declaration from another member case and notes that other defendants have retained experts, without adopting any of their opinions. Batzer Decl. ¶¶ 41–43; Harrison ARHK Decl. ¶¶ 248, 250. Nor does labeling the dispute one of "dueling experts," Opp. 9, make the question substantial. A "substantial question" is "a conclusion reached by the trial court after considering the evidence on both sides of the validity issue." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009).

That evidence favors the three claims at issue. '247 claim 15 has already been preliminarily enforced over the same reading of Blakley '723 that AS Designs presses here, and the PTAB denied institution of a challenge built on that reading. Mot. 23; Harrison ARHK Decl. ¶¶ 94–96. Dr. Harrison answers each of Dr. Batzer's seven grounds against claim 15. Harrison ARHK Decl. ¶¶ 269–306. Dr. Batzer raises three grounds against claims 38 and 39; his fourth, Rounds in view of Sampson, does not reach them. *Id.* ¶ 311. Each of the three misreads its references. Blakley '723 does not disclose an enabled standard semi-automatic mode or a selector between modes. The column 11 passage Dr. Batzer relies on refers to a "selector-cam" that Blakley '723 never describes, and Blakley's cam resets the trigger on every cycle. *Id.* ¶¶ 113–21, 312–15. The '403 Patent itself describes Blakley '723 only as a forced-reset device and attributes no mode selection to it. '403 Patent at 2:9–18. Adding Stoner does not supply a standard mode, and Stoner's automatic mode is the machine-gun operation that Blakley '723 was designed to avoid. Harrison ARHK Decl. ¶¶ 316–23. And Dr. Batzer's chart describes Fellows' second selector position as forced reset, while his summary calls it binary; Fellows' binary mode cannot be exchanged for Rounds' forced-reset mechanism, and Rounds criticizes pull-and-release devices of Fellows' kind.

[redacted]

*Id.* ¶¶ 334–41. Blakley ’723, Stoner, and Rounds all appear on the face of the ’403 Patent. *Id.* ¶¶ 315, 323, 341.

Dr. Batzer’s last point, raised only in his noninfringement chart, [redacted] Batzer Ex. 6 at 13. But in that mode the selector “disabl[es]” the disconnector, preventing its hook “from catching the hammer hook 53 during rearward pivoting travel of the hammer head 50,” so the hammer pivots past a disconnector hook that does not catch it. ’403 Patent at 9:28–39.

### C. Rare Breed Will Suffer Irreparable Harm Because the ARHK Would Take Customers, Lead Time, and Pricing That No Later Award Restores

Applying the same four factors that govern a preliminary injunction, the Court has already found that customers lost to the ARHK could cause long-term effects that are difficult to calculate and may not be recaptured. Dkt. 129 at 2, 5–6.

#### 1. Being Able to Count Some Lost Sales Does Not Make the Harm Reparable

AS Designs’ central point, that the harm can be counted, does not make the harm reparable. Opp. 12–13. The Fifth Circuit recognizes that “the mere fact that economic damages may be available does not always mean that a remedy at law is ‘adequate.’” *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). The Federal Circuit agrees: “the simple fact that one could, if pressed, compute a money damages award does not always preclude a finding of irreparable harm.” *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (affirming preliminary injunction). A royalty for past infringement “may best measure those harms which are reliably measurable,” but some harms, “such as impaired goodwill and competitive position,” can justify an injunction “before they occur (precisely because they are hard to quantify later).” *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1331 (Fed. Cir. 2018).

[redacted]

Dr. Eichmann's testimony fits that rule, and AS Designs' reading of it omits his qualifiers. AS Designs' economic points repeat Mr. Phillips and never mention Dr. Eichmann's reply. *See* Opp. 12, 16–18, 22. Dr. Eichmann states that he has "not been asked at this stage to calculate a final lost-profits amount." Eichmann Decl. ¶ 8. The passages AS Designs quotes are conditional: they address what can be estimated if the evidence ultimately establishes a diverted sale. *Id.* ¶¶ 122, 147; *see* Opp. 12. AS Designs' sales records would show what its buyers bought, not what Rare Breed would have sold, and interest adjusts the timing of a loss without identifying the customers lost. Eichmann Reply Decl. ¶¶ 47, 49. His conclusion is that a later award would not restore the timing of lost customer acquisitions or the elapsed period of exclusive sales. Eichmann Decl. ¶¶ 148, 150.

The harm is the lost customer, not just the lost sale. As the district court found in *Celsis*, there is "no effective way to measure the loss of sales or potential growth—to ascertain the people who do not knock on the door or to identify the specific persons who do not reorder because of the existence of the infringer." 664 F.3d at 930 (internal quotation marks omitted). A lost sale that "translates into a lost customer" is a loss damages do not repair. *Trebro Mfg., Inc. v. FireFly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014); *see Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1379 (Fed. Cir. 2024) (affirming preliminary injunction; harm included "lost repeat business"). The first sale carries later ones: [redacted] of the FRT-RD3's [redacted] launch customers placed later trigger orders within 90 days. Eichmann Reply Decl. ¶ 51.

And a counted award is worth only what AS Designs can pay. Before deeming damages adequate, a court should ask whether the remedy is "a meaningful one in light of the financial condition of the infringer." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011). AS Designs says ARHK revenue would add to the fund that pays a judgment, Opp. 20, [redacted]

[redacted]

[redacted] Colvin Decl. Ex. 7 at 133:18–134:16. [redacted] Mot. 31, and [redacted], Colvin Decl. Ex. 7 at 62:24–63:1, 92:13–20. [redacted] *Id.* at 89:3–90:8.

**2. AS Designs' Concessions Make the Harm More Certain, Not More Compensable**

AS Designs concedes the market. It calls the ARHK "the only drop-in competitor" to the FRT-RD3, Opp. 25, and says the FRT-RD3 has so far been "without a drop-in competitor," *id.* at 18. It cannot then call the two-product segment a construct. *Id.* at 15. Every other forced-reset option for this platform that Mr. DeMonico knows of, including AS Designs' own replacement lowers, requires replacing the factory grip frame or converting the fire control group. DeMonico Decl. ¶¶ 34, 81. Dr. Eichmann did not say otherwise. He found that AS Designs' earlier configuration required components the ARHK is marketed as eliminating. Eichmann Decl. ¶ 14.

That concession supports relief; it does not defeat it. AS Designs argues that a two-supplier market makes lost profits easy to measure. Opp. 12. But a two-player market "may well serve as a substantial ground for granting an injunction," for example, because it "creates an inference that an infringing sale amounts to a lost sale for the patentee." *Bosch*, 659 F.3d at 1151. Where two companies compete, the patentee suffers "the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). In this District, "direct competition in a marketplace weighs heavily in favor of a finding of irreparable injury." *i4i Ltd. P'ship v. Microsoft Corp.*, 670 F. Supp. 2d 568, 599 (E.D. Tex. 2009), *aff'd as modified*, 598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). AS Designs' own economist relies on the same

[redacted]

inference. Phillips Decl. ¶ 55. Where each ARHK sale likely comes out of Rare Breed's hands, the customer losses described above are most certain. *See Natera*, 106 F.4th at 1378.

AS Designs' point that FRT-RD3 sales grew while the ARHK was being promoted, Opp. 15–16, does not help it. That growth, from [redacted] [redacted] in the February 2026 launch month to [redacted] [redacted] in June 2026, came while no drop-in alternative was for sale. DeMonico Decl. ¶¶ 34, 63. And a patentee's continued profit does not "automatically rebut a case for irreparable injury." *Douglas*, 717 F.3d at 1344. Meanwhile, sales of Rare Breed's FRT-15L3, which faces competing products, fell from [redacted] in October 2025 to [redacted] in June 2026. DeMonico Decl. ¶ 63. That decline also answers AS Designs' suggestion that future entrants are speculative. Snapshots showing the FRT-RD3 sold out do not show lost capacity. Rare Breed's stock history records no sell-out after July. And a buyer who would have waited for Rare Breed's next shipment can buy an ARHK instead. Eichmann Reply Decl. ¶ 23. The customer comments, while not a statistical sample, "nevertheless provide some direct evidence of the substitution mechanism." Eichmann Decl. ¶ 41.

*Pruvit* is not this case. The court there denied relief on a record with no expert testimony on harm and no substantiated loss of market share. *Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, No. 4:15-CV-571-ALM-CAN, 2015 WL 9876952, at *4, *6–7 (E.D. Tex. Dec. 23, 2015), *R. & R. adopted*, 2016 WL 231160, at *1 (E.D. Tex. Jan. 19, 2016). Here AS Designs concedes the segment, and Rare Breed offers an economist. Eichmann Decl.; Eichmann Reply Decl.

### 3. Forced Reset Drives Demand, and Buyers Hostile to Rare Breed Have Nowhere Else to Go

The harm has a causal nexus to the infringement, because forced reset is why anyone buys a forced-reset trigger. The patentee need show only "some connection" between the patented feature and demand, and that showing "may be more easily satisfied (indeed, perhaps even conceded) for relatively 'simple' products." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352,

[redacted]

1362, 1364 (Fed. Cir. 2013). Other reasons to buy "may well lessen the weight of any alleged irreparable harm," but they do "not eliminate it entirely." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 642 (Fed. Cir. 2015). Mr. Karlovic's contrary statements give no numbers. He says that "[a] large portion of customers" who sent AS Designs feedback are interested in other platforms, and that buyers value the ARHK's single-stage pull. Karlovic Decl. ¶¶ 8, 10.

AS Designs' own messages show where the ARHK was aimed. [redacted] the same platform point AS Designs now presses. Colvin Decl. Ex. 11 at ASD 000041; Opp. 14. AS Designs calls these messages "informal speculation, from January 2026." Opp. 22. The exhibit shows more. [redacted] Colvin Decl. Ex. 11 at ASD 000043; *see* Colvin Decl. Ex. 7 at 114:10–11.

AS Designs' hostile-buyer argument stops Mr. DeMonico's sentence short. Opp. 15. It ends: "and the only place that customer's demand can go, on the roller-delayed platform, is to AS Designs' accused products." DeMonico Decl. ¶ 100. The testimony AS Designs cites for hostility caused by enforcement says the opposite: [redacted] DeMonico Dep. 233:19–234:1.

**4. The ARHK Would Take Rare Breed's Standing as the Innovator, and Enforcing Its Patents Is Costing Rare Breed Its Goodwill in the Market**

The Court has already found present the harm *Celsis* recognized to a patentee's "reputation and business" when it can no longer market itself as "the exclusive market leader" while its product is in its growth stage. Dkt. 129 at 6 (quoting *Celsis*, 664 F.3d at 930). The ARHK threatens that harm. Rare Breed brought the first commercially available forced-reset trigger to market in 2020. DeMonico Decl. ¶ 88. AS Designs presents itself as the innovator. *Id.* ¶¶ 43, 89. When AS Designs

[redacted]

announced the ARHK, a forum participant gave it the credit: "Someone beat them to market with an idea!" *Id.* ¶ 91. One consumer could "barely see a mechanical difference" between the ARHK and the FRT-RD3; another was "convinced that they licensed (or made a deal with RB) to make the ARHK." *Id.* ¶ 92.

AS Designs answers that the products look different and the FRT-RD3 bears Rare Breed's name. Opp. 19. But reputational harm does not depend on confusion. The Federal Circuit called it "a clear error of judgment" to find no reputational injury because consumers had not confused the two companies. Even without confusion, "there can still be harm to a company's reputation, particularly its perception in the marketplace by customers, dealers, and distributors," and a patentee's "reputation as an innovator will certainly be damaged if customers found the same 'innovations' appearing in competitors' snowplows." *Douglas*, 717 F.3d at 1344–45.

AS Designs blames the hostility on Rare Breed's enforcement. Opp. 18. But *Douglas* counts a patentee's reputation for enforcing its patents toward irreparable harm: Douglas's "reputation would be damaged if its dealers and distributors believed it did not enforce its intellectual property rights." *Douglas*, 717 F.3d at 1345. If Rare Breed does not enforce, it suffers the harm *Douglas* describes. When it enforces, including against an ARHK the Court has found likely infringes, Dkt. 129 at 3–5, buying from Rare Breed carries a "public social penalty," and that "social enforcement suppresses demand in ways that never appear in any sales record." DeMonico Decl. ¶¶ 95, 99. AS Designs fed that hostility and sells into it: it posted the delivery of Rare Breed's cease-and-desist letter as a "gift," and demand for the ARHK is "driven by the boycott," with buyers wanting "an MP5 pack that isn't morally corrupt." *Id.* ¶¶ 46, 101; *see supra* Part II.C.3. Enforce or not, the infringement costs Rare Breed its standing, and no later award gives it back.

[redacted]

### 5. The ARHK Threatens Rare Breed's Pricing and Lead Time, Which a Later Award Would Not Restore

The ARHK threatens Rare Breed's pricing before any posted cut. Price erosion and "loss of customer goodwill (e.g., when an effort is later made to restore the original price)" are recognized irreparable harms. *Celsis*, 664 F.3d at 930. A lower-priced close substitute can reduce volume, increase demands for discounts, and squeeze dealer margins "even if the incumbent does not immediately reduce its posted price." Eichmann Decl. ¶ 79. And a later award would not necessarily recreate the pricing that would have existed had the ARHK not entered during the FRT-RD3's early commercialization. *Id.* ¶¶ 88–89. Rare Breed does not claim a price cut that has not occurred, Opp. 16–17; it asks the Court to prevent one. The [redacted] figure AS Designs offers, Opp. 18, is one Dr. Eichmann himself reported. He calculated it against the combined-plaintiff residual, beside the [redacted] separate-company figure, and said the two calculations "must remain clearly distinguished." Eichmann Reply Decl. ¶ 30.

The ARHK would also take the FRT-RD3's remaining lead. Dr. Eichmann does not claim the ARHK would exclude Rare Breed permanently. His point is that Rare Breed "permanently loses the elapsed period" in which it could have sold without that close substitute, and that regaining share later would not restore the profits lost in between. Eichmann Decl. ¶ 106; Eichmann Reply Decl. ¶ 50. No later award restores that period, temporary or not. Eichmann Decl. ¶ 150; *see* Opp. 18.

### 6. Rare Breed Moved Within Days of Obtaining the Evidence the Court Required, Which Is the Good Explanation *High Tech* Contemplates

The *High Tech* sentence AS Designs relies on begins "Absent a good explanation." *High Tech*, 49 F.3d at 1557; *see* Opp. 10. This record supplies one. The delay AS Designs measures runs from announcements that, as the Court found, did not give Rare Breed a product or specifications to chart. Dkt. 113 at 5. The September record already included the April 4

[redacted]

specifications posting AS Designs now cites. DeMonico Decl. ¶ 54; Opp. 10. Rare Breed renewed five days after receiving a unit. Colvin ARHK Decl. ¶¶ 5–7. AS Designs' own July product page showed a "NOTIFY ME" button, said AS Designs would "not hit our end of July ETA," and called an early-August drop "not a guarantee." Dkt. 75-25 at 2. The ARHK still "has not been released." Opp. 5.

AS Designs' cases from this District involved accused products already on sale. In *Pruvit*, the movant waited almost five months after the accused product reached the market. 2015 WL 9876952, at *8. In *Whirlpool*, the patentee waited six months after buying the accused dishwasher and showed no concrete harm in the substantial time it had been on sale. *Whirlpool Corp. v. Samsung Elecs. Co.*, No. 2:25-CV-01042-JRG-RSP, 2026 WL 2968841, at *12 (E.D. Tex. Sept. 24, 2026), *R. & R. adopted*, 2026 WL 2946524, at *1 (E.D. Tex. Sept. 30, 2026).

AS Designs' other delay points fare no better. Rare Breed's April motion did not accuse the ARHK, Opp. 1, for the reason the Court later identified: there was no unit or specification to chart. The forum posts AS Designs cites show buyers deferring purchases to wait for the ARHK, which is the harm Rare Breed describes. Opp. 11. And the Court has held that the ARHK's absence from the complaint does not bar accusing it at this stage. Dkt. 113 at 4.

**7. Rare Breed's Limited Arrangements Do Not Show that a Royalty Is Adequate, Because None Put a Competitor in the Drop-In Segment**

Rare Breed sells only forced-reset triggers and related parts, and the FRT-RD3 incorporates technology covered by the '403 Patent. DeMonico Decl. ¶¶ 20, 24. "The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008). Licensing is "but one factor," and its weight turns on "the identity of the past licensees, the experience in the market since the licenses were granted, and the identity of the new infringer." *Id.* "Adding a new competitor to the market

[redacted]

may create an irreparable harm that the prior licenses did not." *Id.* at 1329. Each arrangement AS Designs cites either [redacted]. *See* Opp. 13–14. The [redacted]. DeMonico Dep. 77:7–16; Dkt. 109-2 at 2; Mot. 32–33. [redacted]. DeMonico Dep. 87:19–88:2. [redacted] DeMonico Dep. 122:9–15. And unlike the movant in *Pruvit*, which had sublicensed the very party it sought to enjoin, 2015 WL 9876952, at *2, Rare Breed has never licensed AS Designs. When Plaintiffs first moved on September 2, Rare Breed had licensed no one; the [redacted] Dkt. 109-2 at 2, 31; Dkt. 109-3 at 2, 26.

### D. The Balance of Hardships Favors Rare Breed Because AS Designs' Hardship Is the Delayed Launch of an Accused Product

The Court has already found that the balance of hardships favors Rare Breed, Dkt. 129 at 6–7, and a preliminary injunction does not change what AS Designs would bear.

AS Designs' [redacted] figure presents a dilemma. It assumes [redacted]. Karlovic Decl. ¶¶ 14–15. If that forecast is right, the threat of diversion is large. Using AS Designs' announced 1,500-unit first drop, Opp. 10, the same formula yields about [redacted]. Either way, the figure "estimates gross profit from assumed launch sales, not the loss caused by a temporary restraint." Eichmann Reply Decl. ¶ 60. Sales deferred by a restraint are not sales lost, and AS Designs itself stresses that any sale during a restraint period "would be recorded." Opp. 20.

[redacted]

AS Designs' argument that launch timing must matter equally to both sides fails because the harms are not symmetrical. Opp. 21. A patentee loses exclusivity it can never recover, while an accused infringer that launched at its own risk only waits. The Federal Circuit affirmed a preliminary injunction where the accused infringer's harms were "almost entirely preventable" and the result of its "own calculated risk to launch its product pre-judgment." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) (internal quotation marks omitted). That holding answers the point that the principle applies only after infringement is found. Opp. 21.

A carve-out for non-MP5 rifles would not work. Opp. 21. AS Designs' designer has said a single ARHK moves between host firearms by swapping ejectors, and AS Designs offers it with or without an ejector lever. DeMonico Decl. ¶¶ 51, 66; Dkt. 118-1 at 2. Mr. Karlovic gives no platform allocation for his forecast. Eichmann Reply Decl. ¶ 61. And that Rare Breed will stay in business, Opp. 22, does not mean it will keep the drop-in segment. *See Douglas*, 717 F.3d at 1344.

**E. The Public Interest Favors Enforcing Rare Breed's Patents Against an Unreleased Accused Product**

The Court has already found no countervailing public interest. Dkt. 129 at 7. AS Designs identifies no critical public interest that an injunction would injure. *See Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988). Lower prices for an accused product are not one. AS Designs quotes the Statement of Interest on ATF's interest in discouraging unregulated manufacture of forced-reset triggers. Opp. 24. But it omits the Statement's conclusion: the public interest "should be weighed heavily in Plaintiffs' favor," because the settlement "does not bind other potential manufacturers." Statement of Interest at 7. ATF's stated interest is in "limiting the sale and distribution of FRTs." *Id.* at 6. That conclusion does not turn on handgun triggers or the '223 Patent, *see* Opp. 23–24. Enjoining an unreleased accused trigger serves that interest. Nor is

[redacted]

there any sign of monopoly pricing, Opp. 25: AS Designs itself reports that the FRT-RD3 sells for $615 and $620, Opp. 1, Rare Breed's launch prices, Colvin Decl. Ex. 11 at ASD 000043.

### F. The $25,000 Bond the Court Set Is Adequate Security for a Preliminary Injunction

The $25,000 bond the Court set for the temporary restraining order, Dkt. 129 at 7, 9, should also secure the preliminary injunction. The Fifth Circuit leaves security to the Court's discretion, and a court "may elect to require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (internal quotation marks omitted). The [redacted] that AS Designs seeks, Opp. 27, measures gross profit, not loss from an injunction. *See supra* Part II.D.

## III. CONCLUSION

The Court should enter a preliminary injunction pending final judgment on the terms of its temporary restraining order, Dkt. 129 at 8–9, and continue the $25,000 bond. If the Court has not ruled before that order expires, it should extend the order for good cause. *Id.* at 9.

DATED: November 13, 2026

Respectfully submitted,

*/s/ Matthew A. Colvin*

Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
Bret T. Winterle
Texas Bar No. 24084249
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
bruce@fr.com
winterle@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Benjamin J. Christoff
DC Bar No. 1025635
FISH & RICHARDSON P.C.

[redacted]

1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel: (202) 783-5070
Fax: (202) 783-2331

Oliver J. Richards
CA Bar No. 310972
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
E-mail: ojr@fr.com
Tel: (858) 678-5070
Fax: (858) 678-5099

Glenn D. Bellamy (admitted pro hac vice)
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Melissa R. Smith
Texas Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

Attorneys for Plaintiffs
ABC IP, LLC and Rare Breed Triggers, Inc.

[redacted]

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 13, 2026, to all counsel of record via electronic mail.

/s/ Matthew A. Colvin
Matthew A. Colvin

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7)(B), the undersigned certifies that Plaintiffs' Reply In Support Of Motion For Temporary Restraining Order And Preliminary Injunction Against The ARHK, Declaration of Brian Luettke and Exhibits A-D In Support of are filed under seal because the Court has already authorized sealing of the confidential information it contains: the Protective Order, *In re Rare Breed Triggers Pat. Litig.*, No. 4:26-md-03176-ALM, Dkt. 90 § XIV (E.D. Tex. Nov. 4, 2026), which applies in this Member Action, *id.* § IV(a).

*/s/ Matthew A. Colvin*
Matthew A. Colvin