[redacted]

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| IN RE: RARE BREED TRIGGERS PATENT LITIGATION | CASE NO. 4:26-md-03176-ALM |
| RARE BREED TRIGGERS, INC. et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>AS DESIGNS, LLC et al.,<br><br>Defendants. | (CASE NO. 4:26-cv-00370-ALM)<br><br>CHIEF JUDGE AMOS L. MAZZANT |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

[redacted]

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... iii

I. PLAINTIFFS HAVE NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS ..... 1

A. Plaintiffs Do Not Answer the Publication That Anticipates the '538 Patent ..... 1

B. The Reply Changes Plaintiffs' Infringement Theory and Confirms a Substantial Question of Non-Infringement ..... 4

1. The Indirect-Infringement Theory Is New and Unsupported. ..... 4

2. Plaintiffs' Reply Charts Confirm the Non-Infringement Dispute ..... 5

B. The Reply Does Not Dispel the Substantial Questions of Invalidity of the Asserted Patents ..... 6

1. The Reply Answers Anticipation, Not Obviousness ..... 6

2. The Reply's Reading of Claim 15 Raises a §112(a) Question ..... 7

3. The "Three Forums" Did Not Decide This Question ..... 8

4. Plaintiffs' Witnesses Refute Their Objective Indicia ..... 8

II. THE REPLY AND PLAINTIFFS' OWN WITNESSES CONFIRM THERE IS NO IRREPARABLE HARM ..... 9

A. Plaintiffs' Economist Disclaims the Reply's Central Assertions ..... 9

B. The Collectability Narrative Does Not Establish Irreparable Harm ..... 11

C. Plaintiffs' Testimony Shows the Claimed Harm Was Not Urgent, Is Priced in Dollars, and Is Not Tied to the Asserted Claims ..... 12

III. THE REMAINING FACTORS, THE BOND, AND THE SCOPE OF ANY RELIEF ..... 13

IV. CONCLUSION ..... 14

[redacted]

## TABLE OF AUTHORITIES

**CASES** **Page(s)**

*ABC IP, LLC v. Peak Tactical, LLC*,
No. 2:26-cv-00018, 2026 WL 713000 (D. Wyo. Feb. 13, 2026)....................9

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001)....................4

*Apple Inc. v. Samsung Elecs. Co.*,
735 F.3d 1352 (Fed. Cir. 2013)....................13

*Beckman Instruments, Inc. v. LKB Produkter AB*,
892 F.2d 1547 (Fed. Cir. 1989)....................6

*Big Tyme Investments, L.L.C. v. Edwards*,
985 F.3d 456 (5th Cir. 2021)....................14

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)....................5

*Geo. M. Martin Co. v. Alliance Machine Sys. Int'l LLC*,
618 F.3d 1294 (Fed. Cir. 2010)....................9

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)....................5

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
49 F.3d 1551 (Fed. Cir. 1995)....................12

*Int'l Rectifier Corp. v. IXYS Corp.*,
383 F.3d 1312 (Fed. Cir. 2004)....................14

*Janvey v. Alguire*,
647 F.3d 585 (5th Cir. 2011)....................11

*Jones v. Cain*,
600 F.3d 527 (5th Cir. 2010)....................4

*Koninklijke Philips N.V. v. Zoll Med. Corp.*,
656 F. App'x 504 (Fed. Cir. 2016)....................5

*Mahurkar v. C.R. Bard, Inc.*,
79 F.3d 1572 (Fed. Cir. 1996)....................2

[redacted]

**Page(s)**

*Peters v. Active Mfg. Co.*,
129 U.S. 530 (1889) ... 2

*Price v. Symsek*,
988 F.2d 1187 (Fed. Cir. 1993) ... 2

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
30 F.4th 1109 (Fed. Cir. 2022) ... 5

*Rovalma, S.A. v. Bohler-Edelstahl GmbH*,
856 F.3d 1019 (Fed. Cir. 2017) ... 6

*Stryker Corp. v. Zimmer, Inc.*,
837 F.3d 1268 (Fed. Cir. 2016) ... 6

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
782 F.2d 995 (Fed. Cir. 1986) ... 13

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ... 11

**STATUTES**

35 U.S.C. §102 ... 2

35 U.S.C. §112 ... 6, 7, 8

**RULES**

Fed. R. Civ. P. 65 ... 14

[redacted]

Plaintiffs' Reply (Dkt. #63) abandons much of their Preliminary Injunction ("PI") Motion (Dkt. #28, "Mot.") and replaces it with new theories and new evidence. On the merits, Plaintiffs now agree that "the kits are not the claimed mechanism as boxed" and switch to an indirect-infringement theory that their Motion never made for those products. (Dkt. #63 at 9-10; Dkt. #28 at 7-8.) And on irreparable harm, the Reply's headline assertions are disclaimed by Plaintiffs' own economist.

They are also contradicted by Plaintiffs' own principals, deposed after the Reply was filed. They testified that Plaintiffs believed their harm was irreparable in August 2025 yet spent their resources elsewhere for more than eight months; that Plaintiff Rare Breed Triggers, Inc. ("Rare Breed") sells no product covered by U.S. Patents 12,529,538 ("'538 Patent") or 12,031,784 ("'784 Patent"); and that Plaintiffs' position is that [redacted]. The Motion should be denied.[1]

## I. PLAINTIFFS HAVE NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS.

### A. Plaintiffs Do Not Answer the Publication That Anticipates the '538 Patent.

Plaintiffs say Defendants' first ground "rests on a provisional application never published." (Dkt. #63 at 11.) It does not. Ground 1 is that the Super Safety "was publicly disclosed, publicly used, and described in printed publications before the priority date," including Mr. Hoffman's YouTube videos and his July 2023 public release of the complete v4.4 design package and documentation. (Dkt. #51-20 at 1 & §III; Dkt. #52-13 at ¶¶ 7-14; Dkt. #20-6.) The provisional application (Dkt. #52-14) serves a different purpose: it is a USPTO-dated record that Mr. Hoffman possessed the design at least by September 28, 2022, more than fourteen months before Mr.

[1] This Sur-Reply is accompanied by the declarations of Dr. Stephen A. Batzer ("Batzer Decl."), Eric Phillips ("Phillips Decl."), and Sergey Vernyuk ("Vernyuk Decl.")

[redacted]

Smith's December 4, 2023 filing. Plaintiffs' validity expert addresses only the provisional application, says it was never produced, and offers no opinion on the July 2023 release, the videos, or inventorship. (Dkt. #64 at ¶¶ 199-202, 280-82.) Yet Plaintiffs' own counsel showed Mr. Hoffman the provisional and its USPTO filing receipt at the January 2026 Tennessee hearing and examined him on it. (Dkt. #29-15 at 29:7-15, 117:17-24.)

Nor can Plaintiffs dispute what that publication discloses: their own infringement expert charts the asserted '538 Patent claims against the Super Safety by citing Hoffman Tactical's "Super Safety Guide." (*See* Dkt. #29-26.) That documentation was released in July 2023 (Dkt. #20-6 (v4.4, dated 7/19/23); Dkt. #52-13 at ¶¶ 12-14), and the Tennessee court found that Mr. Hoffman "publicly distributed" the design files on July 20, 2023. (Dkt. #29-19 ¶13.) "That which infringes, if later, would anticipate, if earlier." *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889). Plaintiffs' observation that Defendants do not dispute that the '538 Patent covers the Super Safety (Dkt. #63 at 8) therefore proves Defendants' point: a claim that reads on what the public already had is invalid. *See* 35 U.S.C. §102(a)(1).

Plaintiffs' only response is that Mr. Hoffman obtained the design from Mr. Smith, which would bring the publication within the exception of §102(b)(1). That response fails for want of evidence. An inventor's testimony of prior conception must be corroborated. *Price v. Symsek*, 988 F.2d 1187, 1194-95 (Fed. Cir. 1993); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996). Plaintiffs invoke that rule against Mr. Hoffman (Dkt. #63 at 9), but it is Mr. Smith who has no corroboration:

- His PTO declaration is four sentences. It gives no date, no document, and no account of how Mr. Hoffman learned of the design; its signature certificate shows it was created by Plaintiffs' counsel and signed less than a minute after Mr. Smith first viewed it. (*See* Dkt. #64-6.)

[redacted]

- The managing member of Plaintiff ABC IP, LLC ("ABC") admitted that Mr. Smith showed him no documents, that Mr. Smith's account was a video call of which no copy exists, and that ABC relies only on the patent, Mr. Smith's declarations, and the Hoffman "affidavit." (*See* Vernyuk Declaration, Exhibit A ("Leleux Dep.") at 97:2-98:9, 119:6-120:5.)

- The contemporaneous record points the other way. In September 2023, Mr. Smith's business advertised "Hoffman super safety." (Dkt. #52-3 at 3.) And in Tennessee, Plaintiffs' counsel premised his questions on Mr. Hoffman having "designed the Super Safety" and referred to Mr. Smith as someone whose products were seized. (Dkt. #29-15 at 72:20-23, 73:7-11.)

The USPTO record confirms which way the design travelled. Mr. Smith's December 2023 provisional application reproduces most of the Description section and the first paragraph of the Variations section in Mr. Hoffman's September 2022 provisional application nearly word for word. (*Compare* Vernyuk Decl., Ex. B ("Smith Provisional") at 4:24-7:4 *with* Dkt. #52-14 at 4-5.) It even repeats an error: both documents say that once the void in the dovetail is filled "the hammer can transfer torque to the cam," where the lever is meant (*compare* Smith Provisional at 6:1 *with* Dkt. #52-14 at 5); the issued '538 Patent corrects the slip. (Dkt. #20-4 at 7:28-29.) Mr. Smith offers no explanation of how words Mr. Hoffman filed with the USPTO in September 2022 came to appear in his own application more than fourteen months later. Plaintiffs' own prosecution of the application points the same way. They told the Examiner that Mr. Hoffman's July 21, 2023 video "describes the present invention." (Vernyuk Decl., Ex. C at 2.)

The "Affidavt [*sic*] of Timothy Hoffman" (Dkt. #64-7) does not fill the gap. It is unsworn (there is no jurat and the notary block is blank), and it says nothing about who conceived what, when, or how anything passed from Mr. Smith to Mr. Hoffman. The circumstances also deprive it of weight. [redacted]

[redacted] (Leleux Dep. at 70:16-71:7.) Mr. Leleux believes the affidavit was prepared by Plaintiffs' counsel at the same time as that agreement, and Mr. Smith told him he would "just get [Hoffman] to . . . sign something . . ." (*Id.* at 102:15-22, 106:15-17, 113:1-9.) Mr. Smith says Mr. Hoffman signed because he wanted "a license to my patent" (Dkt. #64-5 at ¶10), but Mr. Smith had assigned the application to ABC eleven days earlier (Dkt. #28-1 at ¶28). When Mr. Hoffman publicly claimed inventorship, ABC [redacted]. (Leleux Dep. at 72:13-73:24, 76:4-78:4.)

Mr. Smith has not been produced for deposition despite Defendants' subpoena efforts and request to Plaintiffs. (*See* Dkt. #86 and #106.) Nor is the standard at this stage "clear and convincing evidence," as the Reply twice says. (Dkt. #63 at 9.) A substantial question of invalidity "requires less proof than the clear and convincing showing necessary to establish invalidity itself." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1359 (Fed. Cir. 2001). A dispute between a declarant with a USPTO filing receipt and a declarant with a [redacted] is, at minimum, such a question. And because the '538 Patent is asserted only against the Super Safety (Dkt. #28 at 8), it could not support relief against the ARC-Fire or the MP5 products in any event.

### B. <u>The Reply Changes Plaintiffs' Infringement Theory and Confirms a Substantial Question of Non-Infringement</u>.

#### 1. The Indirect-Infringement Theory Is New and Unsupported.

The Motion argued that the Super Safety and ARC-Fire "[d]irectly [i]nfringe," reserving indirect infringement for the MP5 lowers and slip-trip kits. (Dkt. #28 at 7-9.) The Reply now "agrees the kits are not the claimed mechanism as boxed" and calls its case "classic indirect infringement." (Dkt. #63 at 9-10.) Arguments raised for the first time in a reply are waived. *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010).

[redacted]

Plaintiffs also do not make the showing that theory requires. Induced and contributory infringement require knowledge of the patent and knowledge that the accused acts infringe. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Plaintiffs' pre-suit letter identified only U.S. Patent 12,038,247 ("'247 Patent"). (*See* Dkt. #28-6.) U.S. Patent 12,578,159 ("'159 Patent") and the '538 Patent did not issue until 2026 (Dkt. #63 at 7-8), and Plaintiffs offer no evidence of when Defendants learned of the '784 Patent. Plaintiffs' own declarant admits that, upon receiving the letter, AS Designs responded that its products do not infringe. (Dkt. #28-1 at ¶34; Vernyuk Decl., Ex. D ("DeMonico Dep.") at 192:14-17.) Case law reaffirms that a defendant's reasonable belief of non-infringement (even if ultimately incorrect) suffices to defeat the intent element necessary for indirect infringement. *See, e.g., Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 523 (Fed. Cir. 2016); *Commil*, 575 U.S. at 642; *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1118-19 (Fed. Cir. 2022).

**2. Plaintiffs' Reply Charts Confirm the Non-Infringement Dispute.**

The Reply's heading, "AS Designs Has Not Shown Likelihood of Non-Infringement" (Dkt. #63 at 8), inverts the burden. It is Plaintiffs who must show that they "will likely prove infringement." (Dkt. #113 at 5.) They have not, as further explained in Exhibits B-D of the accompanying Batzer Declaration.

For example, claim 15 of the '247 Patent requires that, in forced-reset mode, the "disconnector hook is prevented from catching said hammer hook." The asserted '159 Patent claims require that it be "prevented from holding the hammer." Dr. Batzer explained that in the accused products the disconnector hook *does* catch and hold the hammer hook on every cycle and releases it only afterward, when the cam resets the trigger. (Dkt. #51-4 at 3-4, 7-8; Dkt. #51-5 at

[redacted]

3, 6, 9, 12, 16, 18, 26, 29, 32, 34, 38, 40.) Mr. Luettke answers that the hook "does not catch and hold the hammer." (Dkt. #64-3 at 5, 8.) Dr. Batzer disagrees: "By the time the cam resets the trigger, the disconnector hook has already caught and held the hammer hook." (Batzer Decl., Ex. C at 6, 12; *accord* Batzer Decl., Ex. D at 6.)

Plaintiffs complain about Dr. Batzer's § 112(f) positions on non-infringement compared to invalidity. (*See* Dkt. #63 at 11.) But his invalidity charts simply apply the breadth that Plaintiffs' infringement theory requires. *See Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1276 n.4 (Fed. Cir. 2016) (proper for defendant to argue for a narrower construction for infringement while also arguing in the alternative, that if the district court were to disagree, the claim would be so broad as to be invalid); *Rovalma, S.A. v. Bohler-Edelstahl GmbH*, 856 F.3d 1019, 1029 (Fed. Cir. 2017) (to avoid forfeiture, party must account for the possibility that the tribunal may adopt the other party's construction). And for the '784 and '159 Patent claims that recite means-plus-function terms, Mr. Luettke offers no infringement theory if §112(f) applies. (Batzer Decl., Ex. B at 2-5, 7-10; Batzer Decl., Ex. D at 1, 16, 20, 26, 40, 44.)

### C. <u>The Reply Does Not Dispel the Substantial Questions of Invalidity of the Asserted Patents</u>.

#### 1. The Reply Answers Anticipation, Not Obviousness.

Plaintiffs' validity argument is that column 11 of Blakley (U.S. Patent 7,398,723) "[d]iscloses [n]o [s]tructure" for a selectable standard mode. (Dkt. #63 at 11-12.) That is an anticipation argument. Defendants' principal grounds are obviousness, and for obviousness a reference "is prior art for all that it teaches," whether or not it is enabling. *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).

Blakley states that "[i]t is intended that the effect of the disclosed invention be able to be optionally selected or deselected by operating the selector-cam," and it explains how: the trigger

[redacted]

extension moves so that its bearing surface, which "has a lower and higher part," does or does not meet the cam. (Dkt. #52-9 at 11:11-25.) Plaintiffs' own expert acknowledges Dr. Batzer's explanation that this passage discloses a three-position safety selector, including a semi-automatic mode, and he argues only that, "[a]ssuming that passage is read as expressing an intention to provide such a mode," it is not enabling. (Dkt. #64 at ¶84.) A stated intention to provide the mode is the motivation the Examiner (erroneously) believed was missing when he found "no teaching in the prior art that would have motivated" modifying Blakley. (*Id.* at ¶79.)

How to provide that mode was no mystery. Stoner's 1962 patent (U.S. Patent 3,045,555), the foundational AR-pattern fire-control design, discloses a three-position selector whose third position blocks the disconnector from catching the hammer. (Dkt. #51-17 at 3-4 (citing Stoner, 3:19-35, 4:25-41).) Plaintiffs respond, citing no evidence, that combining Stoner with Blakley "[w]ould [n]ot [w]ork" because Blakley's cam "would force the trigger to its set position on every cycle." (Dkt. #63 at 12-13.) First, that is incorrect, because Blakley expressly states that its invention (i.e., forced-reset) can be deselected. (Dkt. 52-9 at 11:11-25.) Second, even if it were true, that is how the '247 Patent itself works: its Abstract describes the cam forcing the trigger toward the set position in the standard mode too, with the disconnector catching the hammer first. (Dkt. #20-2.)

### 2. The Reply's Reading of Claim 15 Raises a §112(a) Question.

Claim 15 of the '247 Patent was added by preliminary amendment on April 4, 2024, months after the Super Safety files were released. (Dkt. #51 at ¶80.) The patent describes the cam pivoting from the first position to the second in both modes; the modes differ only in whether the safety selector lets the disconnector catch. (*Id.* at ¶74.) Mr. Luettke now reads claim 15 to cover a standard mode in which the cam "never forces the trigger member toward the set position." (Dkt. #64-3

[redacted]

(element 15[f]).) The Reply goes further and says the cam meets the limitation in two different ways, by rotating and by sliding, because "nothing restricts the movement to one kind." (Dkt. #63 at 10.) The specification describes no standard mode in which the cam does not force the trigger, and no cam that slides to change modes; its only cam movement is rotation about a pivot. (Batzer Decl. Ex. C at 3-4, 9-10.) *See* 35 U.S.C. § 112(a).

**3. The "Three Forums" Did Not Decide This Question.**

The Examiner's reasons for allowance do not mention column 11 or Stoner (*see* Vernyuk Decl., Ex. E at 2-5), which is unsurprising given that ABC cited almost 150 references in a document dump (*see* Dkt. #20-2 at 2-4. The Tennessee court credited testimony about Blakley that Plaintiffs describe as "unrebutted" (Dkt. #117 at 23), from a witness who admitted he had only "briefly gone over the '723 [i.e., Blakley]" and "did not study it." (*ABC IP, LLC v. Hoffman*, No. 4:26-cv-00378-ALM (E.D. Tex.),[2] Dkt. #37 at 93:1-4.) As for the IPR, PTAB issued only a two-sentence denial notice for a group of IPR petitions, including the one mentioned by Plaintiffs. (*See* Dkt. #64 ¶82; Vernyuk Decl., Ex. G.)

**4. Plaintiffs' Witnesses Refute Their Objective Indicia.**

Plaintiffs say "no mechanism offering all three modes appeared before 2022" and attribute the gap to technical difficulty. (Dkt. #63 at 13.) They cite no evidence for either proposition. Mr. Leleux gave the real reason: [redacted]." (Leleux Dep. 59:19-24, 61:5-8, 63:7-13.)

Three-mode triggers also appeared well before Mr. Blakley applied for patent protection. In 2013 ATF examined the Tac-Con 3MR and described "three modes": safe, standard semi-

[2] The *Hoffman, Mister Guns*, and *Peak Tactical* cases (cited below) are companion cases in this MDL.

[redacted]

automatic, and a mode in which a reset lever "applies force to the trigger, forces the shooter's finger forward, and allows the trigger to reset rapidly." (*See ABC IP, LLC v. Mister Guns, LLC,* No. 2:26-cv-00056-ALM (E.D. Tex.), Dkt. #71-24 at 2.) In February 2022, Rare Breed itself claimed that it had "publicly demonstrated" on January 15, 2022 a three-position trigger whose selector switched among "safe, standard semiautomatic with disconnector, and forced reset semiautomatic" modes. (Dkt. #17-2 at ¶38.) Mr. Blakley's provisional parent application to the '247 Patent followed in September 2022 (Dkt. #20-2), and Mr. Hoffman's twenty days later (Dkt. #52-14). Near-simultaneous development by others bears on the level of ordinary skill and supports a conclusion of obviousness. *See Geo. M. Martin Co. v. Alliance Machine Sys. Int'l LLC*, 618 F.3d 1294, 1305 (Fed. Cir. 2010).

## II. <u>THE REPLY AND PLAINTIFFS' OWN WITNESSES CONFIRM THERE IS NO IRREPARABLE HARM</u>.

### A. <u>Plaintiffs' Economist Disclaims the Reply's Central Assertions</u>.

The Reply narrows Plaintiffs' case. It calls reputational harm and first-mover advantage theories Rare Breed "need not press," says Rare Breed "does not press a dealer lock-in theory," and rests on three things: the supposed '538 Patent concession, collectability, and owner withdrawals. (Dkt. #63 at 7.) Mr. Eichmann has likewise withdrawn his opinions on reputational harm, third-party entry, and market uncertainty. (Dkt. #63-1 at ¶¶ 149-52; Phillips Decl. at ¶¶ 66-70.)

Nor does the Reply mention *ABC IP, LLC v. Peak Tactical, LLC*, No. 2:26-cv-00018, 2026 WL 713000, at *5-8 (D. Wyo. Feb. 13, 2026), *aff'd*, No. 2026-1527, 2026 WL 2718572 (Fed. Cir. Sep. 15, 2026) (per curiam), which rejected these Plaintiffs' irreparable-harm theories for want of evidence.

[redacted]

**"Every sale displaces a Rare Breed sale."** (Dkt. #63 at 1.) Mr. Eichmann says AS Designs' records "do not, by themselves, establish what those purchasers would have done in a market without the Accused Products." (Dkt. #63-1 at ¶18.) He concedes that the profit on "an identifiable lost sale may be estimated." (*Id.* at ¶42.) Mr. DeMonico called the question of how many sales a defendant took "a hypothetical that I've got really no way to answer" and admitted he does "not have a definitive number" for AS Designs' sales. (DeMonico Dep. 200:24-201:4, 203:3-13, 216:22-24.) His [redacted]. (*Id.* at 210:13-211:18.)

**"[redacted] accused units" and "over $[redacted] in lost profits."** (Dkt. #63 at 2-4.) The $[redacted] figure has no citation and does not appear in Mr. Eichmann's declaration. As for the unit count, Mr. Eichmann explains that the "mixed unit total cannot be converted mechanically into an equal number of complete-trigger transactions or a single lost-profits amount." (Dkt. #63-1 at ¶19.) By his count only [redacted] are complete kits (*id.*); the rest include [redacted] at [redacted] each. (*See* Dkt. #63-5.) And Mr. Eichmann concedes that the sales data "do not establish whether the ARC-Fire was commercially available before the pricing decision or contributed to it," offers no "AS Designs-specific price-erosion calculation," and does "not conclude that all pricing effects are incapable of measurement." (Dkt. #63-1 at ¶¶ 65, 68, 76.) What he has not calculated is not thereby incalculable; the effects he describes are measured by standard lost-profits and price-erosion methods. (Phillips Decl. at ¶¶ 9-11.) Nor is it Defendants' burden to show that damages would "exhaust the relevant harm," as he suggests. (Dkt. #63-1 at ¶56; Phillips Decl. at ¶30.) In Tennessee, Mr. DeMonico attributed the price cut to "the sheer volume of infringers" and to $50-to-$100 Super Safeties. (*Hoffman*, No. 4:26-cv-00378-ALM, Dkt. #36 at 52:1-9.)

[redacted]

**"AS Designs Cannot Satisfy a Judgment."** (Dkt. #63 at 3.) Mr. Eichmann: "I do not opine that AS Designs necessarily will be unable to satisfy a judgment." (Dkt. #63-1 at ¶97.) His "material uncertainty" is "not an opinion that nonpayment is more likely than payment." (*Id.* at ¶99 n.69.) Irreparable injury must be likely, not merely possible. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

**B. <u>The Collectability Narrative Does Not Establish Irreparable Harm</u>.**

AS Designs is a profitable operating company. It earned net income of $[redacted] in the first four months of 2026, "roughly $[redacted] a month" in Plaintiffs' words, and had positive net equity of [redacted]. (Dkt. #63 at 4, 15; Dkt. #63-7.)

Distributions of profit to the owners of a closely held company are not dissipation, and Plaintiffs identify no transfer made to avoid a creditor. Such distributions are discretionary, are standard practice, and show that the company generates cash; ABC [redacted]. (Phillips Decl. at ¶44 & n.11; Leleux Dep. 287:13-290:21.) Plaintiffs have also sued both owners individually, so on Plaintiffs' own theory the distributed funds remain within reach of any judgment. And Mr. Eichmann identifies no judgment amount against which ability to pay could be measured. (Phillips Decl. at ¶¶ 50, 73.) ABC [redacted]. (Leleux Dep. 56:14-21, 61:13-20, 74:1-8.) On [redacted] kits, that is about $[redacted], well within Plaintiffs' own account of AS Designs' net equity. *Janvey v. Alguire*, 647 F.3d 585, 589, 600-01 (5th Cir. 2011), involved a receiver preserving the proceeds of a Ponzi scheme. It has no application to an operating business.

[redacted]

### C. Plaintiffs' Testimony Shows the Claimed Harm Was Not Urgent, Is Priced in Dollars, and Is Not Tied to the Asserted Claims.

**Delay.** Mr. DeMonico agreed that Rare Breed believed in August 2025 that AS Designs' sales were causing harm "that money could not fix." (DeMonico Dep. 193:1-9.) Plaintiffs nonetheless waited until December 30, 2025, to sue and April 27, 2026, to move for a PI. The reason was not the 2026 issuance of two of the patents (Dkt. #63 at 7-8): the '247 and '784 Patents issued in July 2024, and Plaintiffs obtained a TRO on them against another party in January 2026. (Dkt. #74 at 13.) The reason, in Mr. DeMonico's words, was the need [redacted]. (DeMonico Dep. 195:18-21.) During that period ABC was spending $[redacted] a month on litigation and Plaintiffs filed more than 125 suits. (Leleux Dep. 31:2-15; Dkt. #74 at 13.) When Plaintiffs thought speed mattered, they promptly moved for injunctive relief. (*See ABC IP, LLC v. Peak Tactical, LLC*, No. 4:26-cv-00698-ALM (E.D. Tex), Dkt. #1 and #6 (moving for TRO/PI the day after filing the complaint); *Hoffman*, No. 4:26-cv-00698-ALM, Dkt. #1 and #14 (moving for PI two weeks after filing the complaint.) "[D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995).

**Price.** Plaintiffs have priced their claimed injury. Mr. DeMonico testified that Plaintiffs' position is that [redacted]." (DeMonico Dep. 122:9-15, 122:25-123:2.) And the [redacted]. (*Id.* at 49:9-50:21, 93:1-11, 94:8-9.) A patentee's willingness to accept a per-unit payment weighs against irreparable harm. *See High Tech*, 49 F.3d at 1557.

[redacted]

**Practice of the patents.** No Rare Breed product is covered by the ’538 Patent, and none [redacted]. (DeMonico Dep. 129:19-21; Leleux Dep. 140:13-24.) The ’247 Patent covers only the FRT-15C3 and two newer products. (Leleux Dep. 56:9-13.) Plaintiffs thus have not tied the harm they describe to infringement of the asserted claims. *See Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1361 (Fed. Cir. 2013).

## III. THE REMAINING FACTORS, THE BOND, AND THE SCOPE OF ANY RELIEF.

**Balance of harms.** As this Court has framed the test, Plaintiffs must show that their threatened injury “outweighs any damage the injunction might cause the defendant.” (Dkt. #113 at 2.) Their economist does “not offer a quantitative opinion that the total economic hardship to Rare Breed exceeds the total economic hardship to AS Designs,” and he agrees that an injunction “would immediately affect a business in which those products generated approximately [redacted] percent of reported revenue.” (Dkt. #63-1 at ¶¶ 101-02; *see* Phillips Decl. at ¶¶ 53-56.) Mr. DeMonico agrees that Rare Breed will remain in business without an injunction. (DeMonico Dep. 227:7-9.) *Windsurfing* addressed a product “found to infringe.” *Windsurfing Int’l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). Nothing has been found here.

**Public interest.** The Statement of Interest on which Plaintiffs rely (Dkt. #29-20) was filed in a different case, against an individual who distributed design files. It expressly takes no position on the other factors or on whether an injunction should issue, and it acknowledges that the settlement “does not bind other potential manufacturers.” (Dkt. #29-20 at 7.)

**Bond.** Plaintiffs’ own figure, about $[redacted] per month in net income (Dkt. #63 at 15), confirms Defendants’ alternative request of [redacted] per month. (Dkt. #50 at 29.) Plaintiffs’ suggestion that an injunction would merely “defer” those sales cannot be reconciled with their own theory that sales of these durable goods, once lost, do not return. (*See* Dkt. #28 at 10-11.)

[redacted]

**Scope.** Plaintiffs now agree that stripped MP5 lowers must be excluded. (Dkt. #63 at 14.) Any order must also identify specific products; one barring infringement generally would not satisfy Rule 65(d). *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316-17 (Fed. Cir. 2004).

## IV. CONCLUSION

Plaintiffs have not "clearly carried the burden of persuasion on all four requirements." *Big Tyme Investments, L.L.C. v. Edwards*, 985 F.3d 456, 463-64 (5th Cir. 2021) (citation omitted). Defendants respectfully request that the Court deny the Motion or, alternatively, limit any relief to specifically identified products and condition it on the security requested in the Opposition. (Dkt. #50 at 28-29.)

Respectfully submitted,

Dated: November 16, 2026

EMERSON, THOMSON & BENNETT, LLC
*/s/ Sergey Vernyuk*
John M. Skeriotis (Ohio Bar # 0069263)
jms@etblaw.com
Sergey Vernyuk (Ohio Bar # 0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile
*Attorneys for Defendants AS Designs, LLC, Matthew S. Karlovic, and Calvin Olson*

[redacted]

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this Sur-Reply is being served on November 16, 2026, on Plaintiffs' counsel via electronic mail:

Benjamin Christoff
christoff@fr.com

Carl E. Bruce
bruce@fr.com

Glenn D. Bellamy
gbellamy@whe-law.com

Matthew Alan Colvin
colvin@fr.com

Melissa R. Smith
melissa@gillamsmithlaw.com

*/s/ Sergey Vernyuk*
Sergey Vernyuk (Ohio Bar # 0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile

**LOCAL RULE CV-5(a)(7)(B) CERTIFICATION**

Pursuant to L.R. CV-5(a)(7)(B), I certify the Court has granted authorization to seal the information contained in this document by entry of the Protective Order in *In re Rare Breed Triggers Patent Litig.*, No. 4:26-md-03176-ALM, Dkt. #90 (§XIV).

*/s/ Sergey Vernyuk*
Sergey Vernyuk (Ohio Bar # 0089101)
sv@etblaw.com
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999 – Telephone
(330) 434-8888 – Facsimile